## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Creedon Controls, Inc., a Delaware Corporation | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Banc One Building Corporation, an Illinois | ) | |
| Corporation; and Forest Electric Corporation, a | ) | |
| New York Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Banc One Building Corporation, an Illinois Corporation, ("Banc One") and Forest Electric Corporation, ("Forest") a New York Corporation (collectively, "Defendants"), through their attorneys hereby remove this action from the Superior Court of New Castle County, Delaware, to this Court. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) in that it is filed within thirty days after the receipt of any defendant through service or otherwise of a copy of the Complaint. The grounds for removal are as follows:

1.    Plaintiff Creedon Controls, Inc. commenced this action by filing a complaint in the Superior Court of New Castle County, Delaware, on or about April 14, 2005.  The action is now pending in that court, Civil Action No. 05L-04-106 (JRJ).

2.    Plaintiff served the complaint on Defendant Forest's registered agent on or about April 27, 2005.  Bank One has not been served.

3.    In accordance with 28 U.S.C. § 1446(b), a copy of all process, pleadings and orders served upon defendants is filed with this notice at Exhibit A.

4.      In its complaint, Plaintiff has alleged breach of contract, recovery of labor, materials and general condition costs for delay as a result of breach of promises and warranties, unjust enrichment, violations of 6 Del. C. Chapter 35, and 6 Del. C. Chapter 36.  Plaintiff is a citizen of the State of Delaware and has its principal place of business in Delaware.  Defendant, Banc One Building Corporation, is incorporated in Illinois and has its principal place of business in Illinois. Defendant Forest Electric Corporation, is incorporated in New York and has its principal place of business in New York.  Defendants thus seek removal of this action pursuant to 28 U.S.C. § 1441 on the ground that the above-captioned matter is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds $75.000.00, exclusive of cost and interest.

5.      Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this notice of removal will be given to counsel for Plaintiff and a copy of the Notice of Removal will be filed with the Prothonotary of the Superior Court of New Castle County, Delaware.

WHEREFORE, Defendants Banc One Building Corporation and Forest Electric Corporation respectfully request that this case be removed from the Superior Court of Delaware to this Court, and proceed in this Court as an action properly removed thereto.

McCARTER & ENGLISH, LLP

BY: _____
PAUL A. BRADLEY, I.D. 2156
JENNIFER M. ZELVIN, I.D. 4325
919 N. Market Street
Mellon Bank Center,   Suite 1800
P. O. Box 111
Wilmington, DE  19899
(302) 984-6300
Attorneys for Defendants
Banc One Building Corporation and
DATED:  May 17, 2005                    Forest Electric Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Creedon Controls, Inc., a Delaware Corporation | ) |
| | )     C.A. No. |
|      Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| Banc One Building Corporation, an Illinois | ) |
| Corporation; and Forest Electric Corporation, a | ) |
| New York Corporation, | ) |
| | ) |
|      Defendants. | ) |

### NOTICE TO ADVERSE PARTY OF FILING OF NOTICE OF REMOVAL

To: Robert K. Beste, Jr., Esq.
    Cohen Seglias Pallas
    Greenhall & Furman P.C.
    Nemours Building, Suite 205
    1007 Orange Street
    Wilmington, Delaware 19801

**PLEASE TAKE NOTICE** that a Notice of Removal of this action from the Superior

Court of Delaware, New Castle County, to the United States District Court for the District of

Delaware was duly filed on this 17th day of May, 2005, in the United States District Court for the

District of Delaware.

McCARTER & ENGLISH, LLP

_Paul A Bradley_ (signature)

Paul A. Bradley, DE Bar ID #2156)
Jennifer M. Zelvin, DE Bar ID # 4325)
919 N. Market Street, Suite 1800
Wilmington, Delaware 19801
(302) 984-6309

*Attorneys for Banc One Building
Corporation and Forest Electric
Corporation*

DATED: May 17, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Creedon Controls, Inc., a Delaware Corporation | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Banc One Building Corporation, an Illinois | ) | |
| Corporation; and Forest Electric Corporation, a | ) | |
| New York Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COPIES OF ALL PROCESS PLEADINGS AND ORDERS IN STATE COURT

Attached hereto, and made a part hereof, is a copy of the Civil Case Information

Statement, Summons, Complaint, and Praecipe, and Sheriff's Return received by Defendant

Forest Electric Corporation.  There were no other process, pleadings or orders served upon or

otherwise received by the Defendants herein to date.

McCARTER & ENGLISH, LLP

_Paul A. Bradley_

Paul A. Bradley, DE Bar ID #2156)
Jennifer M. Zelvin, DE Bar ID # 4325)
919 N. Market Street, Suite 1800
Wilmington, Delaware 19801
(302) 984-6309

*Attorneys for Banc One Building
Corporation and Forest Electric
Corporation*

DATED:  May 17, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Creedon Controls, Inc., a Delaware Corporation | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Banc One Building Corporation, an Illinois | ) | |
| Corporation; and Forest Electric Corporation, a | ) | |
| New York Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### STATEMENT PURSUANT TO LOCAL DISTRICT COURT CIVIL RULE 81.2

This matter was removed from Superior Court In and For New Castle County, State of

Delaware on May 17th, 2005.  No pending motion requires judicial action at this time.


                                        McCARTER & ENGLISH, LLP

                                        _____
                                        Paul A. Bradley, DE Bar ID #2156)
                                        Jennifer M. Zelvin, DE Bar ID # 4325)
                                        919 N. Market Street, Suite 1800
                                        Wilmington, Delaware 19801
                                        (302) 984-6309

                                        *Attorneys for Banc One Building
                                        Corporation and Forest Electric
                                        Corporation*

DATED:  May 17, 2005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Creedon Controls, Inc., a Delaware Corporation | ) | |
| | ) | C.A. No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Banc One Building Corporation, an Illinois | ) | |
| Corporation; and Forest Electric Corporation, a | ) | |
| New York Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATION OF SERVICE

Paul A. Bradley, hereby certifies that:

     1.     I am an attorney-at-law of the State of Delaware and am a member of the firm of McCarter & English, LLP attorneys for Defendants Banc One Building Corporation and Forest Electric Corporation.

     2.     On May 17, 2005, I caused to be delivered via hand delivery two copies of the Notice to Adverse Parties of Filing of Notice of Removal, Notice of Removal and Copies of All Process, Pleadings, and Orders in State Court to Robert K. Beste, Jr., Esq., Cohen, Seglias,

*[the remainder of this page intentionally left blank]*

Pallas, Greenhall & Furman P.C., The Nemours Building, Suite 205, 1007 Orange Street,

Wilmington, Delaware 19801, attorney for Plaintiff Creedon Controls, Inc.

McCARTER & ENGLISH, LLP

_____

Paul A. Bradley, DE Bar ID #2156)
Jennifer M. Zelvin, DE Bar ID # 4325)
919 N. Market Street, Suite 1800
Wilmington, Delaware 19801
(302) 984-6309
*Attorneys for Banc One Building
Corporation and Forest Electric
Corporation*

DATED: May 17, 2005

# EXHIBIT A



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

LGR / ALL
**Transmittal Number: 3974342**
**Date Processed: 04/27/2005**

**Primary Contact:**    Marianne B Sileo
Emcor Group, Inc.
301 Merritt Seven
Floor 6TH
Norwalk, CT 06851

| | |
|---|---|
| **Entity:** | Forest Electric Corp. |
| | Entity ID Number 2177869 |
| **Entity Served:** | Forest Electric Corporation |
| **Title of Action:** | Creedon Controls, Inc. vs. Banc One Building Corporation |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | New Castle County Superior Court , Delaware |
| **Case Number:** | 05L-04-106 JRJ |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 04/27/2005 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney :** | Edward Seglias |
| | 302-425-5089 |

APR 2005
RISK INSURANCE
RECEIVED
EMCOR

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC.**
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

SCI FA SUR MECHANIC'S LIEN

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No. 05L-04-106 JRJ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **AFFIDAVIT OF DEFENSE** |
| Banc One Building Corporation, an Illinois | ) **REQUIRED BY 10 <u>DEL. C.</u> §3901** |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) **NON-ARBITRATION CASE** |
| | ) |
| Defendants. | ) |

**THE STATE OF DELAWARE,**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

To summon the above-named **Defendant, by making service upon its Registered Agent**, so that, within 20 days after service thereof, exclusive of the day of service, Defendant shall serve upon Robert K. Beste, Jr., Esquire, Plaintiff's attorney, whose address is Cohen, Seglias, Pallas, Greenhall & Furman, P.C., 1007 Orange Street, Suite 205, Wilmington, Delaware 19801, an Answer to the Complaint, and, if an Affidavit of Demand has been filed, an Affidavit of Defense.

To serve upon Defendant a copy of the Complaint and the Affidavit of Demand, if any has been filed by Plaintiff.

**DATED:** 4/25/05

*Sharon Agnew*
*Prothonotary*

*Len Lavallee*
*Per Deputy*

**TO THE ABOVE-NAMED DEFENDANT:**

In case of your failure within twenty (20) days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above, an Answer to the Complaint, and, if an Affidavit of Demand has been filed, an Affidavit of Defense, judgment by default will be rendered against you for the relief demanded in the Complaint, or in the Affidavit of Demand, if any.

**DATED:**

*Sharon Agnew*
*Prothonotary*

*Len Lavallee*
*Per Deputy*

SCI FA SUR MECHANIC'S LIEN

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

Creedon Controls, Inc., a Delaware corporation, )
)
) C. A. No. 05L-04-106 JRJ
     Plaintiff, )
) JURY TRIAL DEMANDED
v. )
) **AFFIDAVIT OF DEFENSE**
Banc One Building Corporation, an Illinois ) **REQUIRED BY 10 <u>DEL</u>. <u>C</u>. §3901**
corporation; and Forest Electric Corporation, a )
New York corporation, ) **NON-ARBITRATION CASE**
)
     Defendants. )

**THE STATE OF DELAWARE,**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

To summon the above-named **Defendant, by making service upon its Registered Agent,** so that, within 20 days after service thereof, exclusive of the day of service, Defendant shall serve upon Robert K. Beste, Jr., Esquire, Plaintiff's attorney, whose address is Cohen, Seglias, Pallas, Greenhall & Furman, P.C., 1007 Orange Street, Suite 205, Wilmington, Delaware 19801, an Answer to the Complaint, and, if an Affidavit of Demand has been filed, an Affidavit of Defense.

To serve upon Defendant a copy of the Complaint and the Affidavit of Demand, if any has been filed by Plaintiff.

DATED: 4/25/05

*Sharon Agnew*
*Prothonotary*

*[signature]*
**Per Deputy**

**TO THE ABOVE-NAMED DEFENDANT:**
In case of your failure within twenty (20) days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above, an Answer to the Complaint, and, if an Affidavit of Demand has been filed, an Affidavit of Defense, judgment by default will be rendered against you for the relief demanded in the Complaint, or in the Affidavit of Demand, if any.
DATED:

*Sharon Agnew*
*Prothonotary*

*[signature]*
**Per Deputy**

# SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY: (N)  K  S                    CIVIL ACTION NO. 05L-04-106 JRJ

CIVIL CASE CODE: __**LIEN**__          CIVIL CASE TYPE: **Mechanic's Lien**

(SEE REVERSE SIDE FOR CODE AND TYPE)

| | |
|---|---|
| **CAPTION:** <br><br> Creedon Controls, Inc., a Delaware corporation, <br><br>    Plaintiff, <br><br> v. <br><br> Banc One Building Corporation, an Illinois corporation, and Forest Electric Corporation, a New York corporation, <br><br>    Defendants. | NAME AND STATUS OF PARTY FILING DOCUMENT: <br> **Attorneys for Plaintiff** <br> DOCUMENT TYPE (E.G., COMPLAINT; ANSWER W/ COUNTERCLAIM): <br> ***Complaint and Statement of Claim for Mechanics Lien*** <br><br> NON-ARBITRATION __**XX**__   E-FILED_____ <br> (CERTIFICATE OF VALUE MAY BE REQUIRED) <br><br> ARBITRATION___ MEDIATION___NEUTRAL ASSESS.____ <br> DEFENDANT (CIRCLE ONE) **ACCEPT   REJECT** <br> Jury Demand  Yes **XX**          No __ <br><br> TRACK ASSIGNMENT REQUESTED: (CIRCLE ONE) <br><br> **EXPEDITED   <STANDARD>   COMPLEX** |
| ATTORNEY NAME(S): <br><br> *ROBERT K. BESTE, JR., ESQUIRE* <br><br> *ATTORNEY I.D.:* **154** <br><br> FIRM NAME: *COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.* <br><br> ADDRESS: **1007 ORANGE STREET, STE. 205,** <br><br> **NEMOURS BLDG., WILMINGTON, DE 19801** <br><br> TELEPHONE NUMBER: <br> *(302)425-5089* <br><br> FAX NUMBER: <br> *(302) 425-5097* <br><br> E-MAIL ADDRESS: **RBESTE@COHENSEGLIAS.COM** | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER, INCLUDING JUDGE'S INITIALS <br><br> _____ <br><br> EXPLAIN THE RELATIONSHIP(S): <br><br><br> OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: <br><br> (IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGES) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND TO HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

# SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)
## INSTRUCTIONS

### CIVIL CASE TYPE

Please select the appropriate civil case code and case type (e.g. CODE - AADM and TYPE - Administrative Agency) from the list below.  Enter this information in the designated spaces on the Case Information Statement.

**APPEALS**

AADM  -  Administrative Agency
ACCP  -  Court of Common Pleas
ACER  -  Certiorari
AFAM  -  Family Court
AIAB  -  Industrial Accident Board
APSC  -  Public Service Commission
AUIB  -  Unemployment Insurance Appeal Board

**COMPLAINTS**

CAAA  -  Auto Arb Appeal  *
CASB  -  Asbestos
CATT  -  Foreign & Domestic Attachment
CCCP  -  Transfer from CCP  *
CCHA  -  Transfer from Chancery  *
CCON  -  Condemnation
CDBT  -  Debt/Breach of Contract  *
CDEF  -  Defamation  *
CDEJ  -  Declaratory Judgment
CEJM  -  Ejectment  *
CFJG  -  Foreign Judgment  *
CINT  -  Interpleader
CLIB  -  Libel  *
CMAL  -  Malpractice  *
CACT  -  Class Action
CPIA  -  Personal Injury Auto  *
CPIN  -  Personal Injury  *
CPRD  -  Property Damage  *
CPRL  -  Products Liability  *
CRPV  -  Replevin
CSBI  -  Silicone Breast Implant
CTAX  -  Tax Appeal
CFRD  -  Fraud Enforcement
CSPD  -  Summary Proceedings Dispute

**INVOLUNTARY COMMITMENTS**

INVC  -  Involuntary Commitment

**MISCELLANEOUS**

MAAT  -  Appointment of Attorney
MAFF  -  Application for Forfeiture
MBAL  -  Bail Forfeiture
MCED  -  Cease and Desist Order
MCRO  -  Complaint Requesting Order
MCTO  -  Consent Order
MHAC  -  Habeas Corpus
MIND  -  Destruction of Indicia of Arrest
MISS  -  Issuance of Subpoena/Material Witness
MMAN  -  Mandamus
MOUT  -  Out of State Deposition
MPOS  -  Writ of Possession
MPRO  -  Writ of Prohibition
MROP  -  Petition for Return of Property
MROD  -  Road Resolution
MSAM  -  Satisfy Mortgage
MSOJ  -  Compel Satisfaction of Judgment
MTAX  -  Tax Ditches
MVAC  -  Vacate Public Road
MSEM  -  Set Aside Satisfaction of Mortgage
MSSS  -  Set Aside Sheriff's Sale
MSEL  -  Sell Real Estate for Property Tax
MTOX  -  Hazardous Substance Cleanup
MCVP  -  Civil Penalty
MREF  -  Tax Intercept
MGAR  -  Appointment of Guardianship
MFOR  -  Intercept of Forfeited Money

**MORTGAGES**

MORT  -  Mortgage

**MECHANICS LEINS**

LIEN  -  Mechanics Lien  *

**OTHER**

OTHR  -  Specify Type

* Case types subject to Arbitration Rule 16.1

### DUTY OF THE PLAINTIFF

Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the complaint.

### DUTY OF THE DEFENDANT

Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the answer and/or first responsive pleading.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No. _05L-04-106 JRJ_ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **AFFIDAVIT OF DEFENSE** |
| Banc One Building Corporation, an Illinois | ) **REQUIRED BY 10 DEL. C. §3901** |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) **NON-ARBITRATION CASE** |
| | ) |
| Defendants. | ) |

## COMPLAINT AND STATEMENT OF CLAIM FOR MECHANICS' LIEN

### COUNT I
### (Statement of Claim for Mechanics' Lien)

1.      Plaintiff, Creedon Controls, Inc. (hereinafter "CCI") is a corporation of the State

of Delaware, with its principal place of business located at 3424 Old Capitol Trail, Wilmington,

Delaware 19808.

2.      Defendant Banc One Building Corporation (hereinafter "Banc One") is a

corporation of the State of Illinois. Service of process may be made upon Banc One by serving

the Secretary of State of the State of Delaware, pursuant to 10 Del. C. §3104.  Banc One is the

owner of the structure and the land and premises that are the subject of this Statement and Claim

for Mechanics' Lien.

3.      Defendant Forest Electric Corporation (hereinafter "Forest") is a corporation of

the State of New York. Forest's Registered Agent is The Corporation Service Company, 2711

Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.      The Banc One Project #6B - General Lighting & Power Contract (hereinafter

"Project #6B"), was made between CCI and Banc One as the owner of the structure, as evidenced

and set forth in the attached Exhibit "A", and as modified as set forth in the letter of Patricia

Creedon, President of CCI, dated June 14, 2004, with attached Addendum 1, as more fully set

forth in the attached Exhibit "B".

5.      The amount claimed to be due is $2,985,758, as more specifically set forth in the

"Bill of Particulars", a copy of which is attached hereto as Exhibit "C".

6.      The date on which labor and the furnishing of the materials began, was October 6,

2003.

7.      The date on which the furnishing of the materials, labor, and equipment was

completed by CCI was September 22, 2004.  The date of the completion of the structure was on

or about September 22, 2004. The date when the payment of 90% of the contract price, including

the value of any work done pursuant to the contract modifications or change orders, was made to

CCI has not yet occurred. The date when CCI submitted its final invoice to Banc One was March

31, 2005.

8.      The location of the property that is the subject of this statement and claim for

Mechanics' Lien is described as 4001 Governor Printz Boulevard, Wilmington, Delaware, being

Tax Parcel No. 06-149.00-002, and being more particularly bounded and described in the Deed

attached hereto as Exhibit "D", and incorporated herein by reference, and is known as the Banc

One Core Data Center II (hereinafter "Data Center").

9.      The labor was done and the materials and equipment furnished by CCI, on the

credit of the structure.

2

10.     The amount of CCI's claim is in excess of $25.00; to-wit, $2,985,758, and neither that amount nor any part thereof has been paid to CCI.

11.     The amount which CCI claims is due it is $2,985,758.

12.     No mortgage of the type described in 25 Del. C. §2712(b)(11) exists on the structure.

13.     Alternatively, it is alleged that CCI made its contract directly with Forest, a subcontractor and/or agent of Banc One.

14.     In support of its claim for a Mechanics' Lien, based upon a direct contract with Forest, CCI relies upon 25 Del. C. §2711(b), and states that the date that final payment, including all retainage, is due to CCI is May 2, 2005, and that it is unknown what date final payment was made (if at all) to a contractor who has contracted directly with Banc One, or with whom such person has a contract, express or implied, for the furnishing of labor, material and equipment, in connection with the project that is the subject of this litigation.

## COUNT II
### (Breach of Contract - Banc One)

15.     CCI incorporates herein by reference, Paragraphs 1 through 14 of this Complaint, as though set forth at length herein.

16.     CCI entered into an agreement with Forest, as agent for and on behalf of Banc One, for the performance of labor, materials, and equipment supplied for the Data Center.

17.     The work performed by CCI, for Project #6B, in accordance with its agreement with Banc One, is as more fully set forth in the attached Exhibit "A", as modified and supplemented by the letter of Patricia Creedon, President of CCI, to Forest, dated June 14, 2004,

3

with attachments, a copy of which is attached hereto as Exhibit "B".

18.     In accordance with the agreements of CCI and Banc One, and in good faith, CCI performed additional work at the request of Banc One, pursuant to change orders approved and unpaid, approved but not submitted, and approved but repriced and rebilled; and CCI is entitled to $146,684 for such change orders.

19.     In accordance with the agreement of the parties, and in good faith, CCI performed certain additional work at the request of Banc One, in accordance with properly submitted but unapproved and unpaid change orders. CCI has incurred further costs in completing its contract with Banc One. CCI is entitled to $2,657,694 for such change orders.

20.     In accordance with the agreements of the parties, as more fully set forth in the Exhibits "A" and "B", and other agreements of the parties, CCI performed services and supplied materials and equipment for Project #6B, having a value of $6,402,106 of which $3,416,348 has been paid, and $2,985,758 remains due and owing.


## COUNT III
### (Breach of Contract - Forest)

21.     CCI incorporates herein by reference, Paragraphs 1 through 20 of this Complaint, as though set forth at length herein.

22.     Defendant Forest invited CCI to bid on the project known as Project #6B.

23.     In reliance of the representations made by Defendant Forest at bid time, CCI made its bid for Project #6B, for $3,152,000. In making such bid, CCI relied upon the bid documents provided at bid time, by Banc One and its representatives and agents, and the expectancy of

4

normal industry practice, in the conduct, scheduling, and coordination of Project #6B.

24.    In accordance with the bid documents, CCI prepared a detailed schedule used as the basis of its bid calculations of manpower utilization, supervision, peak manpower, and cash-flow requirements.

25.    The bid of CCI was accepted, and CCI and Forest entered into an agreement that CCI would complete Project #6B, for services including lighting in Areas A through G of the Data Center, general power receptacles in Areas A though G, and all electrical requirements in the Administration Building (with a few exceptions), feeders, power and lighting panels, automatic transfer switches, inverter systems, lighting control system, and empty voice and data conduits, in Areas A through G and the Administration Building.

26.    Defendant Forest represented to CCI that the work would be completed substantially in accordance with the bid package, and substantially in accordance with a subcontract agreement delivered to CCI by Defendant Forest by letter dated May 4, 2004, as set forth in the attached Exhibit A, and as further modified and agreed to as set forth in Exhibit "B."

27.    In accordance with said agreement between CCI and Forest, CCI performed services and supplied materials, and equipment for the Project #6B, having a value of $6,402,106, of which $3,416,348 has been paid, and $2,985,758 is due and owing.

28.    In accordance with the agreements of CCI and Forest, and in good faith, CCI performed additional work at the request of Forest, pursuant to change orders approved and unpaid, approved but not submitted, and approved but repriced and rebilled; and CCI is entitled to $146,684 for such change orders.

5

29.    In accordance with the agreement of the parties, and in good faith, CCI performed certain additional work at the request of Forest, in accordance with properly submitted but unapproved and unpaid change orders. CCI has incurred further costs in completing its contract with Forest. CCI is entitled to $2,657,694 for such change orders.

### COUNT IV
### (Recovery of Labor, Material, Equipment, and General Condition Costs for Delay - Banc One and Forest)

30.    ~CCI incorporates by reference paragraphs 1 through 29 of this Complaint, as though set forth at length herein.

31.    In connection with CCI's preparation of its bid proposal, for completion of the work identified in the agreement of the parties, made to Forest, for itself and on behalf of Banc One, CCI carefully examined all bid documents related to the agreements, and prepared its proposal, and negotiated with Forest, for itself and on behalf of Banc One. The price for which CCI eventually agreed to perform the contract work was fair and reasonable for the work described in the agreements, and based upon the scope and schedule of the work set forth in the bid proposal.

32.    Implied in the agreements of the parties were certain promises and warranties on the part of Forest, for itself and on behalf of Banc One, as follows:

(a)    that they would promptly make the Project site available, in a reasonable sequence, and would provide prompt access to work areas in order to permit CCI to perform its work without unreasonable suspension, hindrance or delay, as reasonably anticipated by CCI at

6

the time and the basis of CCI's bid;

(b)     that it would not prevent, hinder, or delay CCI in the performance of its

contract work and would at all times do whatever was necessary to enable CCI to perform its

contract work in a timely, orderly, efficient, and economical manner, as reasonably anticipated by

CCI at the time and the basis of CCI's bid;

(c)     that the Project would be constructed as designed and described in the

agreements of the parties (with only minor changes), as reasonably anticipated by CCI at the time

and the basis of CCI's bid; and

(d)     that the Project would be managed and constructed in the manner and

sequence contemplated by the agreements of the parties and completed within the contract time

specified therein, as reasonably anticipated by CCI at the time and the basis of CCI's bid.

33.     As a result of failures by Forest, for itself and on behalf of Banc One, CCI was not

able to complete Project #6B in a timely fashion.

34.     The delays in completing the contract work required CCI to extend the

performance of its work following entry into agreements with Forest, for itself and on behalf of

Banc One, and to incur increases in labor and material costs, and substantially more general

conditions cost and extended home office overhead and other costs than could be reasonably

anticipated at the time of bid preparation and at the time the parties reached their agreements.

35.     CCI's bid proposal and its performance of the agreements of the parties were

based on the expectation of, and in reliance upon, the fact that: (1) the construction of the Data

Center would progress on time and in an orderly, coordinated and expeditious manner (including

7

an effective and workman-like planning and based upon CCI's schedule at bid time, based upon

scheduling by Forest, for itself and on behalf of Banc One, at bid time, and as mutually changed

thereafter), without undo delay, disruption and/or interference; and (2) the Data Center would be

completed in accordance with the time provided by the agreement of the parties, as reasonably

anticipated by CCI at bid time, and at the time the parties reached their agreements.

36.    As Forest, for itself and on behalf of Banc One, caused CCI to complete its work

at the Project months after the time for completion as provided in the schedules and agreements,

Forest, for itself and on behalf of Banc One, breached the agreements.

37.    The aforesaid breach by Forest, for itself and on behalf of Banc One, hindered,

obstructed, interfered with, and delayed the performance of CCI's work, so that it could not be

completed in a manner contemplated by the agreements of the parties, as reasonably anticipated

at bid time, in that Forest:

      a)    failed to properly plan, schedule and coordinate the work on the Project

            #6B as a whole;

      b)    failed to obtain responses to requests for information and to obtain and

            effectuate design and engineering changes and clarifications in a timely

            and coordinated manner, so as not to impede or disrupt the progress of

            CCI's work;

      c)    failed to furnish to CCI with accurate and coordinated drawings and

            dimensions, adequate design details, and failed to properly obtain and

            issue approved shop drawings, all of which hindered CCI in the

prosecution of its work; and

d)    directly interfered with the scheduling and performance of CCI's work by

causing changes and disruptions to its reasonably planned methods and

sequences of work, which served as the basis of CCI's bid.

38.    Because of the various breaches of contract by Forest, for itself and on behalf of

Banc One, enumerated above, CCI was:

a)    deprived of the construction methods, techniques, procedures and

scheduling of performance, originally contemplated at bid time, and the

basis of CCI's bid and basis of the agreements of the parties;

b)    caused to perform the work under the agreements of the parties in

methods, sequences, techniques, procedures, and scheduling of

performance, contrary to usual industry practice;

c)    prevented from performing its contract work in an orderly, effective,

expeditious, and economical manner;

d)    forced to perform phases of its contract work under job conditions which

adversely affected labor productivity;

e)    forced to perform work beyond the requirements of the agreements;

f)    forced to move CCI equipment and materials, and that of others, in order

to continue CCI's work;

g)    prevented from realizing the profits originally contemplated at bid time by

CCI under the agreements of the parties;

9

h)     unable to store tools, materials, and equipment in a safe place to prevent damage and loss; and

i)     caused to perform its contract work out of sequence and without timely or continuous access to work areas.

39.     As a result of the aforementioned breaches of contract by Forest, for itself and on behalf of Banc One, CCI has suffered delay damages in an amount in excess of $2,657,694 all of which resulted in CCI having to incur increased labor, material, and general conditions costs in the performance of its contract work during the contract time, and after the original completion date thereof, all in excess of the costs contemplated at bid time, the basis of CCI's bid under the agreements of the parties. Such costs are in addition to other amounts demanded in this litigation.

40.     Despite repeated demands, CCI has not received compensation for the aforementioned labor, material, general conditions costs, and tended home office overhead and other costs, under the agreement or otherwise.

41.     Forest and Banc One must pay CCI for all additional general condition costs, and extended home office overhead and other costs it incurred after the completion date set forth in the agreements.

## COUNT V
### (Unjust Enrichment)

42.     CCI hereby incorporates by reference, Paragraphs 1 through 41 of this Complaint, as though set forth at length herein.

43.     CCI conferred a benefit upon Forest and Banc One, by supplying certain labor, materials, and equipment, and incurring other costs, under Project #6B, to construct the Data

10

Center.

44.    The value of the benefit conferred by CCI upon Forest and Banc One, for which CCI has not received payment is $2,985,758.

45.    Forest and Banc One have appreciated, accepted, and retained the benefit conferred upon them by CCI, without paying for the same, and it would be inequitable for Forest and Banc One to retain the benefit conferred, without payment to CCI, for the value of the same.

46.    All conditions precedent have been performed or have occurred.

## COUNT VI
### (6 Del. C. Chapter 35 - CCI)

47.    CCI incorporates by reference, Paragraphs 1 through 46 of this Complaint, as though more fully set forth herein at length.

48.    Upon information and belief, Forest has received funds from Banc One in connection with the agreement between Forest and CCI, for the work performed by CCI under Project #6B.

49.    The agreed upon work to be performed by CCI has been fully performed. CCI has submitted invoices to Forest for such services, and Forest has refused appropriate payment.

50.    Forest has not applied or used those funds by making payments due to CCI, in violation of 6 Del. C. Chapter 35, and has failed to apply monies received by it for work performed by CCI.

51.    A constructive trust is imposed for the benefit of CCI, upon funds received or held

11

by Forest with respect to Project #6B.

52.    In accordance with 6 Del. C. §3509, CCI is entitled to its attorneys' fees;

arbitration costs, if any; expert witness fees; and the costs of this action.


## COUNT VII
### (6 Del. C. Chapter 36 - Banc One)

53.    CCI incorporates by reference, Paragraphs 1 through 52 of this Complaint, as

though more fully set forth at length herein.

54.    Banc One has failed to pay CCI amounts due to CCI for services performed and

materials supplied to Project #6B.

55.    The agreed-upon work to be performed by CCI has been fully performed. CCI has

submitted invoices to Banc One for such services, and Banc One has refused appropriate

payment.

56.    In accordance with 6 Del. C. §3509, CCI is entitled to attorneys' fees, arbitration

costs, if any, expert witness fees, and the costs of this action.

WHEREFORE, Plaintiff CCI Controls, Inc., demands judgment against Defendants Banc

One Building Corporation and Forest Electric Corporation, in the amount of $2,985,758 and such

further amounts which the trier of facts determines to be equitable and just, attorneys' fees, pre-

judgment, post-judgment interest, expert witness fees, arbitration fees (if any), and the costs of

this action, and that an *in rem* judgment for a Mechanics' Lien, in Plaintiff's favor and against

the structure and property that are the subject of the Statement of Claim for Mechanics' Lien, in

the amount of $2,985,758, and such other and further relief as the Court deems appropriate and

just.

Cohen, Seglias, Pallas, Greenhall &
Furman, P.C.

Edward Seglias, Esq. (I. D. No. 2822)
Robert K. Beste, Jr., Esq. (I. D. No. 154)
1007 Orange Street, Nemours Bldg., Ste. 205
Wilmington, DE 19801
(302) 425-5089
Attorneys for Plaintiff

Date: 1/19/05

RKB/msj
06894-0001

13

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No._____ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **AFFIDAVIT OF DEFENSE** |
| Banc One Building Corporation, an Illinois | ) **REQUIRED BY 10 DEL. C. §3901** |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) **NON-ARBITRATION CASE** |
| | ) |
| Defendants. | ) |

## AFFIDAVIT

STATE OF DELAWARE            :
                                              : SS
NEW CASTLE COUNTY           :

BEING FIRST DULY SWORN, according to law, the undersigned does depose and state

the following:

1.  That I am the President of Creedon Controls, Inc.
2.  That I have reviewed the attached Complaint and Statement of Claim for Mechanics' Lien and incorporated exhibits;
3.  That the facts stated in the attached Complaint and Statement of Claim for Mechanics' Lien are true and correct;
4.  That the principal sum of $2,985,758 plus interest, counsel fees, and costs of this action are demanded for Creedon Controls, Inc., and that the sums are justly due and owing.

**CREEDON CONTROLS, INC.**

BY: _Patricia Creedon_

Patricia Creedon, President

SWORN TO AND SUBSCRIBED before me, the 14th day of Apr. l _____, 2005.

_____

Notary Public
My Commission Expires: _N/A_

RKB/msj
06894-0001

# EXHIBIT "A"

**Exhibit IV.E-7**



**Forest Electric Corp.**

*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

May 4, 2004

Patricia Creedon
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

RE:     Bank One – CDC-2
            RFP 6B General Lighting & Power
            RFP 21B IT Cable Conveyance System - Pod A

Dear Ms. Creedon

Enclosed are five (5) copies of a Single Project Construction Services Agreement for the above referenced projects.

Please have an officer of your company sign all five copies for each project and return them to our office as soon as possible. A fully executed copy will then be returned to you.

Should you have any questions, please do not hesitate to contact your undersigned.

Very truly yours,

FOREST ELECTRIC CORP.

Donna M. Lucas
Senior Legal Assistant

cc:     P. Angerame

Exhibit IV.E-2

**SINGLE PROJECT**
**CONSTRUCTION SERVICES AGREEMENT**
**CONTRACT NO. 6B**

Pre-bid meetings will/will not be held.  If applicable, the pre-bid meeting will occur at _____ A.M./P.M. on _____, _____ at CDC #2 – Governor Printz Blvd. Brandywine, DE 19802.

When completed, return five (5) executed copies of this Single Project Construction Services Agreement if by U.S. mail addressed to Owner c/o **Forest Electric Corp., Two Penn Plaza, NY, NY 10121** Mail Code _____; if hand delivered to Owner c/o _____ Floor, _____ in each case for receipt by Owner by or before 3:00 P.M. on _____.

Owner:
Banc One Building Corporation
1 Bank One Plaza
Mail Code IL1-0505
Chicago, IL  60670-0503

Construction Contractor:
**Creedon Controls, Inc.**
**3424 Old Capital Trail**
**Wilmington, DE  19808**

Owner's Project Manager:
Karl Wm. Auwarter, VP, Real Estate

Construction Contractor's Key Staff Members:
Superintendent: _____
Assistant Superintendent: _____

Building Owner/Manager:  None

Site:
**Bank One Core Data Center #2**
**4001 Governor Printz Blvd.**
**Wilmington, Delaware 19802**

Other Key Staff:

| Title | | Name: |
|---|---|---|
| _____: | | _____ |
| _____: | | _____ |
| _____: | | _____ |
| _____: | | _____ |

Construction Manager:
Tishman Construction Corporation of Maryland
666 Fifth Avenue
New York, New York  10103-0256

Construction Contractor's Authorized Signatories:
1. _____
2. _____
3. _____
4. _____

Electrical Trade Manager:
Forest Electric Corp.
Two Penn Plaza
New York, NY  10121

This Single Project Construction Services Agreement is made as of the 2nd day of October, 2003 ("Agreement") between Electrical Trade Manager and Construction Contractor.  This Agreement, including all exhibits attached hereto, together with all drawings, specifications and modifications issued after the execution of this Agreement and delivered to Construction Contractor, are herein called the "Contract" and the "Contract Documents".  Electrical Trade Manager and Construction Contractor agree to the terms and conditions set forth in the Contract Documents.

1

1.  The project ("**Project**") consists generally of, and a general description of the Work is (and, if applicable, a more detailed description of the Work is set forth on Exhibit C), as follows:

    _____**Electrical Work as per RFP 6B – General Lighting & Power**_____

    _____

    _____

2.  Construction Contractor acknowledges it received the plans and specifications that are listed on, and, as applicable, a more detailed description of the Work as set forth on, Exhibit C hereto.

3.  Construction Contractor's obligations under this Agreement will/will not (strike through one) require payment and performance bonds as set forth in Section 6.04 of the General Conditions attached hereto as Exhibit G ("**General Conditions**"). If no selection is clearly made in the preceding sentence, then payment and performance bonds will be required as set forth in Section 6.04 of the General Conditions.

4.  Liquidated damages will/will not (strike through one) be applicable to the Project as set forth in Section 7.03 of the General Conditions. If required, the "**Per Day Liquidated Damage Amount**" is **$5,000 per day**.

5.  The "**Contract Sum**" is Three Million One Hundred Fifty-Two Thousand Dollars ($3,152,000.00). The Contract Sum (subject to additions and deductions by change orders as provided by the Contract Documents) includes all costs and expenses related to the Work incurred by or on behalf of Construction Contractor and any costs or expenses in excess of the Contract Sum in anyway related to the Work or the Contract Documents shall be paid by Construction Contractor. Additionally, upon final completion of the Work at the time of the final payment being made to Construction Contractor, all costs associated with unused allowances and contingencies will be adjusted and returned to the Owner.

6.  Written notice shall be deemed to be duly served if served to the Electrical Trade Manager or Construction Contractor, as the case may be, at the respective address set forth below in accordance with Section 6.03 of the General Conditions:

    If to Construction Manager, addressed to:
    Tishman Construction Corporation of
    Maryland
    666 Fifth Avenue
    New York, New York  10103-0256
    Attention: **William Stanton**

    With a copy to Owner:

    **Bank One**
    **301 N. Walnut Street**
    **Wilmington, DE 19801**
    _____

    Attention: **Karl Auwarter**

    With a copy to:

    Forest Electric Corp.
    4001 Governor Printz Blvd.
    Wilmington, DE 19802
    _____

    Attention: **Paul Angerame**

    If to Construction Contractor, addressed to:
    Creedon Controls, Inc.
    3424 Old Capital Trail
    Wilmington, DE  19808
    _____

    Attention:

    If to Electrical Trade Manager, addressed to:

    Forest Electric Corp.
    Two Penn Plaza
    New York, New York 10121
    Attention: **Philip Altheim**

Single Project Construction Services Agreement  3/03/2003

7.     Electrical Trade Manager hereby represents to Construction Contractor that (i) Owner has retained Electrical Trade Manager to act as Owner's construction managers to arrange for the construction of the Project; and (ii) Electrical Trade Manager has full power and authority and is duly authorized to execute and deliver this Contract with and to Construction Contractor upon the terms and conditions set forth herein.    All communications from Owner to Construction Contractor shall be delivered either (i) to Electrical Trade Manager with instructions to forward such communications to Construction Contractor, or (ii) directly to Construction Contractor with a simultaneous notification to Electrical Trade Manager.  All written approvals and actions required of or permitted to be taken by Owner under the Contract shall be effective if executed by either Owner or by Electrical Trade Manager acting on Owner's behalf, and Construction Contractor shall be permitted to rely on all such written approvals unless and until Owner (and not Electrical Trade Manager) notifies Construction Contractor in writing to the contrary. Construction Contractor shall be entitled to rely on information communicated through the Electrical Trade Manager and work with the Electrical Trade Manager until Owner provides written notice of the termination of such Electrical Trade Manager's responsibilities or a substitution of such Electrical Trade Manager.

This Agreement shall be effective only when (i) Electrical Trade Manager executes and delivers this Single Project Construction Services Agreement to Construction Contractor, (ii) all appropriate blanks contained herein are completed, and (iii) each of the Exhibits A, B, C, D, E, F, G and H (each of which is hereby incorporated herein) has been completed and attached hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

CONSTRUCTION CONTRACTOR:          OWNER:

FIRM:  CREEDON CONTROLS, INC.      BANC ONE BUILDING CORPORATION,
                              an Illinois Corporation

                              By:     Forest Electric Corp. as Banc One Building
                                             Corporation's agent and Electrical Trade
                                           Manager.

By: _____         By:_____

Name: _____      Name: **Philip Altheim**_____

Title: _____       Title: **Chairman/CEO**_____

<u>**LIST OF EXHIBITS**</u>
<u>**TO**</u>
<u>**SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT**</u>

EXHIBIT A      COMPLETION SCHEDULE

EXHIBIT B      SCHEDULE OF VALUES AND ANTICIPATED DRAW SCHEDULE

EXHIBIT C      PLANS AND SPECIFICATIONS

EXHIBIT D      WORK AREA

EXHIBIT E      MAXIMUM CHANGE ORDER RATES FOR OVERHEAD, PROFIT, CONTRACTOR'S FEE, AND GENERAL CONDITIONS

EXHIBIT F      RATES AND UNIT PRICES

EXHIBIT G      GENERAL CONDITIONS TO SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT

EXHIBIT H      FOREST ELECTRIC RFP 6B BEST AND FINAL PRICE

EXHIBIT A

COMPLETION SCHEDULE

**Project Completion Date - September 15, 2004**

<u>EXHIBIT B</u>

<u>SCHEDULE OF VALUES AND ANTICIPATED DRAW SCHEDULE</u>

Note:    These schedules must specifically separate out the Cost of the Work, and Construction Contractor's Fee.

EXHIBIT C

PLANS AND SPECIFICATIONS

Attached Rider "B", List of Drawings and Specifications dated July 14, 2003 and all bulletins and addenda issued thereafter.  Refer also to RFP 6B.

# Bank One Core Data Center II
## Brandywine, Delaware
## List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| | **CIVIL** | |
| C-201 | General Development Plan - Cover Sheet | |
| C-202 | Lines and Grades Plan | April 30, 2003 |
| C-203 | Lines and Grades Plan | April 30, 2003 |
| C-204 | Erosion and Sediment Control Plan | April 30, 2003 |
| C-205 | Erosion and Sediment Control Plan | April 30, 2003 |
| C-206 | Construction Details | April 30, 2003 |
| C-207 | Construction Details | April 30, 2003 |
| C-208 | Construction Details | April 30, 2003 |
| C-209 | Construction Details | April 30, 2003 |
| C-210 | Construction Details and Notes | April 30, 2003 |
| C-301 | Entrance/Exit Plan | April 30, 2003 |
| C-302 | Entrance/Exit Plan | |
| C-303 | Entrance/Exit Plan | July 14, 2003 |
| C-304 | Entrance/Exit Plan | July 14, 2003 |
| C-401 | Fire Marshall Plan | July 14, 2003 |
| C-501 | Sanitary Sewer Construction Plan | April 30, 2003 |
| C-502 | Sanitary Sewer Construction Plan | |
| C-503 | Sanitary Sewer Construction Plan | |
| | **LANDSCAPE** | |
| L101 | Planting and Seeding Plan | |
| L102 | Planting and Seeding Plan | April 30, 2003 |
| | | April 30, 2003 |
| | **ARCHITECTURAL** | |
| A00.00 | Drawing Index, Vicinity Map, Location Map & Project Information | |
| A00.01 | Graphic Symbols and Abbreviations | July 14, 2003 |
| A00.20 | Overall Egress Plan and Occupancy Information | July 14, 2003 |
| A00.50 | Site Plan | July 14, 2003 |
| A00.51 | Enlarged Site Plans | July 14, 2003 |
| A00.52 | Site Elevations and Details | July 14, 2003 |
| A01.01 | Overall Slab Plan | July 14, 2003 |
| A01.02 | Overall Shell Construction Plan | June 11, 2003 |
| A01.03 | Overall Interior Construction Plan | July 14, 2003 |
| A01.04 | Overall Roof Plan | July 14, 2003 |
| A01.05 | Overall Roof Equipment Plan | June 11, 2003 |
| A02.01.1 | First Floor Slab Plan – Area A | June 11, 2003 |
| A02.01.2 | First Floor Slab Plan – Area B | July 14, 2003 |
| A02.01.3 | First Floor Slab Plan – Administration Area | July 14, 2003 |
| A02.02.1 | First Floor Shell Construction Plan - Area A | July 14, 2003 |
| A02.02.2 | First Floor Shell Construction Plan - Area B | June 11, 2003 |
| A02.02.3 | First Floor Shell Construction Plan - Administration Area | July 14, 2003 |
| A02.03.1 | First Floor Interior Construction Plan - Area A | July 14, 2003 |
| A02.03.2 | First Floor Interior Construction Plan - Area B | July 14, 2003 |
| A02.03.3 | First Floor Interior Construction Plan - Administration Area | July 14, 2003 |
| A02.04.1 | Roof Plan - Area A | July 14, 2003 |
| A02.04.2 | Roof Plan - Area B | July 14, 2003 |
| A02.04.3 | Roof Plan - Administration Area | July 14, 2003 |
| A02.05.1 | Roof Equipment Plan - Area A | July 14, 2003 |
| A02.05.2 | Roof Equipment Plan - Area B | July 14, 2003 |
| A02.05.3 | Roof Equipment Plan - Administration Area | July 14, 2003 |
| A02.10 | Enlarged Generator Plans | June 11, 2003 |
| A03.01 | Enlarged Power & Communication Plans | July 14, 2003 |
| A04.01 | Enlarged Reflected Ceiling Plans | July 14, 2003 |
| A05.00.1 | Room Finish Schedule & Finish Schedule | July 14, 2003 |
| A05.01 | Enlarged Finish Plans | July 14, 2003 |
| A06.01 | Enlarged Furniture Plans | July 14, 2003 |
| A08.00 | Enlarged Toilet Room Plans | July 14, 2003 |
| A08.10 | Enlarged Vestibule Plans, Elevations, & Details | July 14, 2003 |
| A09.00 | Exterior Building Elevations | July 14, 2003 |
| A09.10 | Building Sections | July 14, 2003 |
| A09.11 | Building Sections | July 14, 2003 |
| A09.20 | Enlarged Exterior Elevations-Administration Area | July 14, 2003 |
| A09.21 | Enlarged Exterior Elevations | July 14, 2003 |
| A09.22 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.23 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.24 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.30 | Wall Sections | June 11, 2003 |
| A09.31 | Wall Sections | July 14, 2003 |
| A09.32 | Wall Sections - Administration Area | July 14, 2003 |
| A10.00 | Stair #1 - Plans & Sections | July 14, 2003 |
| A10.01 | Stair #2 - Plans & Sections | July 14, 2003 |

Page 1 of 8

**Bank One Core Data Center II**
**Brandywine, Delaware**
**List of Drawings and Specifications**

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| A11.00 | Interior Elevations | July 14, 2003 |
| A11.01 | Interior Elevations | July 14, 2003 |
| A11.02 | Interior Elevations | July 14, 2003 |
| A11.10 | Interior Elevations - Toilet Rooms | July 14, 2003 |
| A11.11 | Interior Elevations-Break & Service Counters, Admin. Areas | July 14, 2003 |
| A11.12 | Interior Elevations | July 14, 2003 |
| A12.00 | Foundation Details | June 11, 2003 |
| A12.01 | Precast Concrete Panel Types | July 14, 2003 |
| A12.02 | Precast Concrete Panel Details | July 14, 2003 |
| A12.03 | Metal Panel & Curtain Wall Sectional Details - Administration Area | July 14, 2003 |
| A12.04 | Metal Panel & Curtain Wall Plan Details - Administration Area | July 14, 2003 |
| A12.10 | Exterior Details - Generator Shaft - North | July 14, 2003 |
| A12.11 | Exterior Details - Generator Shaft - South | July 14, 2003 |
| A12.12 | Expansion Joint Details | July 14, 2003 |
| A12.13 | Expansion Joint Details | July 14, 2003 |
| A12.20 | Roof Details | July 14, 2003 |
| A12.21 | Roof Details - Administration Area | July 14, 2003 |
| A13.00 | Partition Types | July 14, 2003 |
| A13.01 | Partition Types & Details | July 14, 2003 |
| A13.20 | Door Schedule | July 14, 2003 |
| A13.30 | Door Types & Door Details | July 14, 2003 |
| A13.31 | Door Details | July 14, 2003 |
| A13.40 | Millwork Details | July 14, 2003 |
| A13.50 | Ceiling Details | July 14, 2003 |
| A13.60 | Raised Floor Details & Misc. Details | July 14, 2003 |
| | | |
| | **STRUCTURAL** | |
| S00.00 | General Notes | June 11, 2003 |
| S01.01.1 | Foundation Plan - Area A | July 14, 2003 |
| S01.01.2 | Foundation Plan - Area B | July 14, 2003 |
| S01.01.3 | Foundation Plan - Area C | July 14, 2003 |
| S01.02.1 | Roof Framing Plan - Area A | July 14, 2003 |
| S01.02.2 | Roof Framing Plan - Area B | July 14, 2003 |
| S01.02.3 | Roof Framing Plan - Area C | July 14, 2003 |
| S02.00 | Foundation Details | July 14, 2003 |
| S02.01 | Foundation Details | June 11, 2003 |
| S02.02 | Foundation Details | June 11, 2003 |
| S02.03 | Retaining Wall Plan and Details | June 11, 2003 |
| S03.00 | Steel Column Schedule and Details | June 11, 2003 |
| S03.01 | Steel Bracing Elevations | July 14, 2003 |
| S03.02 | Bracing Details | June 11, 2003 |
| S03.03 | Typical Steel Details | June 11, 2003 |
| S03.04 | Typical Composite Details | June 11, 2003 |
| S03.05 | Steel Details | June 11, 2003 |
| S03.06 | Steel Details | June 11, 2003 |
| S05.00 | Masonry Details | June 11, 2003 |
| S05.01 | Masonry Details | June 11, 2003 |
| | | |
| | **MECHANICAL DRAWINGS** | |
| M001 | Legends, Abbreviations & Symbols | July 14, 2003 |
| M101-A | Floor Plan - Ductwork - Part A | July 14, 2003 |
| M101-B | Floor Plan - Ductwork - Part B | July 14, 2003 |
| M101-C | Floor Plan - Ductwork - Part C (Admin) | July 14, 2003 |
| M102-A | Roof Plan - Part A | July 14, 2003 |
| M102-B | Roof Plan - Part B | July 14, 2003 |
| M102-C | Roof Plan - Part C (Admin) | July 14, 2003 |
| M201-A | Floor Plan - Piping - Part A | July 14, 2003 |
| M201-B | Floor Plan - Piping - Part B | July 14, 2003 |
| M301 | Part. Plan Chiller Room A | July 14, 2003 |
| M302 | Part. Plan Chiller Room B | July 14, 2003 |
| M303 | Part. Plan Cooling Towers & Sections | July 14, 2003 |
| M304 | Under Floor Piping Details | July 14, 2003 |
| M305 | Part. Plan Fan Room #1 | July 14, 2003 |
| M306 | Part. Plan Fan Room #2 | July 14, 2003 |
| M307 | Part. Plan Generator Room | July 14, 2003 |
| M308 | Chiller Room Sections | July 14, 2003 |
| l01 | Chilled & Condenser Water Piping Flow Diagrams | July 14, 2003 |
| M402 | Air Flow Schematics - 1 | July 14, 2003 |
| M403 | Air Flow Schematics - 2 | July 14, 2003 |
| M404 | Motor Control Centers | July 14, 2003 |
| M405 | Wiring Diagrams | July 14, 2003 |

**Bank One Core Data Center II**
**Brandywine, Delaware**
**List of Drawings and Specifications**

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| M502 | Ductwork Details - 2 | |
| M503 | Piping Details - 1 | July 14, 2003 |
| M504 | Piping Details - 2 | July 14, 2003 |
| M601 | HVAC Equipment Schedules - 1 | July 14, 2003 |
| M602 | HVAC Equipment Schedules - 2 | July 14, 2003 |
| M603 | HVAC Equipment Schedules - 3 | July 14, 2003 |
| M604 | HVAC Equipment Schedules - 4 | July 14, 2003 |
| M605 | HVAC Equipment Schedules - 5 | July 14, 2003 |
| M700 | HVAC Control Points | July 14, 2003 |
| M701 | HVAC Control - Module Riser | July 14, 2003 |
| M702 | HVAC Control Points List - 1 | July 14, 2003 |
| M703 | HVAC Control Points List - 2 | July 14, 2003 |
| M704 | HVAC Control Points List - 3 | July 14, 2003 |
| M705 | HVAC Control Points List - 4 | July 14, 2003 |
| M706 | HVAC Control Points List - 5 | July 14, 2003 |
| M707 | HVAC Control Points List - 6 | July 14, 2003 |
| M708 | HVAC Control Points List - 7 | July 14, 2003 |
| M709 | HVAC Control Points List - 8 | July 14, 2003 |
| M710 | HVAC Control Points List - 9 | July 14, 2003 |
| M711 | HVAC Control Points List - 10 | July 14, 2003 |
| M712 | HVAC Control Points List - 11 | July 14, 2003 |
| M713 | HVAC Control Points List - 12 | July 14, 2003 |
| M714 | HVAC Control Points List - 13 | July 14, 2003 |
| | | |
| | **PLUMBING** | |
| P001 | Symbol List, General Notes, Schedules and Details | June 11, 2003 |
| P100A | Underground Floor Plan - Part A | July 14, 2003 |
| P100B | Underground Floor Plan - Part B | May 23, 2003 |
| P100C | Underground Floor Plan - Part C | July 14, 2003 |
| P101-A | Floor Plan - Part A | June 11, 2003 |
| P101-B | Floor Plan - Part B | July 14, 2003 |
| P101-C | Floor Plan - Part C | July 14, 2003 |
| P102-A | Roof Plan - Part A | July 14, 2003 |
| P102-B | Roof Plan - Part B | July 14, 2003 |
| P102-C | Roof Plan - Part C | June 11, 2003 |
| P201 | Partial Underground Floor Plan | May 23, 2003 |
| P202 | Partial Underground Floor Plans | July 14, 2003 |
| P203 | Partial Floor Plan | July 14, 2003 |
| P204 | Partial Floor Plan | July 14, 2003 |
| P301 | Water Storage Tank Detail | July 14, 2003 |
| P302 | Sanitary Riser Diagram | July 14, 2003 |
| P303 | Sanitary Riser Diagram | July 14, 2003 |
| P304 | Domestic Water Riser Diagram | |
| | | |
| | **FIRE PROTECTION DRAWINGS** | |
| FP001 | Symbol List, General Notes, Schedules and Details | July 14, 2003 |
| FP101-A | Floor Plan - Part A | July 14, 2003 |
| FP101-B | Floor Plan - Part B | July 14, 2003 |
| FP101-C | Floor Plan - Part C | July 14, 2003 |
| FP201 | Partial Floor Plans and Details | July 14, 2003 |
| | | |
| | **ELECTRICAL** | |
| E001 | Abbreviations and Symbol List | May 23, 2003 |
| E002 | General Notes and Lighting Fixture Schedule | July 14, 2003 |
| ES001 | Electrical Site Plan | May 23, 2003 |
| E101-A | Lighting Floor Plan - Part A | July 14, 2003 |
| E101-B | Lighting Floor Plan - Part B | July 14, 2003 |
| E101-C | Lighting Floor Plan - Part C | July 14, 2003 |
| E101-D | Lighting Floor Plan - Part D | July 14, 2003 |
| E101-E | Lighting Floor Plan - Part E | July 14, 2003 |
| E101-F | Lighting Floor Plan - Part F | July 14, 2003 |
| E101-G | Lighting Floor Plan - Part G | July 14, 2003 |
| E101-H | Lighting Floor Plan - Part H (Admin. Area) | July 14, 2003 |
| E102 | Lighting Site Plan | July 14, 2003 |
| E202-A | Power Floor Plan - Part A | May 23, 2003 |
| E202-B | Power Floor Plan - Part B | May 23, 2003 |
| E202-C | Power Floor Plan - Part C | May 23, 2003 |
| E202-D | Power Floor Plan - Part D | May 23, 2003 |
| E202-E | Power Floor Plan - Part E | May 23, 2003 |
| E202-F | Power Floor Plan - Part F | May 23, 2003 |
| E202-G | Power Floor Plan - Part G | May 23, 2003 |
| E203-A | Power Floor Plan-RPP's, Receptacles and Phones Part-A | July 14, 2003 |

# Bank One Core Data Center II
## Brandywine, Delaware
## List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| E203-C | Power Floor Plan-RPP's, Receptacles and Phones Part-C | |
| E203-D | Power Floor Plan-RPP's, Receptacles and Phones Part-D | July 14, 2003 |
| E203-E | Power Floor Plan-RPP's, Receptacles and Phones Part-E | July 14, 2003 |
| E203-F | Power Floor Plan-RPP's, Receptacles and Phones Part-F | July 14, 2003 |
| E203-G | Power Floor Plan-RPP's, Receptacles and Phones Part-G | July 14, 2003 |
| E203-H | Power Floor Plan-RPP's, Receptacles and Phones Part-H-Admin Area | July 14, 2003 |
| E204-A | Power & Lighting Roof Plan-Part-A | July 14, 2003 |
| E204-B | Power & Lighting Roof Plan-Part-B | July 14, 2003 |
| E204-C | Power & Lighting Roof Plan-Part-C | July 14, 2003 |
| E302-A | Underground Grounding Plan - Part A | July 14, 2003 |
| E302-B | Underground Grounding Plan - Part B | July 14, 2003 |
| E302-C | Underground Grounding Plan - Part C (Admin. Area) | July 14, 2003 |
| E303-A | Lightning Protection Roof Plan-Part A | July 14, 2003 |
| E303-B | Lightning Protection Roof Plan-Part B | July 14, 2003 |
| E303-C | Lightning Protection Roof Plan-Part C - Admin Area | July 14, 2003 |
| E304-A | Fire Alarm Floor Plan-Part A | July 14, 2003 |
| E304-B | Fire Alarm Floor Plan-Part B | July 14, 2003 |
| E304-C | Fire Alarm Floor Plan-Part C (Admin) | July 14, 2003 |
| E305-A | ASSD Floor Plan-Part A | July 14, 2003 |
| E305-B | ASSD Floor Plan-Part B | July 14, 2003 |
| E306-A | Power Underground Conduit Layout Plan - Part A | July 14, 2003 |
| E306-B | Power Underground Conduit Layout Plan - Part B | May 23, 2003 |
| E307-A | Telecom, Control, Electrical Power Monitoring, Underground Conduit Systems Plan - Part A | May 23, 2003 |
| E307-B | Telecom, Control, Electrical Power Monitoring, Underground Conduit Systems Plan - Part B | May 23, 2003 |
| E308-A | EPMS and BMS Lan Cable Plan - Part A | May 23, 2003 |
| E308-B | EPMS and BMS Lan Cable Plan - Part B | July 14, 2003 |
| E401-A | Main One Line Diagram | July 14, 2003 |
| E401-B | Distribution One Line Diagram - Computer Substations 1A, 1B, 2A, 2B, MLBA & MLBB | May 23, 2003 |
| E401-C | Distribution One Line Diagram - Computer Substations 3A, 3B, 4A & 4B | May 23, 2003 |
| E401-E | Distribution One Line Diagram - Mechanical Substations 1A and 1B | May 23, 2003 |
| E401-F | Distribution One Line Diagram - Mechanical Substations 2A and 2B | May 23, 2003 |
| E401-H | Distribution One Line Diagram - Critical Output Distribution Switchgear 1A and 1B | July 14, 2003 |
| E401-I | Distribution One Line Diagram - Critical Output Distribution Switchgear 2A and 2B | May 23, 2003 |
| E401-J | Distribution One Line Diagram - Critical Output Distribution Switchgear 3A and 3B | May 23, 2003 |
| E401-K | Distribution One Line Diagram - Critical Output Distribution Switchgear 4A and 4B | May 23, 2003 |
| E402 | Part One Line Diagrams for Kirk Key and Synch. Check Relaying | May 23, 2003 |
| E403 | 12kV Distribution Switchgear "MD-A" & "MD-B" Relay Diagrams | July 14, 2003 |
| E404 | Generator Switchgear and Generator Relay Diagrams | July 14, 2003 |
| E405-A | EMPS Typical for 43.5kV, 13.8kV A & B MV CB | July 14, 2003 |
| E405-B | EPMS Main Distribution Switchgear 1 | July 14, 2003 |
| E405-C | EPMS Main Distribution Switchgear 2 | July 14, 2003 |
| E405-D | EPMS Diesel Generator | July 14, 2003 |
| E405-E | EPMS Diesel Generator Switchgear | July 14, 2003 |
| E405-F | EPMS Computer Substation Side A & B | July 14, 2003 |
| E405-G | EPMS Mechanical Substation Side A & B | July 14, 2003 |
| E405-H | EPMS Loadbank Substation A & B | July 14, 2003 |
| E405-I | EPMS UPS & SSC Output Switchgear | July 14, 2003 |
| E405-J | EPMS Critical Output Distribution Switchgear | July 14, 2003 |
| E405-K | EPMS Alt Critical Output  Switchgear | July 14, 2003 |
| E405-L | EPMS UPS MB A & B | July 14, 2003 |
| E405-M | RPP | July 14, 2003 |
| E406-A | EPMS Screen Flow and Summary Description | July 14, 2003 |
| E406-B | EPMS #1 Screen Name List | July 14, 2003 |
| E406-C | EPMS #2 Screen Name List | July 14, 2003 |
| E406-D | EPMS #3 Screen Name List | July 14, 2003 |
| E406-E | EPMS #4 Screen Name List | July 14, 2003 |
| E407-A | EPMS System Cabling and Details | July 14, 2003 |
| E407-B | EPMS & BMS Lan Details | July 14, 2003 |
| E408 | EPMS GPS System Diagrams | July 14, 2003 |
| E409 | Control Block Diagram | July 14, 2003 |
| E410 | Control Wiring Block Diagram | July 14, 2003 |
| E411-A | EPO Diagram-Data Center 'A' and Generator Rooms 1A and 1B | July 14, 2003 |
| E411-B | EPO Diagram-Data Center 'B' and Generator Rooms 2A and 2B | July 14, 2003 |
| E412 | 125VDC Battery System | July 14, 2003 |
| E422 | Fire Alarm and ASSD System Connection Diagram and Mounting Details | July 14, 2003 |
| E501 | Lighting Panel Schedules | July 14, 2003 |
| E502-A | UPS Receptacle Panel Schedules | July 14, 2003 |
| E502-B | UPS Receptacle Panel Schedules | July 14, 2003 |
| E503 | Receptacle Panel Schedules | July 14, 2003 |
| E504-A | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-B | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-C | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-D | Mechanical Equipment Panel Schedules | July 14, 2003 |

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| E505-A | PP Panel Schedules | |
| E505-B | PP Panel Schedules | July 14, 2003 |
| E506 | Miscellaneous Mechanical Loads | July 14, 2003 |
| E507-A | DC "A" Panel Schedules | July 14, 2003 |
| E507-B | DC "B" Panel Schedules | July 14, 2003 |
| E601 | Grounding Details Part 1 | July 14, 2003 |
| E602 | Grounding Details Part 2 | May 23, 2003 |
| E603 | Lighting Control Panel Schedules and Details | May 23, 2003 |
| E604 | Smoke Detection and Fire Alarm Details | |
| E605 | Lighting Details | July 14, 2003 |
| E606 | Lighting Protection Details | July 14, 2003 |
| E607 | Power Underground Conduit Sections and Details | July 14, 2003 |
| E610 | Switchgear Elevations | May 23, 2003 |
| E611 | Switchgear Elevations | July 14, 2003 |
| E612 | Electrical Details | July 14, 2003 |
| E613 | Underfloor Receptacle Details | July 14, 2003 |
| | | |
| SE001 | SECURITY DRAWINGS | |
| SE101-A | Security Symbols, Drawing List and Notes | |
| SE101-B | Floor Security Plan - Part A | May 23, 2003 |
| SE101-C | Floor Security Plan - Part B | May 23, 2003 |
| SE401 | Security Floor Plan - Part C - Admin. Area & Site Gate Security Part Plan | May 23, 2003 |
| SE601 | Security Block Diagrams & Riser Diagram | May 23, 2003 |
| SE602 | Security System Details Sheet #1 | July 14, 2003 |
| | Security System Details Sheet #2 | July 14, 2003 |
| | | July 14, 2003 |
| F101 | FUEL OIL | |
| F102 | Part Site and Generator Room Plan - Gen. Rms 1A and 2A | |
| F103 | Part Site and Generator Room Plan - Gen. Rms 1B and 2B | May 23, 2003 |
| F401 | Part Plans and Sections | May 23, 2003 |
| F402 | Fuel Oil Flow Diagram - Gen. Rms 1A and 1B | July 14, 2003 |
| F403 | Fuel Oil Flow Diagram - Gen. Rms 2A and 2B | April 30, 2003 |
| F404 | Fuel Oil System Connection Diagrams | April 30, 2003 |
| F405 | Fuel Oil System Monitoring System | April 30, 2003 |
| F501 | Fuel Oil Control Diagram | April 30, 2003 |
| F502 | Underground Fuel Oil Storage Tank Details | July 14, 2003 |
| | Details | April 30, 2003 |
| | | April 30, 2003 |
| DIVISION 1 | GENERAL REQUIREMENTS | |
| 01100 | Summary | |
| 01140 | Work Restrictions | April 18, 2003 |
| 01210 | Allowances | April 18, 2003 |
| 01250 | Contract Modification Procedures | April 18, 2003 |
| 01270 | Unit Prices | April 18, 2003 |
| 01290 | Payment Procedures | April 18, 2003 |
| 01310 | Project Management And Coordination | April 18, 2003 |
| 01320 | Construction Progress Documentation | April 18, 2003 |
| 01330 | Submittal Procedures | April 18, 2003 |
| 01331 | Coordination Drawings CAD Waiver | April 18, 2003 |
| 01400 | Quality Requirements | April 18, 2003 |
| 01420 | References | April 18, 2003 |
| 01500 | Temporary Facilities And Controls | April 18, 2003 |
| 01600 | Product Requirements Substitution Request | April 18, 2003 |
| 01700 | Execution Requirements | April 18, 2003 |
| 01731 | Cutting And Patching | April 18, 2003 |
| 01770 | Closeout Procedures | April 18, 2003 |
| 01771 | Final Cleaning | April 18, 2003 |
| | | June 11, 2003 |
| DIVISION 2 | SITE CONSTRUCTION | |
| 02100 | Site Preparation | |
| 02200 | Site Excavation, Filling and Grading | April 18, 2003 |
| 02270 | Temporary Erosion and Sediment Control Measures | April 18, 2003 |
| 02271 | RIPRAP | April 18, 2003 |
| 02430 | Catch Basins | April 30, 2003 |
| 02484 | Topsoiling | April 30, 2003 |
| 02486 | Fertilizing and Seeding | April 30, 2003 |
| 02489 | Mulching | April 30, 2003 |
| 02490 | Sodding | April 30, 2003 |
| 492 | Watering | April 30, 2003 |
| 02504 | Pavement Milling | April 30, 2003 |
| 02510 | Concrete Sidewalks | April 30, 2003 |
| 02511 | Seal Coat | April 30, 2003 |

**Bank One Core Data Center II**
**Brandywine, Delaware**
**List of Drawings and Specifications**

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| 02513 | Bituminous Concrete Paving, Hot-Mixed | April 30, 2003 |
| 02514 | Adjusting and Repairing Existing Catch Basins and Manholes | April 30, 2003 |
| 02520 | Portland Cement Concrete Paving | April 30, 2003 |
| 02528 | Concrete Curb | April 30, 2003 |
| 02579 | Pavement Millings | April 30, 2003 |
| 02605 | Manholes | April 30, 2003 |
| 02610 | Reinforced Concrete Pipe/HDPE | April 30, 2003 |
| 02612 | PVC Sanitary Sewer and Pipe Fittings | April 30, 2003 |
| 02620 | Subdrainage | April 30, 2003 |
| 02622 | PVC Storm Sewer Pipe and Fittings | April 30, 2003 |
| 02665 | Ductile Iron Pipe and Fittings | April 30, 2003 |
| 02668 | Water Valves and Valve Boxes | April 30, 2003 |
| 02669 | Standard Fire Hydrant | April 30, 2003 |
| 02721 | Junction Boxes | April 30, 2003 |
| 02900 | General Planting | April 30, 2003 |
| 02910 | Topsoil and Seeding | April 30, 2003 |
| | | |
| DIVISION 3 | CONCRETE | |
| 03100 | Concrete Formwork | April 30, 2003 |
| 03200 | Concrete Reinforcement and Embedded Assemblies | April 30, 2003 |
| 03300 | Concrete | April 30, 2003 |
| 03450 | Plant-Precast Architectural Concrete | May 7, 2003 |
| | | |
| DIVISION 4 | MASONRY | |
| 04820 | Unit Masonry Assemblies | June 11, 2003 |
| | | |
| DIVISION 5 | METALS | |
| 05120 | Structural Steel | May 7, 2003 |
| 05300 | Metal Deck | May 7, 2003 |
| 05511 | Metal Stairs | June 11, 2003 |
| 05521 | Exterior Pipe and Tube Railings | June 11, 2003 |
| 05811 | Architectural Joint Systems | June 11, 2003 |
| | | |
| DIVISION 6 | WOOD & PLASTICS | |
| 06105 | Miscellaneous Carpentry | July 14, 2003 |
| | | |
| DIVISION 7 | THERMAL AND MOISTURE PROTECTION | |
| 07115 | Bituminous Dampproofing | June 11, 2003 |
| 07210 | Building Insulation | June 11, 2003 |
| 07412 | Metal Wall Panels | June 11, 2003 |
| 07552 | SBS-Modified Bituminous Membrane Roofing | June 11, 2003 |
| 07620 | Sheet Metal Flashing and Trim | June 11, 2003 |
| 07716 | Roof Expansion Assemblies | June 11, 2003 |
| 07720 | Roof Accessories | June 11, 2003 |
| 07841 | Through-Penetration Firestop Systems | April 30, 2003 |
| 07900 | Joint Sealers | April 30, 2003 |
| 07920 | Joint Sealants | June 11, 2003 |
| | | |
| DIVISION 8 | DOORS AND WINDOWS | |
| 08111 | Steel Doors and Frames | June 11, 2003 |
| 08125 | Interior Aluminum Frames | July 14, 2003 |
| 08211 | Flush Wood Doors | July 14, 2003 |
| 08311 | Access Doors and Frames | July 14, 2003 |
| 08331 | Overhead Coiling Doors | June 11, 2003 |
| 08411 | Aluminum Entrances and Storefronts | June 11, 2003 |
| 08700 | Door Hardware (CDC2) | June 11, 2003 |
| 08711 | Door Hardware | July 14, 2003 |
| 08716 | Power Door Opoerators | July 14, 2003 |
| 08800 | Glazing | June 11, 2003 |
| 08911 | Structural Glazed Aluminum Curtain Wall | June 11, 2003 |
| | | |
| DIVISION 9 | FINISHES | |
| 09260 | Gypsum Board Assemblies | June 11, 2003 |
| 09310 | Ceramic Tile | July 14, 2003 |
| 09511 | Acoustical Panel Ceilings | July 14, 2003 |
| 09514 | Acoustical Metal Pan Ceiling | July 14, 2003 |
| 09654 | Linoleum Floor Coverings | July 14, 2003 |
| 09681 | Carpet Tile | July 14, 2003 |
| 09922 | Interior Painting (Professional Line Products) | July 14, 2003 |
| 09960 | High-Performance Coatings | June 11, 2003 |

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

DWG./Spec No.

Description

Date

| | | |
|---|---|---|
| **DIVISION 10** | **SPECIALTIES** | |
| 10101 | Presentation Dry Erase Wallcovering | |
| 10155 | Toilet Compartment | July 14, 2003 |
| 10200 | Louvers and Vents | July 14, 2003 |
| 10265 | Impact-Resistant Wall Protection | June 11, 2003 |
| 10270 | Access Flooring | July 14, 2003 |
| 10505 | Metal Lockers | July 14, 2003 |
| 10520 | Fire-Protection Specialties | July 14, 2003 |
| 10605 | Wire Mesh Partitions | July 14, 2003 |
| 10801 | Toilet and Bath Accessories | July 14, 2003 |
| | | July 14, 2003 |
| **DIVISION 11** | **EQUIPMENT** | |
| 11010 | Window Washing Systems | |
| 11160 | Loading Dock Equipment | July 14, 2003 |
| | | June 11, 2003 |
| **DIVISION 12** | **FURNISHINGS** | |
| 12484 | Floor Mats and Frames | |
| 12491 | Horizontal Louver Blinds | July 14, 2003 |
| | | July 14, 2003 |
| **DIVISION 13** | **SPECIAL CONSTRUCTION** | |
| 13700 | SECURITY ACCESS AND SURVEILLANCE | |
| 13701 | ACCESS CONTROL & ALARM MONITORING SYSTEMS | July 14, 2003 |
| 13702 | CLOSED-CIRCUIT TELEVISION SYSTEMS | July 14, 2003 |
| | | July 14, 2003 |
| **DIVISION 14** | **CONVEYING SYSTEMS** | |
| 14610 | Fixed Hoists | |
| | | July 14, 2003 |
| **DIVISION 15** | **MECHANICAL** | |
| 15020H | HVAC REQUIREMENTS | |
| 15145H | HANGERS AND SUPPORTS | July 14, 2003 |
| 15170H | MOTORS | July 14, 2003 |
| 15175H | MOTOR CONTROLLERS | July 14, 2003 |
| 15180H | MOTOR-CONTROL CENTERS | July 14, 2003 |
| 15190H | HVAC IDENTIFICATION | July 14, 2003 |
| 15200H | INSULATION | July 14, 2003 |
| 15241H | HVAC VIBRATION CONTROLS AND SEISMIC RESTRAINTS | July 14, 2003 |
| 15491H | FUEL-OIL SYSTEM | July 14, 2003 |
| 15500H | PIPING SYSTEMS | July 14, 2003 |
| 15540H | HVAC PUMPS | July 14, 2003 |
| 15545H | WATER TREATMENT | July 14, 2003 |
| 15560H | LIQUID LEAK DETECTION SYSTEMS | July 14, 2003 |
| 15575H | BREECHINGS, CHIMNEYS AND STACKS | July 14, 2003 |
| 15600H | REFRIGERATION SYSTEM EQUIPMENT | July 14, 2003 |
| 15761H | AIR COILS | July 14, 2003 |
| 15784H | COMPUTER-ROOM AIR-CONDITIONING UNITS INSTALLATION | July 14, 2003 |
| 15805H | DIESEL ENGINE INSTALLATION | July 14, 2003 |
| 15810H | HUMIDIFIERS | July 14, 2003 |
| 15832H | FINNED-TUBE RADIATION | July 14, 2003 |
| 15835H | UNIT HEATERS | July 14, 2003 |
| 15850H | FANS | July 14, 2003 |
| 15854H | CENTRAL-STATION AIR-HANDLING UNITS | July 14, 2003 |
| 15856H | INTAKE AND RELIEF VENTILATORS | July 14, 2003 |
| 15890H | SHEET METAL WORK | July 14, 2003 |
| 15933H | AIR TERMINALS | July 14, 2003 |
| 15990H | TESTING, ADJUSTING AND BALANCING | July 14, 2003 |
| | | July 14, 2003 |
| **DIVISION 15** | **Plumbing** | |
| 15020P | PLUMBING REQUIREMENTS | |
| 15100P | PLUMBING VALVES | July 14, 2003 |
| 15135P | PLUMBING METERS AND GAGES | July 14, 2003 |
| 15145P | Plumbing Hangers and Supports | July 14, 2003 |
| 15170P | PLUMBING MOTORS | June 11, 2003 |
| 15190P | Plumbing Identification | July 14, 2003 |
| 15241P | Plumbing Vibration Controls and Seismic Restraints | June 11, 2003 |
| 15260P | Plumbing Insulation | June 11, 2003 |
| 15321P | ELECTRIC-DRIVE, VERTICAL FIRE PUMPS | June 11, 2003 |
| 15325P | FIRE-SUPPRESSION SPRINKLERS | July 14, 2003 |
| 5411P | PLUMBING WATER DISTRIBUTION PIPING | July 14, 2003 |
| 5420P | PLUMBING DRAINAGE AND VENT PIPING | July 14, 2003 |
| 15430P | PLUMBING SPECIALTIES | July 14, 2003 |
| 15440P | Plumbing Fixtures | June 11, 2003 |
| 15441P | COOLING TOWER WATER MAKEUP PUMPS | July 14, 2003 |

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| 15452P | SUMP PUMPS | |
| 15461P | Electric Water Heaters | July 14, 2003 |
| | | June 11, 2003 |
| **DIVISION 16** | **ELECTRICAL** | |
| 16050 | BASIC ELECTRICAL REQUIREMENTS | |
| 16055 | TEMPORARY ELECTRICAL FACILITIES FOR CONSTRUCTION | July 14, 2003 |
| 16071 | SEISMIC CONTROLS FOR ELECTRICAL WORK | July 14, 2003 |
| 16075 | ELECTRICAL IDENTIFICATION | July 14, 2003 |
| 16080 | ACCEPTANCE TESTING | July 14, 2003 |
| 16120 | CONDUCTORS AND CABLES | July 14, 2003 |
| 16121 | CONTROL/SIGNAL TRANSMISSION MEDIA | July 14, 2003 |
| 16124 | MEDIUM-VOLTAGE CABLES | July 14, 2003 |
| 16130 | RACEWAYS, BOXES AND CABINETS | July 14, 2003 |
| 16140 | WIRING DEVICES | July 14, 2003 |
| 16145 | LIGHTING CONTROL DEVICES | July 14, 2003 |
| 16312I | 12kV-480/277 VOLT SUBSTATIONS - Installation Only | July 14, 2003 |
| 16344I | 12kV DISTRIBUTION SWITCHGEARS – Installation Only | July 14, 2003 |
| 16345I | 12kV PARALLELING SWITCHGEAR - Installation Only | July 14, 2003 |
| 16415 | TRANSFER SWITCHES | July 14, 2003 |
| 16425 | SWITCHBOARDS | July 14, 2003 |
| 16426I | SWITCHGEARS (CRITICAL OUTPUT DISTRIBUTION) - Installation Only | July 14, 2003 |
| 16441I | ALTERNATE CRITICAL SWITCHBOARDS - Installation Only | July 14, 2003 |
| 16452 | GROUNDING | July 14, 2003 |
| 16461 | DRY TYPE TRANSFORMERS (600V AND LESS) | July 14, 2003 |
| 16470 | PANELBOARDS | July 14, 2003 |
| 16471I | POWER DISTRIBUTION UNIT (PDU'S) - Installation Only | July 14, 2003 |
| 16475 | FUSES | July 14, 2003 |
| 16476 | DISCONNECT SWITCHES AND CIRCUIT BREAKERS | July 14, 2003 |
| 16480I | LOAD BANKS - Installation Only | July 14, 2003 |
| 16511 | INTERIOR LIGHTING | July 14, 2003 |
| 16521 | EXTERIOR LIGHTING | July 14, 2003 |
| 16610I | UNINTERRUPTIBLE POWER SUPPLY SYSTEM - Installation Only | July 14, 2003 |
| 16621I | PACKAGED ENGINE GENERATORS - Installation Only | July 14, 2003 |
| 16637I | REMOTE POWER PANELS (RPP'S) - Installation Only | July 14, 2003 |
| 6722 | AIR SAMPLING SMOKE DETECTION SYSTEMS | July 14, 2003 |
| 6723 | ADDRESSABLE FIRE ALARM SYSTEMS | July 14, 2003 |
| 16997 | ELECTRICAL SYSTEM COMMISSIONING REQUIREMENTS | July 14, 2003 |
| | | July 14, 2003 |
| **DIVISION 17** | **HVAC CONTROL SYSTEMS** | |
| 17975H | HVAC CONTROL SYSTEMS | |
| | | July 14, 2003 |

<u>EXHIBIT D</u>

<u>WORK AREA</u>

**4001 Governor Printz Blvd.**
**Wilmington, Delaware 19802**

EXHIBIT E

MAXIMUM CHANGE ORDER RATES FOR OVERHEAD,
PROFIT, CONSTRUCTION CONTRACTOR'S FEE

1.    Construction Contractor may add to its "on-site" cost of extra Work when such Work is performed directly at the site with its own personnel, equipment and materials, it being agreed by Construction Contractor that it will not subcontract out work when it would be more efficient (both in terms of time and money) for Construction Contractor's own personnel to perform such work.

<u>15 %</u> for all of Construction Contractor's Fee related to such Change Order

2.    Construction Contractor may add an additional percentage to subcontractor's costs for administration and supervision of extra Work by a subcontractor.

<u>6</u> % for all of Construction Contractor's Fee related to such Change Order

3.    Construction Contractor shall deduct over and above his "on-site" cost of deleted Work when such Work would have been performed directly at the Site with its own personnel, equipment and materials.

<u>15</u> % for all of Construction Contractor's Fee related to such Change Order

4.    Construction Contractor shall deduct an additional percentage over and above subcontractor's credit for administration and supervision of extra Work by a subcontractor.

<u>6</u> % for all of Construction Contractor's Fee related to such Change Order

E-1

## EXHIBIT F

### RATES AND UNIT PRICES

**Item**                                                        **Price**

EXHIBIT G

GENERAL CONDITIONS
TO
SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT

These General Conditions are attached to and made a part of the Single Project Construction Services Agreement ("Agreement"). All terms defined either in the Agreement or in these General Conditions shall have the meaning ascribed thereto wherever used in the Contract Documents. Terms and abbreviations not specifically defined in the Contract Documents which have well-known technical or trade meanings are used in the Contract Documents in accordance with such recognized meanings.

ARTICLE 1    WORK

1.01    Construction Contractor shall perform or cause to be performed, in a first class manner and in accordance with the Contract, all work set forth in, contemplated by or reasonably inferable as being necessary to produce the intended results from, the plans and specifications listed on Exhibit C to the Agreement (as supplemented and modified by Owner throughout the design process), including all labor and materials to complete the general description of such work contained in the Agreement and all movable furnishings specifically identified as being the responsibility of or to be performed by Construction Contractor on such plans and specifications (as supplemented and modified by Owner throughout the design process) and excluding movable furnishings specified or indicated on such plans and specifications to be excluded or to be the responsibility of Owner or Owner's other contractors or consultants (collectively all such labor, materials, and services to be provided by Construction Contractor are herein called the "Work"). In the event of any discrepancy between large-scale plans and small-scale plans, the large-scale plans shall govern. The foregoing shall not relieve Construction Contractor of Construction Contractor's responsibility to advise Owner of any inconsistencies in any of the plans and specifications which a fully competent first class contractor could reasonably be expected to discover upon review of the plans and specifications. Except as set forth above, if any of the Contract Documents imposes a different or greater obligation or limitation upon Construction Contractor than another Contract Document, the Contract Document imposing the greater obligation or limitation on Construction Contractor shall govern and prevail. Plans and specifications which are either (i) necessary for the proper execution and completion of the Work or for the proper operation of the completed improvements or (ii) consistent with and reasonably inferable from the plans and specifications attached hereto as Exhibit C (as supplemented and modified by Owner throughout the design process) as being part of the scope of the Work may hereafter be furnished and will be incorporated in Exhibit C and into the Work at no additional cost to Owner. Construction Contractor acknowledges that it has participated and will participate in meetings with Owner and its design professionals and Construction Contractor has been given ample opportunity to obtain a thorough understanding of the intended final product and fully reviewed the plans and specifications listed on Exhibit C, and thus Construction Contractor hereby agrees that no increase in the Contract Sum shall result unless a change in scope occurs as evidenced by a written change order executed by Owner and Construction Contractor. Construction Contractor shall participate in the value engineering by proposing appropriate and suitable alternatives to achieve the intended design, functionality and quality in a manner that will best enable the Work to be completed within the budget and schedule therefor and shall cooperate and work with the Owner and its consultants as part of an integrated team to maximize the quality of the improvements contemplated by the Work and its components and systems while minimizing the cost of the Work and meeting the requirements of the schedule therefor.

1.02    As between Owner and Construction Contractor, all plans and specifications for the Work and other material related to the Work prepared by Construction Contractor or furnished to Construction Contractor by Owner are and shall remain Owner's property, and shall be used by Construction Contractor only with respect to the Work. Construction Contractor acknowledges that a confidential relationship has been established between Owner and Construction Contractor and that Owner may communicate to Construction Contractor certain confidential information to enable Construction Contractor to render the services required in the Contract. Construction Contractor agrees (i) to treat and to obligate its consultants, employees, and subcontractors to consider and treat all information as secret and confidential, and (ii) not to disclose or issue any information or make available any reports, recommendations and/or conclusions in connection with the Work or the Site, which Construction

G-1

Contractor may make to Owner, or any drawings, to any person, firm or corporation or use the same in any manner whatsoever without first obtaining Owner's prior written approval.

1.03    The Contract Documents represent the entire and integrated agreement between Owner and Construction Contractor and shall be deemed to supersede all prior negotiations, representations or agreements, whether written or oral.

ARTICLE 2    OWNER

2.01    To the extent required by Construction Contractor to perform the Work, Owner shall furnish descriptions of all surveys describing the physical characteristics, legal limitations and utility locations for the area within which the Work is to be performed and where materials are to be stored, which Work areas within the Site are limited to the areas designated as such on Exhibit D to the Agreement ("Work Area"). Construction Contractor shall confine its activities at the Site to the Work Area. All other grades, lines, levels, benchmarks, courses and distances shall be established and maintained by Construction Contractor.

2.02    Unless otherwise provided in the Contract Documents, Construction Contractor will be furnished with, free of charge, one set of prints and one reproducible set of all drawings comprising the plans and specifications and one set of the specifications. Owner shall be responsible for all utility connection charges and tap-in fees, including excess capacity fees, meter installation charges or the like.

2.03    If Construction Contractor is in default of any of its obligations under the Contract Documents, and such failure or default continues for seven days after written notice from Owner, Owner may order Construction Contractor immediately to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of Owner to stop the Work shall not give rise to any duty on the part of Owner to exercise this right for the benefit of Construction Contractor or any other person or entity. This right shall be in addition to, and not in restriction of, Owner's other rights under the Contract Documents.

2.04    The Electrical Trade Manager identified in the Agreement, or any substitute designated as such in writing from Owner to Construction Contractor, is Owner's representative with full power to bind Owner.

2.05    Owner reserves for itself and its representatives the right of access to any part of the Work at any time for the purpose of observing or testing or to install other work either with its own forces or with other contractors. Such access is not to be construed to mean partial occupancy by Owner.

2.06    Owner reserves the right to designate, by notice to Construction Contractor (if not so designated on Page 1 of the Agreement) one or more persons or entities that is the owner or manager of the Site or the existing building within which the Work is to be performed (if any, the "Building") as a Building Owner/Manager. To the extent a Building Owner/Manager is so designated, all provisions of this Contract relating to the Building Owner/Manager shall apply, and mean and refer, to the persons or entities so designated. To the extent a Building Owner/Manager is not so designated, no force or effect shall be given to those provisions to the extent related to the Building Owner/Manager.

2.07    Owner reserves the right to engage third parties, including architects and engineers, to assist Owner in various capacities related to the Work and Contract Documents, including in the administration of the Contract Documents. Construction Contractor agrees to cooperate with all such consultants, including architects and engineers, in all aspects of the Work and Contract Documents, including the administration thereof. Construction Contractor acknowledges and agrees that Owner may grant conditional approval of or require the approval of any such consultant, including any architect or engineer, as a condition to Owner's granting any consent or approval required of Owner under the Contract Documents. Construction Contractor shall cooperate with such processes required by Owner to obtain such consultant" consents.

ARTICLE 3    <u>CONSTRUCTION CONTRACTOR</u>

3.01    Construction Contractor shall have primary responsibility for preparation of budgets for the Work throughout the design process in cooperation and consultation with Owner and its consultants. Construction Contractor's submission nor Owner's approval of any budget shall alter the Contract Sum (absent a Change Order executed by the Parties). Any budget may contain one or more line items for Owner's contingency or a contingency expressly to be controlled by Owner and each such contingency is herein called an **"Owner's Contingency"**. An Owner's Contingency (i) shall only be available for use in connection with the Work upon Owner's written approval, which may be granted or denied by Owner in Owner's sole discretion for any or no reason, (ii) shall not be included in the agreed upon Contract Sum, and (iii) which is not used upon final completion of the Work and Construction Contractor is not entitled to any unused portion thereof.

3.02    Construction Contractor shall perform the Work in accordance with all laws, ordinances, codes, rules and regulations, orders and decisions of all government authorities having jurisdiction over the Site ("**Government Requirements**"), and otherwise perform Construction Contractor's obligations contemplated in the Contract Documents. Construction Contractor acknowledges that Construction Contractor has visited the Site, examined all conditions affecting the Work, and is fully familiar with all of the conditions thereon and affecting the Work and the Work Area. Construction Contractor shall perform no portion of the Work at any time without Contract Documents or, where required, approved (or approved as noted) shop drawings, product data or samples for such portion of the Work.

3.03    Construction Contractor shall employ a competent project superintendent, necessary assistants, and staff, as necessary for the proper administration, coordination and supervision of the Work, all approved by Owner in writing by either being listed in the Agreement or by separate written approval accepted by or on behalf of Owner. Owner's approval of any such person (or of any substitute for such person) shall not relieve Construction Contractor of or otherwise limit or affect Construction Contractor's obligation to employ competent persons of sufficient skill and experience to perform their assigned responsibilities in accordance with the standards and requirements set forth in the Contract. Construction Contractor's project superintendent shall be in attendance at the Work Area for the duration of the Work and such project superintendent's duties shall not be diminished without the prior written consent of Owner. Construction Contractor's project superintendent shall represent Construction Contractor and all communications given to such project superintendent shall be as binding as if given to Construction Contractor. Upon Owner's request, any communication from such project superintendent shall be confirmed in writing by an authorized partner, member or officer, as the case may be, of Construction Contractor. Construction Contractor's project superintendent shall have authority to furnish estimates and to approve field changes and shall attend meetings with Owner at such times and places as shall be requested by Owner to report on the progress of the Work or otherwise to consult with Owner. Construction Contractor's project superintendent and other members of Construction Contractor's staff identified on page 1 of the Agreement or separately approved by Owner as provided above shall not be changed without the consent of Owner unless such person leaves the employ of Construction Contractor, in which event the substitute must first be approved in writing by Owner. If Owner gives Construction Contractor notice Construction Contractor's project superintendent or any other of Construction Contractor's personnel identified on page 1 of the Agreement (or any person that replaces any of the foregoing) has failed to perform his or her responsibilities in accordance with the standards set forth in this Contract and such failure is not remedied within ten (10) days of such notice, Construction Contractor shall, if requested by Owner, promptly replace such person with a person having the competence, skill and experience necessary to perform such responsibilities and approved by Owner. Those individuals who are the authorized signatories for Construction Contractor are also listed in the Agreement.

3.04    Construction Contractor shall (a) supervise and direct the Work using Construction Contractor's best professional skill and attention, and (b) be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work. Construction Contractor shall furnish its best skill and judgment, employing first class professional standards, and shall cooperate with the other parties involved in the Work in furthering the interests of Owner. Construction Contractor accepts sole responsibility for the acts and omissions of Construction Contractor's employees, subcontractors and their respective agents and employees. Construction Contractor shall (i) at all times enforce strict discipline and good order among Construction Contractor's employees and shall not employ on the Work any unfit person or anyone not skilled in the

G-3

task assigned to him; (ii) confine Construction Contractor's equipment, apparatus, materials, and operations of its workmen and subcontractors within limits allowed by Owner and Building Owner/Manager and not unnecessarily burden the Work Area with materials; (iii) correct, at Construction Contractor's expense, damage to property resulting from the Work; and (iv) if the Work requires a temporary shut-down of a service in the Building or any other improvements on the Site, cause such Work to be accomplished during other than normal hours and coordinated with Owner and Building Owner/Manager at Construction Contractor's expense; provided further that Construction Contractor shall give adequate notice to Owner and Building Owner/Manager that Construction Contractor will require a shut-down.

     3.05    (a)    Construction Contractor shall not use, in connection with the Work, any material containing asbestos as defined by the United States Environmental Protection Agency 40 CFR CH. 1 (7-1-00 Edition) Subpart M-National Emission Standard for Asbestos and the Occupational Safety and Health Administration, Part 1910: Occupational Safety and Health Standards, Subpart Z: Toxic and Hazardous Substances, Standard 1910.1001: Asbestos.

          (b)    Construction Contractor shall not use, in connection with the Work, any hazardous waste, toxic substance or related materials, including substances defined as "hazardous substances" or "toxic substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sec. 9061 et seq., Hazardous Materials Transportation Act, as amended, 49 U.S.C. Sec. 1802, and the Resource Conservation Act and Recovery Act, as amended, 42 U.S.C. Sec. 6901 et seq. ("**Hazardous Materials**") in such manner as would violate any Government Requirements or would cause any damage or a risk of any damage to the environment, or in such a manner as to leave any residue which could be hazardous to persons or property or cause liability to Owner.

     3.06    Construction Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, age or national origin or ancestry. Construction Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age or national origin or ancestry. Construction Contractor shall comply with, and shall cooperate with Owner and other contractors and subcontractors in connection with compliance with, the regulations of the Occupational Safety and Health Act of 1970, as amended ("**OSHA**"), or any similar state law which is applicable. If any Construction Contractor's employee working on the Work files a charge of noncompliance with OSHA, Construction Contractor shall notify Owner's Project Manager promptly upon receiving notice of such charge.

     3.07    (a)    The Contract Sum is based on the Completion Schedule attached to the Agreement as Exhibit A (said schedule, as modified as permitted herein with Owner's written approval is herein called the "**Completion Schedule**"). Except as expressly provided for in the Contract Documents, Construction Contractor shall not be entitled to any additional payment for overtime, which includes shift work, required to complete the Work in accordance with the Completion Schedule.

          (b)    If Owner requests Construction Contractor to work overtime due solely to Owner's election to accelerate the performance of the Work ahead of the Completion Schedule, Construction Contractor shall comply with the following requirements:

          (i)    Construction Contractor shall submit a statement of employees by name, trade, classification, hourly rate, and premiums or overtime charges worked to substantiate premium or overtime charges, in such detail as to demonstrate to Owner its correctness. These statements shall be prepared on a daily basis and shall be submitted daily for Owner's records. The rates, premiums and overtime charges shall correspond with the schedule of rates and unit costs in Exhibit F to the Agreement, which rates and unit prices include all contributions to federal and state unemployment tax and for federal insurance contributions tax required to be paid by Construction Contractor.

          (ii)    Owner will pay for authorized overtime work only the amounts of overtime premium wages actually paid by Construction Contractor in accordance with those set forth on the schedule of rates and unit costs attached as Exhibit F to the Agreement.

obligation to assure that the Work performed by Construction Contractor is in compliance with the Contract Documents.

3.09     Construction Contractor shall procure all permits, licenses and certificates of inspection or occupancy necessary to complete the Work and occupy the Work Area, and shall deliver same to Owner promptly upon completion of the Work or at Owner's request. If any utility connection charges, tap-in fees or similar items are required to be paid as a condition precedent to the issuance of any such permits, licenses, or certificates, Construction Contractor shall notify Owner thereof and coordinate Owner's payment of such items as required by Section 2.02 in a timely manner to permit proper issuance of all permits, licenses and certificates as required hereby. Prior to Construction Contractor's application for a permit, Construction Contractor shall secure Owner's approval of the Project value to be used for permit purposes.

3.10     Construction Contractor shall commence performance of its obligations under the Contract Documents upon the date set forth in the Completion Schedule for commencement of the Work or, if no such date is included in the Completion Schedule, upon execution of the Agreement by Owner and delivery to Construction Contractor of the Agreement by Owner. Construction Contractor shall, subject to adjustment evidenced by change orders, cause completion of each of the elements of the Work, including substantial completion and final completion, as set forth in the Completion Schedule. Construction Contractor shall consult with Owner on the actual progress of the Work and, if requested by Owner at any time, shall at no additional cost to Owner, submit to Owner a series of reports (at such intervals as may be requested by Owner) reflecting the progress of the Work.

3.11     Construction Contractor shall maintain at the Work Area for Owner one record copy of all current and up-to-date plans and specifications, addenda, change orders and other modifications, in good order and marked currently to record all changes made during construction, and approved shop drawings, product data and samples. No review or receipt of such records by Owner shall be a waiver of any deviation from the Contract Documents or in any way relieve Construction Contractor from Construction Contractor's responsibility to perform the Work in accordance with the Contract Documents unless such deviations are specifically noted in writing by Construction Contractor and specifically approved in writing by Owner. Construction Contractor shall furnish to Owner four complete sets of manuals containing the manufacturers' instructions for maintenance and operation of each item of equipment furnished under the Contract Documents and any additional data specifically requested under the various sections of the specifications for each division of the Work. The manuals shall be arranged in proper order, indexed and suitably bound.

3.12     (a)     Construction Contractor shall procure, review, and submit, with reasonable promptness and in such sequence as to cause no delay in the Work or in any work of Owner, all shop drawings, product data and samples required by Contract Documents. Construction Contractor shall maintain an accurate record of all deviations from the plans and specifications which occur in the Work as actually constructed, and shall submit to Owner, two (2) sets (one to be reproducible) of complete information including descriptions, drawings, sketches, marked prints, and similar data, indicating the "as-built" conditions. Construction Contractor shall keep "as-built" record drawings up to date concurrently as the Work progresses. Submittal of such drawings is required prior to Construction Contractor submitting its application for final payment.

(b)     Each subcontractor shall submit through Construction Contractor all shop drawings at a scale which is easily read and not smaller than 8-1/2 inches by 11 inches nor larger than 36 inches by 48 inches, and all samples and manufacturers' descriptive data. All submissions by or through Construction Contractor shall be thoroughly examined by Construction Contractor and shall clearly identify the relevant specifications section before submission to Owner, and shall bear Construction Contractor's approval stamp.

(c)     All shop drawings must be dated and properly identified with the name of the Site and Work Area. Each lot submitted must be accompanied by a letter of transmittal which refers to the name of the Site and Work Area and to the specification section number for identification of each item, and which clearly states qualifications, departures or deviations from the Contract Documents, if any. For each section of the Work, shop drawings shall be numbered consecutively and the numbering system shall be retained throughout all revisions. Construction Contractor shall submit one reproducible transparency and as many prints (at least three) of each shop drawing as may be reasonably required by Owner until final acceptance thereof is obtained. Construction

G-6