| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Special Purpose Rooms and Other Special Const. | C02 | | | | | | | |
| | Security Access and Surveillance | C09 | | | | | | | |
| | Fire Suppression, Detection and Alarm Systems | C17 | | | | | | | |
| | ATM Enclosures | F04 | | | | | | | |
| 14000 Conveying Systems | | C07 | | | | | | | |
| 15000 Mechanical | | C05 | | | | | | | |
| 16000 Electrical | | | | | | | | | |
| | Electrical Power, Distribution and Lighting | C04 | | | | | | | |
| | Telecom. and Data Equipment & Cabling | C16 | | | | | | | |
| | Exterior Site Lighting | C22 | | | | | | | |
| Fee | | C02 | | | | | | | |

Amount of Original Contract: _____        Work Completed to Date: _____

Extras to Contract: _____        Total Retained: _____

Total Contract and Extras: _____        Net Amount Earned: _____

Credits to Contract: _____        Previously Paid: _____

Adjusted Total Contract: _____        Net Amount Due this Payment: _____

### APPLICATION FOR PAYMENT AND SWORN STATEMENT
### FOR CONSTRUCTION CONTRACTOR AND SUBCONTRACTOR TO OWNER
### (CONTINUED)

The undersigned, _____, being first duly sworn on oath and says

that he is President of _____, Contractors for

(Project Title)    _____

(Project Address) _____

(Agent)          _____

That for the purposes of this work the foregoing order have been placed and the foregoing parties subcontracted with and these have furnished materials or have provided labor, or both, for said project.

That the amount of such order or subcontract is as stated above and that there is due and to become due them respectively, the amounts set opposite their names for materials or labor or both.

That this statement is made in compliance with to statutes relating to Mechanics Liens and for the purpose of procuring from Owner FINAL/PARTIAL payment in accordance with the terms of the contract and is a full, true and complete statement, of all parties furnishing labor and/or material, and of amounts paid, due and to become due them.

Subscribed and sworn to before me
this __ day of _____, ____

_____
      Notary Public

Construction Contractor:

_____

By: _____
Name: _____
Title: _____

SCHEDULE 8.06

<u>CERTIFICATE OF SUBSTANTIAL COMPLETION</u>

Date of Issuance: _____

Project Name: _____     Description: _____
Work Location (s):                                  _____
Architect/Engineer: _____     _____
Construction Contractor's Representative: _____  Phone: _____
Owner's Project Manager: _____      Phone: _____
Contractor Contract No: _____      Date: _____
Original Punch List Date: _____      Previous Revision Date _____

TO: (Owner)

DESIGNATED PORTION OF THE PROJECT SHALL INCLUDE: [add description of designated portion]

The work comprising the above designated portion of the project performed under the Contract Documents has been reviewed and is hereby found to be substantially complete. The Date of Substantial Completion of said Work is hereby established as _____.

<u>DEFINITION OF DATE OF SUBSTANTIAL COMPLETION</u>

The Date of Substantial Completion of said Work is the date certified by the Architect/Engineer when construction is sufficiently complete in accordance with the Contract Documents so Owner can occupy and utilize beneficially said work for the use for which it is intended.

<u>PUNCH LIST</u>

A Punch List of items to be completed, corrected or delivered, initially prepared by Construction Contractor and revised by the Architect/Engineer and verified or amended by _____ as appropriate, is attached hereto as <u>Appendix 1</u>. The failure to include any items on such list does not alter the responsibility of Construction Contractor to complete all work in accordance with the Contract Documents. The date of the commencement of warranties for said work and for the items on the attached Punch List will be the date Construction Contractor receives final payment under and in accordance with the Contract Documents.

_____     _____     _____
ARCHITECT/ENGINEER            BY:                     DATE:

Construction Contractor will complete or correct the work and deliver all items in accordance with the requirements of said Punch List within _____ (____) days from the Date of Substantial Completion.

_____     _____     _____
CONSTRUCTION CONTRACTOR       BY:                     DATE:

Schedule 8.06 - 1

APPENDIX 1
TO
CERTIFICATE OF SUBSTANTIAL COMPLETION

___Original ___ Revised Punch List
Date Revised: _____

Project Name: _____    Description: _____
Work Location (s): _____    _____
Architect/Engineer: _____    _____
Construction Contractor's Representative: _____    Phone: _____
Owner's Project Manager: _____    Phone: _____
Contractor Contract No: _____    Date: _____
Original Punch List Date: _____    Previous Revision Date _____

| No. | Item | Location | Description | Responsibility | Project Completion Date |
|-----|------|----------|-------------|----------------|-------------------------|
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |
|     |      |          |             |                |                         |

Punch List Content Approval                Date:_____

Owner's Project Manager:        Construction Contractor:        Architect/Engineer:

By: _____    By: _____    By: _____
Name _____    Name: _____    Name: _____

Punch List Completion Approval                Date: _____

Owner's Project Manager:        Construction Contractor:        Architect/Engineer:

By: _____    By: _____    By: _____
Name _____    Name: _____    Name: _____

Page ____ of ____

Appendix 1 - 1

SCHEDULE 10.02

<u>CHANGE ORDER FORM</u>

Date: _____        Change Order No._____
                                         (Consecutively Numbered)
Contract No.:_____      Project No.: _____
Location (Building/Floor): _____

CONTRACT CHANGE ORDER

Gentlemen:  In accordance with this change we hereby adjust your contract as follows:

Original Contract Amount          $_____
Previous Contract Amount          $_____
Add for this Change               $_____
Deduct for this Change            $_____
Adjusted Contract Amount          $_____

Proceed with this work immediately.

The basis of this adjustment is _____(Describe)_____

(Examples)
Proposed Change Order(s) dated MM/DD/YY (List) with corresponding backup.
Bulletin Number(s) dated MM/DD/YY (List) with corresponding backup.
Construction Field Order(s) dated MM/DD/YY (List) with corresponding backup.

Backup shall include detailed breakdown by Construction Contractor and all sub contractors.
Verify Hourly Rates and Unit Prices per Project Agreement (if established).
Review Change Order Values with Prime Architect/Engineer's Budget estimate for proposed change(s).
If Time & Material Change Order, ALL signed time tickets (signed by designated representatives of the Electrical
Trade Manager and Construction Manager and Owner's Project Manager) only will be accepted.

Change Orders may represent change in TIME as well as COST and must be taken into consideration during review
and approval.

(Approvals)

Construction Contractor  _____        Authorized/Designated Representative Print Company's
                                                      and Signer's Name below

Owner _____             Signed By Owner's Project Manager (Authorized Signer
                                                      for Invoices)

Customer _____            Authorized (User signature level for total of
                                                      ADD/DEDUCT creating the adjustment of this Change
                                                      Order providing that the total is within the Project's
                                                      approved budget.

                                                      If tenant related, Authorized Signature must Owner's
                                                      Records for Client's Cost Center Print Authorized
                                                      Signer's Name and Title Below Line. Add Lines if
                                                      hierarchy of signing authority is required.

# EXHIBIT "B"

# Creedon Controls Inc.
## Electrical Contractors

3424 Old Capitol Trail
Wilmington, Delaware 19808
Telephone (302) 892-2000
Fax (302) 892-2002

June 14, 2004

Mr. Paul Angerame, Vice President
Forest Electric Corp.
4001 Governor Printz Boulevard
Wilmington, DE 19802

Reference:    Single Project Construction Services Agreement
              Contract No. 6B Addendum 1

Dear Paul:

Enclosed is a document that we identified as Addendum 1, which we prepared in the course of our review of the contract that was presented to us most recently for our review.

Addendum 1 is provided for your review and inclusion in the referenced contract for execution.

The Addendum includes three columns. The first column is a number for reference only. The second column provides the contract location; this is for navigating the document to the appropriate place for the modification. The final column, Action:/Description of the Action is the modification contemplated.

The third column is prepared to reflect one operation for each reference number to keep it as simple as possible; two or even three reference items may be required to effect one complete change on the document. Most of the addendum volume is reference, navigation and action; the modifications are not voluminous.

The modifications presently reflect mostly the manner in which the project was conceived at bid time, the manner in which it was conducted to date, resolving inconsistencies or other issues worthy of modification.

We will be prepared to execute the contract upon your acceptance of Addendum 1 for inclusion.

Please contact us if you have any questions.

Very truly yours,

*Patricia Creedon*

Patricia Creedon
President

Exhibit IV.F

# SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| No. | Contract Location | Action:/Description of Action |
|---|---|---|
| 1 | First page, last paragraph, first sentence | Change: "between Electrical Trade Manager and Construction Contractor." to "between Banc One Building Corporation, Electrical Trade Manager, Agent, and Construction Contractor." |
| 2 | First page, last paragraph, second sentence | Change: "modifications issued after" to "prior to start of Project Work and" |
| 3 | Second page, Paragraph 2, second line | Add after: "Exhibit C hereto", "to the extent that these Documents relate directly to the Work of the Construction Contractor, and were used as the basis of Construction Contractors bid." |
| 4 | Second page, Paragraph 4, second line | Replace: "/will not (strike through one)" with "not" |
| 5 | Second page, Paragraph 5, fifth line | Add after: "Contract Documents", "used as the basis of the Construction Contractor's bid," |
| 6 | Second page, Paragraph 6 | Add after: If to Construction Contractor, addressed to:" (followed by Creedon Controls, Inc. address), Attention: "Patricia Creedon" |
| 7 | Page three of the Agreement, at the end of the second paragraph | Add a sentence at the end of the second paragraph following "attached hereto.", "Further the parties to this Agreement attach and make Addendum 1 a part of the Single Project Construction Services Agreement." |
| 8 | Page three of the Agreement after Item 7. | Add: Arbitration Clause for resolution of disputes during the project and at its conclusion. Language to follow. |
| 9 | List of Exhibits | Delete: "EXHIBIT F" and 'EXHIBIT H" |
| 10 | EXHIBIT A | Add as the first paragraph: "The original schedule provided with RFP6B data date and run date, September 15, 2003, used as the basis of Construction Contractor's bid is incorporated herein." |
| 11 | EXHIBIT A | Add before: "Project Completion Date", For the purpose of liquidated damages, if any, in Paragraph 4 of this agreement the project completion date is September 15, 2004. |
| 12 | EXHIBIT B | Delete Note, add: "The schedule of values is the initial schedule of values submitted for this project utilizing G703. There is no anticipated draw schedule for this project. Payment shall be made in accordance with section and anticipated draw schedule is as follows:" |
| 13 | EXHIBIT C | Substitute for the word "thereafter", "prior to the preparation of the Construction Contractor's bid and used as the basis of this bid." |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| 14 | EXHIBIT C<br>List of Drawings | The basis of the Construction Contractor's Lighting and Power bid are all or part of drawings: E001 through E102, E202-B, E203, E204, E401-E, E401-F, E501, E502-A, E502-B, E503, E505-A, E505-B, E506, E603 and E605; all other Electrical Drawings are for location or information reference only. Mechanical drawings used for damper and exhaust fan power only include: M101, M102, M305 and M306. No other drawings including civil, landscape, architectural, structural, plumbing, fire protection and security, fuel oil are included in the Construction Contractor's scope and would be used for location reference or information only.<br>*Note: Drawing list cuts off drawing designations at bottom of the pages. New complete set of pages (8 pages) required for review.* |
| :-- | :-- | :-- |
| 15 | EXHIBIT C<br>Specifications | The basis of the Construction Contractor's Lighting and Power bid are all or part of specifications: Divisions 1, General Requirements; Division 15, Mechanical 15170H, 15832H, 15835H and 15850H only; Division 16 Electrical 16050 through 16120, 16130 through 16145, 16415, 16425, 16452, 16461, 16470, 16475, 16476, 16511, 16521 and 16997. |
| 16 | EXHIBIT D | Add after the site address a new paragraph: "This is the site address. It does not reflect the actual work areas within this site that are covered by the scope of the Construction Contractor's Work. |
| 17 | EXHIBIT E | Change Paragraph 1: "15%" to "20%". |
| 18 | EXHIBIT E | Change Paragraph 2: "6%" to "10%". |
| 19 | EXHIBIT E | Change Paragraph 3: "15%" to "10%". Note this is computed at one-half the add rate. |
| 20 | EXHIBIT E | Change Paragraph 4: "6%" to "3%". Note this is computed at one-half the add rate. |
| 21 | EXHIBIT E | Add a new paragraph unnumbered after paragraph 4: "On-site Costs" shall be defined as all costs required to complete the Work, whether performed on-site or off-site including equipment, material, labor, subcontract, warehousing, delivery from supplier/shop, storage/staging, administrative support, supervision and related costs to the extent utilized by this project. |
| 22 | EXHIBIT F | Delete in its entirety |
| 23 | EXHIBIT G, Article 1. Work, Section 1.01, third line | Add after: "plans and specifications", "used as the basis of the Construction Contractor's bid" |
| 24 | EXHIBIT G, Article 1. Work, Section 1.01, fourth line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid." |
| 25 | EXHIBIT G, Article 1. Work, Section 1.01, seventh line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid." |

### SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
### CONTRACT NO. 6B
### BANK ONE CORE DATA CENTER #2
### ADDENDUM 1

| | | |
|---|---|---|
| 26 | EXHIBIT G, Article 1. Work, Section 1.01, sixteenth line | Add after: "govern and prevail", if such Document imposing the greater obligation or limitation on the Construction Contractor was relied upon at bid time by the Construction Contractor." |
| 27 | EXHIBIT G, Article 1. Work, Section 1.01, nineteenth line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid." |
| 28 | EXHIBIT G, Article 1. Work, Section 1.01, twentieth line | Add before: "as being part of", if such Documents were relied upon at bid time by the Construction Contractor and shall be part of the scope of the Work at no additional cost to Owner." |
| 29 | EXHIBIT G, Article 1. Work, Section 1.01, Twentieth line and the first seven words of the Twenty-first line | Delete |
| 30 | EXHIBIT G, Article 1. Work, Section 1.01, ninth line from the end of this section | Replace: "thorough understanding" with "reasonable understanding, as an electrical contractor and not as an engineer involved in the design process," |
| 31 | EXHIBIT G, Article 1. Work, Section 1.01, eighth line from the end of this section | Add after: "Exhibit C", "to the extent that these Documents relate directly to the Work of the Construction Contractor, and were used as the basis of Construction Contractors bid." |
| 32 | EXHIBIT G, Article 1. Work, Section 1.01, sixth line from the end of this section | Add after the second word of the sixth line: "Construction Contractor", " or by constructive change" |
| 33 | EXHIBIT G, Article 1. Work, Section 1.01, sixth line from the end of this section | Add after the fourth word of the original sixth line: "Construction Contractor", "to the extent that can be reasonably expected by the Construction Contractor participating in a Lump Sum Contract" |
| 34 | EXHIBIT G, Article 1. Work, Section 1.02, end of section | Add after the word: "approval", "to the extent that such information is not generally known or could be known by persons participating in the construction industry" |
| 35 | EXHIBIT G, Article 1. Work, Section 1.03, end of section | Add after the word: "oral", "through the start of the Work of the Construction Contractor" |
| 36 | EXHIBIT G, Article 2. Work, Section 2.01, end of section | Add after the word: "Contractor", "using ample references for this purpose provided by the Owner. |
| 37 | EXHIBIT G, Article 2. Work, Section 2.05, end of section | Add a new sentence: "Owner shall compensate Construction Contractor to the extent that such access damages the Construction Contractor." |
| 38 | EXHIBIT G, Article 3. Work, Section 3.01, first sentence of section | Delete the first sentence of this section. |
| 39 | EXHIBIT G, Article 3. Work, Section 3.02, third and fourth line | Delete: "in the Contract Documents" |
| 40 | EXHIBIT G, Article 3. Work, Section 3.02, third line | Add After: "contemplated", "by the Construction Contractor as the basis of the bid utilizing the documents provided at that time" |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
### CONTRACT NO. 6B
### BANK ONE CORE DATA CENTER #2
### ADDENDUM 1

| 41 | EXHIBIT G, Article 3. Work, Section 3.02, fifth line | Replace: "all" with ", generally," |
|---|---|---|
| 42 | EXHIBIT G, Article 3. Work, Section 3.02, fifth line | Replace: "fully" with "reasonably" |
| 43 | EXHIBIT G, Article 3. Work, Section 3.03, first line | Add after: "superintendent", "(All reference to the Construction Contractors project superintendent in this contract shall mean Project Manager.)" |
| 44 | EXHIBIT G, Article 3. Work, Section 3.03, first line | Replace: "superintendent" with "manager" |
| 45 | EXHIBIT G, Article 3. Work, Section 3.03, eleventh line | Add after: "Contractor", "as long as a copy is sent to the Construction Contractor by facsimile at the office identified in Item #6 of the Agreement. |
| 46 | EXHIBIT G, Article 3. Work, Section 3.03 eighteenth line | Add after: "by Owner", ", which approval shall not be unreasonably withheld" |
| 47 | EXHIBIT G, Article 3. Work, Section 3.03, line four from the end of this section | Add after the last word: "Owner", "for just and adequate cause," |
| 48 | EXHIBIT G, Article 3. Work, Section 3.03,last line end of this section | Delete after: "Contractor are", "also listed in the Agreement" |
| 49 | EXHIBIT G, Article 3. Work, Section 3.03, last line end of this section | Add after: "Contractor are", "Patricia Creedon, President, Kristin Cerase, Acting Secretary and Charles Doble, Project Manager" |
| 50 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Delete: "solely" |
| 51 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Add after: "procedures and for", "participating in |
| 52 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Add after: "Work", "to the extent this responsibility is not limited by the Owner, Owner's representatives and their subcontractors" |
| 53 | EXHIBIT G, Article 3. Work, Section 3.07 (a), line one | Change the first sentence as follows: "The Contract Sum is based on the Completion Schedule attached to RFP6B, which was used as the basis of Construction Contractor's bid. Said schedule may be modified by mutual agreement between the parties to this agreement, and such modified schedule shall be called the "Completion Schedule" |
| 54 | EXHIBIT G, Article 3. Work, Section 3.07 (a), line three | Add at the end of this section after the word: "Schedule", "other than that negotiated at the time of the mutually agreed upon schedule changes" |
| 55 | EXHIBIT G, Article 3. Work, Section 3.07 (b), line two | Change the seventh word: "the", to "any current mutually agreed upon" |
| 56 | EXHIBIT G, Article 3. Work, Section 3.07 (b) (i), line five | Add after: "Agreement", "or in the absence thereof, a rate including all costs associated with the labor required plus a mark-up of twenty (20) percent |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| 57 | EXHIBIT G, Article 3. Work, Section 3.07 (b) (ii), end of this part | Add after: "Agreement", "or in their absence thereof, a rate including all costs associated with the labor required plus a mark-up of twenty (20) percent |
|---|---|---|
| 58 | EXHIBIT G, Article 3. Work, Section 3.08 (b) (i), seventh line | Change: "three" to "two" |
| 59 | EXHIBIT G, Article 3. Work, Section 3.08 (b), fifth line from end of this part | Delete entire sentence between: "specified" and "Notwithstanding" |
| 60 | EXHIBIT G, Article 3. Work, Section 3.14, third line from end of this part | Add after "designate", "(and compensate the Construction Contractor if more costly)" |
| 61 | EXHIBIT G, Article 3. Work, Section 3.15, first sentence | Add after: "Construction Contractor", ",unless specified by Owner," |
| 62 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line six to line seven | Delete: "Construction Contractor's" through "damages because of" |
| 63 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line ten to line thirteen | Delete: "or sustained" through "imputed to the Indemnities, or any of them" |
| 64 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line eighteen | Add after: "used", "by Construction Contractor" |
| 65 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line twenty-one | Add after: "other persons or entities", "to the extent caused by Construction Contractor. |
| 66 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line twenty-one one to end of section | Delete: "whether based upon" through "infringement of similar rights." |
| 67 | EXHIBIT G, Article 3. Work, Section 3.17 | Replace with: "Construction Contractor will keep for a period of two (2) years from Substantial Completion of Construction Contractor's Work, complete and detailed records in the normal manner maintained by the Construction Contractor in the normal course of business for such work.  The obligation of the Construction Contractor to give information and assistance shall be at Owner's expense and shall not obligate Construction Contractor to incur any expense or liability." |
| 68 | EXHIBIT G, Article 3. Work, Section 3.18, line two | Add after: 'anyone' , "except representatives of the Construction Contractor" |
| 69 | EXHIBIT G, Article 3. Work, Section 3.20, at end of section | Add after: "parts of the Work.", "Construction Contractor shall add twenty (20) percent to all Allowance costs referenced in this section as part of the Allowance, i.e. cost to Owner." |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| 70 | EXHIBIT G, Article 3. Work, Section 3.22, at end of line six | Add after: "Contract Documents.", "Lapse of coverage under this section due to Owner or Owner's representatives shall void Construction Contractor's obligations to the Owner in the Hold Harmless Provisions of this Agreement and make Owner responsible to the Construction Contractor in the Hold Harmless provisions in this Agreement to the same extent as that originally required of the Construction Contractor." |
|---|---|---|
| 71 | EXHIBIT G, Article 4. Work, Section 4.01, fifth line | Replace : "three (3)" with "two (2)" |
| 72 | EXHIBIT G, Article 4. Work, Section 4.01, last line at end | Add: "Construction Contractor has the right to refuse to work with any subcontractor proposed by the Owner. |
| 73 | EXHIBIT G, Article 4. Work, Section 4.02, sixth line | Add after: "Owner", "if not time consuming and overly burdensome to the Construction Contractor and the proposed persons or entities for such portion of work" |
| 74 | EXHIBIT G, Article 4. Work, Section 4.02, tenth line at end | Replace after : "shall not unreasonably" with "may" |
| 75 | EXHIBIT G, Article 6. Work, Section 6.02, fifth line | Add after: ""granted or", "reasonably" |
| 76 | EXHIBIT G, Article 6. Work, Section 6.02, seventh through ninth line | Delete last sentence from: "Owner" through "under the Contract." |
| 77 | EXHIBIT G, Article 6. Work, Section 6.03, second line | Delete after: "(i)", "intended for Construction Contractor," |
| 78 | EXHIBIT G, Article 6. Work, Section 6.03, third line | Add after: "in person to", "Owner or " |
| 79 | EXHIBIT G, Article 6. Work, Section 6.03, third line | Add after: "superintendent", "or project manager respectively" |
| 80 | EXHIBIT G, Article 6. Work, Section 6.03, fifth line | Add after: "holiday", "or Saturday or followed by a holiday or Saturday" |
| 81 | EXHIBIT G, Article 6. Work, Section 6.03, fifth line | Replace; "to such" with "by" |
| 82 | EXHIBIT G, Article 6. Work, Section 6.03; fifth and sixth line | Delete: "in sufficient time for next day delivery" |
| 83 | EXHIBIT G, Article 6. Work, Section 6.04, seventh line | Delete: "together" through "thereunder" |
| 84 | EXHIBIT G, Article 6. Work, Section 6.04, ninth | Add after: "whole" , "to the extent of the bond as currently issued" |
| 85 | EXHIBIT G, Article 6. Work, Section 6.04, thirteenth line | Add after: "increased", "unless a modification of any provision of any Contract Document a change in contract time, Contract Sum or condition of payment objectionable to the bonding company" |
| 86 | EXHIBIT G, Article 6. Work, Section 6.06 | Delete in its entirety. |

### SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
### CONTRACT NO. 6B
### BANK ONE CORE DATA CENTER #2
### ADDENDUM 1

| 87 | EXHIBIT G, Article 6. Work, Section 6.07, last line | Add after: "herein", "if copies of such documents included by reference were submitted to Construction Contractor for review and approval in advance of Contact execution" |
|---|---|---|
| 88 | EXHIBIT G, Article 6. Work, Section 6.09, first line | Add after: "Contractor", "except failure of Owner to make timely payments or provide timely information required to perform the Work"<br>*Do not type: This paragraph appears to preclude Owner withholding timely payments.* |
| 89 | EXHIBIT G, Article 6. Work, Section 6.11 | Delete in its entirety. |
| 90 | EXHIBIT G, Article 7. Work, Section 7.01, fifth line | Delete after: "disputes", the entire parenthetical statement. |
| 91 | EXHIBIT G, Article 7. Work, Section 7.01, seventh line | Delete: "Owner may determine" |
| 92 | EXHIBIT G, Article 7. Work, Section 7.01, seventh line | Add after: "for such time as", "is mutually determined" |
| 93 | EXHIBIT G, Article 7. Work, Section 7.01, ninth line | Add after: "aforesaid", " and any related or consequential causes" |
| 94 | EXHIBIT G, Article 7. Work, Section 7.01, twelfth line | Delete: "Within" through "Schedule," |
| 95 | EXHIBIT G, Article 7. Work, Section 7.02 | Delete in its entirety. |
| 96 | EXHIBIT G, Article 8. Work, Section 8.01, second line | Delete: "and Anticipated Draw Schedule" |
| 97 | EXHIBIT G, Article 8. Work, Section 8.01, third line | Delete: "each month" |
| 98 | EXHIBIT G, Article 8. Work, Section 8.01, sixth line | Replace: "at Owner's request", with "by change order executed by Owner and Construction Contractor" |
| 99 | EXHIBIT G, Article 8. Work, Section 8.02, ninth line | Add after: "Schedule 8.02", ", AIA Application for Payment format," |
| 100 | EXHIBIT G, Article 8. Work, Section 8.02, thirteen line | Replace: "requires" with "may require" |
| 101 | EXHIBIT G, Article 8. Work, Section 8.02, sixteenth line | Add after: "payment", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 102 | EXHIBIT G, Article 8. Work, Section 8.02, twentieth line | Add after: "satisfied", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 103 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-second line | Add after: "payment", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 104 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-third line | Add after: "Contractor", ", to the extent that such payments and credits are mutually agreed upon" |

**SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT**
**CONTRACT NO. 6B**
**BANK ONE CORE DATA CENTER #2**
**ADDENDUM 1**

| 105 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-seventh line | Replace: "cost" with "amount earned in accordance with the Application for Payment" |
|---|---|---|
| 106 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-ninth through thirty-fifth line | Delete from: "Unless otherwise" to the end of this section. |
| 107 | EXHIBIT G, Article 8. Work, Section 8.03, first line | Replace: " 30" with "five (5)" |
| 108 | EXHIBIT G, Article 8. Work, Section 8.03, second line | Add after "Owner", "reasonably" |
| 109 | EXHIBIT G, Article 8. Work, Section 8.03, third line | Add after: "due", "within thirty days of submission by Construction Contractor to Owner" |
| 110 | EXHIBIT G, Article 8. Work, Section 8.03, fourth line | Add after: "payment.", "Owner may withhold no amount in excess of the reasonably disputed amount portion." |
| 111 | EXHIBIT G, Article 8. Work, Section 8.03, fourth line | Add before: "Construction Contractor", "Construction Contractor shall receive payment for the full amount due no later than thirty (30) days from the original submission date of the Application for Payment." |
| 112 | EXHIBIT G, Article 8. Work, Section 8.03, end of section | Add after: "entitled" , "to the extent that Owner approved a sufficient amount to make such payments" |
| 113 | EXHIBIT G, Article 8. Work, Section 8.04, second line | Add after: "filed", " to the extent of the disputed amount only" |
| 114 | EXHIBIT G, Article 8. Work, Section 8.04, second line | Add after "(d)", "substantiated" |
| 115 | EXHIBIT G, Article 8. Work, Section 8.04, seventh/last line | Add after: "cured", "only to the extent of the reasonable value that can be assigned to such breach" |
| 116 | EXHIBIT G, Article 8. Work, Section 8.05, second line | Replace: "the Work is finally complete" with "the project is determined to be fifty percent complete at which time the retained balance shall be reduced to fifty percent of the Contract Sum at such time retainage shall continue at five (5) percent" |
| 117 | EXHIBIT G, Article 8. Work, Section 8.06, third line | Add after: "do not", "materially" |
| 118 | EXHIBIT G, Article 8. Work, Section 8.06, tenth line | Add after: "authorities", "or the Construction Contractor's work is not an impediment to the issuance of such certificate of occupancy" |
| 119 | EXHIBIT G, Article 8. Work, Section 8.08, eighth line | Delete: "The acceptance" through "still unsettled" |
| 120 | EXHIBIT G, Article 8. Work, Section 8.09 (a), fifth line | Replace: "accepts (in writing) such responsibility" with "occupies or permits the Work to be occupied by others or at substantial completion, which ever comes first" |
| 121 | EXHIBIT G, Article 9. Work, Section 9.02, fourth line | Add after: "risks", "directly related to the work" |
| 122 | EXHIBIT G, Article 9. Work, Section 9.02, sixth line | Add after: "watchmen", "related only to the Work" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 123 | EXHIBIT G, Article 9. Work, Section 9.02, seventh line | Add after: "barricades", "directly related to the Work" |
|---|---|---|
| 124 | EXHIBIT G, Article 9. Work, Section 9.02, eleventh line | Delete: ", not less than a nine (9) pound halon fire extinguisher shall be provided." |
| 125 | EXHIBIT G, Article 9. Work, Section 9.02, last line | Delete: "; however, Owner" through " watchmen" |
| 126 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a), fourth line | Delete: "by cost code" |
| 127 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Delete: "Construction Contractor and" |
| 128 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Delete after: "fee(s)", "include" |
| 129 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Add after: "fee(s)", "which shall be adjusted to be adequate enough to cover" |
| 130 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth line | Delete: "Construction Contractor and" |
| 131 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth through tenth line | Delete after "Construction Contractor", "understands that" through "furnished to subcontractor." |
| 132 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth line | Add after: "Construction Contractor", "shall add a percentage fee of ten (10) percent to cover Construction Manager's mark-up on subcontractor's lump-sum estimate for additional work, plus any additional amount marked-up for overhead and profit at twenty (20) percent to cover Construction Contractor's cost for work performed by Construction Contractor's own forces for layout, field supervision, small tools and related items. |
| 133 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (ii), fifth through seventh line, end of section | Delete: "Construction Contractor shall" through "furnished to Construction Contractor." |
| 134 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (ii), fifth line | Add after: "overhead, and profit.", "Any other costs related to owner furnished product, equipment or material other than unload, storage and staging for work shall be additional work and invoiced in accordance with Article 10. |
| 135 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (i), fifth line | Delete: "Construction Contractor and" |
| 136 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (i), fifth line | Add after: "subcontractor", "and one-half of Construction Contractors mark-up on subcontractor's lump-sum estimate for additional work" |

### SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
### CONTRACT NO. 6B
### BANK ONE CORE DATA CENTER #2
### ADDENDUM 1

| | | |
|---|---|---|
| 137 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (ii), third line | Add after: "plus", "one-half" |
| 138 | EXHIBIT G, Article 10. Work, Section 10.03.02, third line | Delete after: "applied to", "approved" through payrolls" |
| 139 | EXHIBIT G, Article 10. Work, Section 10.03.02, third line | Add after: "applied to", "all "on-site" costs" |
| 140 | EXHIBIT G, Article 10. Work, Section 10.03.02, fourth line | Replace: "ten (10)" with "thirty (30)" |
| 141 | EXHIBIT G, Article 10. Work, Section 10.03.02, eighth line, end of section | Add after: "information", "specifically requested by Owner that is not burdensome" |
| 142 | EXHIBIT G, Article 10. Work, Section 10.03.03 (a), sixth and seventh line | Delete: "Construction Contractor shall" through "furnished to Construction Contractor." |
| 143 | EXHIBIT G, Article 10. Work, Section 10.03.03 (a), sixth line | Add after: "Order.", "Any other costs related to owner furnished product, equipment or material, other than unload, storage and staging for work shall be additional work and invoiced in accordance with Article 10. *DNT: Check general conditions and Section 3 to determine what should be excluded and charged directly.* |
| 144 | EXHIBIT G, Article 10. Work, Section 10.03.03 (b), second line | Replace: "supervision" through "expenses", with "costs not directly related to the conduct of the Work. |
| 145 | EXHIBIT G, Article 10. Work, Section 10.05, fifth line | Replace: "30" with "ten (10)" |
| 146 | EXHIBIT G, Article 10. Work, Section 10.06, second line | 2.04 is a bad reference. 2.03 could be the reference, but only partially fits as worded. Could also be Article 12? |
| 147 | EXHIBIT G, Article 10. Work, Section 10.06, seventh line | Replace: "20 days" with "a reasonable amount of time considering nature of claim, events surrounding time of the event, such as schedule and directives from Owner or Owner's representative(s), but in no case less than up to thirty (30) days. |
| 148 | EXHIBIT G, Article 10. Work, Section 10.06, eighth line | Add after: "property,", "schedule driven requirements or Owner or Owner representative driven requirements," |
| 149 | EXHIBIT G, Article 10. Work, Section 10.06, eighth line | Add after: "property", "in accordance with Section 9.03" |
| 150 | EXHIBIT G, Article 10. Work, Section 10.06, eighth and ninth line | Delete: ", in which case" through "through "9.03" |
| 151 | EXHIBIT G, Article 11. Work, Section 11.02 (a), first line | Add after: "Owner's", "reasonable" |
| 152 | EXHIBIT G, Article 12. Work, Section 12.01, eleventh line, at end of section | Add after: "damages", "unless such termination was caused by breach of contract by Owner or Owner's representative(s)" |

**SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT**
**CONTRACT NO. 6B**
**BANK ONE CORE DATA CENTER #2**
**ADDENDUM 1**

| 153 | EXHIBIT G, Article 12. Work, Section 12.02 (a), fourth line | Add after: "termination", "and all costs associated with demobilization and reassignment of personal" |
|---|---|---|
| 154 | EXHIBIT G, Article 12. Work, Section 12.02 (a), sixth line | Add after: "provision", "except for commitments related to fabrication and fabrication materials and special orders and such other items that require a lead time commitment of time and material." |
| 155 | EXHIBIT G, Article 12. Work, Section 12.02 (b), fifth line | Add after: "materials", ", if manpower and material is the proper solution and there is agreement to properly compensate for such , |
| 156 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth line | Add after: "date", "reasonably and mutually" |
| 157 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth and ninth line | Delete: "or a labor dispute" through "or similar actions" |
| 158 | EXHIBIT G, Article 12. Work, Section 12.02 (b), tenth line | Delete "without limitation," |
| 159 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth and ninth line | Add after: ""fails", ", exclusively through the fault of the Construction Contractor," |
| 160 | EXHIBIT G, Article 12. Work, Section 12.02 (b), fifteenth line | Replace: "80" with "100" |
| 161 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth line | Delete: "any further" through "finished." |
| 162 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth line | Add after: "any payment in excess of the Sum due the Construction Contractor, less what is reasonably required to complete Construction Contractors Work." |
| 163 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth and twentieth line | Delete: "plus leasing fees referred to in (ii) above |
| 164 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twentieth line | Add before: "expense", "direct" |
| 165 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-first and twenty-second line | Delete: "including compensation" through " default," |
| 166 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-second line | Add before: "expense" "direct" |
| 167 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-second line | Delete: "plus Owner's losses and damages" |
| 168 | EXHIBIT H | Delete in its entirety |
| 169 | Schedule 8.02 | Delete in its entirety |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| 170 | Schedule 8.02 | Replace with: "APPLICATION AND CERTIFICATE FOR PAYMENT AND CONTINUATION SHEET FOR CONSTRUCTION CONSTRUCTOR AND SUBCONTRACTOR TO OWNER<br>Use AIA Document G702-1992 and G703-1992 respectively. |
| --- | --- | --- |
| 171 | Schedule 10.02 | Replace with the actual document used on this project per owner's direction |

# EXHIBIT "C"

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No._____ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **AFFIDAVIT OF DEFENSE** |
| Banc One Building Corporation, an Illinois | ) **REQUIRED BY 10 <u>DEL</u>. <u>C</u>. §3901** |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) **NON-ARBITRATION CASE** |
| | ) |
| Defendants. | ) |

### BILL OF PARTICULARS

The undersigned, being first duly sworn, does depose and state as follows:

1.      An itemization of the claims of Creedon Controls, Inc., in the captioned litigation, is set forth in the attached Application and Certificate for Payment (A1A Document G702, 7 pages), and the Total Claim Summary Project No. 2357.

2.      The principal sum demanded by Creedon Controls, Inc., as set forth in the attachment, is justly due and correct, and no part of these amounts has been paid.

3.      That this Bill of Particulars is made in support of Creedon Controls, Inc.'s Complaint and Statement of Claim for Mechanics' Lien.

**CREEDON CONTROLS, INC.**

BY: _Patricia Creedon_
PATRICIA CREEDON, President

SWORN TO AND SUBSCRIBED before me, this 4th day of April, 2005.

_____
Notary Public/Notarial Officer

RKB/msj
05023-0001

As of March 31, 2005

**Bank One**
**CDC II Brandywine, Delaware**
**Bill of Particulars/Claims Summary**
**Project #2357**

| | | Amount | Remarks |
|---|---|---|---|
| **Retainage Due** | | | |
| | Retainage | 181,380 | AIA dated October 31, 2004 |
| **Total Retainage Due** | | $181,380 | |
| | | | |
| **Change Orders Balance Due:** | | | |
| Work Approved Prior-Unpaid: | | | |
| | Billed net of retainage | $29,864 | AIA dated September 7, 2004 |
| | PCOs not submitted prior | 39,248 | PCO Spreadsheet dated March 31, 2005 and PCO detail |
| | PCOs repriced and rebilled | 77,572 | Forest 1/12/04 email and Contract Addendum 1 |
| Not Approved Prior-Unpaid: | | | |
| | PCO #51-Billed AIA through 5/31/04 | 1,588,402 | Critical Events-removed from 5/31/04 AIA to receive paym't for balance; some changes made |
| | PCO #52-Latest Bill: March 31, 2005 | 531,066 | Critical Events-subsequent to original list. |
| | | | |
| **Total Change Order Balance Due** | | $2,266,152 | |
| | | | |
| **Other Damages-Not approved prior-unpaid:** | | | |
| (PCO #53-Latest Bill: March 31, 2005) | | | |
| Labor: | | | |
| | Delays-non-excusable | See Remarks | Labor Productivity Impact in addition to Critical Events |
| | Rescheduling & Resequencing | See Remarks | Labor Productivity Impact in addition to Critical Events |
| | Failure to Timely Respond to RFIs | See Remarks | Listed on PCO #51 detail without amount |
| | Failure to Timely Respond to PCO's | See Remarks | Listed on PCO #51 detail without amount |
| | Eliminate Night Shift | See Remarks | Labor Productivity Impact-less delay on night shift |
| | Restricted Access | See Remarks | Labor Productivity Impact in addition to Critical Events |
| | Obstructed Work Area | See Remarks | Labor Productivity Impact in addition to Critical Events |
| | Limited Secure Storage | See Remarks | Labor Productivity Impact in addition to Critical Events |
| | Rate of Manpower Consumption | See Remarks | Manpower Consumption vs. Estimate |
| | Stacking of Trades | See Remarks | Labor Productivity Impact |
| Subtotal Other Damages-Labor: | | $70,620 | |
| Material: | | | |
| | Material Price Changes | 24,049 | Copper & steel: bid versus delayed purchase |
| Subtotal Other Damages-Material: | | $24,049 | |
| Site Office: | | | |
| | Extended Overhead | 15,604 | |
| Subtotal Other Damages-Site Office: | | $15,604 | |
| Home Office: | | | |
| | Interest on Working Capital Line | 143,571 | Bank Statements |
| | Interest on Late Payments | 29,459 | Days Outstanding Cash Spreadsheet |
| | Extended Home Office Overhead | 202,594 | Eichleay Spreadsheet |
| | Gross Receipts Tax | 52,330 | Tax Form-Amount Billed through 9/7/04 Only |
| Subtotal Other Damages-Home Office: | | $427,954 | |
| | | | |
| **Total Other Damages** | | $538,226 | PCO #53-Latest Bill: March 31, 2005 |
| | | | |
| **Project Claim (as of March 31, 2005)** | | $2,985,758 | |

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 7 PAGES

| | | |
|---|---|---|
| TO (OWNER): | **Bank One** | PROJECT: **CDC II - Brandywine** |
| | | **General Lighting & Power** |

APPLICATION NO: **Fourteen**

PERIOD TO: **3/31/2005**

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

FROM (CONTRACTOR): **Creedon Controls, Inc.**

VIA (ARCHITECT):

PROJECT NOS:

CONTRACT FOR: **Electrical**

CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . | | 3,184,600.00 |
| 2. Net change by Change Orders . . . . . . . . . . . . | | 3,217,506.02 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . . | | 6,402,106.02 |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . . | | 6,402,106.02 |
|    Column G on G703 | | |
| 5. RETAINAGE | | |
|    a. _____ % of Completed Work $ _____ | | |
|       (Columns D + E on G703) | | |
|    b. _____ % of Stored Material $ _____ | | |
|       (Column F on G703) | | |
|    Total Retainage (line 5a + 5b or | | |
|    Total in Column I on G703) . . . . . . . . . . | | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . | | 6,402,106.02 |
|    (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | 3,627,591.79 |
|    (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . | $ | 2,774,514.23 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
|    (Line 3 less Line 6) $ | | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $442,991.79 | |
| Total approved this Month | $2,774,514.23 | |
| TOTALS | $3,217,506.02 | |
| NET CHANGES by Change Order | $3,217,506.02 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _Antonia Creedon_    Date:    03/31/05

State of: __Delaware__

County of: __New Castle__

Subscribed and sworn to before me this _31st_ day of _March 2005_

Notary Public: _____

My Commission expires: __05/29/05__  _MAY 3_

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . $ _____
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATION FOR PAYMENT • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.    G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFCATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (Instructions on reverse side)

APPLICATION NO:
APPLICATION DATE:    Fourteen / 3/31/2005
PERIOD TO:    3/31/2005
ARCHITECTS PROJECT NO:

PAGE 2 OF 7 PAGES

| A | B | C | D | E | F | G | % | H |
|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | | |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
| 1 | Mobilization | $50,000.00 | $50,000.00 | | | $50,000.00 | 100% | |
| 2 | Design/Engineering | $75,000.00 | $75,000.00 | | | $75,000.00 | 100% | |
| 3 | Area "A" | | | | | | | |
| 4 | Fixtures | $190,000.00 | $190,000.00 | | | $190,000.00 | 100% | |
| 5 | Fixture Supports | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | |
| 6 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 7 | Lighting Wire | $45,000.00 | $45,000.00 | | | $45,000.00 | 100% | |
| 8 | Lighting Devices | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | |
| 9 | Gear/Panels | $63,000.00 | $63,000.00 | | | $63,000.00 | 100% | |
| 10 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 11 | Power Conduit | $62,500.00 | $62,500.00 | | | $62,500.00 | 100% | |
| 12 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 13 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 14 | Area "B" | | | | | | | |
| 15 | Fixtures | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | |
| 16 | Fixture Supports | $115,000.00 | $115,000.00 | | | $115,000.00 | 100% | |
| 17 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 18 | Lighting Wire | $32,500.00 | $32,500.00 | | | $32,500.00 | 100% | |
| 19 | Lighting Devices | $2,000.00 | $2,000.00 | | | $2,000.00 | 100% | |
| 20 | Gear/Panels | $70,000.00 | $70,000.00 | | | $70,000.00 | 100% | |
| 21 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 22 | Power Conduit | $90,000.00 | $90,000.00 | | | $90,000.00 | 100% | |
| 23 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 24 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON D.C., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (Instructions on reverse side)

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECTS PROJECT NO:

PAGE   3   OF   7   PAGES

**Fourteen**
**3/31/2005**
**3/31/2005**

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | H BALANCE TO FINISH (C-G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 25 | Area "C" | | | | | | | | |
| 26 | Fixtures | $190,000.00 | $190,000.00 | | | $190,000.00 | 100% | | |
| 27 | Fixture Supports | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | | |
| 28 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 29 | Lighting Wire | $45,000.00 | $45,000.00 | | | $45,000.00 | 100% | | |
| 30 | Lighting Devices | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | | |
| 31 | Gear/Panels | $63,000.00 | $63,000.00 | | | $63,000.00 | 100% | | |
| 32 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 33 | Power Conduit | $62,500.00 | $62,500.00 | | | $62,500.00 | 100% | | |
| 34 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 35 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 36 | Area "D" | | | | | | | | |
| 37 | Fixtures | $213,000.00 | $213,000.00 | | | $213,000.00 | 100% | | |
| 38 | Fixture Supports | $105,000.00 | $105,000.00 | | | $105,000.00 | 100% | | |
| 39 | Lighting Conduit | $100,700.00 | $100,700.00 | | | $100,700.00 | 100% | | |
| 40 | Lighting Wire | $52,000.00 | $52,000.00 | | | $52,000.00 | 100% | | |
| 41 | Lighting Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 42 | Gear/Panels | $143,000.00 | $143,000.00 | | | $143,000.00 | 100% | | |
| 43 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 44 | Power Conduit | $117,500.00 | $117,500.00 | | | $117,500.00 | 100% | | |
| 45 | Power Wire | $82,500.00 | $82,500.00 | | | $82,500.00 | 100% | | |
| 46 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 47 | Area "E" | | | | | | | | |
| 48 | Fixtures | $75,000.00 | $75,000.00 | | | $75,000.00 | 100% | | |



AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON D.C., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (instructions on reverse side)

APPLICATION NO: **Fourteen**
APPLICATION DATE: **3/31/2005**
PERIOD TO: **3/31/2005**
ARCHITECTS PROJECT NO:

PAGE 4 OF 7 PAGES

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D+E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | H BALANCE TO FINISH (C-G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 49 | Fixture Supports | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 50 | Lighting Conduit | $13,000.00 | $13,000.00 | | | $13,000.00 | 100% | | |
| 51 | Lighting Wire | $7,500.00 | $7,500.00 | | | $7,500.00 | 100% | | |
| 52 | Lighting Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 53 | Gear/Panel | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 54 | Tele/Data Rough-in | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | | |
| 55 | Power Conduit | $19,000.00 | $19,000.00 | | | $19,000.00 | 100% | | |
| 56 | Power Wire | $25,000.00 | $25,000.00 | | | $25,000.00 | 100% | | |
| 57 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 58 | 700 ST Hours @ $60/Hr | $42,000.00 | $42,000.00 | | | $42,000.00 | 100% | | |
| 59 | 300 OT Hours @ $90/Hr | $27,000.00 | $27,000.00 | | | $27,000.00 | 100% | | |
| 60 | Unspecified Scope & Testing | $10,000.00 | $10,000.00 | | | $10,000.00 | 100% | | |
| 61 | Contingency | $126,800.00 | $126,800.00 | | | $126,800.00 | 100% | | |
| 62 | Bonding | $32,600.00 | $32,600.00 | | | $32,600.00 | 100% | | |

AIA DOCUMENT G703 • CONTINUATION SHEET FOR G702 • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC., 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703   (Instructions on reverse side)

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECTS PROJECT NO:

PAGE 5 OF 7 PAGES

**Fourteen**
**3/31/2005**
**3/31/2005**

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | CCI PCO#2 - January | $7,014.07 | $6,760.21 | $253.86 | | $7,014.07 | 100% | | |
| 2 | CCI PCO#3 - January | $49,337.51 | $40,979.10 | $8,358.41 | | $49,337.51 | 100% | | |
| 3 | CCI PCO#3 - February | $22,883.64 | $19,292.05 | $3,591.59 | | $22,883.64 | 100% | | |
| 4 | CCI PCO#4 - February | $92,447.02 | $72,489.00 | $19,958.02 | | $92,447.02 | 100% | | |
| 5 | CCI PCO#16 - February | $2,514.87 | $2,053.00 | $461.87 | | $2,514.87 | 100% | | |
| 6 | CCI PCO#3 - March | $54,559.00 | $43,006.23 | $11,552.77 | | $54,559.00 | 100% | | |
| 7 | CCI PCO#4 - March | $30,488.12 | $29,541.61 | $946.51 | | $30,488.12 | 100% | | |
| 8 | CCI PCO#10 - March | $6,114.79 | $5,416.48 | $698.31 | | $6,114.79 | 100% | | |
| 9 | CCI PCO#15 - March | $5,149.67 | $4,684.44 | $465.23 | | $5,149.67 | 100% | | |
| 10 | CCI PCO#24 - March | $19,920.96 | $16,993.55 | $2,927.41 | | $19,920.96 | 100% | | |
| 11 | CCI PCO#21 - March | $6,553.24 | $6,291.00 | $262.24 | | $6,553.24 | 100% | | |
| 12 | CCI PCO#3 - April | $21,946.16 | $19,669.40 | $2,276.76 | | $21,946.16 | 100% | | |
| 13 | CCI PCO#8 - April | $18,012.71 | $16,611.41 | $1,401.30 | | $18,012.71 | 100% | | |
| 14 | CCI PCO#15 - April | $8,471.83 | $7,347.19 | $1,124.64 | | $8,471.83 | 100% | | |
| 15 | CCI PCO#16 - April | $892.60 | $828.50 | $64.10 | | $892.60 | 100% | | |
| 16 | CCI PCO#24 - April | $14,994.80 | $14,047.42 | $947.38 | | $14,994.80 | 100% | | |
| 17 | CCI PCO#24 - April | $166.64 | $149.25 | $17.39 | | $166.64 | 100% | | |
| 18 | CCI PCO#25 - April | $648.16 | $641.53 | $6.63 | | $648.16 | 100% | | |
| 19 | CCI PCO#30 - April | $6,585.00 | $6,185.38 | $399.62 | | $6,585.00 | 100% | | |
| 20 | CCI PCO#34 - April | $802.24 | $791.13 | $11.11 | | $802.24 | 100% | | |
| 21 | CCI PCO#3 - May | $18,091.57 | $14,608.28 | $3,483.29 | | $18,091.57 | 100% | | |
| 22 | CCI PCO#8 - May | $16,247.30 | $15,521.09 | $726.21 | | $16,247.30 | 100% | | |
| 23 | CCI PCO#10 - May | $2,132.15 | $2,033.12 | $99.03 | | $2,132.15 | 100% | | |
| 24 | | | | | | | | | |

AIA DOCUMENT G703 • CONTINUATION SHEET FOR G702 • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

CAUTIO: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.



# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (Instructions on reverse side)

APPLICATION NO: **Fourteen**
APPLICATION DATE: **3/31/2005**
PERIOD TO: **3/31/2005**
ARCHITECTS PROJECT NO:

PAGE 6 OF 7 PAGES

G703-1992

| A | B | C | D | E | F | G | | H | |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | WORK COMPLETED — THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) 10.0% |
| 25 | CCI PCO#15 - May | $149.20 | $116.20 | $33.00 | | $149.20 | 100% | | |
| 26 | CCI PCO#17 - May | $372.30 | $361.28 | $11.02 | | $372.30 | 100% | | |
| 27 | CCI PCO#24 - May | $2,328.08 | $2,024.09 | $303.99 | | $2,328.08 | 100% | | |
| 28 | CCI PCO#30 - May | $5,010.53 | $4,690.17 | $320.36 | | $5,010.53 | 100% | | |
| 29 | CCI PCO#32 - May | $8,805.04 | $8,019.15 | $785.89 | | $8,805.04 | 100% | | |
| 30 | CCI PCO#3 - June | $12,217.95 | $10,341.36 | $1,876.59 | | $12,217.95 | 100% | | |
| 31 | CCI PCO#4 - June | $2,430.87 | $2,177.18 | $253.69 | | $2,430.87 | 100% | | |
| 32 | CCI PCO#8 - June | $2,470.80 | $2,491.77 | ($20.97) | | $2,470.80 | 100% | | |
| 33 | CCI PCO#10 - June | $1,236.94 | $1,102.06 | $134.88 | | $1,236.94 | 100% | | |
| 34 | CCI PCC#15 - June | $1,920.19 | $1,946.29 | ($26.10) | | $1,920.19 | 100% | | |
| 35 | CCI PCO#28 - June | $12,489.15 | $11,237.91 | $1,251.24 | | $12,489.15 | 100% | | |
| 36 | CCI PCO#36 - June | $7,240.94 | $7,443.77 | ($202.83) | | $7,240.94 | 100% | | |
| 37 | CCI PCO#3 - July | $11,649.51 | $11,524.72 | $124.79 | | $11,649.51 | 100% | | |
| 38 | CCI PCO#35 - July | $2,892.64 | $2,354.23 | $538.41 | | $2,892.64 | 100% | | |
| 39 | CCI PCO#36 - July | $6,074.32 | $5,771.04 | $303.28 | | $6,074.32 | 100% | | |
| 40 | CCI PCO#37 - July | $20,150.16 | $17,686.93 | $2,463.23 | | $20,150.16 | 100% | | |
| 41 | CCI PCO#39 - July | $3,282.42 | $2,957.34 | $325.08 | | $3,282.42 | 100% | | |
| 42 | CCI PCO#40 - July | $934.72 | $887.73 | $46.99 | | $934.72 | 100% | | |
| 43 | CCI PCC#3 - August | $7,099.08 | $6,358.21 | $740.87 | | $7,099.08 | 100% | | |
| 44 | CCI PCC#8 - August | $7,678.92 | $6,709.94 | $968.98 | | $7,678.92 | 100% | | |
| 45 | CCI PCC#15 - August | ($446.83) | ($497.67) | $50.84 | | ($446.83) | 100% | | |
| 46 | CCI PCC#19 - August | $2,594.81 | $2,187.49 | $407.32 | | $2,594.81 | 100% | | |
| 47 | CCI PCC#28 - August | $15,821.61 | $13,789.81 | $2,031.80 | | $15,821.61 | 100% | | |
| 48 | CCI PCC#35 - August | $888.57 | $841.28 | $47.29 | | $888.57 | 100% | | |

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

AIA DOCUMENT G703    (Instructions on reverse side)

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECTS PROJECT NO:

PAGE  7  OF  7  PAGES

Fourteen
3/31/2005
3/31/2005

| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| | | | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| A | B | C | D | E | F | G | | H | |
| 49 | CCI PCO#41 - August | $5,065.77 | $4,246.63 | $819.14 | | $5,065.77 | 100% | | |
| 50 | CCI PCO#42 - August | $1,220.38 | $1,081.39 | $138.99 | | $1,220.38 | 100% | | |
| 51 | CCI PCO#43 - August | $1,183.94 | $1,066.31 | $117.63 | | $1,183.94 | 100% | | |
| 52 | CCI PCO#44 - August | $2,641.37 | $2,214.65 | $426.72 | | $2,641.37 | 100% | | |
| 53 | CCI PCO#45 - August | $149.20 | $183.02 | ($33.82) | | $149.20 | 100% | | |
| 54 | CCI PCO#01 - September | $4,185.84 | $4,011.00 | $174.84 | | $4,185.84 | 100% | | |
| 55 | CCI PCO#08 - September | $3,589.84 | $3,049.62 | $540.22 | | $3,589.84 | 100% | | |
| 56 | CCI PCO#33 - September | $4,984.21 | $4,464.05 | $520.16 | | $4,984.21 | 100% | | |
| 57 | CCI PCO#46 - September | $6,050.17 | $5,798.54 | $251.63 | | $6,050.17 | 100% | | |
| 58 | CCI PCO#47 - September | $418.33 | $540.32 | ($121.99) | | $418.33 | 100% | | |
| 59 | CCI PCO#48 - September | $1,118.47 | $1,053.33 | $65.14 | | $1,118.47 | 100% | | |
| 60 | CCI PCO#49 - September | $603.34 | $831.79 | ($228.45) | | $603.34 | 100% | | |
| 61 | CCI PCO#50 - September | $298.40 | $232.40 | $66.00 | | $298.40 | 100% | | |
| 62 | CCI PCO#51 - March 05 | $1,588,401.60 | | $1,588,401.60 | | $1,588,401.60 | 100% | | |
| 63 | CCI PCO#52 - March 05 | $531,066.15 | | $531,066.15 | | $531,066.15 | 100% | | |
| 64 | CCI PCO#53 - March 05 | $538,225.84 | | $538,225.84 | | $538,225.84 | 100% | | |
| 65 | Contingency - PCO2&3 Jan04 | ($54,243.91) | ($54,243.91) | | | ($54,243.91) | 100% | | |
| 66 | CCI PCO# 5 | ($5,168.36) | | ($5,168.36) | | ($5,168.36) | 100% | | |
| 67 | CCI PCO#6 | $12,006.49 | | $12,006.49 | | $12,006.49 | 100% | | |
| 68 | CCI PCO#11 | $1,590.67 | | $1,590.67 | | $1,590.67 | 100% | | |
| 69 | CCI PCO#26 | $1,156.73 | | $1,156.73 | | $1,156.73 | 100% | | |
| 70 | CCI PCO#27 | $20,208.90 | | $20,208.90 | | $20,208.90 | 100% | | |
| 71 | CCI PCO# 29 | $9,088.87 | | $9,088.87 | | $9,088.87 | 100% | | |
| 72 | CCI PCO#31 | $2,397.81 | | $2,397.81 | | $2,397.81 | 100% | | |
| | | $6,402,106.02 | $3,627,591.79 | $2,774,514.23 | | $6,402,106.02 | 100% | | |

AIA DOCUMENT  G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# EXHIBIT "D"

**20030703-0079856**
Pages: 5   F: $55.00
07/03/03 01:05:58 PM
T20030058012
Michael E. Kozikowski
New Castle Recorder   DEE

Parcel No. 06-149.00-002
Prepared by and Return to:
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

DEED

*THIS DEED*, Made this 27th day of June, in the year of our LORD two thousand

and three (2003),

*BETWEEN,    THE CITY OF WILMINGTON*, a municipal corporation of the State of

Delaware, party of the first part,

*AND*

*BANC ONE BUILDING CORPORATION*, an Illinois corporation, party of the second

part;

*WITNESSETH*, That the said party of the first part, for and in consideration of the sum of

TEN AND 00/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt

whereof is hereby acknowledged, hereby grants and conveys unto the said party of the second part,

its successors and/or it assigns,

All that certain lot, piece or parcel of land, situate on Governor Printz Boulevard,
Brandywine Hundred, New Castle County, State of Delaware, and shown as Parcel No. 2 on a
Record Minor Land Development Plan prepared by VanDemark & Lynch, Inc., Engineers,
Planners and Surveyors, Wilmington, Delaware, recorded May 20, 1981 in the Office of the
Recorder of Deeds in and for New Castle County, Delaware, in Microfilm No. 5976, and being
more particularly described as follows:

BEGINNING at a point where the line dividing the corporate limits of the City of
Wilmington and limits of Brandywine Hundred, New Castle County intersect with the
northeasterly side of the Governor Printz Boulevard at 100 feet wide, said point being a corner for
lands now or formerly of Exxon Corporation and being distant the three (3) following described
courses and distances measured along lines of the said Governor Printz Boulevard from its
intersection with the road connecting East Lea Boulevard with the said Governor Printz Boulevard:

NCC 47460 07/03/03 12:19:08
$0.00 ST
$0.00 NC

5-1

1.  North 73 degrees 41"30" West 80.94 feet to a point;
2.  South 16 degrees 18'30" West 10.00 feet to a point; and
3.  North 73 degrees 41'30" West 57.00 feet to the point of Beginning.

THENCE from the said point of Beginning and continuing along the northeasterly side of Governor Printz Boulevard, the two (2) following described courses and distances:

1.  North 73 degrees 41'30" West 370.39 feet to a point of curvature; and
2.  Northwesterly by a curve to the left having a radius of 1,578.16 feet, an arc distance of 327.71 feet to a point, a corner for lands now or formerly of Wilmington Suburban Water Corporation, said point being distant by a chord of North 79 degrees 37'00" West 327.11 feet from the last described point.

THENCE, leaving the said northeasterly side of Governor Printz Boulevard and by lines of said lands now or formerly of Wilmington Suburban Water Corporation, the four (4) following described courses and distances:

1.  North 25 degrees 20'14" West 372.64 feet to a point;
2.  North 14 degrees 43'29" West 416.71 feet to a point;
3.  North 61 degrees 46'25" East 166.34 feet to a point; and
4.  North 39 degrees 47'01" East 397.21 feet to a point on a line of lands now or formerly of Goodwill Industries of Delaware and Delaware County, Inc. (Microfilm No. 12647).

THENCE along the southwesterly line of said lands now or formerly of Goodwill Industries of Delaware and Delaware County, Inc. South 32 degrees 32'40" East 1,245.07 feet to a point,

THENCE continuing along lines of said lands now or formerly of Goodwill Industries of Delaware and Delaware County, Inc and said lands now or formerly of Exxon Corporation, South 16 degrees 55'50" West 215.32 feet to a point on the said line dividing the limits of the City of Wilmington from Brandywine Hundred, New Castle County.

THENCE thereby South 62 degrees 52'30" West 72.05 feet to a point on the said northeasterly side Governor Printz Boulevard and the point and place of Beginning.  Containing within said metes and bounds 16.906 acres being the same more or less.

TOGETHER with the use of a proposed 20 foot wide easement for ingress, egress and regress and a utility crossing, the said lands of the Wilmington Suburban Water Company and joining other lands of Luke Investments Co., to the southwest as shown on the Record Minor Land Development Plan recorded May 20, 1981 in the Office of the Recorder of Deeds in and for New Castle County on Microfilm No. 5976.

2

**SAID LANDS AND PREMISES** being now more particularly bounded and described in accordance with a Record Land Title Survey prepared by VanDemark & Lynch, Inc., Engineers, Planners and Surveyors, Wilmington, Delaware, as follows, to wit:

All that certain tract, piece or parcel of land situate on Governor Printz Boulevard, Brandywine Hundred, New Castle County, State of Delaware, and shown on a plan prepared by VanDemark & Lynch, Inc., Engineers, Planners and Surveyors, Wilmington, Delaware, Drawing No. 36349-B, dated February 10, 2003, revised through June 23, 2003, and entitled "ALTA/ACSM Land Title Survey, prepared for Bank One Core Data Center #2" and more particularly described as follows, to wit:

BEGINNING at an iron pin set on the northerly side of Governor Printz Boulevard, U.S. Route 13 (a public road at 100 feet wide), the said point being a corner for land now or formerly of E. Earl Downing, Inc. (Deed Record W, Volume 109, Page 86), the said point being also on the political dividing line between the City of Wilmington and Brandywine Hundred, the said point being measured the three (3) following described courses and distances along the said northerly side of Governor Printz Boulevard from its intersection with the westerly side of the connecting road (a public road at 100 feet wide) for East Lea Boulevard:

1. North 73 degrees 41"30" West 80.94 feet to a point;
2. South 16 degrees 18'30" West 10.00 feet to a point; and
3. North 73 degrees 41'30" West 110.95.00 feet to the point of Beginning.

THENCE from the point of Beginning; continuing along the said northerly side of Governor Printz Boulevard, the two (2) following described courses and distances:

1. North 73 degrees 41'30" West 370.39 feet to an iron pin set; and
2. Westerly, by a curve to the left having a radius of 1,578.16 feet, an arc length of 328.56 feet to an iron pipe found, a corner for land now or formerly of Wilmington Suburban Water Company (Deed Record K, Volume 56, Page 476), said point being distant by a chord of North 79 degrees 39'21" West 327.97 feet from the last described point;

THENCE, leaving the said side of Governor Printz Boulevard, along the said land now or formerly of Wilmington Suburban Water Company, the four (4) following described courses and distances:

1. North 25 degrees 22'14" West 372.43 feet to an iron pipe found;
2. North 14 degrees 43'29" West 416.71 feet to a nail set in concrete;
3. North 61 degrees 46'25" East 166.86 feet to a nail set in concrete; and
4. North 39 degrees 47'01" East 397.75 feet to an iron pin set on the line for land now or formerly of Goodwill Industries of Delaware (Deed Record 1345, Page 22);

THENCE along the said land now or formerly of Goodwill Industries of Delaware, South 32 degrees 32'40" East 1,243.43 feet to a stone found,

3

THENCE continuing along the said land now or formerly of Goodwill Industries of Delaware, and land now or formerly of ACE Petroleum, Inc. (Deed Record 2079, Page 130), South 16 degrees 55'50" West 215.32 feet to an iron pipe found, a corner for said land now or formerly of E. Earl Downing, Inc.;

THENCE along the said land now or formerly of E. Earl Downing, Inc., South 62 degrees 52'30" West 72.05 feet to the point and place of Beginning. Containing within said metes and bounds, 16.928 acres of land, being the same, more or less.

UNDER AND SUBJECT, FURTHER, to all covenants, conditions, easements, rights-of-way, reservations, restrictions, and agreements of record in the Office of the Recorder of Deeds in and for New Castle County and State of Delaware.

BEING the same lands and premises which Wilmington UDAG Corporation, by Deed dated August 30, 2000, of record in the Office of the Recorder of Deeds in and for New Castle County, Delaware, at Deed Book 2911, Page 119, granted and conveyed unto the City of Wilmington, party of the first part hereto, in fee.

GRANTEES' ADDRESS:
Banc One Building Corporation
One Bank One Plaza
Chicago, IL 60670

*IN WITNESS WHEREOF, the said City of Wilmington hath caused its name* by William S. Montgomery Administrative Assistant to the Mayor *, to be hereunto set, and the common and corporate seal of the said corporation to be hereunto affixed, duly attested by the City Clerk, the day and year aforesaid.*

*Signed, Sealed, and Delivered*              **CITY OF WILMINGTON**
*in the Presence of:*

By: William S. Montgomery (SEAL)

Attest: Maribel Ruiz (SEAL)
              Officer:
              City Clerk

4

STATE OF __DELAWARE__ , COUNTY OF __NEW CASTLE__ ; SS.

BE IT REMEMBERED, That on this _11th_ day of June, in the year of our LORD, two thousand and three (2003), personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, _William S. Montgomery, Chief of_ the City of Wilmington, a municipal corporation existing under the laws of the State of Delaware, party to this Indenture, personally known to me to be such, and acknowledged this Indenture to be his act and deed and the act and deed of said municipal corporation, that the signature of the _Olivia Pride_ thereto is in his own proper handwriting and the seal affixed is the common and corporate seal of said corporation, and that his act of sealing, executing, and delivering said Indenture was duly authorized by a resolution of the Council of the City of Wilmington.

GIVEN under my Hand and Seal of Office, the day and year aforesaid.

_____
Notary Public

_CAROL A. CASNER_
NOTARY/Printed Name
Commission Expires: _n/a_

Approved as to form
_____
First Assistant City Solicitor

CAROL A. CASNER
Attorney At Law   DE
29 Del. C. § 4323 (a)
Notarial Officer

5