# EXHIBIT A

# FOREST ELECTRIC CORPORATION

## FILE NO. 100537-00001

## PRODUCTION LOG

| DATE OF PRODUCTION | BATES #S |
|---|---|
| **Forest Electric's Production** | |
| 10/4/05 | FE 000001-FE 008088 |
| 10/12/05 | FE 008089-FE 008282 |
| 1/9/06 | FE 008283-FE 0014069 |
| 1/23/06 | FE 014070-FE 014135 |
| 2/15/06 | FE 014136-FE 014161 |
| | |

# EXHIBIT B

Westlaw.

1981 WL 2080  Page 1
Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034
(Cite as: 1981 WL 2080 (N.D.Ga.))

C

United States District Court; N.D. Georgia, Atlanta Division.
**LaMar Printing, Inc., et al.**
v.
**Minuteman Press International, Inc., et al.**
Civil Action No. C 81-05 A

Filed May 14, 1981

VINING, D. J.

### Order

*1 This is a three count action alleging a tying arrangement in violation of section 1 of the Sherman Act, a deceptive trade practice and an unreasonable restraint of interstate commerce in violation of section 1 of the Sherman Act and Ga. Code Ann. Ch. 106-7, and a violation of section 2 of the Robinson-Patman Act. Defendant Minnesota Mining and Manufacturing Company has filed a motion to dismiss the plaintiffs' complaint for failure to state a claim; defendants Minuteman Press International, Moore, and Titus have moved to dismiss the plaintiffs' complaint for failure to state a claim and alternatively have moved for judgment on the pleadings.

[*Franchise-Equipment Tie-In*]

Under count 1 the plaintiffs allege that defendant Minuteman Press is an interstate franchisor of printing businesses operating under the service mark "Minuteman Press." Franchisees of Minuteman Press are required to execute a franchise agreement with a term of 15 years. Count 1 further alleges that defendant 3M manufactures, sells, and leases in interstate commerce throughout the United States printing presses, cameras, and other items of equipment used in connection with printing businesses. Defendant Moore is the regional manager of Minuteman Press and supervises all franchisees in the state of Georgia; defendant Titus is the president and chief operating officer of Minuteman Press. The plaintiffs further allege that the defendants were engaged in an unlawful combination and conspiracy seeking to restrain interstate trade and commerce in printing equipment and printing business franchises by an agreement and concert of action "to require franchisees of Defendant Minuteman Press to purchase or lease from Defendant 3M all Printing Equipment to be used in the operation of a Minuteman Press Store, including, without limitation, printing presses and equipment. Franchisees of Minuteman Press were required to agree not to purchase any printing presses or camera equipment for use in their Minuteman Press store from any person other than Defendant 3M as a condition of obtaining equipment manufactured or distributed by defendant 3M or obtaining a Minuteman Press franchise from Defendant Minuteman Press."

However, these allegations are belied by the copy of the franchise agreement, which the plaintiffs have attached as exhibit A to their complaint. Paragraph IV of the franchise agreement provides: "All furniture, fixtures, equipment and supplies listed in Schedule A are available from Franchisor in standard packages at the prices shown in Schedule A. Franchisee has no express obligation to purchase or lease these items from Franchisor or Leasor. Franchisor will furnish specifications upon request." Paragraph X of the franchise agreement states that that agreement in Schedule A attached thereto contains the entire agreement of the parties.

Although a complaint should be read liberally to determine if it does state a claim upon which relief can be granted, when averments in a complaint are flatly contradicted by facts disclosed by a document appended to the complaint, dismissal is appropriate. *Associated Builders, Inc. v. Alabama Power Company,* 505 F. 2d 97 (5th Cir. 1974). Although the plaintiffs allege that the defendants required that they lease equipment from 3M, the franchise agreement expressly provides otherwise. Even read liberally, count 1 fails to state a claim upon which relief can be granted, and count 1 must be dismissed.

*2 Under count 2 the plaintiffs allege that in 1976 Minuteman Press and 3M participated jointly in a trade show in Atlanta, Georgia, and that said participation was for the purpose of selling Minuteman Press franchises in conjunction with printing equipment supplied by 3M. At the trade show representatives of Minuteman Press and 3M demonstrated the operation and use of the printing equipment to the plaintiffs, and the plaintiffs allege that these representatives represented to the plaintiffs that a franchisee could expect profits exceeding $6,000 per month. The plaintiffs allege that as a result of the demonstration at the trade show they

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1981 WL 2080                                                                                                                                                        Page 2
Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034
**(Cite as: 1981 WL 2080 (N.D.Ga.))**

believed that Minuteman Press and 3M were partners or joint venturers in establishing printing franchises. The plaintiffs contend that in reliance upon the statements made at the trade show they agreed to enter into agreements with Minuteman Press and 3M to become a franchisee of Minuteman Press. The plaintiffs conclude that the representations made to the plaintiffs constituted a deceptive trade practice and caused an unreasonable restraint of interstate commerce.

On the face of these allegations it is clear that the plaintiffs have, at most, stated a cause of action under the Georgia statute. The facts alleged in the complaint under this count do not warrant the legal conclusion that there has been a violation of section 1 of the Sherman Act. The requirements of pleading a cause of action under the Sherman Act are not met by merely alleging that there was a combination, contract, or conspiracy which tended to prejudice the public interest which was anti-competitive in its nature. "It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the anti-trust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." *Kinnear-Weed Corporation v. Humble Oil and Refining Company* [1954 TRADE CASES P 67,822], 214 F. 2d 891, 894 (5th Cir. 1954). See also *Larry R. George Sales Co. v. Cool Attic Corp.* [1979-1 TRADE CASES P 62,419], 587 F. 2d 266 (5th Cir. 1979). No such facts are alleged in the instant case.

Assuming, however, that count 2 of the complaint states a cause of action under state law, this court declines to exercise pendent jurisdiction because of the court's disposition of counts 1 and 3 of the complaint.

[*Price Discrimination*]
Under count 3 of the complaint, the plaintiffs allege that the prices which they were charged to lease equipment, "were in excess of the standard retail price for such printing equipment and such price is paid by other purchasers of such equipment." The plaintiffs conclude that this discrimination "had the effect of injuring competition or preventing competition between other printing equipment suppliers and Defendant 3M in violation of Section 2 of the Robinson-Pattman [*sic*] Act (15 U. S. C. § 13)." Even assuming arguendo that the Robinson-Patman Act, which applies only to sales, applies to the lease-purchase agreement in the instant case, the court still concludes that the plaintiffs have failed to state a claim under Robinson-Patman. Robinson-Patman proscribes situations wherein there have been two sales by the same vendor-one to the plaintiff and another at a lower price to a favored purchaser. That the plaintiffs could have acquired the equipment at a cheaper price from another source does not state a cause of action under Robinson-Patman. "The basic purpose of Section 2(a) of the Robinson-Patman Act was to insure that purchasers from a single seller would not be injured by the seller's discriminatory pricing policies." *Hiram Walker, Inc. v. A&S Tropical, Inc.* [1969 TRADE CASES P 72,698], 407 F. 2d 4, 7 (5th Cir.), cert. denied, 396 U. S. 901 (1969). Since the plaintiffs fail to allege any facts showing that the seller sold the products to them at a price greater than that charged to another customer, they have failed to state a claim under Robinson-Patman.

*3 In reply to defendant 3M's motion to dismiss, the plaintiffs state, "Upon discovery in this case, Plaintiffs believe facts showing at least two actual and contemporaneous sale-purchase transactions by 3M will be uncovered. Until such discovery is made, however, Plaintiffs are unable to state with more specificity the facts surrounding such sales." The court is of the firm belief that facts necessary to state a cause of action must be stated in the complaint and that a plaintiff should not be allowed to file a suit and then conduct discovery to see if he, in fact, has a case. If the plaintiffs were aware of facts which would show a violation of Robinson-Patman by the defendants, they should have alleged such facts in the complaint. Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact.

For the foregoing reasons, the plaintiffs' complaint is Dismissed with respect to all federal claims. The court declines to exercise pendent jurisdiction with respect to the state law claims.

Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.