IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CREEDON CONTROLS, INC., a Delaware Corporation, | § § § | |
| | § | C.A. No. 05CV300 (JJF) |
| Plaintiff, | § § | |
| v. | § § | |
| BANC ONE BUILDING CORPORATION, An Illinois Corporation, and FOREST ELECTRIC CORPORATION, a New York Corporation, | § § § § § | |
| Defendants. | § § § | |

**DEFENDANT FOREST ELECTRIC CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW, Defendant Forest Electric Corporation ("Forest") by and through undersigned counsel in opposition to Plaintiff's Motion to Compel (the "Motion") and responds as follows:

1.  Plaintiff Creedon Controls, Inc. ("Creedon") filed the Motion on February 21, 2006. The Motion pertains to both Banc One Building Corporation ("Banc One"), and Forest.[1]

*A Wide Net—Creedon's Roving Document Demands*

2.  The Motion crafts two grievances: (i) everything stated in <u>Defendants Banc One Building Corporation's and Forest Electric Corporation's Answers to Plaintiff's Second Request for Production of Documents</u>, including "(Exhibit 3 [to the Motion], incorporating Objections)"; and (ii) everything stated in <u>Defendants Banc One Building Corporation's and Forest Electric</u>

_____

[1] Although globally, Creedon seeks documents from both Defendants and couches its Motion in terms of a single demand, Forest responds here only to the extent that such demands are relevant to Forest. Where applicable, Forest incorporates any and all defenses and arguments made by Banc One and where applicable adopts all statements of Banc One to the extent that they relate to a response to the Motion.

Corporation's Answers to Plaintiff's Request for Production of Documents, including "(Exhibit 4 [to the Motion], see Objection 11)".

3. Thus, Creedon seeks to compel two categories of documents. First, those to which Forest objects as unduly burdensome, vague and outside the scope of F.R.C.P. 26. Second, Creedon baldly demands proprietary and confidential documents between Forest and other contractors.

4. Forest demurs because the documents demanded are irrelevant, beyond the scope of F.R.C.P 26 and wholly unrelated to any allegations made in the Compliant. For the reasons herein, Creedon's Motion should be Denied.

*Creedon's Complaint and the Foundation of its Discovery Demands*

5. Creedon's simple Complaint alleges two alternative theories. First, that Banc One breached an alleged agreement between Creedon and Banc One, which acknowledges Forest as Banc One's agent at all times; second, that Forest breached an alleged agreement between Creedon and Forest, which expressly precludes monetary damages. (D.I. 2, *compare* Count II with Count III).

6. Forest has reviewed, categorized and produced to Creedon and its attorneys in excess of 14,000 documents (*see* Ex. A hereto, Forest Production Log), related to the theories outlined in Creedon's Complaint.

7. Now, in support of its Motion Creedon conjures an un-pled conspiracy orchestrated by Defendants to surreptitiously deploy other contractors to preclude Creedon's timely performance. (*See* D.I. 51 Motion, ¶¶5-6).[2] To root out this modified speculation, Creedon prays

---

[2] Creedon's new theory which is not alleged in the Complaint, sounds in breach of the covenant of good faith and fair dealing. This differs from Creedon's Complaint which Forest has fairly read to allege that Defendants' breach of the contract was a failure to adequately define and outline the scope of the work to be performed by Creedon, and that as a result Creedon could not adequately perform, spent time performing duplicate work or such work had already been performed by a third party. Creedon now

2

for access to highly proprietary bid, contract, estimation and other documents between Forest

and third-parties with whom Creedon still actively competes in the relevant marketplace and

Forest still actively employs in other of its endeavors.

8.   First, this new theory was not pled by Creedon; regardless, it does nothing to prove the

breach of contract alleged.  Forest has produced schedules of third party contractors which

outline the date, time and scope of work to be performed and the date and time of completion.

Second, Creedon has *not* pointed to a single document in the over 14,000 pages that have already

been produced by Forest alone, remotely supportive of its conspiracy premonition.

9.   Creedon's demands are a subterfuge to view the proprietary information of its competitor and

Forest and amount to nothing more than a fishing expedition designed to vet out a newly

fabricated and wholly unsupported theory regarding a third party conspiracy.

> *Category I—Creedon's Prayers Lack  Purpose and Cause and Do Not Overcome*
> *Forest's Standing Objections.*

10.  "An order for the production of documents, etc., under Rule 34 will not be entered unless the

motion and the accompanying affidavits show that the items sought are relevant and sufficiently

designated and that the movant has 'good cause' for the requested production." *Scuderi v. Boston*

*Ins. Co.*, 34 F.R.D. 463, 466 (D. Del. 1964); 28 U.S.C.A. 4 Moore's Federal Practice, 2nd Ed., §

34.08; *Alltmont v. U.S.*,  177 F.2d 971 (3d Cir. 1950) *cert. denied*, 339 U.S. 967 (1950). "Good

cause means that there must be 'special circumstances in [the] particular case which make it

essential to the preparation of [the] case and in the interest of justice that the statements be

produced for inspection or copying." *Alltmont* , 177 F.2d at 978.

---

attempts to assert that the alleged breach of the contract was the conspiracy itself to preclude Creedon's performance, which is an allegation associated with contractual covenants— not inadequate management as pled.

3

11. Forest has properly made objections to Creedon's requests and articulated a basis therefore. Creedon forwards no specific good cause; Creedon's demand is broad, points to no specific Forest objection, and fails to state good cause for any one of Forest's specific objections. This alone precludes the relief the Motion demands. Further, Creedon has not articulated how any such information is relevant to its two alternative contract claims and theories related to such pleadings. Creedon fails to articulate good cause for any objection and the Motion should be Denied.

*Category II Request—Creedon is on a Fishing Expedition*

12. "[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action."[3] Creedon's second discovery demand is founded upon its newly morphed theory of how Defendants' allegedly breached a contract. Creedon itself admits the speculative nature of this information. (D.I. 51, Motion ¶5-6). Without basis in the Complaint or support by any of the 14,000 documents produced in this case to date, Creedon's intrusive quest in pursuit of a hunch must be Denied.

---

[3] *Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996); *see also Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed.Cir.1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request ....") (footnote omitted) (citations omitted); *Strait v. Mehlenbacher*, 526 F.Supp. 581, 584 (W.D.N.Y.1981) ("[I]t appears that defendants are attempting to utilize the discovery rules as a 'fishing expedition' to find some basis of their civil rights claim. This is plainly in violation of the Federal Rules.") (citations omitted); *Lamar Printing, Inc. v. Minuteman Press Int'l, Inc.*, No. C 81-05 A, 1981 WL 2080, at *3 (N.D.Ga. May 14, 1981) ("Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact.") (Exhibit B hereto); *In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y.1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so .'") (citations omitted).

5521119v1

13. Even if Creedon's request were not a fishing expedition and were founded upon some permissible basis, its second request is unduly burdensome. This project involved at least a dozen contractors and subcontractors employed over the course of thirteen months. Compilation and review of potentially a hundred thousand related documents to ferret out Creedon's unsubstantiated hunch, would be enormously expensive, time consuming and unjustifiably onerous.

McCARTER & ENGLISH, LLP

/s/ Paul A. Bradley

By: _____

Paul Bradley, Esq. (# 2156)
James J. Freebery, Esq. (#3498)
Christopher A. Selzer, Esq. (#4305)
919 North Market Street, Suite 1800
Wilmington, DE 19899
(302) 984.6300 telephone
**Attorneys for Plaintiff**

March 2, 2006.

5521119v1

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CREEDON CONTROLS, INC., a
Delaware corporation,

        Plaintiff,

        v.

BANC ONE BUILDING CORPORATION, an
Illinois corporation; and FOREST ELECTRIC
CORPORATION, a New York corporation,

        Defendants.

: Civil Action No. 05-300 JJF

## CERTIFICATE OF SERVICE

I, Paul A. Bradley, Esquire, hereby certify that a true and correct copy of Defendant Forest Electric Corporation's Response in Opposition to Plaintiff's Motion to Compel was served on this 2nd day of March, 2006, on the following counsel of record via e-file and facsimile:

| | |
|---|---|
| Robert K. Beste, Jr., Esquire<br>Cohen Seglias Pallas<br>  Greenhall & Furman, P.C.<br>Nemours Building, Suite 205<br>1007 Orange Street<br>Wilmington, DE 19801 | Lawrence C. Ashby, Esquire<br>Philip Trainer, Jr., Esquire<br>Ashby & Geddes, P.A.<br>222 Delaware Avenue<br>P. O. Box 1150<br>Wilmington, DE 19899 |

              **McCARTER & ENGLISH, LLP**

BY:   **/S/ PAUL A. BRADLEY**
        Paul A. Bradley (DE Bar ID #2156)
        James J. Freebery (DE Bar ID #3498)
        919 N. Market Street, Suite 1800
        P.O. Box 111
        Wilmington, DE 19899
        (302) 984-6333
        Attorneys for Defendants

# EXHIBIT A

## FOREST ELECTRIC CORPORATION

## FILE NO. 100537-00001

## PRODUCTION LOG

| DATE OF PRODUCTION | BATES #S |
|---|---|
| Forest Electric's Production | |
| 10/4/05 | FE 000001-FE 008088 |
| 10/12/05 | FE 008089-FE 008282 |
| 1/9/06 | FE 008283-FE 0014069 |
| 1/23/06 | FE 014070-FE 014135 |
| 2/15/06 | FE 014136-FE 014161 |
| | |

ME1\5286502.1

# EXHIBIT B

Westlaw.

1981 WL 2080
Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034
**(Cite as: 1981 WL 2080 (N.D.Ga.))**

Page 1

**C**
United States District Court; N.D. Georgia, Atlanta
Division.
**LaMar Printing, Inc., et al.**
v.
**Minuteman Press International, Inc., et al.**
**Civil Action No. C 81-05 A**

Filed May 14, 1981

VINING, D. J.

### Order

*1 This is a three count action alleging a tying arrangement in violation of section 1 of the Sherman Act, a deceptive trade practice and an unreasonable restraint of interstate commerce in violation of section 1 of the Sherman Act and Ga. Code Ann. Ch. 106-7, and a violation of section 2 of the Robinson-Patman Act. Defendant Minnesota Mining and Manufacturing Company has filed a motion to dismiss the plaintiffs' complaint for failure to state a claim; defendants Minuteman Press International, Moore, and Titus have moved to dismiss the plaintiffs' complaint for failure to state a claim and alternatively have moved for judgment on the pleadings.

*[Franchise-Equipment Tie-In]*
Under count 1 the plaintiffs allege that defendant Minuteman Press is an interstate franchisor of printing businesses operating under the service mark "Minuteman Press." Franchisees of Minuteman Press are required to execute a franchise agreement with a term of 15 years. Count 1 further alleges that defendant 3M manufactures, sells, and leases in interstate commerce throughout the United States printing presses, cameras, and other items of equipment used in connection with printing businesses. Defendant Moore is the regional manager of Minuteman Press and supervises all franchisees in the state of Georgia; defendant Titus is the president and chief operating officer of Minuteman Press. The plaintiffs further allege that the defendants were engaged in an unlawful combination and conspiracy seeking to restrain interstate trade and commerce in printing equipment and printing business franchises by an agreement and concert of action "to require franchisees of Defendant Minuteman Press to purchase or lease from Defendant 3M all Printing Equipment to be used in the operation of a Minuteman Press Store, including, without limitation, printing presses and equipment. Franchisees of Minuteman Press were required to agree not to purchase any printing presses or camera equipment for use in their Minuteman Press store from any person other than Defendant 3M as a condition of obtaining equipment manufactured or distributed by defendant 3M or obtaining a Minuteman Press franchise from Defendant Minuteman Press."

However, these allegations are belied by the copy of the franchise agreement, which the plaintiffs have attached as exhibit A to their complaint. Paragraph IV of the franchise agreement provides: "All furniture, fixtures, equipment and supplies listed in Schedule A are available from Franchisor in standard packages at the prices shown in Schedule A. Franchisee has no express obligation to purchase or lease these items from Franchisor or Leasor. Franchisor will furnish specifications upon request." Paragraph X of the franchise agreement states that that agreement in Schedule A attached thereto contains the entire agreement of the parties.

Although a complaint should be read liberally to determine if it does state a claim upon which relief can be granted, when averments in a complaint are flatly contradicted by facts disclosed by a document appended to the complaint, dismissal is appropriate. *Associated Builders, Inc. v. Alabama Power Company,* 505 F. 2d 97 (5th Cir. 1974). Although the plaintiffs allege that the defendants required that they lease equipment from 3M, the franchise agreement expressly provides otherwise. Even read liberally, count 1 fails to state a claim upon which relief can be granted, and count 1 must be dismissed.

*2 Under count 2 the plaintiffs allege that in 1976 Minuteman Press and 3M participated jointly in a trade show in Atlanta, Georgia, and that said participation was for the purpose of selling Minuteman Press franchises in conjunction with printing equipment supplied by 3M. At the trade show representatives of Minuteman Press and 3M demonstrated the operation and use of the printing equipment to the plaintiffs, and the plaintiffs allege that these representatives represented to the plaintiffs that a franchisee could expect profits exceeding $6,000 per month. The plaintiffs allege that as a result of the demonstration at the trade show they

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1981 WL 2080
Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034
**(Cite as: 1981 WL 2080 (N.D.Ga.))**

Page 2

believed that Minuteman Press and 3M were partners or joint venturers in establishing printing franchises. The plaintiffs contend that in reliance upon the statements made at the trade show they agreed to enter into agreements with Minuteman Press and 3M to become a franchisee of Minuteman Press. The plaintiffs conclude that the representations made to the plaintiffs constituted a deceptive trade practice and caused an unreasonable restraint of interstate commerce.

On the face of these allegations it is clear that the plaintiffs have, at most, stated a cause of action under the Georgia statute. The facts alleged in the complaint under this count do not warrant the legal conclusion that there has been a violation of section 1 of the Sherman Act. The requirements of pleading a cause of action under the Sherman Act are not met by merely alleging that there was a combination, contract, or conspiracy which tended to prejudice the public interest which was anti-competitive in its nature. "It is essential that the complaint allege facts from which it can be determined that the conduct charged to be in violation of the anti-trust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." *Kinnear-Weed Corporation v. Humble Oil and Refining Company* [1954 TRADE CASES P 67,822], 214 F. 2d 891, 894 (5th Cir. 1954). See also *Larry R. George Sales Co. v. Cool Attic Corp.* [1979-1 TRADE CASES P 62,419], 587 F. 2d 266 (5th Cir. 1979). No such facts are alleged in the instant case.

Assuming, however, that count 2 of the complaint states a cause of action under state law, this court declines to exercise pendent jurisdiction because of the court's disposition of counts 1 and 3 of the complaint.

*[Price Discrimination]*
Under count 3 of the complaint, the plaintiffs allege that the prices which they were charged to lease equipment, "were in excess of the standard retail price for such printing equipment and such price is paid by other purchasers of such equipment." The plaintiffs conclude that this discrimination "had the effect of injuring competition or preventing competition between other printing equipment suppliers and Defendant 3M in violation of Section 2 of the Robinson-Pattman [*sic*] Act (15 U. S. C. § 13)." Even assuming arguendo that the Robinson-Patman Act, which applies only to sales, applies to the lease-purchase agreement in the instant case, the court still concludes that the plaintiffs have failed to

state a claim under Robinson-Patman. Robinson-Patman proscribes situations wherein there have been two sales by the same vendor-one to the plaintiff and another at a lower price to a favored purchaser. That the plaintiffs could have acquired the equipment at a cheaper price from another source does not state a cause of action under Robinson-Patman. "The basic purpose of Section 2(a) of the Robinson-Patman Act was to insure that purchasers from a single seller would not be injured by the seller's discriminatory pricing policies." *Hiram Walker, Inc. v. A&S Tropical, Inc.* [1969 TRADE CASES P 72,698], 407 F. 2d 4, 7 (5th Cir.), cert. denied, 396 U. S. 901 (1969). Since the plaintiffs fail to allege any facts showing that the seller sold the products to them at a price greater than that charged to another customer, they have failed to state a claim under Robinson-Patman.

*3 In reply to defendant 3M's motion to dismiss, the plaintiffs state, "Upon discovery in this case, Plaintiffs believe facts showing at least two actual and contemporaneous sale-purchase transactions by 3M will be uncovered. Until such discovery is made, however, Plaintiffs are unable to state with more specificity the facts surrounding such sales." The court is of the firm belief that facts necessary to state a cause of action must be stated in the complaint and that a plaintiff should not be allowed to file a suit and then conduct discovery to see if he, in fact, has a case. If the plaintiffs were aware of facts which would show a violation of Robinson-Patman by the defendants, they should have alleged such facts in the complaint. Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact.

For the foregoing reasons, the plaintiffs' complaint is Dismissed with respect to all federal claims. The court declines to exercise pendent jurisdiction with respect to the state law claims.

Not Reported in F.Supp., 1981 WL 2080 (N.D.Ga.), 1981-1 Trade Cases P 64,034

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.