# EXHIBIT "1"

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

Creedon Controls, Inc., a Delaware corporation, )
                                                )  C. A. No._____
            Plaintiff,                          )
                                                )  JURY TRIAL DEMANDED
v.                                              )
                                                )  **AFFIDAVIT OF DEFENSE**
Banc One Building Corporation, an Illinois      )  **REQUIRED BY 10 DEL. C. §3901**
corporation; and Forest Electric Corporation, a )
New York corporation,                           )  **NON-ARBITRATION CASE**
                                                )
            Defendants.                         )

## COMPLAINT AND STATEMENT OF CLAIM FOR MECHANICS' LIEN

### COUNT I
### (Statement of Claim for Mechanics' Lien)

1.      Plaintiff, Creedon Controls, Inc. (hereinafter "CCI") is a corporation of the State

of Delaware, with its principal place of business located at 3424 Old Capitol Trail, Wilmington,

Delaware 19808.

2.      Defendant Banc One Building Corporation (hereinafter "Banc One") is a

corporation of the State of Illinois. Service of process may be made upon Banc One by serving

the Secretary of State of the State of Delaware, pursuant to 10 Del. C. §3104. Banc One is the

owner of the structure and the land and premises that are the subject of this Statement and Claim

for Mechanics' Lien.

3.      Defendant Forest Electric Corporation (hereinafter "Forest") is a corporation of

the State of New York. Forest's Registered Agent is The Corporation Service Company, 2711

Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.      The Banc One Project #6B - General Lighting & Power Contract (hereinafter

"Project #6B"), was made between CCI and Banc One as the owner of the structure, as evidenced and set forth in the attached Exhibit "A", and as modified as set forth in the letter of Patricia Creedon, President of CCI, dated June 14, 2004, with attached Addendum 1, as more fully set forth in the attached Exhibit "B".

5. The amount claimed to be due is $2,985,758, as more specifically set forth in the "Bill of Particulars", a copy of which is attached hereto as Exhibit "C".

6. The date on which labor and the furnishing of the materials began, was October 6, 2003.

7. The date on which the furnishing of the materials, labor, and equipment was completed by CCI was September 22, 2004. The date of the completion of the structure was on or about September 22, 2004. The date when the payment of 90% of the contract price, including the value of any work done pursuant to the contract modifications or change orders, was made to CCI has not yet occurred. The date when CCI submitted its final invoice to Banc One was March 31, 2005.

8. The location of the property that is the subject of this statement and claim for Mechanics' Lien is described as 4001 Governor Printz Boulevard, Wilmington, Delaware, being Tax Parcel No. 06-149.00-002, and being more particularly bounded and described in the Deed attached hereto as Exhibit "D", and incorporated herein by reference, and is known as the Banc One Core Data Center II (hereinafter "Data Center").

9. The labor was done and the materials and equipment furnished by CCI, on the credit of the structure.

2

10. The amount of CCI's claim is in excess of $25.00; to-wit, $2,985,758, and neither that amount nor any part thereof has been paid to CCI.

11. The amount which CCI claims is due it is $2,985,758.

12. No mortgage of the type described in 25 Del. C. §2712(b)(11) exists on the structure.

13. Alternatively, it is alleged that CCI made its contract directly with Forest, a subcontractor and/or agent of Banc One.

14. In support of its claim for a Mechanics' Lien, based upon a direct contract with Forest, CCI relies upon 25 Del. C. §2711(b), and states that the date that final payment, including all retainage, is due to CCI is May 2, 2005, and that it is unknown what date final payment was made (if at all) to a contractor who has contracted directly with Banc One, or with whom such person has a contract, express or implied, for the furnishing of labor, material and equipment, in connection with the project that is the subject of this litigation.

## COUNT II
### (Breach of Contract - Banc One)

15. CCI incorporates herein by reference, Paragraphs 1 through 14 of this Complaint, as though set forth at length herein.

16. CCI entered into an agreement with Forest, as agent for and on behalf of Banc One, for the performance of labor, materials, and equipment supplied for the Data Center.

17. The work performed by CCI, for Project #6B, in accordance with its agreement with Banc One, is as more fully set forth in the attached Exhibit "A", as modified and supplemented by the letter of Patricia Creedon, President of CCI, to Forest, dated June 14, 2004,

3

with attachments, a copy of which is attached hereto as Exhibit "B".

18.     In accordance with the agreements of CCI and Banc One, and in good faith, CCI performed additional work at the request of Banc One, pursuant to change orders approved and unpaid, approved but not submitted, and approved but repriced and rebilled; and CCI is entitled to $146,684 for such change orders.

19.     In accordance with the agreement of the parties, and in good faith, CCI performed certain additional work at the request of Banc One, in accordance with properly submitted but unapproved and unpaid change orders. CCI has incurred further costs in completing its contract with Banc One. CCI is entitled to $2,657,694 for such change orders.

20.     In accordance with the agreements of the parties, as more fully set forth in the Exhibits "A" and "B", and other agreements of the parties, CCI performed services and supplied materials and equipment for Project #6B, having a value of $6,402,106 of which $3,416,348 has been paid, and $2,985,758 remains due and owing.

### COUNT III
### (Breach of Contract - Forest)

21.     CCI incorporates herein by reference, Paragraphs 1 through 20 of this Complaint, as though set forth at length herein.

22.     Defendant Forest invited CCI to bid on the project known as Project #6B.

23.     In reliance of the representations made by Defendant Forest at bid time, CCI made its bid for Project #6B, for $3,152,000. In making such bid, CCI relied upon the bid documents provided at bid time, by Banc One and its representatives and agents, and the expectancy of

4

normal industry practice, in the conduct, scheduling, and coordination of Project #6B.

    24.    In accordance with the bid documents, CCI prepared a detailed schedule used as the basis of its bid calculations of manpower utilization, supervision, peak manpower, and cash-flow requirements.

    25.    The bid of CCI was accepted, and CCI and Forest entered into an agreement that CCI would complete Project #6B, for services including lighting in Areas A through G of the Data Center, general power receptacles in Areas A though G, and all electrical requirements in the Administration Building (with a few exceptions), feeders, power and lighting panels, automatic transfer switches, inverter systems, lighting control system, and empty voice and data conduits, in Areas A through G and the Administration Building.

    26.    Defendant Forest represented to CCI that the work would be completed substantially in accordance with the bid package, and substantially in accordance with a subcontract agreement delivered to CCI by Defendant Forest by letter dated May 4, 2004, as set forth in the attached Exhibit A, and as further modified and agreed to as set forth in Exhibit "B."

    27.    In accordance with said agreement between CCI and Forest, CCI performed services and supplied materials, and equipment for the Project #6B, having a value of $6,402,106, of which $3,416,348 has been paid, and $2,985,758 is due and owing.

    28.    In accordance with the agreements of CCI and Forest, and in good faith, CCI performed additional work at the request of Forest, pursuant to change orders approved and unpaid, approved but not submitted, and approved but repriced and rebilled; and CCI is entitled to $146,684 for such change orders.

5

29.    In accordance with the agreement of the parties, and in good faith, CCI performed

certain additional work at the request of Forest, in accordance with properly submitted but

unapproved and unpaid change orders. CCI has incurred further costs in completing its contract

with Forest. CCI is entitled to $2,657,694 for such change orders.


### COUNT IV
#### (Recovery of Labor, Material, Equipment, and General
#### Condition Costs for Delay - Banc One and Forest)

30.    CCI incorporates by reference paragraphs 1 through 29 of this Complaint, as

though set forth at length herein.

31.    In connection with CCI's preparation of its bid proposal, for completion of the

work identified in the agreement of the parties, made to Forest, for itself and on behalf of Banc

One, CCI carefully examined all bid documents related to the agreements, and prepared its

proposal, and negotiated with Forest, for itself and on behalf of Banc One. The price for which

CCI eventually agreed to perform the contract work was fair and reasonable for the work

described in the agreements, and based upon the scope and schedule of the work set forth in the

bid proposal.

32.    Implied in the agreements of the parties were certain promises and warranties on

the part of Forest, for itself and on behalf of Banc One, as follows:

(a)    that they would promptly make the Project site available, in a reasonable

sequence, and would provide prompt access to work areas in order to permit CCI to perform its

work without unreasonable suspension, hindrance or delay, as reasonably anticipated by CCI at

the time and the basis of CCI's bid;

      (b)    that it would not prevent, hinder, or delay CCI in the performance of its contract work and would at all times do whatever was necessary to enable CCI to perform its contract work in a timely, orderly, efficient, and economical manner, as reasonably anticipated by CCI at the time and the basis of CCI's bid;

      (c)    that the Project would be constructed as designed and described in the agreements of the parties (with only minor changes), as reasonably anticipated by CCI at the time and the basis of CCI's bid; and

      (d)    that the Project would be managed and constructed in the manner and sequence contemplated by the agreements of the parties and completed within the contract time specified therein, as reasonably anticipated by CCI at the time and the basis of CCI's bid.

    33.    As a result of failures by Forest, for itself and on behalf of Banc One, CCI was not able to complete Project #6B in a timely fashion.

    34.    The delays in completing the contract work required CCI to extend the performance of its work following entry into agreements with Forest, for itself and on behalf of Banc One, and to incur increases in labor and material costs, and substantially more general conditions cost and extended home office overhead and other costs than could be reasonably anticipated at the time of bid preparation and at the time the parties reached their agreements.

    35.    CCI's bid proposal and its performance of the agreements of the parties were based on the expectation of, and in reliance upon, the fact that: (1) the construction of the Data Center would progress on time and in an orderly, coordinated and expeditious manner (including

7

an effective and workman-like planning and based upon CCI's schedule at bid time, based upon scheduling by Forest, for itself and on behalf of Banc One, at bid time, and as mutually changed thereafter), without undo delay, disruption and/or interference; and (2) the Data Center would be completed in accordance with the time provided by the agreement of the parties, as reasonably anticipated by CCI at bid time, and at the time the parties reached their agreements.

36.    As Forest, for itself and on behalf of Banc One, caused CCI to complete its work at the Project months after the time for completion as provided in the schedules and agreements, Forest, for itself and on behalf of Banc One, breached the agreements.

37.    The aforesaid breach by Forest, for itself and on behalf of Banc One, hindered, obstructed, interfered with, and delayed the performance of CCI's work, so that it could not be completed in a manner contemplated by the agreements of the parties, as reasonably anticipated at bid time, in that Forest:

        a)    failed to properly plan, schedule and coordinate the work on the Project #6B as a whole;

        b)    failed to obtain responses to requests for information and to obtain and effectuate design and engineering changes and clarifications in a timely and coordinated manner, so as not to impede or disrupt the progress of CCI's work;

        c)    failed to furnish to CCI with accurate and coordinated drawings and dimensions, adequate design details, and failed to properly obtain and issue approved shop drawings, all of which hindered CCI in the

8

prosecution of its work; and

d)    directly interfered with the scheduling and performance of CCI's work by causing changes and disruptions to its reasonably planned methods and sequences of work, which served as the basis of CCI's bid.

38.    Because of the various breaches of contract by Forest, for itself and on behalf of Banc One, enumerated above, CCI was:

a)    deprived of the construction methods, techniques, procedures and scheduling of performance, originally contemplated at bid time, and the basis of CCI's bid and basis of the agreements of the parties;

b)    caused to perform the work under the agreements of the parties in methods, sequences, techniques, procedures, and scheduling of performance, contrary to usual industry practice;

c)    prevented from performing its contract work in an orderly, effective, expeditious, and economical manner;

d)    forced to perform phases of its contract work under job conditions which adversely affected labor productivity;

e)    forced to perform work beyond the requirements of the agreements;

f)    forced to move CCI equipment and materials, and that of others, in order to continue CCI's work;

g)    prevented from realizing the profits originally contemplated at bid time by CCI under the agreements of the parties;

9

h)      unable to store tools, materials, and equipment in a safe place to prevent

damage and loss; and

i)      caused to perform its contract work out of sequence and without timely or

continuous access to work areas.

39.     As a result of the aforementioned breaches of contract by Forest, for itself and on

behalf of Banc One, CCI has suffered delay damages in an amount in excess of $2,657,694 all of

which resulted in CCI having to incur increased labor, material, and general conditions costs in

the performance of its contract work during the contract time, and after the original completion

date thereof, all in excess of the costs contemplated at bid time, the basis of CCI's bid under the

agreements of the parties. Such costs are in addition to other amounts demanded in this litigation.

40.     Despite repeated demands, CCI has not received compensation for the

aforementioned labor, material, general conditions costs, and tended home office overhead and

other costs, under the agreement or otherwise.

41.     Forest and Banc One must pay CCI for all additional general condition costs, and

extended home office overhead and other costs it incurred after the completion date set forth in

the agreements.

### COUNT V
### (Unjust Enrichment)

42.     CCI hereby incorporates by reference, Paragraphs 1 through 41 of this Complaint,

as though set forth at length herein.

43.     CCI conferred a benefit upon Forest and Banc One, by supplying certain labor,

materials, and equipment, and incurring other costs, under Project #6B, to construct the Data

10

Center.

44.    The value of the benefit conferred by CCI upon Forest and Banc One, for which CCI has not received payment is $2,985,758.

45.    Forest and Banc One have appreciated, accepted, and retained the benefit conferred upon them by CCI, without paying for the same, and it would be inequitable for Forest and Banc One to retain the benefit conferred, without payment to CCI, for the value of the same.

46.    All conditions precedent have been performed or have occurred.

## COUNT VI
### (6 Del. C. Chapter 35 - CCI)

47.    CCI incorporates by reference, Paragraphs 1 through 46 of this Complaint, as though more fully set forth herein at length.

48.    Upon information and belief, Forest has received funds from Banc One in connection with the agreement between Forest and CCI, for the work performed by CCI under Project #6B.

49.    The agreed upon work to be performed by CCI has been fully performed. CCI has submitted invoices to Forest for such services, and Forest has refused appropriate payment.

50.    Forest has not applied or used those funds by making payments due to CCI, in violation of 6 Del. C. Chapter 35, and has failed to apply monies received by it for work performed by CCI.

51.    A constructive trust is imposed for the benefit of CCI, upon funds received or held

11

by Forest with respect to Project #6B.

52.     In accordance with 6 Del. C. §3509, CCI is entitled to its attorneys' fees; arbitration costs, if any; expert witness fees; and the costs of this action.

## COUNT VII
### (6 Del. C. Chapter 36 – Banc One)

53.     CCI incorporates by reference, Paragraphs 1 through 52 of this Complaint, as though more fully set forth at length herein.

54.     Banc One has failed to pay CCI amounts due to CCI for services performed and materials supplied to Project #6B.

55.     The agreed-upon work to be performed by CCI has been fully performed. CCI has submitted invoices to Banc One for such services, and Banc One has refused appropriate payment.

56.     In accordance with 6 Del. C. §3509, CCI is entitled to attorneys' fees, arbitration costs, if any, expert witness fees, and the costs of this action.

WHEREFORE, Plaintiff CCI Controls, Inc., demands judgment against Defendants Banc One Building Corporation and Forest Electric Corporation, in the amount of $2,985,758 and such further amounts which the trier of facts determines to be equitable and just, attorneys' fees, pre-judgment, post-judgment interest, expert witness fees, arbitration fees (if any), and the costs of this action, and that an *in rem* judgment for a Mechanics' Lien, in Plaintiff's favor and against the structure and property that are the subject of the Statement of Claim for Mechanics' Lien, in the amount of $2,985,758, and such other and further relief as the Court deems appropriate and

12

just.

**Cohen, Seglias, Pallas, Greenhall &
Furman, P.C.**

Edward Seglias, Esq. (I. D. No. 2822)
Robert K. Beste, Jr., Esq. (I. D. No. 154)
1007 Orange Street, Nemours Bldg., Ste. 205
Wilmington, DE 19801
(302) 425-5089
Attorneys for Plaintiff

Date: 1/19/05

RKB/msj
06894-0001

13

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No._____ |
| Plaintiff, | ) |
| | ) JURY TRIAL DEMANDED |
| v. | ) |
| | ) **AFFIDAVIT OF DEFENSE** |
| Banc One Building Corporation, an Illinois | ) **REQUIRED BY 10 DEL. C. §3901** |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) **NON-ARBITRATION CASE** |
| | ) |
| Defendants. | ) |

**AFFIDAVIT**

STATE OF DELAWARE            :
                                             : SS
NEW CASTLE COUNTY          :

BEING FIRST DULY SWORN, according to law, the undersigned does depose and state

the following:

1.   That I am the President of Creedon Controls, Inc.
2.   That I have reviewed the attached Complaint and Statement of Claim for Mechanics' Lien and incorporated exhibits;
3.   That the facts stated in the attached Complaint and Statement of Claim for Mechanics' Lien are true and correct;
4.   That the principal sum of $2,985,758 plus interest, counsel fees, and costs of this action are demanded for Creedon Controls, Inc., and that the sums are justly due and owing.

**CREEDON CONTROLS, INC.**

BY: *Patricia Creedon*

Patricia Creedon, President

SWORN TO AND SUBSCRIBED before me, the 17th day of Jan. , 2005.

_____
Notary Public
My Commission Expires: N/A

RKB/msj
06894-0001

# EXHIBIT "A"

# Forest Electric Corp.

*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

May 4, 2004

Patricia Creedon
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

RE:    Bank One – CDC-2
            RFP 6B General Lighting & Power
            RFP 21B IT Cable Conveyance System - Pod A

Dear Ms. Creedon:

Enclosed are five (5) copies of a Single Project Construction Services Agreement for the above referenced projects.

Please have an officer of your company sign all five copies for each project and return them to our office as soon as possible. A fully executed copy will then be returned to you.

Should you have any questions, please do not hesitate to contact your undersigned.

Very truly yours,

FOREST ELECTRIC CORP.

Donna M. Lucas
Senior Legal Assistant

cc:    P. Angerame

### SINGLE PROJECT
### CONSTRUCTION SERVICES AGREEMENT
### CONTRACT NO. 6B

Pre-bid meetings will/~~will not~~ be held.  If applicable, the pre-bid meeting will occur at ———— ~~A.M./P.M. on~~ ——————, ——, at CDC #2 – Governor Printz Blvd. Brandywine. DE 19802.

When completed, return five (5) executed copies of this Single Project Construction Services Agreement if by U.S. mail addressed to Owner c/o Forest Electric Corp.. Two Penn Plaza. NY. NY 10121 ~~Mail Code~~ ————————; ~~if hand delivered to Owner c/o~~ ———————— ————————, ————————— ~~Floor,~~ ————————— in each case for receipt by Owner by or before 3:00 P.M. on ————————.

Owner:
Banc One Building Corporation
1 Bank One Plaza
Mail Code IL1-0505
Chicago, IL  60670-0503

Owner's Project Manager:
Karl Wm. Auwarter, VP, Real Estate

Building Owner/Manager:  None

Site:
Bank One Core Data Center #2
4001 Governor Printz Blvd.
Wilmington, Delaware 19802
—————————————————
—————————————————

Construction Manager:
Tishman Construction Corporation of Maryland
666 Fifth Avenue
New York, New York 10103-0256

Electrical Trade Manager:
Forest Electric Corp.
Two Penn Plaza
New York, NY 10121

Construction Contractor:
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808
—————————————————
—————————————————

Construction Contractor's Key Staff Members:
Superintendent: ————————————
Assistant Superintendent: ——————————

Other Key Staff:

| Title | Name: |
|-------|-------|
| ————; | ———————— |
| ————: | ———————— |
| ————: | ———————— |
| ————: | ———————— |
| ————: | ———————— |

Construction Contractor's Authorized Signatories:
1. ————————————————
2. ————————————————
3. ————————————————
4. ————————————————

This Single Project Construction Services Agreement is made as of the 2nd day of October, 2003 ("Agreement") between Electrical Trade Manager and Construction Contractor.  This Agreement, including all exhibits attached hereto, together with all drawings, specifications and modifications issued after the execution of this Agreement and delivered to Construction Contractor, are herein called the "Contract" and the "Contract Documents".  Electrical Trade Manager and Construction Contractor agree to the terms and conditions set forth in the Contract Documents.

1

1.  The project ("**Project**") consists generally of, and a general description of the Work is (and, if applicable, a more detailed description of the Work is set forth on Exhibit C), as follows: _____
    _____Electrical Work as per RFP 6B – General Lighting & Power_____
    _____
    _____
    _____

2.  Construction Contractor acknowledges it received the plans and specifications that are listed on, and, as applicable, a more detailed description of the Work as set forth on, Exhibit C hereto.

3.  Construction Contractor's obligations under this Agreement ~~will/~~will not (strike through one) require payment and performance bonds as set forth in Section 6.04 of the General Conditions attached hereto as Exhibit G ("**General Conditions**"). If no selection is clearly made in the preceding sentence, then payment and performance bonds will be required as set forth in Section 6.04 of the General Conditions.

4.  Liquidated damages will/~~will not~~ (strike through one) be applicable to the Project as set forth in Section 7.03 of the General Conditions. If required, the "**Per Day Liquidated Damage Amount**" is **$5.000 per day**.

5.  The "**Contract Sum**" is Three Million One Hundred Fifty-Two Thousand Dollars ($3,152,000.00). The Contract Sum (subject to additions and deductions by change orders as provided by the Contract Documents) includes all costs and expenses related to the Work incurred by or on behalf of Construction Contractor and any costs or expenses in excess of the Contract Sum in anyway related to the Work or the Contract Documents shall be paid by Construction Contractor. Additionally, upon final completion of the Work at the time of the final payment being made to Construction Contractor, all costs associated with unused allowances and contingencies will be adjusted and returned to the Owner.

6.  Written notice shall be deemed to be duly served if served to the Electrical Trade Manager or Construction Contractor, as the case may be, at the respective address set forth below in accordance with Section 6.03 of the General Conditions:

| If to Construction Manager, addressed to: | If to Construction Contractor, addressed to: |
|---|---|
| Tishman Construction Corporation of | Creedon Controls, Inc._____ |
| Maryland | 3424 Old Capital Trail_____ |
| 666 Fifth Avenue | Wilmington, DE  19808_____ |
| New York, New York 10103-0256 | |
| Attention: William Stanton | Attention:_____ |

With a copy to Owner:                           If to Electrical Trade Manager, addressed to:

Bank One_____                        Forest Electric Corp._____
301 N. Walnut Street_____            Two Penn Plaza
Wilmington, DE 19801_____            New York, New York 10121_____
                                               Attention: Philip Altheim

Attention: Karl Auwarter

With a copy to:

Forest Electric Corp._____
4001 Governor Printz Blvd._____
Wilmington, DE 19802_____

Attention: Paul Angerame

2

7.      Electrical Trade Manager hereby represents to Construction Contractor that (i) Owner has retained Electrical Trade Manager to act as Owner's construction managers to arrange for the construction of the Project; and (ii) Electrical Trade Manager has full power and authority and is duly authorized to execute and deliver this Contract with and to Construction Contractor upon the terms and conditions set forth herein.    All communications from Owner to Construction Contractor shall be delivered either (i) to Electrical Trade Manager with instructions to forward such communications to Construction Contractor, or (ii) directly to Construction Contractor with a simultaneous notification to Electrical Trade Manager.  All written approvals and actions required of or permitted to be taken by Owner under the Contract shall be effective if executed by either Owner or by Electrical Trade Manager acting on Owner's behalf, and Construction Contractor shall be permitted to rely on all such written approvals unless and until Owner (and not Electrical Trade Manager) notifies Construction Contractor in writing to the contrary. Construction Contractor shall be entitled to rely on information communicated through the Electrical Trade Manager and work with the Electrical Trade Manager until Owner provides written notice of the termination of such Electrical Trade Manager's responsibilities or a substitution of such Electrical Trade Manager.

This Agreement shall be effective only when (i) Electrical Trade Manager executes and delivers this Single Project Construction Services Agreement to Construction Contractor, (ii) all appropriate blanks contained herein are completed, and (iii) each of the <u>Exhibits A, B, C, D, E, F, G and H</u> (each of which is hereby incorporated herein) has been completed and attached hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

CONSTRUCTION CONTRACTOR:                OWNER:

FIRM:   CREEDON CONTROLS, INC.          BANC ONE BUILDING CORPORATION, an Illinois Corporation

                                        By:     Forest Electric Corp. as Banc One Building
                                                Corporation's agent and Electrical Trade
                                                Manager.

By: _____         By: _____

Name: _____         Name: <u>Philip Altheim</u>

Title: _____         Title: <u>Chairman/CEO</u>

3

# EXHIBIT "B"

# Creedon Controls Inc.
Electrical Contractors

3424 Old Capitol Trail
Wilmington, Delaware 19808
Telephone (302) 892-2000
Fax (302) 892-2002

June 14, 2004

Mr. Paul Angerame, Vice President
Forest Electric Corp.
4001 Governor Printz Boulevard
Wilmington, DE 19802

Reference:      Single Project Construction Services Agreement
                Contract No. 6B Addendum 1

Dear Paul:

Enclosed is a document that we identified as Addendum 1, which we prepared in the course of our review of the contract that was presented to us most recently for our review.

Addendum 1 is provided for your review and inclusion in the referenced contract for execution.

The Addendum includes three columns. The first column is a number for reference only. The second column provides the contract location; this is for navigating the document to the appropriate place for the modification. The final column, Action/Description of the Action is the modification contemplated.

The third column is prepared to reflect one operation for each reference number to keep it as simple as possible; two or even three reference items may be required to effect one complete change on the document. Most of the addendum volume is reference, navigation and action; the modifications are not voluminous.

The modifications presently reflect mostly the manner in which the project was conceived at bid time, the manner in which it was conducted to date, resolving inconsistencies or other issues worthy of modification.

We will be prepared to execute the contract upon your acceptance of Addendum 1 for inclusion.

Please contact us if you have any questions.

Very truly yours,

Patricia Creedon

Patricia Creedon
President

**SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT**
**CONTRACT NO. 6B**
**BANK ONE CORE DATA CENTER #2**
**ADDENDUM 1**

| No. | Contract Location | Action:/Description of Action |
|-----|-------------------|-------------------------------|
| 1 | First page, last paragraph, first sentence | Change: "between Electrical Trade Manager and Construction Contractor." to "between Banc One Building Corporation, Electrical Trade Manager, Agent, and Construction Contractor." |
| 2 | First page, last paragraph, second sentence | Change: "modifications issued after" to "prior to start of Project Work and" |
| 3 | Second page, Paragraph 2, second line | Add after: "Exhibit C hereto", "to the extent that these Documents relate directly to the Work of the Construction Contractor, and were used as the basis of Construction Contractors bid." |
| 4 | Second page, Paragraph 4, second line | Replace: "/will not (strike through one)" with "not" |
| 5 | Second page, Paragraph 5, fifth line | Add after: "Contract Documents", "used as the basis of the Construction Contractor's bid," |
| 6 | Second page, Paragraph 6 | Add after: If to Construction Contractor, addressed to:" (followed by Creedon Controls, Inc. address), Attention: "Patricia Creedon" |
| 7 | Page three of the Agreement, at the end of the second paragraph | Add a sentence at the end of the second paragraph following "attached hereto.", "Further the parties to this Agreement attach and make Addendum 1 a part of the Single Project Construction Services Agreement." |
| 8 | Page three of the Agreement after Item 7. | Add: Arbitration Clause for resolution of disputes during the project and at its conclusion. Language to follow. |
| 9 | List of Exhibits | Delete: "EXHIBIT F" and 'EXHIBIT H" |
| 10 | EXHIBIT A | Add as the first paragraph: "The original schedule provided with RFP6B data date and run date, September 15, 2003, used as the basis of Construction Contractor's bid is incorporated herein." |
| 11 | EXHIBIT A | Add before: "Project Completion Date", For the purpose of liquidated damages, if any, in Paragraph 4 of this agreement the project completion date is September 15, 2004. |
| 12 | EXHIBIT B | Delete Note, add: "The schedule of values is the initial schedule of values submitted for this project utilizing G703. There is no anticipated draw schedule for this project. Payment shall be made in accordance with section and anticipated draw schedule is as follows:" |
| 13 | EXHIBIT C | Substitute for the word "thereafter", "prior to the preparation of the Construction Contractor's bid and used as the basis of this bid." |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 14 | EXHIBIT C<br>List of Drawings | The basis of the Construction Contractor's Lighting and Power bid are all or part of drawings: E001 through E102, E202-B, E203, E204, E401-E,E401-F, E501, E502-A, E502-B, E503, E505-A, E505-B, E506, E603 and E605; all other Electrical Drawings are for location or information reference only. Mechanical drawings used for damper and exhaust fan power only include: M101, M102, M305 and M306. No other drawings including civil, landscape, architectural, structural, plumbing, fire protection and security, fuel oil are included in the Construction Contractor's scope and would be used for location reference or information only.<br>*Note: Drawing list cuts off drawing designations at bottom of the pages. New complete set of pages (8 pages) required for review.* |
| --- | --- | --- |
| 15 | EXHIBIT C<br>Specifications | The basis of the Construction Contractor's Lighting and Power bid are all or part of specifications: Divisions 1, General Requirements; Division 15, Mechanical 15170H, 15832H, 15835H and 15850H only; Division 16 Electrical 16050 through 16120, 16130 through 16145, 16415, 16425, 16452, 16461, 16470, 16475, 16476, 16511, 16521 and 16997. |
| 16 | EXHIBIT D | Add after the site address a new paragraph: "This is the site address. It does not reflect the actual work areas within this site that are covered by the scope of the Construction Contractor's Work. |
| 17 | EXHIBIT E | Change Paragraph 1: "15%" to "20%". |
| 18 | EXHIBIT E | Change Paragraph 2: "6%" to "10%". |
| 19 | EXHIBIT E | Change Paragraph 3: "15%" to "10%". Note this is computed at one-half the add rate. |
| 20 | EXHIBIT E | Change Paragraph 4: "6%" to "3%". Note this is computed at one-half the add rate. |
| 21 | EXHIBIT E | Add a new paragraph unnumbered after paragraph 4: "On-site Costs" shall be defined as all costs required to complete the Work, whether performed on-site or off-site including equipment, material, labor, subcontract, warehousing, delivery from supplier/shop, storage/staging, administrative support, supervision and related costs to the extent utilized by this project. |
| 22 | EXHIBIT F | Delete in its entirety |
| 23 | EXHIBIT G, Article 1. Work, Section 1.01, third line | Add after: "plans and specifications", "used as the basis of the Construction Contractor's bid" |
| 24 | EXHIBIT G, Article 1. Work, Section 1.01, fourth line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid.". |
| 25 | EXHIBIT G, Article 1. Work, Section 1.01, seventh line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid." |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 26 | EXHIBIT G, Article 1. Work, Section 1.01, sixteenth line | Add after: "govern and prevail", if such Document imposing the greater obligation or limitation on the Construction Contractor was relied upon at bid time by the Construction Contractor." |
| 27 | EXHIBIT G, Article 1. Work, Section 1.01, nineteenth line | Add after: "design process", as provided to the Construction Contractor prior to the Construction Contractor's bid and used as the basis of that bid." |
| 28 | EXHIBIT G, Article 1. Work, Section 1.01, twentieth line | Add before: "as being part of", if such Documents were relied upon at bid time by the Construction Contractor and shall be part of the scope of the Work at no additional cost to Owner." |
| 29 | EXHIBIT G, Article 1. Work, Section 1.01, Twentieth line and the first seven words of the Twenty-first line | Delete |
| 30 | EXHIBIT G, Article 1. Work, Section 1.01, ninth line from the end of this section | Replace: "thorough understanding" with "reasonable understanding, as an electrical contractor and not as an engineer involved in the design process," |
| 31 | EXHIBIT G, Article 1. Work, Section 1.01, eighth line from the end of this section | Add after: "Exhibit C", "to the extent that these Documents relate directly to the Work of the Construction Contractor, and were used as the basis of Construction Contractors bid." |
| 32 | EXHIBIT G, Article 1. Work, Section 1.01, sixth line from the end of this section | Add after the second word of the sixth line: "Construction Contractor", " or by constructive change" |
| 33 | EXHIBIT G, Article 1. Work, Section 1.01, sixth line from the end of this section | Add after the fourth word of the original sixth line: "Construction Contractor", "to the extent that can be reasonably expected by the Construction Contractor participating in a Lump Sum Contract" |
| 34 | EXHIBIT G, Article 1. Work, Section 1.02, end of section | Add after the word: "approval", "to the extent that such information is not generally known or could be known by persons participating in the construction industry" |
| 35 | EXHIBIT G, Article 1. Work, Section 1.03, end of section | Add after the word: "oral", "through the start of the Work of the Construction Contractor" |
| 36 | EXHIBIT G, Article 2. Work, Section 2.01, end of section | Add after the word: "Contractor", "using ample references for this purpose provided by the Owner." |
| 37 | EXHIBIT G, Article 2. Work, Section 2.05, end of section | Add a new sentence: "Owner shall compensate Construction Contractor to the extent that such access damages the Construction Contractor." |
| 38 | EXHIBIT G, Article 3. Work, Section 3.01, first sentence of section | Delete the first sentence of this section. |
| 39 | EXHIBIT G, Article 3. Work, Section 3.02, third and fourth line | Delete: "in the Contract Documents" |
| 40 | EXHIBIT G, Article 3. Work, Section 3.02, third line | Add After: "contemplated", "by the Construction Contractor as the basis of the bid utilizing the documents provided at that time" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 41 | EXHIBIT G, Article 3. Work, Section 3.02, fifth line | Replace: "all" with ", generally," |
|---|---|---|
| 42 | EXHIBIT G, Article 3. Work, Section 3.02, fifth line | Replace: "fully" with "reasonably" |
| 43 | EXHIBIT G, Article 3. Work, Section 3.03, first line | Add after: "superintendent", "(All reference to the Construction Contractors project superintendent in this contract shall mean Project Manager.)" |
| 44 | EXHIBIT G, Article 3. Work, Section 3.03, first line | Replace: "superintendent" with "manager" |
| 45 | EXHIBIT G, Article 3. Work, Section 3.03, eleventh line | Add after: "Contractor", "as long as a copy is sent to the Construction Contractor by facsimile at the office identified in Item #6 of the Agreement. |
| 46 | EXHIBIT G, Article 3. Work, Section 3.03 eighteenth line | Add after: "by Owner", ", which approval shall not be unreasonably withheld" |
| 47 | EXHIBIT G, Article 3. Work, Section 3.03, line four from the end of this section | Add after the last word: "Owner", "for just and adequate cause," |
| 48 | EXHIBIT G, Article 3. Work, Section 3.03, last line end of this section | Delete after: "Contractor are", "also listed in the Agreement" |
| 49 | EXHIBIT G, Article 3. Work, Section 3.03, last line end of this section | Add after: "Contractor are", "Patricia Creedon, President, Kristin Cerase, Acting Secretary and Charles Doble, Project Manager" |
| 50 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Delete: "solely" |
| 51 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Add after: "procedures and for", "participating in |
| 52 | EXHIBIT G, Article 3. Work, Section 3.04 (b), second line | Add after: "Work", "to the extent this responsibility is not limited by the Owner, Owner's representatives and their subcontractors" |
| 53 | EXHIBIT G, Article 3. Work, Section 3.07 (a), line one | Change the first sentence as follows: "The Contract Sum is based on the Completion Schedule attached to RFP6B, which was used as the basis of Construction Contractor's bid. Said schedule may be modified by mutual agreement between the parties to this agreement, and such modified schedule shall be called the "Completion Schedule" |
| 54 | EXHIBIT G, Article 3. Work, Section 3.07 (a), line three | Add at the end of this section after the word: "Schedule", "other than that negotiated at the time of the mutually agreed upon schedule changes" |
| 55 | EXHIBIT G, Article 3. Work, Section 3.07 (b), line two | Change the seventh word: "the", to "any current mutually agreed upon" |
| 56 | EXHIBIT G, Article 3. Work, Section 3.07 (b) (i), line five | Add after: "Agreement", "or in the absence thereof, a rate including all costs associated with the labor required plus a mark-up of twenty (20) percent |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 57 | EXHIBIT G, Article 3. Work, Section 3.07 (b) (ii), end of this part | Add after: "Agreement", "or in their absence thereof, a rate including all costs associated with the labor required plus a mark-up of twenty (20) percent |
|---|---|---|
| 58 | EXHIBIT G, Article 3. Work, Section 3.08 (b) (i), seventh line | Change: "three" to "two" |
| 59 | EXHIBIT G, Article 3. Work, Section 3.08 (b), fifth line from end of this part | Delete entire sentence between: "specified" and "Notwithstanding" |
| 60 | EXHIBIT G, Article 3. Work, Section 3.14, third line from end of this part | Add after "designate", "(and compensate the Construction Contractor if more costly)" |
| 61 | EXHIBIT G, Article 3. Work, Section 3.15, first sentence | Add after: "Construction Contractor", ",unless specified by Owner," |
| 62 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line six to line seven | Delete: "Construction Contractor's" through "damages because of" |
| 63 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line ten to line thirteen | Delete: "or sustained" through "imputed to the Indemnities, or any of them" |
| 64 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line eighteen | Add after: "used", "by Construction Contractor" |
| 65 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line twenty-one | Add after: "other persons or entities", "to the extent caused by Construction Contractor. |
| 66 | EXHIBIT G, Article 3. Work, Section 3.16 (a), line twenty-one one to end of section | Delete: "whether based upon" through "infringement of similar rights." |
| 67 | EXHIBIT G, Article 3. Work, Section 3.17 | Replace with: "Construction Contractor will keep for a period of two (2) years from Substantial Completion of Construction Contractor's Work, complete and detailed records in the normal manner maintained by the Construction Contractor in the normal course of business for such work. The obligation of the Construction Contractor to give information and assistance shall be at Owner's expense and shall not obligate Construction Contractor to incur any expense or liability." |
| 68 | EXHIBIT G, Article 3. Work, Section 3.18, line two | Add after: 'anyone" , "except representatives of the Construction Contractor" |
| 69 | EXHIBIT G, Article 3. Work, Section 3.20, at end of section | Add after: "parts of the Work.", "Construction Contractor shall add twenty (20) percent to all Allowance costs referenced in this section as part of the Allowance, i.e. cost to Owner." |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 70 | EXHIBIT G, Article 3. Work, Section 3.22, at end of line six | Add after: "Contract Documents.", "Lapse of coverage under this section due to Owner or Owner's representatives shall void Construction Contractor's obligations to the Owner in the Hold Harmless Provisions of this Agreement and make Owner responsible to the Construction Contractor in the Hold Harmless provisions in this Agreement to the same extent as that originally required of the Construction Contractor." |
|---|---|---|
| 71 | EXHIBIT G, Article 4. Work, Section 4.01, fifth line | Replace : "three (3)" with "two (2)" |
| 72 | EXHIBIT G, Article 4. Work, Section 4.01, last line at end | Add: "Construction Contractor has the right to refuse to work with any subcontractor proposed by the Owner. |
| 73 | EXHIBIT G, Article 4. Work, Section 4.02, sixth line | Add after: "Owner", "if not time consuming and overly burdensome to the Construction Contractor and the proposed persons or entities for such portion of work" |
| 74 | EXHIBIT G, Article 4. Work, Section 4.02, tenth line at end | Replace after : "shall not unreasonably" with "may" |
| 75 | EXHIBIT G, Article 6. Work, Section 6.02, fifth line | Add after: ""granted or", "reasonably" |
| 76 | EXHIBIT G, Article 6. Work, Section 6.02, seventh through ninth line | Delete last sentence from: "Owner" through "under the Contract." |
| 77 | EXHIBIT G, Article 6. Work, Section 6.03, second line | Delete after: "(i)", "intended for Construction Contractor," |
| 78 | EXHIBIT G, Article 6. Work, Section 6.03, third line | Add after: "in person to", "Owner or " |
| 79 | EXHIBIT G, Article 6. Work, Section 6.03, third line | Add after: "superintendent", "or project manager respectively" |
| 80 | EXHIBIT G, Article 6. Work, Section 6.03, fifth line | Add after: "holiday", "or Saturday or followed by a holiday or Saturday" |
| 81 | EXHIBIT G, Article 6. Work, Section 6.03, fifth line | Replace: "to such" with "by" |
| 82 | EXHIBIT G, Article 6. Work, Section 6.03, fifth and sixth line | Delete: "in sufficient time for next day delivery" |
| 83 | EXHIBIT G, Article 6. Work, Section 6.04, seventh line | Delete: "together" through "thereunder" |
| 84 | EXHIBIT G, Article 6. Work, Section 6.04, ninth | Add after: "whole" , "to the extent of the bond as currently issued" |
| 85 | EXHIBIT G, Article 6. Work, Section 6.04, thirteenth line | Add after: "increased", "unless a modification of any provision of any Contract Document a change in contract time, Contract Sum or condition of payment objectionable to the bonding company" |
| 86 | EXHIBIT G, Article 6. Work, Section 6.06 | Delete in its entirety. |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 87 | EXHIBIT G, Article 6. Work, Section 6.07, last line | Add after: "herein", "if copies of such documents included by reference were submitted to Construction Contractor for review and approval in advance of Contact execution" |
|---|---|---|
| 88 | EXHIBIT G, Article 6. Work, Section 6.09, first line | Add after: "Contractor", "except failure of Owner to make timely payments or provide timely information required to perform the Work"<br>*Do not type: This paragraph appears to preclude Owner withholding timely payments.* |
| 89 | EXHIBIT G, Article 6. Work, Section 6.11 | Delete in its entirety. |
| 90 | EXHIBIT G, Article 7. Work, Section 7.01, fifth line | Delete after: "disputes", the entire parenthetical statement. |
| 91 | EXHIBIT G, Article 7. Work, Section 7.01, seventh line | Delete: "Owner may determine". |
| 92 | EXHIBIT G, Article 7. Work, Section 7.01, seventh line | Add after: "for such time as", "is mutually determined" |
| 93 | EXHIBIT G, Article 7. Work, Section 7.01, ninth line | Add after: "aforesaid", " and any related or consequential causes" |
| 94 | EXHIBIT G, Article 7. Work, Section 7.01, twelfth line | Delete: "Within" through "Schedule," |
| 95 | EXHIBIT G, Article 7. Work, Section 7.02 | Delete in its entirety. |
| 96 | EXHIBIT G, Article 8. Work, Section 8.01, second line | Delete: "and Anticipated Draw Schedule" |
| 97 | EXHIBIT G, Article 8. Work, Section 8.01, third line | Delete: "each month" |
| 98 | EXHIBIT G, Article 8. Work, Section 8.01, sixth line | Replace: "at Owner's request", with "by change order executed by Owner and Construction Contractor" |
| 99 | EXHIBIT G, Article 8. Work, Section 8.02, ninth line | Add after: "Schedule 8.02", ", AIA Application for Payment format," |
| 100 | EXHIBIT G, Article 8. Work, Section 8.02, thirteen line | Replace: "requires" with "may require" |
| 101 | EXHIBIT G, Article 8. Work, Section 8.02, sixteenth line | Add after: "payment", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 102 | EXHIBIT G, Article 8. Work, Section 8.02, twentieth line | Add after: "satisfied", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 103 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-second line | Add after: "payment", ", if Owner has a substantial reason to believe that Construction Contractor's subcontractors and materialmen have not been paid" |
| 104 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-third line | Add after: "Contractor", ", to the extent that such payments and credits are mutually agreed upon" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 105 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-seventh line | Replace: "cost" with "amount earned in accordance with the Application for Payment" |
|---|---|---|
| 106 | EXHIBIT G, Article 8. Work, Section 8.02, twenty-ninth through thirty-fifth line | Delete from: "Unless otherwise" to the end of this section. |
| 107 | EXHIBIT G, Article 8. Work, Section 8.03, first line | Replace: " 30" with "five (5)" |
| 108 | EXHIBIT G, Article 8. Work, Section 8.03, second line | Add after "Owner", "reasonably" |
| 109 | EXHIBIT G, Article 8. Work, Section 8.03, third line | Add after: "due", "within thirty days of submission by Construction Contractor to Owner" |
| 110 | EXHIBIT G, Article 8. Work, Section 8.03, fourth line | Add after: "payment.", "Owner may withhold no amount in excess of the reasonably disputed amount portion." |
| 111 | EXHIBIT G, Article 8. Work, Section 8.03, fourth line | Add before: "Construction Contractor", "Construction Contractor shall receive payment for the full amount due no later than thirty (30) days from the original submission date of the Application for Payment." |
| 112 | EXHIBIT G, Article 8. Work, Section 8.03, end of section | Add after: "entitled" , "to the extent that Owner approved a sufficient amount to make such payments" |
| 113 | EXHIBIT G, Article 8. Work, Section 8.04, second line | Add after: "filed", " to the extent of the disputed amount only" |
| 114 | EXHIBIT G, Article 8. Work, Section 8.04, second line | Add after "(d)", "substantiated" |
| 115 | EXHIBIT G, Article 8. Work, Section 8.04, seventh/last line | Add after: "cured", "only to the extent of the reasonable value that can be assigned to such breach" |
| 116 | EXHIBIT G, Article 8. Work, Section 8.05, second line | Replace: "the Work is finally complete" with "the project is determined to be fifty percent complete at which time the retained balance shall be reduced to fifty percent of the Contract Sum at such time retainage shall continue at five (5) percent" |
| 117 | EXHIBIT G, Article 8. Work, Section 8.06, third line | Add after: "do not", "materially" |
| 118 | EXHIBIT G, Article 8. Work, Section 8.06, tenth line | Add after: "authorities", "or the Construction Contractor's work is not an impediment to the issuance of such certificate of occupancy" |
| 119 | EXHIBIT G, Article 8. Work, Section 8.08, eighth line | Delete: "The acceptance" through "still unsettled" |
| 120 | EXHIBIT G, Article 8. Work, Section 8.09 (a), fifth line | Replace: "accepts (in writing) such responsibility" with "occupies or permits the Work to be occupied by others or at substantial completion, which ever comes first" |
| 121 | EXHIBIT G, Article 9. Work, Section 9.02, fourth line | Add after: "risks", "directly related to the work" |
| 122 | EXHIBIT G, Article 9. Work, Section 9.02, sixth line | Add after: "watchmen", "related only to the Work" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 123 | EXHIBIT G, Article 9. Work, Section 9.02, seventh line | Add after: "barricades", "directly related to the Work" |
|---|---|---|
| 124 | EXHIBIT G, Article 9. Work, Section 9.02, eleventh line | Delete: ", not less than a nine (9) pound halon fire extinguisher shall be provided." |
| 125 | EXHIBIT G, Article 9. Work, Section 9.02, last line | Delete: "; however, Owner" through " watchmen" |
| 126 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a), fourth line | Delete: "by cost code" |
| 127 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Delete: "Construction Contractor and" |
| 128 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Delete after: "fee(s)", "include" |
| 129 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), fourth line | Add after: "fee(s)", "which shall be adjusted to be adequate enough to cover" |
| 130 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth line | Delete: "Construction Contractor and" |
| 131 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth through tenth line | Delete after "Construction Contractor", "understands that" through "furnished to subcontractor." |
| 132 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (i), sixth line | Add after: "Construction Contractor", "shall add a percentage fee of ten (10) percent to cover Construction Manager's mark-up on subcontractor's lump-sum estimate for additional work, plus any additional amount marked-up for overhead and profit at twenty (20) percent to cover Construction Contractor's cost for work performed by Construction Contractor's own forces for layout, field supervision, small tools and related items. |
| 133 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (ii), fifth through seventh line, end of section | Delete: "Construction Contractor shall" through "furnished to Construction Contractor." |
| 134 | EXHIBIT G, Article 10. Work, Section 10.03.01 (a) (ii), fifth line | Add after: "overhead, and profit.", "Any other costs related to owner furnished product, equipment or material other than unload, storage and staging for work shall be additional work and invoiced in accordance with Article 10. |
| 135 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (i), fifth line | Delete: "Construction Contractor and" |
| 136 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (i), fifth line | Add after: "subcontractor", "and one-half of Construction Contractors mark-up on subcontractor's lump-sum estimate for additional work" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 137 | EXHIBIT G, Article 10. Work, Section 10.03.01 (b) (ii), third line | Add after: "plus", "one-half" |
|---|---|---|
| 138 | EXHIBIT G, Article 10. Work, Section 10.03.02, third line | Delete after: "applied to", "approved" through payrolls" |
| 139 | EXHIBIT G, Article 10. Work, Section 10.03.02, third line | Add after: "applied to", "all "on-site" costs" |
| 140 | EXHIBIT G, Article 10. Work, Section 10.03.02, fourth line | Replace: "ten (10)" with "thirty (30)" |
| 141 | EXHIBIT G, Article 10. Work, Section 10.03.02, eighth line, end of section | Add after: "information", "specifically requested by Owner that is not burdensome" |
| 142 | EXHIBIT G, Article 10. Work, Section 10.03.03 (a), sixth and seventh line | Delete: "Construction Contractor shall" through "furnished to Construction Contractor." |
| 143 | EXHIBIT G, Article 10. Work, Section 10.03.03 (a), sixth line | Add after: "Order.", "Any other costs related to owner furnished product, equipment or material, other than unload, storage and staging for work shall be additional work and invoiced in accordance with Article 10. *DNT: Check general conditions and Section 3 to determine what should be excluded and charged directly.* |
| 144 | EXHIBIT G, Article 10. Work, Section 10.03.03 (b), second line | Replace: "supervision" through "expenses", with "costs not directly related to the conduct of the Work. |
| 145 | EXHIBIT G, Article 10. Work, Section 10.05, fifth line | Replace: "30" with "ten (10)" |
| 146 | EXHIBIT G, Article 10. Work, Section 10.06, second line | 2.04 is a bad reference. 2.03 could be the reference, but only partially fits as worded.  Could also be Article 12? |
| 147 | EXHIBIT G, Article 10. Work, Section 10.06, seventh line | Replace: "20 days" with "a reasonable amount of time considering nature of claim, events surrounding time of the event, such as schedule and directives from Owner or Owner's representative(s), but in no case less than up to thirty (30) days. |
| 148 | EXHIBIT G, Article 10. Work, Section 10.06, eighth line | Add after: "property,", "schedule driven requirements or Owner or Owner representative driven requirements," |
| 149 | EXHIBIT G, Article 10. Work, Section 10.06, eighth line | Add after: "property", "in accordance with Section 9.03" |
| 150 | EXHIBIT G, Article 10. Work, Section 10.06, eighth and ninth line | Delete: ", in which case" through "through "9.03" |
| 151 | EXHIBIT G, Article 11. Work, Section 11.02 (a), first line | Add after: "Owner's", "reasonable" |
| 152 | EXHIBIT G, Article 12. Work, Section 12.01, eleventh line, at end of section | Add after: "damages", "unless such termination was caused by breach of contract by Owner or Owner's representative(s)" |

SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
CONTRACT NO. 6B
BANK ONE CORE DATA CENTER #2
ADDENDUM 1

| 153 | EXHIBIT G, Article 12. Work, Section 12.02 (a), fourth line | Add after: "termination", "and all costs associated with demobilization and reassignment of personal" |
| 154 | EXHIBIT G, Article 12. Work, Section 12.02 (a), sixth line | Add after: "provision", "except for commitments related to fabrication and fabrication materials and special orders and such other items that require a lead time commitment of time and material." |
| 155 | EXHIBIT G, Article 12. Work, Section 12.02 (b), fifth line | Add after: "materials", ", if manpower and material is the proper solution and there is agreement to properly compensate for such , |
| 156 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth line | Add after: "date", "reasonably and mutually" |
| 157 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth and ninth line | Delete: "or a labor dispute" through "or similar actions" |
| 158 | EXHIBIT G, Article 12. Work, Section 12.02 (b), tenth line | Delete "without limitation," |
| 159 | EXHIBIT G, Article 12. Work, Section 12.02 (b), eighth and ninth line | Add after: ""fails", ", exclusively through the fault of the Construction Contractor," |
| 160 | EXHIBIT G, Article 12. Work, Section 12.02 (b), fifteenth line | Replace: "80" with "100" |
| 161 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth line | Delete: "any further" through "finished." |
| 162 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth line | Add after: "any payment in excess of the Sum due the Construction Contractor, less what is reasonably required to complete Construction Contractors Work." |
| 163 | EXHIBIT G, Article 12. Work, Section 12.02 (b), nineteenth and twentieth line | Delete: "plus leasing fees referred to in (ii) above |
| 164 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twentieth line | Add before: "expense", "direct" |
| 165 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-first and twenty-second line | Delete: "including compensation" through " default," |
| 166 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-second line | Add before: "expense" "direct" |
| 167 | EXHIBIT G, Article 12. Work, Section 12.02 (b), twenty-second line | Delete: "plus Owner's losses and damages" |
| 168 | EXHIBIT H | Delete in its entirety |
| 169 | Schedule 8.02 | Delete in its entirety |

## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT
## CONTRACT NO. 6B
## BANK ONE CORE DATA CENTER #2
## ADDENDUM 1

| 170 | Schedule 8.02 | Replace with: "APPLICATION AND CERTIFICATE FOR PAYMENT AND CONTINUATION SHEET FOR CONSTRUCTION CONSTRUCTOR AND SUBCONTRACTOR TO OWNER<br>Use AIA Document G702-1992 and G703-1992 respectively. |
| 171 | Schedule 10.02 | Replace with the actual document used on this project per owner's direction |