# EXHIBIT S

**Creedon v. Forest Electric and Banc One Building Corp**
**Hennessey, Thomas (Rough)**
6/28/2006

**Page 1**

```
 1      UNEDITED DRAFT TRANSCRIPT
 2         (REPORTER'S NOTE: Since this deposition has
        been real-timed and is in rough draft from, please be
 3      aware that there is a discrepancy regarding page and
        line numbers when comparing the real-time screen, the
 4      rough draft, rough ASCII, and the final document.
           Also please be aware the real-time screen
 5      and the unedited, uncertified rough draft
        transcript/ASCII may contain untranslated steno, an
 6      occasional reporter's note, a misspelled proper name,
        and/or nonsensical English word combinations. All
 7      such entries will be corrected on the final, certified
        transcript.
 8         We, the party working with real-time,
        understand that if we choose to use the real-time
 9      rough draft screen, ASCII or printout, that we are
        doing so with the understanding the rough draft is an
10      uncertified copy. We understand the real-time rough
        draft may not be used as a final transcript for any
11      purpose including, but not limited to, being quoted
        from or being filed with any court, but is only to
12      enhance notetaking.
           We further agree not to share, give, copy,
13      scan, fax, or in any way distribute this real-time
        rough draft in any form (written or computerized) to
14      any party. However, our own experts, co-counsel, and
        staff may have limited internal use of same with the
15      understanding that we agree to destroy our real-time
        rough draft and/or any computerized form, if any, and
16      replace it with the final transcript and/or any
        computerized form upon its completion.
17      (In re: Creedon v. Banc One)
        (C.A. No. 05-CV-300)
18      (Deposition of: THOMAS M. HENNESSEY)
        (Taken on: June 28, 2006)
19
20
21
22
23
24
```

**Page 2**

```
 1      30(b)(6)
 2         (Hennessey Exhibits No. 1 through 3 were
 3      marked for identification.)
 4
 5             Witness,
 6      the deponent herein, having first been duly
 7      sworn on oath, was examined and testified as
 8      follows:
 9  BY MR. BESTE:
10   Q. Would you please state your full name and
11  present home address, sir?
12   A. Thomas M. Hennessey, 4455 Langport,
13  L-a-n-g-p-o-r-t, Road, Columbus, Ohio.
14   Q. And is this your fortune to be the first time
15  being deposed or have you been deposed before?
16   A. No, been deposed twice before.
17   Q. Okay. And as I understand it, that we've
18  noticed your deposition individually and you are also
19  being provided as a 30(b)(6) corporate designee for
20  Banc One and we'll sort of proceed and combine them
21  both here in one if that's all right with everybody.
22  All right?
23   A. My understanding too.
24   Q. Okay, good. And as a part of the 30(b)(6)
```

**Page 3**

```
 1  notice, there was a series of attachments that were
 2  provided about additional areas of inquiry and
 3  additional documents that you were requested to bring.
 4  Are you familiar with that document?
 5   A. I think I saw the notice. I'm not sure I saw
 6  attachments.
 7   Q. Okay, here is a, or there was a copy. That's a
 8  copy of the notice. Have you brought any additional
 9  documents with you today?
10   A. I did not.
11      MR. BESTE: Counsel, are there any
12  additional documents to be provided today?
13      MS. KLEINICK: No, there are not.
14   Q. Mr. Hennessey, have you reviewed that list and
15  the notice and the Exhibits A and B before?
16   A. I looked at Exhibit A, which is, I don't
17  believe I looked at Exhibit B or page 2 of Exhibit B.
18   Q. And do you know if anyone else has made any
19  inquiry to determine if the documents requested in
20  Exhibit B have already been provided in this
21  litigation?
22   A. I don't know that, no.
23   Q. Have you reviewed any documents specifically in
24  preparation for your deposition today?
```

**Page 4**

```
 1   A. Yes.
 2   Q. What documents would they be, sir?
 3   A. I don't know if I can tell you all the ones. I
 4  can tell you the ones I remember as I sit here.
 5   Q. That's the best I can ask you.
 6   A. Right. A contract between Banc One Building
 7  Corp., who I'll just call Banc One, and Tishman; a
 8  contract between Banc One and Forest and Tishman
 9  signed as the agent for the bank. I'm not sure I saw
10  the Tishman contract, now that I think about it, first
11  one I identified. I don't know if I saw that or not.
12  Some e-mail traffic, a little bit of e-mail traffic
13  between people that were identified as I think Forest
14  Electric employees, perhaps Tishman employees. Two
15  were from Tishman employees. Some correspondence
16  between the parties. A requisition from Tishman to
17  the bank, attachments to that. I think a printout
18  from the bank's accounting department showing payments
19  made to Tishman. My two affidavits I submitted.
20  There are no doubt others. As I sit here I can't
21  remember.
22   Q. Those are the ones that you recall sitting here
23  today?
24   A. As I sit here right now. If I had another half
```

17

1   A.   I'm not exactly sure. I can give you a gross
2   estimate, but I don't know the date.
3   Q.   Approximately when?
4   A.   Sometime in 2005, I think.
5   Q.   Did anyone inquire of him whether or not he had
6   those contracts or had received those contracts that
7   were proposed to Creedon in 2004?
8        MS. KLEINICK: At any time?
9        MR. BESTE: Yes, at any time.
10  A.   I don't know if any time.
11  Q.   Do you recall any time that you attempted or
12  directed someone for you to investigate, inquire of
13  him whether or not he had received them
14  contemporaneously in 2004, let's say?
15  A.   No, I never asked him if he knew that.
16  Q.   So far as you know, is the first time that Banc
17  One received or saw any of those two proposed forms of
18  contract was after the litigation started?
19  A.   No. I understand that in connection with
20  another matter, not related to Creedon, that those
21  documents were copied by counsel for the bank.
22  Q.   What matter was that?
23  A.   Is.
24       MS. KLEINICK: I'm going to direct you not

18

1   to respond to the question to the extent that it would
2   reveal the existence of an unrelated matter in which
3   outside counsel was engaged to the bank.
4        If you can answer otherwise, then you
5   should.
6   A.   I can't answer otherwise.
7        MR. BESTE: Can reread all that back?
8        (The requested portion was read.)
9   Q.   Are you aware that all of the contracts that
10  Forest entered into with respect to the Brandywine
11  data center list Forest as agent for Banc One?
12       THE WITNESS: You're going to have to read
13  that one back too.
14       (The requested portion was read.)
15  A.   No.
16  Q.   What contracts don't list Forest as agent for
17  Banc One?
18  A.   The Creedon contract, for one. And I don't
19  know of any other contracts, because I haven't seen
20  them.
21  Q.   Which Creedon contract are you referring to?
22  A.   The Creedon contract for CDC II.
23  Q.   The first one or the second one?
24  A.   There's only one.

19

1   Q.   I thought we were just talking about two.
2   A.   No, you asked me if there were two forms sent
3   out and I saw that I had saw two forms. There's only
4   one contract.
5   Q.   Which one is that?
6   A.   That's the October 2003 contract.
7   Q.   Referring to the --
8   A.   Subcontract, excuse me.
9   Q.   Referring to the May contract that was, the May
10  contract form that was delivered by Forest to Creedon.
11  A.   No referring to the document that is attached
12  to a letter countersigned by Forest and Creedon with a
13  document entitled "subcontract" attached to it.
14  Q.   That's what you're referring to?
15  A.   That's, that's what you asked me. And that's,
16  yes, that's what I'm referring to.
17       MS. KLEINICK: Let him ask a question.
18       THE WITNESS: Sorry.
19  Q.   And when was the first time that you saw that
20  form of contract or contract proposal, whatever you
21  want to call it, referring to the October 2003
22  documents?
23  A.   Yesterday.
24  Q.   And when was the first time that you saw the

20

1   proposed form of contract that was delivered to
2   Creedon in May of 2004?
3   A.   I think I saw that form sometime in -- it was
4   sometime after I was first aware of Creedon's claim.
5   Q.   Did you see it as a part of the claims process,
6   the claim of Creedon?
7        MS. KLEINICK: Objection.
8   A.   I don't recall in the context of when I saw it.
9   Q.   You also were involved in the claim being made
10  from or by Creedon at very early stage and had several
11  meetings, am I right?
12       MR. BRADLEY: Object to form.
13  A.   Well, I was first advised of Creedon's claim
14  after Creedon sent two letters to Jamie Dimon, who was
15  a CEO of Banc One, in whatever those dates were, I
16  believe it's 2004.
17  Q.   I'm not trying to get into specifics.
18  Obviously I've seen your name in a number of
19  correspondence and I'm trying not to give you 3,000
20  documents to burden the record further. I understand,
21  however, that you were involved in or had some
22  dealings with a claims process, and that you had some
23  dealings with both the Creedon personnel and the
24  Forest personnel with respect to that claim being made

**21**

1  by Creedon. Is that not correct?
2  A. That's correct.
3  Q. Okay. And I guess what I'm, I want to find out
4  from you is whether as a part and process of that
5  claims process and the discussions that are relating
6  to it, that the issue of the contract status was
7  brought up?
8      MS. KLEINICK: Objection to form. Are you
9  talking about communications between Mr. Hennessey and
10 Miss Creedon? Are you talking about --
11     MR. BESTE: Talking about as part of that
12 process whether the issue came up as to the form of
13 the contract and the signature line that says May 2004
14 contract that says that Forest was signing on behalf
15 of Banc One as their agent.
16     MS. KLEINICK: Objection to form. And to
17 the extent that you were involved in any discussions
18 and any of the subject matter referred to in the
19 question came up and your discussions were with your
20 own client concerning that, I will direct you not to
21 answer. Is.
22     MS. KLEINICK: Can you repeat the question
23 for Mr. Hennessey?
24     (The requested portion was read.)

**22**

1  A. I would like to understand what you mean by
2  claims process before I answer the question.
3  Q. Well I'm not sure that's very easily done.
4  Maybe that's the problem that you're having under,
5  know that obviously a claim was made by Creedon that
6  they were entitled to additional funds beyond that
7  which was being paid. And as I understand it, you
8  became involved with Forest in trying to knee
9  negotiate that claim that was being made by -- that
10 was being made by Creedon.
11 A. That's correct, but I would not term that a
12 process. That's what happened.
13 Q. Okay. As a part of what happened, did you talk
14 to Mrs. Creedon about the form of contract and the
15 status of Forest vis-a-vis Banc One?
16 A. Yes, I think we did.
17 Q. What was the nature of those discussions?
18 A. Miss Creedon told me that she had received from
19 Forest a lengthy contract document which she is
20 submitted comments to. Or somebody on her -- which
21 Creedon submitted comments to.
22 Q. And did you discuss with her that that form of
23 contract listed Forest as agent for Banc One?
24 A. I don't recall talking about that, no.

**23**

1  Q. Did you have any other discussions with Creedon
2  representatives about that topic and how Forest was
3  listed as agent for Banc One?
4  A. I don't recall, no.
5  Q. Did you discuss that with any individual at
6  Forest?
7      MS. KLEINICK: Again, to the extent that
8  it would require you to reveal any communication that
9  would be subject to a joint defense privilege, I would
10 direct you not to answer the question.
11 Q. Do you have an answer?
12 A. On advice of counsel, I'm not going to answer.
13 Q. During what time period did you have
14 discussions with Forest representatives about the
15 proposed Forest/Creedon contract that listed Forest as
16 agent for Banc One?
17     MS. KLEINICK: Objection to form.
18 A. As to the first part of your question, the time
19 period I had discussions with Forest representatives,
20 that would have been between the time I was first
21 involved and probably the subsequent five to six
22 months.
23     As to the second part of your question,
24 the substance of those conversations, I'm going to

**24**

1  decline to answer on advice of counsel.
2  Q. And what five months, if that's what you said,
3  period are you talking about?
4  A. I think the letters to Mr. Diamond from Creedon
5  were in the late summer of 2004 SI became involved
6  with it, with the matter after that. Probably through
7  the end of 2004 into beginning of 2005 I was actively
8  involved in reviewing -- in looking at the claim.
9  After that I think she filed suit, and I was no longer
10 involved.
11 Q. When you had discussions with Forest
12 representatives about the contract, the May 2004
13 contract that listed Forest as agent for Banc One;
14 what persons were present during those conversations?
15     MS. KLEINICK: Objection. It assumes that
16 the subject matter that you are addressing in your
17 question actually was a subject matter of
18 conversations that Mr. Hennessey had. If you want to
19 ask him whether or not -- who at Forest he had
20 discussions with, he can answer that question and we
21 can take it from there.
22     MR. BESTE: I thought I asked him that
23 one, but maybe I didn't.
24 BY MR. BESTE:

25

1  Q. Who at Forest did you have discussions with
2  regarding the nature of Forest's contract with Creedon
3  that lists it as agent for Banc One?
4      MS. KLEINICK: Again, objection to form.
5  Your question assumes that that was a subject of a
6  discussion that Mr. Hennessey had. If you want to ask
7  him the question, which representative of Forest did
8  he communicate with, period, he can answer that
9  question. The substance of those conversations,
10 subject to a joint defense privilege.
11     MR. BESTE: I don't think I'm precluded
12 from investigating who he had discussions with to
13 determine whether or not your assertion of a joint
14 defense privilege is appropriate. And without that
15 information, I can't really even begin to inquire into
16 the validity of your assertion.
17     MS. KLEINICK: And what I'm saying is if
18 you rephrase your question so that it doesn't assume
19 the substance of a conversation that is privileged and
20 ask him who he spoke with, not about what topic, he
21 will -- he can answer your question.
22     MR. BESTE: I don't think I'm limited to
23 just asking him questions of who he spoke with at
24 Forest. Because that gets us absolutely no place,

26

1  because it is not informative in any way. Well, let
2  me do what I can.
3  BY MR. BESTE:
4  Q. Who have you spoken with in Forest since 2001
5  when you began work on this project, relating to the
6  Banc One Data Centers in Delaware?
7  A. I spoke with Allen Ross.
8  Q. Who else?
9  A. Forest attorney. Is the only other time I saw
10 anybody from Forest about this claim was at a meeting
11 we had in I believe October of 2004 that Miss Creedon
12 attended with Mr. Link, and I don't believe I had any
13 direct conversations with the Forest folks there,
14 other than they were in the room, so was I.
15 Q. And Mr. Ross was there?
16 A. Yes, he was.
17 Q. And who else was there, if anyone?
18 A. Mr. Auwarter for the bank. There were a couple
19 of Tishman representatives, Tom Keene was one of them,
20 there was another one. And I believe that there were
21 two representatives of Forest, don't recall their
22 names. And Miss Creedon and Dennis Link.
23 Q. And was the topic of Forest's role listed in
24 the May 2004 contract as agent for Banc One discussed

27

1  at that meeting?
2  A. I don't think so, no.
3  Q. Never came up at all?
4  A. I don't think so, no.
5  Q. Did you have any discussions with any Tishman
6  representatives regarding the nature of Forest's
7  assertion that it was acting as agent for Banc One in
8  its contracting with Creedon and the other electrical
9  subcontractors?
10 A. No.
11 Q. Have you had any discussions with any other
12 Banc One personnel other than attorneys regarding the
13 nature of the assertion of Forest that in the May 2004
14 contract it was acting as agent for Banc One?
15     MS. KLEINICK: You can answer that yes or
16 no.
17     MR. BRADLEY: Time out. Can you repeat
18 that question?
19     (The requested portion was read.)
20 A. No.
21 Q. Not simply limiting discussions with Banc One
22 about the contract itself, but in the nature of the
23 relationship of Forest asserting its ability to act on
24 behalf of Banc One regarding the Delaware data center

28

1  project.
2      MS. KLEINICK: Objection to form.
3  Q. If you don't understand the question, tell me.
4  A. Just, I'm a little confused by the question,
5  because it sounds to me like the previous question.
6  Q. It does, in a way, except the previous question
7  specifically related to the representations in the
8  contract. I'm trying -- the May 2004 contract
9  proposal. I'm trying to go beyond that and see if
10 during, or outside the scope of those documents
11 themselves you had any conversations with Banc One
12 personnel about the representation of Forest that in
13 its contracting with Creedon it was acting as agent
14 for Banc One.
15     MS. KLEINICK: Can you repeat the
16 question?
17     (The requested portion was read.)
18     MS. KLEINICK: If you understand the
19 question, you can answer it yes or no.
20 A. No.
21 Q. You understand the question and your answer is
22 no?
23     MS. KLEINICK: Objection to form, again.
24 A. Correct. I understand the question --