IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CREEDON CONTROLS, INC.,            )
                                   )
            Plaintiff              )
                                   )        C.A. No. 05-CV-300-JJF
        v.                         )
                                   )
BANC ONE BUILDING                  )
CORPORATION, an Illinois corporation, )
and FOREST ELECTRIC                )
CORPORATION, a New York Corporation, )
                                   )
            Defendant              )

============

**BRIEF OF DEFENDANT FOREST ELECTRIC CORP.
IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

============

MARON & MARVEL, P.A.

Paul A. Bradley (DE Bar #2156)
1201 North Market Street
Suite 900
Wilmington, DE 19801
(302) 425-5177
Counsel for Defendant
Forest Electric Corp.

Date: July 14, 2006

## TABLE OF CONTENTS

**Title**                                                                    **Page**

TABLE OF AUTHORITIES ..................................................................ii

STATEMENT OF NATURE AND STATE OF PROCEEDINGS.................1

SUMMARY OF ARGUMENT ....................................................................2

STATEMENT OF FACTS .........................................................................3

LEGAL ARGUMENT ................................................................................6

    A.  A BINDING CONTRACT EXISTED BETWEEN CREEDON
       CONTROLS AND FOREST ELECTRIC CORP. WHEN
       CREEDON CONTROLS EXECUTED FOREST ELECTRIC'S
       OFFER DATED OCTOBER 2, 2003...............................................6

    B.  IN THE ALTERNATIVE, THE SINGLE PROJECT
       SERVICES AGREEMENT APPLIES ..........................................11

    C.  FOREST ELECTRIC CORP. WAS AN AGENT OF BANC
       ONE BUILDING CORPORATION WITH RELATION TO
       THE CONSTRUCTION PROJECT...............................................12

CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

**Case Law**                                                                    **Page**

*Ceco Corporation v. Carson Concrete Corporation*,
    691 F. Supp. 850, 860 (E.D. Pa. 1988) ................................................................. 9

*Continental Insurance Company v. Rutledge & Company*,
    750 A.2d 1219 (Del. Ch. 2000); ........................................................................... 8

*Eagle Industries, Inc. v. DeVilbus Health Care Inc.*,
    702 A.2d 1228, 1232 ( Del. Supr. 1997) ............................................................. 8

*In the Matter of Enstar Corporation*,
    604 A.2d 404, 411 (Del. Supr. 1992) ................................................................. 10

*Eugene A Delle Donne and Son, L.P. v. Applied Card Systems, Inc.*,
    821 A.2d. 885, 887 (Del. Supr. 2003) ................................................................. 8

*F.D. Rich Co. v.*
    *Wilmington Housing Authority*, 392 F.2d 841 (3d Cir. 1968) ............................... 11

*Fisher v. Townsends, Inc.*,
    695 A.2d 53, 57 (Del. Super. 1997) ................................................................... 14

*Industrial America, Incorporated v. Fulton Industries*,
    285 A2d 412, 415 (Del Supr. 1971) ................................................................... 10

*Itek Corporation v. Chicago Aerial Industries, Inc.*,
    248 A2d 625 (Del. Supr. 1968) ........................................................................... 7

*Lee v. Yes of Russellville, Inc.*,
    784 So. 2d 1022, 1026-1027 (Ala. Supr. 2000) ................................................. 14

*Loppert v. WindsorTech, Inc.*,
    865 A.2d 1282, 1287 (Del Ch. 2004) ................................................................... 7

*Miller v. Wilmington Housing Authority*,
    165 F. Supp. 275, 281 (D. Del. 1958) ................................................................. 11

ii

*Pennsylvania Company v. Wilmington Trust Company,*
    166 A.2d 726, 732 (Del. Ch. 1960)................................................................ 7, 8

*Qwest Communications International Inc. v.*
    *National Union Fire Insurance Company of Pittsburgh*, Pa,
    821 A2d. 323, 328 (Del. Ch. 2002) .............................................................. 8, 9

*Realty Growth Investors v. Council Of Unit Owners,*
    453 A.2d 450, 454 (Del. Supr. 1982) .............................................................. 9

*Speakman v. Price,*
    80 A. 627, 629 (Del. Super. 1911)................................................................... 8

*Universal Products Co. v. Emerson,*
    179 A. 387, 394 (Del. Supr. 1935) .............................................................. 7, 8

*Universal Studios, Inc. v. Viacom, Inc.,*
    705 A.2d 579, 589 (Del. Ch. 1997)................................................................. 8

*Vale v. Atlantic Coast & Inland Corp.,*
    99 A.2d 390, 399 (Del. Ch. 1953) .................................................................. 7

{99999.00936 / W0059439}

## I.    STATEMENT AND NATURE OF PROCEEDINGS

Creedon Controls, Inc. filed a Complaint and Statement of Claim for Mechanics' Lien in or about April of 2005 against Banc One Building Corporation and Forest Electric Corp. in the Superior Court of the State of Delaware. (A-000223). On May 17, 2005, the action was removed to this Court on the basis of diversity jurisdiction. (A-000223). The named defendants have challenged and defended against the validity of plaintiff's claims and the parties have completed fact discovery, as dictated by the Court's Rule 16 Scheduling Order.

This is Forest Electric Corp.'s Opening Brief in support of its Motion for Partial Summary Judgment on issues relating to what contract applies to the project.

1

## II.    SUMMARY OF ARGUMENT

A binding contract existed between Creedon Controls, Inc. and Forest Electric when Creedon Controls, Inc. accepted Forest Electric's offer dated October 2, 2003. In the alternative, the Single Project Services Agreement applies. Forest Electric Corp. was an agent of Banc One Building Corporation with relation to the construction project.

2

## III.    STATEMENT OF FACTS

Forest Electric Corp. (hereinafter "Forest Electric") was the Trade Manager for Electrical Work in relation to the Bank One – Control Data Center construction on Governor Printz Boulevard, in New Castle County, Delaware (hereinafter "project") (A-0000028; A-0000227). Forest Electric was the construction manager for the six electrical contractors on the project. (A000027).

Creedon Controls, Inc (hereinafter "Creedon Controls") submitted a Response to an invitation to Bid-Best and Final Price relating to the General Power and Lighting. (A-000056). On October 2, 2003, Forest Electric wrote to Creedon Controls to acknowledge Creedon Controls' successful bid and to offer Creedon Controls a contract to provide General Lighting and Power electrical services for the Project. (A000056-000065).

Forest Electric's October 2, 2003 letter provided, in pertinent part:

> "This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above-referenced Project for a lump sum of $3,152,000.00 for electrical services based on your Response to an Invitation to Bid–Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule. Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement....
>
> Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1."

*Id.*

The letter enclosed the Subcontract Contract. (A-000056-000065)

It is undisputed that Creedon Controls, Inc. through its President agreed to and accepted it. (A-000005-000006). Creedon's acceptance was to be considered "executed"

after the lapse of a fourteen day period which allowed Creedon Controls to further review the document and consult legal counsel. (A-000056).    Fourteen days elapsed without any attempt by Creedon Controls to modify or renegotiate the terms of the Letter of Intent and enclosed agreement. (A-000010).    Indeed, Creedon Controls submitted the letter contract to Wilmington Trust to obtain financing for its work on the Banc One Project and commenced work on the project in or about October of 2003.    (A-000035; 000053-000054; 000015).

Tishman Construction Corporation of Maryland (hereinafter "Tishman"), the construction manager, advised Banc One that it had entered into an agreement with Forest Electric, as electrical trade manager for the general lighting and power which would then be subcontracted to Creedon Controls for the sum of Three Million One Hundred and Fifty Two Thousand Dollars ($3,152,000. 00). (A-000229).

Construction proceeded at the Banc One project.    Creedon Controls performed work at the construction site pursuant to its agreement with Forest Electric and submitted invoices and received payment for its work on the Project. (A-000027). As work on the project progressed, Forest Electric wrote to Creedon to acknowledge an increase in the contract pricing from $3,152,000 to $3,184,000.00, relating to a bond required for the project. (A000075-000084; A-000171-000173).    Forest Electric sent the same Letter of Intent and subcontract agreement reflecting the revised price.    (A-000075-000084). Creedon Controls executed and returned the Letter of Intent and dated it November 5, 2003.    (A-000075).    There was no statement above her signature about any need for further review by counsel or modification of any terms. (A-000318).

4

On February 12, 2004, Tishman sent a formal executed written Construction Services Agreement to Forest Electric as Trade Manager for Electrical Work. (A-000231-000296). The Agreement was dated September 12, 2003 to memorialize Forest Electric's role and work as Electrical Trade Manager as of that date on the project. (A-000227). On May 4, 2006, Forest Electric, in turn, sent a formal Single Project Construction Service Agreement to Creedon Controls to further formalize their understanding as to Creedon Controls' work on the Bank One Project. (A-000031; A-000085-000144). Creedon Controls did not execute the Agreement which Forest Electric submitted. (A-000031). Instead, Creedon Controls proposed twelve pages of modifications and conditioned its execution of the written Agreement on Forest Electric's acceptance of its proposed Addendum.[1] (A-000031-000032; A-000145-000162; A-000177-000183; A-000210).

Creedon Controls has sued Forest Electric seeking payment for claims that its work was delayed, hindered, obstructed and interfered with seeking money damages.

---

[1] There were six other electrical contractors on the project that were managed by Forest Electric. All of them signed the Single Project Services Agreement relating to their particular scope of work. All of the contracts identified Forest Electric Corporation "as Banc One Building Corporation's agent and Electrical Trade Manager." (A-000049-000050; A-000166).

5

## IV.    LEGAL ARGUMENT

### A.    A BINDING CONTRACT EXISTED BETWEEN CREEDON CONTROLS, INC. AND FOREST ELECTRIC WHEN CREEDON CONTROLS, INC ACCEPTED FOREST ELECTRIC'S OFFER DATED OCTOBER 2, 2003

Forest Electric's offer of October 2, 2003 contained all of the material terms for the electrical services subcontract for the Banc One Project. (A-000056-000065). The offer defined the scope of the work: electrical services based on Creedon Controls' Response to Invitation to Bid-Best and Final Price, September 29, 2003. The offer also defined the time of performance by reference to the delivery date in the "submitted schedule". Finally, the lump sum price for the services of Creedon Controls was provided. Furthermore, the offer covered other terms and conditions by explicit incorporation of an attached Subcontract. It provided that: "Subcontractor agrees to be bound to the terms and Conditions of the Subcontract Agreement as attached hereto as Exhibit 1."

The President of Creedon Controls admits that she received the written offer of October 2, 2003 from Forest Electric and that on behalf of Creedon Controls she returned it to Forest Electric with the notation that it was "Agreed to and Accepted" (A-000005-000006; A-000056-000065) Acceptance by Creedon Controls was reiterated above Creedon's Signature, where Ms. Creedon added the notation that:

> "This Letter of intent is accepted and will be considered executed after the required subsequent review modification, negotiations, and implementation of the advice from Creedon Controls. Inc.'s legal council [sic], allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional Consideration".

6

Creedon Controls never proposed any modifications or revisions to the Subcontract Agreement. The fourteen day review period contained in Creedon's acceptance lapsed, and by its terms, the agreement was deemed fully executed by Creedon Controls without qualification. (A-000056; A-000095).[2]

In addition, a revised Letter of Intent enclosing the Subcontract Agreement was sent to Creedon Controls reflecting a change in price. Creedon Controls executed it and returned it dated November 5, 2003 with no reservation of any rights. (A000075-000084; A-000171-000172).

A valid contract exists when the parties have agreed upon all essential terms of an agreement. *Universal Products Co. v. Emerson*, 179 A. 387, 394 (Del. Supr. 1935); *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1287 (Del Ch. 2004); *Vale v. Atlantic Coast & Inland Corp.*, 99 A.2d 390, 399 (Del. Ch. 1953). The fact that some matters may be left for future agreement between the contracting parties does not preclude the existence of a binding contract. *Itek Corporation v. Chicago Aerial Industries, Inc.*, 248 A2d 625 (Del. Supr. 1968) (where there was evidence that at time of letter of intent, the parties obligated themselves to reach a formal contract of merger, Court held, applying Illinois law, motion for summary judgment as to lack of contract should have been denied). Moreover, even if contracting parties contemplate the subsequent execution of a formal agreement, that fact does not negate their intent to be bound before the execution of a formal agreement. The Court of Chancery of Delaware so noted in *Pennsylvania*

---

[2] Creedon testified that it meant the review was reserved for when she later received the Prime Contract documents as referenced in the letter of intent. However, Creedon did not respond for six (6) weeks after receipt of the Single Project Construction Services Agreement, when it submitted into a 12 page Addendum on June 14, 2004. (A-000009-000010; A-000095-000096).

7

*Company v. Wilmington Trust Company*, 166 A.2d 726, 732 (Del. Ch. 1960) in reviewing the parties' motions for summary judgment in a specific performance case.

In the case at hand, Forest Electric's October 2003 Letter of Intent and Subcontract Agreement outlined all of the essential terms for the subcontract to provide electrical services, and Creedon Controls accepted and agreed to those terms. A valid and enforceable contract was created when Creedon accepted and it is the terms of that agreement which determines any contractual rights or liabilities with regard to the Bank One Project. *Universal Products Co. v. Emerson*, 179 A. 387, 394 (Del. Supr. 1935); *Speakman v. Price*, 80 A. 627, 629 (Del. Super. 1911). The fact that the parties expressed an intention to enter a more formal agreement after the Prime Contract was signed did not vitiate the agreement that they had reached in the fall of 2003. *Pennsylvania Company v. Wilmington Trust Company*, 166 A.2d 726, 732 (Del. Ch. 1960)

As the terms of the October 2003 agreement are clear, they should be given their plain meaning. *Eugene A Delle Donne and Son, L.P. v. Applied Card Systems, Inc.*, 821 A.2d. 885, 887 (Del. Supr. 2003); *Eagle Industries, Inc. v. DeVilbus Health Care Inc.*, 702 A.2d 1228, 1232 ( Del. Supr. 1997) (Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language); *Continental Insurance Company v. Rutledge & Company*, 750 A.2d 1219 (Del. Ch. 2000); *Universal Studios, Inc. v. Viacom, Inc.*, 705 A.2d 579, 589 (Del. Ch. 1997). Moreover, "contracts are to be interpreted in a way that does not render any provisions "illusory or meaningless". *Qwest Communications International Inc. v.*

8

*National Union Fire Insurance Company of Pittsburgh, Pa*, 821 A2d. 323, 328 (Del. Ch. 2002).

Applying these principles to the Creedon Controls' subcontract, Creedon Controls "agree [d} to be bound to the terms and conditions of the Subcontract Agreement as attached ...as Exhibit 1" to the October 2, 2003 Letter of Intent. (A-000056-000065). A reasonable person reading the terms of the October 2, 2003 offer would be compelled to conclude by accepting the offer, one would be bound to the terms of the attached subcontract. Therefore, it is the terms of the Subcontract Agreement, including paragraph XIV contains a no damages for delay clause which defines the respective rights and liabilities of the signatories.

The fact that the subcontract was attached to the offer that Creedon Controls accepted does not diminish its legal enforceability. *Realty Growth Investors v. Council Of Unit Owners*, 453 A.2d 450, 454 (Del. Supr. 1982) ("A contract can be created by reference to the terms of another instrument if a reading of all documents together gives evidence of the parties' intention and the other terms are clearly identified"). *Ceco Corporation v. Carson Concrete Corporation*, 691 F. Supp. 850, 860 (E.D. Pa. 1988) (court ruled that the terms of a construction subcontract included a form which party had attached to previous negotiation letters and had  attached  to its acceptance of offer). Here, Forest Electric's Letter clearly incorporated the terms of the Subcontract and it was physically appended as an Exhibit and Creedon Controls accepted it by executing it.

In light of the assertions which Plaintiff has lodged in this action, Creedon Controls will undoubtedly argue that it did not intend to be bound by the terms of the October 2003 letter agreement. However, Creedon Controls did "accept and agree" to

9

Forest Electric's offer, which specifically provided that Creedon Controls would be bound by the attached subcontract. (A-000056). Creedon Controls never voiced any exception to the incorporation of the Subcontract and never advised anyone at Forest Electric that it believed that the attached subcontract was just a model. Rather Creedon Controls went forward with its work under the agreement and, in fact, submitted the agreement to Wilmington Trust for financing for its work under the project. (A000053-000054; A-000035). Moreover, Creedon Controls submitted invoices for payment for its work on the project under the stated contract price. (A-000048). Creedon Controls later refused to sign the Single Project Service Agreement and continued to be bound to the terms of the Letter of Intent and Subcontract. The plain terms of Creedon Controls' written acceptance and its subsequent conduct are conclusive proof of Creedon Control's acceptance of the Letter of Intent and the parties' intention to be bound by its terms.

Ms. Creedon's deposition statement that it was her belief that the subcontract was just a model cannot defeat the terms of the agreement to which Creedon gave written assent, as overt manifestation of assent, not subjective intent, controls the formation of a contract. *Industrial America, Incorporated v. Fulton Industries*, 285 A2d 412, 415 (Del Supr. 1971) (Court held subjective intent of officer of company that made submission in accordance with advertised offer was not material where overt acts of assent committed). Moreover, a party will not be relieved of its obligations under a contract as a result of a unilateral mistake unless: its mistake relates to the substance of the consideration; would have occurred regardless of its exercise of reasonable care; it would be unconscionable to enforce the agreement; and it is possible to place the other party back to status quo. *In the Matter of Enstar Corporation*, 604 A.2d 404, 411 (Del. Supr. 1992) Clearly none of

{99999.00936 / W0059439}

those factors are present in this case. Thus, assuming arguendo that Ms. Creedon was mistaken about the attached subcontract, despite the clear language of the offer, Creedon Controls is still bound by the agreement.

Creedon Controls' claims against Forest Electric are precluded by the Subcontract Agreement. The Subcontract Agreement, Section XIV provides:

> "Should the SUBCONTRACTOR's Work be delayed, hindered, obstructed, interfered with, and/or accelerated by a cause or causes beyond the control of the SUBCONTRACTOR, the sole remedy available to the SUBCONTRACTOR shall be an equitable extension of time for the performance of its work... under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price or to damages as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work."

Creedon Control's claim is that its work was delayed, hindered, obstructed and interfered with by a cause or causes beyond its control. The subcontract clearly provides that the only remedy is additional time to perform its work and that no increase in the contract price or damages are allowed. Delaware law recognizes the enforceability of no damage for delay clauses. *See F.D. Rich Co. v. Wilmington Housing Authority*, 392 F.2d 841 (3d Cir. 1968); *Miller v. Wilmington Housing Authority*, 165 F.Supp. 275, 281 (D. Del. 1958).

**B.    IN THE ALTERNATIVE, THE SINGLE PROJECT SERVICES AGREEMENT APPLIES**

After Forest Electric received an executed contract from Banc One as Trade Manger For Electrical Work, it tendered a "Single Project Construction Services Agreement" for the Banc One Project to all electrical trade contractors as well as Creedon

11

Controls. (A-000085-000144). Creedon Controls did not sign the agreement. (A-000048). Rather it proposed modifications and expressly conditioned its execution of the proposed contract on Forest Electric's acceptance of its proposed modifications, which were submitted some six weeks after Creedon Controls received it.. (A-000035-000037; A-000145-000162). Forest Electric never accepted the proposed modifications. (A-000178).

Ms. Creedon testified that her typewritten note on the Letter of Intent meant that she reserved the right to review the late Prime Contract documents. (A000006-000007). Creedon Controls claimed it had 14 days to review the terms and scope of any subsequent contract. (A000027). It claimed that the "Letter of Intent is accepted and will be considered executed ..." after this 14 day period. Creedon Controls received the Single Project Services Agreement in a May 4, 2004 letter from Paul Angerame. Creedon did not respond to the terms and scope within 14 days and therefore the Single Project Agreement was deemed accepted.

Thus, in the alternative, if the Court accepts Creedon Controls' explanation of the typewritten note and gives it effect, Creedon Controls should be deemed to have accepted the Single Project Services Agreement, which applied to all other electrical contractors.

### C.  FOREST ELECTRIC CORPORATION WAS AN AGENT OF BANC ONE BUILDING CORPORATION WITH RELATION TO THE CONSTRUCTION PROJECT

Philip Altheim, Chairman and CEO of Forest Electric, described the discussions that lead to Forest Electric becoming the Electrical Trade Manager. (A-000310-000313). He testified that he made it clear to Banc One "... we were not taking this job at risk." (A-000314). Altheim testified he understood that to mean Forest was "... acting as

12

{99999.00936 / W0059439}

agents, similar to the way a construction manager …". (A-000314). Furthermore, Forest Electric was paid on the same basis as Tishman, the construction manager, a percentage of the total value of the subcontracts, plus general conditions at no cost." (A-000314). Forest Electric was selected as the Electrical Trade Manager for the Bank One Project.

Pursuant to its position as Electrical Trade Manager, Forest Electric sought bids from electrical contractors for various electrical packages. It is undisputed any and all decisions that Forest Electric made with respect to Creedon Controls' role on the project were pursuant to its authority as the Electrical Trade Manager.

The evidence established that Forest Electric received its executed contract from Forest Electric in February 2004. (A-000231-000296). The contract was based on a form prepared and used by Banc One. (A-000298-000299). Forest Electric changed the form to reflect its status as Electrical Trade Manager and agent and named specific electrical trade contractors to execute the contract. (Email from Donna Lucas to Paul Angerame, 2/18/04 (A-000300-000303). Tishman approved the form of contract used by Forest Electric, which specifically identified Forest Electric as Banc One's agent. (A-000304-000307). Thus, Banc One's agent, Tishman, knew and approved Forest Electric entering into contracts with the electrical contractors as an agent of Banc One.

Indeed, Banc One's Rule 30(b)(6) witness, Richard Werner, admitted that Tishman had the authority and obligation to instruct Forest Electric on "exactly the type of contracts to use" and had the authority to tell Forest Electric to use the Single Project Services Agreement naming Forest Electric as agent of Banc One. (A-000308-000309).

The Bank and Tishman agreed in July 2003 that their intent was to subcontract all work through Tishman, with competitively bid subcontracts with owner participation and

{99999.00936 / W0059439}

the subcontractors placed under contract "via Tishman Construction, as agents for Bank One." (A-000319-000320).

It is clear that Forest Electric acted as the Bank's agent in its contracting with the electrical contractors and with the knowledge of Tishman and Banc One, which received the contracts that Forest Electric entered into.

Agency is defined as [t]he fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) at Agency §1(1) (1958). Put simply, an agency is created when a party consents to have another act on its behalf, under its direction, and the other party assumes that role. *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. Super. 1997). An agent can act based on apparent or implied authority. Forest Electric acted through actual and apparent authority throughout the project in its work as Electrical Trade Manager. In the instant case, it is undisputed that Banc One agreed to have Forest Electric Corporation act as its Electrical Trade Manager and agent on the Banc One Project. Clearly, Forest Electric acted as an agent of Banc One as it performed its duties as manager of the electrical trades. In addition, Tishman, the actual agent of Banc One, approved the contract used by Forest Electric, naming it Electrical Trade Manager and agent of Banc One. Forest Electric entered into contracts on this project for a disclosed principal and as such, Forest Electric is not liable on any contracts with the electrical contractors that it managed on the site. *See Lee v. Yes of Russellville, Inc.*, 784 So. 2d 1022, 1026-1027 (Ala. Supr. 2000). Therefore, Banc One, as the principal, is responsible for the acts of Forest Electric committed in the course of its duties on the project.

14

**CONCLUSION**

As there are no genuine issues of material fact, the Court should enter summary judgment in favor of defendant Forest Electric Corp. The evidence establishes that the October 2, 2003 Letter of Intent and Subcontract Agreement created a binding contract and the rights and duties of the respective parties are defined by the contract.

Furthermore, Forest Electric was an agent of Banc One with respect to the construction project. Thus Banc One, as the principal, is responsible for any of Forest Electric's acts .

<br>

MARON & MARVEL, P.A.

/s/ *Paul A. Bradley*
Paul A. Bradley (DE ID No. 2156)
1201 North Market Street, Suite 900
Wilmington, DE 19801
(302) 425-5177
Dated: July 14, 2006                    Attorney for Defendant
Forest Electric Corp.

15

{99999.00936 / W0059439}