05/28/2004  13:13  3020322002        CREEDON CONTROLS          PAGE  02

Oct. 07 03 09:39a    FE  CDC 2            302 752-3396          p.2

 **Forest Electric Corp.**

*An EMCOR company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121
Phone: 212.318.1500
Fax: 212.318.1790
www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
<u>ATTN: Pat Creedon</u>

RE:    Bank One Brandywine – CDC II
        General Lighting and Power – RFP 6B

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of $3,152,000.00 for electrical services, based on your Response to an Invitation to Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

Paul Angerame
Vice President

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal counsel, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations.

Agreed to and Accepted By:

Name: *PATRICIA CREEDON*
Title: *PRESIDENT*

*Datacom Services • Power Solutions • Technology • Facilities Management*

CL 1143



DEPOSITION
EXHIBIT
Creedon 11
8/22/06  JP

A-000056

05/20/2004  13:13   3028922002        OREELUN CUNTRULS                PAGE  03

## SUBCONTRACT AGREEMENT

Date:              September 18, 2003

Between:           Forest Electric Corp.  (FEC)
                   Two Penn Plaza
                   New York, NY 10121

                              and

                       (SUBCONTRACTOR)

Forest Electric Corp. ("FEC") desires to engage SUBCONTRACTOR to perform certain Work as set forth in the Scope of Work document ("Exhibit A") attached hereto, under FEC's Contract with Tishman Construction Corporation of Maryland ("Construction Manager"), the terms of which, along with all drawings, specifications and other documents associated therewith, are incorporated herein by reference, made a part hereof and which together with this Subcontract Agreement are collectively referred to as the "Contract Documents". The Project(s) are known as Bank One, ~~Bone CDC~~ ~~Lord~~ Brandywine COC II, located in the State of Delaware.

SUBCONTRACTOR agrees to perform such Work as set forth in Exhibit A and will provide and furnish all labor, materials, tools, supplies, equipment, plant, services, facilities, temporary facilities, supervision, administration and all other requirements necessary for the proper and complete performance of such Work in accordance with the Contract Documents. SUBCONTRACTOR agrees to perform the Work to the complete satisfaction of Owner, Construction Manager and FEC for the Contract Price set forth herein.

SUBCONTRACTOR agrees that the consideration to be paid to SUBCONTRACTOR for the performance of the Work will be ~~$XX,XXX~~ — Dollars ($0.00) ("Contract Price"), which Contract Price includes: (i) the cost of all materials, equipment, tools, supplies, plant, facilities and temporary services used by SUBCONTRACTOR in connection with the Work; (ii) all labor, services, supervision and administration required by SUBCONTRACTOR to complete the Work; (iii) all sales and use taxes, fees, contributions, etc. which may be imposed therein; (iv) the cost of all required insurance; and (v) the costs of an acceptable performance and payment bonds for one hundred percent (100%) of the Contract Price. The Contract Price is firm and not subject to escalation. Payments to be made in accordance with the payment schedule and subject to the terms, provisions and conditions of this Subcontract Agreement and all of the Contract Documents.                                 *prime contract?*

I        SUBCONTRACTOR represents that it has examined or has been given the opportunity to examine (1) the site of the Work; and (2) all contractual documents associated herewith, has found no conflicts between the various documents and is familiar with the Work to be performed and the site upon which the Work will be performed and acknowledges that no conditions exist which would affect the progress, performance or price of this Agreement. SUBCONTRACTOR agrees to be bound and obligated to FEC as FEC is bound and obligated to Construction Manager and/or Owner under its Contract as to the Work provided hereunder. *IF SUCH CONFLICTS EXIST, THIS DOCUMENT SHALL PREVAIL.*

II       All work, labor, services and materials to be furnished, supplied or performed by the SUBCONTRACTOR (Work) must strictly comply with all Federal, State, Local, Municipal, as well as any and all other governing jurisdictions and authorities' Laws, Rules, Regulations, Statutes, Ordinances, and Directives, SUBCONTRACTOR shall comply with all safety and health laws and codes, including, but not limited to, OSHA rules and regulations and all Hazardous Communications Programs required under such laws and codes.

III      FEC may, without notice to SUBCONTRACTOR's surety, make changes including the omission of Work and may order the performance of other work by a written change order. Any adjustment to the Contract Price or the time in which the Work is to be completed will be specifically set forth in the change order and if not SUBCONTRACTOR shall not be entitled to any adjustment in the Contract Price and/or time of performance. SUBCONTRACTOR shall not proceed with Work not set forth in Exhibit A until it has received a written change order or shall do so at its own risk. This paragraph shall not apply to ordinary field modifications which do not substantially increase SUBCONTRACTOR's cost of this Agreement and which will be performed without time or price adjustment.

CL 1144

A-000057

05/20/2004  13:13    5028922002          CREEDON CONTROLS                    PAGE  04

IV      SUBCONTRACTOR agrees to store all its equipment, materials, tools, and appliances in designated areas and shall be responsible for its safety and all risks of loss associated therewith.

V       SUBCONTRACTOR shall continuously maintain the project site free from all dirt, rubbish, debris and other waste materials, and shall daily collect and remove such items from the project site without unnecessary delay.

VI      SUBCONTRACTOR shall furnish sufficient forces to assure proper performance of the Work and to maintain proper and timely progress of its Work, both without additional compensation.  If, in the opinion of FEC, SUBCONTRACTOR fails to furnish such forces or maintain such progress, FEC, at its option, shall be entitled to terminate this Subcontract Agreement.

VII     SUBCONTRACTOR shall as an independent contractor of FEC, to the fullest extent permitted by law, to defend, indemnify and hold harmless FEC, Construction Manager, and Bank One, each of their respective officers, directors, partners, representatives, agents and employees against any and all damages, liabilities and costs, including reasonable attorneys' fees and all court costs, arising from the negligent acts of SUBCONTRACTOR, and its subcontractors, or anyone for whom SUBCONTRACTOR is legally liable in the performance of Work under this Subcontract Agreement, to the extent that SUBCONTRACTOR is responsible for such damages, liabilities and costs on a comparative basis of fault and responsibility between SUBCONTRACTOR and FEC or any other indemnitee herein. SUBCONTRACTOR shall not be obligated to indemnify FEC or any other indemnitee for the negligence of FEC or any other indemnitee.  Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

        To the fullest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless FEC, Construction Manager and Bank One, each of their respective officers, directors, partners and employees from and against any and all claims, suits, liens, judgments, damages, losses, costs and expenses incurred, including reasonable attorneys' fees, related to property damage and/or personal injury or death to employees of SUBCONTRACTOR, and/or employees of subcontractors of SUBCONTRACTOR, or for any third party to the extent arising from the negligent acts, omissions or default of the SUBCONTRACTOR, its employees, directors, officers, agents or subcontractors, or others for whom the SUBCONTRACTOR is legally liable. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

VIII    As part of the SUBCONTRACTOR's overall obligation to protect others and to defend and hold FEC harmless from all liability and costs the SUBCONTRACTOR shall obtain and maintain, at its expense, full and complete insurance coverage as may be specified in this Subcontract Agreement ("Exhibit B") and in the Contract Documents.  The insurance procurement requirement of this provision is consistent with and made part of the indemnification and hold harmless provision of this Subcontract Agreement.  FEC is not responsible to provide any protective services for the SUBCONTRACTOR's benefit and shall not be held liable for any loss or damage to SUBCONTRACTOR's Work, materials, tools or appliances.

IX      SUBCONTRACTOR may not assign or sublet this Subcontract Agreement, in whole or in part, without the prior written consent of FEC.

        Upon breach of any of the terms and/or conditions of this Subcontract Agreement or the Contract Documents or the insolvency of the SUBCONTRACTOR, FEC upon written notice to the SUBCONTRACTOR shall have the right, without terminating this Subcontract Agreement, to provide through itself or through others, any labor, materials, supplies, equipment, tools, plant, services, supervision and/or administration for the performance of the Work, or any portion thereof, and deduct the cost thereof from any money due or thereafter to become due to the SUBCONTRACTOR under the Subcontract Agreement. FEC also may, in its sole discretion, in addition to, or in lieu of the exercise of the aforesaid right, after written notice as aforesaid, terminate this Subcontract Agreement and the employment of the SUBCONTRACTOR and its right to proceed. In such event FEC may finish the Work by whatever method it may deem expedient and the SUBCONTRACTOR shall be liable to FEC for any excess cost incurred by FEC thereby, together with all other damages (including consequential damages) arising out of, under or in connection with the breach by SUBCONTRACTOR. In the event of default by SUBCONTRACTOR, FEC, in addition to the remedies set forth above, has the right of offset against any monies due the SUBCONTRACTOR at the time of default, or thereafter to become due in connection with this or any other project.

        If after termination of the Subcontract Agreement and the employment of the SUBCONTRACTOR, it is determined that the SUBCONTRACTOR was not in default, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of FEC pursuant to Article XX hereof.

2 of 5

CL 1145

A-000058

05/26/2004  13:13    3626522662    CREEDON CONTROLS    PAGE  85

XI     The SUBCONTRACTOR shall become entitled to receive progress payments for its Work duly performed during the payment periods as established in the Contract Documents and this Subcontract Agreement. To the extent permitted by law, it is specifically understood and agreed that payment to SUBCONTRACTOR is dependent on the condition precedent that FEC receives payment from Construction Manager and/or Owner for SUBCONTRACTOR's Work. SUBCONTRACTOR agrees to look solely to such funds for payment.

SUBCONTRACTOR must submit its requisition, in proper form, to FEC at least five (5) days prior to the requisition date set forth in the Contract Documents. The estimate of the principal amount as determined by FEC shall be binding on the SUBCONTRACTOR and progress payments shall not exceed ninety (90%) percent of the amount requisitioned by the SUBCONTRACTOR. Final payment shall become payable sixty (60) days after final completion and acceptance of the Work and receipt of payment by FEC from Construction Manager, including any retainers, which payment shall be a condition precedent to FEC's obligation to pay SUBCONTRACTOR. Prior to any payment SUBCONTRACTOR shall prove that its Work is free and clear from any and all liens and claims and shall furnish all required lien waivers and releases in connection with the final payment and all interim progress payments.

The terms, provisions and conditions of this Subcontract Agreement are not intended to nor shall they be construed as in anyway prohibiting, diminishing or abrogating SUBCONTRACTOR's right to file and enforce a mechanics' lien under the Lien Laws of the State in which the Project is located, and SUBCONTRACTOR shall be entitled to pursue any and all rights to which it may be entitled under such Lien Law in event FEC does not pay SUBCONTRACTOR amounts earned hereunder, including non-payment resulting from delayed payments or non-payment by third parties to FEC.

Acceptance of final payment by the SUBCONTRACTOR constitutes a general release of Owner, Construction Manager, FEC and its Surety, if any.

XII     SUBCONTRACTOR shall discharge any Notice of Lien or other encumbrance filed against the SUBCONTRACTOR, FEC, Construction Manager, Owner, the Project or any monies earned by the SUBCONTRACTOR or FEC, should such lien result from failure of SUBCONTRACTOR to pay its obligations.

XIII    The validity, interpretation and performance of this Subcontract Agreement shall be governed by the Laws of the State of Delaware and any judicial proceeding shall be brought in the County of New Castle and State of Delaware within two (2) years of the date the cause of action accrued, but in no event after final payment to the SUBCONTRACTOR. SUBCONTRACTOR agrees to participate in and be bound by any proceedings which directly or indirectly relates to this Subcontract Agreement (whether it be litigation, arbitration and/or mediation). No dispute or controversy shall interfere with the progress of construction and SUBCONTRACTOR shall proceed with the Work without causing interruption, deficiency or delay.

XIV     Time of performance is of the essence of this Subcontract Agreement and the SUBCONTRACTOR agrees that it will perform its Work in accordance with the Construction Schedule prepared from time to time by FEC or the Construction Manager and that it will not delay any of the work being performed by other contractors or subcontractors or the progress of the project including that of the Construction Manager or FEC. SUBCONTRACTOR agrees that it will be responsible for all damage(s) caused by its delay(s) during the course of the performance of its Work.

Should the SUBCONTRACTOR's Work be delayed, hindered, obstructed, interfered with, and/or accelerated by a cause or causes beyond the control of the SUBCONTRACTOR, the sole remedy available to the SUBCONTRACTOR shall be an equitable extension of time for the performance of its Work provided FEC is correspondingly entitled to such equitable extension of time from Owner or Construction Manager and under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price or to damages as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work.

XV      This Subcontract Agreement cannot be changed, modified or altered orally. It supersedes all prior representations made by FEC and is conditional upon the approval of the SUBCONTRACTOR by the Construction Manager and/or Owner. If any term or provision of this Agreement is found invalid, illegal or unenforceable, such term or provision shall be deemed severed from this Subcontract Agreement and it shall not affect the validity and enforcement of all remaining terms and conditions of this Subcontract Agreement.

XVI     The SUBCONTRACTOR shall be responsible and liable for all costs, disbursements and expenses, including attorney's fees, incurred by FEC as a result of FEC having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of the SUBCONTRACTOR, its employees, directors, officers, agents, or its subcontractors, suppliers or vendors.

3 of 5

CL 1146

A-000059

XVII    SUBCONTRACTOR shall maintain and preserve for a period of five (5) years after final payment under this Subcontract Agreement all records and accounts pertaining to Work performed for FEC. FEC shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such Work, and for five (5) years following completion of the Work, for the purpose of verifying units furnished and costs incurred, as applicable.

XVIII    SUBCONTRACTOR to submit a single guarantee stating that all portions of the Work are in accordance with contractual requirements. SUBCONTRACTOR guarantees all Work against faulty and improper material and workmanship for a period of one (1) year from date of final acceptance by the Owner, except that where guarantees or warranties for longer terms are specified herein or in the Contract Documents, such longer term shall apply. At no additional cost to Owner, Construction Manager or FEC, within twenty-four (24) hours after notification, SUBCONTRACTOR shall correct any deficiencies which occur during the guarantee period, all to the satisfaction of the Owner and/or Construction Manager.

XIX    SUBCONTRACTOR represents and warrants that any equipment, product, system, software, hardware or application of same ("Product") provided and/or installed is Year 2000 compliant (will function properly and without interruption before, during and after January 1, 2000) and that all data and files, enhancements, upgrades, customizations and modifications, shall accurately process date and time data, will be Year 2000 compliant. If it appears that any hardware or software or any other product, does not conform to this warranty, SUBCONTRACTOR shall within twenty-four (24) hours of receipt of notice, repair, replace or correct such non-conformity at SUBCONTRACTOR's sole expense and cost including but not limited to parts, labor, shipping, packaging, transportation and insurance.

SUBCONTRACTOR's liability hereunder shall extend to all damages proximately caused by the breach of any of the foregoing warranties and guarantees. SUBCONTRACTOR shall indemnify, defend and hold harmless FEC, from and against all claims, losses, damages, expenses and/or costs arising from SUBCONTRACTOR's breach of the aforesaid warranties and guarantees. This indemnification shall not be subject to any limitation of remedies which are contained in any agreement(s) or purchase order(s) between SUBCONTRACTOR and FEC, and shall survive the termination of any agreement(s) or purchase order(s) between said parties.

The failure of either SUBCONTRACTOR, or its' lower-tier subcontractors, suppliers or vendors, to use equipment, systems, software and hardware that in any way supports its ability to supply and/or install Products or otherwise perform it obligations under this Agreement shall not be considered as a Force Majeure event and shall not in any way relieve SUBCONTRACTOR from its duty to timely perform its obligations under this Agreement.

XX    FEC by written notice, shall have the right to cancel and terminate this Subcontract Agreement and the employment of SUBCONTRACTOR for its own convenience. In such event, FEC shall pay the SUBCONTRACTOR for the Work actually performed in an amount proportionate to the Contract Price, provided the SUBCONTRACTOR is not in default.

XXI    In the event Owner or Construction Manager becomes insolvent, files a petition for the benefit of creditors or enters into proceedings relating to bankruptcy, whether voluntary or involuntary, any and all payment obligations and liability to SUBCONTRACTOR from FEC shall end, and SUBCONTRACTOR's only remedies shall be a) filing a claim within the bankruptcy or other proceedings, or b) accepting a proportionate amount of FEC's claim or percentage thereof relating to SUBCONTRACTOR's Work under the bankruptcy or other proceedings or settlement, if any, or c) an apportioned percentage if FEC's claim is purchased by a third party.

XXII    SUBCONTRACTOR shall comply with all requirements relative to Equal Employment Opportunity and Affirmative Action Requirements. Further, SUBCONTRACTOR shall include said requirements in any subcontract or purchase order it has with any other party in such a manner so that said requirements will be binding upon those parties.

XXIII    No provision contained in this Subcontract Agreement shall create or give to third parties any claim or right of action against FEC, Construction Manager and/or Owner beyond such as may legally exist in the absence of any such provision.

XXIV    SUBCONTRACTOR agrees to maintain the confidentiality of all information and documentation as proprietary, confidential or otherwise restricted as to disclose such as, but not limited to, programs, codes, flow charts, logic diagrams, files and associated documentation, which are either the proprietary property of FEC or the property of others that are licensed, disclosed or entrusted to FEC. The obligations contained in this clause shall survive the expiration or termination of this Subcontract Agreement.

CL 1147

A-000060

03/26/2004  13:13   3026742002          CREEDON CONTROLS                    PAGE  07

XXV     It is the intent and understanding of the parties to this Subcontract Agreement that each and every provision of law required to be inserted in this Subcontract Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein, and if, through mistake or otherwise, any such provision is not inserted, or is not inserted in correct form, then this Subcontract Agreement shall forthwith upon the application of either party be amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder.

XXVI     In event of any conflict or ambiguity within the Contract Documents, this Subcontract Agreement shall take precedence and control.

XXVII     This Subcontract Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Subcontract Agreement to be drafted.

XXVIII     SUBCONTRACTOR must be properly licensed to perform the Work in the City, County and State in which the proposed Work is to be performed. SUBCONTRACTOR shall furnish and pay for all permits and licenses necessary to complete the Work and legal evidence of such shall be delivered to FEC.

XXIX     The parties agree that for the performance of its contractual obligations, SUBCONTRACTOR shall be an independent contractor and shall not be considered an agent or servant of FEC.

XXX     The individual executing this Subcontract Agreement on behalf of SUBCONTRACTOR personally certifies and warrants that by his or her execution hereof, this Subcontract Agreement shall be legally binding on and enforceable against SUBCONTRACTOR.

IN WITNESS WHEREOF the parties have executed this Subcontract Agreement on the day and year first above written.

Forest Electric Corp.

By:_____          By:_____
Name:                               Name:
Title:                              Title:

CL 1148

A-000061

03/28/2004  13:13  3026322002    CREEDON CONTROLS    PAGE  08

EXHIBIT "A"

SCOPE OF WORK

[DETAIL SCOPE OF WORK / LIST DRAWINGS]

All other terms and conditions as described in Forest Electric Corp.'s Contract with the Construction Manager are applicable.

SUBCONTRACTOR agrees that the Work specifically set forth in this Scope of Work document includes all other work incident or related thereto, reasonably necessary to its performance and usually performed by the trades.

The Work shall be performed in a skillful and workmanlike manner with new material, products and equipment of the usual quality for a job of this type.

SUBCONTRACTOR shall provide at its expense all supervision, tools, equipment, hoisting charges, elevator charges, heat, light, power, etc. to perform its own Work.

A-1        SUBCONTRACTOR'S INITIALS _____

CL 1149

A-000062

EXHIBIT "B"

INSURANCE REQUIREMENTS

Prior to inception of operations, SUBCONTRACTOR shall enroll into and comply with all aspects of the Owner Controlled Insurance Project (see attached OCIP Manual). SUBCONTRACTOR must provide evidence of off-site coverages, however in the event the SUBCONTRACTOR is not approved and enrolled into the OCIP, SUBCONTRACTOR must maintain the following insurance as a minimum, in addition to coverages outlined in the OCIP Manual.

| COVERAGE | LIMITS OF LIABILITY |
|---|---|
| Commercial General Liability | $10,000,000 per Occurrence/General Aggregate Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| | Coverage(s) shall provide and encompass at least the following: |
| | a. X, C and U hazards, where applicable. |
| | b. Independent Contractors. |
| | c. Blanket Contractual Liability covering all Indemnity Agreements. |
| | d. CGL coverage written on an occurrence form. |
| | e. Completed Operations/Products Liability with a two (2) year extension beyond completion and acceptance of the project. |
| | f. Broad Form Property Damage |
| | g. Person Injury Liability (A,B, & C) |
| Auto Liability | $1,000,000 per Occurrence Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| Workers Compensation/Employers Liability | As determined by Statute with other states endorsement and minimum Employers Liability Limits of $500,000 bodily injury each Accident; $500,000 bodily injury by disease -- policy limit; $500,000 bodily injury by disease -- each employee. |
| "All Risk" Property Insurance | Covering all material, equipment and supplies stored away from the Project site and while in due course of transit until actually delivered to the Project site and accepted, including installation. Subcontractor/vendor shall be responsible for all deductibles. Coverage shall not be less than $2,000,000 per Occurrence. |
| Pollution Liability Insurance | Limits of liability of $2,000,000 each claim and aggregate with a deductible no greater than $100,000 each claim. |
| ENDORSE AS ADDITIONAL INSUREDS: | Forest Electric Corp., EMCOR Group, Inc., Bank One Building Corporation, its parent and affiliates, directors, officers, representatives, agents and employees, Tishman Construction Corporation of Maryland, Tishman Construction Corporation, Gensler, EYP Mission Critical Facilities, Inc., and each of their respective parent companies, corporations and/or partnerships and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, directors, and employees of each and any other indemnitees as required by the contract documents. |
| The Certificate Holder shall be: | Forest Electric Corp. Two Penn Plaza New York, NY 10121 |

B-1 of 3

CL 1150

A-000063

05/26/2004  13:13    5026522002        CREEDON CONTROLS              PAGE  10

- The following Certificate Addendum is required to be executed and returned.

- Policies to be primary and non-contributory as respects the coverage afforded the additional insureds.  If subcontractor or vendor has other insurance that is applicable to the loss, it shall be on an excess basis. SUBCONTRACTOR's liability under any policy provided hereunder shall not be reduced by the existence of such other insurance.

- Certificate(s) of Insurance must provide for thirty (30) days written notice prior to cancellation, non-renewal or material modification of any policy to the Certificate Holder and ten (10) days written notice for non payment of premiums.  Such Certificate(s) of Insurance shall have the phrase "endeavor to" deleted.  Additionally, language attempting to waive the broker liability for failure to provide notice will not be permitted.

- The insurance policies must include a waiver of subrogation clause as follows:  "It is agreed that in no event will the insurance company have any right of recovery against any of the Additional Insureds".

- All insurance carriers must be licensed in the State where the Project is located and be rated at least A-VIII in Best's.

- SUBCONTRACTOR shall provide a copy of the Employer's First Report of Injury or its equivalent to Forest Electric Corp., attention Insurance Department, within ten (10) days of any injury or illness to any employee of the SUBCONTRACTOR arising out of, or alleged to have arisen out of or during the course of Work performed at the Project.

The SUBCONTRACTOR shall not sublet or subcontract any part of this Subcontract Agreement without assuming absolute responsibility for requiring similar insurance from its subcontractors, suppliers and vendors.

Failure of the SUBCONTRACTOR to maintain full and complete insurance may be deemed a material breach allowing Forest Electric Corp. to terminate this Subcontract Agreement, or to provide insurance at the SUBCONTRACTOR's sole expense; in neither case, however, shall the SUBCONTRACTOR's liability be lessened.

CL 1151

A-000064

**Certificate Addendum**     **(REQUIRED)** - Subcontractor's Agent or Broker must sign this Addendum <u>OR</u> incorporate items 1-6 below as part of the executed certificate of insurance. Note: If builders' risk / installation insurance is not required by the subcontract then item 4 need not be included.

Insured Subcontractor: _____

Certificate Holder: __Forest Electric Corp._____

Project Name and Number: _____

Date Certificate Issued: _____

*The following provisions are incorporated into and made a part of the Certificate of Insurance:*

1.    Additional Insureds
   Forest Electric Corp., EMCOR Group, Inc., all other parties so required by contract, and their respective directors, officers, representatives, agents and employees, are Additional Insureds on all policies except for Workers' Compensation, E&O / Professional Liability, Builder's Risk / Installation, and Contractor's Equipment. The required Additional Insured endorsement in the General Liability policy is ISO (Insurance Services Office) form CG20101185 or equivalent which includes ongoing and completed operations coverage. The General Liability policy shall <u>not</u> contain ISO form CG20101093 or equivalent, which excludes completed operations coverage.

2.    Primary and Non-Contributory
   All subcontractor insurance policies are primary and non-contributory in favor of Forest Electric Corp., Additional Insureds, Loss Payees and all other parties required by contract. The insurance of Forest Electric Corp., Additional Insureds, Loss Payees, all other parties so required by contract, and the insurance of their respective directors, officers, representatives, agents or employees, will not be called upon to contribute to any claims covered by the policies referenced in this certificate.

3.    Waiver of Subrogation
   All policies contain a waiver of subrogation in favor of Forest Electric Corp., EMCOR Group, Inc., Additional Insureds, Loss Payees, and all other entities so required by contract.

4.    Loss Payees
   Forest Electric Corp., EMCOR Group, Inc., and all other entities so required by contract, are Loss Payees with respect to the Builder's Risk / Installation Floater coverage.

5.    Umbrella Attachment
   The Excess (Umbrella) Liability policy attaches directly excess of the indicated primary General Liability, Products/Completed Operations Liability, Automobile Liability and Employers' Liability policies.

6.    Self-Insured Retentions ("SIR")
   All SIRs are fully disclosed on the Certificate of Insurance.

_____

Signature of authorized agent or broker

_____

Name and title (print)                    Date

B-3 of 3

CL 1152

A-000065

*Celebrating 15 Years*

*"Getting the job done right the first time."*

# Creedon Controls
## Electrical Contractors



**US Small Business Administration**

1997
SMALL BUSINESS
PERSON OF THE YEAR

Visit us at: www.creedoncontrols.com

8(a)/SDB Certified
WBE Certified
DOT DBE Certified
2002 *Entrepreneurial Woman of the Year*

Licensed DE, MD, PA & NJ

## FAX TRANSMITTAL

DATE: _____5/28/04_____

*11 rec'd*

No. of Pages __6__ (Including cover page)

TO: _____Dennis Link_____

COMPANY: _____Karden Construction Services Inc_____

FROM: _____Patricia Creedon_____

RE: _____Sample Subcontract_____

Please give us a call if you did not receive this properly.

### MESSAGE

Dennis - I am faxing you the sample subcontract in case you needed to satisfy your own curiosity, but I could not find any reference to payments being conditional upon executing the subcontract.

Have a good Memorial Day, complete your "honeydo" list and enjoy the shower.........
Pat

3424 Old Capitol Trail, Wilmington, DE 19808 *(302)892-2000 *Fax (302)892-2002

CL 1153

A-000066



**Forest Electric Corp.**

*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793
www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
<u>ATTN: Pat Creedon</u>

RE: Bank One Brandywine – CDC II
     General Lighting and Power – RFP 6B

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of $3,152,000.00 for electrical services, based on your Response to an Invitation to Bid – Best and Final Price; September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

Paul Angerame, VP
Vice President

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal council, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations.

Agreed to and Accepted By:

*Patricia Creedon* 10/15/03
Name: PATRICIA CREEDON
Title: PRESIDENT

*Datacom Services • Power Solutions • Technology • Facilities Management*

**FE 003282**

DEPOSITION
EXHIBIT
Creedon 12
5/22/06 JP

A-000067

Oct 07 03 09:39a    F   CDC 2                    302    -3396         P.2



**Forest Electric Corp.**
*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza  Floor 4
New York, NY 10121
Phone: 212.318.1500
Fax: 212.318.1753
www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
ATTN: Pat Creedon

RE:    Bank One Brandywine – CDC II
       General Lighting and Power – RFP 6B

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of $3,152,000.00 for electrical services, based on your Response to an Invitation to Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

Paul Angerame , VP
Vice President

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal council, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations

Agreed to and Accepted By:

Name:  PATRICIA CREEDON
Title:  PRESIDENT

*Datacom Services • Power Solutions • Technology • Facilities Management*

DEPOSITION EXHIBIT
Creedon 13
5/22/06  JP

000668

A-000068


## Forest Electric Corp.
*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121
Phone: 212.318.1500
Fax: 212.318.1793
www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
ATTN: Pat Creedon

RE:     Bank One Brandywine - CDC II
        General Lighting and Power – RFP 6B REVISED 10/31/03

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement
with Creedon Controls Electrical Contractors on the above referenced Project for a lump
sum of $3,184,600.00 for electrical services, based on your Response to an Invitation to
Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per
submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the
parties to begin Work and will endeavor to enter into and execute a definite Subcontract
Agreement defining the construction services which shall include, in addition to other
terms and conditions, customary representations, warranties, bonding, indemnities, and
insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the
terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract
Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

Paul Angerame
Vice President

Agreed to and Accepted By:

Name: PATRICIA CREEDON, 11/05/03
Title: PRESIDENT

DEPOSITION
EXHIBIT
Creedon 14
11/8/06

*Datacom Services • Power Solutions • Technology • Facilities Management*

FE 003284

A-000069

## BANK ONE- CDC-2, WILMINGTON, DELAWARE PROJECT
## INSURANCE COST IDENTIFICATION WORKSHEET

| Bank One CDC-2 |
|---|
| Form-2, Page 1 |

**CONTRACTOR INFORMATION**

Contractor: Creedon Controls Electrical Contractors ___ Indv ___ Ptshp ___ Corp X ___ J/V ___
Address: 3424 Old Capitol Trail, Wilmington, DE 19808 ___ FEIN: 51-0319803
Office Contact: Patricia Creedon ___ Phone: 302-892-2002 Fax: 302-892-2002 E-Mail: pcreedon@creedoncontrols.com
Site Contact: Rob Sharp ___ Phone: 302-892-2002 Fax: 302-892-2002 E-Mail: rsharp@creedoncontrols.com
Safety Contact: Charles K. Doble III ___ Phone: 302-892-2002 Fax: 302-892-2002 E-Mail: cdoble@creedoncontrols.com
Insurance Contact: Kristen Cerase ___ Phone: 302-892-2000 Fax: 302-892-2002 E-Mail: kcerase@creedoncontrols.com
Payroll Contact: Kristen Cerase ___ Phone: 302-892-2000 Fax: 302-892-2002 E-Mail: kcerase@creedoncontrols.com
Address (if different): ___ Phone: ___ Fax: ___ E-Mail: ___

**CONTRACT INFORMATION** ___ Contract Value: $ 3,152,000.00 ___ Contract/JOB #-
Job Name/Description: RFP 6AB - Lighting and Power
Awarding Contractor: Forrest Electric ___ Prime Contractor: ___
Start Date: 10/15/03 ___ Est Completion Date: 3/31/04 ___ % Self Performed 68 ___ $ 2,153,750.00 Est. Manhours 24,450
% Subcontracted 1 ___ Amount Subcontracted $ 44,500.00 ___ Est. # of Subcontractors 3

**CURRENT INSURANCE INFORMATION**
Required insurance coverages and limits are shown in the contract document, and the insurance manual. Information disclosed in this form is subject to audit and adjustment throughout the term of the construction project.
Contractor's Insurance Broker or Agent:
Company Name: New Castle Insurance ___ Contact: Larry Hahn
City/State/Zip: New Castle, DE 19720 ___ Phone: ( 302 ) 328-6111 ___ E-Mail: ___

**WORKERS' COMPENSATION**
Current WC Ins Co: Pennsylvania National Ins. ___ Policy Period: 7/3/03 - 12/28/03
Experience Modifier 1.00 ___ Rate Date 12/28 ___ Deductible N/A ___ Retention: N/A

### A. Workers' Compensation (Project Site Payroll Only)
Attach additional pages if required - Attach copy of declaration page and rate sheets for WC Policy

| | W.C. Classification | W.C. Code | W.C. Rate/ $100 Payroll | Estimated Payroll* | Premium |
|---|---|---|---|---|---|
| 1. | Electrical Contractor | 0661 | 6.33 | 700,000 | 44,310.00 |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |

| | | |
|---|---|---|
| Subtotal | | 44,310.00 |

* It is extremely important to accurately estimate payrolls anticipated for this contract. Payroll should be raw wages without burden, fringes, or overtime premium: but should include sick, vacation, holiday pay and imputed income.

| | |
|---|---|
| Increased Limit Factor | $ 45,152.00 |
| Experience Modifier | $ 1.00 |
| Discounts | $ 29,591.00 |
| Surcharges/Assessments | $ 230.00 |
| | $ 210.00 |

^ Although Deductible and Self-Retention Credits are to be identified, they will not be allowed, since these types of programs also require loss funding and claims handling charges. Please refer to the contract for how loss sensitive programs will be handled.

| Deductible Credit ^ OR Self Insured Retention | $ |
|---|---|
| | $ |

The OCIP provides first dollar coverage for all contractors. ___ Total WC Premium A $30,031.00

**FE 003285**

A-000070

BANK ONE-CDC-2, WILMINGTON, DELAWARE PROJECT
INSURANCE COST IDENTIFICATION WORKSHEET

| Bank One CDC-2 |
| Form-2, Page 2 |

Contractor: Creedon Controls Electrical Contractors
**GENERAL LIABILITY**
Current GL Ins Co: Pennsylvania National Ins.                Policy Period: 12/28/02 - 12/28/03
Current GL rate is based on: ☒ payroll or  ☐ receipts per ☐ $100 ☐ $1,000 or ☐
If GL is based other than Payroll/Receipts describe: N/A       Deductible: N/A   Retention: N/A

| A. Worker's Compensation | | (Total from page 1) | | A. $ | 30,031.00 |
|---|---|---|---|---|---|

**B. General Liability (Project Site Payroll/Receipts Only)**
Attach additional pages if required - Attach copy of Declaration page and Rating Sheets for GL Policy

| GL Classification | GL Code | GL Rate per basis shown above | Estimated Payroll*/Receipts | Premium | |
|---|---|---|---|---|---|
| 1. Elec. wiring within bldg. | 92479 | 12.88 | 700,000 | $ | 9,016.00 |
| 2. | | | | $ | |
| 3. | | | | $ | |
| 4. | | | | $ | |
| 5. Cost of Subcontracted Work | | | | $ | N/A |

| ^ Although Deductible and Self-Retention Credits are to be identified, they will not be allowed, since these types of programs also require loss funding.<br><br>Composite Rates must have rating sheets. Corporate Allocations are not allowed, must show documentation for actual rating. | Deductible Credit ^  $<br>OR<br>Self Insured<br>Retention     $ | |
|---|---|---|

| The OCIP provides first dollar coverage for all contractors | Total General Liability Premium | B. $ | 9,016.00 |
|---|---|---|---|

| C. Umbrella/Excess Liability | Rates: $1,000.00 per $1M | C. $ | 5,000.00 |
| Name of Insurer: Pennsylvania National Ins. | Term: 12/28/02 - 12/28/03 | | |
| Attach copy of declaration page and rating sheets for Umbrella/Excess policy | | | |

| D. Estimated Subcontractor Premiums (Attach Cost Identification Sheet for Each Subcontractor or calculate 5% of Subcontract value for each subcontractor's estimated insurance cost) | D. $ | N/A |
|---|---|---|

| E. TOTAL PREMIUMS (A + B + C + D)<br>"Total Premiums" indicated in E represent the amount of insurance premiums the contractor has identified in the bid amount since the Owner is furnishing the construction insurance. | E. $ | 44,047.00 |
|---|---|---|

**AGREEMENT**

The Sponsor of the OCIP, or their Agent, is granted permission by subcontractor to inspect the insurance and payroll records used in determining the above credit. The verified cost will be removed from subcontractor's contract by deductive change order. At completion of the Work, Sponsor's insurer shall audit the project payroll records of subcontractor and adjust contract amount for final audited insurance premiums in accordance with the audit provisions of the contract. Any and all returns of premiums, dividends, discounts or other adjustments to any OCIP policy is assigned, transferred and set over absolutely to Sponsor. This assignment is valid for insurance policies whose premiums have been paid by the Sponsor on behalf of such subcontractor.

Signed _Patricia Creedon_   Title President/CEO   Date 10/15/03
NO CERTIFICATES OF INSURANCE OR POLICIES WILL BE PROVIDED UNDER THE OCIP UNTIL THIS FORM AND
REQUIRED DOCUMENTATION ARE RECEIVED.

Send this Form to:   Willis              Phone: (312) 621-4727    FAX: (312) 621-6875
                     Attn: Cathy Juricic
                     10 S. LaSalle St., Suite 3000
                     Chicago, IL 60603

**FE 003286**

A-000071

| ACORD™ CERTIFICATE OF LIABILITY INSURANCE | Page 1 of 2 | DATE 08/18/2003 |
|---|---|---|

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

877-945-7378

Willis North America, Inc. - Regional Cert Center
26 Century Blvd.
P. O. Box 305191
Nashville, TN 372305191

| INSURED | INSURERS AFFORDING COVERAGE |
|---|---|

Bank One
300 S. Riverside Plaza
Chicago, IL 60606

| | |
|---|---|
| INSURER A: American Home Assurance Company | 19380-005 |
| INSURER B: American International Specialty Lines In 26883-001 | |
| INSURER C: St. Paul Fire & Marine Insurance Company | 21113-001 |
| INSURER D: Federal Insurance Company | 20281-001 |
| INSURER E: Royal Insurance Company of America (THRU | 26980-000 |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY  [X] COMMERCIAL GENERAL LIABILITY  CLAIMS MADE [X] OCCUR | 9332712 | 6/30/2003 | 1/30/2005 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50,000 |
| | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | AUTOMOBILE LIABILITY  ANY AUTO  ALL OWNED AUTOS  SCHEDULED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | HIRED AUTOS  NON-OWNED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY  ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ |
| B | EXCESS LIABILITY  [X] OCCUR [ ] CLAIMS MADE  [ ] DEDUCTIBLE  [ ] RETENTION $ | 7410580 | 6/30/2003 | 1/30/2005 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | 3622098 | 7/1/2003 | 7/1/2004 | [X] WC STATU- TORY LIMITS [ ] OTH- ER | |
| | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | OTHER | QI01200343 | 6/30/2003 | 1/30/2005 | $25,000,000 excess of $25,000,0000. | |
| D | Excess Liability | 79820197 | 6/30/2003 | 1/30/2005 | $25,000,000 excess of $50,000,0000. | |
| E | Excess Liability  Excess Liability | F2HA021607 | 6/30/2003 | 1/30/2005 | $25,000,000 excess of $75,000,0000. | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
RE: CDC-2 Project, 4001 Governor Printz Blvd., Wilmington Delaware (on site operations only)

Certificate Holder is a Named Insured on all policies effective 07/01/2003

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |

Forest Electric Corp
Two Penn Plaza, 4th Floor
New York, NY 10121

AUTHORIZED REPRESENTATIVE
_Karen S. Chambers_

| ACORD 25-S (7/97) | Coll:795326 Tpl:197797 Cert:3355352 | © ACORD CORPORATION 1988 |
|---|---|---|

FE 003287

A-000072

Page 2 of 2

## IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

ACORD 25-S (7/97)    Coll:795326  Tpl:197797  Cert:3355352

FE 003288

A-000073

| Form **W-9**<br>(Rev. January 2003)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

Name
**Creedon Controls Electrical Contractors**

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor   ☒ Corporation   ☐ Partnership   ☐ Other ► _ _ _ _ _    ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
**3424 Old Capitol Trail**

City, state, and ZIP code
**Wilmington, Delaware 19808**

Requester's name and address (optional)

List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note: If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number
| 5 | 1 | 0 | 3 | 1 | 9 | 8 | 0 | 3 |

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign<br>Here | Signature of<br>U.S. person ► *Patricia Creedon* | Date ► October 31, 2003 |
|---|---|---|

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester), and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Foreign person. If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

Nonresident alien who becomes a resident alien. Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X                                        Form **W-9** (Rev. 1-2003)

**FE 003289**

A-000074



**Forest Electric Corp.**

*An EMCOR Company*

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax 212.318.1793

www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capìtol Trail
Wilmington, DE 19808
<u>ATTN: Pat Creedon</u>

RE:    Bank One Brandywine - CDC II
       General Lighting and Power – RFP 6B **REVISED 10/31/03**

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of **$3,184,600.00** for electrical services, based on your Response to an Invitation to Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

Paul Angerame
Vice President

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal council, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations.

Agreed to and Accepted By:

Name: *PATRICIA CREEDON,* 11/05/03
Title: *PRESIDENT*

*Datacom Services • Power Solutions • Technology • Facilities Management*

DEPOSITION EXHIBIT
Creedon 15
5/3/06 JP

PENGAD 800-631-6989

000681

## SUBCONTRACT AGREEMENT

Date:                    September 18, 2003

Between:                 Forest Electric Corp. (FEC)
                         Two Penn Plaza
                         New York, NY 10121

                                    and

                         (SUBCONTRACTOR)

Forest Electric Corp. ("FEC") desires to engage SUBCONTRACTOR to perform certain Work, as set forth in the Scope of Work document ("Exhibit A") attached hereto, under FEC's Contract with Tishman Construction Corporation of Maryland ("Construction Manager"), the terms of which, along with all drawings, specifications and other documents associated therewith, are incorporated herein by reference, made a part hereof and which together with this Subcontract Agreement are collectively referred to as the "Contract Documents". The Project(s) are known as Bank One, Bear CDC I and Brandywine CDC II, located in the State of Delaware.

SUBCONTRACTOR agrees to perform such Work as set forth in Exhibit A and will provide and furnish all labor, materials, tools, supplies, equipment, plant, services, facilities, temporary facilities, supervision, administration and all other requirements necessary for the proper and complete performance of such Work in accordance with the Contract Documents. SUBCONTRACTOR agrees to perform the Work to the complete satisfaction of Owner, Construction Manager and FEC for the Contract Price set forth herein.

SUBCONTRACTOR agrees that the consideration to be paid to SUBCONTRACTOR for the performance of the Work will be 3,152,000 Dollars ($0.00) ("Contract Price"), which Contract Price includes: (i) the cost of all materials, equipment, tools, supplies, plant, facilities and temporary services used by SUBCONTRACTOR in connection with the Work; (ii) all labor, services, supervision and administration required by SUBCONTRACTOR to complete the Work; (iii) all sales and use taxes, fees, contributions, etc. which may be imposed therein; (iv) the cost of all required insurance; and (v) the costs of an acceptable performance and payment bonds for one hundred percent (100%) of the Contract Price. The Contract Price is firm and not subject to escalation. Payments to be made in accordance with the payment schedule and subject to the terms, provisions and conditions of this Subcontract Agreement and all of the Contract Documents. *prime Contract?*

I        SUBCONTRACTOR represents that it has examined or has been given the opportunity to examine (1) the site of the Work; and (2) all contractual documents associated herewith, has found no conflicts between the various documents and is familiar with the Work to be performed and the site upon which the Work will be performed and acknowledges that no conditions exist which would affect the progress, performance or price of this Agreement. SUBCONTRACTOR agrees to be bound and obligated to FEC as FEC is bound and obligated to Construction Manager and/or Owner under its Contract as to the Work provided hereunder. *IF SUCH CONFLICTS EXIST, THIS DOCUMENT SHALL PREVAIL*

II       All work, labor, services and materials to be furnished, supplied or performed by the SUBCONTRACTOR (Work) must strictly comply with all Federal, State, Local, Municipal, as well as any and all other governing jurisdictions and authorities' Laws, Rules, Regulations, Statutes, Ordinances, and Directives. SUBCONTRACTOR shall comply with all safety and health laws and codes, including, but not limited to, OSHA rules and regulations and all Hazardous Communications Programs required under such laws and codes.

III      FEC may, without notice to SUBCONTRACTOR's surety, make changes including the omission of Work and may order the performance of other work by a written change order. Any adjustment to the Contract Price or the time in which the Work is to be completed will be specifically set forth in the change order and if not SUBCONTRACTOR shall not be entitled to any adjustment in the Contract Price and/or time of performance. SUBCONTRACTOR shall not proceed with Work not set forth in Exhibit A until it has received a written change order or shall do so at its own risk. This paragraph shall not apply to ordinary field modifications which do not substantially increase SUBCONTRACTOR's cost of this Agreement and which will be performed without time or price adjustment.

1 of 5

A-000076

IV    SUBCONTRACTOR agrees to store all its equipment, materials, tools, and appliances in designated areas and shall be responsible for its safety and all risks of loss associated therewith.

· V    SUBCONTRACTOR shall continuously maintain the project site free from all dirt, rubbish, debris and other waste materials, and shall daily collect and remove such items from the project site without unnecessary delay.

·VI    SUBCONTRACTOR shall furnish sufficient forces to assure proper performance of the Work and to maintain proper and timely progress of its Work, both without additional compensation. If, in the opinion of FEC, SUBCONTRACTOR fails to furnish such forces or maintain such progress, FEC, at its option, shall be entitled to terminate this Subcontract Agreement.

VII    SUBCONTRACTOR shall as an independent contractor of FEC, to the fullest extent permitted by law, to defend, indemnify and hold harmless FEC, Construction Manager, and Bank One, each of their respective officers, directors, partners, representatives, agents and employees against any and all damages, liabilities and costs, including reasonable attorneys' fees and all court costs, arising from the negligent acts of SUBCONTRACTOR, and its subcontractors, or anyone for whom SUBCONTRACTOR is legally liable in the performance of Work under this Subcontract Agreement, to the extent that SUBCONTRACTOR is responsible for such damages, liabilities and costs on a comparative basis of fault and responsibility between SUBCONTRACTOR and FEC or any other indemnitee herein. SUBCONTRACTOR shall not be obligated to indemnify FEC or any other indemnitee for the negligence of FEC or any other indemnitee. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

    To the fullest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless FEC, Construction Manager and Bank One, each of their respective officers, directors, partners and employees from and against any and all claims, suits, liens, judgments, damages, losses, costs and expenses incurred, including reasonable attorneys' fees, related to property damage and/or personal injury or death to employees of SUBCONTRACTOR, and/or employees of subcontractors of SUBCONTRACTOR, and/or any third party to the extent arising from the negligent acts, omissions or default of the SUBCONTRACTOR, its employees, directors, officers, agents or subcontractors, or others for whom the SUBCONTRACTOR is legally liable. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

VIII    As part of the SUBCONTRACTOR's overall obligation to protect others and to defend and hold FEC harmless from all liability and costs the SUBCONTRACTOR shall obtain and maintain, at its expense, full and complete insurance coverage as may be specified in this Subcontract Agreement ("Exhibit B") and in the Contract Documents. The insurance procurement requirement of this provision is consistent with and made part of the indemnification and hold harmless provision of this Subcontract Agreement. FEC is not responsible to provide any protective services for the SUBCONTRACTOR's benefit and shall not be held liable for any loss or damage to SUBCONTRACTOR's Work, materials, tools or appliances.

IX    SUBCONTRACTOR may not assign or sublet this Subcontract Agreement, in whole or in part, without the prior written consent of FEC. ·

    Upon breach of any of the terms and/or conditions of this Subcontract Agreement or the Contract Documents or the insolvency of the SUBCONTRACTOR, FEC upon written notice to the SUBCONTRACTOR shall have the right, without terminating this Subcontract Agreement, to provide through itself or through others, any labor, materials, supplies, equipment, tools, plant, services, supervision and/or administration for the performance of the Work, or any portion thereof, and deduct the cost thereof from any money due or thereafter to become due to the SUBCONTRACTOR under the Subcontract Agreement. FEC also may, in its sole discretion, in addition to, or in lieu of the exercise of the aforesaid right, after written notice as aforesaid, terminate this Subcontract Agreement and the employment of the SUBCONTRACTOR and its right to proceed. In such event FEC may finish the Work by whatever method it may deem expedient and the SUBCONTRACTOR shall be liable to FEC for any excess cost incurred by FEC thereby, together with all other damages (including consequential damages) arising out of, under or in connection with the breach by SUBCONTRACTOR. In the event of default by SUBCONTRACTOR, FEC, in addition to the remedies set forth above, has the right of offset against any monies due the SUBCONTRACTOR at the time of default, or thereafter to become due in connection with this or any other project.

    If after termination of the Subcontract Agreement and the employment of the SUBCONTRACTOR, it is determined that the SUBCONTRACTOR was not in default, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of FEC pursuant to Article XX hereof.

000683

A-000077

XI    The SUBCONTRACTOR shall become entitled to receive progress payments for its Work duly performed during the payment periods as established in the Contract Documents and this Subcontract Agreement. To the extent permitted by law, it is specifically understood and agreed that payment to SUBCONTRACTOR is dependent on the condition precedent that FEC receives payment from Construction Manager and/or Owner for SUBCONTRACTOR's Work. SUBCONTRACTOR agrees to look solely to such funds for payment.

SUBCONTRACTOR must submit its requisition, in proper form, to FEC at least five (5) days prior to the requisition date set forth in the Contract Documents. The estimate of the principal amount as determined by FEC shall be binding on the SUBCONTRACTOR and progress payments shall not exceed ninety (90%) percent of the amount requisitioned by the SUBCONTRACTOR. Final payment shall become payable sixty (60) days after final completion and acceptance of the Work and receipt of payment by FEC from Construction Manager, including any retainers, which payment shall be a condition precedent to FEC's obligation to pay SUBCONTRACTOR. Prior to any payment SUBCONTRACTOR shall prove that its Work is free and clear from any and all liens and claims and shall furnish all required lien waivers and releases in connection with the final payment and all interim progress payments.

The terms, provisions and conditions of this Subcontract Agreement are not intended to nor shall they be construed as in anyway prohibiting, diminishing or abrogating SUBCONTRACTOR's right to file and enforce a mechanics' lien under the Lien Laws of the State in which the Project is located, and SUBCONTRACTOR shall be entitled to pursue any and all rights to which it may be entitled under such Lien Law in event FEC does not pay SUBCONTRACTOR amounts earned hereunder, including non-payment resulting from delayed payments or non-payment by third parties to FEC.

Acceptance of final payment by the SUBCONTRACTOR constitutes a general release of Owner, Construction Manager, FEC and its Surety, if any.

XII    SUBCONTRACTOR shall discharge any Notice of Lien or other encumbrance filed against the SUBCONTRACTOR, FEC, Construction Manager, Owner, the Project or any monies earned by the SUBCONTRACTOR or FEC, should such lien result from failure of SUBCONTRACTOR to pay its obligations.

XIII    The validity, interpretation and performance of this Subcontract Agreement shall be governed by the Laws of the State of Delaware and any judicial proceeding shall be brought in the County of New Castle and State of Delaware within two (2) years of the date the cause of action accrued, but in no event after final payment to the SUBCONTRACTOR. SUBCONTRACTOR agrees to participate in and be bound by any proceedings which directly or indirectly relates to this Subcontract Agreement (whether it be litigation, arbitration and/or mediation). No dispute or controversy shall interfere with the progress of construction and SUBCONTRACTOR shall proceed with the Work without causing interruption, deficiency or delay.

XIV    Time of performance is of the essence of this Subcontract Agreement and the SUBCONTRACTOR agrees that it will perform its Work in accordance with the Construction Schedule prepared from time to time by FEC or the Construction Manager and that it will not delay any of the work being performed by other contractors or subcontractors or the progress of the project including that of the Construction Manager or FEC. SUBCONTRACTOR agrees that it will be responsible for all damage(s) caused by its delay(s) during the course of the performance of its Work.

Should the SUBCONTRACTOR's Work be delayed, hindered, obstructed, interfered with, and/or accelerated by a cause or causes beyond the control of the SUBCONTRACTOR, the sole remedy available to the SUBCONTRACTOR shall be an equitable extension of time for the performance of its Work, provided FEC is correspondingly entitled to such equitable extension of time from Owner or Construction Manager and, under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price or to damages as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work.

XV    This Subcontract Agreement cannot be changed, modified or altered orally. It supersedes all prior representations made by FEC and is conditional upon the approval of the SUBCONTRACTOR by the Construction Manager and/or Owner. If any term or provision of this Agreement is found invalid, illegal or unenforceable, such term or provision shall be deemed severed from this Subcontract Agreement and it shall not affect the validity and enforcement of all remaining terms and conditions of this Subcontract Agreement.

XVI    The SUBCONTRACTOR shall be responsible and liable for all costs, disbursements and expenses, including attorney's fees, incurred by FEC as a result of FEC having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of the SUBCONTRACTOR, its employees, directors, officers, agents, or its subcontractors, suppliers or vendors.

A-000078

XVII    SUBCONTRACTOR shall maintain and preserve for a period of five (5) years after final payment under this Subcontract Agreement all records and accounts pertaining to Work performed for FEC. FEC shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such Work, and for five (5) years following completion of the Work, for the purpose of verifying units furnished and costs incurred, as applicable.

XVIII    SUBCONTRACTOR to submit a single guarantee stating that all portions of the Work are in accordance with contractual requirements. SUBCONTRACTOR guarantees all Work against faulty and improper material and workmanship for a period of one (1) year from date of final acceptance by the Owner, except that where guarantees or warranties for longer terms are specified herein or in the Contract Documents, such longer term shall apply. At no additional cost to Owner, Construction Manager or FEC, within twenty-four (24) hours after notification, SUBCONTRACTOR shall correct any deficiencies which occur during the guarantee period, all to the satisfaction of the Owner and/or Construction Manager.

XIX    SUBCONTRACTOR represents and warrants that any equipment, product, system, software, hardware or application of same ("Product") provided and/or installed is Year 2000 compliant (will function properly and without interruption before, during and after January 1, 2000) and that all data and files, enhancements, upgrades, customizations and modifications, shall accurately process date and time data. will be Year 2000 compliant. If it appears that any hardware or software or any other product, does not conform to this warranty, SUBCONTRACTOR shall within twenty-four (24) hours of receipt of notice, repair, replace or correct such non-conformity at SUBCONTRACTOR's sole expense and cost including but not limited to parts, labor, shipping, packaging, transportation and insurance.

SUBCONTRACTOR's liability hereunder shall extend to all damages proximately caused by the breach of any of the foregoing warranties and guarantees. SUBCONTRACTOR shall indemnify, defend and hold harmless FEC, from and against all claims, losses, damages, expenses and/or costs arising from SUBCONTRACTOR's breach of the aforesaid warranties and guarantees. This indemnification shall not be subject to any limitation of remedies which are contained in any agreement(s) or purchase order(s) between SUBCONTRACTOR and FEC, and shall survive the termination of any agreement(s) or purchase order(s) between said parties.

The failure of either SUBCONTRACTOR, or its' lower-tier subcontractors, suppliers or vendors, to use equipment, systems, software and hardware that in any way supports its ability to supply and/or install Products or otherwise perform it obligations under this Agreement shall not be considered as a Force Majeure event and shall not in any way relieve SUBCONTRACTOR from its duty to timely perform its obligations under this Agreement.

XX    FEC by written notice, shall have the right to cancel and terminate this Subcontract Agreement and the employment of SUBCONTRACTOR for its own convenience. In such event, FEC shall pay the SUBCONTRACTOR for the Work actually performed in an amount proportionate to the Contract Price, provided the SUBCONTRACTOR is not in default.

XXI    In the event Owner or Construction Manager becomes insolvent, files a petition for the benefit of creditors or enters into proceedings relating to bankruptcy, whether voluntary or involuntary, any and all payment obligations and liability to SUBCONTRACTOR from FEC shall end, and SUBCONTRACTOR's only remedies will be a) filing a claim within the bankruptcy or other proceedings, or b) accepting a proportionate amount of FEC's claim or percentage thereof relating to SUBCONTRACTOR's Work under the bankruptcy or other proceedings or settlement, if any, or c) an apportioned percentage of if.FEC's claim is purchased by a third party.

XXII    SUBCONTRACTOR shall comply with all requirements relative to Equal Employment Opportunity and Affirmative Action Requirements. Further, SUBCONTRACTOR shall include said requirements in any subcontract or purchase order it has with any other party in such a manner so that said requirements will be binding upon those parties.

XXIII    No provision contained in this Subcontract Agreement shall create or give to third parties any claim or right of action against FEC, Construction Manager and/or Owner beyond such as may legally exist in the absence of any such provision.

XXIV    SUBCONTRACTOR agrees to maintain the confidentiality of all information and documentation as proprietary, confidential or otherwise restricted as to disclose such as, but not limited to, programs, codes, flow charts, logic diagrams, files and associated documentation, which are either the proprietary property of FEC or the property of others that are licensed, disclosed or entrusted to FEC. The obligations contained in this clause shall survive the expiration or termination of this Subcontract Agreement.

A-000079

XXV    It is the intent and understanding of the parties to this Subcontract Agreement that each and every provision of law required to be inserted in this Subcontract Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein, and if, through mistake or otherwise, any such provision is not inserted, or is not inserted in correct form, then this Subcontract Agreement shall forthwith upon the application of either party be amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder.

XXVI    In event of any conflict or ambiguity within the Contract Documents, this Subcontract Agreement shall take precedence and control.

XXVII    This Subcontract Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Subcontract Agreement to be drafted.

XXVIII    SUBCONTRACTOR must be properly licensed to perform the Work in the City, County and State in which the proposed Work is to be performed. SUBCONTRACTOR shall furnish and pay for all permits and licenses necessary to complete the Work and legal evidence of such shall be delivered to FEC.

XXIX    The parties agree that for the performance of its contractual obligations, SUBCONTRACTOR shall be an independent contractor and shall not be considered an agent or servant of FEC.

XXX    The individual executing this Subcontract Agreement on behalf of SUBCONTRACTOR personally certifies and warrants that by his or her execution hereof, this Subcontract Agreement shall be legally binding on and enforceable against SUBCONTRACTOR.

IN WITNESS WHEREOF the parties have executed this Subcontract Agreement on the day and year first above written.

Forest Electric Corp.

By:_____       By:_____
Name:                             Name:
Title:                            Title:

A-000080

EXHIBIT "A"

SCOPE OF WORK

[DETAIL SCOPE OF WORK / LIST DRAWINGS]

All other terms and conditions as described in Forest Electric Corp.'s Contract with the Construction Manager are applicable.

SUBCONTRACTOR agrees that the Work specifically set forth in this Scope of Work document includes all other work incident or related thereto, reasonably necessary to its performance and usually performed by the trades.

The Work shall be performed in a skillful and workmanlike manner with new material, products and equipment of the usual quality for a job of this type.

SUBCONTRACTOR shall provide at its expense all supervision, tools, equipment, hoisting charges, elevator charges, heat, light, power, etc. to perform its own Work.

A-1          SUBCONTRACTOR'S INITIALS_____ _____

000687

A-000081

## EXHIBIT "B"

### INSURANCE REQUIREMENTS

Prior to inception of operations, SUBCONTRACTOR shall enroll into and comply with all aspects of the Owner Controlled Insurance Project (see attached OCIP Manual). SUBCONTRACTOR must provide evidence of off-site coverages, however in the event the SUBCONTRACTOR is not approved and enrolled into the OCIP SUBCONTRACTOR must maintain the following insurance as a minimum, in addition to coverages outlined in the OCIP Manual.

| COVERAGE | LIMITS OF LIABILITY |
|---|---|
| Commercial General Liability | $10,000,000 per Occurrence/General Aggregate Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| | Coverage(s) shall provide and encompass at least the following: |
| | a. X, C and U hazards, where applicable. <br> b. Independent Contractors. <br> c. Blanket Contractual Liability covering all Indemnity Agreements. <br> d. CGL coverage written on an occurrence form. <br> e. Completed Operations/Products Liability with a two (2) year extension beyond completion and acceptance of the project. <br> f. Broad Form Property Damage <br> g. Person Injury Liability (A,B, & C) |
| Auto Liability | $1,000,000 per Occurrence Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| Workers Compensation/Employers Liability | As determined by Statute with other states endorsement and minimum Employers Liability Limits of $500,000 bodily injury each Accident; $500,000 bodily injury by disease – policy limit; $500,000 bodily injury by disease – each employee. |
| "All Risk" Property Insurance | Covering all material, equipment and supplies stored away from the Project site and while in due course of transit until actually delivered to the Project site and accepted, including installation. Subcontractor/vendor shall be responsible for all deductibles. Coverage shall not be less than $2,000,000 per Occurrence. |
| Pollution Liability Insurance | Limits of liability of $2,000,000 each claim and aggregate with a deductible no greater than $100,000 each claim. |
| ENDORSE AS ADDITIONAL INSUREDS: | Forest Electric Corp., EMCOR Group, Inc., Bank One Building Corporation, its parent and affiliates, directors, officers, representatives, agents and employees, Tishman Construction Corporation of Maryland, Tishman Construction Corporation, Gensler, EYP Mission Critical Facilities, Inc., and each of their respective parent companies, corporations and/or partnerships and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, directors, and employees of each and any other indemnitees as required by the contract documents. |
| The Certificate Holder shall be: | Forest Electric Corp. <br> Two Penn Plaza <br> New York, NY 10121 |

B-1 of 3

000688

A-000082

* The following Certificate Addendum is required to be executed and returned.

* Policies to be primary and non-contributory as respects the coverage afforded the additional insureds. If subcontractor or vendor has other insurance that is applicable to the loss, it shall be on an excess basis. SUBCONTRACTOR's liability under any policy provided hereunder shall not be reduced by the existence of such other insurance.

* Certificate(s) of Insurance must provide for thirty (30) days written notice prior to cancellation, non-renewal or material modification of any policy to the Certificate Holder and ten (10) days written notice for non payment of premiums. Such Certificate(s) of Insurance shall have the phrase "endeavor to" deleted. Additionally, language attempting to waive the broker liability for failure to provide notice will not be permitted.

* The insurance policies must include a waiver of subrogation clause as follows: "It is agreed that in no event will the insurance company have any right of recovery against any of the Additional Insureds".

* All insurance carriers must be licensed in the State where the Project is located and be rated at least A-VIII in Best's.

* SUBCONTRACTOR shall provide a copy of the Employer's First Report of Injury or its equivalent to Forest Electric Corp., attention Insurance Department, within ten (10) days of any injury or illness to any employee of the SUBCONTRACTOR arising out of, or alleged to have arisen out of or during the course of Work performed at the Project.

The SUBCONTRACTOR shall not sublet or subcontract any part of this Subcontract Agreement without assuming absolute responsibility for requiring similar insurance from its subcontractors, suppliers and vendors.

Failure of the SUBCONTRACTOR to maintain full and complete insurance may be deemed a material breach allowing Forest Electric Corp. to terminate this Subcontract Agreement, or to provide insurance at the SUBCONTRACTOR's sole expense; in neither case, however, shall the SUBCONTRACTOR's liability be lessened.

B-2 of 3

000689

A-000083

<u>Certificate Addendum</u>    **(REQUIRED) -** Subcontractor's Agent or Broker must sign this Addendum <u>OR</u> incorporate items 1-6 below as part of the executed certificate of insurance. Note: If builders' risk / installation insurance is not required by the subcontract then item 4 need not be included.

Insured Subcontractor: _____

Certificate Holder:  _Forest Electric Corp._____

Project Name and Number: _____

Date Certificate Issued: _____

*The following provisions are incorporated into and made a part of the Certificate of Insurance:*

1.    **Additional Insureds**
Forest Electric Corp., EMCOR Group, Inc., all other parties so required by contract, and their respective directors, officers, representatives, agents and employees, are Additional Insureds on all policies except for Workers' Compensation, E&O / Professional Liability, Builder's Risk / Installation, and Contractor's Equipment. The required Additional Insured endorsement in the General Liability policy is ISO (Insurance Services Office) form CG20101185 or equivalent which includes ongoing <u>and</u> completed operations coverage. The General Liability policy shall <u>not</u> contain ISO form CG20101093 or equivalent, which excludes completed operations coverage.

2.    **Primary and Non-Contributory**
All subcontractor insurance policies are primary and non-contributory in favor of Forest Electric Corp., Additional Insureds, Loss Payees and all other parties required by contract. The insurance of Forest Electric Corp., Additional Insureds, Loss Payees, all other parties so required by contract, and the insurance of their respective directors, officers, representatives, agents or employees, will not be called upon to contribute to any claims covered by the policies referenced in this certificate.

3.    **Waiver of Subrogation**
All policies contain a waiver of subrogation in favor of Forest Electric Corp., EMCOR Group, Inc., Additional Insureds, Loss Payees, and all other entities so required by contract.

4.    **Loss Payees**
Forest Electric Corp., EMCOR Group, Inc., and all other entities so required by contract, are Loss Payees with respect to the Builder's Risk / Installation Floater coverage.

5.    **Umbrella Attachment**
The Excess (Umbrella) Liability policy attaches directly excess of the indicated primary General Liability, Products/Completed Operations Liability, Automobile Liability and Employers' Liability policies.

6.    **Self-Insured Retentions ("SIR")**
All SIRs are fully disclosed on the Certificate of Insurance.

_____

Signature of authorized agent or broker

_____

Name and title (print)                    Date

B-3 of 3

000690

A-000084



Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

May 4, 2004

Patricia Creedon
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

RE:    Bank One – CDC-2
       RFP 6B General Lighting & Power
       RFP 21B IT Cable Conveyance System - Pod A

Dear Ms. Creedon

Enclosed are five (5) copies of a Single Project Construction Services Agreement for the above referenced projects.

Please have an officer of your company sign all five copies for each project and return them to our office as soon as possible. A fully executed copy will then be returned to you.

Should you have any questions, please do not hesitate to contact your undersigned.

Very truly yours,

FOREST ELECTRIC CORP.

Donna M. Lucas
Senior Legal Assistant

cc:    P. Angerame

DEPOSITION
EXHIBIT
PENGAD 800-631-6989
Creedon 16
5/18/06 JP

Datacom Services • Power Solutions • Technology • Facilities Management

006113

A-000085

**SINGLE PROJECT**
**CONSTRUCTION SERVICES AGREEMENT**
**CONTRACT NO. 6B**

Pre-bid meetings will/will not be held. If applicable, the pre-bid meeting will occur at ———— A.M./P.M. on ——————————, at CDC #2 – Governor Printz Blvd. Brandywine, DE 19802.

When completed, return five (5) executed copies of this Single Project Construction Services Agreement if by U.S. mail addressed to Owner c/o Forest Electric Corp., Two Penn Plaza, NY, NY 10121 Mail Code ——————— ———————————————; if hand delivered to Owner c/o ——————— ——————————————————————— Floor, ———————————————— in each case for receipt by Owner by or before 3:00 P.M. on ———————.

Owner:
Banc One Building Corporation
1 Bank One Plaza
Mail Code IL1-0505
Chicago, IL 60670-0503

Owner's Project Manager:
Karl Wm. Auwarter, VP, Real Estate

Building Owner/Manager: None

Site:
Bank One Core Data Center #2
4001 Governor Printz Blvd.
Wilmington, Delaware 19802
—————————————————————
—————————————————————
—————————————————————

Construction Manager:
Tishman Construction Corporation of Maryland
666 Fifth Avenue
New York, New York 10103-0256

Electrical Trade Manager:
Forest Electric Corp.
Two Penn Plaza
New York, NY 10121

Construction Contractor:
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808
—————————————————————
—————————————————————

Construction Contractor's Key Staff Members:
Superintendent: ———————————————
Assistant Superintendent: ———————————

Other Key Staff:
| Title | Name: |
| --- | --- |
| ——————: | ——————————— |
| ——————: | ——————————— |
| ——————: | ——————————— |
| ——————: | ——————————— |

Construction Contractor's Authorized Signatories:
1. ———————————————————
2. ———————————————————
3. ———————————————————
4. ———————————————————

This Single Project Construction Services Agreement is made as of the 2nd day of October, 2003 ("Agreement") between Electrical Trade Manager and Construction Contractor. This Agreement, including all exhibits attached hereto, together with all drawings, specifications and modifications issued after the execution of this Agreement and delivered to Construction Contractor, are herein called the "Contract" and the "Contract Documents". Electrical Trade Manager and Construction Contractor agree to the terms and conditions set forth in the Contract Documents.

i

006114

A-000086

1.   The project ("Project") consists generally of, and a general description of the Work is (and, if applicable, a more detailed description of the Work is set forth on Exhibit C), as follows: _____
     _____Electrical Work as per RFP 6B – General Lighting & Power_____
     _____
     _____

2.   Construction Contractor acknowledges it received the plans and specifications that are listed on, and, as applicable, a more detailed description of the Work as set forth on, Exhibit C hereto.

3.   Construction Contractor's obligations under this Agreement will/will not (strike through one) require payment and performance bonds as set forth in Section 6.04 of the General Conditions attached hereto as Exhibit G ("General Conditions"). If no selection is clearly made in the preceding sentence, then payment and performance bonds will be required as set forth in Section 6.04 of the General Conditions.

4.   Liquidated damages will/will not (strike through one) be applicable to the Project as set forth in Section 7.03 of the General Conditions. If required, the "Per Day Liquidated Damage Amount" is $5,000 per day.

5.   The "Contract Sum" is Three Million One Hundred Fifty-Two Thousand Dollars ($3,152,000.00). The Contract Sum (subject to additions and deductions by change orders as provided by the Contract Documents) includes all costs and expenses related to the Work incurred by or on behalf of Construction Contractor and any costs or expenses in excess of the Contract Sum in anyway related to the Work or the Contract Documents shall be paid by Construction Contractor. Additionally, upon final completion of the Work at the time of the final payment being made to Construction Contractor, all costs associated with unused allowances and contingencies will be adjusted and returned to the Owner.

6.   Written notice shall be deemed to be duly served if served to the Electrical Trade Manager or Construction Contractor, as the case may be, at the respective address set forth below in accordance with Section 6.03 of the General Conditions:

| If to Construction Manager, addressed to:<br>Tishman Construction Corporation of<br>Maryland<br>666 Fifth Avenue<br>New York, New York 10103-0256<br>Attention: William Stanton | If to Construction Contractor, addressed to:<br>Creedon Controls, Inc.<br>3424 Old Capital Trail<br>Wilmington, DE 19808<br><br>Attention: |
|---|---|
| With a copy to Owner:<br><br>Bank One<br>301 N. Walnut Street<br>Wilmington, DE 19801<br><br>Attention: Karl Auwarter | If to Electrical Trade Manager, addressed to:<br><br>Forest Electric Corp.<br>Two Penn Plaza<br>New York, New York 10121<br>Attention: Philip Altheim |
| With a copy to:<br><br>Forest Electric Corp.<br>4001 Governor Printz Blvd.<br>Wilmington, DE 19802<br><br>Attention: Paul Angerame | |

2

006115

A-000087

7.  Electrical Trade Manager hereby represents to Construction Contractor that (i) Owner has retained Electrical Trade Manager to act as Owner's construction managers to arrange for the construction of the Project; and (ii) Electrical Trade Manager has full power and authority and is duly authorized to execute and deliver this Contract with and to Construction Contractor upon the terms and conditions set forth herein.    All communications from Owner to Construction Contractor shall be delivered either (i) to Electrical Trade Manager with instructions to forward such communications to Construction Contractor, or (ii) directly to Construction Contractor with a simultaneous notification to Electrical Trade Manager. All written approvals and actions required of or permitted to be taken by Owner under the Contract shall be effective if executed by either Owner or by Electrical Trade Manager acting on Owner's behalf, and Construction Contractor shall be permitted to rely on all such written approvals unless and until Owner (and not Electrical Trade Manager) notifies Construction Contractor in writing to the contrary. Construction Contractor shall be entitled to rely on information communicated through the Electrical Trade Manager and work with the Electrical Trade Manager until Owner provides written notice of the termination of such Electrical Trade Manager's responsibilities or a substitution of such Electrical Trade Manager.

This Agreement shall be effective only when (i) Electrical Trade Manager executes and delivers this Single Project Construction Services Agreement to Construction Contractor, (ii) all appropriate blanks contained herein are completed, and (iii) each of the Exhibits A, B, C, D, E, F, G and H (each of which is hereby incorporated herein) has been completed and attached hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

CONSTRUCTION CONTRACTOR:

FIRM:   CREEDON CONTROLS, INC.


By: _____

Name: _____

Title: _____

OWNER:

BANC ONE BUILDING CORPORATION,
an Illinois Corporation

By:      Forest Electric Corp. as Banc One Building
          Corporation's agent and Electrical Trade
          Manager.

          By: _____

          Name: Philip Altheim _____

          Title: Chairman/CEO _____

006116

A-000088

## LIST OF EXHIBITS
## TO
## SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT

EXHIBIT A    COMPLETION SCHEDULE

EXHIBIT B    SCHEDULE OF VALUES AND ANTICIPATED DRAW SCHEDULE

EXHIBIT C    PLANS AND SPECIFICATIONS

EXHIBIT D    WORK AREA

EXHIBIT E    MAXIMUM CHANGE ORDER RATES FOR OVERHEAD, PROFIT, CONTRACTOR'S FEE, AND GENERAL CONDITIONS

EXHIBIT F    RATES AND UNIT PRICES

EXHIBIT G    GENERAL CONDITIONS TO SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT

EXHIBIT H    FOREST ELECTRIC RFP 6B BEST AND FINAL PRICE

4

006117

A-000089

EXHIBIT A

COMPLETION SCHEDULE

**Project Completion Date – September 15, 2004**

006118

A-000090

## EXHIBIT B

## SCHEDULE OF VALUES AND ANTICIPATED DRAW SCHEDULE

Note:   These schedules must specifically separate out the Cost of the Work, and Construction Contractor's Fee.

006119

A-000091

## EXHIBIT C

## PLANS AND SPECIFICATIONS

Attached Rider "B", List of Drawings and Specifications dated July 14, 2003 and all bulletins and addenda issued thereafter.  Refer also to RFP 6B.

006120

A-000092

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| **CIVIL** | | |
| C-201 | General Development Plan - Cover Sheet | April 30, 2003 |
| C-202 | Lines and Grades Plan | April 30, 2003 |
| C-203 | Lines and Grades Plan | April 30, 2003 |
| C-204 | Erosion and Sediment Control Plan | April 30, 2003 |
| C-205 | Erosion and Sediment Control Plan | April 30, 2003 |
| C-206 | Construction Details | April 30, 2003 |
| C-207 | Construction Details | April 30, 2003 |
| C-208 | Construction Details | April 30, 2003 |
| C-209 | Construction Details | April 30, 2003 |
| C-210 | Construction Details and Notes | April 30, 2003 |
| C-301 | Entrance/Exit Plan | |
| C-302 | Entrance/Exit Plan | July 14, 2003 |
| C-303 | Entrance/Exit Plan | July 14, 2003 |
| C-304 | Entrance/Exit Plan | July 14, 2003 |
| C-401 | Fire Marshall Plan | April 30, 2003 |
| C-501 | Sanitary Sewer Construction Plan | |
| C-502 | Sanitary Sewer Construction Plan | |
| C-503 | Sanitary Sewer Construction Plan | |
| | **LANDSCAPE** | |
| L101 | Planting and Seeding Plan | April 30, 2003 |
| L102 | Planting and Seeding Plan | April 30, 2003 |
| | **ARCHITECTURAL** | |
| A00.00 | Drawing Index, Vicinity Map, Location Map & Project Information | July 14, 2003 |
| A00.01 | Graphic Symbols and Abbreviations | July 14, 2003 |
| A00.20 | Overall Egress Plan and Occupancy Information | July 14, 2003 |
| A00.50 | Site Plan | July 14, 2003 |
| A00.51 | Enlarged Site Plans | July 14, 2003 |
| A00.52 | Site Elevations and Details | July 14, 2003 |
| A01.01 | Overall Slab Plan | June 11, 2003 |
| A01.02 | Overall Shell Construction Plan | July 14, 2003 |
| A01.03 | Overall Interior Construction Plan | July 14, 2003 |
| A01.04 | Overall Roof Plan | June 11, 2003 |
| A01.05 | Overall Roof Equipment Plan | June 11, 2003 |
| A02.01.1 | First Floor Slab Plan - Area A | July 14, 2003 |
| A02.01.2 | First Floor Slab Plan - Area B | July 14, 2003 |
| A02.01.3 | First Floor Slab Plan - Administration Area | July 14, 2003 |
| A02.02.1 | First Floor Shell Construction Plan - Area A | June 11, 2003 |
| A02.02.2 | First Floor Shell Construction Plan - Area B | July 14, 2003 |
| A02.02.3 | First Floor Shell Construction Plan - Administration Area | July 14, 2003 |
| A02.03.1 | First Floor Interior Construction Plan - Area A | July 14, 2003 |
| A02.03.2 | First Floor Interior Construction Plan - Area B | July 14, 2003 |
| A02.03.3 | First Floor Interior Construction Plan - Administration Area | July 14, 2003 |
| A02.04.1 | Roof Plan - Area A | July 14, 2003 |
| A02.04.2 | Roof Plan - Area B | July 14, 2003 |
| A02.04.3 | Roof Plan - Administration Area | July 14, 2003 |
| A02.05.1 | Roof Equipment Plan - Area A | July 14, 2003 |
| A02.05.2 | Roof Equipment Plan - Area B | July 14, 2003 |
| A02.05.3 | Roof Equipment Plan - Administration Area | June 11, 2003 |
| A02.10 | Enlarged Generator Plans | July 14, 2003 |
| A03.01 | Enlarged Power & Communication Plans | July 14, 2003 |
| A04.01 | Enlarged Reflected Ceiling Plans | July 14, 2003 |
| A05.00.1 | Room Finish Schedule & Finish Schedule | July 14, 2003 |
| A05.01 | Enlarged Finish Plans | July 14, 2003 |
| A06.01 | Enlarged Furniture Plans | July 14, 2003 |
| A08.00 | Enlarged Toilet Room Plans | July 14, 2003 |
| A08.10 | Enlarged Vestibule Plans, Elevations, & Details | July 14, 2003 |
| A09.00 | Exterior Building Elevations | July 14, 2003 |
| A09.10 | Building Sections | July 14, 2003 |
| A09.11 | Building Sections | July 14, 2003 |
| A09.20 | Enlarged Exterior Elevations-Administration Area | July 14, 2003 |
| A09.21 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.22 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.23 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.24 | Enlarged Exterior Elevations | June 11, 2003 |
| A09.30 | Wall Sections | July 14, 2003 |
| A09.31 | Wall Sections | July 14, 2003 |
| A09.32 | Wall Sections - Administration Area | July 14, 2003 |
| A10.00 | Stair #1 - Plans & Sections | July 14, 2003 |
| A10.01 | Stair #2 - Plans & Sections | July 14, 2003 |

006121

Page 1 of 8

A-000093

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| A11.00 | Interior Elevations | July 14, 2003 |
| A11.01 | Interior Elevations | July 14, 2003 |
| A11.02 | Interior Elevations | July 14, 2003 |
| A11.10 | Interior Elevations - Toilet Rooms | July 14, 2003 |
| A11.11 | Interior Elevations-Break & Service Counters, Admin. Areas | July 14, 2003 |
| A11.12 | Interior Elevations | July 14, 2003 |
| A12.00 | Foundation Details | June 11, 2003 |
| A12.01 | Precast Concrete Panel Types | July 14, 2003 |
| A12.02 | Precast Concrete Panel Details | July 14, 2003 |
| A12.03 | Metal Panel & Curtain Wall Sectional Details - Administration Area | July 14, 2003 |
| A12.04 | Metal Panel & Curtain Wall Plan Details - Administration Area | July 14, 2003 |
| A12.10 | Exterior Details - Generator Shaft - North | July 14, 2003 |
| A12.11 | Exterior Details - Generator Shaft - South | July 14, 2003 |
| A12.12 | Expansion Joint Details | July 14, 2003 |
| A12.13 | Expansion Joint Details | July 14, 2003 |
| A12.20 | Roof Details | July 14, 2003 |
| A12.21 | Roof Details - Administration Area | July 14, 2003 |
| A13.00 | Partition Types | July 14, 2003 |
| A13.01 | Partition Types & Details | July 14, 2003 |
| A13.20 | Door Schedule | July 14, 2003 |
| A13.30 | Door Types & Door Details | July 14, 2003 |
| A13.31 | Door Details | July 14, 2003 |
| A13.40 | Millwork Details | July 14, 2003 |
| A13.50 | Ceiling Details | July 14, 2003 |
| A13.60 | Raised Floor Details & Misc. Details | July 14, 2003 |
| | **STRUCTURAL** | |
| S00.00 | General Notes | June 11, 2003 |
| S01.01.1 | Foundation Plan - Area A | July 14, 2003 |
| S01.01.2 | Foundation Plan - Area B | July 14, 2003 |
| S01.01.3 | Foundation Plan - Area C | July 14, 2003 |
| S01.02.1 | Roof Framing Plan - Area A | July 14, 2003 |
| S01.02.2 | Roof Framing Plan - Area B | July 14, 2003 |
| S01.02.3 | Roof Framing Plan - Area C | July 14, 2003 |
| S02.00 | Foundation Details | July 14, 2003 |
| S02.01 | Foundation Details | June 11, 2003 |
| S02.02 | Foundation Details | June 11, 2003 |
| S02.03 | Retaining Wall Plan and Details | June 11, 2003 |
| S03.00 | Steel Column Schedule and Details | June 11, 2003 |
| S03.01 | Steel Bracing Elevations | July 14, 2003 |
| S03.02 | Bracing Details | June 11, 2003 |
| S03.03 | Typical Steel Details | June 11, 2003 |
| S03.04 | Typical Composite Details | June 11, 2003 |
| S03.05 | Steel Details | June 11, 2003 |
| S03.06 | Steel Details | June 11, 2003 |
| S05.00 | Masonry Details | June 11, 2003 |
| S05.01 | Masonry Details | June 11, 2003 |
| | **MECHANICAL DRAWINGS** | |
| M001 | Legends, Abbreviations & Symbols | July 14, 2003 |
| M101-A | Floor Plan - Ductwork - Part A | July 14, 2003 |
| M101-B | Floor Plan - Ductwork - Part B | July 14, 2003 |
| M101-C | Floor Plan - Ductwork - Part C (Admin) | July 14, 2003 |
| M102-A | Roof Plan - Part A | July 14, 2003 |
| M102-B | Roof Plan - Part B | July 14, 2003 |
| M102-C | Roof Plan - Part C (Admin) | July 14, 2003 |
| M201-A | Floor Plan - Piping - Part A | July 14, 2003 |
| M201-B | Floor Plan - Piping - Part B | July 14, 2003 |
| M301 | Part. Plan Chiller Room A | July 14, 2003 |
| M302 | Part. Plan Chiller Room B | July 14, 2003 |
| M303 | Part. Plan Cooling Towers & Sections | July 14, 2003 |
| M304 | Under Floor Piping Details | July 14, 2003 |
| M305 | Part. Plan Fan Room #1 | July 14, 2003 |
| M306 | Part. Plan Fan Room #2 | July 14, 2003 |
| M307 | Part. Plan Generator Room | July 14, 2003 |
| M308 | Chiller Room Sections | July 14, 2003 |
| M401 | Chilled & Condenser Water Piping Flow Diagrams | July 14, 2003 |
| M402 | Air Flow Schematics - 1 | July 14, 2003 |
| M403 | Air Flow Schematics - 2 | July 14, 2003 |
| M404 | Motor Control Centers | July 14, 2003 |
| M405 | Wiring Diagrams | July 14, 2003 |
| M50? | | |

006122

Page 2 of 8

A-000094

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| M502 | Ductwork Details - 2 | July 14, 2003 |
| M503 | Piping Details - 1 | July 14, 2003 |
| M504 | Piping Details - 2 | July 14, 2003 |
| M601 | HVAC Equipment Schedules - 1 | July 14, 2003 |
| M602 | HVAC Equipment Schedules - 2 | July 14, 2003 |
| M603 | HVAC Equipment Schedules - 3 | July 14, 2003 |
| M604 | HVAC Equipment Schedules - 4 | July 14, 2003 |
| M605 | HVAC Equipment Schedules - 5 | July 14, 2003 |
| M700 | HVAC Control Points | July 14, 2003 |
| M701 | HVAC Control - Module Riser | July 14, 2003 |
| M702 | HVAC Control Points List - 1 | July 14, 2003 |
| M703 | HVAC Control Points List - 2 | July 14, 2003 |
| M704 | HVAC Control Points List - 3 | July 14, 2003 |
| M705 | HVAC Control Points List - 4 | July 14, 2003 |
| M706 | HVAC Control Points List - 5 | July 14, 2003 |
| M707 | HVAC Control Points List - 6 | July 14, 2003 |
| M708 | HVAC Control Points List - 7 | July 14, 2003 |
| M709 | HVAC Control Points List - 8 | July 14, 2003 |
| M710 | HVAC Control Points List - 9 | July 14, 2003 |
| M711 | HVAC Control Points List - 10 | July 14, 2003 |
| M712 | HVAC Control Points List - 11 | July 14, 2003 |
| M713 | HVAC Control Points List - 12 | July 14, 2003 |
| M714 | HVAC Control Points List - 13 | July 14, 2003 |
| | **PLUMBING** | |
| P001 | Symbol List, General Notes, Schedules and Details | June 11, 2003 |
| P100A | Underground Floor Plan - Part A | July 14, 2003 |
| P100B | Underground Floor Plan - Part B | May 23, 2003 |
| P100C | Underground Floor Plan - Part C | July 14, 2003 |
| P101-A | Floor Plan - Part A | June 11, 2003 |
| P101-B | Floor Plan - Part B | July 14, 2003 |
| P101-C | Floor Plan - Part C | July 14, 2003 |
| P102-A | Roof Plan - Part A | July 14, 2003 |
| P102-B | Roof Plan - Part B | July 14, 2003 |
| P102-C | Roof Plan - Part C | June 11, 2003 |
| P201 | Partial Underground Floor Plan | May 23, 2003 |
| P202 | Partial Underground Floor Plans | July 14, 2003 |
| P203 | Partial Floor Plan | July 14, 2003 |
| P204 | Partial Floor Plan | July 14, 2003 |
| P301 | Water Storage Tank Detail | July 14, 2003 |
| P302 | Sanitary Riser Diagram | July 14, 2003 |
| P303 | Sanitary Riser Diagram | July 14, 2003 |
| P304 | Domestic Water Riser Diagram | July 14, 2003 |
| | **FIRE PROTECTION DRAWINGS** | |
| FP001 | Symbol List, General Notes, Schedules and Details | July 14, 2003 |
| FP101-A | Floor Plan - Part A | July 14, 2003 |
| FP101-B | Floor Plan - Part B | July 14, 2003 |
| FP101-C | Floor Plan - Part C | July 14, 2003 |
| FP201 | Partial Floor Plans and Details | July 14, 2003 |
| | **ELECTRICAL** | |
| E001 | Abbreviations and Symbol List | May 23, 2003 |
| E002 | General Notes and Lighting Fixture Schedule | July 14, 2003 |
| ES001 | Electrical Site Plan | May 23, 2003 |
| E101-A | Lighting Floor Plan - Part A | July 14, 2003 |
| E101-B | Lighting Floor Plan - Part B | July 14, 2003 |
| E101-C | Lighting Floor Plan - Part C | July 14, 2003 |
| E101-D | Lighting Floor Plan - Part D | July 14, 2003 |
| E101-E | Lighting Floor Plan - Part E | July 14, 2003 |
| E101-F | Lighting Floor Plan - Part F | July 14, 2003 |
| E101-G | Lighting Floor Plan - Part G | July 14, 2003 |
| E101-H | Lighting Floor Plan - Part H (Admin. Area) | July 14, 2003 |
| E102 | Lighting Site Plan | July 14, 2003 |
| E202-A | Power Floor Plan - Part A | May 23, 2003 |
| E202-B | Power Floor Plan - Part B | May 23, 2003 |
| E202-C | Power Floor Plan - Part C | May 23, 2003 |
| E202-D | Power Floor Plan - Part D | May 23, 2003 |
| E202-E | Power Floor Plan - Part E | May 23, 2003 |
| E202-F | Power Floor Plan - Part F | May 23, 2003 |
| E202-G | Power Floor Plan - Part G | May 23, 2003 |
| E203-A | Power Floor Plan-RPP's, Receptacles and Phones Part A | July 14, 2003 |

006123

A-000095

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| E203-C | Power Floor Plan-RPP's, Receptacles and Phones Part-C | July 14, 2003 |
| E203-D | Power Floor Plan-RPP's, Receptacles and Phones Part-D | July 14, 2003 |
| E203-E | Power Floor Plan-RPP's, Receptacles and Phones Part-E | July 14, 2003 |
| E203-F | Power Floor Plan-RPP's, Receptacles and Phones Part-F | July 14, 2003 |
| E203-G | Power Floor Plan-RPP's, Receptacles and Phones Part-G | July 14, 2003 |
| E203-H | Power Floor Plan-RPP's, Receptacles and Phones Part-H-Admin Area | July 14, 2003 |
| E204-A | Power & Lighting Roof Plan-Part-A | July 14, 2003 |
| E204-B | Power & Lighting Roof Plan-Part-B | July 14, 2003 |
| E204-C | Power & Lighting Roof Plan-Part-C | July 14, 2003 |
| E302-A | Underground Grounding Plan - Part A | July 14, 2003 |
| E302-B | Underground Grounding Plan - Part B | July 14, 2003 |
| E302-C | Underground Grounding Plan - Part C (Admin. Area) | July 14, 2003 |
| E303-A | Lightning Protection Roof Plan-Part A | July 14, 2003 |
| E303-B | Lightning Protection Roof Plan-Part B | July 14, 2003 |
| E303-C | Lightning Protection Roof Plan-Part-C - Admin Area | July 14, 2003 |
| E304-A | Fire Alarm Floor Plan-Part A | July 14, 2003 |
| E304-B | Fire Alarm Floor Plan-Part B | July 14, 2003 |
| E304-C | Fire Alarm Floor Plan-Part C (Admin) | July 14, 2003 |
| E305-A | ASSD Floor Plan-Part A | July 14, 2003 |
| E305-B | ASSD Floor Plan-Part B | July 14, 2003 |
| E306-A | Power Underground Conduit Layout Plan - Part A | May 23, 2003 |
| E306-B | Power Underground Conduit Layout Plan - Part B | May 23, 2003 |
| E307-A | Telecom, Control, Electrical Power Monitoring, Underground Conduit Systems Plan - Part A | May 23, 2003 |
| E307-B | Telecom, Control, Electrical Power Monitoring, Underground Conduit Systems Plan - Part B | May 23, 2003 |
| E308-A | EPMS and BMS Lan Cable Plan - Part A | July 14, 2003 |
| E308-B | EPMS and BMS Lan Cable Plan - Part B | July 14, 2003 |
| E401-A | Main One Line Diagram | May 23, 2003 |
| E401-B | Distribution One Line Diagram - Computer Substations 1A, 1B, 2A, 2B, MLBA & MLBB | May 23, 2003 |
| E401-C | Distribution One Line Diagram - Computer Substations 3A, 3B, 4A & 4B | May 23, 2003 |
| E401-E | Distribution One Line Diagram - Mechanical Substations 1A and 1B | May 23, 2003 |
| E401-F | Distribution One Line Diagram - Mechanical Substations 2A and 2B | May 23, 2003 |
| E401-H | Distribution One Line Diagram - Critical Output Distribution Switchgear 1A and 1B | May 23, 2003 |
| E401-I | Distribution One Line Diagram - Critical Output Distribution Switchgear 2A and 2B | May 23, 2003 |
| E401-J | Distribution One Line Diagram - Critical Output Distribution Switchgear 3A and 3B | May 23, 2003 |
| E401-K | Distribution One Line Diagram - Critical Output Distribution Switchgear 4A and 4B | May 23, 2003 |
| E402 | Part One Line Diagrams for Kirk Key and Synch. Check Relaying | July 14, 2003 |
| E403 | 12KV Distribution Switchgear "MD-A" & "MD-B" Relay Diagrams | July 14, 2003 |
| E404 | Generator Switchgear and Generator Relay Diagrams | July 14, 2003 |
| E405-A | EMPS Typical for 43.5KV, 13.8kV A & B MV CB | July 14, 2003 |
| E405-B | EPMS Main Distribution Switchgear 1 | July 14, 2003 |
| E405-C | EPMS Main Distribution Switchgear 2 | July 14, 2003 |
| E405-D | EPMS Diesel Generator | July 14, 2003 |
| E405-E | EPMS Diesel Generator Switchgear | July 14, 2003 |
| E405-F | EPMS Computer Substation Side A & B | July 14, 2003 |
| E405-G | EPMS Mechanical Substation Side A & B | July 14, 2003 |
| E405-H | EPMS Loadbank Substation A & B | July 14, 2003 |
| E405-I | EPMS UPS & SSC Output Switchgear | July 14, 2003 |
| E405-J | EPMS Critical Output Distribution Switchgear | July 14, 2003 |
| E405-K | EPMS All Critical Output  Switchgear | July 14, 2003 |
| E405-L | EPMS UPS MB A & B | July 14, 2003 |
| E405-M | RPP | July 14, 2003 |
| E406-A | EPMS Screen Flow and Summary Description | July 14, 2003 |
| E406-B | EPMS #1 Screen Name List | July 14, 2003 |
| E406-C | EPMS #2 Screen Name List | July 14, 2003 |
| E406-D | EPMS #3 Screen Name List | July 14, 2003 |
| E406-E | EPMS #4 Screen Name List | July 14, 2003 |
| E407-A | EPMS System Cabling and Details | July 14, 2003 |
| E407-B | EPMS & BMS Lan Details | July 14, 2003 |
| E408 | EPMS GPS System Diagrams | July 14, 2003 |
| E409 | Control Block Diagram | July 14, 2003 |
| E410 | Control Wiring Block Diagram | July 14, 2003 |
| E411-A | EPO Diagram-Data Center 'A' and Generator Rooms 1A and 1B | July 14, 2003 |
| E411-B | EPO Diagram-Data Center 'B' and Generator Rooms 2A and 2B | July 14, 2003 |
| E412 | 125VDC Battery System | July 14, 2003 |
| E422 | Fire Alarm and ASSD System Connection Diagram and Mounting Details | July 14, 2003 |
| E501 | Lighting Panel Schedules | July 14, 2003 |
| E502-A | UPS Receptacle Panel Schedules | July 14, 2003 |
| E502-B | UPS Receptacle Panel Schedules | July 14, 2003 |
| E503 | Receptacle Panel Schedules | July 14, 2003 |
| E504-A | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-B | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-C | Mechanical Equipment Panel Schedules | July 14, 2003 |
| E504-D | Mechanical Equipment Panel Schedules | July 14, 2003 |

Page 4 of 8

006124

A-000096

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| E505-A | PP Panel Schedules | July 14, 2003 |
| E505-B | PP Panel Schedules | July 14, 2003 |
| E506 | Miscellaneous Mechanical Loads | July 14, 2003 |
| E507-A | DC "A" Panel Schedules | July 14, 2003 |
| E507-B | DC "B" Panel Schedules | July 14, 2003 |
| E601 | Grounding Details Part 1 | May 23, 2003 |
| E602 | Grounding Details Part 2 | May 23, 2003 |
| E603 | Lighting Control Panel Schedules and Details | |
| E604 | Smoke Detection and Fire Alarm Details | July 14, 2003 |
| E605 | Lighting Details | July 14, 2003 |
| E606 | Lightning Protection Details | July 14, 2003 |
| E607 | Power Underground Conduit Sections and Details | May 23, 2003 |
| E610 | Switchgear Elevations | July 14, 2003 |
| E611 | Switchgear Elevations | July 14, 2003 |
| E612 | Electrical Details | July 14, 2003 |
| E613 | Underfloor Receptacle Details | July 14, 2003 |
| | | |
| | SECURITY DRAWINGS | |
| SE001 | Security Symbols, Drawing List and Notes | May 23, 2003 |
| SE101-A | Floor Security Plan - Part A | May 23, 2003 |
| SE101-B | Floor Security Plan - Part B | May 23, 2003 |
| SE101-C | Security Floor Plan - Part C - Admin. Area & Site Gate Security Part Plan | May 23, 2003 |
| SE401 | Security Block Diagrams & Riser Diagram | July 14, 2003 |
| SE601 | Security System Details Sheet #1 | July 14, 2003 |
| SE602 | Security System Details Sheet #2 | July 14, 2003 |
| | | |
| | FUEL OIL | |
| F101 | Part Site and Generator Room Plan - Gen. Rms 1A and 2A | May 23, 2003 |
| F102 | Part Site and Generator Room Plan - Gen. Rms 1B and 2B | May 23, 2003 |
| F103 | Part Plans and Sections | July 14, 2003 |
| F401 | Fuel Oil Flow Diagram - Gen. Rms 1A and 1B | April 30, 2003 |
| F402 | Fuel Oil Flow Diagram - Gen. Rms 2A and 2B | April 30, 2003 |
| F403 | Fuel Oil System Connection Diagrams | April 30, 2003 |
| F404 | Fuel Oil System Monitoring System | April 30, 2003 |
| F405 | Fuel Oil Control Diagram | July 14, 2003 |
| F501 | Underground Fuel Oil Storage Tank Details | April 30, 2003 |
| F502 | Details | April 30, 2003 |
| | | |
| DIVISION 1 | GENERAL REQUIREMENTS | |
| 01100 | Summary | April 18, 2003 |
| 01140 | Work Restrictions | April 18, 2003 |
| 01210 | Allowances | April 18, 2003 |
| 01250 | Contract Modification Procedures | April 18, 2003 |
| 01270 | Unit Prices | April 18, 2003 |
| 01290 | Payment Procedures | April 18, 2003 |
| 01310 | Project Management And Coordination | April 18, 2003 |
| 01320 | Construction Progress Documentation | April 18, 2003 |
| 01330 | Submittal Procedures | April 18, 2003 |
| 01331 | Coordination Drawings CAD Waiver | April 18, 2003 |
| 01400 | Quality Requirements | April 18, 2003 |
| 01420 | References | April 18, 2003 |
| 01500 | Temporary Facilities And Controls | April 18, 2003 |
| 01600 | Product Requirements Substitution Request | April 18, 2003 |
| 01700 | Execution Requirements | April 18, 2003 |
| 01731 | Cutting And Patching | April 18, 2003 |
| 01770 | Closeout Procedures | April 18, 2003 |
| 01771 | Final Cleaning | June 11, 2003 |
| | | |
| DIVISION 2 | SITE CONSTRUCTION | |
| 02100 | Site Preparation | April 18, 2003 |
| 02200 | Site Excavation, Filling and Grading | April 18, 2003 |
| 02270 | Temporary Erosion and Sediment Control Measures | April 18, 2003 |
| 02271 | RIPRAP | April 30, 2003 |
| 02430 | Catch Basins | April 30, 2003 |
| 02464 | Topsoiling | April 30, 2003 |
| 02488 | Fertilizing and Seeding | April 30, 2003 |
| 02489 | Mulching | April 30, 2003 |
| 02490 | Sodding | April 30, 2003 |
| 02492 | Watering | April 30, 2003 |
| 02504 | Pavement Milling | April 30, 2003 |
| 02510 | Concrete Sidewalks | April 30, 2003 |
| 02511 | Seal Coat | April 30, 2003 |

Page 5 of 8

006125

A-000097

**Bank One Core Data Center II**
**Brandywine, Delaware**
**List of Drawings and Specifications**

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| 02513 | Bituminous Concrete Paving, Hot-Mixed | April 30, 2003 |
| 02514 | Adjusting and Repairing Existing Catch Basins and Manholes | April 30, 2003 |
| 02520 | Portland Cement Concrete Paving | April 30, 2003 |
| 02528 | Concrete Curb | April 30, 2003 |
| 02579 | Pavement Markings | April 30, 2003 |
| 02605 | Manholes | April 30, 2003 |
| 02610 | Reinforced Concrete Pipe/HDPE | April 30, 2003 |
| 02612 | PVC Sanitary Sewer and Pipe Fittings | April 30, 2003 |
| 02620 | Subdrainage | April 30, 2003 |
| 02622 | PVC Storm Sewer Pipe and Fittings | April 30, 2003 |
| 02665 | Ductile Iron Pipe and Fittings | April 30, 2003 |
| 02668 | Water Valves and Valve Boxes | April 30, 2003 |
| 02659 | Standard Fire Hydrant | April 30, 2003 |
| 02721 | Junction Boxes | April 30, 2003 |
| 02900 | General Planting | April 30, 2003 |
| 02910 | Topsoil and Seeding | April 30, 2003 |
| | | |
| **DIVISION 3** | **CONCRETE** | |
| 03100 | Concrete Formwork | April 30, 2003 |
| 03200 | Concrete Reinforcement and Embedded Assemblies | April 30, 2003 |
| 03300 | Concrete | April 30, 2003 |
| 03450 | Plant-Precast Architectural Concrete | May 7, 2003 |
| | | |
| **DIVISION 4** | **MASONRY** | |
| 04820 | Unit Masonry Assemblies | June 11, 2003 |
| | | |
| **DIVISION 5** | **METALS** | |
| 05120 | Structural Steel | May 7, 2003 |
| 05300 | Metal Deck | May 7, 2003 |
| 05511 | Metal Stairs | June 11, 2003 |
| 05521 | Exterior Pipe and Tube Railings | June 11, 2003 |
| 05811 | Architectural Joint Systems | June 11, 2003 |
| | | |
| **DIVISION 6** | **WOOD & PLASTICS** | |
| 06105 | Miscellaneous Carpentry | July 14, 2003 |
| | | |
| **DIVISION 7** | **THERMAL AND MOISTURE PROTECTION** | |
| 07115 | Bituminous Dampproofing | June 11, 2003 |
| 07210 | Building Insulation | June 11, 2003 |
| 07412 | Metal Wall Panels | June 11, 2003 |
| 07552 | SBS-Modified Bituminous Membrane Roofing | June 11, 2003 |
| 07620 | Sheet Metal Flashing and Trim | June 11, 2003 |
| 07716 | Roof Expansion Assemblies | June 11, 2003 |
| 07720 | Roof Accessories | June 11, 2003 |
| 07841 | Through-Penetration Firestop Systems | April 30, 2003 |
| 07900 | Joint Sealers | April 30, 2003 |
| 07920 | Joint Sealants | June 11, 2003 |
| | | |
| **DIVISION 8** | **DOORS AND WINDOWS** | |
| 08111 | Steel Doors and Frames | June 11, 2003 |
| 08125 | Interior Aluminum Frames | July 14, 2003 |
| 08211 | Flush Wood Doors | July 14, 2003 |
| 08311 | Access Doors and Frames | July 14, 2003 |
| 08331 | Overhead Coiling Doors | June 11, 2003 |
| 08411 | Aluminum Entrances and Storefronts | June 11, 2003 |
| 08700 | Door Hardware (CDC2) | June 11, 2003 |
| 08711 | Door Hardware | July 14, 2003 |
| 08716 | Power Door Operators | July 14, 2003 |
| 08800 | Glazing | June 11, 2003 |
| 08911 | Structural Glazed Aluminum Curtain Wall | June 11, 2003 |
| | | |
| **DIVISION 9** | **FINISHES** | |
| 09280 | Gypsum Board Assemblies | June 11, 2003 |
| 09310 | Ceramic Tile | July 14, 2003 |
| 09511 | Acoustical Panel Ceilings | July 14, 2003 |
| 09514 | Acoustical Metal Pan Ceiling | July 14, 2003 |
| 09654 | Linoleum Floor Coverings | July 14, 2003 |
| 09681 | Carpet Tile | July 14, 2003 |
| 09922 | Interior Painting (Professional Line Products) | July 14, 2003 |
| 09960 | High-Performance Coatings | June 11, 2003 |

006126

A-000098

**Bank One Core Data Center II**
**Brandywine, Delaware**
**List of Drawings and Specifications**

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| DIVISION 10 | SPECIALTIES | |
| 10101 | Presentation Dry Erase Wallcovering | July 14, 2003 |
| 10155 | Toilet Compartments | July 14, 2003 |
| 10200 | Louvers and Vents | June 11, 2003 |
| 10265 | Impact-Resistant Wall Protection | July 14, 2003 |
| 10270 | Access Flooring | July 14, 2003 |
| 10505 | Metal Lockers | July 14, 2003 |
| 10520 | Fire-Protection Specialties | July 14, 2003 |
| 10605 | Wire Mesh Partitions | July 14, 2003 |
| 10801 | Toilet and Bath Accessories | July 14, 2003 |
| DIVISION 11 | EQUIPMENT | |
| 11010 | Window Washing Systems | July 14, 2003 |
| 11160 | Loading Dock Equipment | June 11, 2003 |
| DIVISION 12 | FURNISHINGS | |
| 12484 | Floor Mats and Frames | July 14, 2003 |
| 12491 | Horizontal Louver Blinds | July 14, 2003 |
| DIVISION 13 | SPECIAL CONSTRUCTION | |
| 13700 | SECURITY ACCESS AND SURVEILLANCE | July 14, 2003 |
| 13701 | ACCESS CONTROL & ALARM MONITORING SYSTEMS | July 14, 2003 |
| 13702 | CLOSED-CIRCUIT TELEVISION SYSTEMS | July 14, 2003 |
| DIVISION 14 | CONVEYING SYSTEMS | |
| 14610 | Fixed Hoists | July 14, 2003 |
| DIVISION 15 | MECHANICAL | |
| 15020H | HVAC REQUIREMENTS | July 14, 2003 |
| 15145H | HANGERS AND SUPPORTS | July 14, 2003 |
| 15170H | MOTORS | July 14, 2003 |
| 15175H | MOTOR CONTROLLERS | July 14, 2003 |
| 15180H | MOTOR-CONTROL CENTERS | July 14, 2003 |
| 15190H | HVAC IDENTIFICATION | July 14, 2003 |
| 15200H | INSULATION | July 14, 2003 |
| 15241H | HVAC VIBRATION CONTROLS AND SEISMIC RESTRAINTS | July 14, 2003 |
| 15491H | FUEL-OIL SYSTEM | July 14, 2003 |
| 15500H | PIPING SYSTEMS | July 14, 2003 |
| 15540H | HVAC PUMPS | July 14, 2003 |
| 15545H | WATER TREATMENT | July 14, 2003 |
| 15560H | LIQUID LEAK DETECTION SYSTEMS | July 14, 2003 |
| 15575H | BREECHINGS, CHIMNEYS AND STACKS | July 14, 2003 |
| 15600H | REFRIGERATION SYSTEM EQUIPMENT | July 14, 2003 |
| 15761H | AIR COILS | July 14, 2003 |
| 15784H | COMPUTER-ROOM AIR-CONDITIONING UNITS INSTALLATION | July 14, 2003 |
| 15805H | DIESEL ENGINE INSTALLATION | July 14, 2003 |
| 15810H | HUMIDIFIERS | July 14, 2003 |
| 15832H | FINNED-TUBE RADIATION | July 14, 2003 |
| 15835H | UNIT HEATERS | July 14, 2003 |
| 15850H | FANS | July 14, 2003 |
| 15654H | CENTRAL-STATION AIR-HANDLING UNITS | July 14, 2003 |
| 15858H | INTAKE AND RELIEF VENTILATORS | July 14, 2003 |
| 15890H | SHEET METAL WORK | July 14, 2003 |
| 15933H | AIR TERMINALS | July 14, 2003 |
| 15990H | TESTING, ADJUSTING AND BALANCING | July 14, 2003 |
| DIVISION 15 | Plumbing | |
| 15020P | PLUMBING REQUIREMENTS | July 14, 2003 |
| 15100P | PLUMBING VALVES | July 14, 2003 |
| 15135P | PLUMBING METERS AND GAGES | July 14, 2003 |
| 15145P | Plumbing Hangers and Supports | June 11, 2003 |
| 15170P | PLUMBING MOTORS | July 14, 2003 |
| 15190P | Plumbing Identification | June 11, 2003 |
| 15241P | Plumbing Vibration Controls and Seismic Restraints | June 11, 2003 |
| 15260P | Plumbing Insulation | June 11, 2003 |
| 15321P | ELECTRIC-DRIVE, VERTICAL FIRE PUMPS | July 14, 2003 |
| 15325P | FIRE-SUPPRESSION SPRINKLERS | July 14, 2003 |
| 15411P | PLUMBING WATER DISTRIBUTION PIPING | July 14, 2003 |
| 15420P | PLUMBING DRAINAGE AND VENT PIPING | July 14, 2003 |
| 15430P | PLUMBING SPECIALTIES | July 14, 2003 |
| 15440P | Plumbing Fixtures | June 11, 2003 |
| 15441P | COOLING TOWER WATER MAKEUP PUMPS | July 14, 2003 |

006127

Page 7 of 8

A-000099

Bank One Core Data Center II
Brandywine, Delaware
List of Drawings and Specifications

July 14, 2003

| DWG./Spec No. | Description | Date |
|---|---|---|
| 15452P | SUMP PUMPS | July 14, 2003 |
| 15461P | Electric Water Heaters | June 11, 2003 |
| | | |
| DIVISION 16 | ELECTRICAL | |
| 16050 | BASIC ELECTRICAL REQUIREMENTS | July 14, 2003 |
| 16055 | TEMPORARY ELECTRICAL FACILITIES FOR CONSTRUCTION | July 14, 2003 |
| 16071 | SEISMIC CONTROLS FOR ELECTRICAL WORK | July 14, 2003 |
| 16075 | ELECTRICAL IDENTIFICATION | July 14, 2003 |
| 16080 | ACCEPTANCE TESTING | July 14, 2003 |
| 16120 | CONDUCTORS AND CABLES | July 14, 2003 |
| 16121 | CONTROL/SIGNAL TRANSMISSION MEDIA | July 14, 2003 |
| 16124 | MEDIUM-VOLTAGE CABLES | July 14, 2003 |
| 16130 | RACEWAYS, BOXES AND CABINETS | July 14, 2003 |
| 16140 | WIRING DEVICES | July 14, 2003 |
| 16145 | LIGHTING CONTROL DEVICES | July 14, 2003 |
| 16312I | 12kV-480/277 VOLT SUBSTATIONS - Installation Only | July 14, 2003 |
| 16344I | 12kV DISTRIBUTION SWITCHGEARS - Installation Only | July 14, 2003 |
| 16345I | 12kV PARALLELING SWITCHGEAR - Installation Only | July 14, 2003 |
| 16415 | TRANSFER SWITCHES | July 14, 2003 |
| 16425 | SWITCHBOARDS | July 14, 2003 |
| 16426I | SWITCHGEARS (CRITICAL OUTPUT DISTRIBUTION) - Installation Only | July 14, 2003 |
| 16441I | ALTERNATE CRITICAL SWITCHBOARDS - Installation Only | July 14, 2003 |
| 16452 | GROUNDING | July 14, 2003 |
| 16461 | DRY TYPE TRANSFORMERS (600V AND LESS) | July 14, 2003 |
| 16470 | PANELBOARDS | July 14, 2003 |
| 16471I | POWER DISTRIBUTION UNIT (PDU'S) - Installation Only | July 14, 2003 |
| 16475 | FUSES | July 14, 2003 |
| 16476 | DISCONNECT SWITCHES AND CIRCUIT BREAKERS | July 14, 2003 |
| 16480I | LOAD BANKS - Installation Only | July 14, 2003 |
| 16511 | INTERIOR LIGHTING | July 14, 2003 |
| 16521 | EXTERIOR LIGHTING | July 14, 2003 |
| 16610I | UNINTERRUPTIBLE POWER SUPPLY SYSTEM - Installation Only | July 14, 2003 |
| 16621I | PACKAGED ENGINE GENERATORS - Installation Only | July 14, 2003 |
| 16637I | REMOTE POWER PANELS (RPP'S) - Installation Only | July 14, 2003 |
| 16722 | AIR SAMPLING SMOKE DETECTION SYSTEMS | July 14, 2003 |
| 16723 | ADDRESSABLE FIRE ALARM SYSTEMS | July 14, 2003 |
| 16997 | ELECTRICAL SYSTEM COMMISSIONING REQUIREMENTS | July 14, 2003 |
| | | |
| DIVISION 17 | HVAC CONTROL SYSTEMS | |
| 17975H | HVAC CONTROL SYSTEMS | July 14, 2003 |

006128

A-000100

<u>EXHIBIT D</u>

<u>WORK AREA</u>

4001 Governor Printz Blvd.
Wilmington, Delaware 19802

D-1

006129

A-000101

EXHIBIT E

MAXIMUM CHANGE ORDER RATES FOR OVERHEAD,
PROFIT, CONSTRUCTION CONTRACTOR'S FEE

1.  Construction Contractor may add to its "on-site" cost of extra Work when such Work is performed directly at the site with its own personnel, equipment and materials, it being agreed by Construction Contractor that it will not subcontract out work when it would be more efficient (both in terms of time and money) for Construction Contractor's own personnel to perform such work.

15 % for all of Construction Contractor's Fee related to such Change Order

2.  Construction Contractor may add an additional percentage to subcontractor's costs for administration and supervision of extra Work by a subcontractor.

6 % for all of Construction Contractor's Fee related to such Change Order

3.  Construction Contractor shall deduct over and above his "on-site" cost of deleted Work when such Work would have been performed directly at the Site with its own personnel, equipment and materials.

15 % for all of Construction Contractor's Fee related to such Change Order

4.  Construction Contractor shall deduct an additional percentage over and above subcontractor's credit for administration and supervision of extra Work by a subcontractor.

6 % for all of Construction Contractor's Fee related to such Change Order

E-1

006130

A-000102

## EXHIBIT F

### RATES AND UNIT PRICES

Item                                                        Price

006131

A-000103

EXHIBIT G

GENERAL CONDITIONS
TO
SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT

These General Conditions are attached to and made a part of the Single Project Construction Services Agreement ("Agreement"). All terms defined either in the Agreement or in these General Conditions shall have the meaning ascribed thereto wherever used in the Contract Documents. Terms and abbreviations not specifically defined in the Contract Documents which have well-known technical or trade meanings are used in the Contract Documents in accordance with such recognized meanings.

ARTICLE 1 · WORK

1.01    Construction Contractor shall perform or cause to be performed, in a first class manner and in accordance with the Contract, all work set forth in, contemplated by or reasonably inferable as being necessary to produce the intended results from, the plans and specifications listed on Exhibit C to the Agreement (as supplemented and modified by Owner throughout the design process), including all labor and materials to complete the general description of such work contained in the Agreement and all movable furnishings specifically identified as being the responsibility of or to be performed by Construction Contractor on such plans and specifications (as supplemented and modified by Owner throughout the design process) and excluding movable furnishings specified or indicated on such plans and specifications to be excluded or to be the responsibility of Owner or Owner's other contractors or consultants (collectively all such labor, materials, and services to be provided by Construction Contractor are herein called the "Work"). In the event of any discrepancy between large-scale plans and small-scale plans, the large-scale plans shall govern. The foregoing shall not relieve Construction Contractor of Construction Contractor's responsibility to advise Owner of any inconsistencies in any of the plans and specifications which a fully competent first class contractor could reasonably be expected to discover upon review of the plans and specifications. Except as set forth above, if any of the Contract Documents imposes a different or greater obligation or ·limitation upon Construction Contractor than another Contract Document, the Contract Document imposing the greater obligation or limitation on Construction Contractor shall govern and prevail. Plans and specifications which are either (i) necessary for the proper execution and completion of the Work or for the proper operation of the completed improvements or (ii) consistent with and reasonably inferable from the plans and specifications attached hereto as Exhibit C (as supplemented and modified by Owner throughout the design process) as being part of the scope of the Work may hereafter be furnished and will be incorporated in Exhibit C and into the Work at no additional cost to Owner. Construction Contractor acknowledges that it has participated and will participate in meetings with Owner and its design professionals and Construction Contractor has been given ample opportunity to obtain a thorough understanding of the intended final product and fully reviewed the plans and specifications listed on Exhibit C, and thus Construction Contractor hereby agrees that no increase in the Contract Sum shall result unless a change in scope occurs as evidenced by a written change order executed by Owner and Construction Contractor. Construction Contractor shall participate in the value engineering by proposing appropriate and suitable alternatives to achieve the intended design, functionality and quality in a manner that will best enable the Work to be completed within the budget and schedule therefor and shall cooperate and work with the Owner and its consultants as part of an integrated team to maximize the quality of the improvements contemplated by the Work and its components and systems while minimizing the cost of the Work and meeting the requirements of the schedule therefor.

1.02    As between Owner and Construction Contractor, all plans and specifications for the Work and other material related to the Work prepared by Construction Contractor or furnished to Construction Contractor by Owner are and shall remain Owner's property, and shall be used by Construction Contractor only with respect to the Work. Construction Contractor acknowledges that a confidential relationship has been established between Owner and Construction Contractor and that Owner may communicate to Construction Contractor certain confidential information to enable Construction Contractor to render the services required in the Contract. Construction Contractor agrees (i) to treat and to obligate its consultants, employees, and subcontractors to consider and treat all information as secret and confidential, and (ii) not to disclose or issue any information or make available any reports, recommendations and/or conclusions in connection with the Work or the Site, which Construction

006132

A-000104

Contractor may make to Owner, or any drawings, to any person, firm or corporation or use the same in any manner whatsoever without first obtaining Owner's prior written approval.

1.03    The Contract Documents represent the entire and integrated agreement between Owner and Construction Contractor and shall be deemed to supersede all prior negotiations, representations or agreements, whether written or oral.

ARTICLE 2    OWNER

2.01    To the extent required by Construction Contractor to perform the Work, Owner shall furnish descriptions of all surveys describing the physical characteristics, legal limitations and utility locations for the area within which the Work is to be performed and where materials are to be stored, which Work areas within the Site are limited to the areas designated as such on Exhibit D to the Agreement ("Work Area"). Construction Contractor shall confine its activities at the Site to the Work Area. All other grades, lines, levels, benchmarks, courses and distances shall be established and maintained by Construction Contractor.

2.02    Unless otherwise provided in the Contract Documents, Construction Contractor will be furnished with, free of charge, one set of prints and one reproducible set of all drawings comprising the plans and specifications and one set of the specifications. Owner shall be responsible for all utility connection charges and tap-in fees, including excess capacity fees, meter installation charges or the like.

2.03    If Construction Contractor is in default of any of its obligations under the Contract Documents, and such failure or default continues for seven days after written notice from Owner, Owner may order Construction Contractor immediately to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of Owner to stop the Work shall not give rise to any duty on the part of Owner to exercise this right for the benefit of Construction Contractor or any other person or entity. This right shall be in addition to, and not in restriction of, Owner's other rights under the Contract Documents.

2.04    The Electrical Trade Manager identified in the Agreement, or any substitute designated as such in writing from Owner to Construction Contractor, is Owner's representative with full power to bind Owner.

2.05    Owner reserves for itself and its representatives the right of access to any part of the Work at any time for the purpose of observing or testing or to install other work either with its own forces or with other contractors. Such access is not to be construed to mean partial occupancy by Owner.

2.06    Owner reserves the right to designate, by notice to Construction Contractor (if not so designated on Page 1 of the Agreement) one or more persons or entities that is the owner or manager of the Site or the existing building within which the Work is to be performed (if any, the "Building") as a Building Owner/Manager. To the extent a Building Owner/Manager is so designated, all provisions of this Contract relating to the Building Owner/Manager shall apply, and mean and refer, to the persons or entities so designated. To the extent a Building Owner/Manager is not so designated, no force or effect shall be given to those provisions to the extent related to the Building Owner/Manager.

2.07    Owner reserves the right to engage third parties, including architects and engineers, to assist Owner in various capacities related to the Work and Contract Documents, including in the administration of the Contract Documents. Construction Contractor agrees to cooperate with all such consultants, including architects and engineers, in all aspects of the Work and Contract Documents, including the administration thereof. Construction Contractor acknowledges and agrees that Owner may grant conditional approval of or require the approval of any such consultant, including any architect or engineer, as a condition to Owner's granting any consent or approval required of Owner under the Contract Documents. Construction Contractor shall cooperate with such processes required by Owner to obtain such consultant" consents.

006133

A-000105

ARTICLE 3    <u>CONSTRUCTION CONTRACTOR</u>

3.01    Construction Contractor shall have primary responsibility for preparation of budgets for the Work throughout the design process in cooperation and consultation with Owner and its consultants. Construction Contractor's submission nor Owner's approval of any budget shall alter the Contract Sum (absent a Change Order executed by the Parties). Any budget may contain one or more line items for Owner's contingency or a contingency expressly to be controlled by Owner and each such contingency is herein called an "Owner's Contingency". An Owner's Contingency (i) shall only be available for use in connection with the Work upon Owner's written approval, which may be granted or denied by Owner in Owner's sole discretion for any or no reason, (ii) shall not be included in the agreed upon Contract Sum, and (iii) which is not used upon final completion of the Work and Construction Contractor is not entitled to any unused portion thereof.

3.02    Construction Contractor shall perform the Work in accordance with all laws, ordinances, codes, rules and regulations, orders and decisions of all government authorities having jurisdiction over the Site ("Government Requirements"), and otherwise perform Construction Contractor's obligations contemplated in the Contract Documents. Construction Contractor acknowledges that Construction Contractor has visited the Site, examined all conditions affecting the Work, and is fully familiar with all of the conditions thereon and affecting the Work and the Work Area. Construction Contractor shall perform no portion of the Work at any time without Contract Documents or, where required, approved (or approved as noted) shop drawings, product data or samples for such portion of the Work.

3.03    Construction Contractor shall employ a competent project superintendent, necessary assistants, and staff, as necessary for the proper administration, coordination and supervision of the Work, all approved by Owner in writing by either being listed in the Agreement or by separate written approval accepted by or on behalf of Owner. Owner's approval of any such person (or of any substitute for such person) shall not relieve Construction Contractor of or otherwise limit or affect Construction Contractor's obligation to employ competent persons of sufficient skill and experience to perform their assigned responsibilities in accordance with the standards and requirements set forth in the Contract. Construction Contractor's project superintendent shall be in attendance at the Work Area for the duration of the Work and such project superintendent's duties shall not be diminished without the prior written consent of Owner. Construction Contractor's project superintendent shall represent Construction Contractor and all communications given to such project superintendent shall be as binding as if given to Construction Contractor. Upon Owner's request, any communication from such project superintendent shall be confirmed in writing by an authorized partner, member or officer, as the case may be, of Construction Contractor. Construction Contractor's project superintendent shall have authority to furnish estimates and to approve field changes and shall attend meetings with Owner at such times and places as shall be requested by Owner to report on the progress of the Work or otherwise to consult with Owner. Construction Contractor's project superintendent and other members of Construction Contractor's staff identified on page 1 of the Agreement or separately approved by Owner as provided above shall not be changed without the consent of Owner unless such person leaves the employ of Construction Contractor, in which event the substitute must first be approved in writing by Owner. If Owner gives Construction Contractor notice Construction Contractor's project superintendent or any other of Construction Contractor's personnel identified on page 1 of the Agreement (or any person that replaces any of the foregoing) has failed to perform his or her responsibilities in accordance with the standards set forth in this Contract and such failure is not remedied within ten (10) days of such notice, Construction Contractor shall, if requested by Owner, promptly replace such person with a person having the competence, skill and experience necessary to perform such responsibilities and approved by Owner. Those individuals who are the authorized signatories for Construction Contractor are also listed in the Agreement.

3.04    Construction Contractor shall (a) supervise and direct the Work using Construction Contractor's best professional skill and attention, and (b) be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work. Construction Contractor shall furnish its best skill and judgment, employing first class professional standards, and shall cooperate with the other parties involved in the Work in furthering the interests of Owner. Construction Contractor accepts sole responsibility for the acts and omissions of Construction Contractor's employees, subcontractors and their respective agents and employees. Construction Contractor shall (i) at all times enforce strict discipline and good order among Construction Contractor's employees and shall not employ on the Work any unfit person or anyone not skilled in the

006134

A-000106

task assigned to him; (ii) confine Construction Contractor's equipment, apparatus, materials, and operations of its workmen and subcontractors within limits allowed by Owner and Building Owner/Manager and not unnecessarily burden the Work Area with materials; (iii) correct, at Construction Contractor's expense, damage to property resulting from the Work; and (iv) if the Work requires a temporary shut-down of a service in the Building or any other improvements on the Site, cause such Work to be accomplished during other than normal hours and coordinated with Owner and Building Owner/Manager at Construction Contractor's expense; provided further that Construction Contractor shall give adequate notice to Owner and Building Owner/Manager that Construction Contractor will require a shut-down.

3.05    (a)    Construction Contractor shall not use, in connection with the Work, any material containing asbestos as defined by the United States Environmental Protection Agency 40 CFR CH. I (7-1-00 Edition) Subpart M-National Emission Standard for Asbestos and the Occupational Safety and Health Administration, Part 1910: Occupational Safety and Health Standards, Subpart Z: Toxic and Hazardous Substances, Standard 1910.1001: Asbestos.

(b)    Construction Contractor shall not use, in connection with the Work, any hazardous waste, toxic substance or related materials, including substances defined as "hazardous substances" or "toxic substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sec. 9061 et seq., Hazardous Materials Transportation Act, as amended, 49 U.S.C. Sec. 1802, and the Resource Conservation Act and Recovery Act, as amended, 42 U.S.C. Sec. 6901 et seq. ("Hazardous Materials") in such manner as would violate any Government Requirements or would cause any damage or a risk of any damage to the environment, or in such a manner as to leave any residue which could be hazardous to persons or property or cause liability to Owner.

3.06    Construction Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, age or national origin or ancestry. Construction Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, age or national origin or ancestry. Construction Contractor shall comply with, and shall cooperate with Owner and other contractors and subcontractors in connection with compliance with, the regulations of the Occupational Safety and Health Act of 1970, as amended ("OSHA"), or any similar state law which is applicable. If any Construction Contractor's employee working on the Work files a charge of noncompliance with OSHA, Construction Contractor shall notify Owner's Project Manager promptly upon receiving notice of such charge.

3.07    (a)    The Contract Sum is based on the Completion Schedule attached to the Agreement as Exhibit A (said schedule, as modified as permitted herein with Owner's written approval is herein called the "Completion Schedule"). Except as expressly provided for in the Contract Documents, Construction Contractor shall not be entitled to any additional payment for overtime, which includes shift work, required to complete the Work in accordance with the Completion Schedule.

(b)    If Owner requests Construction Contractor to work overtime due solely to Owner's election to accelerate the performance of the Work ahead of the Completion Schedule, Construction Contractor shall comply with the following requirements:

(i)    Construction Contractor shall submit a statement of employees by name, trade, classification, hourly rate, and premiums or overtime charges worked to substantiate premium or overtime charges, in such detail as to demonstrate to Owner its correctness. These statements shall be prepared on a daily basis and shall be submitted daily for Owner's records. The rates, premiums and overtime charges shall correspond with the schedule of rates and unit costs in Exhibit F to the Agreement, which rates and unit prices include all contributions to federal and state unemployment tax and for federal insurance contributions tax required to be paid by Construction Contractor.

(ii)    Owner will pay for authorized overtime work only the amounts of overtime premium wages actually paid by Construction Contractor in accordance with those set forth on the schedule of rates and unit costs attached as Exhibit F to the Agreement.

Single Project Construction Services Agreement 3/03/2003

006135

A-000107

3.08    (a)    Construction Contractor represents and warrants to and covenants with Owner that all materials and equipment furnished under the Contract will be new unless otherwise specified, and that all Work will be free from faults and defects and in conformance with the Contract Documents. All Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective by Owner. If required by Owner, Construction Contractor shall promptly furnish satisfactory samples of materials demonstrating that the materials comply with this Section. This representation, warranty and covenant is not limited by the provisions of Section 11.02 hereof related to correction of Work.

(b)    Construction Contractor warrants all Work performed and material and equipment furnished against defects and deficiencies (it being agreed by Owner that failure of any part of the Work due solely to misuse by persons other than Construction Contractor and subcontractors shall not be deemed a defect or deficiency in such part) which develop within (i) as to those portions of the Work not covered by the following clause (ii), a period of one year from final completion of the Work or if such defect is not discovered within one year from final completion of the Work, a period of one year from the time such defect should have been discovered with the exercise of reasonable diligence and in no event shall such warranty extend beyond three years from the date of acceptance of the Work and final payment by Owner; (ii) the period specified in the Contract Documents as to any part of the Work for which a period longer than one year is specified. The foregoing time limitations shall not apply to defects and deficiencies which are latent and not readily ascertainable by ordinary observation. Notwithstanding the foregoing, if Construction Contractor uses any heating, ventilating or air conditioning facilities installed as a part of the Work prior to final completion, the warranty with respect to such heating, ventilating or air conditioning facilities shall not commence until final completion of all of the Work.

(c)    Construction Contractor shall require each subcontractor to execute and deliver to Owner a warranty of the Work to be performed by such subcontractor, in form satisfactory to Owner which shall equal or exceed the requirements of this Section 3.08 and any additional requirements set forth in the Contract Documents and shall otherwise be in form and substance satisfactory to Owner. Such warranty by a subcontractor shall be enforceable directly by Owner against each such subcontractor and shall be in addition to any warranty provided by Construction Contractor herein. Construction Contractor shall obtain warranties with respect to all equipment and materials and personal property supplied with respect to the Work from the respective suppliers, at least as favorable as those generally supplied with respect to such equipment, materials and personal property by the suppliers thereof and satisfying any requirements set forth in the Contract Documents, which warranties shall be enforceable directly by Owner against such suppliers and shall be in addition to any warranty provided by Construction Contractor herein or by any subcontractor. The warranties shall be executed by the respective suppliers or subcontractors not later than the date of payment to be made with substantial completion of the applicable subcontract or purchase order. Construction Contractor shall obtain such warranties from each subcontractor and deliver one executed original of each to Owner. Construction Contractor shall bind copies of warranties together in a single volume, grouped by trade and properly indexed. Owner shall have no obligation to make any payment with respect to the portion of the Work provided by any subcontractor or supplier which has not delivered the warranties required of such party.

(d)    If the Contract Documents, any Government Requirements or Owner (to see if the Work complies with the Contract Documents) require any part of the Work to be tested, Construction Contractor shall give Owner not less than 48 hours' notice of the readiness of such part of the Work so that Owner may observe such testing. Construction Contractor will retain a tester satisfactory to Owner. Construction Contractor shall bear the costs of all tests required by the Contract Documents or by Governmental Requirements. If a test is not required either by the Contract Documents or by any Governmental Requirements, and if testing reveals a failure of the Work to comply with the Contract Documents, Construction Contractor shall bear all costs related to such test, including compensation for Owner's additional services made necessary by such test, and Construction Contractor shall correct such failure in accordance with Article 11 hereof; otherwise Owner shall bear such costs, and an appropriate change order shall be issued to adjust the Contract Sum. Construction Contractor shall not be relieved of Construction Contractor's obligations to perform or cause performance of the Work in accordance with the Contract Documents by reason of any errors or omissions contained in any tests performed by or for Owner, notwithstanding that such tests and the results thereof may have been delivered to Construction Contractor and that Construction Contractor may have relied upon the correctness of such tests. The fact that Owner may have provided to Construction Contractor any such tests or the results thereof, shall not relieve Construction Contractor of the

G-5

006136

A-000108

obligation to assure that the Work performed by Construction Contractor is in compliance with the Contract Documents.

3.09    Construction Contractor shall procure all permits, licenses and certificates of inspection or occupancy necessary to complete the Work and occupy the Work Area, and shall deliver same to Owner promptly upon completion of the Work or at Owner's request. If any utility connection charges, tap-in fees or similar items are required to be paid as a condition precedent to the issuance of any such permits, licenses, or certificates, Construction Contractor shall notify Owner thereof and coordinate Owner's payment of such items as required by Section 2.02 in a timely manner to permit proper issuance of all permits, licenses and certificates as required hereby. Prior to Construction Contractor's application for a permit, Construction Contractor shall secure Owner's approval of the Project value to be used for permit purposes.

3.10    Construction Contractor shall commence performance of its obligations under the Contract Documents upon the date set forth in the Completion Schedule for commencement of the Work or, if no such date is included in the Completion Schedule, upon execution of the Agreement by Owner and delivery to Construction Contractor of the Agreement by Owner. Construction Contractor shall, subject to adjustment evidenced by change orders, cause completion of each of the elements of the Work, including substantial completion and final completion, as set forth in the Completion Schedule. Construction Contractor shall consult with Owner on the actual progress of the Work and, if requested by Owner at any time, shall at no additional cost to Owner, submit to Owner a series of reports (at such intervals as may be requested by Owner) reflecting the progress of the Work.

3.11    Construction Contractor shall maintain at the Work Area for Owner one record copy of all current and up-to-date plans and specifications, addenda, change orders and other modifications, in good order and marked currently to record all changes made during construction, and approved shop drawings, product data and samples. No review or receipt of such records by Owner shall be a waiver of any deviation from the Contract Documents or in any way relieve Construction Contractor from Construction Contractor's responsibility to perform the Work in accordance with the Contract Documents unless such deviations are specifically noted in writing by Construction Contractor and specifically approved in writing by Owner. Construction Contractor shall furnish to Owner four complete sets of manuals containing the manufacturers' instructions for maintenance and operation of each item of equipment furnished under the Contract Documents and any additional data specifically requested under the various sections of the specifications for each division of the Work. The manuals shall be arranged in proper order, indexed and suitably bound.

3.12    (a)    Construction Contractor shall procure, review, and submit, with reasonable promptness and in such sequence as to cause no delay in the Work or in any work of Owner, all shop drawings, product data and samples required by Contract Documents. Construction Contractor shall maintain an accurate record of all deviations from the plans and specifications which occur in the Work as actually constructed, and shall submit to Owner, two (2) sets (one to be reproducible) of complete information including descriptions, drawings, sketches, marked prints, and similar data, indicating the "as-built" conditions. Construction Contractor shall keep "as-built" record drawings up to date concurrently as the Work progresses. Submittal of such drawings is required prior to Construction Contractor submitting its application for final payment.

(b)    Each subcontractor shall submit through Construction Contractor all shop drawings at a scale which is easily read and not smaller than 8-1/2 inches by 11 inches nor larger than 36 inches by 48 inches, and all samples and manufacturers' descriptive data. All submissions by or through Construction Contractor shall be thoroughly examined by Construction Contractor and shall clearly identify the relevant specifications section before submission to Owner, and shall bear Construction Contractor's approval stamp.

(c)    All shop drawings must be dated and properly identified with the name of the Site and Work Area. Each lot submitted must be accompanied by a letter of transmittal which refers to the name of the Site and Work Area and to the specification section number for identification of each item, and which clearly states qualifications, departures or deviations from the Contract Documents, if any. For each section of the Work, shop drawings shall be numbered consecutively and the numbering system shall be retained throughout all revisions. Construction Contractor shall submit one reproducible transparency and as many prints (at least three) of each shop drawing as may be reasonably required by Owner until final acceptance thereof is obtained. Construction

G-6

006137

A-000109

Contractor shall submit copies, in amounts requested by Owner, of manufacturers' descriptive data for materials, equipment and fixtures.

(d) . In case a considerable range of color, graining, texture or other characteristic may be anticipated in finished products, a sufficient number of samples of the specified materials shall be furnished by Construction Contractor to indicate the full range of such characteristics that will be present in the finished products. Products delivered or erected without submittal and approval of full range samples shall be subject to rejection. Except for range samples, and unless otherwise called for in the various sections of the specifications, samples shall be submitted to Owner in triplicate. All samples shall be marked, tagged or otherwise properly identified with the name of Construction Contractor, the name of the Site and Work Area, the purpose for which the samples are submitted and the date, and shall be accompanied by a letter of transmittal containing similar information, together with the specifications section number for identification of each item.

3.13    Construction Contractor shall be responsible for seeing that structural members are not cut without prior written authority of the Building Owner/Manager and Owner. Owner's permission to patch any areas or items of Work shall not constitute a waiver of Owner's right to require complete removal and replacement of said areas or items of Work, if, in Owner's opinion, said patching does not satisfactorily restore quality and appearance of same. Any penetration of the slab of any floor shall be core drilled in accordance with procedures to be established and approved in writing by the Building Owner/Manager and Owner.

3.14    Construction Contractor at all times shall keep the Work Area and to the extent Construction Contractor is granted access, the Site, in a neat and orderly condition and free from accumulation of waste materials or rubbish caused by Construction Contractor's operations. In order to make the Work fit for occupancy for its intended purposes upon substantial completion, Construction Contractor shall remove as soon as and to the extent practicable all temporary facilities, waste materials and rubbish from and about the Work Area and, to the extent Construction Contractor is granted access, the Site, as well as all supplies, tools, construction equipment, machinery and surplus materials and leave such areas in a broom clean condition or such other condition as Owner may designate to Construction Contractor in writing prior to the date hereof. Any items damaged by Construction . Contractor or its subcontractors shall be replaced, and all surfaces which have been scratched or marred shall be refinished, at no additional cost to Owner.

3.15    Construction Contractor shall pay all royalties and license fees applicable to the Work and shall not unlawfully use or install any patented article.

3.16    (a)    To the fullest extent permitted by law, Construction Contractor shall indemnify, defend, save and hold Owner; its affiliated companies; Owner's Lender, if any; Owner's tenants, if any; the Building Owner/Manager, if different from Owner, Construction Manager, Electrical Trade Manager and the shareholders, members, partners, officers, employees of all of them (collectively the "Indemnitees") harmless from and against all loss and expense (including reasonable attorneys' fees and other costs and expenses) by reason of the liability imposed by law upon the Indemnitees, or any of them, for damages because of Construction Contractor's breach of the Contract Documents and for damages because of bodily injury, occupational sickness or disease, including death resulting therefrom, sustained by any employees of Construction Contractor or subcontractor while at the Site where Work under the Contract is being conducted or elsewhere, while engaged in the performance of Work under the Contract, or sustained by any person or persons other than employees of Construction Contractor, however such injuries may be caused, including such injuries as are caused by concurrent negligence of the Indemnitees, or any of them, whether attributable to a breach of statutory duty or administrative regulation or otherwise, and such injuries for which liability is imputed to the Indemnitees, or any of them, or claims for property damage because of injury to or destruction of tangible property (other than the Work itself to the extent the damage or injury thereto results from a loss covered by Owner's policy of builder's risk insurance, including loss of use resulting therefrom), directly or indirectly arising or alleged to arise out of the performance of or the failure to perform the Work or the failure to protect the Work or the Site, or the condition of the Work, the Site, adjoining land or driveways, or streets or alleys . used in connection with the performance of the Work. Without limiting the generality of the foregoing, the defense and indemnity set forth in this Section include, subject only to the limitations contained in this Section, all liabilities, damages, losses, claims, demands and actions on account of bodily injury, death or property loss to an Indemnitee or to any other persons or entities, whether based upon, or claimed to be based upon, statutory (including workers'

006138

A-000110

compensation), contractual, tort or other liability of any Indemnitee. In addition, such defense and indemnity shall include all liabilities, damages, losses, claims, demands and actions for defamation, false arrest, malicious prosecution or any other infringement of similar rights.

(b)    The provisions of the indemnity provided for herein shall not be construed to indemnify any Indemnitee for its own negligence, if any, to the extent not permitted by law or to eliminate or reduce any other indemnification, right or remedy which Owner has under Contract Documents or otherwise.

(c)    The obligation set forth in this Section shall, but not by way of limitation, specifically include all claims directly or indirectly alleged to arise under any scaffolding, structural work or safe place law, or any law with respect to the protection of adjacent landowners.

(d)    Construction Contractor shall be notified of any claims against any of the Indemnitees of which Owner has notice, and Owner shall give Construction Contractor such reasonable information and assistance as may be requested by Construction Contractor to perform the obligations set forth in this Section; provided, however, that (i) failure to notify Construction Contractor of any claim shall not relieve Construction Contractor of any obligations contained in this Section; and (ii) the obligation of Owner to give information and assistance shall be at Construction Contractor's expense and shall not obligate Owner to incur any expense or liability.

(e)    Construction Contractor expressly understands and agrees that any performance or labor and material bond or insurance protection required by any provision of the Contract Documents, or otherwise provided by Construction Contractor, shall in no way limit the responsibility to indemnify, save and hold harmless and defend each of the Indemnitees as herein provided.

(f)    Construction Contractor shall cause the foregoing indemnification agreement by Construction Contractor to be included in each subcontract between Construction Contractor and a Subcontractor and between each Subcontractor and its Subcontractors and shall be in favor of each of the Indemnitees and Construction Contractor, and at Owner's request, Construction Contractor shall provide evidence satisfactory to Owner that it has fulfilled its obligation under this Section.

(g)    If any claim indemnified hereunder has not been settled or discharged when the Work is completed, final payment of the Contract Sum shall not be due, unless and until Construction Contractor provides a (i) bond issued by a bonding company satisfactory to Owner, (ii) other security acceptable in an amount equal to 150% of the amount of any such claim, including interest on such claim as estimated by Owner, or (iii) other security acceptable to Owner, which bond or other security shall be in form and substance satisfactory to Owner and shall be subject to such increase as Owner may from time to time require as interest accrues on such claim.

(h)    In any and all claims against any Indemnitee or any of its agents or employees by any employee of Construction Contractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Construction Contractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

3.17    Construction Contractor will keep complete and detailed books and records which will accurately reflect costs. Such books and records and all supporting data shall, at all reasonable times and upon reasonable notice, until three years after the Work has been finally completed, be open for audit, inspection and copying by Owner and its authorized representatives. The Contract Sum shall be allocated and itemized by Construction Contactor in accordance with Owner's cost segregation study as directed from time to time by Owner or its third party consultant to allow Owner to properly allocate each element of the Contract Sum for federal income tax purposes.

3.18    Construction Contractor shall not divulge information concerning the Contract Documents or any Work to anyone (including information in applications for permits, variances, etc.) without Owner's prior written consent. Owner reserves the right to control the release of all information relating to the Project, including the

Single Project Construction Services Agreement 3/03/2003

006139

A-000111