IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

------

CREEDON CONTROLS, INC., et al. : CIVIL ACTION

vs. :

BANC ONE BUILDING CORP., et al. : NO. 05-CV-300-JJF

------

Wednesday, June 14, 2006
VOLUME 2

------

Continued oral deposition of PAUL ANGERAME, held at COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C., United Plaza, 30 South 17th Street, 19th Floor, Philadelphia, Pennsylvania, beginning at 3:00 p.m., on the above date, before LANCE A. BRUSILOW, Registered Professional Reporter and Approved Reporter for the United States District Court.

------

brusilow+associates
135 South 19th Street
Suite 350
Philadelphia, Pa. 19103
215.564.1717
www.brusilow.com

------

APPEARANCES

COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.
BY: EDWARD SEGLIAS, ESQUIRE
Nemours Building
1007 Orange Street
Suite 1130
Wilmington, Delaware 19801
ph: 302.425.5089
fax: 302.425.5097
(eseglias@cohenseglias.com)
Counsel for Plaintiff

MARON & MARVEL, P.A.
BY: PAUL A. BRADLEY, ESQUIRE
1300 North Broom Street
Wilmington, Delaware 19806
ph: 302.425.5177
fax: 302.425.0180
(pab@maronmarvel.com)
Counsel for Forest Electric Corporation

PAUL, HASTINGS, JANOFSKY & WALKER, LLP
BY: JONATHAN CHOA, ESQUIRE
Park Avenue Tower
75 East 55th Street
First Floor
New York, NY 10022
ph: 212.318.6451
fax: 212.230.5151
(jonathanchoa@paulhastings.com)
Counsel for Banc One Building Corporation

------

(It is hereby agreed by and among counsel that sealing, certification and filing are waived; and that all objections, except as to the form of the question, are reserved until the time of trial)

PAUL ANGERAME, having been previously sworn, was examined and testified further as follows:

(EXAMINATION)

BY MR. SEGLIAS:

Q. Paul, we're here on a continuation of your deposition. When we last met, we were in Wilmington and we were going through various exhibits related to the project.

Before we get started with some more exhibits, though, I would like to talk to you about Creedon's contractor balance on the 6B project.

A. Okay.

Q. My understanding is that it's about 211,000 and a few dollars. Does that sound --

A. I don't know the exact figure, but that's. . .

Q. Sounds about right?

well, or form of agreement.

Q. And was a letter of intent and subcontract agreement that we've been describing sent to Creedon Controls at any time?

A. Yes.

Q. And did someone from Creedon Controls sign and return it to Forest?

A. I believe so.

MR. CHOA: I'm going to go ahead and mark this as BB. This was probably produced before.

(Exhibit BB was marked for identification)

BY MR. CHOA:

Q. For the record, Paul, can you please review this letter of intent and attached subcontract agreement? Was this what was sent to Creedon Controls?

A. Well, this document appears to be what Creedon Controls sent back to Forest.

Q. So, if they sent it back to Forest, I presume that Forest had originally sent it to them?

A. In some form.

Q. Did there come a time you sent a

second letter of intent and subcontract agreement to Creedon Controls for the same 6B work package?

A. Yes, that has come to my attention.

Q. Do you know why that was done?

A. I believe there was a contract dollar value change.

MR. CHOA: I'm going to introduce this as CC. You can review this and see if this refreshes your recollection as to whether Forest sent a second letter of intent to Creedon.

(Exhibit CC was marked for identification)

THE WITNESS: This definitely has a different dollar value associated with it.

BY MR. CHOA:

Q. And do you know why the dollar value changed?

A. I don't remember.

Q. Did you ever have any discussions with anyone at Creedon regarding the terms of the subcontract?

A. No.

Q. Did anyone at Forest Electric have any conversations with Creedon regarding the terms of the subcontract?

A. Not that I'm aware of.

Q. Do you know if these handwritten notes on the subcontract agreement, were those notes on the form returned to Forest?

A. I wouldn't know. I would not know. I had never seen them before.

Q. And do you know at whose request the second letter of intent was sent?

A. If I knew the circumstances surrounding the dollar-value change, I might be able to answer that, but I don't recall the details.

Q. Did Creedon request another letter?

A. No, I think the reason was a difference in dollar value.

Q. So, then Forest would send -- if the dollar value changed, as a general practice would Forest Electric then second a second letter of intent to reflect that?

A. I guess if it was incorrect to begin with, I believe -- and I believe that was the case.

Q. Do you recall at what time,

Page 276

acting as an agent for the bank."

Q. There was a statement?

A. Yes.

Q. Who made that statement?

A. You know, it may have come up in -- it would have been made by Tom Keane. I don't know the exact time it was stated, but it would have been in the context of perhaps signing a document or confirming a change order.

Q. Was this statement in writing?

A. No.

Q. Is there any statement in writing from Tishman to Forest stating Forest should act as agent for the bank?

A. Other than acceptance of the agreement that we ultimately signed, the master agreement that we signed, that I believe states that.

Q. And the master agreement, what do you mean by that?

A. I mean the agreement that engages Forest as the trade manager for the bank, for the electrical trades on the Banc One CDC projects.

Q. So, to your knowledge, if Forest contracts with the bank, it gives Forest permission

to act as agent for the bank?

A. Yes.

Q. And did any representative of Banc One Building Corporation ever authorize Forest to act as an agent?

MR. BRADLEY: Objection to the form.

THE WITNESS: That's my understanding based on the agreement.

BY MR. CHOA:

Q. Based on which agreement?

A. On the agreement authorizing Forest to proceed as the trade manager for the electrical trades.

Q. Besides that document, you never saw anything else in writing from the bank to Forest authorizing Forest to act as agent?

MR. BRADLEY: Objection. You mean other than what's in these exhibits we've already marked?

MR. CHOA: Well, actually Paul is saying that he thinks that's contained in the agreement between Forest and Tishman.

We haven't marked any of those --

Tishman is an agent of the bank.

MR. CHOA: Right, I understand that.

BY MR. CHOA:

Q. When I say "Tishman" I mean Tishman employees. When I say "Banc One" I mean actual Banc One employees, not Tishman on behalf of Banc One.

A. No, it would have been through Tishman.

Q. So, there were no discussions with the bank regarding Forest's authorization to act as agent?

A. Not with me.

Q. Now, what happened after this April 12th, 2004 e-mail?

A. After this e-mail we issued this agreement to the trade contractors.

Q. Can you just clarify what you mean by "issued"?

A. We modified this agreement to reflect the scope for the individual packages, and then we transmitted it to the successful bidders for each of those packages.

Q. Was such a bank form of agreement sent

to Creedon?

A. Yes.

Q. Did Creedon sign that contract?

A. No.

Q. What did Creedon do?

A. They held on to it for quite some time -- I don't know the exact duration of time, but I would say it was two months -- then they issued some comments on the agreement.

Q. At that time, the two months that they held on to it, did you have any conversations with anyone at Creedon about that contract?

A. I didn't personally, but I believe we, as Forest, called their accounting department to ask where the signed contract was.

Q. And what did Creedon say?

A. I don't know exactly, but that they didn't sign it to that point.

Q. Did you ever tell Tishman at this time that Creedon was refusing to sign the agreement?

A. Yes, they were aware of it.

Q. What did Tishman do, to your knowledge?

MR. BRADLEY: To the extent you

know.

MR. CHOA: Strike that. I'll start over.

BY MR. CHOA:

Q. Did Tishman instruct you, as Forest, to do anything regarding Creedon's failure to sign the bank form of agreement?

A. Other than expressing some concern and desire to get the contracts signed.

Q. Was Forest negotiating terms with Creedon at this time?

A. Terms of the contract?

Q. Right.

A. No.

Q. Did Tishman instruct Forest to negotiate terms of the contract with Creedon?

A. No. If anything, the form of the contract was not open for negotiation.

Q. Did there come a time where Creedon sent comments on the bank form of agreement to Forest?

A. Yes.

Q. Who did those comments go to?

A. I believe they were e-mailed to me.

Q. What did do you when you received that e-mail?

A. I forwarded them, I believe, to Donna Lucas and perhaps to outside counsel.

Q. Outside counsel for Forest?

A. Yes.

Q. Did you review the comments?

A. I read them.

MR. BRADLEY: Just so I can clarify, you're talking about the addendum that Creedon sent to Forest?

MR. CHOA: That's right.

MR. BRADLEY: Okay.

MR. CHOA: Actually, I'll introduce this as FF, which may refresh or familiarize.

(Exhibit FF was marked for identification)

BY MR. CHOA:

Q. Does this e-mail look familiar to you, Paul?

A. Yes, it does.

Q. And you write to Donna Lucas, "At the time I informed Creedon that no changes would be

accepted."

How did you inform Creedon? By that I mean, was there a writing? Was there an oral discussion? Was there another method?

A. I would say it would be an oral discussion.

Q. And do you remember the details of that oral discussion?

A. Not specifically.

Q. Do you remember if substantive issues were discussed?

A. No, I would say they were not.

Q. And do you remember what Creedon's reaction was when you informed them that no changes would be accepted?

A. I don't think they had a reaction at that point.

Q. Did you do anything else after receiving the e-mail at the bottom of this chain?

MR. CHOA: For the record, the e-mail is 6/14.

BY MR. CHOA:

Q. It's from Pat Creedon to you, attaching the addendum for the comments to the bank

form of agreement.

A. Other than forwarding it to Donna Lucas, I don't believe so.

MR. CHOA: I'm going to submit this as GG.

(Exhibit GG was marked for identification)

BY MR. CHOA:

Q. Have you ever seen this letter before, Paul?

A. Yes.

Q. Now, this is dated June 14th, 2004, and it says "Second Request" and it's sending to Pat Creedon copies of the Single Project Construction Services Agreement. Is that your understanding of this letter?

A. Yes.

Q. Do you know why a second request was made?

A. I'd like to comment that I believe this is attached to documents that weren't related to this first page. But to answer your question, it was sent because we received no response from the first request.

Q. So, you sent the second request?

A. Correct.

Q. Did you receive any response to the second request?

A. Ultimately we received -- the response to the second request was the addendum that Creedon sent to us by e-mail.

Q. The addendum seems to have the same date as the sending of the second request. Do you know which one came first?

A. I don't.

Q. So, you don't know if the second request was sent as a result of receiving the e-mail with the addendum?

A. I don't know the answer to that.

Q. To clarify the record, you are correct, the attachments are not correct, so let's just remove everything but the first page and just leave the first page as the only exhibit, just the cover letter.

What happened after the second request was sent to Creedon?

A. I guess it's a question of timing, but it would appear that we got this. . .

Q. This e-mail?

A. . . .this e-mail at around the same time.

Q. Did anything else happen?

A. Not that I recall.

Q. Did Forest Electric ever receive a signed copy of the bank form of agreement?

A. No.

Q. Did Creedon ever convey to Forest orally that it approved of the bank form of agreement?

A. Not specifically.

Q. What do you mean by "not specifically"?

A. Well, it appears that I did have a conversation with Pat Creedon and we discussed the fact that there would be no changes accepted.

Q. Did she ever tell you "Creedon accepts this contract," this contract being the bank form of agreement?

A. No, not as directly as that.

Q. Indirectly?

A. Again, I'm not making a legal judgment.

the defenses is that the construction agreement contract number 6B was between CCI and Banc One, only with Forest acting as agent for Banc One, the owner."

Now, is contract number 6B the same contract as the back form of agreement that we were just discussing?

A. Yes, I think it is.

Q. And what is the basis of your knowledge for saying that "the construction agreement contract number 6B was between CCI and Banc One, only with Forest acting agent for Banc One, the owner?

A. That's my understanding of the nature of that contract -- that agreement, rather.

Q. What is your understanding based on?

A. It's based on my understanding of the agreement.

Q. Did you see any documents that helped you form this understanding?

MR. BRADLEY: Objection. You mean other than the. . .

BY MR. CHOA:

Q. Other than the unsigned bank form of agreement, yes, did you review any other documents that led you to that understanding?

A. Well, I signed documents as agent that were cosigned by the bank.

Q. I'm sorry, but can you repeat that?

A. Another instance where it would be confirmed is that I signed documents as agent for the bank, and those documents were cosigned by bank personnel.

Q. That's the agency issue. Let's put that aside. We'll come back to that in a minute.

Right now I'm just talking about the fact that you said that the construction agreement contract number 6B was between CCI and Banc One.

Now, to me that implies that there was some sort of agreement between CCI and Forest, acting as agent for Banc One, that the 6B contract was agreed to by both parties; is that correct?

MR. BRADLEY: You mean that it was actually executed.

MR. CHOA: Right -- well, "executed" is a little bit of a legal term. I'm trying to get a layman's understanding.

THE WITNESS: I'm sorry, can you repeat the question?

Q. Now, you say it was requesting money and acting as an engaged contractor.

A. Right.

Q. Did those events occur before Creedon was ever sent the bank form of agreement?

A. Yes.

Q. So, those events occurred prior to Creedon ever getting the bank form -- strike that.

Is there anything else that forms the basis of your understanding that there was an agreement between Creedon and Forest?

A. I think that's about it, just that they were performing as the trade contractor.

Q. Whatever happened to the bank form of agreement, to your recollection?

A. It was sent to Creedon, and they responded with their comments.

Q. And then what happened -- did anything else happen after that?

A. As far as it being signed? No, it was never signed by Creedon.

MR. CHOA: I'm going to introduce HH.

Q. And these were interactions that you personally witnessed?

A. Yes.

Q. So, while the express authorization might never have happened, from observing their behavior is how you came to the understanding that Forest was able to act as agent for the bank?

MR. BRADLEY: Objection to the form.

THE WITNESS: Again, I don't know that it's a specific point in time, but you're us.

In other words, the bank is saying, "You are us. You're acting as agent for us," and of course that was how I acted, with the bank's interests.

BY MR. CHOA:

Q. And the bank was saying this to you?

A. Yes.

Q. Is it possible the bank was saying those type of things because the bank was the ultimate owner of the building and whatever was built would belong to the bank?

A. No, it was clearly a direction as far

as how we were to relate to the trade contractors on the job.

Q. And who from the bank told that to you?

A. Karl Auwarter would be the person that I would get that information from.

Q. Do you remember any specific conversations with Karl Auwarter?

A. And of course it would be reinforced by discussions with Tom Keane of Tishman. Specific conversations, no.

Q. So, you don't remember any specific point in time where Karl Auwarter said to you Forest Electric should act as the bank's agent?

A. No.

Q. And did you ever see any specific documents from Karl Auwarter to you saying that?

A. No.

Q. Was there anyone else at the bank that you had these conversations with?

A. He was the principal person I would interact with on the site from the bank.

Q. Did you ever ask to see documentation to support his position?

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
ATTN: Pat Creedon

RE: Bank One Brandywine - CDC II
General Lighting and Power – RFP 6B

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of $3,152,000.00 for electrical services, based on your Response to an Invitation to Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

[signature], VP
Paul Angerame
Vice President

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal council, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations.

Agreed to and Accepted By:

[signature]
Name: PATRICIA CREEDON
Title: PRESIDENT

Datacom Services • Power Solutions • Technology • Facilities Management

EXHIBIT
B6
6-14-06

CL 1143

# SUBCONTRACT AGREEMENT

Date: September 18, 2003

Between: Forest Electric Corp. (FEC)
Two Penn Plaza
New York, NY 10121

and

(SUBCONTRACTOR)

Forest Electric Corp. ("FEC") desires to engage SUBCONTRACTOR to perform certain Work, as set forth in the Scope of Work document ("Exhibit A") attached hereto, under FEC's Contract with Tishman Construction Corporation of Maryland ("Construction Manager"), the terms of which, along with all drawings, specifications and other documents associated therewith, are incorporated herein by reference, made a part hereof and which together with this Subcontract Agreement are collectively referred to as the "Contract Documents". The Project(s) are known as Bank One, ~~Bouw CDC I and~~ Brandywine CDC II, located in the State of Delaware.

SUBCONTRACTOR agrees to perform such Work as set forth in Exhibit A and will provide and furnish all labor, materials, tools, supplies, equipment, plant, services, facilities, temporary facilities, supervision, administration and all other requirements necessary for the proper and complete performance of such Work in accordance with the Contract Documents. SUBCONTRACTOR agrees to perform the Work to the complete satisfaction of Owner, Construction Manager and FEC for the Contract Price set forth herein.

SUBCONTRACTOR agrees that the consideration to be paid to SUBCONTRACTOR for the performance of the Work will be $122,000 Dollars ($0.00) ("Contract Price"), which Contract Price includes: (i) the cost of all materials, equipment, tools, supplies, plant, facilities and temporary services used by SUBCONTRACTOR in connection with the Work; (ii) all labor, services, supervision and administration required by SUBCONTRACTOR to complete the Work; (iii) all sales and use taxes, fees, contributions, etc. which may be imposed therein; (iv) the cost of all required insurance; and (v) the costs of an acceptable performance and payment bonds for one hundred percent (100%) of the Contract Price. The Contract Price is firm and not subject to escalation. Payments to be made in accordance with the payment schedule and subject to the terms, provisions and conditions of this Subcontract Agreement and all of the Contract Documents. / prime contract?

payment schedule?

I SUBCONTRACTOR represents that it has examined or has been given the opportunity to examine (1) the site of the Work; and (2) all contractual documents associated herewith, has found no conflicts between the various documents and is familiar with the Work to be performed and the site upon which the Work will be performed and acknowledges that no conditions exist which would affect the progress, performance or price of this Agreement. SUBCONTRACTOR agrees to be bound and obligated to FEC as FEC is bound and obligated to Construction Manager and/or Owner under its Contract as to the Work provided hereunder. IF SUCH CONFLICTS EXIST, THIS DOCUMENT SHALL PREVAIL

II All work, labor, services and materials to be furnished, supplied or performed by the SUBCONTRACTOR (Work) must strictly comply with all Federal, State, Local, Municipal, as well as any and all other governing jurisdictions and authorities' Laws, Rules, Regulations, Statutes, Ordinances, and Directives. SUBCONTRACTOR shall comply with all safety and health laws and codes, including, but not limited to, OSHA rules and regulations and all Hazardous Communications Programs required under such laws and codes.

III FEC may, without notice to SUBCONTRACTOR's surety, make changes including the omission of Work and may order the performance of other work by a written change order. Any adjustment to the Contract Price or the time in which the Work is to be completed will be specifically set forth in the change order and if not SUBCONTRACTOR shall not be entitled to any adjustment in the Contract Price and/or time of performance. SUBCONTRACTOR shall not proceed with Work not set forth in Exhibit A until it has received a written change order or shall do so at its own risk. This paragraph shall not apply to ordinary field modifications which do not substantially increase SUBCONTRACTOR's cost of this Agreement and which will be performed without time or price adjustment.

IV SUBCONTRACTOR agrees to store all its equipment, materials, tools, and appliances in designated areas and shall be responsible for its safety and all risks of loss associated therewith.

V SUBCONTRACTOR shall continuously maintain the project site free from all dirt, rubbish, debris and other waste materials, and shall daily collect and remove such items from the project site without unnecessary delay.

VI SUBCONTRACTOR shall furnish sufficient forces to assure proper performance of the Work and to maintain proper and timely progress of its Work, both without additional compensation. If, in the opinion of FEC, SUBCONTRACTOR fails to furnish such forces or maintain such progress, FEC, at its option, shall be entitled to terminate this Subcontract Agreement.

VII SUBCONTRACTOR shall as an independent contractor of FEC, to the fullest extent permitted by law, to defend, indemnify and hold harmless FEC, Construction Manager, and Bank One, each of their respective officers, directors, partners, representatives, agents and employees against any and all damages, liabilities and costs, including reasonable attorneys' fees and all court costs, arising from the negligent acts of SUBCONTRACTOR, and its subcontractors, or anyone for whom SUBCONTRACTOR is legally liable in the performance of Work under this Subcontract Agreement, to the extent that SUBCONTRACTOR is responsible for such damages, liabilities and costs on a comparative basis of fault and responsibility between SUBCONTRACTOR and FEC or any other indemnitee herein. SUBCONTRACTOR shall not be obligated to indemnify FEC or any other indemnitee for the negligence of FEC or any other indemnitee. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

To the fullest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless FEC, Construction Manager and Bank One, each of their respective officers, directors, partners and employees from and against any and all claims, suits, liens, judgments, damages, losses, costs and expenses incurred, including reasonable attorneys' fees, related to property damage and/or personal injury or death to employees of SUBCONTRACTOR, and/or employees of subcontractors of SUBCONTRACTOR, and/or any third party to the extent arising from the negligent acts, omissions or default of the SUBCONTRACTOR, its employees, directors, officers, agents or subcontractors, or others for whom the SUBCONTRACTOR is legally liable. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense. ??

VIII As part of the SUBCONTRACTOR's overall obligation to protect others and to defend and hold FEC harmless from all liability and costs the SUBCONTRACTOR shall obtain and maintain, at its expense, full and complete insurance coverage as may be specified in this Subcontract Agreement ("Exhibit B") and in the Contract Documents. The insurance procurement requirement of this provision is consistent with and made part of the indemnification and hold harmless provision of this Subcontract Agreement. FEC is not responsible to provide any protective services for the SUBCONTRACTOR's benefit and shall not be held liable for any loss or damage to SUBCONTRACTOR's Work, materials, tools or appliances.

IX SUBCONTRACTOR may not assign or sublet this Subcontract Agreement, in whole or in part, without the prior written consent of FEC.

X Upon breach of any of the terms and/or conditions of this Subcontract Agreement or the Contract Documents or the insolvency of the SUBCONTRACTOR, FEC upon written notice to the SUBCONTRACTOR shall have the right, without terminating this Subcontract Agreement, to provide through itself or through others, any labor, materials, supplies, equipment, tools, plant, services, supervision and/or administration for the performance of the Work, or any portion thereof, and deduct the cost thereof from any money due or thereafter to become due to the SUBCONTRACTOR under the Subcontract Agreement. FEC also may, in its sole discretion, in addition to, or in lieu of the exercise of the aforesaid right, after written notice as aforesaid, terminate this Subcontract Agreement and the employment of the SUBCONTRACTOR and its right to proceed. In such event FEC may finish the Work by whatever method it may deem expedient and the SUBCONTRACTOR shall be liable to FEC for any excess cost incurred by FEC thereby, together with all other damages (including consequential damages) arising out of, under or in connection with the breach by SUBCONTRACTOR. In the event of default by SUBCONTRACTOR, FEC, in addition to the remedies set forth above, has the right of offset against any monies due the SUBCONTRACTOR at the time of default, or thereafter to become due in connection with this or any other project.

If after termination of the Subcontract Agreement and the employment of the SUBCONTRACTOR, it is determined that the SUBCONTRACTOR was not in default, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of FEC pursuant to Article XX hereof.

XI The SUBCONTRACTOR shall become entitled to receive progress payments for its Work duly performed during the payment periods as established in the Contract Documents and this Subcontract Agreement. To the extent permitted by law, it is specifically understood and agreed that payment to SUBCONTRACTOR is dependent on the condition precedent that FEC receives payment from Construction Manager and/or Owner for SUBCONTRACTOR's Work. SUBCONTRACTOR agrees to look solely to such funds for payment.

SUBCONTRACTOR must submit its requisition, in proper form, to FEC at least five (5) days prior to the requisition date set forth in the Contract Documents. The estimate of the principal amount as determined by FEC shall be binding on the SUBCONTRACTOR and progress payments shall not exceed ninety (90%) percent of the amount requisitioned by the SUBCONTRACTOR. Final payment shall become payable sixty (60) days after final completion and acceptance of the Work and receipt of payment by FEC from Construction Manager, including any retainers, which payment shall be a condition precedent to FEC's obligation to pay SUBCONTRACTOR. Prior to any payment SUBCONTRACTOR shall prove that its Work is free and clear from any and all liens and claims and shall furnish all required lien waivers and releases in connection with the final payment and all interim progress payments.

The terms, provisions and conditions of this Subcontract Agreement are not intended to nor shall they be construed as in anyway prohibiting, diminishing or abrogating SUBCONTRACTOR's right to file and enforce a mechanics' lien under the Lien Laws of the State in which the Project is located, and SUBCONTRACTOR shall be entitled to pursue any and all rights to which it may be entitled under such Lien Law in event FEC does not pay SUBCONTRACTOR amounts earned hereunder, including non-payment resulting from delayed payments or non-payment by third parties to FEC.

Acceptance of final payment by the SUBCONTRACTOR constitutes a general release of Owner, Construction Manager, FEC and its Surety, if any.

XII SUBCONTRACTOR shall discharge any Notice of Lien or other encumbrance filed against the SUBCONTRACTOR, FEC, Construction Manager, Owner, the Project or any monies earned by the SUBCONTRACTOR or FEC, should such lien result from failure of SUBCONTRACTOR to pay its obligations.

XIII The validity, interpretation and performance of this Subcontract Agreement shall be governed by the Laws of the State of Delaware and any judicial proceeding shall be brought in the County of New Castle and State of Delaware within two (2) years of the date the cause of action accrued, but in no event after final payment to the SUBCONTRACTOR. SUBCONTRACTOR agrees to participate in and be bound by any proceedings which directly or indirectly relates to this Subcontract Agreement (whether it be litigation, arbitration and/or mediation). No dispute or controversy shall interfere with the progress of construction and SUBCONTRACTOR shall proceed with the Work without causing interruption, deficiency or delay.

XIV Time of performance is of the essence of this Subcontract Agreement and the SUBCONTRACTOR agrees that it will perform its Work in accordance with the Construction Schedule prepared from time to time by FEC or the Construction Manager and that it will not delay any of the work being performed by other contractors or subcontractors or the progress of the project including that of the Construction Manager or FEC. SUBCONTRACTOR agrees that it will be responsible for all damage(s) caused by its delay(s) during the course of the performance of its Work.

Should the SUBCONTRACTOR's Work be delayed, hindered, obstructed, interfered with, and/or accelerated by a cause or causes beyond the control of the SUBCONTRACTOR, the sole remedy available to the SUBCONTRACTOR shall be an equitable extension of time for the performance of its Work provided FEC is correspondingly entitled to such equitable extension of time from Owner or Construction Manager and under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price or to damages as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work.

XV This Subcontract Agreement cannot be changed, modified or altered orally. It supersedes all prior representations made by FEC and is conditional upon the approval of the SUBCONTRACTOR by the Construction Manager and/or Owner. If any term or provision of this Agreement is found invalid, illegal or unenforceable, such term or provision shall be deemed severed from this Subcontract Agreement and it shall not affect the validity and enforcement of all remaining terms and conditions of this Subcontract Agreement.

XVI The SUBCONTRACTOR shall be responsible and liable for all costs, disbursements and expenses, including attorney's fees, incurred by FEC as a result of FEC having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of the SUBCONTRACTOR, its employees, directors, officers, agents, or its subcontractors, suppliers or vendors.

XVII SUBCONTRACTOR shall maintain and preserve for a period of five (5) years after final payment under this Subcontract Agreement all records and accounts pertaining to Work performed for FEC. FEC shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such Work, and for five (5) years following completion of the Work, for the purpose of verifying units furnished and costs incurred, as applicable.

XVIII SUBCONTRACTOR to submit a single guarantee stating that all portions of the Work are in accordance with contractual requirements. SUBCONTRACTOR guarantees all Work against faulty and improper material and workmanship for a period of one (1) year from date of final acceptance by the Owner, except that where guarantees or warranties for longer terms are specified herein or in the Contract Documents, such longer term shall apply. At no additional cost to Owner, Construction Manager or FEC, within twenty-four (24) hours after notification, SUBCONTRACTOR shall correct any deficiencies which occur during the guarantee period, all to the satisfaction of the Owner and/or Construction Manager.

XIX SUBCONTRACTOR represents and warrants that any equipment, product, system, software, hardware or application of same ("Product") provided and/or installed is Year 2000 compliant (will function properly and without interruption before, during and after January 1, 2000) and that all data and files, enhancements, upgrades, customizations and modifications, shall accurately process date and time data, will be Year 2000 compliant. If it appears that any hardware or software or any other product, does not conform to this warranty, SUBCONTRACTOR shall within twenty-four (24) hours of receipt of notice, repair, replace or correct such non-conformity at SUBCONTRACTOR's sole expense and cost including but not limited to parts, labor, shipping, packaging, transportation and insurance.

SUBCONTRACTOR's liability hereunder shall extend to all damages proximately caused by the breach of any of the foregoing warranties and guarantees. SUBCONTRACTOR shall indemnify, defend and hold harmless FEC, from and against all claims, losses, damages, expenses and/or costs arising from SUBCONTRACTOR's breach of the aforesaid warranties and guarantees. This indemnification shall not be subject to any limitation of remedies which are contained in any agreement(s) or purchase order(s) between SUBCONTRACTOR and FEC, and shall survive the termination of any agreement(s) or purchase order(s) between said parties.

The failure of either SUBCONTRACTOR, or its' lower-tier subcontractors, suppliers or vendors, to use equipment, systems, software and hardware that in any way supports its ability to supply and/or install Products or otherwise perform it obligations under this Agreement shall not be considered as a Force Majeure event and shall not in any way relieve SUBCONTRACTOR from its duty to timely perform its obligations under this Agreement.

XX FEC by written notice, shall have the right to cancel and terminate this Subcontract Agreement and the employment of SUBCONTRACTOR for its own convenience. In such event, FEC shall pay the SUBCONTRACTOR for the Work actually performed in an amount proportionate to the Contract Price, provided the SUBCONTRACTOR is not in default.

XXI In the event Owner or Construction Manager becomes insolvent, files a petition for the benefit of creditors or enters into proceedings relating to bankruptcy, whether voluntary or involuntary, any and all payment obligations and liability to SUBCONTRACTOR from FEC shall end, and SUBCONTRACTOR's only remedies will be a) filing a claim within the bankruptcy or other proceedings, or b) accepting a proportionate amount of FEC's claim or percentage thereof relating to SUBCONTRACTOR's Work under the bankruptcy or other proceedings or settlement, if any, or c) an apportioned percentage if FEC's claim is purchased by a third party.

XXII SUBCONTRACTOR shall comply with all requirements relative to Equal Employment Opportunity and Affirmative Action Requirements. Further, SUBCONTRACTOR shall include said requirements in any subcontract or purchase order it has with any other party in such a manner so that said requirements will be binding upon those parties.

XXIII No provision contained in this Subcontract Agreement shall create or give to third parties any claim or right of action against FEC, Construction Manager and/or Owner beyond such as may legally exist in the absence of any such provision.

XXIV SUBCONTRACTOR agrees to maintain the confidentiality of all information and documentation as proprietary, confidential or otherwise restricted as to disclose such as, but not limited to, programs, codes, flow charts, logic diagrams, files and associated documentation, which are either the proprietary property of FEC or the property of others that are licensed, disclosed or entrusted to FEC. The obligations contained in this clause shall survive the expiration or termination of this Subcontract Agreement.

XXV It is the intent and understanding of the parties to this Subcontract Agreement that each and every provision of law required to be inserted in this Subcontract Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein, and if, through mistake or otherwise, any such provision is not inserted, or is not inserted in correct form, then this Subcontract Agreement shall forthwith upon the application of either party be amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder.

XXVI In event of any conflict or ambiguity within the Contract Documents, this Subcontract Agreement shall take precedence and control.

XXVII This Subcontract Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Subcontract Agreement to be drafted.

XXVIII SUBCONTRACTOR must be properly licensed to perform the Work in the City, County and State in which the proposed Work is to be performed. SUBCONTRACTOR shall furnish and pay for all permits and licenses necessary to complete the Work and legal evidence of such shall be delivered to FEC.

XXIX The parties agree that for the performance of its contractual obligations, SUBCONTRACTOR shall be an independent contractor and shall not be considered an agent or servant of FEC.

XXX The individual executing this Subcontract Agreement on behalf of SUBCONTRACTOR personally certifies and warrants that by his or her execution hereof, this Subcontract Agreement shall be legally binding on and enforceable against SUBCONTRACTOR.

IN WITNESS WHEREOF the parties have executed this Subcontract Agreement on the day and year first above written.

Forest Electric Corp.

| | |
|---|---|
| By:________________________ | By: |
| Name: | Name: |
| Title: | Title: |

# EXHIBIT "A"

## SCOPE OF WORK

[DETAIL SCOPE OF WORK / LIST DRAWINGS]

All other terms and conditions as described in Forest Electric Corp.'s Contract with the Construction Manager are applicable.

SUBCONTRACTOR agrees that the Work specifically set forth in this Scope of Work document includes all other work incident or related thereto, reasonably necessary to its performance and usually performed by the trades.

The Work shall be performed in a skillful and workmanlike manner with new material, products and equipment of the usual quality for a job of this type.

SUBCONTRACTOR shall provide at its expense all supervision, tools, equipment, hoisting charges, elevator charges, heat, light, power, etc. to perform its own Work.

# EXHIBIT "B"

## INSURANCE REQUIREMENTS

Prior to inception of operations, SUBCONTRACTOR shall enroll into and comply with all aspects of the Owner Controlled Insurance Project (see attached OCIP Manual). SUBCONTRACTOR must provide evidence of off-site coverages, however in the event the SUBCONTRACTOR is not approved and enrolled into the OCIP SUBCONTRACTOR must maintain the following insurance as a minimum, in addition to coverages outlined in the OCIP Manual.

| COVERAGE | LIMITS OF LIABILITY |
| --- | --- |
| Commercial General Liability | $10,000,000 per Occurrence/General Aggregate Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies.<br><br>Coverage(s) shall provide and encompass at least the following:<br><br>a. X, C and U hazards, where applicable.<br>b. Independent Contractors.<br>c. Blanket Contractual Liability covering all Indemnity Agreements.<br>d. CGL coverage written on an occurrence form.<br>e. Completed Operations/Products Liability with a two (2) year extension beyond completion and acceptance of the project.<br>f. Broad Form Property Damage<br>g. Person Injury Liability (A,B, & C) |
| Auto Liability | $1,000,000 per Occurrence Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| Workers Compensation/Employers Liability | As determined by Statute with other states endorsement and minimum Employers Liability Limits of $500,000 bodily injury each Accident; $500,000 bodily injury by disease – policy limit; $500,000 bodily injury by disease – each employee. |
| "All Risk" Property Insurance | Covering all material, equipment and supplies stored away from the Project site and while in due course of transit until actually delivered to the Project site and accepted, including installation. Subcontractor/vendor shall be responsible for all deductibles. Coverage shall not be less than $2,000,000 per Occurrence. |
| Pollution Liability Insurance | Limits of liability of $2,000,000 each claim and aggregate with a deductible no greater than $100,000 each claim. |
| ENDORSE AS ADDITIONAL INSUREDS: | Forest Electric Corp., EMCOR Group, Inc., Bank One Building Corporation, its parent and affiliates, directors, officers, representatives, agents and employees, Tishman Construction Corporation of Maryland, Tishman Construction Corporation, Gensler, EYP Mission Critical Facilities, Inc., and each of their respective parent companies, corporations and/or partnerships and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, directors, and employees of each and any other indemnitees as required by the contract documents. |
| The Certificate Holder shall be: | Forest Electric Corp.<br>Two Penn Plaza<br>New York, NY 10121 |

CL 1150

- The following Certificate Addendum is required to be executed and returned.
- Policies to be primary and non-contributory as respects the coverage afforded the additional insureds. If subcontractor or vendor has other insurance that is applicable to the loss, it shall be on an excess basis. SUBCONTRACTOR's liability under any policy provided hereunder shall not be reduced by the existence of such other insurance.
- Certificate(s) of Insurance must provide for thirty (30) days written notice prior to cancellation, non-renewal or material modification of any policy to the Certificate Holder and ten (10) days written notice for non payment of premiums. Such Certificate(s) of Insurance shall have the phrase "endeavor to" deleted. Additionally, language attempting to waive the broker liability for failure to provide notice will not be permitted.
- The insurance policies must include a waiver of subrogation clause as follows: "It is agreed that in no event will the insurance company have any right of recovery against any of the Additional Insureds".
- All insurance carriers must be licensed in the State where the Project is located and be rated at least A-VIII in Best's.
- SUBCONTRACTOR shall provide a copy of the Employer's First Report of Injury or its equivalent to Forest Electric Corp., attention Insurance Department, within ten (10) days of any injury or illness to any employee of the SUBCONTRACTOR arising out of, or alleged to have arisen out of or during the course of Work performed at the Project.

The SUBCONTRACTOR shall not sublet or subcontract any part of this Subcontract Agreement without assuming absolute responsibility for requiring similar insurance from its subcontractors, suppliers and vendors.

Failure of the SUBCONTRACTOR to maintain full and complete insurance may be deemed a material breach allowing Forest Electric Corp. to terminate this Subcontract Agreement, or to provide insurance at the SUBCONTRACTOR's sole expense; in neither case, however, shall the SUBCONTRACTOR's liability be lessened.

**Certificate Addendum** **(REQUIRED)** - Subcontractor's Agent or Broker must sign this Addendum OR incorporate items 1-6 below as part of the executed certificate of insurance. Note: If builders' risk / installation insurance is not required by the subcontract then item 4 need not be included.

Insured Subcontractor: ____________________

Certificate Holder: Forest Electric Corp. ____________________

Project Name and Number: ____________________

Date Certificate Issued: ____________________

*The following provisions are incorporated into and made a part of the Certificate of Insurance:*

1. **Additional Insureds**
   Forest Electric Corp., EMCOR Group, Inc., all other parties so required by contract, and their respective directors, officers, representatives, agents and employees, are Additional Insureds on all policies except for Workers' Compensation, E&O / Professional Liability, Builder's Risk / Installation, and Contractor's Equipment. The required Additional Insured endorsement in the General Liability policy is ISO (Insurance Services Office) form CG20101185 or equivalent which includes ongoing and completed operations coverage. The General Liability policy shall not contain ISO form CG20101093 or equivalent, which excludes completed operations coverage.

2. **Primary and Non-Contributory**
   All subcontractor insurance policies are primary and non-contributory in favor of Forest Electric Corp., Additional Insureds, Loss Payees and all other parties required by contract. The insurance of Forest Electric Corp., Additional Insureds, Loss Payees, all other parties so required by contract, and the insurance of their respective directors, officers, representatives, agents or employees, will not be called upon to contribute to any claims covered by the policies referenced in this certificate.

3. **Waiver of Subrogation**
   All policies contain a waiver of subrogation in favor of Forest Electric Corp., EMCOR Group, Inc., Additional Insureds, Loss Payees, and all other entities so required by contract.

4. **Loss Payees**
   Forest Electric Corp., EMCOR Group, Inc., and all other entities so required by contract, are Loss Payees with respect to the Builder's Risk / Installation Floater coverage.

5. **Umbrella Attachment**
   The Excess (Umbrella) Liability policy attaches directly excess of the indicated primary General Liability, Products/Completed Operations Liability, Automobile Liability and Employers' Liability policies.

6. **Self-Insured Retentions ("SIR")**
   All SIRs are fully disclosed on the Certificate of Insurance.

____________________
Signature of authorized agent or broker

____________________
Name and title (print) Date

CL 1152

*Celebrating 15 Years*

*"Getting the job done right the first time."*

# Creedon Controls
## *Electrical Contractors*

US Small Business Administration
SBA

8(a)/SDB Certified
WBE Certified
DOT DBE Certified
2002 *Entrepreneurial Woman of the Year*

1997
SMALL BUSINESS
PERSON OF THE YEAR

Visit us at: www.creedoncontrols.com

Licensed DE, MD, PA & NJ

## FAX TRANSMITTAL

DATE: 5/28/04

// rec'd

No. of Pages 6 (Including cover page)

TO: Dennis Link

COMPANY: Karden Construction Services Inc

FROM: Patricia Creedon

RE: Sample Subcontract

Please give us a call if you did not receive this properly.

MESSAGE

Dennis - I am faxing you the sample subcontract in case you needed to satisfy your own curiosity, but I could not find any reference to payments being conditional upon executing the subcontract.

Have a good Memorial Day, complete your "honeydo" list and enjoy the shower........

Pat

3424 Old Capitol Trail, Wilmington, DE 19808 *(302)892-2000 *Fax (302)892-2002

CL 1153



An EMCOR Company

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

October 2, 2003

Creedon Controls
3424 Old Capitol Trail
Wilmington, DE 19808
ATTN: Pat Creedon

RE: Bank One Brandywine - CDC II
General Lighting and Power – RFP 6B **REVISED 10/31/03**

Dear Ms. Creedon,

This letter is to acknowledge our mutual desire to enter into a Subcontract Agreement with Creedon Controls Electrical Contractors on the above referenced Project for a lump sum of **$3,184,600.00** for electrical services, based on your Response to an Invitation to Bid – Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule.

Although the Prime Contract Documents have not been finalized, it is the intent of the parties to begin Work and will endeavor to enter into and execute a definite Subcontract Agreement defining the construction services which shall include, in addition to other terms and conditions, customary representations, warranties, bonding, indemnities, and insurance from Subcontract Agreement executed, Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

Subcontractor will furnish evidence of insurance as per Exhibit B of the Subcontract Agreement prior to proceeding with any Work.

Very truly yours,

FOREST ELECTRIC CORP.

[signature], Jr

Paul Angerame
Vice President

EXHIBIT
CC
6-14-06

This Letter of Intent is accepted and will be considered executed after the required subsequent review, modification, negotiations, and implementation of the advice from Creedon Controls Inc.'s legal council, allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional considerations.

Agreed to and Accepted By:

Patricia Creedon
Name: PATRICIA CREEDON, 11/05/03
Title: PRESIDENT

Datacom Services • Power Solutions • Technology • Facilities Management

# SUBCONTRACT AGREEMENT

Date: September 18, 2003

Between: Forest Electric Corp. (FEC)
Two Penn Plaza
New York, NY 10121

and

(SUBCONTRACTOR)

Forest Electric Corp. ("FEC") desires to engage SUBCONTRACTOR to perform certain Work, as set forth in the Scope of Work document ("Exhibit A") attached hereto, under FEC's Contract with Tishman Construction Corporation of Maryland ("Construction Manager"), the terms of which, along with all drawings, specifications and other documents associated therewith, are incorporated herein by reference, made a part hereof and which together with this Subcontract Agreement are collectively referred to as the "Contract Documents". The Project(s) are known as Bank One, ~~Bear CDC I and~~ Brandywine CDC II, located in the State of Delaware.

SUBCONTRACTOR agrees to perform such Work as set forth in Exhibit A and will provide and furnish all labor, materials, tools, supplies, equipment, plant, services, facilities, temporary facilities, supervision, administration and all other requirements necessary for the proper and complete performance of such Work in accordance with the Contract Documents. SUBCONTRACTOR agrees to perform the Work to the complete satisfaction of Owner, Construction Manager and FEC for the Contract Price set forth herein.

SUBCONTRACTOR agrees that the consideration to be paid to SUBCONTRACTOR for the performance of the Work will be 3,152,000 Dollars ($0.00) ("Contract Price"), which Contract Price includes: (i) the cost of all materials, equipment, tools, supplies, plant, facilities and temporary services used by SUBCONTRACTOR in connection with the Work; (ii) all labor, services, supervision and administration required by SUBCONTRACTOR to complete the Work; (iii) all sales and use taxes, fees, contributions, etc. which may be imposed therein; (iv) the cost of all required insurance; and (v) the costs of an acceptable performance and payment bonds for one hundred percent (100%) of the Contract Price. The Contract Price is firm and not subject to escalation. Payments to be made in accordance with the payment schedule and subject to the terms, provisions and conditions of this Subcontract Agreement and all of the Contract Documents. prime contract?

I SUBCONTRACTOR represents that it has examined or has been given the opportunity to examine (1) the site of the Work; and (2) all contractual documents associated herewith, has found no conflicts between the various documents and is familiar with the Work to be performed and the site upon which the Work will be performed and acknowledges that no conditions exist which would affect the progress, performance or price of this Agreement. SUBCONTRACTOR agrees to be bound and obligated to FEC as FEC is bound and obligated to Construction Manager and/or Owner under its Contract as to the Work provided hereunder. IF SUCH CONFLICTS EXIST, THIS DOCUMENT SHALL PREVAIL

II All work, labor, services and materials to be furnished, supplied or performed by the SUBCONTRACTOR (Work) must strictly comply with all Federal, State, Local, Municipal, as well as any and all other governing jurisdictions and authorities' Laws, Rules, Regulations, Statutes, Ordinances, and Directives. SUBCONTRACTOR shall comply with all safety and health laws and codes, including, but not limited to, OSHA rules and regulations and all Hazardous Communications Programs required under such laws and codes.

III FEC may, without notice to SUBCONTRACTOR's surety, make changes including the omission of Work and may order the performance of other work by a written change order. Any adjustment to the Contract Price or the time in which the Work is to be completed will be specifically set forth in the change order and if not SUBCONTRACTOR shall not be entitled to any adjustment in the Contract Price and/or time of performance. SUBCONTRACTOR shall not proceed with Work not set forth in Exhibit A until it has received a written change order or shall do so at its own risk. This paragraph shall not apply to ordinary field modifications which do not substantially increase SUBCONTRACTOR's cost of this Agreement and which will be performed without time or price adjustment.

IV SUBCONTRACTOR agrees to store all its equipment, materials, tools, and appliances in designated areas and shall be responsible for its safety and all risks of loss associated therewith.

V SUBCONTRACTOR shall continuously maintain the project site free from all dirt, rubbish, debris and other waste materials, and shall daily collect and remove such items from the project site without unnecessary delay.

VI SUBCONTRACTOR shall furnish sufficient forces to assure proper performance of the Work and to maintain proper and timely progress of its Work, both without additional compensation. If, in the opinion of FEC, SUBCONTRACTOR fails to furnish such forces or maintain such progress, FEC, at its option, shall be entitled to terminate this Subcontract Agreement.

VII SUBCONTRACTOR shall as an independent contractor of FEC, to the fullest extent permitted by law, to defend, indemnify and hold harmless FEC, Construction Manager, and Bank One, each of their respective officers, directors, partners, representatives, agents and employees against any and all damages, liabilities and costs, including reasonable attorneys' fees and all court costs, arising from the negligent acts of SUBCONTRACTOR, and its subcontractors, or anyone for whom SUBCONTRACTOR is legally liable in the performance of Work under this Subcontract Agreement, to the extent that SUBCONTRACTOR is responsible for such damages, liabilities and costs on a comparative basis of fault and responsibility between SUBCONTRACTOR and FEC or any other indemnitee herein. SUBCONTRACTOR shall not be obligated to indemnify FEC or any other indemnitee for the negligence of FEC or any other indemnitee. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

To the fullest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless FEC, Construction Manager and Bank One, each of their respective officers, directors, partners and employees from and against any and all claims, suits, liens, judgments, damages, losses, costs and expenses incurred, including reasonable attorneys' fees, related to property damage and/or personal injury or death to employees of SUBCONTRACTOR, and/or employees of subcontractors of SUBCONTRACTOR, and/or any third party to the extent arising from the negligent acts, omissions or default of the SUBCONTRACTOR, its employees, directors, officers, agents or subcontractors, or others for whom the SUBCONTRACTOR is legally liable. Under this provision, to the extent the SUBCONTRACTOR shall be required to provide defense and indemnification, the FEC and/or Owner shall have the right to approve counsel to conduct such defense.

VIII As part of the SUBCONTRACTOR's overall obligation to protect others and to defend and hold FEC harmless from all liability and costs the SUBCONTRACTOR shall obtain and maintain, at its expense, full and complete insurance coverage as may be specified in this Subcontract Agreement ("Exhibit B") and in the Contract Documents. The insurance procurement requirement of this provision is consistent with and made part of the indemnification and hold harmless provision of this Subcontract Agreement. FEC is not responsible to provide any protective services for the SUBCONTRACTOR's benefit and shall not be held liable for any loss or damage to SUBCONTRACTOR's Work, materials, tools or appliances.

IX SUBCONTRACTOR may not assign or sublet this Subcontract Agreement, in whole or in part, without the prior written consent of FEC.

X Upon breach of any of the terms and/or conditions of this Subcontract Agreement or the Contract Documents or the insolvency of the SUBCONTRACTOR, FEC upon written notice to the SUBCONTRACTOR shall have the right, without terminating this Subcontract Agreement, to provide through itself or through others, any labor, materials, supplies, equipment, tools, plant, services, supervision and/or administration for the performance of the Work, or any portion thereof, and deduct the cost thereof from any money due or thereafter to become due to the SUBCONTRACTOR under the Subcontract Agreement. FEC also may, in its sole discretion, in addition to, or in lieu of the exercise of the aforesaid right, after written notice as aforesaid, terminate this Subcontract Agreement and the employment of the SUBCONTRACTOR and its right to proceed. In such event FEC may finish the Work by whatever method it may deem expedient and the SUBCONTRACTOR shall be liable to FEC for any excess cost incurred by FEC thereby, together with all other damages (including consequential damages) arising out of, under or in connection with the breach by SUBCONTRACTOR. In the event of default by SUBCONTRACTOR, FEC, in addition to the remedies set forth above, has the right of offset against any monies due the SUBCONTRACTOR at the time of default, or thereafter to become due in connection with this or any other project.

If after termination of the Subcontract Agreement and the employment of the SUBCONTRACTOR, it is determined that the SUBCONTRACTOR was not in default, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of FEC pursuant to Article XX hereof.

XI The SUBCONTRACTOR shall become entitled to receive progress payments for its Work duly performed during the payment periods as established in the Contract Documents and this Subcontract Agreement. To the extent permitted by law, it is specifically understood and agreed that payment to SUBCONTRACTOR is dependent on the condition precedent that FEC receives payment from Construction Manager and/or Owner for SUBCONTRACTOR's Work. SUBCONTRACTOR agrees to look solely to such funds for payment.

SUBCONTRACTOR must submit its requisition, in proper form, to FEC at least five (5) days prior to the requisition date set forth in the Contract Documents. The estimate of the principal amount as determined by FEC shall be binding on the SUBCONTRACTOR and progress payments shall not exceed ninety (90%) percent of the amount requisitioned by the SUBCONTRACTOR. Final payment shall become payable sixty (60) days after final completion and acceptance of the Work and receipt of payment by FEC from Construction Manager, including any retainers, which payment shall be a condition precedent to FEC's obligation to pay SUBCONTRACTOR. Prior to any payment SUBCONTRACTOR shall prove that its Work is free and clear from any and all liens and claims and shall furnish all required lien waivers and releases in connection with the final payment and all interim progress payments.

The terms, provisions and conditions of this Subcontract Agreement are not intended to nor shall they be construed as in anyway prohibiting, diminishing or abrogating SUBCONTRACTOR's right to file and enforce a mechanics' lien under the Lien Laws of the State in which the Project is located, and SUBCONTRACTOR shall be entitled to pursue any and all rights to which it may be entitled under such Lien Law in event FEC does not pay SUBCONTRACTOR amounts earned hereunder, including non-payment resulting from delayed payments or non-payment by third parties to FEC.

Acceptance of final payment by the SUBCONTRACTOR constitutes a general release of Owner, Construction Manager, FEC and its Surety, if any.

XII SUBCONTRACTOR shall discharge any Notice of Lien or other encumbrance filed against the SUBCONTRACTOR, FEC, Construction Manager, Owner, the Project or any monies earned by the SUBCONTRACTOR or FEC, should such lien result from failure of SUBCONTRACTOR to pay its obligations.

XIII The validity, interpretation and performance of this Subcontract Agreement shall be governed by the Laws of the State of Delaware and any judicial proceeding shall be brought in the County of New Castle and State of Delaware within two (2) years of the date the cause of action accrued, but in no event after final payment to the SUBCONTRACTOR. SUBCONTRACTOR agrees to participate in and be bound by any proceedings which directly or indirectly relates to this Subcontract Agreement (whether it be litigation, arbitration and/or mediation). No dispute or controversy shall interfere with the progress of construction and SUBCONTRACTOR shall proceed with the Work without causing interruption, deficiency or delay.

XIV Time of performance is of the essence of this Subcontract Agreement and the SUBCONTRACTOR agrees that it will perform its Work in accordance with the Construction Schedule prepared from time to time by FEC or the Construction Manager and that it will not delay any of the work being performed by other contractors or subcontractors or the progress of the project including that of the Construction Manager or FEC. SUBCONTRACTOR agrees that it will be responsible for all damage(s) caused by its delay(s) during the course of the performance of its Work.

Should the SUBCONTRACTOR's Work be delayed, hindered, obstructed, interfered with, and/or accelerated by a cause or causes beyond the control of the SUBCONTRACTOR the sole remedy available to the SUBCONTRACTOR shall be an equitable extension of time for the performance of its Work provided FEC is correspondingly entitled to such equitable extension of time from Owner or Construction Manager and under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price or to damages as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work.

XV This Subcontract Agreement cannot be changed, modified or altered orally. It supersedes all prior representations made by FEC and is conditional upon the approval of the SUBCONTRACTOR by the Construction Manager and/or Owner. If any term or provision of this Agreement is found invalid, illegal or unenforceable, such term or provision shall be deemed severed from this Subcontract Agreement and it shall not affect the validity and enforcement of all remaining terms and conditions of this Subcontract Agreement.

XVI The SUBCONTRACTOR shall be responsible and liable for all costs, disbursements and expenses, including attorney's fees, incurred by FEC as a result of FEC having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of the SUBCONTRACTOR, its employees, directors, officers, agents, or its subcontractors, suppliers or vendors.

XVII SUBCONTRACTOR shall maintain and preserve for a period of five (5) years after final payment under this Subcontract Agreement all records and accounts pertaining to Work performed for FEC. FEC shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such Work, and for five (5) years following completion of the Work, for the purpose of verifying units furnished and costs incurred, as applicable.

XVIII SUBCONTRACTOR to submit a single guarantee stating that all portions of the Work are in accordance with contractual requirements. SUBCONTRACTOR guarantees all Work against faulty and improper material and workmanship for a period of one (1) year from date of final acceptance by the Owner, except that where guarantees or warranties for longer terms are specified herein or in the Contract Documents, such longer term shall apply. At no additional cost to Owner, Construction Manager or FEC, within twenty-four (24) hours after notification, SUBCONTRACTOR shall correct any deficiencies which occur during the guarantee period, all to the satisfaction of the Owner and/or Construction Manager.

XIX SUBCONTRACTOR represents and warrants that any equipment, product, system, software, hardware or application of same ("Product") provided and/or installed is Year 2000 compliant (will function properly and without interruption before, during and after January 1, 2000) and that all data and files, enhancements, upgrades, customizations and modifications, shall accurately process date and time data. will be Year 2000 compliant. If it appears that any hardware or software or any other product, does not conform to this warranty, SUBCONTRACTOR shall within twenty-four (24) hours of receipt of notice, repair, replace or correct such non-conformity at SUBCONTRACTOR's sole expense and cost including but not limited to parts, labor, shipping, packaging, transportation and insurance.

SUBCONTRACTOR's liability hereunder shall extend to all damages proximately caused by the breach of any of the foregoing warranties and guarantees. SUBCONTRACTOR shall indemnify, defend and hold harmless FEC, from and against all claims, losses, damages, expenses and/or costs arising from SUBCONTRACTOR's breach of the aforesaid warranties and guarantees. This indemnification shall not be subject to any limitation of remedies which are contained in any agreement(s) or purchase order(s) between SUBCONTRACTOR and FEC, and shall survive the termination of any agreement(s) or purchase order(s) between said parties.

The failure of either SUBCONTRACTOR, or its' lower-tier subcontractors, suppliers or vendors, to use equipment, systems, software and hardware that in any way supports its ability to supply and/or install Products or otherwise perform it obligations under this Agreement shall not be considered as a Force Majeure event and shall not in any way relieve SUBCONTRACTOR from its duty to timely perform its obligations under this Agreement.

XX FEC by written notice, shall have the right to cancel and terminate this Subcontract Agreement and the employment of SUBCONTRACTOR for its own convenience. In such event, FEC shall pay the SUBCONTRACTOR for the Work actually performed in an amount proportionate to the Contract Price, provided the SUBCONTRACTOR is not in default.

XXI In the event Owner or Construction Manager becomes insolvent, files a petition for the benefit of creditors or enters into proceedings relating to bankruptcy, whether voluntary or involuntary, any and all payment obligations and liability to SUBCONTRACTOR from FEC shall end, and SUBCONTRACTOR's only remedies will be a) filing a claim within the bankruptcy or other proceedings, or b) accepting a proportionate amount of FEC's claim or percentage thereof relating to SUBCONTRACTOR's Work under the bankruptcy or other proceedings or settlement, if any, or c) an apportioned percentage if FEC's claim is purchased by a third party.

XXII SUBCONTRACTOR shall comply with all requirements relative to Equal Employment Opportunity and Affirmative Action Requirements. Further, SUBCONTRACTOR shall include said requirements in any subcontract or purchase order it has with any other party in such a manner so that said requirements will be binding upon those parties.

XXIII No provision contained in this Subcontract Agreement shall create or give to third parties any claim or right of action against FEC, Construction Manager and/or Owner beyond such as may legally exist in the absence of any such provision.

XXIV SUBCONTRACTOR agrees to maintain the confidentiality of all information and documentation as proprietary, confidential or otherwise restricted as to disclose such as, but not limited to, programs, codes, flow charts, logic diagrams, files and associated documentation, which are either the proprietary property of FEC or the property of others that are licensed, disclosed or entrusted to FEC. The obligations contained in this clause shall survive the expiration or termination of this Subcontract Agreement.

XXV It is the intent and understanding of the parties to this Subcontract Agreement that each and every provision of law required to be inserted in this Subcontract Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein, and if, through mistake or otherwise, any such provision is not inserted, or is not inserted in correct form, then this Subcontract Agreement shall forthwith upon the application of either party be amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder.

XXVI In event of any conflict or ambiguity within the Contract Documents, this Subcontract Agreement shall take precedence and control.

XXVII This Subcontract Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Subcontract Agreement to be drafted.

XXVIII SUBCONTRACTOR must be properly licensed to perform the Work in the City, County and State in which the proposed Work is to be performed. SUBCONTRACTOR shall furnish and pay for all permits and licenses necessary to complete the Work and legal evidence of such shall be delivered to FEC.

XXIX The parties agree that for the performance of its contractual obligations, SUBCONTRACTOR shall be an independent contractor and shall not be considered an agent or servant of FEC.

XXX The individual executing this Subcontract Agreement on behalf of SUBCONTRACTOR personally certifies and warrants that by his or her execution hereof, this Subcontract Agreement shall be legally binding on and enforceable against SUBCONTRACTOR.

IN WITNESS WHEREOF the parties have executed this Subcontract Agreement on the day and year first above written.

Forest Electric Corp.

| | |
|---|---|
| By:______________________ | By: |
| Name: | Name: |
| Title: | Title: |

# EXHIBIT "A"

## SCOPE OF WORK

[DETAIL SCOPE OF WORK / LIST DRAWINGS]

All other terms and conditions as described in Forest Electric Corp.'s Contract with the Construction Manager are applicable.

SUBCONTRACTOR agrees that the Work specifically set forth in this Scope of Work document includes all other work incident or related thereto, reasonably necessary to its performance and usually performed by the trades.

The Work shall be performed in a skillful and workmanlike manner with new material, products and equipment of the usual quality for a job of this type.

SUBCONTRACTOR shall provide at its expense all supervision, tools, equipment, hoisting charges, elevator charges, heat, light, power, etc. to perform its own Work.

# EXHIBIT "B"

## INSURANCE REQUIREMENTS

Prior to inception of operations, SUBCONTRACTOR shall enroll into and comply with all aspects of the Owner Controlled Insurance Project (see attached OCIP Manual). SUBCONTRACTOR must provide evidence of off-site coverages, however in the event the SUBCONTRACTOR is not approved and enrolled into the OCIP SUBCONTRACTOR must maintain the following insurance as a minimum, in addition to coverages outlined in the OCIP Manual.

| COVERAGE | LIMITS OF LIABILITY |
|---|---|
| Commercial General Liability | $10,000,000 per Occurrence/General Aggregate Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies.<br><br>Coverage(s) shall provide and encompass at least the following:<br><br>a. X, C and U hazards, where applicable.<br>b. Independent Contractors.<br>c. Blanket Contractual Liability covering all Indemnity Agreements.<br>d. CGL coverage written on an occurrence form.<br>e. Completed Operations/Products Liability with a two (2) year extension beyond completion and acceptance of the project.<br>f. Broad Form Property Damage<br>g. Person Injury Liability (A,B, & C) |
| Auto Liability | $1,000,000 per Occurrence Combined Single Limit Bodily Injury and Property Damage. Limits may be provided through a combination of primary and umbrella/excess policies. |
| Workers Compensation/Employers Liability | As determined by Statute with other states endorsement and minimum Employers Liability Limits of $500,000 bodily injury each Accident; $500,000 bodily injury by disease – policy limit; $500,000 bodily injury by disease – each employee. |
| "All Risk" Property Insurance | Covering all material, equipment and supplies stored away from the Project site and while in due course of transit until actually delivered to the Project site and accepted, including installation. Subcontractor/vendor shall be responsible for all deductibles. Coverage shall not be less than $2,000,000 per Occurrence. |
| Pollution Liability Insurance | Limits of liability of $2,000,000 each claim and aggregate with a deductible no greater than $100,000 each claim. |
| ENDORSE AS ADDITIONAL INSUREDS: | Forest Electric Corp., EMCOR Group, Inc., Bank One Building Corporation, its parent and affiliates, directors, officers, representatives, agents and employees, Tishman Construction Corporation of Maryland, Tishman Construction Corporation, Gensler, EYP Mission Critical Facilities, Inc., and each of their respective parent companies, corporations and/or partnerships and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, directors, and employees of each and any other indemnitees as required by the contract documents. |
| The Certificate Holder shall be: | Forest Electric Corp.<br>Two Penn Plaza<br>New York, NY 10121 |

* The following Certificate Addendum is required to be executed and returned.

* Policies to be primary and non-contributory as respects the coverage afforded the additional insureds. If subcontractor or vendor has other insurance that is applicable to the loss, it shall be on an excess basis. SUBCONTRACTOR's liability under any policy provided hereunder shall not be reduced by the existence of such other insurance.

* Certificate(s) of Insurance must provide for thirty (30) days written notice prior to cancellation, non-renewal or material modification of any policy to the Certificate Holder and ten (10) days written notice for non payment of premiums. Such Certificate(s) of Insurance shall have the phrase "endeavor to" deleted. Additionally, language attempting to waive the broker liability for failure to provide notice will not be permitted.

* The insurance policies must include a waiver of subrogation clause as follows: "It is agreed that in no event will the insurance company have any right of recovery against any of the Additional Insureds".

* All insurance carriers must be licensed in the State where the Project is located and be rated at least A-VIII in Best's.

* SUBCONTRACTOR shall provide a copy of the Employer's First Report of Injury or its equivalent to Forest Electric Corp., attention Insurance Department, within ten (10) days of any injury or illness to any employee of the SUBCONTRACTOR arising out of, or alleged to have arisen out of or during the course of Work performed at the Project.

The SUBCONTRACTOR shall not sublet or subcontract any part of this Subcontract Agreement without assuming absolute responsibility for requiring similar insurance from its subcontractors, suppliers and vendors.

Failure of the SUBCONTRACTOR to maintain full and complete insurance may be deemed a material breach allowing Forest Electric Corp. to terminate this Subcontract Agreement, or to provide insurance at the SUBCONTRACTOR's sole expense; in neither case, however, shall the SUBCONTRACTOR's liability be lessened.

Certificate Addendum **(REQUIRED)** - Subcontractor's Agent or Broker must sign this Addendum OR incorporate items 1-6 below as part of the executed certificate of insurance. Note: if builders' risk / installation insurance is not required by the subcontract then item 4 need not be included.

Insured Subcontractor: ______________________________

Certificate Holder: Forest Electric Corp. ______________________

Project Name and Number: ______________________________

Date Certificate Issued: ______________________________

*The following provisions are incorporated into and made a part of the Certificate of Insurance:*

1. Additional Insureds
Forest Electric Corp., EMCOR Group, Inc., all other parties so required by contract, and their respective directors, officers, representatives, agents and employees, are Additional Insureds on all policies except for Workers' Compensation, E&O / Professional Liability, Builder's Risk / Installation, and Contractor's Equipment. The required Additional Insured endorsement in the General Liability policy is ISO (Insurance Services Office) form CG20101185 or equivalent which includes ongoing and completed operations coverage. The General Liability policy shall not contain ISO form CG20101093 or equivalent, which excludes completed operations coverage.

2. Primary and Non-Contributory
All subcontractor insurance policies are primary and non-contributory in favor of Forest Electric Corp., Additional Insureds, Loss Payees and all other parties required by contract. The insurance of Forest Electric Corp., Additional Insureds, Loss Payees, all other parties so required by contract, and the insurance of their respective directors, officers, representatives, agents or employees, will not be called upon to contribute to any claims covered by the policies referenced in this certificate.

3. Waiver of Subrogation
All policies contain a waiver of subrogation in favor of Forest Electric Corp., EMCOR Group, Inc., Additional Insureds, Loss Payees, and all other entities so required by contract.

4. Loss Payees
Forest Electric Corp., EMCOR Group, Inc., and all other entities so required by contract, are Loss Payees with respect to the Builder's Risk / Installation Floater coverage.

5. Umbrella Attachment
The Excess (Umbrella) Liability policy attaches directly excess of the indicated primary General Liability, Products/Completed Operations Liability, Automobile Liability and Employers' Liability policies.

6. Self-Insured Retentions ("SIR")
All SIRs are fully disclosed on the Certificate of Insurance.

______________________________

Signature of authorized agent or broker

______________________________

Name and title (print) Date



Forest Electric Corp.
An EMCOR Company

Forest Electric Corp.
Two Penn Plaza, Floor 4
New York, NY 10121

Phone: 212.318.1500
Fax: 212.318.1793

www.forestelectric.net

June 14, 2004 – **SECOND REQUEST**
May 4, 2004

CONFIDENTIAL

Patricia Creedon
Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

RE: Bank One – CDC-2
RFP 6B General Lighting & Power
RFP 21B IT Cable Conveyance System - Pod A

Dear Ms. Creedon

Enclosed are five (5) copies of a Single Project Construction Services Agreement for the above referenced projects.

Please have an officer of your company sign all five copies for each project and return them to our office as soon as possible. A fully executed copy will then be returned to you.

Should you have any questions, please do not hesitate to contact your undersigned.

Very truly yours,

FOREST ELECTRIC CORP.

Donna M. Lucas
Senior Legal Assistant

EXHIBIT
tabbies
GG
6-14-06

cc: P. Angerame

MEDIATION, PaperDocuments

**U.S. District Court**
**District of Delaware (Wilmington)**
**CIVIL DOCKET FOR CASE #: 1:05-cv-00300-JJF**

Creedon Controls, Inc. v. Banc One Building Corporation et al
Assigned to: Honorable Joseph J. Farnan, Jr.
Demand: $2,986,000
Case in other court: Superior Court Delaware, 05L-04-00106
Cause: 28:1446 Notice of Removal

Date Filed: 05/17/2005
Jury Demand: Defendant
Nature of Suit: 190 Contract: Other
Jurisdiction: Federal Question

**Plaintiff**

**Creedon Controls Inc.**
*a Delaware Corporation*

represented by **Robert K. Beste, Jr.**
Cohen Seglias Pallas Greenhill & Furman PC
Nemours Building, Suite 1130
1007 Orange Street
Wilmington, DE 19801
(302) 425-5089
Email: rbeste@cohenseglias.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Banc One Building Corporation**
*an Illinois Corporation*

represented by **Lawrence C. Ashby**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
Email: lashby@ashby-geddes.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul A. Bradley**
Maron & Marvel, P.A.
1300 North Broom Street
P.O. Box 288
Wilmington, DE 19899-0288
(302) 425-5177
Email: pab@maronmarvel.com
*TERMINATED: 12/09/2005*
*LEAD ATTORNEY*

A-000211

*ATTORNEY TO BE NOTICED*

**Jennifer Michele Zelvin**
McCarter & English, LLP
919 N. Market Street, Suite 1800
P.O. Box 111
Wilmington, DE 19899
(302) 984-6300
Email: jzelvin@mccarter.com
*ATTORNEY TO BE NOTICED*

**Philip Trainer, Jr.**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
Email: ptrainer@ashby-geddes.com
*ATTORNEY TO BE NOTICED*

**Ricardo Palacio**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
Email: rpalacio@ashby-geddes.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Forest Electric Corp**
*a New York Corporation*

represented by **Paul A. Bradley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/07/2006 | 114 | AMENDED RULE 16 SCHEDULING ORDER: that Non-expert depositions ddl. 06/28/06. Reports from retained experts are due from the Pltf. by 07/17/06 and from the Defts. by 08/21/06. Case Dispositive Motions relating to the issues of whether (i) Forest Electric Corporation had authority to act as an agent of Banc One Building Corporation, or (ii) BOBC is in privity of contract with with Creedon Controls, Inc. or whether Creedon is soley a subcontractor to Forest, shall be served with an opening brf. by 07/14/06. All other dispositive motions shall be filed with an opening brief by 08/28/06. Signed by Judge Joseph J. Farnan, Jr. on 07/07/06. (afb, ) (Entered: 07/07/2006) |
| 06/30/2006 | 113 | Letter to Honorable Joseph J. Farnan, Jr. from Philip Trainer, Jr. regarding enclosing stipulated Amended Rule 16 Scheduling Order. |

A-000212

Case 1:05-cv-00300-JJF Document 122-4 Filed 07/18/2006 Page 46 of 58

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order Amended Rule 16 Scheduling Order)(Trainer, Philip) (Entered: 06/30/2006) |
| 06/23/2006 | 112 | TRANSCRIPT of Hearing held on 6/1/06 before Judge Joseph J. Farnan, Jr.,. Court Reporter: Heather Triozzi ( Hawkins Reporting ). (Transcript on file in Clerk's Office) (kjk, ) (Entered: 06/29/2006) |
| 06/16/2006 | 111 | NOTICE to Take Deposition of Defendant Banc One Building Corp. on June 28, 2006@4:00pm by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Certificate of Service)(Beste, Robert) (Entered: 06/16/2006) |
| 06/16/2006 | 110 | NOTICE to Take Deposition of Thomas M. Hennessey, Esquire on June 28, 2006@2:30pm by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 06/16/2006) |
| 06/15/2006 | 109 | NOTICE to Take Deposition of Donna Lucas on June 23, 2006 by Banc One Building Corporation. (Attachments: # 1 Certificate of Service) (Palacio, Ricardo) (Entered: 06/15/2006) |
| 06/15/2006 | 108 | AFFIDAVIT of Thomas M. Hennessey, Esq. re 107 Answer to Complaint *Regarding Defendant Banc One Building Corporation's Answer to Amended Complaint filed on June 1, 2006* filed by Banc One Building Corporation. (Attachments: # 1 Certificate of Service)(Palacio, Ricardo) (Entered: 06/15/2006) |
| 06/15/2006 | 107 | ANSWER to Amended Complaint D.I. 91 with Jury Demand by Banc One Building Corporation.(Palacio, Ricardo) Modified on 6/15/2006 (afb, ). (Entered: 06/15/2006) |
| 06/14/2006 | 106 | NOTICE of Deposition and Demand for Production of Documents, and Subpoena of the Wilmington Trust Company Pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45 by Banc One Building Corporation (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Palacio, Ricardo) (Entered: 06/14/2006) |
| 06/14/2006 | 105 | NOTICE to Take Deposition of Robert Sharp on June 27, 2006 at 2:00 p.m. by Forest Electric Corp. (Attachments: # 1 Exhibit A, Subpoena# 2 Exhibit Certificate of Service)(Bradley, Paul) (Entered: 06/14/2006) |
| 06/14/2006 | 104 | NOTICE to Take Deposition of John Mulroney on June 26, 2006 by Forest Electric Corp. (Attachments: # 1 Exhibit Exhibit A, Subpoena# 2 Exhibit Certificate of Service)(Bradley, Paul) (Entered: 06/14/2006) |
| 06/12/2006 | 103 | MOTION to Withdraw 101 MOTION for Protective Order *Pursuant to Rule 26(c)* - filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 06/12/2006) |
| 06/12/2006 | 102 | RE-NOTICE to Take Deposition of Defendant Banc One Building Corporation on June 26, 2006 @ 2:00 p.m. by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Beste, Robert) Modified on 6/15/2006 (afb, ). (Entered: 06/12/2006) |
| 06/09/2006 | 101 | MOTION for Protective Order *Pursuant to Rule 26(c)* - filed by Banc |

A-000213

| | | |
|---|---|---|
| | | One Building Corporation. (Trainer, Philip) (Entered: 06/09/2006) |
| 06/09/2006 | 100 | ORDER Setting Mediation Conferences: Mediation Conference has been rescheduled for 8/2/2006 at 10:00 AM in Courtroom 6C before Honorable Mary Pat Thynge. Signed by Judge Mary Pat Thynge on 6/9/2006. (cab, ) (Entered: 06/09/2006) |
| 06/07/2006 | 99 | NOTICE to Take Deposition of Defendant Forest Electric Corporation on 06/28/2006 @ 1:00 p.m. by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Beste, Robert) (Entered: 06/07/2006) |
| 06/07/2006 | 98 | NOTICE to Take Deposition of Phillip Altheim on 06/28/2006 by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 06/07/2006) |
| 06/07/2006 | 97 | NOTICE OF SERVICE of Subpoena upon Tishman Construction Corporation of Maryland by Creedon Controls Inc..(Beste, Robert) (Entered: 06/07/2006) |
| 06/07/2006 | 96 | NOTICE of Records Deposition of Tishman Construction Corporation of Maryland by Creedon Controls Inc. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 06/07/2006) |
| 06/03/2006 | 95 | ORDER that Pltf.'s 51 Motion to Compel Discovery is GRANTED, as discussed at the conference; Pltf.'s 81 Motion to Strike the Designation of "Highly Confidential" From Discovery Documents, and/ or Reaffirmation of the Stipulation and Order Governing the Production and Exchange of Confidential Information is GRANTED as discussed at the discovery conference. Signed by Judge Joseph J. Farnan, Jr. on 06/03/06. (afb, ) (Entered: 06/05/2006) |
| 06/02/2006 | 94 | AFFIDAVIT of Scott A. Capaldi re 93 Affidavit, 92 Amended Answer to Complaint filed by Banc One Building Corporation. (Palacio, Ricardo) (Entered: 06/02/2006) |
| 06/02/2006 | 93 | AFFIDAVIT of Thomas M. Hennessey re 92 Amended Answer to Complaint filed by Banc One Building Corporation. (Palacio, Ricardo) (Entered: 06/02/2006) |
| 06/02/2006 | 92 | AMENDED ANSWER to 2 Amended Complaint, by Banc One Building Corporation. (Attachments: # 1 Certificate of Service)(Palacio, Ricardo) (Entered: 06/02/2006) |
| 06/01/2006 | 91 | AMENDED Complaint and Statement of Claim for Mechanics' Lien by Creedon Controls Inc. Amendment to 2 Amended Complaint, Amended Complaint and Statement of Claim for Mechanics Lien. (Attachments: # 1 Affidavit# 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Certificate of Service)(Beste, Robert) Modified on 6/7/2006 (afb, ). (Entered: 06/01/2006) |
| 05/31/2006 | 90 | MOTION for Scheduling Order *Stipulated Scheduling Order Regarding Depositions* - filed by Creedon Controls Inc.. (Beste, Robert) (Entered: 05/31/2006) |
| | | |

A-000214

| | | |
|---|---|---|
| 05/31/2006 | 89 | STIPULATION Regarding Motions to Amend Defendants' Answers, D.E. 59 and 64, and Amendment to Complaint re 59 MOTION to Amend/Correct 5 Answer to Amended Complaint, 67 Answering Brief in Opposition,, 66 Answering Brief in Opposition,, 64 MOTION to Amend/Correct 3 Answer to Complaint by Creedon Controls Inc.. (Attachments: # 1 Redline Version of Amended Complaint)(Beste, Robert) (Entered: 05/31/2006) |
| 05/26/2006 | 88 | NOTICE to Take Deposition of Paul Brainard on 6/6/2006 by Banc One Building Corporation. (Attachments: # 1 Exhibit A-Subpoena# 2 Certificate of Service)(Palacio, Ricardo) (Entered: 05/26/2006) |
| 05/18/2006 | 87 | Notice to Withdraw 86 MOTION to Strike Forest Electric Corporation's Designation of 'Highly Confidential' Documents; or, in the Alternative, to Compel Forest Electric Corporation to Provide Discovery - filed by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) Modified on 5/19/2006 (afb, ). (Entered: 05/18/2006) |
| 05/17/2006 | 86 | MOTION to Strike *Forest Electric Corporation's Designation of 'Highly Confidential' Documents; or, in the Alternative, to Compel Forest Electric Corporation to Provide Discovery* - filed by Creedon Controls Inc.. (Attachments: # 1 Notice of Motion# 2 Certificate of Counsel# 3 Order# 4 Exhibit 1# 5 Exhibit 2# 6 Exhibit 3# 7 Certificate of Service) (Beste, Robert) (Entered: 05/17/2006) |
| 05/11/2006 | 85 | NOTICE OF SERVICE of Defendant Banc One Building Corporation's Response to Defendant Forest Electric's First Request for Production of Documents by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 05/11/2006) |
| 05/11/2006 | 84 | RESPONSE to Motion re 81 MOTION to Strike *The Designation of "Highly Confidential" from Discovery Documents, and/or Reaffirmation of Stipulation and Order Governing the Production and Exchange of Confidential information Response of Banc One Building Corporation to Plaintiff's Motion to Strike the Designation of "Highly Confidential" from Discovery Documents, and/or Reaffirmation of Stipulation and Order Governing the Production and Exchange of Confidential Information* filed by Banc One Building Corporation. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Palacio, Ricardo) (Entered: 05/11/2006) |
| 05/08/2006 | 83 | MEMORANDUM ORDER that the depositon shall be commenced no later than 05/22/06 and completed by 06/28/06 unless an agreed upon schedule is filed by 05/15/06. Further the order of the scheduled of depositions shall be as follows: (SEE ORDER FOR DETAILS). Signed by Judge Joseph J. Farnan, Jr. on 05/08/06. (afb, ) Modified on 5/10/2006 (afb, ). (Entered: 05/09/2006) |
| 05/05/2006 | 82 | Letter to The Honorable Joseph J. Farnan, Jr. from Robert K. Beste, Jr., Attorney for Plaintiff regarding Requesting Scheduling Order or Scheduling Conference. (Beste, Robert) (Entered: 05/05/2006) |
| 05/04/2006 | 81 | MOTION to Strike *The Designation of "Highly Confidential" from Discovery Documents, and/or Reaffirmation of Stipulation and Order* |

A-000215

| | | |
|---|---|---|
| | | *Governing the Production and Exchange of Confidential information* - filed by Creedon Controls Inc.. (Attachments: # 1 Notice of Motion# 2 Order# 3 Exh 1# 4 Exh 2# 5 Certificate of Service)(Beste, Robert) (Entered: 05/04/2006) |
| 05/04/2006 | 80 | AFFIDAVIT of Patricia Creedon filed by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 05/04/2006) |
| 04/27/2006 | 79 | NOTICE of Vacate Depositions of Forest Electric and Banc One by Creedon Controls Inc. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 04/27/2006) |
| 04/13/2006 | 77 | NOTICE OF SERVICE of Defendant Forest Electric Corporation's Responses to First Request for Production of Documents of Defendant Banc One Building Corporation re 63 Notice of Service by Forest Electric Corp. Related document: 63 Notice of Service filed by Banc One Building Corporation,.(Bradley, Paul) (Entered: 04/13/2006) |
| 04/13/2006 | 76 | NOTICE of by Creedon Controls Inc. (Attachments: # 1 Exhibit)(Beste, Robert) (Entered: 04/13/2006) |
| 04/13/2006 | 75 | NOTICE of by Creedon Controls Inc. (Beste, Robert) (Entered: 04/13/2006) |
| 04/11/2006 | 74 | NOTICE OF SERVICE of First Request for Production of Documents of Defendant Forest Electric Corporation Directed to Defendant Banc One Building Corporation by Creedon Controls Inc.. (Attachments: # 1 Firest Request for Production of Documents)(Bradley, Paul) (Entered: 04/11/2006) |
| 04/10/2006 | 73 | OBJECTIONS by Creedon Controls Inc. *Objections of Plaintiff Creedon Control, Inc. to Defendant Banc One Building Corporation's Second Request for Production of Documents Directed to Plaintiff.* (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 04/10/2006) |
| 04/07/2006 | 72 | NOTICE to Take Deposition of Creedon Controls, Inc. on May 23, 2006 by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 04/07/2006) |
| 04/07/2006 | 71 | NOTICE to Take Deposition of Patricia Creedon on May 22, 2006 by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 04/07/2006) |
| 04/04/2006 | 70 | REPLY BRIEF re 64 MOTION to Amend/Correct 3 Answer to Complaint filed by Forest Electric Corp. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Certificate of Service)(Bradley, Paul) (Entered: 04/04/2006) |
| 03/30/2006 | 69 | AFFIDAVIT of Scott A. Capaldi *in Support of Defendant Banc One Building Corporation's Reply Memorandum of Law in Further Support of it Motion to Amend its Answer to Plaintiff's Complaint* filed by Banc One Building Corporation. (Attachments: # 1 Certificate of Service)(Palacio, Ricardo) (Entered: 03/30/2006) |
| | | |

A-000216

| | | |
|---|---|---|
| 03/30/2006 | 68 | MEMORANDUM in Support re 59 MOTION to Amend/Correct 5 Answer to Amended Complaint, 60 Opening Brief in Support,, *(REPLY) of its Motion to Amend its Answer to Plaintiff's Complaint* filed by Banc One Building Corporation.Answering Brief/Response due date per Local Rules is 4/13/2006. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Certificate of Service)(Palacio, Ricardo) (Entered: 03/30/2006) |
| 03/28/2006 | 67 | Answering Brief of Plaintiff Creedon Controls, Inc. in Opposition to Defendant Forest Electric Corporation's Motion to Amend it's Answer to the Complaint D.I. 64 filed by Creedon Controls Inc.;Reply Brief due date per Local Rules is 4/4/2006. (Attachments: # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibit 3# 4 Exhibit Exhibit 4)(Beste, Robert) Modified on 3/29/2006 (afb, ). (Entered: 03/28/2006) |
| 03/23/2006 | 66 | Plaintiff's Answering Brief in Opposition to Banc One's Motion to Amend D.I. 59 filed by Creedon Controls Inc.;Reply Brief due date per Local Rules is 3/30/2006. (Attachments: # 1 Exhibit Exhibit 1# 2 Exhibit Exhibit 2# 3 Exhibit Exhibit 3# 4 Exhibit Exhibit 4)(Beste, Robert) Modified on 3/29/2006 (afb, ). (Entered: 03/23/2006) |
| 03/15/2006 | 65 | OPENING BRIEF in Support re 64 MOTION to Amend/Correct 3 Answer to Complaint filed by Forest Electric Corp.Answering Brief/Response due date per Local Rules is 3/29/2006. (Attachments: # (1) Exhibit A (2) Exhibit B# (3) Exhibit C)(Kelly, Michael) Additional attachment(s) added on 3/27/2006 (afb, ). Modified on 3/27/2006 (afb, ). (Entered: 03/15/2006) |
| 03/15/2006 | 64 | MOTION to Amend/Correct 3 Answer to Complaint - filed by Forest Electric Corp. (Kelly, Michael) (Entered: 03/15/2006) |
| 03/14/2006 | 63 | NOTICE OF SERVICE of Defendant Banc One Building Corporation's First Request for Production of Documents Directed to Defendant Forest Electric Corporation by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 03/14/2006) |
| 03/14/2006 | 62 | NOTICE OF SERVICE of Defendant Banc One Building Corporation's Second Request for Production of Documents Directed to Plaintiff Creedon Controls, Inc. by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 03/14/2006) |
| 03/10/2006 | 61 | AFFIDAVIT of Thomas M. Hennessey, Esq. re 59 MOTION to Amend/Correct 5 Answer to Amended Complaint filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 03/10/2006) |
| 03/10/2006 | 60 | OPENING BRIEF in Support re 59 MOTION to Amend/Correct 5 Answer to Amended Complaint *Defendant Banc One Building Corporation's Memorandum of Law in Support of Its Motion to Amend Its Answer to Plaintiff's Complaint* filed by Banc One Building Corporation.Answering Brief/Response due date per Local Rules is 3/24/2006. (Attachments: # 1 Exhibit A-Proposed Amended Answer# 2 Exhibit B-Black-line of Proposed Amended Answer# 3 Exhibit C-Unreported Case# 4 Exhibit D-Unreported Case# 5 Exhibit E-Unreported Case# 6 Exhibit F-Unreported Case# 7 Exhibit G-Unreported Case) |

A-000217

| | | |
|---|---|---|
| | | (Trainer, Philip) (Entered: 03/10/2006) |
| 03/10/2006 | 59 | MOTION to Amend/Correct 5 Answer to Amended Complaint - filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 03/10/2006) |
| 03/06/2006 | 58 | MOTION for Pro Hac Vice Appearance of Attorney Allen J. Ross - filed by Forest Electric Corp. (Attachments: # 1 Text of Proposed Order Order for Admission Pro Hac Vice of Allen J. Ross)(Kelly, Michael) (Entered: 03/06/2006) |
| 03/02/2006 | 57 | Letter to Honorable Joseph J. Farnan, Jr. from Philip Trainer, Jr. of Ashby & Geddes regarding Creedon Controls, Inc. v. Banc One Building Corporation, et al.. (Attachments: # 1 Defendant Banc One Building Corp.'s Response to Plaintiff Creedon Controls, Inc.'s Motion to Compel Discovery# 2 Defendant Forest Electric Corporation's Reponse in Opposition to Plaintiff's Motion to Compel)(Palacio, Ricardo) (Entered: 03/02/2006) |
| 03/02/2006 | 56 | RESPONSE to Motion re 51 MOTION to Compel *Discovery Defendant Banc One Building Corp.'s Response to Plaintiff Creedon Controls, Inc.'s Motion to Compel Discovery* filed by Banc One Building Corporation. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Palacio, Ricardo) (Entered: 03/02/2006) |
| 03/02/2006 | 55 | RESPONSE to Motion re 51 MOTION to Compel *Discovery* filed by Forest Electric Corp. (Attachments: # 1 Exhibit A and B)(Kelly, Michael) (Entered: 03/02/2006) |
| 02/27/2006 | 54 | MOTION for Pro Hac Vice Appearance of Attorney Jodi A. Kleinick - filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 02/27/2006) |
| 02/23/2006 | 53 | MOTION for Pro Hac Vice Appearance of Attorney Jonathan A. Choa - filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 02/23/2006) |
| 02/23/2006 | 52 | MOTION for Pro Hac Vice Appearance of Attorney Charles A. Patrizia - filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 02/23/2006) |
| 02/21/2006 | 51 | MOTION to Compel *Discovery* - filed by Creedon Controls Inc.. (Attachments: # 1 Plaintiff's Motion to Compel Discovery# 2 Order-Plaintiff's Motion to Compel Discovery# 3 Exhibit 1# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit 4# 7 Exhibit 5# 8 Certificate of Service)(Beste, Robert) (Entered: 02/21/2006) |
| 02/17/2006 | 50 | Letter to Honorable Joseph J. Farnan, Jr. from Robert K. Beste, Jr., Esq. regarding Request for a Scheduling Conference with Judge Farnan - re 48 Letter. (Beste, Robert) (Entered: 02/17/2006) |
| 02/16/2006 | 49 | NOTICE of Service of Subpoena by Forest Electric Corp (Attachments: # 1 Exhibit 1 - Subpoena of GemGroup)(Kelly, Michael) (Entered: 02/16/2006) |
| | | |

| | | |
|---|---|---|
| 02/15/2006 | 48 | Letter to The Honorable Joseph J. Farnan, Jr. from Philip Trainer, Jr. regarding Revised Scheduling Order. (Lydon, Tiffany) (Entered: 02/15/2006) |
| 02/02/2006 | 47 | MEMORANDUM ORDER that Banc One Building Corp.'s 38 Motion for Protective Order is GRANTED; The parties shall confer and agree by 02/15/06 on an ext. of the Scheduling Order as to document production, written discovery, and non-expert depositions. Signed by Judge Joseph J. Farnan, Jr. on 02/02/06. (afb, ) (Entered: 02/03/2006) |
| 01/26/2006 | 46 | NOTICE OF SERVICE of Defendant Forest Electric Corporation's Objection to Creedon Controls, Inc.'s Notice of Records Deposition Duces Tecum re 31 Notice to Take Deposition by Forest Electric Corp. Related document: 31 Notice to Take Deposition filed by Creedon Controls Inc.,.(Kelly, Michael) (Entered: 01/26/2006) |
| 01/25/2006 | 45 | NOTICE OF SERVICE of Defendant Banc One Building Corporation's Response/Objection to Creedon Controls, Inc.'s Notice of Records Deposition Duces Tecum by Banc One Building Corporation.(Palacio, Ricardo) (Entered: 01/25/2006) |
| 01/23/2006 | 44 | REPLY to Response to Motion re 38 MOTION for Protective Order filed by Banc One Building Corporation. (Trainer, Philip) (Entered: 01/23/2006) |
| 01/16/2006 | 43 | RESPONSE to Motion re 38 MOTION for Protective Order *Plaintiff Creedon Control, Inc.'s Response to Defendant Banc One Building Corporation's Motion for Protective Order Pursuant to Rule 26(c)* filed by Creedon Controls Inc.. (Attachments: # 1 Order-Plaintiff Creedon Control, Inc.'s Response to Defendant Banc One Building Corporation's Motion for Protective Order# 2 Certificate of Service - Plaintiff Creedon Control, Inc.'s Response to Defendant Banc One Building Corporation's Motion for Protective Order)(Beste, Robert) (Entered: 01/16/2006) |
| 01/11/2006 | 42 | NOTICE of Service of Defendant Banc One Building Corporation's Amended and Supplemental Response to Plaintiff's Second Request for Production of Documents by Banc One Building Corporation (Trainer, Philip) (Entered: 01/11/2006) |
| 01/11/2006 | 41 | NOTICE of Service of Defendant Banc One Building Corporation's Amended and Supplemental Response to Plaintiff's First Request for Production of Documents by Banc One Building Corporation (Trainer, Philip) (Entered: 01/11/2006) |
| 01/10/2006 | 40 | Letter to The Clerk from Joseph C. Handlon regarding enclosed "Exhibit A" that was inadvertently not attached to Bank One's Motion For A Protective Order (D.I. 38). (afb, ) (Entered: 01/10/2006) |
| 01/10/2006 | 39 | JOINDER by Forest Electric Corp, joining in 38 MOTION for Protective Order. (Kelly, Michael) (Entered: 01/10/2006) |
| 01/09/2006 | 38 | MOTION for Protective Order - filed by Banc One Building Corporation. (Attachments: # 1 Text of Proposed Order)(Trainer, Philip) Additional |

| | | |
|---|---|---|
| | | attachment(s) added on 1/10/2006 (afb, ). (Entered: 01/09/2006) |
| 01/06/2006 | 37 | NOTICE OF SERVICE of Plaintiff's Answers to Defendants' Amended Set of Interrogatories by Creedon Controls Inc..(Beste, Robert) (Entered: 01/06/2006) |
| 01/06/2006 | 36 | NOTICE to Take Deposition of W. Paul Brainard on January 20, 2006 by Forest Electric Corp. (Attachments: # 1 Exhibit A and Subpoena)(Kelly, Michael) (Entered: 01/06/2006) |
| 01/06/2006 | 35 | NOTICE to Take Deposition of Charles Doble on January 17, 2006 by Forest Electric Corp. (Attachments: # 1 Exhibit A)(Kelly, Michael) (Entered: 01/06/2006) |
| 01/06/2006 | 34 | NOTICE to Take Deposition of Fred Street on January 20, 2006 by Forest Electric Corp. (Attachments: # 1 Exhibit A)(Kelly, Michael) (Entered: 01/06/2006) |
| 01/03/2006 | 33 | NOTICE to Take Deposition of Mr. Len Beck on January 19, 2006 @ 10:00 a.m. by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 01/03/2006) |
| 01/03/2006 | 32 | NOTICE to Take Deposition of Mr. Terry Peng on January 18, 2006 @ 10:00 a.m. by Creedon Controls Inc.. (Attachments: # 1 Certificate of Service)(Beste, Robert) (Entered: 01/03/2006) |
| 12/19/2005 | 31 | NOTICE to Take Deposition of Forest Electric Corporation on January 11, 2006 @ 10:00 am by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Beste, Robert) (Entered: 12/19/2005) |
| 12/19/2005 | 30 | NOTICE to Take Deposition of Banc One Building Corporation on January 24, 2006 @ 10:00 am by Creedon Controls Inc.. (Attachments: # 1 Exhibit Exhibit A# 2 Certificate of Service)(Beste, Robert) (Entered: 12/19/2005) |
| 12/13/2005 | 29 | NOTICE OF SERVICE of Responses to Defendants' First Request for Production of Documents by Creedon Controls Inc..(Beste, Robert) (Entered: 12/13/2005) |
| 12/09/2005 | 28 | NOTICE OF SUBSTITUTION OF COUNSEL re Banc One Building Corporation: Entry of appearance of attorney Lawrence C. Ashby. Attorney Paul A. Bradley terminated. (Ashby, Lawrence) (Entered: 12/09/2005) |
| 11/28/2005 | 27 | PROPOSED ORDER Stipulation and Order Governing the Production and Exchange of Confidential Information by Forest Electric Corp. (Kelly, Michael) (Entered: 11/28/2005) |
| 11/28/2005 | 26 | NOTICE to Take Deposition of Forest Electric Company on December 19, 2005 @ 10:00 am by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Beste, Robert) (Entered: 11/28/2005) |
| 11/28/2005 | 25 | NOTICE to Take Deposition of Banc One Building Corporation on December 21, 2005 by Creedon Controls Inc.. (Attachments: # 1 Exhibit |

| | | |
|---|---|---|
| | | A# 2 Certificate of Service)(Beste, Robert) (Entered: 11/28/2005) |
| 11/23/2005 | 24 | NOTICE to Take Deposition of International Brotherhood of Electrical Workers, Local Union 313 on December 9, 2005 by Banc One Building Corporation, Forest Electric Corp. (Attachments: # 1 Exhibit Certificate of Service to Notice of Records Deposition of International Brotherhood of Electrical Workes, Local Union 313)(Bradley, Paul) (Entered: 11/23/2005) |
| 11/23/2005 | 23 | NOTICE to Take Deposition of Marc Pelletier of Wilmington Trust Company on December 9, 2005 by Banc One Building Corporation, Forest Electric Corp. (Attachments: # 1 Exhibit Certificate of Service to Notice of Records Deposition of Marc Pelletier of Wilmington Trust Company)(Bradley, Paul) (Entered: 11/23/2005) |
| 11/23/2005 | 22 | NOTICE to Take Deposition of John Wheeler, Wheeler, Wolfenden and Dwares, P.A. on December 9, 2005 by Banc One Building Corporation, Forest Electric Corp. (Attachments: # 1 Exhibit Certificate of Service to Notice of Records Deposition to John Wheeler of Wheeler, Wolfenden and Dwares, P.A.)(Bradley, Paul) (Entered: 11/23/2005) |
| 11/04/2005 | 21 | NOTICE OF SERVICE of Defendants' Responses to Plaintiff's Second Request for Production of Documents re 19 Request for Production of Documents by Banc One Building Corporation. Related document: 19 Request for Production of Documents filed by Creedon Controls Inc.,. (Kelly, Michael) (Entered: 11/04/2005) |
| 10/21/2005 | 20 | NOTICE OF SERVICE of Defendants Banc One Building Corporation and Forest Electric Corporation's Amended Set of Interrogatories Directed to Plaintiff Creedon Controls, Inc. by Banc One Building Corporation.(Kelly, Michael) (Entered: 10/21/2005) |
| 10/05/2005 | 19 | Notice of Service of Second Request for Production of Documents Directed to Defendants by Creedon Controls Inc..(Beste, Robert) Modified on 10/6/2005 (afb, ). (Entered: 10/05/2005) |
| 10/04/2005 | 18 | NOTICE OF SERVICE of Responses to Request for Production of Documents by Banc One Building Corporation, Forest Electric Corp. (Bradley, Paul) (Entered: 10/04/2005) |
| 09/27/2005 | 17 | NOTICE OF SERVICE of Defendants Banc One Building Corporation And Forest Electric Corporation's First Request For Production Of Documents Directed To Plaintiff Creedon Controls, Inc. by Banc One Building Corporation.(Zelvin, Jennifer) (Entered: 09/27/2005) |
| 09/27/2005 | 16 | NOTICE OF SERVICE of Defendants Banc One Building Corporation And Forest Electric Corporation's First Set of Interrogatories Directed to Plaintiff Creedon Controls, Inc. by Banc One Building Corporation. (Zelvin, Jennifer) (Entered: 09/27/2005) |
| 09/23/2005 | 15 | NOTICE to Take Deposition of Dennis Link on October 10, 2005 by Forest Electric Corp. (Attachments: # 1)(Freebery, James) (Entered: 09/23/2005) |

A-000221

Case 1:05-cv-00300-JJF Document 122-4 Filed 07/18/2006 Page 55 of 58

| | | |
|---|---|---|
| 09/01/2005 | 14 | INITIAL DISCLOSURES pursuant to Rule 26 by Banc One Building Corporation, Forest Electric Corp. (Attachments: # 1 Exhibit Certificate of Service)(Bradley, Paul) (Entered: 09/01/2005) |
| 09/01/2005 | 13 | INITIAL DISCLOSURES pursuant to Rule 26 by Creedon Controls Inc.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(Beste, Robert) (Entered: 09/01/2005) |
| 08/25/2005 | 12 | ORDER Setting Mediation Conferences: Mediation Conference set for 3/15/2006 10:00 AM in Courtroom 6C before Honorable Mary Pat Thynge. Signed by Judge Mary Pat Thynge on 8/25/2005. (cab, ) (Entered: 08/25/2005) |
| 08/01/2005 | 10 | Order Setting Teleconference: Telephone Conference set for 8/25/2005 10:00 AM before Honorable Mary Pat Thynge to discuss ADR. Signed by Judge Mary Pat Thynge on 8/1/2005. (cab, ) (Entered: 08/01/2005) |
| 07/29/2005 | 11 | ORDER: Pretrial Conference set for 9/7/2006 at 01:00 PM in Courtroom 4B before Honorable Joseph J. Farnan, Jr.; Trial will be scheduled at the Pretrial Cnf. to commence 120 days of the pretrial conference. Cnsl. should be available during the 120 day period for trial. Signed by Judge Joseph J. Farnan, Jr. on 07/29/05. (afb, ) Additional attachment(s) added on 8/1/2005 (afb, ). (Entered: 08/01/2005) |
| 07/28/2005 | 9 | RULE 16 SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Joinder of Parties due by 11/11/2005. Amended Pleadings due by 3/15/2006. Expert reports due by 6/2/2006. Dispositive Motions due by 7/3/2006. Signed by Judge Joseph J. Farnan, Jr. on 07/28/05. (afb, ) (Entered: 07/29/2005) |
| 07/27/2005 | 8 | PROPOSED ORDER Rule 16 Scheduling Order by Creedon Controls Inc., Banc One Building Corporation, Forest Electric Corp. (Bradley, Paul) (Entered: 07/27/2005) |
| 06/20/2005 | 7 | NOTICE OF SERVICE of Request for Production of Documents by Creedon Controls Inc..(Beste, Robert) (Entered: 06/20/2005) |
| 06/16/2005 | 6 | DEFICIENCY NOTICE by the Court issued to Jennifer Zelvin re 5 Answer to Amended Complaint. Courtesy copy needed. (afb, ) (Entered: 06/17/2005) |
| 06/13/2005 | 5 | ANSWER to Amended Complaint by Banc One Building Corporation. (Attachments: # 1 Affidavit of Scott A. Capaldi, Assistant Vice President# 2 Certificate of Service)(Zelvin, Jennifer) (Entered: 06/13/2005) |
| 06/03/2005 | 4 | AFFIDAVIT of Service for Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action on 6/3/2005, filed by Creedon Controls Inc.. (Attachments: # 1 Exhibit Exhibit A1 to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 2 Exhibit Exhibit A2 to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 3 Exhibit Exhibit A3 to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 4 |

A-000222

| | | |
|---|---|---|
| | | Exhibit Exhibit A4 to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 5 Exhibit Exhibit A5 to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 6 Exhibit Exhibit A6 to Affidavit of Mailing of Notice to Lien Holders and Tenants of filing an Action# 7 Exhibit Exhibit B to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 8 Exhibit Exhibit C to Affidavit of Mailing of Notice to Lien Holders and Tenants of filing an Action# 9 Errata Exhibit D to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action# 10 Certificate of Service to Affidavit of Mailing of Notice to Lien Holders and Tenants of Filing an Action)(Beste, Robert) (Entered: 06/03/2005) |
| 05/24/2005 | 3 | ANSWER to Complaint by Forest Electric Corp. (Attachments: # 1 Affidavit of Paul Angerame, Senior Vice President# 2 Certificate of Service)(Bradley, Paul) Modified on 5/25/2005 (dab, ). (Entered: 05/24/2005) |
| 05/24/2005 | 2 | AMENDED COMPLAINT *Notice to Adverse Party of Filing of Affidavit of Robert K. Beste, Jr. and Amendment to Complaint* against Banc One Building Corporation- filed by Creedon Controls, Inc.. (Attachments: # 1 Affidavit of Robert K. Beste, Jr. and Amendment to Complaint# 2 Exhibit A to Affidavit and Amendment to Complaint# 3 Exhibit B to Affidavit and Amendment to Complaint# 4 Exhibit C to Affidavit and Amendment to Complaint)(Beste, Robert) Modified on 5/25/2005 (dab, ). (Entered: 05/24/2005) |
| 05/17/2005 | 1 | NOTICE OF REMOVAL and copies of documents from Superior Court/DE, Case Number 05L-04-106 (Filing fee $ 250, receipt number 139287)- filed by Banc One Building Corporation, Forest Electric Corp. (Attachments: # 1 Continuation of State Court Records # 2 Continuation of State Court Records # 3 Civil Cover Sheet # 4 Acknowledgement of Consent Form)(els, ) Modified on 6/30/2005 (dab, ). (Entered: 05/18/2005) |

---

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/12/2006 10:58:09 | | | |
| **PACER Login:** | mm1199 | **Client Code:** | Forrest Foresinc |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-00300-JJF Start date: 1/1/1970 End date: 7/12/2006 Documents: 1 |
| **Billable Pages:** | 9 | **Cost:** | 0.72 |

---

**A-000223**

# Bank One Real Estate
# Waiver of Bid Request

Date: 7/28/2003

Subject: Recommendation to Waive Competitive Bidding Process

| | |
|---|---|
| Project No: | DE 02121104 |
| Project Name: | Core Data Center #2-Brandywine |
| Building Name: | CDC-2 4001 Governor Printz Boulevard |
| Contractor Name: | Tishman Construction of Maryland |
| Estimated Amount to be Waived: | $9,153,832.65 (see text) |

This waiver of the competitive bidding process on the above project is submitted because:

In a study undertaken by Critical systems it was revealed that infrastructure supporting our critical data functions was significantly inadequate. Bank One Real Estate management decided that immediate action must be taken to develop a long-term solution for dependable infrastructure. A joint decision, between Real Estate and Information & Operations (I&O), was made to develop two new Core Data Centers (CDC's) and a Regional Data Center (RDC). The process to locate sites for the Strategic Data Centers (SDC's) has been dynamic. Suitable sites were identified in several states. The Brandywine location for Core Data Center #2 was finally approved as a suitable site due to it's being physically located within the I&O standard of 25 miles away in distance from the Bear location which was selected as the Core Data Center #1 site and proper fiber bandwidth criteria was achieved. The property was purchased from the City of Wilmington Delaware on July 2, 2003. The critical occupancy date established by I&O for this site is September 15, 2004.

Due to the critical nature and the condensed schedule, Bank One's Director of Real Estate elected to use the firm of Tishman Construction for this project due to their size and reputation for managing Critical Facility construction. They were brought into the project process at an early stage to provide conceptual estimating, schedule assessment and to advise on the "construct ability" of the proposed work. A negotiated contract for Construction Management (CM) services will reduce our implementation schedule a minimum of 12 to 20 weeks. Tishman Construction proposes to provide Construction Management (CM) services at the rate of 6% for General Conditions, 2.5% Fee, for a total of 8.5% of the Cost of Work.

The preliminary estimate for this work is $110,618,420.00. The value of the contract to Tishman is approximately:

| | | |
|---|---|---|
| General Conditions: | $ 6,186,690.88 | |
| Fee: | $ 2,895,127.77 | |
| Insurance*: | $ 72,014.00 | (month of June 2003 only) |
| TOTAL | $9,153,832.65 | |

* The bank has elected to enroll in and take advantage of the savings associated with an Owners Controlled Insurance Program (OCIP).

All subcontracted work will be accounted for in an open book format through Tishman Construction. Most subcontracts will be competitively bid, as schedule allows, with Owner participation and placed under contract via Tishman Construction, as agents for Bank One.

All terms of the agreement will be in accordance with a newly developed and implemented Bank One Construction Management Agreement.

Project Manager Team Lead: Karl Wm. Auwarter — Date: 7/25/2003

National Project Mgr: Gary Fahrenbach — Date: 7/25/03

Director of Real Estate: Mike Weinberg — Date: 7/28/03