# EXHIBIT C



**WILCOX & FETZER LTD.**

In the Matter Of:

# Creedon Controls, Inc.
## v.
# Banc One Building Corporation

C.A. # 05-CV-300-JJF

Transcript of:

Philip Altheim

June 28, 2006

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

**34**

1 (The requested portion was read.)
2 MR. BRADLEY: And in addition, it calls
3 for legal conclusion.
4 A. I can't answer that question.
5 Q. I thought you told me earlier that you
6 understood that Forest was acting as agent for Banc
7 One in its dealings with Creedon, for the data center
8 project.
9 A. Yes, that is the case.
10 Q. Okay. So if that be the case, does Forest have
11 the ability to withhold funds properly due to Creedon
12 for the data center project?
13 A. I can't answer that question.
14 Q. Okay. Are you aware of any contract provision
15 that allows Forest as agent for Banc One to withhold
16 funds due to Creedon Control?
17 MR. BRADLEY: Object to form.
18 A. I don't know, I don't know that answer.
19 Q. Have you had discussions, you personally had
20 discussions with anyone with respect to whether Forest
21 should or should not withhold the retainage claimed to
22 be due to Creedon Controls for the Banc One Brandywine
23 data center?
24 A. No.

**35**

1 Q. I asked you earlier if you had discussions with
2 Banc One representatives about the nature of your role
3 being a not-at-risk trade manager, and you gave me a
4 number of names and we talked about it. But I want to
5 focus and make sure that my question's also addressed
6 to the entire length and course of the project, so
7 that I want to know if you had discussions with other
8 representatives at Banc One regarding the not-at-risk
9 role that you believed you played in this project?
10 A. No.
11 Q. And I don't want to limit that to Banc One,
12 Tishman, Forest. Have you, other than with your
13 attorneys, discussed with anyone the role of Forest as
14 a not-at-risk agent?
15 A. No one.
16 Q. And that would be to this very day and time?
17 A. Um-hum.
18 Q. Other than me --
19 A. Yes.
20 Q. -- and you here today?
21 A. Yes.
22 Q. Have you seen any documents, e-mails, letters,
23 notes, scribbles, sticky pads, anything that in any
24 way reviews or discusses the not-at-risk nature of

**36**

1 your role, Forest's role in this project?
2 A. No.
3 Q. You've not seen any e-mails or other
4 correspondence from or to anyone relating to that
5 topic?
6 A. If I have, I don't recollect.
7 Q. Have you seen any documents of any description
8 or nature, including electronic e-mails, et cetera,
9 that describe the nature of Forest's role as agent for
10 Banc One in the data center projects versus some other
11 legal role? And again, not relating to your
12 discussions with your counsel.
13 A. Well, I signed the contract with Tishman, which
14 I did not read. The contract was passed on to me.
15 That was a signature page from me with Tishman.
16 Q. Other than possibly that contract, are there
17 any other documents that you've seen that discuss the
18 nature of Forest's role in the data center projects
19 vis-a-vis Banc One?
20 A. No, sir.
21 Q. Have you ever heard anyone at Banc One state,
22 represent or claim that Forest was anything other than
23 a not-at-risk entity in this project?
24 A. No.

**37**

1 Q. Same question about Tishman?
2 A. No.
3 Q. Have you ever heard it, same question with
4 respect to any person of any entity whatsoever?
5 A. No, sir.
6 Q. Are you aware that in May of 2004 a proposed
7 form of contract wherein Forest was stated to be
8 acting as agent for Banc One was sent to Creedon
9 Controls?
10 A. Yes.
11 Q. And have you ever seen that contract?
12 A. No.
13 Q. And are you aware that Creedon Controls then
14 sent back correspondence both by regular mail and
15 e-mail that attempted to change various terms of that
16 contract? Are you aware of that?
17 A. Yes.
18 Q. How did you become aware of that?
19 A. I became aware of it when Creedon became such a
20 problem.
21 Q. When was that?
22 A. I don't know what -- I don't have the dates.
23 Q. Approximately, time period.
24 A. I don't recall. I mean I guess it was after we

Creedon Controls, Inc.  
Philip Altheim  
v.  
C.A. # 05-CV-300-JJF  
Banc One Building Corporation  
June 28, 2006

Page 38

1 tried to come to resolutions with Creedon and, you
2 know, I had heard that this is an issue. She's an
3 issue.
4 Q. You mean after they sued you?
5 A. I guess so.
6 Q. Is after the suits were filed the first time
7 that you personally saw the proposed changes that --
8 A. No, I didn't.
9 Q. Okay, was it before suit was filed that you saw
10 the proposed changes with Creedon?
11 A. No.
12     MR. BRADLEY: Let him finish the whole
13 question, then answer, okay?
14     THE WITNESS: Okay.
15 Q. Okay. If it wasn't before or after suit was
16 filed, is the answer that you've never seen them?
17 A. I've never seen it.
18 Q. Okay. But you're aware that there were some
19 proposed changes that were suggested?
20 A. Yes, sir.
21 Q. And did you become aware of those proposed
22 changes after suit was filed?
23 A. Yes.
24 Q. Not before?

Page 39

1 A. No.
2 Q. And how did you become aware of that?
3 A. The discussion took place at our office that
4 after having done the successful project, one person
5 has caused a lawsuit. And I inquired what's this all
6 about? And Angerame and Rosenberg and people, Donna
7 told me this is, this is what's happening.
8 Q. And was there a discussion then as to the
9 nature of Forest's role as agent for Banc One or as a
10 not-at-risk party? Was that discussed at that
11 particular time?
12 A. No.
13 Q. When did you first learn that Banc One denied
14 that Forest was acting as agent for Banc One with
15 respect to the data center project?
16 A. I'm not understanding that question.
17 Q. All right. I'll try it again. What I want to
18 know is when you personally first learned that Banc
19 One was denying that your company acted as its agent,
20 vis-a-vis Creedon Controls, Inc., for the Brandywine
21 data center project?
22 A. I would say just recently.
23 Q. How recently?
24 A. The last few months.

Page 40

1 Q. And how did you so learn? How did you learn
2 that?
3 A. Talked to counsel.
4 Q. Did you talk to anyone else other than your
5 counsel?
6 A. No.
7 Q. Have you talked to anyone at Tishman about
8 that?
9 A. No.
10 Q. Have you talked to anyone at Banc One about
11 their denial that you were acting as agent?
12 A. There was nobody to talk to at Banc One.
13 Q. Their successor?
14 A. No.
15 Q. Are you aware that there is a back charge of
16 approximately $15,000 made against Creedon with
17 respect to the Brandywine data center project?
18 A. No, sir.
19 Q. So you don't know, you don't know or are not
20 aware of any of the specifics about that?
21 A. No, sir.
22 Q. My telling you today, is that the first that
23 you've ever heard that there's a back charge asserted?
24 A. Yes, sir.

Page 41

1     MR. BESTE: I think those are my
2 questions. Thank you, sir.
3     THE WITNESS: Good.
4     MR. BRADLEY: He's next. Let's take a
5 five-minute break. Do you have any questions, Paul?
6     MR. McDONALD: Um-hum.
7     (A brief recess was taken.)
8     (Altheim Exhibits No. 1 through 7 were
9 marked for identification.)
10 BY MR. McDONALD:
11 Q. Good morning, Mr. Altheim. As we met earlier
12 this morning, my name is Paul McDonald for Banc One
13 Building Corporation, with the law firm of Paul
14 Hastings Janofsky & Walker. I have some questions for
15 you regarding some of the testimony this morning.
16     The first thing I want to do is talk about
17 your understanding that Forest Electric was an agent
18 of the bank. Is it correct to say that you base that
19 understanding on your communications with
20 Mr. Weinberg, Mr. Auwarter and Mr. Fahrenbach about
21 the no-risk --
22 A. Yes.
23 Q. Okay. And is that the only thing you base your
24 belief that Forest Electric is, was an agent of the

11 (Pages 38 to 41)

Case 1:05-cv-00300-JJF   Document 128-7   Filed 08/08/2006   Page 5 of 7

| Creedon Controls, Inc. | v. | Banc One Building Corporation |
|---|---|---|
| Philip Altheim | C.A. # 05-CV-300-JJF | June 28, 2006 |

Page 42

1  Banc One Building Corporation on?
2      MR. BRADLEY: Object to form.
3  A. Yes.
4  Q. And regarding these communications you had
5  with -- now, first of all, did you have that
6  communication with all three or just one of those
7  individuals, if you recall, about the no-risk aspect
8  of the contract?
9  A. I know I had the conversation with Mike, and I
10 believe that certainly Karl and, and I forget his --
11 Gary Fahrenbach, were part of discussions. It wasn't
12 the most important thing in the world, all right?
13 We're there to build a building.
14 Q. Now, and by the way, when I say no risk, it was
15 your position that you were to be at no risk; is that
16 correct?
17 A. As an electrical trade manager, we would be at
18 no risk.
19 Q. Okay. Now, is it fair to say that means that
20 Forest Electric would not be bound to the
21 subcontractors?
22 A. Yes, sir.
23 Q. And who would be bound to subcontractors if
24 Forest Electric was not at risk?

Page 43

1  A. Banc One.
2  Q. And when you say that it was not the most
3  important thing, why not? You I guess just said now
4  in your conversations with Mr. Weinberg, Mr. Auwarter
5  and Mr. Fahrenbach.
6  A. Because we didn't spend days and days like
7  we're sitting here talking about it. It was just
8  something that we knew would be part of contractual
9  agreements and part of what we're supposed to be
10 doing.
11 Q. At any time did you memorialize your
12 understanding with Mr. Weinberg, Mr. Auwarter,
13 Mr. Fahrenbach regarding Forest Electric being at no
14 risk?
15 A. No.
16 Q. Is this the type of thing you would have
17 memorialized in the normal course of business?
18 A. Depending on the client.
19 Q. Is there any particular reason why you didn't
20 do it in this particular instance?
21 A. Because of the client.
22 Q. When you say "the client," are you referring to
23 Mr. Weinberg?
24 A. Banc One.

Page 44

1  Q. Was there anything that you felt about Banc One
2  that did not require such a term or condition to be
3  memorialized in writing?
4  A. Long-standing relationships.
5  Q. And those long-standing relationships are with
6  Mr. Weinberg, correct?
7  A. Yes, sir.
8  Q. But not with Banc One Building Corporation
9  itself?
10 A. No.
11 Q. And you also I think indicated that it was your
12 belief or understanding that Forest Electric was to
13 act as a construction manager, almost a partner with
14 Tishman on this project.
15 A. Yes.
16 Q. I'm going to show you what is going to be
17 marked as Altheim 1. Give this to counsel. Altheim 1
18 is single project construction services agreement
19 contract No. 2, which if you go to page 03934, has
20 your signature on it. And it says --
21 A. Hold on, I got to find my glasses.
22 Q. I'm sorry.
23 A. 66 years old, you don't exactly have good eyes.
24 Page 3, page 3, sir?

Page 45

1  Q. And the format used here is you'll see there's
2  Bates numbers at the bottom.
3  A. I see.
4  Q. So what I'll do is refer to the last numbers of
5  the Bates, 3934 is I believe where your signature is
6  indicated on this particular contract. And if you go
7  back to the first page, which is 3932, and you look at
8  the first full paragraph after the various signature
9  areas are indicated in the front, it says, "This
10 single project construction services agreement is made
11 as of the 12th day of September 2003 between
12 construction manager and electrical trade manager."
13 Do you see that?
14 A. Single project -- yes.
15 Q. Okay. And this identifies the construction
16 manager, just above that, the construction manager is
17 identified as Tishman Construction Corporation of
18 Maryland. Is that fair?
19 A. Um-hum, yes.
20 Q. And electrical trade manager is identified as
21 Forest Electric Corporation?
22 A. Yes.
23 Q. Is there anywhere in this contract that you're
24 aware of that Forest Electric Corporation is

12 (Pages 42 to 45)

Page 46

1   identified as a construction manager?
2       MR. BRADLEY: By that term, "construction
3   manager"?
4       MR. McDONALD: Yes.
5   A.  No.
6   Q.  And if we go to, again, going to the page we
7   were at before, 3934, on the signature block where you
8   have signed for Forest Electric Corporation, next to
9   that -- and it's under electrical trade manager; is
10  that correct?
11  A.  Yes, sir.
12  Q.  Next to that it has, it says agent Tishman
13  Construction Corporation of Maryland as Banc One
14  Building Corporation's agent and construction manager,
15  signed by William Stanton. Do you see that?
16  A.  Yes.
17  Q.  Is there anywhere in this contract that you are
18  aware of that Forest Electric is identified, as
19  Tishman is in this contract, as an agent of Banc One
20  Building Corporation?
21  A.  I'm not aware.
22  Q.  And if we go to page 3959, it's a little ways
23  into the contract, want to direct your attention to
24  Section 4.04. Let me know when you're there.

Page 47

1   A.  I'm here.
2   Q.  The first line of that section says, "By
3   appropriate agreement, electrical trade manager shall
4   require each subcontractor, to the extent of the work
5   to be performed by such subcontractor," then it says,
6   "(i) to be bound to electrical trade manager by the
7   terms of the contract documents." Do you see that?
8   A.  Yes.
9   Q.  And in this particular contract, Forest
10  Electric is identified as the electrical trade
11  manager; is that correct?
12  A.  Yes.
13  Q.  And if you go further down in that same
14  paragraph, it says, starting at, "Nothing contained in
15  the contract documents shall create any contractual
16  obligation between any subcontractor and owner." Do
17  you see that?
18  A.  Yes, I do.
19  Q.  And if you go back to page 1, which is 3932,
20  the owner is identified as Banc One Building
21  Corporation. Correct?
22  A.  Yes.
23  Q.  Now, given what we have just talked about in
24  regards to this single project contract that you

Page 48

1   signed on page 3934, is it fair to say that you signed
2   a document that contradicted whatever understanding
3   you say you had with Mr. Weinberg regarding no risk?
4       MR. BRADLEY: Object to form.
5   A.  **I signed this contract given to me by other**
6   **persons.**
7   Q.  But is it fair to say, based upon what we've
8   just discussed, that those provisions that we have
9   just discussed contradict the representation that you
10  made regarding your conversations with Mr. Weinberg?
11  A.  **If per the letter of the law, then I don't have**
12  **a -- I don't have enough knowledge to know if that**
13  **contradicts.**
14  Q.  Well, let me ask you this. I think you just
15  testified that your understanding of no risk for
16  Forest Electric would mean that Forest Electric would
17  not be bound to the subs.
18  A.  **Correct.**
19  Q.  And in Section 4.04 on page 3959, does it not
20  say that subcontractors are to be bound to electrical
21  trade manager, which is Forest Electric in this
22  particular contract?
23  A.  **It does say that, yes.**
24  Q.  And also I think you testified that a no-risk

Page 49

1   contract for Forest Electric, that Banc One Building
2   Corporation would be bound to the subs instead, yes?
3   A.  Yes.
4   Q.  It also says in 4.04 that nothing contained in
5   the contract documents shall create any contractual
6   obligation between any subcontractor and owner. Is
7   that fair to say?
8   A.  Yes.
9   Q.  Now, want to move on to what will be marked as
10  Altheim 2. And this is a document dated October 2nd,
11  2003 to Creedon Controls from Paul Angerame of Forest
12  Electric Corporation. First paragraph says, "This
13  letter is to acknowledge our mutual desire to enter
14  into a subcontract agreement with Creedon Controls
15  electrical contractors." Do you see that?
16  A.  Yes.
17  Q.  And if we go to the attachment to this
18  document, which is referred to on page 1 as Exhibit 1,
19  and it's on page CL 0624 styled the "Subcontract
20  Agreement," let me know when you're there.
21  A.  I am.
22  Q.  And you see that, does that appear to be a form
23  subcontract agreement utilized by Forest Electric
24  Corporation, to your knowledge?

13 (Pages 46 to 49)

Page 54

1  lines and changes have been made?
2  **A. I haven't seen it. You tell me where to go.**
3      MR. BRADLEY: You haven't established that
4  he's ever even read these e-mails or, they certainly
5  weren't copied to him based on what's here.
6  Q. Any particular reason why you would not have
7  seen any of these documents on this project?
8  **A. Yes.**
9  Q. And why is that?
10 **A. It never has been -- it has been other people's**
11 **responsibilities in the organization to deal with**
12 **these documents.**
13 Q. And who would that be in particular, whose
14 responsibility?
15 **A. Donna Lucas.**
16 Q. And in terms of Donna Lucas and her e-mail
17 talking about modifying the Banc One form agreement to
18 accomplish no exposure for Forest Electric
19 communications, do you know from whom she received
20 that direction?
21 **A. No.**
22 Q. Did you speak with Mr. Angerame about the issue
23 of no exposure or no risk for Forest Electric
24 Corporation?

Page 55

1  **A. Yes.**
2  Q. Let me -- actually, I might be able to finish
3  up very quickly here. Let me skip to what's been
4  marked as, I think premarked as Altheim 6 and 7.
5      MR. BESTE: Which is which?
6      MR. McDONALD: 6 is going to be the first
7  one in date of order, it's going to be October 23,
8  2003. 7 is the March 1, 2004. They are both on
9  Tishman letterhead. They are addressed to Karl
10 Auwarter at Banc One. They're both -- well, the first
11 one I should say, I'll talk about them individually.
12 BY MR. McDONALD:
13 Q. No. 6, Altheim 6 is referencing Banc One's CDC
14 II general lighting and power RFP 6B, and No. 7 is
15 referencing the IT cable conveyance system pod A RFP
16 21B.
17     Mr. Altheim, I want to direct your
18 attention to the third paragraph down on, actually on
19 both these letters, I think they're substantially the
20 same, if not exactly the same.
21 **A. The third paragraph?**
22 Q. The third paragraph, that's correct. It says,
23 "Please indicate your authorization on behalf of Banc
24 One for Tishman Construction Corporation to enter into

Page 56

1  such an agreement, and return to the undersigned. As
2  soon as authorization is received, we are prepared to
3  enter into an agreement as your agent." Do you see
4  this in both of those documents?
5  **A. Yes, sir, yes, sir.**
6  Q. Did Forest Electric at any time ever send
7  similar correspondence to Banc One indicating,
8  requesting authority to enter into an agreement on
9  behalf of Banc One as Banc One's agent?
10     MR. BRADLEY: Object to form.
11 **A. I can't, I don't know, sir.**
12 Q. Do you know if at any time Forest Electric ever
13 formally requested authorization from Banc One to
14 enter into contracts as Banc One's agent?
15 **A. No, sir.**
16 Q. When you say, was that a no that you did not do
17 it, or that you don't know if it was done?
18 **A. I don't know.**
19 Q. You don't know. And similarly, is it true that
20 you don't know if you ever received authorization from
21 Banc One to do that?
22     MR. BRADLEY: Object to form.
23 **A. No.**
24 Q. Meaning again you don't know or --

Page 57

1  **A. I don't know.**
2      MR. McDONALD: Can we go off the record
3  for a minute? Give me a second, I might be done.
4      I have no further questions. Thank you,
5  sir.
6      THE WITNESS: Thank you, sir.
7      MR. BESTE: No questions. Thank you.
8      MR. BRADLEY: We'll read and sign.
9      (The deposition concluded at 11:38 a.m.)
10          I N D E X
11 Deponent: PHILIP ALTHEIM                    Page
12 By Mr. Beste..................... 2
13 By Mr. McDonald.................. 41
14
          E X H I B I T S
15
Altheim:                                     Page
16
1   Single Project Construction Services    41
17      Agreement; Banc One 03932-03996
    2   10/2/03 Letter and Subcontract Agreement  41
18      CL 0623-0636
    3   E-mail string, Single Project Construction  41
19      Services Agreement Contract; FE 014336-4441
20  4   2/18/04 e-mail, Contract No. 1          41
        FE 014443-014496
21
    5   5/4/04 Letter and Construction Services  41
22      Agreement; 006113-006173
23  6   10/23/03 RFP 6B; Banc One 00716-00717    41
24  7   3/1/04 Letter, Final Bid Summary, Project  41