# EXHIBIT I

Not Reported in A.2d                                                                                                          Page 1
Not Reported in A.2d, 2000 WL 1211157 (Del.Super.)
**(Cite as: 2000 WL 1211157 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Edward RODGERS and Denise Rodgers
v.
ERICKSON AIR-CRANE CO. L.L.C. formerly known as EAC Development, L .L.C., The Erickson Co., formerly known as Erickson Air Crane Co. and Chrysler Corp.
v.
GALLAGHER-KAISER CORP. and J.S. ALBERICI CONSTRUCTION CO., INC.
No. 98C-07-014-WTQ.

Argued: July 28, 2000.
Decided: Aug. 17, 2000.

Letter Opinion and Order on: The Erickson Defendants' Motion For Summary Judgment--Motion Denied; Gallagher-Kaiser Corporation's Motion for Summary Judgment--Motion Granted; Summary Judgment is Granted on behalf of Alberici on the Court's Own Initiative Concerning the Question of Whether Gallagher-Kaiser was an Agent of Alberici.

Richard A. Zappa, Esquire, Young Conaway Stargatt & Taylor, Wilmington.

Michael Tighe, Esquire, Tighe Cottrell & Logan, Wilmington.

Bruce E. Hopson, Esquire, Mark D. Pasewark, Esquire, St. Louis, MO.

William J. Cattie, Esquire, Cattie & Fruehauf, Wilmington.

Karen Brehm, Esquire, Maron Marvel & Wilks, Wilmington.

Louise Cobbs, Esquire, Jonathan Epstein, Esquire, Haight Gardner Holland & Knight, Washington, DC.

QUILLEN, J.

*1 Dear Counsel:

This is the Court's Letter Opinion and Order on the Erickson Defendants' collective Motion for Summary Judgment, arguing that the Helicopter Services Contract and the indemnification provision contained therein must govern the relationship of the parties. For the following reasons, the Motion is DENIED. This is also the Court's Letter Opinion and Order on the Third Party Defendant Gallagher-Kaiser Corporation and J.S. Alberici Construction Company's Motions for Summary Judgment. For the reasons stated herein, both Motions are GRANTED.

FACTS
This case concerns personal injuries that were suffered by the Plaintiff Edward Rodgers while he was working at the Chrysler plant in Newark. Mr. Rodgers was employed by the J.S. Alberici Construction Company, which had been hired perform the demolition of the paint shop at the plant. Chrysler Purchase Order, Dkt. No. 107, Ex. C.

It appears that the Third Party Defendant, the Gallagher-Kaiser Corporation, [FN1] hired Erickson Air Crane and/or the Erickson Company (hereinafter "Erickson") to provide helicopter crane services at the Chrysler plant for another project. Alberici was advised that Gallagher-Kaiser had made arrangements to hire Erickson, and Alberici asked Gallagher-Kaiser if they could also use Erickson's' services on the day in question in order to save on mobilization and demobilization costs. Rost Dep. at 23, Dkt. No. 107. Alberici wanted to utilize the services of the helicopter crane while it was there to lift sections of heating, air conditioning and cooling housings from the roof of the paint shop building and place them on to the ground. *Id.* The arrangements were made and the lifts were performed by Erickson on July 20, 1996.

   FN1. Gallagher-Kaiser contends that its contract with Chrysler was "limited to moving the powder paint booth air suppliers for use on the new paint shop project." Gallagher-Kaiser Reply Br. at 3, Dkt. No. 108. Gallagher-Kaiser argues that it was not otherwise involved in the renovation project.

These arrangements were clearly and simply accommodations among these independent parties beneficial to all. Erickson got more business. Gallagher-Kaiser and Alberici got less expensive service. There is no persuasive evidence to indicate otherwise.

During one of the lifts performed for the benefit of Alberici, Mr. Rodgers was injured. Mr. Rodgers' assigned duty on the date of the accident was to climb

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a ladder to get on top of the housing units and remove the rigging lines after the helicopter set the units to the ground. While Rodgers was performing his duties and unhooking the lines, it is alleged that the Erickson helicopter crane operator maneuvered his helicopter in a manner causing an air downwash from the rotary blades of the helicopter, which propelled Rogers off the HVAC casings and to the ground.

In the end, Gallagher-Kaiser contracted and paid for Erickson Air Crane to perform all 77 lifts at the Chrysler plant. Fifty of the lifts performed were done for the benefit of Alberici. Erickson Heavy Lift Production Report, Dkt. No. 101, Ex. E5. It appears that Gallagher-Kaiser paid the entire bill to Erickson Air-Crane for all of the lifts in exchange for a credit of a bill already owed to Alberici. See id. at E6, E8 and Ex. A ¶ 5. In the Court's view, these billing and payment arrangements were, as a matter of law, simply an accommodation reached by independent entities. [FN2]

> FN2. Indeed, it appears that the two projects were separate. The two projects were performed on the different areas of the roof. See Gallagher Kaiser Request for Admissions ¶ 25, Dkt. No. 101, Ex. C, see also, Erickson Site Inspection Report, Dkt. No. 101 Ex. E2 (illustrating that the Alberici and Gallagher-Kaiser projects each had different flight paths). This fact is also supported by Erickson's "Proposed Helicopter External Load Operation" report which states that there would be two contractors at two locations. Dkt. 101, Ex. E2. The Erickson incident report also states that at the time of the accident, the first phase of the project with Gallagher-Kaiser had been completed before the second phase with Alberici began. Erickson Memo., Dkt. No. 109, Ex. N.

*2 It also appears that all of this was done without a formal written contract signed by both Gallagher-Kaiser and Erickson, although that is certainly in dispute in this Motion. An Erickson Air Crane representative signed the Helicopter Services Contract for the Chrysler project on July 8, 1996. That document, however, was not signed by a Gallagher-Kaiser representative until January 23, 1998, some 18 months after the project was completed. Helicopter Services Contract, Dkt. No. 101, Ex. B1. The inherently confusing late date appears expressly on the document being relied upon. Moreover, it appears that Gallagher-Kaiser only signed the addendum to the contract, not the contract itself. Gallagher-Kaiser alleges that Erickson obtained Gallagher-Kaiser representative's signature through subterfuge. Allegedly, this contract, which contained an indemnity provision, was only signed by Gallagher-Kaiser because Erickson informed Gallagher-Kaiser that it was being audited and it needed to "clear up some paperwork." Interrogatory Response No. 8, Dkt. No. 107, Ex. A. It is alleged that at the time Gallagher-Kaiser signed Exhibit A of the Helicopter Services Agreement, it was not informed that it would be binding itself to the terms of a contract.

Rodgers originally filed suit against Chrysler and Erickson for damages resulting from the July 20, 1996 accident. Chrysler then impleaded Alberici in a Third Party Complaint filed December 28, 1998, seeking indemnity arising from a contractual indemnity provision contained in a purchase order. Chrysler is not involved in the current Motion. Similarly, Erickson impleaded the Gallagher-Kaiser Corporation and Alberici with a third party Complaint seeking to invoke the indemnity clause that is contained in the Helicopter Services Contract. On March 10, 1999, the Plaintiffs amended their Complaint to include a claim of absolute liability against Erickson. [FN3]

> FN3. This Court has issued an Opinion in this case regarding the applicability of the absolute liability provisions of 2 Del. C. § 305, (the Uniform State Law for Aeronautics), to this particular set of factual circumstances. Rodgers v. Erickson Air-Crane, Del.Super., 740 A.2d 508 (1999).

In this Motion, Erickson seeks a ruling on the enforceability of an indemnity provision in the Helicopter Services Contract in the event Erickson is held liable under the allegations in the Plaintiffs' Complaint. First, Erickson argues that the contractual relationship between it and Gallagher-Kaiser is governed by the integrated Helicopter Services Contract. [FN4] Erickson also argues that Alberici is bound by the Helicopter Services Contract because Gallagher-Kaiser "arranged for the lifts on behalf of Alberici, as Alberici's agent" and therefore must also be bound by the Helicopter Services Contract. Erickson's Opening Br. at 7, Dkt. No. 100. Finally, Erickson argues that because the Helicopter Services Contract is a fully integrated agreement and the parol evidence rule applies, both Alberici and Gallagher-Kaiser have a duty to indemnify it in this lawsuit.

> FN4. Erickson also argues that, even if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

extrinsic evidence is allowed on this point, the Helicopter Services Contract governed the parties' relationship.

Gallagher-Kaiser argues that it, as buyer, sent a purchase agreement to Erickson, as seller, for the lifts on April 8, 1996, and that purchase agreement should govern the relationship between the parties. That purchase order states:

*3 Upon acceptance by Seller by execution of the Acceptance Copy hereof or by beginning performance, this Purchase Agreement shall supersede all other written or oral agreements and shall constitute a valid and binding contract. No additions or alterations made to this Agreement by Seller shall become part of the Agreement without the written consent of the Buyer. Any additional or different terms or conditions stated by the Seller in accepting or acknowledging this agreement are rejected in advance unless explicitly accepted in writing by the Buyer.

Gallagher-Kaiser Purchase Agreement § 1, Dkt. No. 109, Ex. G.

Gallagher-Kaiser and Alberici also argue that Helicopter Services Contract was not a binding contract between the parties because Gallagher-Kaiser was induced to sign the contract by a misrepresentation that Erickson was being audited and Erickson needed "to clear up some paperwork." [FN5] Aff. James Cosgrove, Dkt. No. 109, Ex. L. Gallagher-Kaiser further argues that even if the Helicopter Services Contract is a valid and integrated agreement, Erickson cannot obtain indemnity from it under Delaware law. [FN6]

FN5. Alberici also argues that all of the work that Erickson did for Alberici under the contract was complete 18 months before the execution of the Helicopter Services Contract and that Erickson could not have been relying on any alleged agency when Gallagher-Kaiser and Erickson entered into the later made contract.

FN6. Gallagher-Kaiser, as the non-moving party, also seeks a ruling by this Court holding that it owes Erickson no duty of contribution because Erickson has made no case of negligence against it. Gallagher-Kaiser also wishes to have this Court rule that Erickson is estopped from asserting that Gallagher-Kaiser's lack of supervision entitles Erickson to contribution. Alberici for its part seeks Summary Judgment based on Erickson's claim that Gallagher-Kaiser was an agent of Alberici, and therefore Alberici is bound by the Helicopter Services Contract.

STANDARD OF REVIEW
When considering a Motion for Summary Judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds that there are no genuine issues of material fact, Summary Judgment will be appropriate. *Id.* Summary Judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub,* Del.Supr., 4 Storey 463, 180 A.2d 467 (1962).

DECISION
1. The Helicopter Services Contract

There is a threshold question about the validity of the Helicopter Services Contract and the indemnification provision contained therein because the appendix was not signed by Gallagher-Kaiser until January 23, 1998, nearly 18 months after Erickson signed the contract and the accident occurred. As discussed below, Gallagher-Kaiser argues that it was induced to sign the contract by a misrepresentation of Erickson. The Helicopter Services Contract states, in pertinent part, that it is an integrated agreement.

ENTIRE AGREEMENT: AMENDMENTS: This Contract is the entire agreement between the parties and, when executed by CUSTOMER, supersedes any and all verbal agreements and terms of purchase orders and acceptance documents covering the same work. This Contract may not be altered or amended except by a writing signed by both parties. Signatures of ERICKSON on purchase orders or acceptance of documents executed in conjunction with this Contract, regardless of when dated, shall not be deemed an alteration or amendment of the terms of this Contract.

*4 Helicopter Services Contract ¶ 11, Dkt. 101, Ex. B1.

Additionally, the contract contains an indemnity clause which provides:

Each shall defend and indemnify the other party, its directors, officers, employees and agents, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> shall save and hold the other party harmless from and against any and all claims, suits, liability and expenses including but not limited to, personal injury and death actions arising from such operations, physical areas and aspects of performance under this Contract which are within the *primary control* of the indemnifying party.
>
> *Id.* at ¶ 11(c)(2) (emphasis supplied).

The thrust of Erickson's argument is that because the Helicopter Services Contract is "integrated," the parol evidence rule must apply and the indemnity provision must be applied. Erickson thus claims that the Court should not consider any extrinsic evidence under the parol evidence rule to determine the validity of the agreement between the parties.

"[P]arol evidence is inadmissable to vary, alter, or contradict a written instrument or the terms thereof where the instrument is complete, integrated, final, unambiguous, and valid." 32A C.J.S. *Evidence* § 1132. But parol evidence may be available to show "that the agreement was rendered invalid, void, voidable by such causes as fraud, illegality, duress, mutual mistake, lack or failure of consideration, and incapacity." Richard A. Lord, 11 *Williston on Contracts* § 33:17 (4th ed.1992); Restatement (Second) of Contracts § 214(d).

> Even though a contract is in writing, the fact that it was induced by false representations may be shown by parol or extrinsic evidence as a sheer matter of necessity. Thus, the fact that a contract is in writing does not preclude the introduction of evidence to show that a material stipulation therein was founded on the misrepresentation and fraud of one of the parties, or was inserted or omitted by fraudulent means.
>
> 37 Am.Jur.2d, *Fraud and Deceit*, § 451.

A.  *Misrepresentation Claim Bars Summary Judgment in Favor of Erickson*

Here, Summary Judgment cannot be granted in favor of Erickson on the Helicopter Services Contract as a signed and integrated agreement because there is a question of whether or not there was a misrepresentation made by Erickson to Gallagher-Kaiser to induce Gallagher-Kaiser into signing the Helicopter Services Contract some 18 months after the project was completed. Mr. Cosgrove, the vice-president of Gallagher-Kaiser, who signed the contract on behalf of the company represents that he was told by Erickson that they were being audited and they needed the signed appendix to "clear up some paperwork." Cosgrove Aff. ¶ 7, Dkt. No. 109, Ex. L. Mr. Cosgrove also states that he never signed the Helicopter Services Contract itself, he only signed the appendix. *Id.* This creates at least a question of fact as to whether there was intent to sign the contract and whether there was fraud or misrepresentation in the inducement to sign the contract. [FN7] As the Delaware Supreme Court long ago noted, a mixture of parol with written evidence draws the whole to the Jury. *Universal Products Co., Inc. v. Emmerson,* Del.Supr., 6 W.W. Harr. 553, 571, 179 A. 387, 395 (1935). Regardless of what the Court holds on the balance of the dispute on Erickson's Motion, Summary Judgment would have to be denied due to the misrepresentation point raised by Gallagher-Kaiser.

> FN7. The Court notes that Gallagher-Kaiser had signed other Helicopter Service Contracts in the past. But there remains at least a question of fact as to whether Gallagher-Kaiser was fraudulently induced to sign the appendix in this case.

B.  *Issue of Intent on Ambiguous Agreement Bars Summary Judgment in Favor of Erickson*

*5 Even assuming that Gallagher-Kaiser was not induced to sign the Helicopter Services Contract by a misrepresentation, (fraudulent or not), it is highly questionable that the Helicopter Services Contract is applicable when signed so long after the services were performed and completed. Erickson claims that the relationship between it and Gallagher-Kaiser, (and Alberici as principal of Gallagher-Kaiser), is the entire agreement between the parties and the fact that Gallagher-Kaiser signed the contract after performance does not affect the validity of the contract. Erickson cites *Sweetman v. Strescon Industries, Inc.,* Del.Super., 389 A.2d 1319, 1322 (1978) for the proposition that "[w]hen a party executes a contract *which is effective on a prior date* the party establishes its contractual obligations as of the prior date, [and] it accepts the events which have occurred since that prior date." *Id.* (emphasis supplied).

Parties can agree that a written contract shall take effect as a date earlier than that on which it was executed, and when this is done, the parties will be bound by such agreement. *Brewer v. National Surety Corp.,* 10th Cir., 169 F.2d 926, 928 (1948). In *Sweetman,* the contract was signed by the parties on June 22, 1976 and the accident occurred on May 25, 1976. *Sweetman,* 389 A.2d at 1321. The contract,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

however, contained a clause that stated that the agreement was actually made on April 22, 1976. *Id.* There, the parties proceeded with the work they were doing pursuant to an oral agreement in contemplation that the agreement would thereafter be executed formalizing the undertakings of the parties. *Id.* at 1322. The parties signed the contract afterward and made changes on the date the contract was executed but did not adjust the indemnity clause in the contract. *Id.* The Court ultimately held that a later date followed the signatures, and the presence of two different dates on the contract created ambiguity which opened the door to evidentiary proof that the date appearing at the beginning of the agreement should not control the inception of rights and liability thereunder. *Id.*

Parties should be able to ratify their agreement after performance of the contract, as in *Sweetman*. In this situation, however, because are two different dates where the contract was signed some 18 months apart, there is ambiguity on the face of the document. Furthermore, the Gallagher-Kaiser signature is only on the addendum and not on the contract. Moreover, this situation is also distinguishable from *Sweetman* because here the parties did not negotiate or make changes to the contract or ratify the indemnification clause before Gallagher-Kaiser signed the appendix later. Without more, the Court should not hold as a matter of law that the parties ratified the Helicopter Services Contract. The Court, at best, would have to leave the factual question as to whether Gallagher-Kaiser objectively intended that the contract and the indemnity provision contained therein related back to before the date of performance for another day. Thus, Summary Judgment on this point would have to be denied because of the open question of intent.

C. *No Merit to Erickson's Counter-Offer Argument*

*6 Erickson next argues that the Helicopter Services Contract should govern here even without the signature because that was the last writing that had been sent between the parties before the helicopter services were performed. This argument goes to the heart of the case and enables the Court to deal with the underlying question relating to the nature of the contract which was performed, including the intent issue left open above. Gallagher-Kaiser first sent a purchase order to Erickson to have the work done. That purchase order appears to have been sent to Erickson on April 8, 1996. Oct. 7, 1998 Letter, Dkt. No. 109, Ex. H. Gallagher-Kaiser claims that the purchase order it sent prior to having the lifts performed should govern the relationship of the parties because that purchase order expressly contemplates acceptance by performance. Gallagher-Kaiser Purchase Agreement § 1, Dkt. No. 109, Ex. G ("[u]pon acceptance by Seller [Erickson] by execution of the Acceptance Copy hereof or by beginning performance ... and shall constitute a binding agreement"). It appears that the Erickson Helicopter Services Contract was sent on July 8, 1996, nearly two months after the Gallagher-Kaiser purchase order was sent. Neither contract was signed by the respective offeree at the time that the work was performed.

It appears that the parties here agreed ahead of time to a price for the services performed. It also appears that the parties had agreed to the amount of the mobilization costs and demobilization costs. Each party sent each other a competing form with their terms and conditions listed. The Gallagher-Kaiser purchase order expressly contemplated acceptance by performance while the Erickson Helicopter Services Contract contemplated that it would be the entire agreement between the parties "when executed by [the] customer." Helicopter Services Contract ¶ 12, Dkt. 101, B1. It, however, appears that there was no explicit agreement between the parties as to exactly what terms would apply. Neither contract was signed or agreed to by both parties and it appears that there was no explicit meeting of the minds as to the terms that would control. While the exclusivity provisions in each proposal are insufficient to support the offeror's view that its version of the contracts should prevail, they are powerful evidence that neither side intended to be bound by the proposal of the other. [FN8]

> FN8. The common law view of relying on the last exchanged document before performance always seemed forced, a doctrine to which to repair in the absence of other admissible evidence. But there would seem to be no justification for such a last resort when it is clear that the exchanged documents are mutually exclusive and expressly disclaim the other. Any alleged meeting of the minds is clearly fiction.

Where there is no meeting of the minds, there is no enforceable contract in Delaware. *Sowell v. Townsends, Inc.,* Del.Super., C.A. No. 99A-01-001, Graves, J. (Jan. 26, 2000); *see also,* Richard A. Lord, 1 *Williston on Contracts* § 4:1 (4th ed.1990) ("mutual assent is essential to the formation of informal contracts"). And, normally there is no contract until

Not Reported in A.2d                                                                                                     Page 6
(Cite as: 2000 WL 1211157, *6 (Del.Super.))

agreement is reached on all material terms; the preliminary and partial agreements being expressly or impliedly incorporated into the final offer and acceptance. Joseph M. Perillo, *Corbin on Contracts* § 2 .8 (rev. ed.1993).

*7 Here, it appears that when the services were actually performed, there was no explicit written agreement as to all material terms of either the purchase order or the Helicopter Services Contract. To the contrary, it is clear that the parties had not agreed on one area of choice and each considered its position a vital part of the contract. As Alberici points out in its Brief, this is a situation in which Erickson did not explicitly accede to the requirements of the purchase order nor did Gallagher-Kaiser accede to the Helicopter Services Contract as proposed by Erickson. Alberici Br. at 4, Dkt. No. 107. Certainly the parties had a contract as to price and services to be performed, but the parties had no formal understanding established as to other key terms at the time the services were performed. Therefore, the Court holds that, as a matter of law that, while the documents can help explain the contractual relationship, at the time of performance, there was simply an oral contract between the parties, and that oral contract controlled their relationship. [FN9]

> FN9. UCC 2-207 does not expressly apply to a contract for services. Ronald A. Anderson, 2 *Uniform Commercial Code* § 2-207:42. (3d ed.1997). But a counter offer which materially alters the original proposal does not become part of a contract between the parties in the sale of goods context. 6 *Del. C.* § 2-207(2)(b).

D. *No Consideration for a Revised Contract in 1998*

The question then becomes, was the oral contract revised by the Helicopter Services appendix being signed? There is no dispute that the job was completed and Erickson was paid long before the Helicopter Services Contract was signed. Thus, there was mutual assent that Erickson was going to provide helicopter crane services for Gallagher-Kaiser and Alberici. Erickson undertook performance, and Gallagher-Kaiser paid for the services. It is hornbook law that any legal duty is discharged and terminated by full and exact performance. Arthur L. Corbin, *Corbin on Contracts* § 1230 (one vol. ed.1952); *see also,* John D. Calamari & Joseph M. Perillo, *Contracts* § 21-17 (3d ed.1987) ("[a] contractual duty is obviously discharged by performance"); Restatement (Second) of Contracts § 235 ("Full performance of a duty under a contract discharges the duty"). Here, full performance was undertaken.

In this context, there is one fundamental problem with Erickson's view that the 1998 signing retroactively makes the relationship governed by the Helicopter Services Contract. Any later attempt by Erickson to have the Helicopter Services Contract control the arrangement between the parties after the terms of the oral contract had been satisfied and discharged must fail, unless the new promise was supported by additional consideration.

It is often stated that the consideration required to support a promise is a detriment incurred by a promisee or a benefit received by the promisor at his request. Richard A. Lord, 3 *Williston on Contracts* § 7:4 (4th ed.1992) (citing in part *First Mortgage Co. of Pa. v. Federal Leasing Corp.,* Del.Supr., 456 A.2d 794 795-96 (1983) ("consideration for a contract can consist of either a benefit to the promisor or a detriment to the promisee")). Here, there was no consideration arising from the purportedly new Helicopter Service Contract that was signed in 1998. Even if a misrepresentation was not made, the 1998 Helicopter Services Contract is ineffective because it is not supported by consideration.

E. *Conclusion*

*8 Neither the Erickson Helicopter Services Contract nor the Gallagher-Kaiser purchase order control the agreement between the parties. Thus, Erickson's Motion for Summary Judgment on the applicability of the Helicopter Services Contract is DENIED.

2. Contractual Indemnity-Public Policy

There is an alternative argument upon which Gallagher-Kaiser relies which this Court finds at least partially persuasive. In order to cover the waterfront for appellate purposes, if any, the Court will offer some dictum discussing the alternative argument.

Erickson argues that, if the Helicopter Services Contract controls the relationship between the parties, and assuming that the signing of the Helicopter Services Contract some 18 months after the performance of the lifts made the contractual terms relate back to before the services were performed, the contractual indemnity provisions in the contract must be applied. Gallagher-Kaiser says, even if the Helicopter Services Contract was intended to govern the relationship between the parties, it cannot do so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

due to public policy. In Delaware, the General Assembly has legislatively mandated that indemnity provisions insulating a party from its own negligence, such as the one employed in the Helicopter Services Contract, are against the public policy of this State. 6 Del. C. § 2704(a) states:

> (a) A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement (including but not limited to a contract or agreement with the State, any county, municipality or political subdivision of the State, or with any agency, commission, department, body or board of any of them, as well as any contract or agreement with a private party or entity) relative to the construction, alteration, repair or maintenance of a road, highway, driveway, street, bridge or entrance or walkway of any type constructed thereon, and building, structure, appurtenance or appliance, including without limiting the generality of the foregoing, the moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee or indemnitee or others, or their agents, servants and employees, for damages arising from liability for bodily injury or death to persons or damage to property caused partially or solely by, or resulting partially or solely from, or arising partially or solely out of the *negligence* of such promisee or indemnitee or others than the promisor or indemnitor, or its subcontractors, agents, servants or employees, is against public policy and is void and unenforceable, even where such covenant, promise, agreement or understanding is crystal clear and unambiguous in obligating the promisor or indemnitor to indemnify or hold harmless the promisee or indemnitee from liability resulting from such promisee's or indemnitee's own negligence. This section shall apply to all phases of the preconstruction, construction, repairs and maintenance described in this subsection, and nothing in this section shall be construed to limit its application to preconstruction professionals such as designers, planners and architects; provided, however, that this section shall not apply to any obligation owed to the Department of Transportation pursuant to a contract awarded under Title 17 or Chapter 69 of Title 29.

*9 *Id.* (emphasis supplied).

The Delaware Supreme Court recently opined that the clear and unambiguous language of 6 Del. C. § 2704(a) makes indemnity provisions for one's own negligence in contracts unenforceable, even when the choice of law provision from another State, (where the indemnity provision is enforceable), is implicated in the lawsuit. *J.S. Alberici Construction Co. v. Mid-West Conveyor Co.,* Del.Supr., 750 A.2d 518 (2000) ( *Alberici I* ). In *Alberici I,* Chrysler hired Mid-West Conveyor as a subcontractor do work at the Chrysler plant in Newark. Mid-West Conveyor in turn hired Alberici Construction to work for it at the plant. The subcontracting agreement between Alberici and Mid-West Conveyor contained an indemnification clause where Alberici had to indemnify and defend Mid-West for negligence that occurred that was attributable to Mid-West. The contract also had a choice of law provision stating that it would be construed under the laws of the State of Kansas, which allows self-indemnity provisions.

The Delaware Supreme Court held that while Delaware Courts will generally honor contractually designated choice of law provisions, the law of a foreign jurisdiction cannot be used to interpret a contract provision in a manner repugnant to public policy of this State. *Id.* [FN10] The Court further held, in interpreting the statute, that:

> FN10. The Supreme Court also noted that a mere difference between the laws of two States will not necessarily render the enforcement of a cause of action arising in one State contrary to the public policy of another State. *Id.* (citing *Silkman v. Conner,* Del.Super., 8 W.W. Harr. 402, 193 A. 563, 565 (1937)). I also confess to a contrary public policy bias which, barring a shocking result, tends to want to respect foreign law if, under normal conflict of laws and contract rules, it governs. But the Supreme Court has spoken loud and clear on the effect of the statute, 6 Del. C. § 2704(a), and there is no room for such a tendency on this statute.

Section 2704(a) is clear on its face: a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial, "is against public policy and is void and unenforceable." Courts are not free to disregard that declaration of policy. Accordingly, we find that this statutory language compels the conclusion that enforcing Kansas law on this issue would be clearly repugnant to the public policy of Delaware.
*Id.*

In this case, if in fact the Helicopter Services

Contract controlled, without public policy considerations, Delaware's law would be inapplicable because Oregon's substantive law would apply via a forum selection provision in the contract. Erickson argues that *Alberici I* is inapplicable here because Oregon, unlike Kansas, has a statute that specifically permits a contribution type right to the extent that the indemnitors are negligent. Oregon Revised Statutes, Section 30.140 provides:

> (1) Except as to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against lability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.
>
> (2) This section does not affect any provision of the construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to the person or damage to the property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.

*10 Erickson argues that the application of the Oregon statute would not jeopardize the public policy rationale underlying 6 *Del. C.* § 2704 because it would in effect apportion contractual liability in accordance with each parties respective fault. [FN11] Erickson states that this is comparable to the apportionment of tort liability of Defendants under Delaware's Uniform Contribution Among Tort Feasors Law, 10 *Del. C.* § 6301 *et seq.*

> FN11. As the case currently stands, Erickson could be found absolutely liable by the jury for injuries incurred as a result of the accident. *See Rodgers,* 740 A.2d at 514.

If the Helicopter Services Contract was applicable, Erickson's argument that the Oregon statute should be applied in this case makes sense. *Alberici I* clearly states that under Section 2704(a) "a contractual provision requiring one party to indemnify another party for the second party's own negligence, whether sole or partial 'is against public policy and is void and unenforceable." ' *Alberici I, supra.* The Oregon statute does not allow indemnity for one's own negligence. It only allows indemnity that "arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors." Therefore, it appears that Erickson is correct in that the Oregon statute apportions damages as to a parties relative fault and does not allow indemnification for one's own negligence. If the substantive law of Oregon applied because of the forum selection clause, the Oregon statute would not be repugnant to the public policy of Delaware because there would not be indemnity for one's own negligence. [FN12]

> FN12. Erickson makes an alternative argument that *Alberici I* has no application to indemnity claims sounding other than in negligence. Erickson Mt. at 13, Dkt. No. 100. Erickson states that the Delaware Uniform Aeronautics Act, (2 *Del. C.* § 305), governs the claims against it. Therefore, it is Erickson's contention that 6 *Del. C.* § 2704 does not apply because the claims are under an absolute liability theory, and not under a negligence theory. A plain reading of the statute does not preclude indemnification for strict or absolute liability, only negligence. Moreover, the concepts of negligence and absolute liability are inherently different. Negligence is a fault based concept where absolute liability is normally imposed because of the dangerousness of the activity. Implicit in the concept of absolute liability "is the notion that the ultimate financial risk of engaging in dangerous activities should be borne by the actors themselves, rather than by unsuspecting members of the general public." *Rodgers,* 740 A.2d at 511. The concept of absolute liability arises out of who can best bear the loss and hence shift the loss even where there has been no fault. W. Page Keeton, *Prosser and Keeton on Torts,* Ch. 13 § 75 (5th ed.1984). It seems that it would not be against the public policy of this State and the wishes of the legislature to allow indemnification provisions for abnormally dangerous activities. These activities are dangerous in and of themselves are legally tolerated, and sometimes necessary. Fault is not a necessary ingredient in the liability concept. Indemnity provisions that, as between indemnitee and indemnitor, shift the loss to the parties who want the dangerous services performed should be allowed.

3. Agency

I now turn to the question of whether Gallagher-Kaiser was an agent of Alberici of the argument in this Motion is focused on whether Gallagher-Kaiser

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

was an agent of Alberici at the time that Mr. Rodgers was injured. Erickson argues:

> Gallagher[Kaiser] arranged for the lifts on behalf of Alberici as Alberici's agent. Alberici accepted the benefits of the HSC [Helicopter Services Contract] and ratified Gallagher's actions by reimbursing Gallagher[Kaiser] for Erickson's costs. Therefore[,] Alberici is bound by the HSC.

Erickson's Opening Br. at 7, Dkt. No. 100. [FN13]

> FN13. Ironically, to the extent that Erickson argues that Gallagher-Kaiser should have supervised Alberici, Erickson suggests the reverse agency. The truth is simply that any fair reading of the facts demonstrate there is no agency for the liability issues at the core of this case.

Because the Helicopter Services Contract is not applicable in this case, Alberici cannot be bound by the terms therein. Even if the Helicopter Services Contract did apply, it appears that Gallagher-Kaiser was not a performance agent of Alberici when it signed the Helicopter Services Contract as a matter of law. First, the Helicopter Services Contract was signed some 18 months after the work was completed. It seems that any alleged agency had long expired before the signing of the subsequent contract. Erickson could not have been relying on any theory that Alberici was a disclosed principal or that Gallagher-Kaiser was acting on behalf of Alberici when the contract was actually signed. Furthermore, it appears that Gallagher-Kaiser let Alberici use the services as a mere accommodation to save on mobilization and demobilization costs. Rost Dep. at 23, Dkt. No. 107, Ex. D. It is possible to argue some administrative service agency to the process of mutual accommodations, but the record clearly indicates that Alberici and Gallagher-Kaiser had separate services performed for their benefit. Lift Production Report, Dkt. No. 101, Ex. E5. While Gallagher-Kaiser did hire Erickson and did ultimately pay Erickson's bill, Gallagher-Kaiser, as a matter of law, did not act as an agent of Alberici any performance function affecting liability in this case. Therefore, Summary Judgment is GRANTED on behalf of Alberici, in that Gallagher-Kaiser was not acting as Alberici's agent when the accident occurred. [FN14] The Court, at this time, takes no position as to Alberici's other suggested Motions.

> FN14. The Court may grant Alberici Summary Judgment even though it is not a moving party in this Motion. The Delaware Supreme Court has held that when the state of the record is such that when the non-moving party is entitled to relief, a Judge may grant final judgment in favor of the non-moving party. *Bank of Delaware v. Claymont Fire Co.*, Del.Supr., 528 A.2d 1196, 1199 (1987).

4. Gallagher-Kaiser's Claim That it is Entitled to Summary Judgment

*11 Gallagher-Kaiser argues that Erickson's claims against it for contribution that have been asserted in the Third Party Complaint must be dismissed because Erickson makes no case of negligence against it. Gallagher-Kaiser also argues that Erickson is estopped from asserting that Gallagher-Kaiser's lack of supervision during Alberici's 50 lifts entitles it to contribution. [FN15]

> FN15. Estoppel claims, in a promissory or equitable form, may be brought at law in Superior Court. *See USH Ventures v. Global Telesystems Group*, Del.Super., C.A. No, 97C-08-086, Quillen, J. (May 9, 2000) (Slip Op. at 16); *Colvocoresses v. W.S. Wasserman Co.*, Del.Super., 8 W.W. Harr. 253, 190 A. 607, 613 (1937).

"Contribution," in the often quoted phrase of Lord Chief Baron Eyre, "is bottomed and fixed on general principles of justice and does not spring from contract, though contract may qualify it * * * " (*Dering v. Earl of Winchelsea*, 1 Cox Ch. 318, 29 Eng. Rep. 1184); the obligation, it is said, arises from "the equitable principle that 'in equali jure, the law requires equality. * * * " ' *Wolmershausen v. Gullick*, L.R. 1893, 2 Ch. 514, 522. That doctrine has so long been part of the law that persons engaged as co-obligors, in the absence of express understanding otherwise, are held to have dealt with it as an implied term in their relations.
*Greenwald v. Weinberg*, Pa.Super., 157 A. 351, 353 (1931).

Where the entire burden of liability shifts from one Defendant to another, indemnification is invoked. *American Ins. Co. v. Material Transit, Inc.*, Del.Super., 446 A.2d 1101, 1103 (1982). On the other hand, where liability is shifted only proportionally with a sharing of the burden among the Defendants, contribution exists instead. *Id.* "[T]he discharge of the liability and not the commission of the tort gives rise to the right of contribution." *Perez v. Short Line Inc.*, Del.Super., 231 A.2d 642, 644

(1967), *aff'd,* Del.Supr., 238 A.2d 341 (1968). "[I]t is joint and several liability, rather than joint and concurring negligence, which determines the right of contribution." *Lutz v. Boltz,* Del.Super., 9 Terry 197, 100 A.2d 647, 648 (1953).

Here, if Gallagher-Kaiser was not negligent, then it would follow that Erickson would not be entitled to contribution. The record is clear that Gallagher-Kaiser did not have any part in the lifts that were performed on behalf of Alberici. Gallagher-Kaiser's work was distinct from that of Alberici. The facts indicate that Gallagher-Kaiser's phase of the project was complete before Alberici's portion of the work was begun. Moreover, it appears that Alberici and Gallagher-Kaiser were working on different sections of the roof and, in fact, had separate flight paths for their crane lifts. Because no case of negligence has been made out against Gallagher-Kaiser and because the indemnification provision contained in the Helicopter Services Contract does not govern the relationship of the parties, it appears that as a matter of law, Gallagher-Kaiser does not owe Erickson a duty of contribution. Therefore, Summary Judgment is GRANTED on behalf of Gallagher-Kaiser.

## CONCLUSION

It appears that Erickson in its Motion is only seeking a ruling on the enforceability of the indemnification provision if Erickson is held liable under the Complaint. For the stated reasons, if Erickson is found liable as stated in the Complaint, then it would not be entitled to indemnification under the terms of the Helicopter Services Contract. Thus, Erickson's Motion for Summary Judgment is DENIED. Furthermore, in so denying Erickson's Motion, the Court rules, as a matter of law, that the contract governing Erickson's performance was oral. Additionally, Gallagher-Kaiser's Motion for Summary Judgment, as to Erickson's claims of negligence and contribution asserted against it, is GRANTED. Finally, on Erickson's agency claim, partial Summary Judgment is GRANTED in favor of Alberici insofar as Gallagher-Kaiser did not act as an agent of Alberici on the date of the accident or, for performance liability purposes, when signing the Helicopter Services Contract. IT IS SO ORDERED.

*12 In the event there is any post decisional application, it would be helpful to me if it were filed within four days, (i.e. not later than Monday, August 21, 2000), with a response within three calender days of the filing of the application, (Thursday, August 24th at the latest). If these dates cannot be met, the Court will certainly understand, (i.e. the ordinary time frames will apply), and the Court will adjust. I suggest that counsel confer so neither side is disadvantaged time wise.

Not Reported in A.2d, 2000 WL 1211157 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.