IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREEDON CONTROLS, INC.,  ) | |
| ) | |
|     Plaintiff  ) | |
| ) | C.A. No. 05-CV-300-JJF |
|     v.  ) | |
| ) | |
| BANC ONE BUILDING  ) | |
| CORPORATION, an Illinois corporation,  ) | |
| and FOREST ELECTRIC  ) | |
| CORPORATION, a New York Corporation, ) | |
| ) | |
|     Defendant  ) | |

_____

**BRIEF OF DEFENDANT FOREST ELECTRIC CORP.  IN RESPONSE TO
BANC ONE BUILDING CORPORATION'S
MOTION FOR  SUMMARY JUDGMENT**

============

 

MARON & MARVEL, P.A.
Paul A. Bradley (DE Bar #2156)
1201 North Market Street
Suite 900
Wilmington, DE 19801
(302) 425-5177
Counsel for Defendant
Date:  August 8, 2006          Forest Electric Corp.

# **TABLE OF CONTENTS**

**Title** **Page**

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF NATURE AND STATE OF PROCEEDINGS…………1

SUMMARY OF ARGUMENT ................................................................... 2

STATEMENT OF FACTS ......................................................................... 2

LEGAL ARGUMENT................................................................................ 3

    A.  FOREST ELECTRIC CORP. WAS AN AGENT OF BANC ONE BUILDING CORPORATION WITH RELATION TO THE CONSTRUCTION PROJECT ............................................. 5

        1.  **Forest Electric had actual authority to present the May 2004 Proposed contract because Tishman, the duly appointed general manager, approved it. ……………………………………………………………5**

**2. Tishman had apparent authority to designate Forest Electric as Banc One's Agent……………………………………………………………………9**

**3. Assuming for the sake of argument that Forest Electric's Designation as Agent was Unauthorized, Banc One is Responsible for Any Contractual Liability Because of Banc One's Ratification or Acquiescence……………11**

CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Case Law**

*Albert v. Alex Brown Management Services,* 2005 WL 2130607, (Del. Ch. 2005) .............6

*Arthur Jordan Piano Co.,* 154 A.2d 467 (Del. Super. 1930)............................................10

*Billops v. Magness Construction Co.,* 391 A2d 196 (Del. Supr. 1978)..........................6, 9

*Crumlish v. Price*, 266 A 2d. 182 (Del. Supr. 1970) ............................................................4

*Delaware v. Mass Bonding & Ins. Co.*, 49 F. Supp. 467 (D. Del. 1943)...........................10

*Finnegan Construction Company v. Robino-Ladd Company,*
354 A.2d 142 (Del. Super. 1976) .......................................................................................10

*Gizzi V. Texaco, Inc.,* 437 F.2d 308, 309 (3rd Cir. 1970).....................................................9

*Hirzel Funeral Homes, Inc, v. Equitable Trust Co.,*
83 A. 2d 700 (Del. Super. 1951). ......................................................................................11

*Johnson v.  Hospital Service Plan of New* Jersey, 135 A.2d 483 (N.J. Supr. 1957)..........11

*Lang v. Morant*, 867 A 2.d 182 (Del. Supr. 2005)...............................................................9

*Mechell v. Palmer*, 343 A2d 620 (Del. Supr. 1975) ............................................................4

*Menard & Co. Masonry Building Contractors v. Marshall Building Systems, Inc.,* 539
A2d 523 (R. I. Supr. 1988) ................................................................................................11

*Wilson v. Active Crane Rentals*, 2004 WL 1732275 (Del. Super. 2004)............................4

I.     STATEMENT AND NATURE OF PROCEEDINGS

Creedon Controls, Inc. ("CCI") filed a Complaint and Statement of Claim for Mechanics' Lien in or about April of 2005 against Banc One Building Corporation ("Banc One") and Forest Electric Corp. in the Superior Court of the State of Delaware. (A-000223). On May 17, 2005, the action was removed to this Court on the basis of diversity jurisdiction. (A-000223). The named defendants have challenged and defended against the validity of plaintiff's claims and the parties have completed fact discovery, as dictated by the Court's Rule 16 Scheduling Order.

On July 14, 2006, Forest Electric filed a Motion for Partial Summary Judgment. Banc One also filed a motion for summary judgment in this action. While Forest Electric and Banc One apparently agree on the applicability and binding nature of the October 2003 agreement between Forest Electric and CCI, they are in dispute regarding the issue of agency as it relates to the project. Forest Electric, therefore, files this brief in response to the agency arguments put forth by Banc One in its Summary Judgment Motion and Brief.

**II. SUMMARY OF ARGUMENT**

If one fully analyzes the circumstances surrounding the business dealings between Tishman Construction Corporation of Maryland (hereinafter "Tishman"), Forest Electric and Banc One, the owner of the Project, Forest Electric is entitled to a ruling that it was the agent of Banc One as to the matters within its scope of work as Manager of Electrical Trades. Forest Electric is entitled to such a ruling under the legal rubrics of actual and/or apparent agency. In the alternative, at a minimum, there are issues of material fact that preclude a legal ruling in favor of Banc One on the agency issue.

**III. STATEMENT OF FACTS PERTINENT TO THE AGENCY ISSUE**

This legal action arises from the Bank One – Control Data Center construction on Governor Printz Boulevard, in New Castle County, Delaware (hereinafter "project") (A-0000028; A-0000227).[1] Tishman, the construction manager, advised Banc One that it had entered into an agreement with Forest Electric Corp., as electrical trade manager, and Banc One approved the selection. (A -000229). Forest Electric was the construction manager for the six electrical contractors on the project, including the plaintiff, CCI. CCI bid the general lighting and power for the original contract sum of Three Million One Hundred and Fifty Two Thousand Dollars ($3,152,000. 00). (A -000227)

On February 12, 2004, Tishman sent a formal executed written Construction Services Agreement to Forest Electric as Trade Manager for Electrical Work. (A-000231-000296). The Agreement was dated September 12, 2003 to memorialize Forest Electric's role and work as Electrical Trade Manager as of that date on the project. (A-000227).

---

[1] References are made to the Appendix submitted in support of Defendant Forest Electric Corporation's Motion for Partial Summary Judgment, which was filed on July 14, 2006.

2

After consultation with and approval from Tishman, on May 4, 2004, Forest Electric, as agent of Banc One, in turn, sent a formal Single Project Construction Service Agreement to CCI to further formalize their understanding as to CCI's work on the Bank One Project. (A-000031; A-000085-000144). CCI never executed the Agreement which Forest Electric submitted. (A-000031). Instead, CCI proposed twelve pages of modifications and conditioned its execution of the written Agreement on Forest Electric's acceptance of its proposed Addendum. (A-000031-000032; A-000145-000162; A-000177-000183; A-000210).

There were six other electrical contractors on the project that were managed by Forest Electric. All of them signed the Single Project Services Agreement relating to their particular scope of work. All of the contracts identified Forest Electric Corporation "as Banc One Building Corporation's agent and Electrical Trade Manager." (A-000049-000050; A-000166). All of those contracts were submitted to Tishman and to Banc One. No evidence suggests that Tishman or Banc One complained or suggested that Forest Electric was not an agent.

## IV. LEGAL ARGUMENT

### Introduction

Banc One Corporation argues that it lacks any liability as Forest Electric was not its agent notwithstanding the actual course of dealings of the parties during the construction project. Banc One's argument concerning the agency status of Forest Electric is mechanistic and ignores the course of dealing among the parties. The written services agreement was signed many months after the selection of Forest Electric as

3

Electrical Trade manager and the commencement of its work on the Project. An entire history of dealings and working understandings developed over that period of time as Forest Electric, in good faith, performed its work as Electrical Trade Manager without the benefit of a fully executed Contract. This course of dealings between the parties in the management of the project is material to the issue of agency and must be considered. Banc One decided to act through Tishman as construction manager and its agent on the project, and thus gave Tishman actual authority, express and implied, to manage the project and to direct and control Forest Electric's actions as Electrical Trade Manager, including its undertakings with electrical subcontractors, such as CCI. Indeed, Tishman, as agent of Banc One, reviewed and approved Forest Electric's Letter of Intent sent to CCI in October 2003, the subsequent amendment to change the price in November 2003, and the Agreement submitted to all electrical contractors, including CCI. As detailed below, Banc One affirmatively cloaked Tishman with general management authority; it cannot now escape responsibility for Tishman's decisions made in the course of those duties.

Banc One in its summary judgment brief misstates the law of agency by arguing that an agency relationship must be based on "express authority or apparent authority." (See Defendant Banc One Building Corporation's Memorandum of Law In Support of its Motion for Summary Judgment, p.19). The actual rule is that an agency relationship can arise from actual authority, express or implied, or apparent authority. *Mechell v. Palmer*, 343 A2d 620,620 (Del. Supr. 1975); *Crumlish v. Price*, 266 A 2d. 182, 183 (Del. Supr. 1970); *Wilson v. Active Crane Rentals*, 2004 WL 1732275 (Del. Super. 2004). Under either analytical rubric, the factual record compels the conclusion that Tishman, as

4

construction manager, acted within its authority in approving the contract form presented to CCI in May 2004 and thus Forest Electric acted as agent of Banc One when it presented it.

      A.      **FOREST ELECTRIC CORPORATION WAS AN AGENT OF BANC ONE BUILDING CORPORATION WITH RELATION TO THE CONSTRUCTION PROJECT**

                1.    **Forest Electric had actual authority to present the May 2004 Proposed contract because Tishman, the duly appointed general manager, approved it.**

Philip Altheim, Chairman and CEO of Forest Electric, testified that he made it clear to Banc One during discussions leading to Forest Electric's selection that "… we were not taking this job at risk." (A-000310-000314). Altheim testified he understood that to mean Forest was "… acting as agents, similar to the way a construction manager …". (A-000314). Furthermore, Forest Electric was paid on the same basis as Tishman, the construction manager, a percentage of the total value of the subcontracts, plus general conditions at no cost." (A-000314). Forest Electric performed no electric work on the project and acted as electrical trade manager.

It is undisputed that Forest Electric received its executed contract from Tishman in February 2004. (A-000231-000296). The contract was based on a form prepared and used by Banc One. (A-000298-000299). Forest Electric changed the form to reflect its status as Electrical Trade Manager and agent and had the electrical trade contractors execute the contract. (Email from Donna Lucas to Paul Angerame, 2/18/04 (A-000300-000303). Tishman approved the form of contract used by Forest Electric, which specifically identified Forest Electric as Banc One's agent. (A-000304-000307). Thus,

Banc One's agent, Tishman, knew and approved Forest Electric entering into contracts with the electrical contractors as an agent of Banc One. Indeed, Banc One received copies of executed contracts by all other electrical contractors.

Banc One's Rule 30(b)(6) witness, Richard Werner, admitted that Tishman had the authority and obligation to instruct Forest Electric on "exactly the type of contracts to use" and had the authority to tell Forest Electric to use the Single Project Services Agreement naming Forest Electric as agent of Banc One. (A-000308-000309).[2]

The Bank and Tishman agreed in July 2003 that their intent was to subcontract all work through Tishman, with competitively bid subcontracts with owner participation and the subcontractors placed under contract "via Tishman Construction, as agents for Bank One." (A-000319-000320). It is clear that Forest Electric acted as the Bank's agent in its contracting with the electrical contractors and with the knowledge of Tishman and Banc One, which received the contracts that Forest Electric entered into.

Paul Angerame, Forest Electric's Rule30(b)(6) witness and its leader on this project, testified that Tom Keane, the Tishman executive in charge of the project, stated that Forest Electric was active as Banc One's agent and also approved the contract used with all electrical contractors. (Supplemental Appendix, 321-324)

As noted above, actual authority can be expressly given or implied from the circumstances. *Billops v. Magness Construction Co.,* 391 A2d 196 (Del. Supr. 1978) *Albert v. Alex Brown Management Services,* 2005 WL 2130607, (Del. Ch. 2005.) Tishman necessarily had power to manage Forest Electric and its contracting with

---

[2] After the filing of Forest Electric's Summary Judgment motion and reference to Banc One's admissions as to Tishman's authority and obligation to instruct Forest Electric as to the form of agreement to use with electrical subcontractors on the Project, Banc One purported to change its witness' answer form yes to no by submission of an Errata Sheet. This alone creates a dispute as to material fact precluding an award of summary judgment in favor of Banc One on the agency issue.

6

electrical firms like Creedon. Pursuant to that authority, Tishman supervised and approved the forms of contracts which Forest Electric submitted to the project's electrical subcontractors, including the proposed contract at issue. Banc One's 30 (b) (6) witness admitted that such power and authority did lie with Tishman and the record is consistent with that understanding. (A000308-00030 ). Even in the absence of such an admission, such authority clearly was implied given the broad scope of Tishman's duties and powers as construction manager and agent.

The Agreement between Forest Electric and Banc One provided that Forest Electric could rely on written approvals and information communicated to it through the construction manager. (A-000233-234). That is precisely what occurred here with respect to the contract used by Forest Electric with all electrical contractors. Tishman approved it and Forest Electric used it. All electrical contractors signed it, the executed copies were provided to Tishman and the bank without objection.

Banc One argues that CCI believed it was contracting with Forest Electric and therefore no agency could exist. However, CCI's Rule 30(b)(6) witness Patricia Creedon, testified her understanding was that Forest Electric was the electric trade manager and had "very little skin in the game and that they're working as the owner's rep. . . We're doing the risk work." (A-000029). She further understood that Forest was acting "as an agent for representing Banc One." (A-000037).

Thus, CCI understood Forest Electric was acting as agent for Banc One during the project. It had good reason to believe that – Forest Electric was acting as a trade manager and interacted with Tishman on management of electrical trades and performed no electrical work on the project.

>Banc One and Tishman acknowledged in July 2003 that:
>
>>All subcontracted work will be accounted for in open book format through Tishman Construction. Most subcontracts will be competitively bid, as schedule allows, with owner participation and placed under contract with Tishman Construction, as agent for Bank One.

(A-000320)

Banc One and Tishman believed before the bidding on the electrical work that all contracts would be with Tishman as agent for Bank One. Forest Electric, through Philip Altheim, understood that Forest Electric would not be "at risk" on contracts and was acting as agent for Banc One with respect to the electrical contractors. (A-000313-314).

Banc One apparently claims that the only language identifying Forest Electric as "agent" was in the signature line on the Single Project Construction Agreement submitted to CCI and other electrical contractors. However, that ignores not only the course of conduct of the parties throughout the project, but also the language of the Agreement, including paragraph 7. (A-000302). Paragraph 7 mirrors the agreement between Banc One and Forest Electric. It provides that the Owner retained Forest Electric to act as Owner's construction manager to arrange for the construction of the Project and that Forest Electric had full power and authority and was authorized to execute the contract. It acknowledged that Forest Electric as agent for the owner and that Forest Electric was "acting on the owner's behalf. . ." (A-000302-303).

Assuming arguendo, that the court does not rule as a matter of law that Tishman had actual authority to approve the proposed contract as drafted with the notation that Forest Electric, was an agent of Banc One, the course of dealing of the parties and the circumstances surrounding the project preclude the entry of summary judgment in favor

8

of Banc One. "Although a legal concept, agency depends on the presence of factual elements. It is thus a question usually reserved to the factfinder". *Lang v. Morant*, 867 A 2.d 182, 186 (Del. Supr. 2005) The evidence establishes that Forest Electric acted as the bank's agent on the project, regardless of whether CCI signed this contract.

### 2. Tishman had apparent authority to designate Forest Electric as Banc One's Agent.

In Banc One's brief, its argument regarding apparent authority focuses solely on statements to CCI and ignores that Forest Electric took actions and made business decisions as a result of Banc One's course of representations and actions cloaking Tishman with broad authority as to the management of the Project. Forest Electric, as Electrical Trade Manager, and CCI were entitled to, and indeed did, rely on Banc One holding out Tishman as having authority to direct and control Forest Electric in its work and dealings with the electrical subcontractors. Banc One ignores that fact in its construct of its apparent authority argument as well as the very language of the contract between Banc One and Forest Electric.

Apparent authority arises from "manifestations by the alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal", and the same legal consequences attach as with actual agency. *Billops v. Magness Construction Co*., 391 A2d 196, 198 (Del. Supr. 1978). Such manifestations are not restricted to those made directly to particular third persons. *Gizzi V. Texaco, Inc.,* 437 F.2d 308, 309 (3rd Cir. 1970*); Billops v. Magness Construction Co.*, 391 A.2d 196, 198 (Del. Supr. 1978). Apparent authority can arise from manifestations made to the community at large. *Billops v. Magness Construction Co.,* 391 A.2d 196, 198 (Del. Supr. 1978)

9

It is undisputed that Tishman was designated by Banc One as construction manager of the Project and that fact was communicated to and known by the community of contractors and tradesmen working on the project. From the outset, Forest Electric was instructed to follow the directives of Tishman as to the management of the Project. Moreover, Banc One anointed Tishman with the authority to review and approve contracts between Forest Electric and its electrical contractors, including CCI. This course of dealing must be considered and compels the conclusion that Tishman had, at minimum, apparent authority to approve the designation of Forest Electric as agent. Given these indicia of authority which emanated from Banc One, it was, therefore, reasonable notwithstanding, a provision in the Services Agreement, for both Forest Electric and CCI. to rely on Tishman's approval of the form of contract submitted for CCI review in May 2004. Therefore, if the Court finds that the May proposed contract is binding, Banc One is liable based on agency principles. Even if the May contract does not apply, Forest Electric was Banc One's agent and, as such, Banc One is liable based on agency principles.

The cases cited by Banc One in its brief are factually distinguishable and thus do not support Banc One's argument that it is entitled as a matter of law to judgment on the agency issue. For example, the case of *Finnegan Construction Company v. Robino-Ladd Company,* 354 A.2d 142 (Del. Super. 1976) concerned the authority of a company officer to accept service of process. In both *Arthur Jordan Piano Co.,* 154 A.2d 467 ( Del. Super. 1930), and *Delaware v. Mass Bonding & Ins. Co*., 49 F. Supp. 467 (D. Del. 1943) the Court addressed the issue of the power of a salesman to modify sales contracts where the contracts indicated sales were conditional on home office approval. The cases

did not involve the power of a construction manager of a multi-million dollar construction project to propose and approve the terms of a subcontractor's contract nearly a year after the parties had established a working understanding and chain of command as to the running of such a project.

If Forest Electric is not entitled to a ruling of law on the apparent authority issue, in the alternative, there are material issues of fact that preclude the award of summary judgment in favor of Banc One. Tishman explicitly approved the form of contract naming Forest Electric as agent and the trade manager agreement gives Forest Electric the right to rely on Tishman's authority to act on behalf of Banc One. Given the indicia of authority that Tishman possessed, a triable issue exists. See *Menard & Co. Masonry Building Contractors v. Marshall Building Systems, Inc.,* 539 A2d 523 (R. I. Supr. 1988) ( held it was error to direct a verdict on apparent authority issue where there was evidence that the project manager, who had power to contract, orally agree to modify subcontractor's contract).

     **3. Assuming for the sake of argument that Forest Electric's Designation as Agent was Unauthorized, Banc One is Responsible for Any Contractual Liability Because of Banc One's Ratification or Acquiescence.**

An act of an agent done either wholly or without authority may be ratified by the principal, and once ratified becomes binding on the principal. *Hirzel Funeral Homes, Inc, v. Equitable Trust Co.,* 83 A. 2d 700, 702 (Del. Super. 1951). "The intent to ratify an unauthorized transaction may be inferred from a failure to repudiate it." *Johnson v. Hospital Service Plan of New* Jersey, 135 A.2d 483 (N.J. Supr. 1957). Applying these principles to the case at hand, Banc One ratified the designation of Forest Electric as it agent in the agreement submitted to and executed by all electrical contractors. There is

11

no evidence of any objections by Banc One except in the pleadings in this case. Moreover, the same form of subcontract was sent to the other electrical subcontractors on the job and Banc One has not challenged those contracts. Thus, at minimum, Banc One's silence raises a triable issue with regard to its ratification and/or acquiescence.

## CONCLUSION

The undisputed factual record compels the ruling that Forest Electric was an agent of Banc One with respect to the construction project, and was authorized to tender the May 2004 Agreement to CCI as well as all other electrical contractors. In addition, the record also shows that Forest Electric acted as Banc One's agent throughout the project and that CCI understood that Forest Electric was Banc One's agent. Therefore, Banc One, as the principal, is responsible for any alleged contractual liability arising from that proposal. In the alternative, there are material issues of fact that preclude a ruling as a matter of law that Forest Electric's acts were not attributable to Banc One as principal.

MARON & MARVEL, P.A.

__/s/ *Paul A. Bradley*_____
Paul A. Bradley (DE ID No. 2156)
1201 North Market Street, Suite 900
Wilmington, DE 19801
(302) 425-5177
Attorney for Defendant
Forest Electric Corp.

Dated: August 8, 2006