# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702   (Instructions on reverse side)   PAGE 1 OF 7 PAGES

TO (OWNER):   Bank One

FROM (CONTRACTOR):   Creedon Controls, Inc.

CONTRACT FOR:   Electrical

PROJECT:   CDC II - Brandywine
General Power & Lighting

VIA (ARCHITECT):

APPLICATION NO:   Fifteen

PERIOD TO:   3/31/2006

PROJECT NOS:

CONTRACT DATE:

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | | ADDITIONS | DEDUCTIONS |
|---|---|---|---|
| 1. ORIGINAL CONTRACT SUM | 3,184,600.00 | | |
| 2. Net change by Change Orders | 3,632,153.77 | | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) | 6,816,753.77 | | |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) | 6,816,753.77 | | |
| 5. RETAINAGE | | | |
| a. % of Completed Work (Columns D + E on G703) | | | |
| b. % of Stored Material (Column F on G703) | | | |
| Total Retainage (line 5a + 5b or Total in Column I on G703) | | | |
| 6. TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5 Total) | 6,816,753.77 | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) | 6,402,106.02 | | |
| 8. CURRENT PAYMENT DUE | $ 414,647.75 | | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) | | | |

CHANGE ORDER SUMMARY

| | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $3,217,506.02 | -$66,384.96 |
| Total approved this Month | $471,032.71 | |
| TOTALS | $3,688,538.73 | -$66,384.96 |
| NET CHANGES by Change Order | $3,632,153.77 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:   Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: [signature]   Date: 5/5/2006

State of:  Delaware   County of:  New Castle
Subscribed and sworn to before me this   5th   day of
Notary Public: [signature]
My Commission expires:  5/30/2007

LORI M WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2007

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED   $
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)
ARCHITECT:

By:   Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATE FOR PAYMENT • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0686

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

*AIA DOCUMENT G703* (instructions on reverse side)

APPLICATION NO:
APPLICATION DATE: 5/5/2006
PERIOD TO: 3/31/2006
ARCHITECTS PROJECT NO:

PAGE 2 OF 7 PAGES

Fifteen

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Mobilization | $50,000.00 | $50,000.00 | | | $50,000.00 | 100% | | |
| 2 | Design/Engineering | $75,000.00 | $75,000.00 | | | $75,000.00 | 100% | | |
| 3 | Are "A" | | | | | | | | |
| 4 | Fixtures | $190,000.00 | $190,000.00 | | | $190,000.00 | 100% | | |
| 5 | Fixture Support | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | | |
| 6 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 7 | Lighting Wire | $45,000.00 | $45,000.00 | | | $45,000.00 | 100% | | |
| 8 | Lighting Devices | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | | |
| 9 | Gear/Panels | $63,000.00 | $63,000.00 | | | $63,000.00 | 100% | | |
| 10 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 11 | Power Conduit | $62,500.00 | $62,500.00 | | | $62,500.00 | 100% | | |
| 12 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 13 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 14 | Area "B" | | | | | | | | |
| 15 | Fixtures | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | | |
| 16 | Fixture Support | $115,000.00 | $115,000.00 | | | $115,000.00 | 100% | | |
| 17 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 18 | Lighting Wire | $32,500.00 | $32,500.00 | | | $32,500.00 | 100% | | |
| 19 | Lighting Devices | $2,000.00 | $2,000.00 | | | $2,000.00 | 100% | | |
| 20 | Gear/Panels | $70,000.00 | $70,000.00 | | | $70,000.00 | 100% | | |
| 21 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 22 | Power Conduit | $90,000.00 | $90,000.00 | | | $90,000.00 | 100% | | |
| 23 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 24 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

B-0687

# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

*AIA DOCUMENT G703*    (Instructions on reverse side)

APPLICATION NO:
APPLICATION DATE: **5/5/2006**
PERIOD TO: **3/31/2006**
ARCHITECTS PROJECT NO:

PAGE **3** OF **7** PAGES

Fifteen

| A | B | C | D | E | F | G | | H |
|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
| | | | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | |
| 25 | Area "C" | | | | | | | |
| 26 | Fixtures | $190,000.00 | $190,000.00 | | | $190,000.00 | 100% | |
| 27 | Fixture Support | $175,000.00 | $175,000.00 | | | $175,000.00 | 100% | |
| 28 | Lighting Conduit | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 29 | Lighting Wire | $45,000.00 | $45,000.00 | | | $45,000.00 | 100% | |
| 30 | Lighting Devices | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | |
| 31 | Gear/Panels | $63,000.00 | $63,000.00 | | | $63,000.00 | 100% | |
| 32 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 33 | Power Conduit | $62,500.00 | $62,500.00 | | | $62,500.00 | 100% | |
| 34 | Power Wire | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | |
| 35 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 36 | Area "D" | | | | | | | |
| 37 | Fixtures | $213,000.00 | $213,000.00 | | | $213,000.00 | 100% | |
| 38 | Fixture Support | $105,000.00 | $105,000.00 | | | $105,000.00 | 100% | |
| 39 | Lighting Conduit | $100,700.00 | $100,700.00 | | | $100,700.00 | 100% | |
| 40 | Lighting Wire | $52,000.00 | $52,000.00 | | | $52,000.00 | 100% | |
| 41 | Lighting Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 42 | Gear/Panels | $143,000.00 | $143,000.00 | | | $143,000.00 | 100% | |
| 43 | Tele/Data Rough-in | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 44 | Power Conduit | $117,500.00 | $117,500.00 | | | $117,500.00 | 100% | |
| 45 | Power Wire | $82,500.00 | $82,500.00 | | | $82,500.00 | 100% | |
| 46 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | |
| 47 | Area "E" | | | | | | | |
| 48 | Fixtures | $75,000.00 | $75,000.00 | | | $75,000.00 | 100% | |

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

B-0688

# CONTINUATION SHEET

*AIA DOCUMENT G703* (Instructions on reverse side)

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

APPLICATION NO: **Fifteen**
APPLICATION DATE: **5/5/2006**
PERIOD TO: **3/31/2006**
ARCHITECT'S PROJECT NO:

PAGE **4** OF **7** PAGES

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D FROM PREVIOUS APPLICATION (D + E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | | | | | |
| 49 | Fixture Support | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 50 | Lighting Conduit | $13,000.00 | $13,000.00 | | | $13,000.00 | 100% | | |
| 51 | Lighting Wire | $7,500.00 | $7,500.00 | | | $7,500.00 | 100% | | |
| 52 | Lighting Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 53 | Gear/Panels | $35,000.00 | $35,000.00 | | | $35,000.00 | 100% | | |
| 54 | Tele/Data Rough-in | $2,500.00 | $2,500.00 | | | $2,500.00 | 100% | | |
| 55 | Power Conduit | $19,000.00 | $19,000.00 | | | $19,000.00 | 100% | | |
| 56 | Power Wire | $25,000.00 | $25,000.00 | | | $25,000.00 | 100% | | |
| 57 | Power Devices | $5,000.00 | $5,000.00 | | | $5,000.00 | 100% | | |
| 58 | 700 ST Hours @ $60/Hr | $42,000.00 | $42,000.00 | | | $42,000.00 | 100% | | |
| 59 | 300 OT Hours @ $90/Hr | $27,000.00 | $27,000.00 | | | $27,000.00 | 100% | | |
| 60 | Unspecified Scope & Testing | $10,000.00 | $10,000.00 | | | $10,000.00 | 100% | | |
| 61 | Contingency | $126,800.00 | $126,800.00 | | | $126,800.00 | 100% | | |
| 62 | Bonding | $32,600.00 | $32,600.00 | | | $32,600.00 | 100% | | |
| 1 | CCI PCO#2 - January | $7,014.07 | $7,014.07 | | | $7,014.07 | 100% | | |
| 2 | CCI PCO#3 - January | $49,337.51 | $49,337.51 | | | $49,337.51 | 100% | | |
| 3 | CCI PCO#3 - February | $22,883.64 | $22,883.64 | | | $22,883.64 | 100% | | |
| 4 | CCI PCO#4 - February | $92,447.02 | $92,447.02 | | | $92,447.02 | 100% | | |
| 5 | CCI PCO#16 - February | $2,514.87 | $2,514.87 | | | $2,514.87 | 100% | | |
| 6 | CCI PCO#3 - March | $54,559.00 | $54,559.00 | | | $54,559.00 | 100% | | |

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

B-0689



# CONTINUATION SHEET

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

*AIA DOCUMENT G703* (instructions on reverse side)

APPLICATION NO: **Fifteen**
APPLICATION DATE: 5/5/2006
PERIOD TO: 3/31/2006
ARCHITECTS PROJECT NO:

PAGE 5 OF 7 PAGES

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 7 | CCI PCO#4 - March | $30,488.12 | $30,488.12 | | | $30,488.12 | 100% | | |
| 8 | CCI PCO#10 - March | $6,114.79 | $6,114.79 | | | $6,114.79 | 100% | | |
| 9 | CCI PCO#15 - March | $5,149.67 | $5,149.67 | | | $5,149.67 | 100% | | |
| 10 | CCI PCO#24 - March | $19,920.96 | $19,920.96 | | | $19,920.96 | 100% | | |
| 11 | CCI PCO#21 - March | $6,553.24 | $6,553.24 | | | $6,553.24 | 100% | | |
| 12 | CCI PCO#3 - April | $21,946.16 | $21,946.16 | | | $21,946.16 | 100% | | |
| 13 | CCI PCO#8 - April | $18,012.71 | $18,012.71 | | | $18,012.71 | 100% | | |
| 14 | CCI PCO#15 - April | $8,471.83 | $8,471.83 | | | $8,471.83 | 100% | | |
| 15 | CCI PCO #16 - April | $892.60 | $892.60 | | | $892.60 | 100% | | |
| 16 | CCI PCO #22 - April | $14,994.80 | $14,994.80 | | | $14,994.80 | 100% | | |
| 17 | CCI PCO #24 - April | $166.64 | $166.64 | | | $166.64 | 100% | | |
| 18 | CCI PCO #25 - April | $648.16 | $648.16 | | | $648.16 | 100% | | |
| 19 | CCI PCO#30 - April | $6,585.00 | $6,585.00 | | | $6,585.00 | 100% | | |
| 20 | CCI PCO#34 - April | $802.24 | $802.24 | | | $802.24 | 100% | | |
| 21 | CCI PCO#3 - May | $18,091.57 | $18,091.57 | | | $18,091.57 | 100% | | |
| 22 | CCI PCO#8 - May | $16,247.30 | $16,247.30 | | | $16,247.30 | 100% | | |
| 23 | CCI PCO#10 - May | $2,132.15 | $2,132.15 | | | $2,132.15 | 100% | | |
| 24 | CCI PCO#15 - May | $149.20 | $149.20 | | | $149.20 | 100% | | |
| 25 | CC PCO#17 - May | $372.30 | $372.30 | | | $372.30 | 100% | | |
| 26 | CCI PCO#24 - May | $2,328.08 | $2,328.08 | | | $2,328.08 | 100% | | |
| 27 | CCI PCO #30 - May | $5,010.53 | $5,010.53 | | | $5,010.53 | 100% | | |
| 28 | CCI PCO#32 - May | $8,805.04 | $8,805.04 | | | $8,805.04 | 100% | | |
| 29 | CCI PCO#35 - May | $12,217.95 | $12,217.95 | | | $12,217.95 | 100% | | |
| 30 | CCI PCO#4 - June | $2,430.87 | $2,430.87 | | | $2,430.87 | 100% | | |

CAUTIO : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT G703 • CONTINUATION SHEET FOR G702 • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

B-0690

# CONTINUATION SHEET

AIA DOCUMENT G703    (Instructions on reverse side)

APPLICATION NO.: **Fifteen**
APPLICATION DATE: **5/5/2006**
PERIOD TO: **3/31/2006**
ARCHITECTS PROJECT NO.:

PAGE **6** OF **7** PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing Contractor's signed Certification, is attached.

In Tabulations below, amounts are stated to the nearest dollar.

Use Column I on Contracts where variable retainage for line items may apply.

| A | B | C | D | E | F | G | | H | |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 31 | CCI PCO#4 - June | $2,470.80 | $2,470.80 | | | $2,470.80 | 100% | | |
| 32 | CCI PCO#8 - June | $1,236.94 | $1,236.94 | | | $1,236.94 | 100% | | |
| 33 | CCI PCO#10 - June | $1,920.19 | $1,920.19 | | | $1,920.19 | 100% | | |
| 34 | CCI PCO#15 - June | $12,489.15 | $12,489.15 | | | $12,489.15 | 100% | | |
| 35 | CCI PCO#28 - June | $7,240.94 | $7,240.94 | | | $7,240.94 | 100% | | |
| 36 | CCI PCO#36 - June | $11,649.51 | $11,649.51 | | | $11,649.51 | 100% | | |
| 37 | CCI PCO#3 - July | $2,892.64 | $2,892.64 | | | $2,892.64 | 100% | | |
| 38 | CCI PCO#35 - July | $6,074.32 | $6,074.32 | | | $6,074.32 | 100% | | |
| 39 | CCI PCO#36 - July | $20,150.16 | $20,150.16 | | | $20,150.16 | 100% | | |
| 40 | CCI PCO#37 - July | $3,282.42 | $3,282.42 | | | $3,282.42 | 100% | | |
| 41 | CCI PCO#39 - July | $934.72 | $934.72 | | | $934.72 | 100% | | |
| 42 | CCI PCO#40 - July | $7,099.08 | $7,099.08 | | | $7,099.08 | 100% | | |
| 43 | CCI PCO#3 - August | $7,678.92 | $7,678.92 | | | $7,678.92 | 100% | | |
| 44 | CCI PCO#8 - August | ($446.83) | ($446.83) | | | ($446.83) | 100% | | |
| 45 | CCI PCO#15 - August | $2,594.81 | $2,594.81 | | | $2,594.81 | 100% | | |
| 46 | CCI PCO#19 - August | $15,821.61 | $15,821.61 | | | $15,821.61 | 100% | | |
| 47 | CCI PCO#28 - August | $888.57 | $888.57 | | | $888.57 | 100% | | |
| 48 | CCI PCO#35 - August | $5,065.77 | $5,065.77 | | | $5,065.77 | 100% | | |
| 49 | CCI PCO#41 - August | $1,220.38 | $1,220.38 | | | $1,220.38 | 100% | | |
| 50 | CCI PCO#42 - August | $1,183.94 | $1,183.94 | | | $1,183.94 | 100% | | |
| 51 | CCI PCO#43 - August | $2,641.37 | $2,641.37 | | | $2,641.37 | 100% | | |
| 52 | CCI PCO#44 - August | $149.20 | $149.20 | | | $149.20 | 100% | | |
| 53 | CCI PCO#45 - August | $4,185.84 | $4,185.84 | | | $4,185.84 | 100% | | |
| 54 | CCI PCO#1 - September | $3,589.84 | $3,589.84 | | | $3,589.84 | 100% | | |

RETAINAGE column: **10.0%**

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscurred as may occur when documents are reproduced.

AIA DOCUMENT G703 * CONTINUATION SHEET FOR G702 * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

B-0691

# CONTINUATION SHEET

*AIA DOCUMENT G703*  (Instructions on reverse side)

APPLICATION NO: **Fifteen**
APPLICATION DATE: **5/5/2006**
PERIOD TO: **3/31/2006**
ARCHITECTS PROJECT NO:

PAGE 7 OF 7 PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached.
In Tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

| A ITEM NO. | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D FROM PREVIOUS APPLICATION (D + E) | E WORK COMPLETED THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G ÷ C) | H BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE) |
|---|---|---|---|---|---|---|---|---|---|
| 55 | CCI PCO#33 - September | $4,984.21 | $4,984.21 | | | $4,984.21 | 100% | | |
| 56 | CCI PCO#46 - September | $6,050.17 | $6,050.17 | | | $6,050.17 | 100% | | |
| 57 | CCI PCO#47 - September | $418.33 | $418.33 | | | $418.33 | 100% | | |
| 58 | CCI PCO#48 - September | $1,118.47 | $1,118.47 | | | $1,118.47 | 100% | | |
| 59 | CCI PCO#49 -September | $603.34 | $603.34 | | | $603.34 | 100% | | |
| 60 | CCI PCO#50 - September | $298.40 | $298.40 | | | $298.40 | 100% | | |
| 61 | CCI PCO#51 - March 05 | $1,588,401.60 | $1,588,401.60 | | | $1,588,401.60 | 100% | | |
| 62 | CCI PCO#52 - March 05 | $531,066.15 | $531,066.15 | | | $531,066.15 | 100% | | |
| 63 | CCI PCO#53 - March 05 | $538,225.84 | $538,225.84 | | | $538,225.84 | 100% | | |
| 64 | Contingency - PCO2&3Jan04 | ($54,243.91) | ($54,243.91) | | | ($54,243.91) | 100% | | |
| 65 | CCI PCO#5 | ($5,168.36) | ($5,168.36) | | | ($5,168.36) | 100% | | |
| 66 | CCI PCO#6 | $12,006.49 | $12,006.49 | | | $12,006.49 | 100% | | |
| 67 | CCI PCO#11 | $1,590.67 | $1,590.67 | | | $1,590.67 | 100% | | |
| 68 | CCI PCO#26 | $1,156.73 | $1,156.73 | | | $1,156.73 | 100% | | |
| 69 | CCI PCO#27 | $20,208.90 | $20,208.90 | | | $20,208.90 | 100% | | |
| 70 | CCI PCO#29 | $9,088.87 | $9,088.87 | | | $9,088.87 | 100% | | |
| 71 | CCI PCO#31 | $2,397.81 | $2,397.81 | | | $2,397.81 | 100% | | |
| 72 | CCI PCO#52 - March 06 | $89,650.92 | | $89,650.92 | | $89,650.92 | 100% | | |
| 73 | CCI PCO#53 - March 06 | ($56,384.96) | | ($56,384.96) | | ($56,384.96) | 100% | | |
| 74 | CCI PCO#54 - March 06 | $381,381.79 | | $381,381.79 | | $381,381.79 | 100% | | |
| | | $6,816,753.77 | $6,402,106.02 | $414,647.75 | | $6,816,753.77 | 100% | | |

B-0692

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

AIA DOCUMENT G703 • CONTINUATION SHEET FOR G702 • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G703-1992

Ex C-75

# Creedon Controls Inc.
Electrical Contractors

3424 Old Capitol Trail
Wilmington, Delaware 19808
Telephone (302) 892-2000
Fax (302) 892-2002

## CREEDON CONTROLS CHANGE ORDER SUMMARY
### BANK ONE BRANDYWINE - CDC II - RFP6B

DATE:               3/31/2005
FOREST EWA #:
CREEDON - PCO# :     51

Description: Critical Event Summary CCI Project 2357 to 04-07-04

|  | TOTALS: |
|---|---|
| LABOR VALUE      : | $ 1,023,122.00 |
| ACTUAL SUPERVISION COSTS: | $    259,524.00 |
| (Gross Payroll to Employee) |  |
| LESS: OCIP LABOR | $     (44,505.81) |
| LESS: OCIP NON-PRODUCTIVE SUPERVISION | $     (11,289.29) |
|  |  |
| LABOR SUBTOTAL: | $ 1,226,850.90 |
|  |  |
| MATERIAL: | $      10,222.00 |
| THIRD PARTY RENTAL: | $          - |
| DIRECT JOB EXPENSES @ 7% OF LABOR, MATERIAL COST AND RENTALS: | $      86,595.10 |
| (INCLUDES PROJECT MANAGEMENT) | $ 1,323,668.00 |
|  |  |
| OVERHEAD AND PROFIT MARKUP @ 20% OF BARE COST: | $    264,733.60 |
|  |  |
| SUBTOTAL: | $ 1,588,401.60 |
|  |  |
| SUBCONTRACT: | 0 |
| OCIP: | 0 |
| SUBCONTRACT BARE COST: | 0 |
|  |  |
| OVERHEAD AND PROFIT MARKUP @ 6% OF SUBCONTRACT COST: | 0 |
|  |  |
| SUBTOTAL: | 0 |
|  |  |
| TOTAL COST: | $ 1,588,401.60 |

006055

B-0693

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #287**
**Events from Beginning of CCI's Work through 4/7/04**

| Events Sequence | Item No. | Description | Reference Date/Type | General Foreman Hours | Total $ | Foreman Hours | Total $ | Journeymen Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 2 | 1 | As soon as deck was poured (first half of deck was poured mid-October, second half was poured late-October. Creedon was unable to start lighting support in this area until 11/25/04.) a. All chilled water pipe (approx 16" diameter), supply and return, targeted for the trench was stored on the deck. b. CRAC (computer room a/c) stands, RPP (receptacle power panels) stands, sprinkler pipe and many wire reels of others were also moved onto the deck. CRAC units and 138 RPP stands were moved on to deck three weeks after it was poured. This blocked lift access (66 CRAC stands, 138 RPP stands & 8 PDU (power distribution unit-feeds RPP)). CRAC stands could not be moved by hand, forklift was used for the move. | D&N | 40.0 | 2,450 | 80.0 | 4,646 | 340.0 | 17,969 | 80.0 | 3,838 | 2,400 | 30,776 |
|  |  | 2 | This material covered almost all of 160' x 235' (295,800 sq. ft.) deck. It blocked-in our lifts and delayed us about 2 weeks until supply and return piping was installed in pipe trench. CRAC stands could not be moved by hand; they had to be moved by fork lift. There was no where to move material so we could work. Temporary heater and temporary duct were installed at lighting strut height. This stopped us from finishing strut runs, wire pulling, boxes and covers on all lighting runs. We even installed 90% of lights with duct still up. Had to return to finish each run (18 runs) and all 2 fixtures to each run. CRAC units and RPP's were set on their stands by the time temporary heater and duct was removed. Resulting in additional time and delays. Temporary heat was not removed until just before raised floor was installed approximately March 1, 2004 in Area A. Strutwire completed as far as possible by 11/13/04, lights completed as possible by 2/9/04, boxes/duct removed 3/1/04, lights finished 3/10/04. | D&N | 1.6 | 105 | 8.0 | 502 | 40.0 | 2,282 | 4.0 | 167 |  | 3,080 |
| B | 3 | 3 | About one-third of the exterior walls were roughed-in and then this work stopped and continued in Area B. Work in Drawing A did not return for several weeks. This stopped the electrical rough-in. Exterior walls stopped mid-November 2003 and were not finished until January 8, 2004. | D | 18.0 | 1,094 | 90.0 | 5,525 | 180.0 | 9,506 | 90.0 | 3,789 |  | 19,566 |
|  |  | 4 | Roof drain pipe coming down some columns were roughed in wrong. Drywall had to be built-out around columns to cover columns, and we had to wait to rough-in. Our conduit had to go up to roof level so finishing these runs was done at 27 to 29 feet. This work stopped mid-November 2003, and was finished with exterior walls January 8, 2004. | D | 0.8 | 49 | 4.0 | 232 | 8.0 | 423 | 4.0 | 167 |  | 870 |
|  | 5 | 5 | Temporary roof drains stopped completion of exterior wall along column line D until late in the schedule. Had to return again to finish. This also slowed wire pulling because piping wasn't finished. Same dates at item #4 above. | D | 0.8 | 49 | 4.0 | 232 | 8.0 | 423 | 4.0 | 167 |  | 870 |
|  | 6 | 6 | As deck was poured UPS switchgear was delivered and stored in this area blocking our access. Deck poured starting November 29, 2003. Creedon started in Area B04on December 1, 2003. Most switchgear was not set until February 20, 2004/04. Walls of the sixteen rooms were roughed in — three were built to this switch gear could be moved into place. We couldn't finish — room rough-in. Walls started December 1, 2003. Close-in rooms not complete until March 15, 2004. | D | 9.6 | 583 | 48.0 | 2,789 | 192.0 | 10,141 | 96.0 | 4,906 |  | 17,520 |
|  |  | 7 |  |  | 32.2 | 1,954 | 160.8 | 9,342 | 643.2 | 33,574 | 321.6 | 13,420 | 17,520 | 90,776 |

APP 0056

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2587**
**CCI's Work through 4/7/04**
**Events from Beginning of**

| Drawing Sequence Item No. | Description | Reference Type | Delay Shift Type | General Foreman Hours | Total $ | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | FOO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | Doors in Rooms 113, 114, 213 and 214 were changed, which changed rough-in opening after exit lights were roughed-in. Had to relocate exit lights. No door bucks available because of changes, could not finish switch rough in. Changed rough-in December 17, 2003 | | D | 8.0 | 486 | 40.0 | 2,324 | 40.0 | 2,113 | 40.0 | 1,659 | | 6,592 |
| 9 | Rooms 113 and 214: Rod was dropped for strut support, but we had to remove newly installed rod when temporary heaters were installed. They went in at right level so that they were above the gear. This stopped lighting for over six weeks. Heat installed January 9, 2004; it was not removed until March 15, 2004. | | D | 24.0 | 1,458 | 120.0 | 6,972 | 240.0 | 12,677 | 120.0 | 5,008 | | 26,114 |
| 10 | Rooms 104, 203 and 204: Rod was dropped and some strut was hung. Had to remove strut so mechanical contractor's gantry (gantry higher than tunnirel level) could come into room to set gear that came late. (1/5/04 to 3/26/04). | | D | 18.0 | 1,094 | 90.0 | 5,229 | 180.0 | 9,508 | 90.0 | 3,756 | 500 | 20,088 |
| 11 | Room 103: two walls near administrative area were left open for a month so that equipment and batteries could be unloaded onto Administrative Area pad. Loading dock was blocked with dumpsters and block for generator room. Could not finish lighting strut or rough-in walls. 12/16/03? | | D | 3.8 | 231 | 19.0 | 1,104 | 38.0 | 2,007 | 38.0 | 1,586 | | 4,928 |
| 12 | All contractors had to remove storage wans outside. All material had to be moved inside the building and place contents into Area B rooms. Rooms 113, 114, 210; We redid Gdoors; Room 207; Court & Tengjon; Room 205; Preferred and Room 215; Creedon. | | D&N | 9.2 | 603 | 48.0 | 2,882 | | | | 2,087 | 111 | 5,682 |
| 13 | Rooms 103,104,203,204,113,114,214,213: By the time we were able to get back in (rooms blocked to set gear and then blocked for feeder pull), our access was severely blocked. It took much longer to install strut & fixtures. (Jan 04 through April 04) | | D | 102.4 | 6,221 | 512.0 | 29,747 | 1536.0 | 81,132 | 512.0 | 21,356 | 1,800 | 140,255 |
| 14 | Corridor 212 and 209: Blocked with hundreds of battery racks and batteries. Door to our material room blocked for a day. | | D | 4.8 | 292 | 24.0 | 1,394 | 20.0 | 1,056 | 4.0 | 167 | | 2,909 |
| 15 | Feeders for inverters UPS, ELA, ELB and ELC (panels) came up into wall; it did not reach the pad as designed. We had to have extension boxes made to get feeders into units. Feeders under this circumstance were much harder to pull. (3/18/04) | | D | 1.5 | 91 | 7.5 | 438 | 60.0 | 3,169 | | | | 3,696 |
| 16 | Had to continuously move other trades' material in order to do our work in this area. (Day shift: 12/16/03 through 5/5/04) | | D&N | 14.4 | 4,724 | 72.0 | 4,518 | 360.0 | 20,556 | 72.0 | 3,005 | | 32,782 |
| 17 | Tallmans would not permit us to lock our material room. We had so much material activity, we had to keep material man in Room 213 to protect it. (January 04 through June 2004) | | D | | | | | 192.0 | 68,772 | | | | 68,772 |
| 18 | All trades would remove controllers from lifts at end of day shift, so we could not move them to do our work on second shift. Trades also claimed lifts at the end of first shift. (December 03 through April 04) | | N | 14.4 | 662 | 72.0 | 4,183 | | | | | | 5,145 |
| 19 | Substations 1A, 2A, 3A in Rooms 113,114 and 214: We were not given a schedule for floor painting until two days prior to start, and we still could not get into rooms because feeders were still being pulled and had not been terminated. We had to stop other lighting work and expedite lighting in these rooms to complete in 1 week. (2/13/04) | | D&N | 7.0 | 416 | 35.0 | 2,090 | 175.0 | 9,455 | | | | 11,961 |
| 20 | Eight battery rooms were loaded with material. We could not get in to do our work. Material was moved, floor painted, protection ... Id racks with small lift only. When we were finally able to get in, we had to work ... Id racks with small lift only, which ... (2/2/04) | | D&N | 31.2 | 1,899 | 150.0 | 9,273 | 780.0 | 42,150 | 120.0 | 5,008 | 650 | 59,019 |

006 57

B-0695

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

March 31, 2005

| Drawing Sequence | Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Total $ | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 21 | Doors to rooms 113, 114, 214, 213 were closed off along L&M corridor. We could not get into our material room. We had to go around to corridor 212, which was difficult access and increased move distance.(2/10/04 to 3/10/04) | | D | | 2.4 | 140 | 12.0 | 697 | 120.0 | 8,338 | | | | 8,558 |
| | 25 | Floor protection was installed and removed with little or no notice. (3/15/04) | | D | | 8.0 | 486 | 40.0 | 2,324 | 320.0 | 16,902 | 160.0 | 6,877 | | 26,389 |
| | 26 | Shortly after deck was poured CB/AC unit and RPP stands were moved on to it. This blocked lift access. (46 CB/AC stands, 138 RPP stands & 8 PPDU). CB/AC stands could not be moved by hand; forklift was used for the move. (11/17/03) Duct, sprinkler pipe also blocked access. | | D&N | | 29.5 | 1,828 | 147.5 | 8,743 | 738.0 | 38,741 | 118.8 | 4,938 | | 65,270 |
| | 27 | Delay in getting strut layout drawing approved slowed us early in the project. In the interest of facilitating the schedule we started without approval. (11/13/03) | | D&N | | 9.6 | 583 | 48.0 | 2,799 | 240.0 | 12,677 | 240.0 | 10,015 | 2,682 | 28,726 |
| | 28 | Temporary heater and temporary duct was installed at lighting strut height. This stopped us from finishing strut runs, wire pulling, boxes and covers on all lighting runs. We installed 50% of lights with duct still up. We had to return to finish each run (18 runs) and add 2 fixtures to each run. This resulted in additional time and delays. CB/AC units and RPP'S were set on their stands by the time temporary heater and duct was removed. This resulted in additional time and delay. Temporary heat was not removed until just before raised floor was installed approximately February 15, 2004 in Area C. | | N | | 1.6 | 107 | 8.0 | 511 | 16.0 | 930 | | 876 | | 1,546 |
| | 29 | Temporary roof drain piping (approximately 10' diameter) stopped completion of electrical wall rough-in along Column. Line D. We had to return to finish our branch rough-in and lighting support strut. This delayed us approximately six weeks. (4/8/04) | | D&N | | 1.1 | 71.9 | 5.6 | 344.0 | 28.0 | 1,650.4 | | | | 1,879 |
| | 30 | Studs in columns were not braced when they were rough-in. This made conduit rough-in very hard as stud were 27' high and moved. They came back and installed bracing after our pipe was installed. | | D&N | | 2.2 | 140 | 11.2 | 669 | 56.0 | 3,042 | | | | 3,852 |
| | 31 | Roof drain pipe coming down some columns were coupled in wrong. Carpenters had to cut columns were built-out/rough-in to cover piping in columns, and we had to wait to do our electrical rough-in. Our conduit had to go up to roof level so finishing these runs was done at 27 to 29 feet. (1/15/04) | | D | | 4.0 | 249 | 20.0 | 1,162 | 40.0 | 2,113 | | | | 3,518 |
| | 32 | Ramp into this area was built several weeks late. This locked lifts into area. (12/23/03) | | D | | 0.7 | 41 | 3.4 | 207 | 34.0 | 1,975 | | | 800 | 3,023 |
| | 33 | Had to move fixtures out of this area for a Bank One walk-through. Fixtures were moved to L&M hallway, and subsequently moved again to chiller rooms to clear the hallways. (3/29/04) | | D | | 1.0 | 58 | 4.8 | 279 | 0.0 | 63 | 48.0 | 2,003 | | 2,404 |
| | 34 | Shortly after the deck was poured and walls went up the following rooms were filled with material/equipment and gang boxes to the point that it was impossible to get a lift in to work: | | D | | 1.6 | 102 | 8.2 | 466 | 41.0 | 2,208 | | | | 2,795 |
| | | a. Storage Room 118: Creedon still can not get in. (1/04 to 5/04) | | N | | 0.3 | 21 | 1.6 | 102 | 8.0 | 465 | | | | 598 |
| | | b. Pre-pod Room 119: Creedon still can not get in. (1/4/04 to 4/04) | | N | | 0.3 | 19 | 1.6 | 93 | 8.0 | 423 | | | | 535 |
| | | c. Main Elect. Room 130: Main switchgear and wire pulling blocked access. (1/04 to 3/04) | | N | | 0.3 | 21 | 1.6 | 102 | 8.0 | 465 | | | | 588 |
| | | d. Master control room 128. Switchgear are ... via pulling blocked access. (1/04 to 2/04) | | | | 0.0 | 0 | 0.0 | 0 | | | | | 465 | 465 |
| | | e. Generator rooms 122 and 124. Generators/switch layers. | | N | | | | | | | | | | | |

006058

B-0696

March 31, 2006

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary of CCI's Work through 4/7/04**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing Sequence | Item No. | Description | Reference | Delay Shift Type | General Foreman Hours | Total $ | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 35 | f. Loading dock/receiving-room 139 and 140: This represents 90% of the space in this area. (2/04 to 4/04) When area was finally available, area and other major equipment deliveries, access was made more difficult by equipment and housekeeping pads. Only small lifts and extension ladders must be used contrary to what we reasonably expected. Generator rooms 122 and 124 (started 5/31/04); Hid deck poured last. The generator sets were set, but lift/lines were installed in the ceiling, and brick layers built scaffolding and moved pads in blocks. Note: After installation of lights in Generator Room 122, Creedon had to remove and reinstall the lights, so that the damaged generator set could be pulled and sent out for repair (This work was FCO #56 on or about 5/13/04). Block was stored on loading dock for about a month which not only kept us from working there, but blocked almost all deliveries. Fixtures (thousands) had to be unloaded through the Administrative Area (Blocked by mason from on or about 2/15/04 through 4/3 Loading dock was blocked from on or about 2/15/04 through 4/30/04; it was covered with reels of feeder wire and door frames, waiting for access; it was was blocked by dumpster at one door and block at the other. Creedon started lighting on the Loading Dock 5/17/04. | FCO #56 | D&M | 0.8 | 39 | 3.2 | 195 | 16.0 | 887 | 2.0 | | 1,252 | 1,122 |
| E | 36 | Tried to have night shift install lighting in storage area for eight consecutive nights, but fitters would lock doors so we could not get in. Finally cut locks and had to move their material each night to work. Creedon was told by Forest that the area was Creedon's for installation, but Forest would not move fitters from the area. Creedon did Rooms 136 and 139 starting 4/19/04; returned 5/22/04 [room 137 and 138 on after P. Augustine intervened. (Start 3/30/04) appx. | | N | 2.6 | 171 | 12.8 | 818 | 64.0 | 3,718 | 30.0 | 1,252 | | 4,708 |
| 7 | 37 | Shortly after deck was poured, and wall went up the following rooms were filled with material, equipment and gang boxes to the point that it was impossible to get a lift in to work. a. Chiller Room 132: F& O Mechanical-started 4/21/04 b. Electrical Sub A- Room 131: Frames-spent, feeders, etc.-started 4/20/04 c. ASU A- Room 120: ID Grffitti-started 4/6/04 d. Duct Supply Area 134 - Fixers-started 4/5/04 Dates in a. through d. are for lighting rough-in. Branch power rough-in was coordinated with drywall installation several weeks earlier as lifts were not needed. Branch power wire was pulled about the same time lights were installed. This is 85% of floor space in this area. We had to wait for lighting rough-in until the last week of March before this was accessible. These dates are later than original project completion dates. | | D&M | 2.0 | 128 | 10.0 | 612 | 50.0 | 2,783 | 30.0 | 1,285 | | 4,808 |
| 8 | 38 | Rooms 128 and 130: No advance notice was provided that floors would be painted. We found out when we were asked to move the temporary service for painter. We had to stop where we were working and move to these rooms to install lighting. (See Item #35 for | | D | 6.7 | 408 | 33.6 | 1,952 | 168.0 | 8,874 | 42.0 | 1,753 | | 12,987 |
| | | | | | 12.2 | 734 | 60.8 | 3,672 | 304.0 | 17,662 | 30.8 | | | 23,321 |

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**CGI Project #2367**
**Critical Event Summary Change Orders**
**Events from Beginning of CO's Work through 4/7/04**

| Drawing Sequence Item No. | Events from Beginning of CO's Work through 4/7/04 | Reference (In E I) | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | Electrical Sub A, Room 131: Scheduled to get floor plated the first week of May. Schedule changed without notice or input from others working in the area and floor was painted a month early. We had to stop working in Generator Room and remobilize to this room and complete lighting in four days. Started installation 4/2/04. | | D&N | | 0.6 | 39 | 3.2 | 185 | 16.0 | 845 | | | | 1,070 |
| 40 | ATS switches shipped to Forest in error, not Creedon. They raised up being delivered with Furnas's ATS, and we could not find the switches for several weeks. This equipment was shipped to site the end of January 2004. Creedon started installation 2/18/04 | | D | | 2.4 | 146 | 12.0 | 697 | | | | | | 843 |
| 41 | Feeder conduit in deck to ATS-PPCP (in Room 137 Shop) was damaged and not usable. Still waiting for new overhead feeder to be completed. Can not order wire because we do not know how long run will be. Pull boxes are now required to conform to Code requirement for number of bends allowed in a run. Delayed 3 weeks. Delay was on or about 2/11/04 through 3/15/04 | | D | | 4.8 | 292 | 24.0 | 1,394 | 32.0 | 1,690 | 8.0 | 334 | | 3,710 |
| 42 | Temporary heater in corridor 146 by steps to the roof. Blocked access to fuel room 149 and part of hallway. Was not removed until about 3/29/04. Heater was installed the beginning of January. Creedon started lighting in this area 4/6/04. After being held up for three months, Creedon had to move from other area to do these lights quickly so the painter could paint the floor. (4/7/04) | | N | | 0.4 | 27 | 2.0 | 123 | 8.0 | 485 | | | | 619 |
| 43 | Did not get schedule of floor painting until after they started painting, and then schedule was not followed. We had to move several times to new locations in order to facilitate the schedule. Rooms 135, 136, 137, 131 painted early; started on or about 4/2/04. | | D&N | | 0.6 | 86 | 3.2 | 432.3 | 16.0 | 1904.9 | 12.0 | 501 | | 2,984 |
| 44 | AHU A room 120: Finally opened up last week. We are doing lighting now and duct work is still not completely finished, started on or about 4/6/04 | | N | | 0.2 | 13 | 1.0 | 64 | 2.0 | 116 | | | | 183 |
| 45 | Chiller A, room 132: We had to go back after rough-in was complete and raise two exit lights because door frames changed. Started on or about 4/2/04. Fixtures were changed by other trades as soon as we installed them. | | D | | 0.6 | 39 | 3.2 | 188 | 16.0 | 845 | | | | 1,070 |
| 46 | Chiller equipment Room 132 to Data Center A (Chiller roughing in trench going From Chiller Room 132 to Data Center A). Lift couldn't get by. It took about two months before iron workers set up blocked. Lift couldn't get by. Once walls were up most access was blocked. This was a major access point and caused diamond pilings and installed support steel. Walls went up the end of December 2003, and diamond plate a very significant delay. did not get installed until the beginning of March 2004. For several weeks there were no handrails. | | D&N | | 13.8 | 882 | 68.8 | 3,746 | 344.2 | 18,728 | | | | 23,336 |
| 47 | Walls were roughed in but large openings left so that lifts could get around trench, but housekeeping pads where poured. Lifts still could not get by or were severely limited. We could not finish the electrical rough-in because walls were left open. Conduit got damaged by lift trying to squeeze by. This delay ran from the end of December through the end of February 2004. | | D | | 10.1 | 612 | 50.4 | 2,828 | 252.0 | 13,311 | | | | 16,851 |
| 48 | Chiller Room 234 No access:<br>a. Set chiller pump motors right after pads were stripped (forms).<br>b. Also set MCC's.<br>c. Filters started chiller supply and return piping in ceiling. | | D&N | | 6.5 | 351 | 32.4 | 1,929 | 162.0 | 8,768 | 68.0 | 2,838 | | 13,885 |

00uJ60

March 31, 2005

## Credon Controls, Inc.
## Bank One Corp Data Center #2
### Critical Event Summary of CO's Work Change Orders
### CCI Project #2357
### Events from Beginning of CO's Work through 4/7/04

| Drawing Sequence | Item No. | Event | Reference Type | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | ECO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Access just became available on April 9, 2004, night shift; Credon finished 4/20/04. Credon was delayed from 1/9/04 through 4/9/04. Floor poured early in January. Credon tried dropping rods but fitters kept damaging them hoisting their gear into the ceiling, so had to stop. Credon had to clear their piping so we could not install strut until they were finished. | | | | | | | | | | | | | | |
| | 49 | About 120 feet of exterior wall along Column Line R had drywall installed prior to electrical rough-in inspection. Some drywall was taken down but not all of it. All electrical trades had to rough-in around partial drywall. This was extremely time-consuming. On 1/2/04 carpenter was ordered by Tishman to hang drywall for no apparent reason, even though Tishman knew that the electrical inspection had not occurred yet. | | D | | 4.8 | 202 | 24.0 | 1,394 | 120.0 | 6,338 | 120.0 | 6,008 | | 13,032 |
| | 50 | AHU Room 221: Drywall was installed without inspection, as above. Walls were closed with drywall prior to completion of electrical work in walls and even through electrical inspection was not completed. Occurred 1/23/04 as in Item #53 immediately above | | D | | 13.6 | 826 | 68.0 | 3,951 | 138.0 | 7,184 | 68.0 | 2,838 | | 14,798 |
| | 51 | Corridor 116 and 216 where chiller supply and return piping passes from chiller rooms to data center. The trench (4'wide x 3'deep) crosses the hallway. Early in job, walls were left out so lifts could pass. When the walls were closed, the trench was not covered with plate, which stranded lifts on both sides of the trench. Stopped most movement through the hallway except people and small carts. It took over two months before iron workers laid diamond plating and added support to carry weight of lifts. This dramatically delayed production. The delay extended from mid-December 2003 through the first week of March, 2004. | | D | | 9.6 | 583 | 48.0 | 2,769 | 240.0 | 12,677 | | | 16,049 | |
| | 52 | AHU B, room 221 No access: Air handler pads poured early which stopped lift traffic. Could not get into room because of setting units and installing large duct runs. This delayed Credon's work from December 2003 through March 29, 2004. | | D | | 10.8 | 656 | 54.0 | 3,137 | 180.0 | 9,508 | | | | 13,301 |
| | 53 | Many conduits damaged by other trades while rough-in was on going because of limited access for lifts. This delayed Credon's work from December 2003 through March 29, 2004. | | D | | 2.9 | 175 | 14.4 | 837 | 72.0 | 3,603 | | | 4,815 | |
| | 54 | 1) We color coded all conduit rough-in: white = normal power and lighting, orange = emergency power and lighting, green = tele/data, blue = receptacles. About this time conduits were painted black. We had loose ends everywhere and unfinished conduit runs because walls weren't finished. Conduit identification was lost and finishing rough-in was much harder after ceiling painting. Ceiling painting started | | D | | 11.2 | 680 | 56.0 | 3,254 | 280.0 | 14,790 | 60.0 | 2,504 | 21,227 | |
| G | 55 | Soon after clock was poured on or about the first week of November 2003, and walls rocked, plaster moved into Room 218; Credon got access to this room May 18, 2004, considerably out-of-sequence. Could not get in to finish lighting. Three substations moved into Room 219 along with four CRAC units, then feeds pulling rough (hundreds of cables). Overhead conduit rack and duct work, got access to this room 1/8/04. We could not get in for over a month. | | | | 6.7 | 404 | 33.3 | 1,934 | 166.4 | 8,789 | 43.6 | 1,819 | 12,547 | |

OC 0061

B-0699

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2567**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing Sequence Num No. | Event | Reference Type | Delay Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeymen Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 58 | Generator rooms 228 and 229. Problems with underground feeders delayed pouring deck in this area on or about January 15, 2004. Then generators were set, mufflers were hung from ceiling, brick layers started venue 1B and 2B with scaffolding that blocked access. Could not get into this room until on or about March 19, 2004, and then we had to work around equipment and housekeeping pad with small lifts and extension ladders not reasonably expected. | D&N | 12.4 | 793 | 62.1 | 3,791 | 310.4 | 17231.7 | 38.0 | 1,586 | | 24,401 |
| 57 | Cement mixer was set-up outside door in L&M corridor and filled hallway with block for generator room on or about 2/1/04. This stopped corridor lighting at east end of corridor 216 and all of corridor 217. We had to go back later to finish on or about March 22,2004, night shift. | N | 6.7 | 390 | 33.6 | 1,992 | 188.0 | 9,761 | | | | 14,031 |
| 59 | Had to continually move other trades material to get to our work. This was a continual problem from January through May 2004. | D&N | 16.0 | 1,023 | 80.1 | 4,894 | 403.3 | 22,245 | 96.0 | 4,008 | | 32,168 |
| 60 | Rests of feeder wire (tundred) in corridors 216, 220 and room 215, stopped and slowed progress. This was a continual problem from January through May 2004. | D | 43.7 | 2,311 | 218.7 | 11,554 | 1093.7 | 57,768 | 273.4 | 11,410 | | 83,042 |
| 60 | Steel erectors rough-ed-us or openings did not line up. Had to re-punch heavy gauge metal studs to rough-in conduits, which could not be reasonably expected. This refers to the openings left in the walls for lift access. This stopped rough-in and wire pulling. Creedon returned to find that conduit and wire pulling was much more difficult than could be anticipated from January through July 2004. | D | 7.7 | 406 | 38.4 | 2,028 | 192.0 | 10,141 | 96.0 | 4,008 | | 16,581 |
| 61 | Problems with generators delayed testing several days from what was scheduled. We had a gang of 10 men pulling wire in three rooms when testing should have been done but wasn't. Got stopped on March 25 and 26, 2004; no generators could be tested. Lost 2 hrs x 10 men both days, march 25 and 26, 2004. | D | 1.6 | 85 | 8.0 | 423 | 40.0 | 2,113 | | | | 2,620 |
| 62 | Other trades disconnected conduit prior to closing wall. Caused problem with the wire pulls later. After rough-in inspection, conduit was disconnected for access through walls; Creedon was not notified and walls were closed. This occurred in the period between January and March 2004 and June and July 2004. | D | 7.2 | 437 | 38.0 | 2,062 | 160.0 | 9,508 | | | | 12,037 |
| 63 | As soon as concrete was dry enough to walk on, it was covered with reds of feeder wire, stuck, drywall, door frames, doors and HVAC ductwork and other materials from February through May 2004. Diamond plate used for walls was not removed until Tishman wanted to install topes. Creedon was not able to pull wire because wall boxes were covered and inaccessible. Ceiling access was also blocked by materials. | D | 5.8 | 350 | 28.8 | 1,673 | 144.0 | 7,608 | 38.0 | 1,502 | 11,132 | 0 |
| 64 | Wall studs were put up without providing enough room (around stored material) to rough-in electric conduit. Spent hours each day moving material of other trades. This problem continued from the end of February through April 2004. | D | 5.3 | 321 | 26.4 | 1,534 | 152.0 | 8,672 | | | | 8,827 |
| 65 | Originally had scissor lifts in the area for ceiling rough-in, but had to route lifts and bring in JLG lifts to work over stored material. This not only slowed the Administration Area, but also areas where we planned to use JLG's. This problem continued from on or about the second week of February through March 2004. | D | 3.8 | 233 | 18.2 | 1,116 | 96.0 | 5,071 | | | | 6,420 |

H    9

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2387**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing Sequence Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | PCO Total $ | REI/Submittal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66 | Overlay drawing received were incorrect. All conduits in electrical rooms were coupled in 6"-6" not 7'-0". This caused problems for us and Furnas as feeder and branch conduits were wrong. February and March 2004 the piping was done under PCO #4, but this impacted wire pulls also, which were not covered by PCO #4. | | D | | 9.6 | 583 | 48.0 | 2,789 | 240.0 | 12,677 | 60.0 | 2,564 | 290 | 18,833 | |
| 67 | Underground feeder conduits were crossed from panels UPBA6/6 and UPBM06. This caused four other panels to cross, RP2A2, RP2B2, RZ-2A2-A and RP2B2A. We spent 80 hours on this problem. We had to install 12" x 12" rough under panel plus (10) 2" threaded connectors at $38 each, (2) 3" at $98 each and (6) 1-1/2" at $20 each. Also length of feeders to these panels increased. We have been waiting for these feeders since on or about 2/6/04. We still do not have them finished. Cannot purchase wire. | | D | | 3.2 | 194 | 16.0 | 930 | 80.0 | 4,226 | | | 1,019 | 6,389 | |
| 68 | Moving material from storage vans to the building had a major pyramiding effect on the project. Not only was time lost moving material, but material moved in the building was constantly in the way and had to be moved over and over again. We moved skids of lights many times. This extremely major time consuming problem continued from on or about December 16, 2003 through July 31, 2004. | | D | | 7.7 | 467 | 38.4 | 2,231 | 384.0 | 20,285 | 192.0 | 8,012 | | 30,993 | |
| 69 | On March 30, 2004, the day shift made up a pulling head at the end of the shift planning to pull it the next morning. When they returned a 250' reel was cut from the head and stolen. Crew had to wait for more wire to be shipped to site and remake the pulling head. | | D | | 0.3 | 19 | 1.0 | 58 | 8.0 | 423 | | | | 618 | |
| 70 | On March 7, 2004 we had 5 men pulling wire in battery rooms in area B and were told we had to vacate for ½ hour for testing. There was testing problems and we could not get back in for 4 hours. | | D | | 0.2 | 12 | 1.6 | 93 | 8.0 | | | | | | |
| 71 | Electrical gear ordered by us as directed and arranged by others, came addressed to Forest, not Furnas or Creedon. When material arrived, electrical contractors were randomly directed to unload shipments. Causing delays, pick-ups and lost time in locating and unloading equipment. Damaged material notifications were not properly filed. This problem extended from December 2003 through April 2004. | | D | | 1.6 | 97 | 8.0 | 465 | 40.0 | 2,113 | | | | 2,675 | |
| 72 | Panels that came in damaged where unnoticed because it was unloaded by the wrong contractor. This required reorienting line in the job at an extra cost and schedule impact. Panels did not arrive up to as late as April 2004. | | D | | 16.0 | 972 | 0 | 0 | 40.0 | 2,113 | | | | 3,085 | |
| 73 | Underground feeders were installed in walls not in bookkeeping pads, some came out of deck, but when bookkeeping pads were poured the conduits were not high enough, some missed pour locations. Strings and measuring tapes were not installed, by the designated contractor or they were installed late. We installed once strings so we could pull wire or worked until it was done by the directed contractor. This problem extended from December 2003 through April 2004. | | D | | 14.4 | 875 | 72.0 | 4,183 | 360.0 | 19,016 | | | | 24,673 | |
| 74 | RFI's never got answered, forcing us to install without answers to facilitate the schedule. This created problems from October 2003 through August 2004. | | | | 0.0 | 0 | | 0 | | 0 | | 0 | | 0 | |

C 5063

March 31, 2005

## Creedon Controls, Inc.
### Bank One Corp Data Center #2
### Critical Event Summary Change Orders
### CCI Project #2357
### Events from Beginning of CCI's Work through 4/7/04

| Drawing Sequence | Item No | Description | RFI/Submittal Impact | Reference Type | Delay/Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 75 | Submittals and RFI's were not timely returned and frequently caused confusion. The engineer and the architect were not simultaneously copied, which delayed approval. Things we thought were approved were not. This problem continued from October 2003 through April 2004. | | | D | 0.0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| | 76 | Roughed-in conduits left because walls were not finished, were color coded so we would know what and when they were. These got painted black when painter did the ceiling areas. This problem extended from January through May 2004. | | | D | 1.6 | 97 | 8.0 | 465 | 40.0 | 2,113 | 0 | 0 | | 2,675 |
| | 77 | 75 motorized dampers had the locations changed throughout the job. Could not pipe in early without locations to pipe to. Still have no locations for some. More difficult to get this resolved was through I.D. Griffith. | | | D | 12.0 | 729 | 60.0 | 3,468 | 300.0 | 15,846 | 37.5 | 1,965 | | 21,628 |
| | 78 | General clean-up - pre-Christmas. As-builts, material and job logs were thrown away by laborers. This occurred December 2003 and required hiring a consultant to recreate the drawing doing a complete review of the installation and documenting the results. | | | D&N | 87.8 | 5,316 | 4.0 | 232 | 20.0 | 1,162 | 0 | 0 | | 1,710 |
| | 79 | Confusion created by the use of different drawing and nsn letters. This confusion caused problems from October 2003 through November, when the problem was identified by Creedon and adjustments were made to check and correct the information when area designations were given. | | | D | 24.0 | 1,489 | 24.0 | 1,394 | 0 | 0 | 0 | 0 | 2,852 | 2,852 |
| General | 2357 | 80 | Saturday Premium Cost Only; actual vs. original estimate | | D | 0.0 | 4,033 | | 15,930 | | 66,307 | | 12,494 | | 88,665 |
| | | **Totals** | | | | **797.0** | **548,400** | **3282.1** | **$191,161** | **148202** | **$754,489** | **35902** | **$549,532** | **10,222** | **$1,134,004** |

Note: This calculation includes only the items that could be specifically documented in detail other impacts and items will be added.

**Overall Total @ Cost**   $1,292,270

Note:

This list of events does not completely reflect the cost and schedule impact associated with events such as:
1. Cost escalation of materials, e.g. copper and steel, purchased later than planned due to information and schedule delays.
2. Schedule related cost increases related to labor scheduling
3. Cost and schedule impact related to the timing and completeness of RFI and submittal responses
4. Cost and schedule impact related to the number, timing, definition and magnitude of change orders
5. Stacking of trades in spaces with limited area, excess or space available

**Legend:**

| | Dwg | Start Order |
|---|---|---|
| General Foreman | C | 1 |
| Gen. Foreman/2nd shift | A | 2 |
| Foreman | B | 3 |
| Foreman-2nd shift | . | |
| Journeyman | | |
| Journeyman-2nd shift | | |
| Apprentice | | |
| Apprentice-2nd | | |
| Laborer | | |

1. Rates (from 12/01/04):

| | |
|---|---|
| General Foreman | $60.75 |
| Gen. Foreman/2nd shift | 66.82 |
| Foreman | 58.10 |
| Foreman-2nd shift | 63.91 |
| Journeyman | 52.82 |
| Journeyman-2nd shift | 58.10 |
| Apprentice | 41.73 |
| Apprentice-2nd | 45.90 |
| Laborer | 45.00 |

2. Sequence - \*\*

000064

ExC-74

# Creedon Controls Inc.
Electrical Contractors

3424 Old Capitol Trail
Wilmington, Delaware 19808
Telephone (302) 892-2000
Fax (302) 892-2002

## CREEDON CONTROLS CHANGE ORDER SUMMARY
## BANK ONE BRANDYWINE - CDC II - RFP6B

DATE:          3/31/2005
FOREST EWA #:
CREEDON - PCO#:    52

Description: Critical Event Summary CCI Project 2357 from 04-08-04

|  |  | TOTALS: |
|---|---|---|
| LABOR VALUE      : | $ | 222,003.88 |
| ACTUAL SUPERVISION COSTS: | $ | 124,368.75 |
| (Gross Payroll to Employee) |  |  |
| LESS: OCIP LABOR | $ | (9,657.17) |
| LESS: OCIP NON-PRODUCTIVE SUPERVISION | $ | (5,410.04) |
|  |  |  |
| LABOR SUBTOTAL: | $ | 331,305.42 |
|  |  |  |
| MATERIAL: | $ | 82,297.50 |
| THIRD PARTY RENTAL: | $ | - |
| DIRECT JOB EXPENSES @ 7% OF LABOR, MATERIAL COST AND RENTALS: | $ | 28,952.20 |
| (INCLUDES PROJECT MANAGEMENT) | $ | 442,555.13 |
|  |  |  |
| OVERHEAD AND PROFIT MARKUP @ 20% OF BARE COST: | $ | 88,511.03 |
|  |  |  |
| SUBTOTAL: | $ | 531,066.15 |
|  |  |  |
| SUBCONTRACT: |  | 0 |
| OCIP: |  | 0 |
| SUBCONTRACT BARE COST: |  | 0 |
|  |  |  |
| OVERHEAD AND PROFIT MARKUP @ 6% OF SUBCONTRACT COST: |  | 0 |
|  |  |  |
| SUBTOTAL: |  | 0 |
|  |  |  |
| TOTAL COST: | $ | 531,066.15 |

006075

**B-0703**

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from 4/8/04 through End of CCI's Work**

| Drawing | Sequence Item No. | Event | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| General | 1 | 4/28/04: Closed entrance from Goodwill parking lot to site to start rough grading; contractors willing to do a board walk, but denied this alternative. This added extensive time for manpower to move between trailers and parking areas. No notice was sent. | D | | | | | | | | | | |
| B | 2 | 6/08/04: Non-compliance was issued from Tishman on moving our equipment from the break room; see response to non-compliance. This was one of the few communications with Tishman through Forest. | D | 1.0 | 60.75 | 1.0 | 58.10 | | | | | | 118.85 |
| H | 3 | 6/9/04: Asked to have power to the roof top unit in the Administration Building, which Creedon completed as asked, but there were no motor starters, supplied by others, for the Chilled water pumps and the RTU. Cannot run without the chilled water. Dead! | D | | | | | | | | | | |
| H | 4 | 6/9/04: Asked to have power to the roof top unit in the Administration Building, which Creedon completed as asked, but there were no motor starters, supplied by others, for the Chilled water pumps and the RTU. Cannot run without the chilled water. Deadline was an "employ" | D | | | | | | | | | | |
| D | | 6/22/04: Laborers threw out 300 feet of ten foot strut cover in a box, which was on a four wheel cart, which they used to dispose of our material and left the cart at the dumpster without even returning it. Had to retrieve material the next day from the | D | 0.2 | 12.15 | 1.0 | 58.10 | 2.0 | 105.64 | | 0.00 | 50 | 225.89 |
| E | 5 | 7/1/04: Two man lift in the generator room #1A with a Creedon sticker, but was rented by the sprinkler fitter. This resulted in an inappropriate non-conformance notice, responded to by Creedon. | D | 2.0 | 121.50 | 1.0 | 58.10 | | | | 0.00 | | 179.60 |
| H | 6 | 8/18/04: The labors threw out a skid of conveyance supports we were saving to do additional tray supports as needed. It was trashed with full knowledge by Tishman that a truck would arrive within one hour to store this material off-site. | D | | | | | | | 4.0 | 166.92 | 1,000 | 1,166.92 |
| H | | 2/5/04: Admin Bldg rough-in floor boxes requested by Tishman and Forest as an extra (TRAP). Furness had to go into the same room at a deeper elevation due to the sweep of elbows. Creedon (7:00 to 3:30) held up for 6 hours. | D | | | | | | | | | | |
| H | | 2/6/04: Held up in the same area by Labov Mechanical because they were installing the rough in for the bathrooms and they were deeper, therefore first, but they didn't open for three days. Tishman and Forest wanted to pour the Admin area and we could not get done. Men had to be relocated frequently. We put as many people as possible on the work when we could to comply with Tishman and Forest's request. | D | | | | | | | | | | |
| H | 7 | 2/6/04: Admin bldg flooded, four inches in the work area below grade, due to failure to install expansion joint between the Admin Bldg and the Main Bldg. We had to move all our material and equipment to the another area, forced move. | D | 0.8 | 48.60 | 4.0 | 232.40 | 32.0 | 1,680.24 | | | | 1,971.24 |
| H | 8 | 2/6/04: Screwed-up the layout of 6 to 8 toilets and two sinks, and they could not get it right. Held up from 10-11: 8 men & 1/2: 6men. At 4:30 they left and the men had to be reassigned for the final hour of the day. Final hours was also lost. | D | 0.6 | 38.45 | 3.0 | 174.30 | 24.0 | 1,267.68 | | | | 1,478.43 |
| H | 9 | 2/11/04: 24" rigid conduit was taken by a contractor and cut for aosis to pull wire. Replaced two hours labor, plus truck then down. Men could not work until conduit was replaced. | D | 0.4 | 24.30 | 2.0 | 116.20 | 16.0 | 845.12 | | | | 985.62 |
| H, F & G | 10 | 2/17/04: Started pouring concrete in the Admin Bldg. We started on 2/5/04. Poured twelve days later. They had us in there long before we should have been, because of Furness and Labov, who should have been in there sooner, so we should not be delayed | D | 3.6 | 218.70 | 18.0 | 1,045.80 | 90.0 | 4,753.80 | | | | 6,018.30 |
| H | 11 | 3/4/04: Carpenters closed down the Admin Bldg. by storing their material and equipment for the whole job, doors, drywall, studs, expansion joints, etc. 90% of the floor area covered through three and one-half month. No reason to have it there, if not to be installed there, otherwise move it. Tishman should have asked others. Told Forest Walt Hisar, and Len Beck, but no relief. It became an unloading area for large electrical, chargers, etc. by Furness | D | 3.6 | 218.70 | 18.0 | 1,045.80 | 24.0 | 1,267.68 | | | | 2,532.18 |

Page 124 of 160

**Creston Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from 4/8/04 through End of CCI's Work**

March 31, 2005

| Drawing Sequence | Item No. | | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H | 12 | 3/5/04 & 3/9/04: Admin floor space problem. Furness w/ many UPS batteries, gear and wire reels. Just ahead of Furness about 5 days the delay to our work and Len Beck did nothing and walked away. We were weeks ahead of the Bear job at this point. The Bear job had C-boxes and by down areas for material storage. All Brandywine trailers were removed from the site in front of the Admin area and all the material was moved inside. This was the start of the considerably smaller work area and access when the trailers were removed. December 16, 2003. | D | 3.6 | 218.70 | 18.0 | 1,045.80 | 48.0 | 2,533.56 | | | | 3,799.85 |
| H | 13 | 3/6/04: Admin area flooded again. Had to move all tools and material to another area. Could not do work. Only place we could work was the back wall of the Admin and this was under four inch of water. Could not work in this area. Roof expansion joint was never done. Tishman had laborers dirt holes in the floor box covers to drain area through the electrical underfloor conduit system. | D | 0.8 | 48.60 | 4.0 | 232.40 | 55.0 | 2,957.92 | | | | 3,238.92 |
| H | 14 | 3/9/04: Constantly being stopped by other contractors moving material in Admin Area. Area not covered by conduit system. There were four other entries to the building that could have been us highway. | D | 0.4 | 24.30 | 2.0 | 116.20 | 16.0 | 845.12 | | | | 985.62 |
| H | 15 | 3/10/04: to 3/14/04 and for months. Another contractor was in area the whole day unloading material batteries and reels. They were using lifts. They were dangerous, fast moving, knocked off ladder. Accident waiting to happen. Still blocked by Furness with electric fork lifts at up to 15 mph. | D | 2.0 | 121.50 | 10.0 | 581.00 | 60.0 | 3,169.20 | | | | 3,871.70 |
| H | 16 | 3/15/04: Moved all men out of Admin because no floor space area access, except one available. Left lone traveler on T&M work of 4 light men in Admin Area. Stable, often times relocated. We were not able to store our material in this area even though we were the only ones working in this area and our material needed to be here. Todd Len Beck and Bob Allocca and got no results. | D | 0.4 | 24.30 | 2.0 | 116.20 | 12.0 | 633.84 | | | | 774.34 |
| H | 17 | 3/17/04: 2 man 6hrs each. Tishman was moving like Tishman frequently does. Tishman refused to sign T&M slip for these frequent moves. Would not give us any down area like all other trades. They would let us store in one area then moved to another area the next day. | D | 0.4 | 24.30 | 2.0 | 116.20 | 12.0 | 633.84 | | | | 774.34 |
| H | 18 | 3/18/04: A master bundle of 3/4 emt.5000 feet was stolen. We had to pay 2-1/2 time more for the replacement pipe. John had to paint the pipe and other materials to keep them from being removed. All other trades had a locked area for material but not Creston. Asked frequently for a locked storage area and by down area to keep material from being removed to no avail. | D | 2.0 | 121.50 | 4.0 | 232.40 | | | | | 3,250 | 3,603.90 |
| General | 19 | 3/20/04: Panels were installed and conduit was not stubbed-up to the panel as specified. Dispute with Tishman and Forest re: proper work by others precedent to our work. Precedent work was not stubbed-up. We were responsible for the panels. Precedent work was not finished for us to do our work. Bob and Len Beck were told, but did not help. Furness would not bring the pipe above the finished floor level, we had to connect to pipe below grade and many pipes damaged and compression fittings had to be used and pipe out. Troughs had to be installed at the panels because conduits from work of others were not stubbed up so that direct panel entry was possible. | D | 2.0 | 121.50 | 10.0 | 591.00 | | 1,056.40 | 20.0 | | | | 1,755.90 |
| General | 20 | 3/20/04 to 4/21/04: 19 panels to extend all conduit from 4" above the floor to panels. Layout bad; had to install trough on average 10"x10"x3' some larger some smaller to hit panels straight. Had to cut floor in some cases. Needed to mount u/strut to support conduit and trough including tie into panel legs to floor and stub is wall if not blocked. This was Furness's work by specification, lock nut to lock nut. We had to 1"2"3" and 4" and the associated GRS to EMT transition fittings. | D | 10.8 | 655.10 | 54.0 | 3,137.40 | | | 12.0 | | 20.0 | 28,522.80 | 600 | 32,916.30 |

006077

B-0705

## Creedon Controls, Inc.
## Bank One Core Data Center #2
## Critical Event Summary Change Orders
## CCI Project #2357
## Events from 4/8/04 through End of CCI's Work

March 31, 2005

| Drawing | Sequence | Item No. | Description | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| General | | 21 | 4/2/04: Had to dig our four inch conduit left barely above the floor level, jack hammer pad and bought a threadless coupling to transition from rigid to emt. This was covered with Len Beck and Bob from Tishman. | D | | | 8.0 | 464.80 | 8.0 | 422.56 | | | 100 | 987.38 |
| H | | 22 | 4/6/04: Another 2000 feet of 3/4 EMT was stolen; reported to Len Beck and Bob Alocca. Bob Alocca was physically picking up our material and throwing it in the dumpster. Threatened to take pictures and Alocca stopped. Tishman top people were throwing our material away. | D | 1.0 | 60.75 | 2.0 | 116.20 | | | | | 1,300 | 1,476.95 |
| General, H | | 23, 24 | 4/9/04: Had to install pull lines in feeder conduits to continue our scheduled work. 4/20/04: Labor cut a strut holding up two sets of pipes into the wall to install their rain drain. The pipes in the pour floated out and T&M was given, but no extension of time on any T&M done by John. So there were extra costs to stay on schedule. | D | | | 4.0 | 232.40 | | | 8.0 | 422.56 | | 654.96 |
| General | | 25 | 4/26/04: As an example half the crew of eight was on T&M. Could not address all the scope again due to Tishman's lack of planning, lack of coordination and failure to ask for schedule assistance. | D | 2.0 | 121.50 | | | 4 | 211.28 | 2.0 | 83.46 | | 416.24 |
| F | | 26 | 4/26/04: Had to modify the transfer switch to accommodate the 3" pipes not properly laid-out by another contractor, 400 amp transfer switches. Took out 2-1/4 x 5-1/4 inches, AT5283 insulator is there to store their material. | D | | | | | | | | | | |
| E | | 27 | 5/3/04: AT5-23, pipes also laid out wrong and the side rail of the AT5 had to be taken out. Also had to change all the Siemens 400 Amp panels with the wrong lugs from dual 500's to dual 600's. Took a couple of extra days. Issued T&M, but six men of fourteen on T&M not scope. Need more schedule adjustment or additional money. | D | | | | | | | | | | |
| E | | 28 | 5/15/04: Three one inch conduits broken by fitters using fills in Chiller Room A and Chiller Room B. T&M 2 of 6 men not on scope. | D | | | | | | | | | | |
| B & H | | 26 | 5/20/04: Force march day. Had to move all the material and equipment from Room 213 to Admin building. Two men all day. Never give any advance notice, just showed-up and put the insulator in there to store their material. | D | 2.0 | 121.50 | | | 8.0 | 422.56 | 8.0 | 333.84 | | 877.90 |
| H | | 27 | 7/1/04: Started moving most of the material and equipment stored in the Admin Area, exposing floor boxes for the first time since March 4, 2004. This finally permitted Creedon to finish its work in the Admin Area. Not 100% clear, but workable. | D | | | | | | | | | | |
| D | | 28 | 7/6/04: Tom Keene threw away material. 1000' Master Bundle of Unistrut was banded it was to be picked up the next day for a credit. Jimmy Ray, Superior Electric, saw Tom Keene personally touch some of the material including strut covers on a cart. It was outside bolstering no one and strut services was to pick up the next day. This was done with no notice. Tom Keene did this after regular hours after Creedon left the site. Took three Journeymen three hours to retrieve material and scope items quickly. Domino affect, very costly. Value of strut $1,380, but got $220 credit due to open bundle and condition of materials. | D | 1.0 | 60.75 | | | 8 | 475.38 | | | 1,160 | 1,698.13 |
| H | | 29 | 7/6/04: Mike Rocca from Forest and Bob Alocca, Tishman made John move out of rooms we were in in Area H to other rooms in Area H. With the confusion and the congestion and lack of planning on Tishman's part. We did not get a space and had to constantly move, five times | D | 2.0 | 121.50 | | | 8.0 | 422.56 | | | | 544.06 |

006078

B-0706

Creedon Controls, Inc.
Bank One Corp Data Center #2
Critical Event Summary Change Orders
CCI Project #2357
Events from 4/8/04 through End of CCI's Work

March 31, 2005

| Drawing Sequence Item No. | | Shift General Foreman Hours | Total | Foreman Hours | Total$ | Journeyman Hours | Total$ | Apprentice Hours | Total$ | Direct Expenses | PCO Total$ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | 7/18/04 11:55 laborers were moving our lights and tubes and tables to the dumpster at Bob Allocca request and assistance. Never asked us to move anything. Called Charlie to put the aside on them. All in D Data Center on pallets, needed to finish the job. We were directed by Forest and Tishman to put it there and never asked to move it. Superior and Furness were there also, and were not asked to move. Had to stay late. Ten people of ten were out of scope work. Job 95% done at this point. Third time this happened in five weeks. Others working in the data center were not disturbed by Tishman in any way. Bob Allocca just back from vacation. | 2.0 | 121.50 | 6.5 | 377.65 | 40.0 | 2,112.80 | 16.0 | 667.68 | 120 | 3,399.63 |
| 31 | Subcontract General Foreman support required due to delay, acceleration and related job problems from 3/25/04 through 9/22/04 | 217.0 | 14,499.94 | 8.0 | 511.28 | 2113.5 | 122,794.35 | 283.5 | 13,012.65 | 74,718 | 74,717.50 |
| 32 | Night Shift Differential for work beyond 3/15/05, planned end date in original estimate. | 1322.0 | 26,119.72 | 2305.5 | 58,804.75 | | | | | | 150,818.22 |
| 33 | Non-productive Direct Supervision Increase for Actual vs. Peak Manpower | | | | | | | | | | 84,924.45 |
| 34 | Additional Overtime beyond Original Bid not in PCOs | | | | | | | | | | 97,863.10 |
| 35 | Doubletime: February 15 & September 12, 2004 | 8.0 | 293.28 | 50.0 | 1,734.30 | 386.0 | 11,945.92 | 60.0 | 1,147.50 | | 15,121.00 |
| | Totals | 1591.6 | $43,522.39 | 2538.0 | $71,183.76 | 3538.5 | $189,514.61 | 373.5 | $15,412.05 | 82237.5 | $500,016.41 |

| General | 36 | Saturday Premium Cost | 3,635.20 | | 5,932.40 | | 15,792.88 | | 1,284.34 | | 28,644.82 |

Overall Total @ Cost                    $528,663.23

Note: This calculation includes only the items that could be specifically documented in detail; other impacts and items will be added.

This list of events does not completely reflect the cost and schedule impact associated with events such as:

1. Cost escalation of materials, e.g. copper and steel, purchased later than planned due to information and schedule delays.
2. Schedule related cost increases related to labor scheduling
3. Cost and schedule impact related to the timing and completeness of RFI and submittal responses
4. Cost and schedule impact related to the number, timing, definition and magnitude of change orders
5. Stacking of trades in spaces with limited site, access or space availability

Legend:

1. Rates (from 1201/04)

General Foreman              $60.75
Gen. Foreman-2nd sh          65.82
Foreman                      58.10
Foreman-2nd shift            63.91
Journeyman                   52.82
Journeyman-2nd shift         58.10
Apprentice                   41.73
Apprentice-2nd               45.90
Laborer                      45.00

2. Sequence of Work:

Dwg   Start Order
C     1
A     2
B     3
G     4
F     5
H     6
E     7
D     8

006079

B-0707

FE 004134

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 4 PAGES

TO (OWNER):    **Bank One**    PROJECT:    CDC II - Brandywine    APPLICATION NO:    One    Distribution to:

General Lighting & Power    PERIOD TO:    10/31/2003    ☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐

FROM (CONTRACTOR):    Creedon Controls, Inc.    VIA (ARCHITECT):    PROJECT NOS:

CONTRACT FOR:    Electrical    CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . $ | 3,152,000.00 |
| 2. Net change by Change Orders . . . . . . . . . $ | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . $ | 3,152,000.00 |
| 4. TOTAL COMPLETED & STORED TO DATE . . . $ | 75,000.00 |
|    (Column G on G703) | |

5. RETAINAGE

a.  **10.0%** % of Completed Work     $    7,500.00
(Columns D + E on G703)
b.  **0.00%** % of Stored Material    $
(Column F on G703)
Total Retainage (line 5a + 5b or
Total in Column 1 on G703) . . . . . . . . . . $    7,500.00

| | |
|---|---|
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . $ | 67,500.00 |
|    (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | |
|    (Line 6 from prior Certificate) . . . . . . . . . . $ | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . $ | 67,500.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | |
|    (Line 3 less Line 6)    $ | 3,084,500.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE   19808

By: _____    Date:    10/20/03

State of:    Delaware

County of:    New Castle

Subscribed and sworn to before me this _____ day of _____

Notary Public: _____

My Commission expires:    05/20/05

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . $ _____

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.    G702-1992

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0708

CREEDON CONTROLS    3026922002    09:51    10/22/2003

PAGE 02

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverseside)    PAGE 1 OF 4 PA

| | |
|---|---|
| TO (OWNER): Bank One | PROJECT: CDC II Randywine General Lighting & Power |

| | | |
|---|---|---|
| APPLICATION NO: | Two | Distribution to: ☐ OWNER |
| PERIOD TO: | 11/30/2003 | ☐ ARCHITECT |
| | | ☐ CONTRACTOR |
| | | ☐ |

FROM (CONTRACTOR): Creedon Controls, Inc.    VIA (ARCHITECT):

PROJECT NOS:

CONTRACT DATE:

CONTRACT FOR:    Electrical

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . $ | 3,184,600.00 | |
| 2. Net change by Change Orders . . . . . . . . . . . . . $ | | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | 3,184,600.00 | |
| 4. TOTAL COMPLETED & STORED TO DATE . . . . $ | 507,470.00 | |
|    (Column G on G703) | | |
| 5. RETAINAGE | | |

| | | |
|---|---|---|
| a. 10.0% % of Completed Work | $ | 50,747.00 |
|    (Columns D + E on G703) | | |
| b. 10.0% % of Stored Material | $ | |
|    (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or | | |
| Total in Column I on G703) . . . . . . . . . . . . . . $ | | 50,747.00 |

| | | |
|---|---|---|
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . $ | | 456,723.00 |
|    (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . . . $ | | 67,500.00 |
|    (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . $ | 389,223.00 | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
|    (Line 3 less Line 6) | $ | 2,727,877.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in | | |
| previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
              3424 Old Capital Trail
              Wilmington, DE 19808

By: _Russell Moore_                    Date: 11/17/03

State of:    Delaware

County of:    New Castle

Subscribed and sworn to before me this    17th    day of    Nov. 2003

Notary Public: _Lori M. Whitlock_

My Commission expires: 05/30/05.

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . $
(Attach explanation if amount certified differs from the amount applied for. Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)
ARCHITECT:

By:                                      Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATION FOR PAYMENT • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK    G702-1992
AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0709

FE 004138

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 4 P.

TO (OWNER):  Bank One

FROM (CONTRACTOR):  Creedon Controls, Inc.

PROJECT:  CDC II andywine General Lighting & Power

VIA (ARCHITECT):

APPLICATION NO:  Three

PERIOD TO:  12/31/2003

PROJECT NOS:

CONTRACT DATE:

Distributio
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐

CONTRACT FOR:  Electrical

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . $ | 3,184,600.00 |
| 2. Net change by Change Orders . . . . . . . . . . $ | -32,600.00 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | 3,152,000.00 |
| 4. TOTAL COMPLETED & STORED TO DATE . . . . $ | 879,240.00 |
|    Column G on G703 | |
| 5. RETAINAGE | |
|    a.  10.0  % of Completed Work    $  87,924.00 | |
|        (Columns D + E on G703) | |
|    b.  10.0  % of Stored Material    $ | |
|        (Column F on G703) | |
|        Total Retainage (line 5a + 5b or | |
|        Total in Column I on G703) . . . . . . . . . $ | 87,924.00 |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . $ | 791,316.00 |
|    (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . $ | 456,723.00 |
|    (Line 6 from prior Certificate) | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . . $ | 334,593.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | |
|    (Line 3 less Line 6)    $  2,360,684.00 | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:  Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _____    Date:  12/17/03

State of:  Delaware

County of:  New Castle

Subscribed and sworn to before me this ____ day of _____

Notary Public: _____

My Commission expires:  05/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . $ _____
(Attach explanation if amount certified differs from the amount applied for. Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.    G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

FE 004142

B-0710

FE 004146

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 4 PAS.

TO (OWNER): Bank One

FROM (CONTRACTOR): Creedon Controls, Inc.

CONTRACT FOR: Electrical

PROJECT: CDC II General Lighting & Power andywine

VIA (ARCHITECT):

APPLICATION NO: Four
PERIOD TO: 1/31/2004
PROJECT NOS:
CONTRACT DATE:

Distributio:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . $ | 3,184,600.00 |
| 2. Net change by Change Orders . . . . . . . . . $ | 21,643.91 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | 3,206,243.91 |
| 4. TOTAL COMPLETED & STORED TO DATE . . . . . $ | 1,341,453.91 |
| (Column G on G703) | |

5. RETAINAGE

| | | |
|---|---|---|
| a. 10.0% % of Completed Work | $ 134,145.39 | |
| (Columns D + E on G703) | | |
| b. 10.0% % of Stored Material | $ | |
| (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or | | 134,145.39 |
| Total in Column I on G703) . . . . . . . . . . . $ | | |

| | | |
|---|---|---|
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . $ | | 1,207,308.52 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | 791,316.00 |
| (Line 6 from prior Certificate) . . . . . . . . . . . $ | | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . | $ | 415,992.52 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
| (Line 3 less Line 6) | $ 1,998,935.39 | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _____    Date: _____01/19/04_____

State of: _____Delaware_____

County of: _____New Castle_____

Subscribed and sworn to before me this _____ day of _____

Notary Public: _____

My Commission expires:  _____05/30/05_____

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . $_____

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

G702-1992

B-0711

FE 004150

# APPLICATION AND CERTIFICATE FOR PAYMENT   AIA DOCUMENT G702   (Instructions on reverside)   PAGE 1 OF 5 PAGES

| TO (OWNER): Bank One | PROJECT: CDC II - Brandywine General Lighting & Power | APPLICATION NO: Five | Distribution to: ☐ OWNER |
| | | PERIOD TO: 2/29/2004 | ☐ ARCHITECT |
| FROM (CONTRACTOR): Creedon Controls, Inc. | VIA (ARCHITECT): | PROJECT NOS: | ☐ CONTRACTOR ☐ |
| | | CONTRACT DATE: | ☐ |
| CONTRACT FOR:   Electrical | | | |

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract. Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . $ | 3,152,000.00 |
| 2. Net change by Change Orders . . . . . . . . . . . . . $ | 93,834.05 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | 3,245,834.05 |
| 4. TOTAL COMPLETED & STORED TO DATE . . . . $ (Column G on G703) | 2,063,252.96 |
| 5. RETAINAGE | |
| a.  10.0% % of Completed Work | |
| (Column D + E on G703) | $ 206,325.30 |
| b.  10.0% % of Stored Material | |
| (Column F on G703) | $ |
| Total Retainage (Line 5a + 5b or | |
| Total in Column I on G703) . . . . . . . . . . . . . . $ | 206,325.30 |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . $ (Line 4 less Line 5 Total) | 1,856,927.67 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . $ (Line 6 from prior Certificate) | 1,207,308.52 |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . . $ | 649,619.15 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | |
| (Line 3 less Line 6) . . . . . . . . . . . . . . . $ | 1,388,906.38 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | $93,834.05 | |
| TOTALS | $93,834.05 | |
| NET CHANGES by Change Order | $93,834.05 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:   Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE   19808

By: _____   Date: _____02/19/04_____

State of:   _____Delaware_____

County of:   _____New Castle_____

Subscribed and sworn to before me this _____ day of _____

Notary Public: _____

My Commission expires:   _____05/30/05._____

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . $ _____
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * AIA * G1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

# APPLICATION AND CERTIFICATE FOR PAYMENT

| | | |
|---|---|---|
| TO (OWNER): Bank One | PROJECT: CDC II General Lighting & Power | AIA DOCUMENT G702 (Instructions on reverse side) |
| FROM (CONTRACTOR): Creedon Controls, Inc. | VIA (ARCHITECT): | APPLICATION NO: Six |
| | | PERIOD TO: 3/31/2004 |
| CONTRACT FOR: Electrical | | PROJECT NOS: |
| | | CONTRACT DATE: |

PAGE 1 OF 5 PAGES

Distribution:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . $ | 3,152,000.00 | |
| 2. Net change by Change Orders . . . . . . . . . . . $ | 193,262.76 | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | 3,345,262.76 | |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . . $ (Column G on G703) | 2,554,221.67 | |
| 5. RETAINAGE | | |
| a. 10.0% % of Completed Work    $        255,422.17 (Columns D + E on G703) | | |
| b. 10.0% % of Stored Material    $ (Column F on G703) | | |
| Total Retainage (Line 5a + 5b or Total in Column I on G703) . . . . . . . . . $ | 255,422.17 | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . $ (Line 4 less Line 5 Total) | 2,298,799.50 | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT    $ (Line 6 from prior Certificate) | 1,856,927.67 | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . $ | 441,871.84 | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6)    $        1,046,463.26 | | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $93,834.05 | |
| Total approved this Month | $94,428.71 | |
| TOTALS | $188,262.76 | |
| NET CHANGES by Change Order | $188,262.76 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE   19808

By: _____   Date: 03/19/04

State of: _____ New Castle _____

County of: _____ Delaware _____

Subscribed and sworn to before me this   19th   day of   March 2004

Notary Public: _____

My Commission expires:   05/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . . . . $

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced

B-0713

FE 004155

# APPL ATION AND CERTIFICATE FOR PAYMENT

DOCUMENT G702 (Instuctions on reverseside) PAGE 1 OF 6 PAGE

TO (OWNE Bank One

PROJECT: CDC II - E dywine General Lighting & Power

APPLICATION NO: Seven

PERIOD TO: 4/30/2004

PROJECT NOS:

CONTRACT DATE:

Distribution t:
- ☐ OWNER
- ☐ ARCHITECT
- ☐ CONTRACTOR
- ☐
- ☐

FROM (CONTRACTOR): Creedon Controls, Inc.

VIA (ARCHITECT):

CONTRACT FOR: Electrical

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract Continuation Sheet, AIA Document G703, is attached

1. ORIGINAL CONTRACT SUM ............... $ 3,184,600.00
2. Net change by Change Orders ............. $ 259,533.97
3. CONTRACT SUM TO DATE (Line 1 + 2) ......... $ 3,444,133.97
4. TOTAL COMPLETED & STORED TO DATE ...... $ 3,102,423.97
   Column G on G703)
5. RETAINAGE
   a. 5.0% % of Completed Work (Columns D + E on G703) $ 155,121.20
   b. 5.0% % of Stored Material (Column F on G703) $
   Total Retainage (line 5a + 5b or Total in Column I on G703) ..................... $ 155,121.20
6. TOTAL EARNED LESS RETAINAGE ............. $ 2,947,302.77
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT
   (Line 6 from prior Certificate) .................... $ 2,298,799.50
8. CURRENT PAYMENT DUE .................. $ 648,503.27
9. BALANCE TO FINISH, INCLUDING RETAINAGE
   (Line 3 less Line 6) $ 496,831.20

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $188,262.76 | |
| Total approved this Month | $71,271.21 | |
| TOTALS | $259,533.97 | |
| NET CHANGES by Change Order | $259,533.97 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

By: Patricia Creedon Date: 04/30/04

State of: Delaware

County of: New Castle

Subscribed and sworn to before me this 30th day of April 2004

Notary Public: Lori M. Whitlock

My Commission expires: 05/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED $

*(Attach explanation if amount certified differsfrom the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)*

ARCHITECT:

By: Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejustice to any rights af the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. G702-1992

CAUTION :You should use an original AIA document which has this caution printed in red. An original asures that changes will not be obscurred as may occur when documents are eproducec

B-0714

FE 004160

FE 004166

# APP~ 'ATION AND CERTIFICATE FOR PAYMENT

| | |
|---|---|
| TO (OWNER: | **Bank One** |
| | PROJECT: CDC II - L~~dywine<br>General Lighting & Power |
| FROM (CONTRACTOR): | Creedon Controls, Inc. |
| | VIA (ARCHITECT): |
| CONTRACT FOR: | **Electrical** |

, DOCUMENT G702    (Instructions on reverseside)    PAGE 1 OF  7  PA,

| | |
|---|---|
| APPLICATION NO: | **Eight** |
| PERIOD TO: | **5/31/2004** |
| PROJECT NOS: | |
| CONTRACT DATE: | |

Distribution to
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | | |
|---|---|---|---|
| 1. ORIGINAL CONTRACT SUM. . . . . . . . . . . . . | $ | 3,184,600.00 | |
| 2. Net change by Change Orders . . . . . . . . . | $ | 306,907.35 | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2). . . . . . . | $ | 3,491,507.35 | |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . . $<br>   Column G on G703) | $ | 3,280,907.35 | |
| 5. RETAINAGE | | | |
| a. __5.0%__ % of Completed Work<br>   (Columns D + E on G703) | $ | 164,045.37 | |
| b. __5.0%__ % of Stored Material<br>   (Column F on G703) | $ | | |
| Total Retainage (Lines 5a + 5b or<br>   Total in Column I on G703) . . . . . . . . . . . . . . $ | | 164,045.37 | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . . .<br>   (Line 4 less Line 5 Total) | $ | 3,116,861.98 | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . . . . . .<br>   (Line 6 from prior Certificate) . . . . . . . . . . . . . . . . | $ | 2,947,302.77 | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . . . . | $ | 169,559.21 | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE<br>   (Line 3 less Line 6) | $ | 374,645.37 | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in<br>previous months by Owner | $259,533.97 | |
| Total approved this Month | $47,373.38 | |
| TOTALS | $306,907.35 | |
| NET CHANGES by Change Order | $306,907.35 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    Creedon Controls, Inc.
               3424 Old Capital Trail
               Wilmington, DE 19808

By: _Antonio Creedon_    Date: _05/24/04_

State of: _Delaware_
County of: _New Castle_

Subscribed and sworn to before me this _24th_ day of _Unten 2004_

Notary Public: _Kristen Gwuitier_

My Commission expires: _05/30/05_

DORM. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
*(Attach explanation if amount certified differs from the amount applied for. Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)*
ARCHITECT:

By: _____    Date: _____
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.    G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced

B-0715

# APP___ATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 7 PA__

TO (OWNER):   Bank One

PROJECT:   CDC II - brandywine
General Lighting & Power

APPLICATION NO:   Nine

PERIOD TO:   6/30/2004

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR

FROM (CONTRACTOR):   Creedon Controls, Inc.

VIA (ARCHITECT):

PROJECT NOS:

CONTRACT DATE:

CONTRACT FOR:   Electrical

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:   Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

By: _____   Date:   06/28/04

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM............$ | | 3,184,600.00 |
| 2. Net change by Change Orders........$ | | 343,647.69 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2)..$ | | 3,528,247.69 |
| 4. TOTAL COMPLETED & STORED TO DATE....$ | | 3,524,497.69 |
| Column G on G703 | | |

State of:   Delaware

County of:   New Castle

Subscribed and sworn to before me this ___ day of ___ 200_

Notary Public: _____

My Commission expires:   05/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 20_

## ARCHITECT'S CERTIFICATE FOR PAYMENT

| | | |
|---|---|---|
| 5. RETAINAGE: | | |
| a. 5.0% % of Completed Work | $  176,224.88 | |
| (Columns D + E on G703) | | |
| b. 5.0% % of Stored Material | $ | |
| (Column F on G703) | | |
| Total Retainage (line 5a + 5b or | | |
| Total in Column I on G703)...............$ | | 176,224.88 |
| 6. TOTAL EARNED LESS RETAINAGE............$ | | 3,348,272.81 |
| (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | |
| (Line 6 from prior Certificate)............$ | | 3,116,861.98 |
| 8. CURRENT PAYMENT DUE...............$ | | 231,410.82 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
| (Line 3 less Line 6)         $  179,974.88 | | |

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED                                    $
(Attach explanation if amount certified differs from the amount applied for.  Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)

ARCHITECT:

By: _____   Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $306,907.35 | |
| Total approved this Month | $36,740.34 | |
| TOTALS | $343,647.69 | |
| NET CHANGES by Change Order | $343,647.69 | |

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATION FOR PAYMENT • 1992 EDITION • AIA ® ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC., 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

FE 004173

B-0716

FE 004180

# APPLICATION AND CERTIFICATE FOR PAYMENT

| | | | | |
|---|---|---|---|---|
| TO (OWNER): Bank One | PROJECT: CDC II - Brandywine General Lighting & Power | (AIA DOCUMENT G702 | (Instructions on reverse side) | PAGE 1 OF 7 PPS |
| | | APPLICATION NO: | Ten | Distribution to: |
| FROM (CONTRACTOR): Creedon Controls, Inc. | VIA (ARCHITECT): | PERIOD TO: | 7/31/2004 | ☐ OWNER<br>☐ ARCHITECT |
| | | PROJECT NOS: | | ☐ CONTRACTOR |
| CONTRACTOR: Electrical | | CONTRACT DATE: | | ☐ |

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . $ | 3,184,600.00 | |
| 2. Net change by Change Orders . . . . . . . . . . . . $ | 384,929.68 | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2). . . . . . . $ | 3,569,429.68 | |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . . $ | 3,555,300.83 | |
| (Column G on G703) | | |
| 5. RETAINAGE | | |
| a. 5.0% % of Completed Work $ 178,265.04 | | |
| (Column D + E on G703) | | |
| b. 5.0% % of Stored Material $ | | |
| (Column F on G703) | | |
| Total Retainage (line 5a + 5b or | | |
| Total in Column I on G703). . . . . . . . . . . . $ | 178,265.04 | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . $ | 3,387,035.78 | |
| (Line 4 less Line 5 Total) | | |

| | | |
|---|---|---|
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . . . . . . . . . $ | 3,351,168.74 | |
| (Line 6 from prior Certificate). | | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . $ | 35,867.05 | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
| (Line 3 less Line 6) $ | 182,393.90 | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $343,648.02 | |
| Total approved this Month | $38,759.81 | |
| TOTALS | $382,407.83 | |
| NET CHANGES by Change Order | $382,407.83 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capitol Trail
Wilmington, DE 19808

By: _Patricia Creedon_   Date: 07/21/04

State of: Delaware

County of: New Castle

Subscribed and sworn to before me this _____ day of _____

Notary Public: _____

My Commission expires: 05/30/05

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . $ _____

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC., 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution.

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

G702-1992

PAGE 01   CREEDON CONTROLS   3028922002   12:48   07/26/2004

FE 004187

# APPLICATION AND CERTIFICATE FOR PAYMENT

TO (OWNER): Bank One

FROM (CONTRACTOR): Creedon Controls, Inc.

CONTRACT FOR: Electrical

PROJECT: CDC II – Brandywine
General Lighting & Power

VIA (ARCHITECT):

DOCUMENT G702    (Instructions on reverseside)

APPLICATION NO:    Eleven

PERIOD TO:    8/31/2004

PROJECT NOS:

CONTRACT DATE:

PAGE 1 OF 7 PAG.

Distribution
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . .$ | 3,184,600.00 | |
| 2. Net change by Change Orders . . . . . . . . . . . . . . . .$ | 423,010.74 | |
| 3. CONTRACT SUM TO DATE (Line 1 + 2). . . . . . . .$ | 3,607,610.74 | |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . .$  Column G on G703 | 3,596,156.42 | |

5. RETAINAGE

| | | |
|---|---|---|
| a. 5.0% % of Completed Work $ | 179,807.82 | |
| (Columns D + E on G703) | | |
| b. 5.0% % of Stored Material $ | | |
| (Column F on G703) | | |
| Total Retainage (line 5a + 5b or | | |
| Total in Column I on G703) . . . . . . . . . . . .$ | 179,807.82 | |

| | | |
|---|---|---|
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . . .$ | 3,416,348.60 | |
| (Line 4 Less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | |
| (Line 6 from prior Certificate) . . . . . . . . . . . . . . .$ | 3,387,035.78 | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . .$ | 29,312.82 | |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
| (Line 3 less Line 6)               $ | 191,262.14 | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in | | |
| previous months by Owner | $384,829.68 | |
| Total approved this Month | $38,181.06 | |
| TOTALS | $423,010.74 | |
| NET CHANGES by Change Order | $423,010.74 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _Thomas Creedon_  Date: 08/24/04

State of: Delaware

County of: New Castle

Subscribed and sworn to before me this 24th day of Aug. 2004

Notary Public: _Lori M. Whitlock_

My Commission expires: 06/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . . . . . . $
(Attach explanation if amount certified differsfrom the amount applied for. Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)

ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original asures that changes will not be obscured as may occur when documents are reproduced.

B-0718

Ex. C-30

# APPLICATION AND CERTIFICATE FOR PAYMENT AIA DOCUMENT G702 (Instructions on reverse side)

TO (OWNER):   Bank One

PROJECT:   CDC-1 – Brandywine
General Lighting & Power

APPLICATION NO:   Twelve

PERIOD TO:   9/7/2004

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

FROM (CONTRACTOR):   Creadon Controls, Inc.

VIA (ARCHITECT):

PROJECT NOS:

CONTRACTOR:      Electrical

CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . .$     3,184,600.00

2. Net change by Change Orders . . . . . . . . . . . .$       442,991.79

3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . .$     3,627,591.79

4. TOTAL COMPLETED & STORED TO DATE. . . . . .$     3,627,591.79
   Column G on G703)

5. RETAINAGE
   a.  5.0%  % of Completed Work
       (Columns D + E on G703)        $     181,379.59
   b.  5.0%  % of Stored Material
       (Column F on G703)            $
   Total Retainage (line 5a + 5b or
   Total in Column I on G703) . . . . . . . . . . . . . .$       181,379.59

6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . .$     3,446,212.20
   (Line 4 less Line 5 Total)

7. LESS PREVIOUS CERTIFICATES FOR PAYMENT
   (Line 6 from prior Certificate) . . . . . . . . . . . .$     3,416,348.60

8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . . $         29,863.60

9. BALANCE TO FINISH, INCLUDING RETAINAGE
   (Line 3 less Line 6)               $       181,379.59

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in | | |
| previous months by Owner | $384,829.68 | |
| Total approved this Month | $38,181.06 | |
| TOTALS | $423,010.74 | |
| NET CHANGES by Change Order | $423,010.74 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    Creadon Controls, Inc.
               3424 Old Capital Trail
               Wilmington, DE · 19808

By: _____   Date: ___09/07/04___

State of:  Delaware

County of:  New Castle

Subscribed and sworn to before me this  7th  day of  Sept. 2004

Notary Public:  Lori Lee Whitlock

My Commission expires:  05/30/05

LORI M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . .$
(Attach explanation if amount certified differs from the amount applied for.  Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)

ARCHITECT:

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT  G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * 1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.                    G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced

B-0719

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702 (Instructions on reverse side)

PAGE 1 OF / PAGES

TO (OWNER):    Bank One

PROJECT:    CDC II - Brandywine
General Lighting & Power

APPLICATION NO:    Thirteen

PERIOD TO:    10/31/2004

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

FROM (CONTRACTOR):    Creedon Controls, Inc.

VIA (ARCHITECT):

PROJECT NOS:

CONTRACT FOR:    Electrical

CONTRACT DATE:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . . $ | | 3,184,600.00 |
| 2. Net change by Change Orders . . . . . . . . . . . . $ | | 442,991.79 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . $ | | 3,627,591.79 |
| 4. TOTAL COMPLETED & STORED TO DATE. . . . . $ (Column G on G703) | | 3,627,591.79 |

5. RETAINAGE

| | | |
|---|---|---|
| a. _____ % of Completed Work | $ | |
| (Columns D + E on G703) | | |
| b. _____ % of Stored Material | $ | |
| (Column F on G703) | | |
| Total Retainage (line 5a + 5b or Total in Column I on G703) . . . . . . . . . | | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . . $ (Line 4 less Line 5 Total) | | 3,627,591.79 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior Certificate) . . . . . . . . . . $ | | 3,446,212.20 |
| 8. CURRENT PAYMENT DUE. . . . . . . . . . . $ | | 181,379.59 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE (Line 3 less Line 6) $ | | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $384,829.68 | |
| Total approved this Month | $38,181.06 | |
| TOTALS | $423,010.74 | |
| NET CHANGES by Change Order | $423,010.74 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, infor-
mation and belief the Work covered by this Application for Payment has been completed
in accordance with the Contract Documents, that all amounts have been paid by the
Contractor for Work for which previous Certificates for Payment were issued and pay-
ments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:    Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _____    Date:    10/20/04

State of:    Delaware

County of:    New Castle

Subscribed and sworn to before me this    20th    day of    Oct    2004

Notary Public:    Robin Whitlock

My Commission expires:    05/30/05

ROBIN M. WHITLOCK
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 30, 2005

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data
comprising this application, the Architect certifies to the Owner that to the best of the
Architect's knowledge, information and belief the Work has progressed as indicated, the
quality of the Work is in accordance with the Contract Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . $ _____
(Attach explanation if amount certified differs from the amount applied for. Initial
all figures on this application and on the Continuation Sheet that are changed to
conform to the amount certified.)

ARCHITECT:

By: _____    Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Con-
tractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 * APPLICATION AND CERTIFICATION FOR PAYMENT * 1992 EDITION * AIA * ©1992 * THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK
AVENUE, N.W., WASHINGTON DC, 20006-5292 * WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0720    000797

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 7 PAGES

TO (OWNER): Bank One

PROJECT: CDC II - Brandywine
General Lighting & Power

FROM (CONTRACTOR): Creedon Controls, Inc.

VIA (ARCHITECT):

CONTRACT FOR: Electrical

APPLICATION NO: Fourteen
PERIOD TO: 3/31/2005
PROJECT NOS:
CONTRACT DATE:

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

006202

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

1. ORIGINAL CONTRACT SUM . . . . . . . . . . . 3,184,600.00
2. Net change by Change Orders . . . . . . . . 2,748,825.44
3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . 5,933,425.44
4. TOTAL COMPLETED & STORED TO DATE . . . . $ 5,933,425.44
   (Column G on G703)
5. RETAINAGE
   a. ___ % of Completed Work   $
      (Columns D + E on G703)
   b. ___ % of Stored Material   $
      (Column F on G703)
   Total Retainage (line 5a + 5b or
   Total in Column 1 on G703) . . . . . . . . . .
6. TOTAL EARNED LESS RETAINAGE . . . . . . . . $ 5,933,425.44
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT . . 3,627,591.79
   (Line 6 from prior Certificate) . . . . . . .
8. CURRENT PAYMENT DUE . . . . . . . . . . $ 2,305,833.65
9. BALANCE TO FINISH, INCLUDING RETAINAGE     $
   (Line 3 less Line 6)

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE 19808

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

By: _____ Date: 03/31/05

State of: Delaware
County of: New Castle
Subscribed and sworn to before me this _____ day of _____
Notary Public:
My Commission expires: 05/30/05

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . $
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)
ARCHITECT:
By: _____ Date:
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $442,991.79 | |
| Total approved this Month | $2,305,830.65 | |
| TOTALS | $2,748,822.44 | |
| NET CHANGES by Change Order | $2,748,822.44 | |

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATION FOR PAYMENT • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.    G702-1992

CAUTION : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0721

# APPLICATION AND CERTIFICATE FOR PAYMENT

AIA DOCUMENT G702    (Instructions on reverse side)    PAGE 1 OF 7 PAGES

TO (OWNER): **Bank One**

PROJECT: **CDC II - Brandywine**
**General Power & Lighting**

APPLICATION NO: **Fifteen**

PERIOD TO: **3/31/2006**

PROJECT NOS:

FROM (CONTRACTOR): **Creedon Controls, Inc.**

VIA (ARCHITECT):

CONTRACT DATE:

CONTRACT FOR: **Electrical**

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet, AIA Document G703, is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM . . . . . . . . . . . . . . | | 3,184,600.00 |
| 2. Net change by Change Orders . . . . . . . . . . . . | | 3,632,153.77 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) . . . . . . | | 6,816,753.77 |
| 4. TOTAL COMPLETED & STORED TO DATE . . . . $ | | 6,816,753.77 |
|     Column G on G703) | | |
| 5. RETAINAGE | | |
|   a. ____ % of Completed Work $ | | |
|     (Columns D + E on G703) | | |
|   b. ____ % of Stored Material $ | | |
|     (Column F on G703) | | |
|   Total Retainage (line 5a + 5b or | | |
|   Total in Column I on G703) . . . . . . . . . . . . | | |
| 6. TOTAL EARNED LESS RETAINAGE . . . . . . . . . . | | 6,816,753.77 |
|   (Line 4 less Line 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | | 6,402,106.02 |
|   (Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE . . . . . . . . . . . . . . $ | | 414,647.75 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | | |
|   (Line 3 less Line 6) $ | | |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $3,217,506.02 | |
| Total approved this Month | $471,032.71 | -$56,384.96 |
| TOTALS | $3,688,538.73 | -$56,384.96 |
| NET CHANGES by Change Order | $3,632,153.77 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR: Creedon Controls, Inc.
3424 Old Capital Trail
Wilmington, DE  19808

By: _Adriana Creedon_  Date: 5/5/2006

State of: Delaware
County of: New Castle

Subscribed and sworn to before me this 5th
day of _____

Notary Public: _Lori M. Whitlock_

My Commission expires: 5/30/2007

**LORI M. WHITLOCK**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
**My Commission Expires May 30, 2007**

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . . $
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this application and on the Continuation Sheet that are changed to conform to the amount certified.)

ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATION FOR PAYMENT • 1992 EDITION • AIA • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON DC, 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

G702-1992

CAUTION  : You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

B-0722

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Creedon Controls, Inc., a Delaware corporation, | ) |
| | ) C. A. No. 05CV300 (JJF) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Banc One Building Corporation, an Illinois | ) |
| corporation; and Forest Electric Corporation, a | ) |
| New York corporation, | ) |
| | ) |
|      Defendants. | ) |

## AFFIDAVIT OF PATRICIA D. CREEDON

STATE OF DELAWARE        :
                               : SS
NEW CASTLE COUNTY     :

BEING FIRST DULY SWORN according to law, **PATRICIA D. CREEDON** did depose and state as follows:

1.     That she is President of Creedon Controls, Inc. ("CCI") and submits this Affidavit in opposition to the Motion for Partial Summary Judgment filed on behalf of Forest Electric Corporation ("Forest"), and the Motion for Summary Judgment filed on behalf of Banc One Building Corporation ("BOBC").

2.     When CCI submitted its bid for the General Power & Lighting contract at the Banc One Core Data Center II ("Data Center"), CCI, in accordance with standard industry practices made the following assumptions with respect to such project:

     (a)     That the Data Center would be constructed substantially as designed and described in the initial Bid Package and subsequent contract to be developed;

     (b)     That Forest and/or BOBC would manage the Data Center project in the

manner and sequence contemplated by the Bid Documents, and that the Data Center would be completed in the specified time;

(c)     That Forest would manage and coordinate the work of all electrical subcontractors;

(d)     That Forest would provide CCI with accurate and updated schedules as work on the Data Center progressed:

(e)     That the Data Center project would progress on time, and in an orderly, coordinated, and expeditious manner, without undue delay, disruption and/or interference;

(f)     That the Data Center would be completed in accordance with the time provided in the contract;

(g)     That the Data Center would be constructed in accordance with the drawings and specifications contained in the initial Bid Package;

(h)     That CCI would not be required to perform work specifically excluded from the contract;

(i)     That CCI would not be required to perform work not described in the initial Bid Package without a Change Order;

(j)     That Forest and/or BOBC would timely and completely perform all work prerequisite to CCI's performance;

(k)     That Forest and/or BOBC would not hinder CCI's performance.

3.     Attached hereto as Exhibit "A" is a Critical Events Summary through April 8, 2004; and attached hereto as Exhibit "B" is a Critical Events Summary from April 8, 2004 through the end of the Data Center project. These Critical Events Summaries detail the significant problems created by BOBC and Forest, and show the above-referenced assumptions

B-0724

of Your Affiant were not complied with by BOBC or Forest. The Data Center project did not progress on time, or in an orderly or coordinated or expeditious manner, or without undue delay, disruption or interference.  Forest and/or BOBC failed to coordinate the of the contractors at the Bank Center.  Forest and/or BOBC failed to provide accurate and updated schedules as work on the Bank Center progressed. The Data Center project was not concluded in accordance with the timing provided in the documents. The Data Center project was not completed in the time initially specified at bid time. The Data Center was not constructed in accordance with the drawings and specifications. CCI was required to perform work specifically excluded by the contract. CCI was required to perform work outside of the initial scope of work, without being given a Change Order. Forest and/or BOBC did not timely and competently perform all work prerequisite to CCI's performance. Forest and/or BOBC did hinder CCI's performance, as set forth more fully in the attached Exhibits "A" and "B."

4.    That CCI began its work at the Data Center without a contract, as an accommodation to BOBC, since BOBC indicated there was an extremely tight time schedule for this "fast track" project.

5.    That the October 2, 2003 letter from Mr. Paul Angerame to Creedon Controls, Inc. had an attached sample form of contract, which was captioned as a "sample," and which Your Affiant understood to be only a sample form. Since I believed it to be a sample only, I did not return it with the October 2, 2003 letter when I signed it and returned it to Mr. Angerame. Your Affiant was thereafter waiting for the final contract, that Forest's letter of October 2, 2003 stated would be forthcoming and that I expected would be delivered shortly thereafter.  I did receive a May 4, 2004 letter from Forest enclosing a Single Construction Project Service Agreement that I believed to be the complete contract that CCI was expected to sign.

6.    That throughout the Data Center project, Your Affiant considered Forest was acting as the electrical trade manager, i.e., Forest was not acting as a general contractor, contracting for itself with other electrical subcontractors; rather, that Forest was acting as representative for and agent for BOBC, in entering into a contract for and on behalf of BOBC.

7.    By my letter of June 14, 2004 to Paul Angerame, sent to him via e-mail on that date, I forwarded numerous changes to the Single Construction Project Service Agreement. Subsequent thereto, I spoke to Mr. Angerame regarding my requested changes. Mr. Angerame did comment regarding the magnitude of the number of changes and he did comment that Forest signed a contract similar to that form. I asked Mr. Angerame to forward my suggested and proposed contract changes to his legal department for their comments. I do not think Mr. Angerame was pleased with the number of changes, but at no time did he ever refuse all or any of the changes or indicate to me that there would be no changes in the contract. As I understood it, I would hear back from Mr. Angerame; and, on that basis, I proceeded with the work. I never received any response from Mr. Angerame regarding the proposed contract changes.

*Patricia D. Creedon*
**Patricia D. Creedon**

SWORN TO AND SUBSCRIBED before me this ___4___ day of ___August___ 2006.

Notarial Officer/Notary Public

RKB/msj
06894-0001

VALERIA E. WALLACE
Notary Public - State of Delaware
My Comm. Expires April 2, 2007

B-0726

# EXHIBIT "A"

B-0727

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2387**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing | Sequence | Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | 2 | 1 | As soon as deck was poured (First half of deck was poured mid-October, second half was poured late-October), Creedon was unable to start lighting support in this area until 11/25/04.) a. All chilled water pipe (approx 16" diameter), supply and return, targeted for the trench was stored on the deck. b. CRAC (computer room a/c) stands, RPP (receptacle power panels) stands, sprinkler pipe and many wire reels of others were also moved onto the deck. CRAC units and 138 RPP stands were moved on to deck three weeks after it was poured. This blocked lift access. (46 CRAC stands, 138 RPP stands & 8 PDU (power distribution unit-feeds RPP)). CRAC stands could not be moved by hand; forklift was used for the move. This material covered almost all of 160' x 255' (295,800 sq. ft.) deck. It blocked-in our lifts and delayed us about 2 weeks until supply and return piping was installed in pipe trench. CRAC stands could not be moved by hand; they had to be moved by fork lift. There was no where to move material so we could work. | | | D&N | 40.0 | 2,450 | 80.0 | 4,848 | 340.0 | 17,969 | 80.0 | 3,338 | 2,400 | 30,776 |
| | | 2 | Temporary heater and temporary duct was installed at lighting start height. This stopped us from finishing strut runs, wire pulling, boxes and covers on all lighting runs. We even installed 90% of lights with duct still up. Had to return to finish each run (18 runs) and add 2 fixtures to each run. CRAC units and RPP'S were set on their stands by the time temporary heater and duct was removed. Resulting in additional time and delays. Temporary heat was not removed until just before raised floor was installed approximately March 1, 2004 in Area A. Strut/wire completed as far as possible by 1/15/04; lights completed as far as possible by 2/8/04; heater/duct removed 3/1/04; lights finished 3/10/04. | | | D&N | 1.8 | 105 | 8.0 | 502 | 40.0 | 2,282 | 4.0 | 167 | | 3,056 |
| | | 3 | About one-third of the exterior walls were roughed-in and then this work stopped and continued in Area B. Work in Drawing A did not return for several weeks. This stopped the electrical rough-in. Exterior walls stopped mid-November 2003 and were not finished until January 8, 2004. | | | D | 18.0 | 1,094 | 90.0 | 5,229 | 180.0 | 9,509 | 90.0 | 3,756 | | 19,598 |
| | | 4 | Roof drain pipe coming down some columns were roughed in wrong. Drywall had to be built-out around columns to cover columns, and we had to wait to rough-in. Our conduit had to go up to roof level so finishing these runs was done at 27 to 29 feet. This work stopped mid-November 2003, and was finished with exterior walls January 8, 2004. | | | D | 0.8 | 49 | 4.0 | 232 | 8.0 | 423 | 4.0 | 167 | | 870 |
| | | 5 | Temporary roof drains stopped completion of exterior wall along column line D until late in the schedule. Had to return again to finish. This also slowed work pulling because piping wasn't finished. Same dates as Item #4 above | | | D | 0.8 | 49 | 4.0 | 232 | 8.0 | 423 | 4.0 | 167 | | 870 |
| B | 3 | 6 | As deck was poured UPS switchgear was delivered and stored in this area blocking our access. Deck poured starting November 29, 2003. Creedon started in Area B04on December 1, 2003. Most switchgear was not set until February 20, 2004/04. | | | D | 9.6 | 683 | 48.0 | 2,769 | 192.0 | 10,141 | 66.0 | 4,006 | | 17,620 |
| | | 7 | As walls of the slceten rooms were roughed i~ --~ three were built so that switch gear could be moved into place. We couldn't finis     room rough-in. Walls started December 1, 2003. Close-in rooms not complete/us until March 15, 2004 | | | D | 32.2 | 1,954 | 180.8 | 9,342 | 643.2 | 33,974 | 321.6 | 13,420 | | |

B-0728

(PCO) 6056

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing | Sequence | Item No. | Reference / Description | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 8 | Doors in Rooms 113, 114, 213 and 214 were changed, which changed rough-in opening after the exit lights were roughed-in. Had to relocate exit lights. No door bucks available because of change; could not finish switch rough in. Changed rough-in. | | D | 8.0 | 485 | 40.0 | 2,324 | 40.0 | 2,113 | 40.0 | 1,869 | | 6,582 |
| | | 9 | December 17, 2005. Rooms 113 and 214: Rod was dropped for strut support, but we had to remove newly installed rod when temporary battery were installed. They went in at light level so that they were above the gear. This stopped lighting for over six weeks. Heat installed January 5, 2004; it was not removed until March 15, 2004. | | D | 24.0 | 1,459 | 120.0 | 6,672 | 240.0 | 12,677 | 120.0 | 6,008 | | 26,114 |
| | | 10 | Rooms 104, 203 and 204: Rod was dropped and some strut was hung. Had to remove strut so mechanical contractor's gantry (gantry higher than unistrut level) could come into room to set gear that came late. (1/5/04 to 3/50/04) | | D | 18.0 | 1,094 | 90.0 | 5,229 | 180.0 | 9,508 | 90.0 | 3,758 | 500 | 20,086 |
| | | 11 | Room 103: two walls near administrative area were left open for a month so that equipment and batteries could be unloaded onto Administrative Area pad. Loading dock was blocked with dumpsters and block for generator room. Could not finish lighting strut or rough-in walls. | | D | 3.8 | 231 | 19.0 | 1,104 | 38.0 | 2,007 | 38.0 | 1,586 | | 4,928 |
| | | 12 | 12/16/03: All contractors had to remove storage was outside. All material had to be moved inside the building and place contents into Area B rooms. Rooms 113, 114, 210: Wire beds of others; Room 207: Conit & Tangent; Room 203: Preferred and Room 213: Creedon. | | D&N | 9.2 | 603 | 48.0 | 2,882 | | | 50.0 | 2,067 | 111 | 5,882 |
| | | 13 | Rooms 103,104,203,204,113,114,214,213: By the time we were able to get back in (rooms blocked to set gear and then blocked for feeder pulls), our access was severely blocked. It took much longer to install strut & fixtures. (Jan 04 through April 04) | | D | 102.4 | 6,221 | 512.0 | 29,747 | 1536.0 | 81,132 | 512.0 | 21,366 | 1,800 | 140,265 |
| | | 14 | Corridor 212 and 209: Blocked with hundreds of battery racks and batteries. Door to our material room blocked for a day. | | D | 4.8 | 292 | 24.0 | 1,394 | 20.0 | 1,056 | 4.0 | 167 | | 2,909 |
| | | 15 | Feeders for inverters UPS, ELA, ELB and ELC (panels) came up into wall; it did not reach the pad as designed. We had to have extension boxes made to get feeders into units. Feeders under this circumstance were much harder to pull. (3/18/04) | | D | 1.5 | 91 | 7.5 | 438 | 60.0 | 3,169 | | | | 3,696 |
| | | 16 | Had to continuously move other trades' material in order to do our work in this area. (Day shift: 12/16/03 through 5/15/04) | | D&N | 14.4 | 4,724 | 72.0 | 4,519 | 360.0 | 20,539 | 72.0 | 3,005 | | 32,762 |
| | | 17 | Tishman would not permit us to lock our material room. We had so much material stored, we had to keep material man in Room 213 to protect it. (January 04 through June 2004) | | D | | | | | 1302.0 | 68,772 | | | | 68,772 |
| | | 18 | All trades would remove controllers from lifts at end of the day shift, so we could not move them to do our work on second shift. Trades also chained lifts at the end of first shift. (December 03 through April 04) | | N | 14.4 | 962 | | | 72.0 | 4,183 | | | | 5,145 |
| | | 19 | Substations 1A, 2A, 3A in Rooms 113,114 and 214: We were not given a schedule for floor painting until two days prior to start, and we still could not get into rooms because feeders were still being pulled and had not been terminated. We had to stop other lighting work and expedite lighting in these rooms to complete in 1 week. (2/13/04) | | D&N | 7.0 | 419 | 35.0 | 2,060 | 175.0 | 9,465 | | | | 11,951 |
| | | 20 | Eight battery rooms were loaded with material. We could not get in to do our work. Material was moved, floor painted, protection "...lled and battery racks built. When we were finally able to get in, we had to work ...ld racks with small lifts only, which ...ch lower and required more lifts than reasonable anticipated. (2/20/04) | | D&N | 31.2 | 1,939 | 158.0 | 9,273 | 780.0 | 42,150 | 120.0 | 5,008 | 650 | 56,010 |

006 37

B-0729

March 31, 2005

Creedon Controls, Inc.
Bank One Core Data Center #2
Critical Event Summary Change Orders
CCI Project #2337
Events from Beginning of CCI's Work through 4/7/04

| Drawing | Sequence | Item No. | Reference | Delay Type | Shift | General Foreman Hours | Foreman Total | Foreman Hours | Foreman Total $ | Journeyman Hours | Journeyman Total $ | Apprentice Hours | Apprentice Total $ | Direct Expenses | FCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 21 | Doors to rooms 113, 114, 214, 215 were closed over along L&M corridor. We could not get into our material room. We had to go around to corridor 212, which was difficult access and increased move distance.(2/1/04 to 31/04) | | D | 2.4 | 146 | 12.0 | 697 | 120.0 | 6,338 | 21.0 | 876 | | 8,059 |
| | | 25 | Floor protection was installed and removed with little or no notice. (3/15/04) | | D | 8.0 | 468 | 40.0 | 2,324 | 320.0 | 16,962 | 160.0 | 6,877 | | 26,389 |
| | | 26 | Shortly after the deck was poured CRAC unit and RPP stands were moved on to it. This blocked lift access. (46 CRAC stands, 138 RPP stands & 8 PDU). CRAC stands could not be moved by hand; forklift was used for the move. (11/17/03) Duct, sprinkler pipe also blocked access. | | D&N | 29.5 | 1,628 | 147.6 | 8,743 | 738.0 | 39,741 | 118.8 | 4,958 | | 55,270 |
| C | 1 | 27 | Delay in getting strut layout drawing approved slowed us early in the project. In the interest of facilitating the schedule we started without approval. (11/13/03) | | D&N | 9.6 | 593 | 48.0 | 2,789 | 240.0 | 12,877 | 240.0 | 10,016 | 2,862 | 28,726 |
| | | 28 | Temporary heater and temporary duct was installed at lighting strut height. This stopped us from finishing strut runs, wire pulling, boxes and covers on all lighting runs. We installed 90% of lights with duct still up. We had to return to finish each run (18 runs) and add 2 fixtures to each run. This resulted in additional time and delays. CRAC units and RPP'S were set on their stands by the time temporary heater and duct was removed. This resulted in additional time and delay. Temporary heater was not removed until just before raised floor was installed approximately February 15, 2004 in Area C. | | N | 1.8 | 107 | 8.0 | 511 | 18.0 | 930 | | | | 1,848 |
| | | 29 | Temporary roof drain piping (approximately 10" diameter) stopped completion of electrical wall rough-in along Column Line D. We had to return to finish our branch rough-in and lighting support strut. This delayed us approximately six weeks. (4/8/04) | | D&N | 1.1 | 71.0 | 5.6 | 344.0 | 28.0 | 1653.4 | | | | 1,970 |
| | | 30 | Studs at columns were not braced when they were roughed-in. This made conduit rough-in very hard as studs were 27' high and moved. They came back and installed bracing after our pipe was installed. | | D&N | 2.2 | 140 | 11.2 | 689 | 56.0 | 3,042 | | | | 3,852 |
| | | 31 | Roof drain pipe coming down some columns were coupled in wrong. Carpenters had to Columns were build-out/roughed-in to cover piping in columns, and we had to wait to do our electrical rough-in. Our conduit had to go up to roof level so finishing these runs was done at 27 to 29 feet. (1/15/04) | | D | 4.0 | 243 | 20.0 | 1,162 | 40.0 | 2,113 | | | | 3,518 |
| | | 32 | Ramp into this area was built several weeks late. This locked lifts into area. (12/23/03) | | D | 0.7 | 41 | 3.4 | 207 | 34.0 | 1,975 | | | | 3,023 |
| | | 33 | Had to move fixtures out of this area for a BankOne walk-through. Fixtures were moved to L&M hallway, and subsequently moved again to the chiller room to clear the hallways. (3/29/04) | | D | 1.0 | 58 | 4.8 | 270 | 0.0 | 63 | 48.0 | 2,003 | 800 | 2,404 |
| D | 8 | 34 | Shortly after the deck was poured and walls went up the following rooms were filled with material/equipment and gang boxes to the point that it was impossible to get a lift in to work: | | D | 1.8 | 102 | 8.2 | 486 | 41.0 | 2,208 | | | | 2,795 |
| | | | a. Storage Room 118: Creedon still can not get in. (1/04 to 3/04) | | N | 0.3 | 21 | 1.6 | 102 | 8.0 | 465 | | | | 588 |
| | | | b. Pre-prod Room 119: Creedon still can not get in. (1/4/04 to 4/04) | | N | 0.3 | 19 | 1.6 | 93 | 8.0 | 423 | | | | 535 |
| | | | c. Main Elect. Room 130: Main switchgear and wire pulling blocked access. (1/04 to 3/04) | | N | 0.3 | 21 | 1.6 | 102 | 8.0 | 465 | | | | 588 |
| | | | d. Master control room 128: Switchgear and wire pulling blocked access. (1/04 to 2/04) | | N | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | | | | 465 |
| | | | e. Generator rooms 122 and 124: Generator/switch layers. | | N | 0.3 | 21 | 1.6 | 102 | 8.0 | 465 | | | | .8 |

006058

B-0730

March 31, 2005

**Credon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing Sequence | Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Total $ | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses Total $ | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | f. | Loading dock/receiving-room 139 and 140: This represents 90% of the space in this area. (2/04 to 4/04) | | | D | 0.6 | 39 | 3.2 | 195 | 16.0 | 887 | 2.0 | | | 1,122 |
| | 35 | When area was finally available, area and other major equipment deliveries, access was made more difficult by equipment and housekeeping pads. Only small lifts and extension ladders must be used contrary to what we reasonably expected. Generator rooms 122 and 124 (started 3/31/04): Had deck poured last. The generator sets were set; the mufflers were installed in the ceiling, and brick layers built scaffolding and moved in block. Note: After installation of lights in Generator Room 122, Credon had to remove and reinstall the lights, so that the damaged generator set could be pulled and sent out for repair (This work was PCO #56 on or about 5/13/04).  Block was stored on loading dock for about a month which not only kept us from working there, but blocked almost all deliveries. Fixtures (thousands) had to be unloaded through the Administrative Area (Blocked by mason from on or about 2/15/04 through 4/3.  Loading dock was blocked from on or about 2/15/04 through 4/30/04; it was covered with reds of feeder wire and door frames, waiting for access; it was was blocked by dumpster at one door and block at the other. Credon started lighting on the Loading Dock 5/17/04. | PCO #35 | | D&N | 12.2 | 734 | 80.8 | 3,672 | 304.0 | 17,662 | 30.0 | 1,252 | | 23,321 |
| E | 36 | Rooms 128 and 130: No advance notice was provided that floors would be painted. We found out when we were asked to move the temporary service for painter. We had to stop where we were working and move to these rooms to install lighting. (See Item #35 for | | | D | 6.7 | 408 | 33.6 | 1,952 | 168.0 | 8,874 | 42.0 | 1,753 | | 12,987 |
| | 37 | Shortly after deck was poured, and wall went up the following rooms were filled with material, equipment and gang boxes to the point that it was impossible to get a lift in to work.  a. Chiller Room 132: F& G Mechanical-started 4/21/04  b. Electrical Sub A- Room 131: Furnaces-gear, feeders, etc.-started 4/2/04  c. AHU A, Room 120: ID Griffith-started 4/6/04  d. Duct Supply Area 134 – Fitters-started 4/5/04  Dates in a. through d. are for lighting rough-in; Branch power rough-in was coordinated with drywall installation several weeks earlier as lifts were not needed. Branch power wire was pulled about the same time lights were installed.  This is 85% of floor space in this area. We had to wait for lighting rough-in until the last week of March before this was accessible. These dates are later than original project completion dates. | | | D&N | 2.0 | 128 | 10.0 | 612 | 60.0 | 2,763 | 30.8 | 1,285 | | 4,800 |
| 7 | 38 | Tried to have night shift install lighting in storage area for eight consecutive nights, but fitters would not let us in so we could not get in. Finally red locks and had to move their material each night to work. Credon was told by Forest that the area was Credon's for installation, but Forest would not move fitters from the area. Credon did Rooms 136 and 139 starting 4/15/04; returned 5/12/04    )rom 137 and 138 on after P. Angerman intervened. (Start 3/30/04 appx. | | | N | 2.8 | 171 | 12.8 | 818 | 64.0 | 3,718 | | | | 4,708 |

B-0731

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Corp Data Center #2**
**Critical Event Summary Change Orders**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing | Sequence | Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 39 | Electrical Sub A, Room 131: Scheduled to get floor painted the first week of May. Schedule changed without notice or input from others working in the area and floor was painted a month early. We had to stop working in Greenier Room and remobilize to this room and complete lighting in four days. Started installation 4/2/04. | In E 1) | | D&N | 0.6 | 39 | 3.2 | 188 | 18.0 | 845 | | | | 1,070 |
| | | 40 | ATS switches shipped to Forest in error, not Creedon. They ended up being delivered with Furnace's ATS, and we could not find the switches for several weeks. This equipment was shipped to site the end of January 2004. Creedon started installation 2/16/04 | | | D | 2.4 | 146 | 12.0 | 697 | | | | | | 843 |
| | | 41 | Feeder conduit in deck to ATS-FDSP (in Room 137 Shop) was damaged and not usable. Still waiting for new overhead feeder to be completed. Can not order wire because we do not know how long run will be. Pull boxes are now required to conform to Code requirement for number of bends allowed in a run. Delayed 3 weeks. Delay was on or about 2/11/04 through 3/15/04 | | | D | 4.8 | 292 | 24.0 | 1,394 | 32.0 | 1,680 | 8.0 | 334 | | 3,710 |
| | | 42 | Temporary heater in corridor 146 by steps to the roof. Blocked access to fuel room 149 and part of hallway. Was not removed until about 3/30/04. Heater was installed the beginning of January. Creedon started lighting in this area 4/5/04. After being held up for three months, Creedon had to move from other areas to do these lights quickly so the painter could paint the floor. (4/7/04) | | | N | 0.4 | 27 | 2.0 | 128 | 8.0 | 465 | | | | 619 |
| | | 43 | Did not get schedule of floor painting until after they started painting, and then schedule was not followed. We had to move several times to new locations in order to facilitate the schedule. Rooms 135, 136, 137, 131 painted early; started on or about 4/2/04. | | | D&N | 0.6 | 98 | 3.2 | 432.3 | 16.0 | 1064.9 | 12.0 | 501 | | 2,064 |
| | | 44 | AHU A room 120: Finally opened up last week. We are doing lighting now and duct work is still not completely finished; started on or about 4/6/04 | | | N | 0.2 | 13 | 1.0 | 64 | 2.0 | 118 | | | | 193 |
| | | 45 | Chiller A, room 132: We had to go back after rough-in was complete and raise two exit lights because door frames changed. Started on or about 4/21/04. Fixtures were damaged by other trades as soon as we installed them. | | | D | 0.6 | 39 | 3.2 | 188 | 18.0 | 845 | | | | 1,070 |
| | | 46 | Chiller supply/return piping in trench going From Chiller Room 132 to Data Center A in trench crossing corridor 116 was not plated. Once walls were up most access was blocked. Lift couldn't get by. It took about two month before iron workers set up diamond plating and installed support steel. This was a major access point and caused a very significant delay. Walls went up the end of December 2003, and diamond plate did not get installed until the beginning of March 2004. For several weeks there were no handrails. | | | D&N | 13.8 | 862 | 68.8 | 3,748 | 344.2 | 18,728 | | | | 23,339 |
| | | 47 | Walls were roughed in but large opening left so that lifts could get around trench, but housekeeping pads where poured. Lifts still could not get by or were severely limited. We could not finish the electrical rough-in because walls were left open. Conduit got damaged by lifts trying to squeeze by. This delay ran from the end of December through the end of February 2004. | | | D | 10.1 | 612 | 50.4 | 2,928 | 252.0 | 13,311 | | | | 15,651 |
| | 6 | 48 | Chiller Room 234 No access: a. Set chiller pump motors right after pad were stripped (forms). b. Also set MCC's. c. Fitters started chiller supply and return piping in ceiling. | | | D&N | 6.5 | 351 | 32.4 | 1,929 | 162.0 | 8,768 | 68.0 | 2,838 | | 13,885 |

B-0732

F

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**Critical Event Summary-Change Orders**
**CCI Project #2357**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing | Sequence | Item No. | Reference | Delay Type | Shift | General Foreman Hours | Foreman Total | Foreman Hours | Total $ | Journeyman Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 49 | Access just became available on April 9, 2004, night shift, Creedon finished 4/20/04. Creedon was delayed from 1/9/04 through 4/9/04. Floor poured early in January. Creedon tried dropping rods but fitters kept damaging them hoisting their gear into the ceiling, so had to stop. Creedon had to clear fitter piping, so we could not install strut until they were finished. | | D | 4.8 | 292 | 24.0 | 1,394 | 120.0 | 6,538 | 120.0 | 5,008 | | 13,032 |
| | | 50 | About 120 feet of exterior wall along Column Line R had drywall installed prior to electrical rough-in inspection. Some drywall was taken down but not all of it. All electrical trades had to rough-in around partial drywall. This was extremely time-consuming. On 1/23/04 carpenter was ordered by Tishman to hang drywall for no apparent reason, even though Tishman knew that the electrical inspection had not occured yet. | | D | 13.6 | 626 | 68.0 | 3,851 | 136.0 | 7,164 | 68.0 | 2,838 | | 14,798 |
| | | 51 | AHU Room 221: Drywall was installed without inspection, as above. Walls were closed with drywall prior to completion of electrical work in walls and even though electrical inspection was not completed. Occured 1/23/04 as in item #53 immediately above | | D | 9.6 | 583 | 48.0 | 2,789 | 240.0 | 12,877 | | | | 16,049 |
| | | 52 | Corridor 116 and 216 where chiller supply and return piping passes from chiller rooms to data centers: The trench (4'wide x 3'deep) crosses the hallway. Early in job, walls were left out so lifts could pass. When the walls were closed, the trench was not covered with plate, which stranded lifts on both sides of the trench. Stopped most movement through the hallway except people and small carts. It took over two months before iron workers laid diamond plating and added support to carry weight of lifts. This dramatically delayed production. The delay extended from mid-December 2003 through the first week of March 29, 2004. | | D | 10.8 | 656 | 54.0 | 3,137 | 180.0 | 9,508 | | | | 13,301 |
| | | 53 | AHU 13, room 221 No booster: Air handler pads poured early which stopped lift traffic. Could not get into room because of setting units and installing large duct runs. This delayed Creedon's work from December 2003 through March 29, 2004. | | D | 2.9 | 175 | 14.4 | 837 | 72.0 | 3,803 | | | | 4,815 |
| | | 54 | Many conduits damaged by other trades while rough-in was on going because of limited access for lifts. This delayed Creedon's work from December 2003 through March 29, 2004.<br><br>1.) We color coded all conduit rough-in: white = normal power and lighting, orange = emergency power and lighting, green = teledata, blue = receptacles. About this time conduits were painted black. We had loose ends everywhere and unfinished conduit runs because walls weren't finished. Conduit identification was lost and finishing rough-in was much harder after ceiling painting. Ceiling painting started | | D | 11.2 | 680 | 56.0 | 3,254 | 280.0 | 14,760 | 60.0 | 2,504 | | 21,227 |
| | | 55 | Soon after the deck was poured on or about the first week of November 2003, and walls racked, plaster moved into Room 218; Creedon got access to this room May 18, 2004, considerably out-of-sequence. Could not get in to finish lighting. Three substations moved into Room 219 along with four CRAC units, then feeder pulling started (hundreds of cables), overhead conduit rack and duct work; got access to this room 1/8/04. We could not get in for over a month. | | D | 8.7 | 404 | 33.3 | 1,934 | 168.4 | 8,769 | 43.6 | 1,819 | | 12,947 |

B-0733

OC 061

March 31, 2005

**Creedon Controls, Inc.**
**Bank One Core Data Center #2**
**CCI Project #2367**
**Critical Event Summary Change Orders**
**Events from Beginning of CCI's Work through 4/7/04**

| Drawing Sequence | Item No. | Reference | Delay Type | Shift Type | General Foreman Hours | Foreman Total | Foreman Hours | Total $ | Journeymen Hours | Total $ | Apprentice Hours | Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 56 | Generator rooms 226 and 229: Problems with underground feeders delayed pouring deck in this area on or about January 15, 2004. Then generators were set, mufflers were hung from ceiling, brick layers started veneer IB and 2B with scaffolding that blocked access. Could not get into this room until on or about March 19, 2004, and then we had to work around equipment and housekeeping pads with small lifts and extension ladders not reasonably expected. | | D&N | 12.4 | 793 | 62.1 | 3,791 | 310.4 | 17231.7 | 38.0 | 1,598 | | 23,401 |
| | 57 | Cement mixer was set-up outside door in 1,2,3,4 corridor and filled hallway with block for generator room on or about 2/1/04. This stopped corridor lighting at east end of corridor 216 and all of corridor 217. We had to go back later to finish on or about March 22,2004, night shift. | | N | 8.7 | 390 | 33.6 | 1,662 | 168.0 | 9,761 | 42.0 | 1,928 | | 14,031 |
| | 58 | Had to continually move other trades material to get to our work. This was a continual problem from January through May 2004. | | D&N | 18.0 | 1,023 | 80.1 | 4,864 | 400.3 | 22,245 | 98.0 | 4,006 | | 32,168 |
| | 59 | Reels of feeder wire (hundreds) in corridors 216, 220 and room 219, stopped and slowed progress. This was a continual problem from January through May 2004. | | D | 43.7 | 2,311 | 218.7 | 11,554 | 1003.7 | 57,708 | 273.4 | 11,410 | | 83,042 |
| | 60 | Stud were roughed-in so openings did not line up. Had to punch heavy gauge metal studs to rough-in conduits, which could not be reasonably expected. This items refers to the openings left in the walls for lift access. This stopped rough-in and wire pulling. Creedon returned to find that conduit and wire pulling was much more difficult than could be anticipated from January through July 2004. | | D | 7.7 | 408 | 38.4 | 2,028 | 192.0 | 10,141 | 98.0 | 4,006 | | 16,581 |
| | 61 | Problems with generators delayed testing several days from what was scheduled. We had a gang of 10 men pulling wire in these rooms when testing should have been done but wasn't. Got stopped on March 25 and 26, 2004, so generators could be tested. Lost 2 hrs x 10 men both days, march 25 and 26, 2004. | | D | 1.6 | 85 | 8.0 | 423 | 40.0 | 2,113 | | | | 2,620 |
| | 62 | Other trades disconnecting conduit prior to closing wall. Caused problem with the wire pulls later. After rough-in inspection, conduit was disconnect for access through walls; Creedon was not notified and walls were closed. This occurred in the period between January and March 2004 and June and July 2004. | | D | 7.2 | 437 | 38.0 | 2,092 | 160.0 | 9,508 | | | | 12,037 |
| H | 63 | As soon as concrete was dry enough to walk on, it was covered with reels of feeder wire, studs, drywall, door frames, doors and HVAC ductwork and other materials from February through May 2004. Diamond plate used for walls was not recovered until Tishman wanted to install carpet. Creedon was not able to pull wire because wall boxes were covered and inaccessible. Ceiling access was also blocked by materials. | | D | 6.8 | 350 | 28.6 | 1,673 | 144.0 | 7,606 | 38.0 | 1,502 | 0 | 11,132 |
| | 64 | Wall studs were put up without providing enough room (ground stored material) to rough-in electric conduit. Spent hours each day moving material of other trades. This problem continued from the end of February through April 2004. | | D | 5.3 | 321 | 28.4 | 1,534 | 132.0 | 6,972 | | | | 8,827 |
| | 65 | Originally had scissor lifts in the area for ceiling rough-in, but had to rotate lifts and bring in JLG lifts to work over stored material. This not only slowed the Administration Area, but area where we planned to use the JLG's. This problem continued from on or about the second week of February through March 2004. | | D | 3.8 | 233 | 18.2 | 1,116 | 96.0 | 5,071 | | | | 6,420 |

B-0734

00~ )62

March 31, 2005

Creston Controls, Inc.
Bank One Core Data Center #2
Critical Event Summary Change Orders
CCI Project #2357
Events from Beginning of CCI's Work through 4/7/04

| Drawing | Sequence | Item No. | Description | Reference | Delay Type | Shift | General Foreman Hours | Foreman Total | Foreman Hours | Foreman Total $ | Journeyman Hours | Journeyman Total $ | Apprentice Hours | Apprentice Total $ | Direct Expenses | PCO Total $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 66 | Overlay drawing received were incorrect. All conduits in electrical rooms were roughed in 6'-6" not 7'-0". This caused problems for us and Furness as feeder and branch conduits were wrong. February and March 2004 the piping was done under PCO #4, but this impacted wire pulls also, which were not covered by PCO #4. | | | D | 9.8 | 593 | 48.0 | 2,799 | 240.0 | 12,677 | 60.0 | 2,504 | 280 | 18,833 |
| | | 67 | Underground feeder conduits were crossed from panels UPRMA05 and UPRMA06. This caused four other panels to move, RP2A2, RP2A2A and RP2B2B. We spent 80 hours on this problem. We had to install 12" x 12" trough under panels plus (10) 2" threadless connectors at $38 each, (3) 3" at $58 each and (6) 1-1/2" at $20 each. Also length of feeders to these panels increased. We have been waiting for these feeders since on or about 2/6/04. We still do not have them finished. Cannot purchase wire. This problem continued from February 6 through April 30, 2004. | | | D | 3.2 | 194 | 16.0 | 930 | 80.0 | 4,226 | | | 1,010 | 6,380 |
| | | 68 | Moving material from storage vans to the building had a major pyramiding effect on the project. Not only was time lost moving material, but material moved in the building was constantly in the way and had to be moved over and over again. We moved skids of lights many times. This extremely major time consuming problem continued from on or about December 16, 2003 through July 31, 2004. | | | D | 7.7 | 467 | 38.4 | 2,231 | 384.0 | 20,283 | 192.0 | 8,012 | | 30,953 |
| | | 69 | On March 30, 2004, the day shift made up a pulling head at the end of the shift planning to pull it the next morning. When they returned a 2500' reel was cut from the head and stolen. Crew had to wait for more wire to be shipped to site and remake the pulling head. | | | D | 0.3 | 19 | 1.8 | 93 | 8.0 | 423 | 2.0 | 83 | | 618 |
| | | 70 | On March 7, 2004 we had 5 men pulling wire in battery rooms in area B and were told we had to vacate for 1/2 hour for testing. There was testing problems and we could not get back in for 4 hours. | | | D | 0.2 | 12 | 1.0 | 58 | 20.0 | 1,056 | | | | 1,127 |
| | | 71 | Electrical gear ordered by us as directed and arranged by others, came addressed to Furnes, not Furness or Creston. When material arrived, electrical contractors were randomly directed to unload shipments. Causing delivery mix-ups and lost time in locating and unloading equipment. Damaged material notifications were not properly filed. This problem extended from December 2003 through April 2004. | | | D | 1.6 | 97 | 8.0 | 465 | 40.0 | 2,113 | | | | 2,675 |
| | | 72 | Panels that came in damaged where unnoticed because it was unloaded by the wrong contractor. This required reordering late in the job at an extra cost and schedule impact. Panels did not arrive up to as late as April 2004. | | | D | 16.0 | 972 | | 0 | 40.0 | 2,113 | | | | 3,085 |
| | | 73 | Underground feeders were installed in vault not in housekeeping pads; some came out of deck, but when housekeeping pads were poured the conduits were not high enough, so some missed panel locations. We had to install trough in electric closets in Areas E & F in order to land conduits. Strings and measuring tapes were not installed by the designated contractor or they were installed late. We installed some strings so we could pull wires or waited until it was done by the directed contractor. This problem extended from December 2003 through April 2004. | | | D | 14.4 | 875 | 72.0 | 4,183 | 360.0 | 18,015 | | | | 24,073 |
| | | 74 | RFI's never got answered, forcing us to install without answers to facilitate the schedule. This created problems from October 2003 through August 2004. | RFI/ Submittal | | D | 0.0 | 0 | 0.0 | 0 | 0 | 0 | | 0 | 0 | 0 |

B-0735

( 3063