TAB B



Not Reported in A.2d                                                                    Page 1

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

**H**
Briefs and Other Related Documents

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
Todd ALBERT, Joseph M. Bryan, Jr., Kevin
Calderwood, Katherine D. Crothall, Scott W.
Frazier, FU Family Revocable Trust, Robert B.
Goergen, Sr., Robert G. Goergen, Jr., Todd A.
Goergen, Hasan 1995 Living Trust, Wai Yan Ho,
Willis James Hindman, Johnson Family Living
Trust, Michael R. Kidder Revocable Trust, Mark
and Ann Kington, Jeffrey A. Koser, Marlenko Inc.,
Elaine McKay Family, LP, David Mixer, MRW
Trust, James Murray, Jim K. Omura 1996 Trust,
Jennifer Owen and Michael J. Ross, Nicholas Peay,
Douglas G. Smith, Frederick G. Smith, Jane
Vei-Chun Sun, Mark Wabschall, Karen L. Walsh,
Warmenhoven 1995 Children's Trust, Yan 1996
Revocable Trust, Barbara J. Zale, and Charles A.
Ziering, Plaintiffs,
v.
ALEX. BROWN MANAGEMENT SERVICES,
INC.; Deutsche Bank Securities, Inc.; Deutsche
Bank, AG; Richard Hale; Gary Fearnow; Bruns
Grayson; E. Robert Kent, Jr.; Truman T. Semans;
DC Investment Partners, LLC; Doctor Robert
Cants, III; and Michael W. Devlin, Defendants.
Elizabeth J. BAKER, Bender 1996 Revocable
Trust, Dr. Steven J. Berlin, Estate of Robert B.
Blow, Luther C. Boliek, Stephen E. Coit, Sara
Crowder, Gerald K. and Teresa K. Fehr, FU Family
Revocable Trust, Ralph Glasgal, Robert G.
Goergen, Jr.1985 Trust, Todd A. Goergen 1985
Trust, Peter O. Hausmann, Willis James Hindman,
William F. Kaiser, Mark and Ann Kington, Timothy
K. Krauskopf, William T. McConnell, Philip R.
McKee, David Mixer, MRW Trust, James Murray,
Paul D. and Judith F. Newman, W.L. Norton,
Gregory Packer, Howard E. Rose, Ruben Family
Limited Partnership, 5 S Trust, Saladrigas Family
Ltd. Partnership, Ricardo A. Salas, Jose M.
Sanchez, Samuel Siegel, Silverman 1996

Irrevocable Trust, Douglas G. Smith, Frederick G.
Smith, Ronald B. Stakland, Strauch Kulhanjain
Family Trust, Bruce E. Toll, Alexander R. and
Marjorie L. Vaccaro, Yanover Family Ltd.
Partnership, Michael Yokell, and Justin A. Zivin,
Plaintiffs,
v.
ALEX. BROWN MANAGEMENT SERVICES;
Deutsche Bank Securities, Inc.; Deutsche Bank,
AG; Richard Hale; E. Robert Kent, Jr.; Truman T.
Semans; DC Investment Partners, LLC; Doctor
Robert Crants, III, and Michael W. Devlin,
Defendants.
**No. Civ.A. 762-N, Civ.A. 763-N.**

Submitted July 22, 2005.
Decided Aug. 26, 2005.

Jeffrey S. Goddess, Jessica Zeldin, Rosenthal,
Monhait, Gross & Goddess, P.A., Wilmington,
Delaware; Steven E. Fineman, Hector D. Geribon,
Daniel P. Chiplock, Lieff, Cabraser, Heimann &
Bernstein, LLP, New York, New York, for the
Plaintiffs.
Michael D. Goldman, Peter J. Walsh, Jr., Melony
R. Anderson, Potter Anderson & Corroon LLP,
Wilmington, Delaware; Christopher P. Hall, Kevin
Rover, John Vassos, Marilyn B. Ampolsk, Morgan
Lewis & Bockius, LLP, New York, New York, for
the Defendants Alex. Brown Management Services,
Inc., Deutsche Bank Securities, Inc. and Deutsche
Bank A.G.
Daniel Griffith, Marshall Dennehey, Warner,
Coleman & Goggin, Wilmington, Delaware, for
Defendants DC Investment Partners, LLC, Dr.
Robert Crants, III, and Michael W. Devlin.
Richard D. Allen, Thomas W. Briggs, Jr., Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware,
for Defendants Richard Hale, Gary Fearnow, Bruns
Grayson, E. Robert Kent, Jr. and Truman T.
Semans.

*MEMORANDUM OPINION*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

LAMB, Vice Chancellor.

I.

*1 In a recent opinion in these two related cases on the defendants' motion to dismiss under Court of Chancery Rule 12(b)(6), the court addressed the defendants' statute of limitations argument and concluded that any claims arising before November 11, 2000, the date upon which the parties entered into an agreement tolling the statute of limitations, were barred.[FN1] Because it was unclear which, if any, claims for relief set out in the complaints arise after that date, the court requested additional submissions from the parties.

> FN1. The facts alleged in the complaints are recited in detail in the earlier opinion. *Albert v. Alex. Brown Mgmt. Servs.,* 2005 Del. Ch. LEXIS 100, at *43-58 (Del. Ch. June 29, 2005). Reference is made to that opinion for a complete recitation of the facts and for the definition of terms used herein. However, to avoid confusion, the court refers in this opinion to Alex. Brown Management Services, Inc. as "AB Management." Unless otherwise noted, the facts recited in this opinion are taken from the well-pleaded allegations of the complaints.

In this opinion, the court now addresses the issues raised in the additional submissions as well as the remaining issues raised by the defendants' motion to dismiss. Included among the latter are: (i) whether any surviving claims are derivative, rather than direct claims as to which demand was neither made nor excused; and (ii) whether the court can exercise personal jurisdiction over several defendants (the " DCIP Defendants") who served as agents, or employees of agents, of the partnerships.

II.

In the earlier opinion, the court noted that some of the factual allegations in the complaints occurred after November 11, 2000 and that, therefore, viable claims based on these factual allegations are not time-barred.[FN2] The Plaintiffs' Response Brief [FN3] identified five other factual allegations in the complaints (all involving allegedly material misrepresentations or non-disclosures) which, they contend, support viable claims for relief. These are: (i) the Managers' failure in the December 2000 semi-annual reports (dated on or about February 28, 2001) to inform the defendants that hedging was desirable, but the Funds could not afford to do so; (ii) the allegedly misleading statement in the December 31, 2000 report to the unitholders that the Managers remained "comfortable with the broad diversification achieved by the Fund[s'] portfolio of public securities and private investments ....;" (iii) the defendants' failure to inform the unitholders of the Funds' "liquidity issues," "steps that the management could take to improve liquidity," and " alternatives to raise additional liquidity," although these themes were the focus of the Management Committee meetings of October 3, 2000, March 23, 2001, and September 6, 2001; (iv) the defendants' failure to inform the unitholders that, in June of 2001, AmSouth Bank withdrew from the credit syndicates for the Funds, thereby leaving Bank of America as the only lender for the Funds; and (v) the defendants' failure to inform the unitholders of the Funds violation of their credit arrangements with their lenders, including their eventual defaults, on June 5, 2002 (for the Fund I loan), and June 28 and September 30, 2002 (for the Fund II loan).

> FN2. The factual allegations specifically discussed in the earlier opinion are as follows: First, the Managers failed to provide financial statements and reports as they are required to under the Partnership Agreements and Delaware law. Second, the Managers wrongfully allowed certain withdrawals from the Funds, thereby causing or exacerbating a liquidity crisis. Specifically, the Fund II Complaint alleges that three withdrawals from Fund II occurred after November 11, 2000. These allegedly occurred on January 17, 2001, October 25, 2001, and December 31, 2001 (the "Fund II 2001 Withdrawals"). Additionally, the Fund I Complaint alleges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 3

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

approximately $8.0 million in withdrawals occurred in December of 2000 from Fund I (the "Fund I December 2000 Withdrawals" ). Third, the Managers failed to provide active and competent management of the Funds. *Alex. Brown,* 2005 Del. Ch. LEXIS 100, at *78-*79.

FN3. The Plaintiffs' Response Brief is titled "Plaintiffs' Brief In Response To The Court's Memorandum Opinion And Order Of June 29, 2005" and was filed on July 15, 2005.

All five of these factual allegations are found in the complaints. Furthermore, they allegedly occurred after November 11, 2000. Therefore, claims based on these allegations are timely. However, a threshold question is whether the information that the plaintiffs allege should have been disclosed, or was disclosed but was allegedly false and misleading, is material. If this information is not material as a matter of law, the allegations will not support claims that the Managers violated their disclosure duties.

**\*2** The determination of materiality is a mixed question of fact and law that generally cannot be resolved on the pleadings.[FN4] Therefore, the court cannot (and does not) make any final findings on the materiality of these alleged disclosure allegations. However, on a Rule 12(b)(6) motion, the court must determine whether, under the facts alleged in the complaints, these disclosure (or non-disclosure) allegations support a reasonable inference of materiality. If they do not, these factual allegations cannot support a claim for relief.

FN4. *O'Malley v. Boris,* 742 A.2d 845, 850 (Del.1999)

An omitted fact is material if "under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered

the 'total mix' of information made available." [FN5]

FN5. *Rosenblatt v. Getty Oil Co.,* 493 A.2d 929, 944 (Del.1983) (quoting *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)).

The first alleged non-disclosure is that the Managers' failed in the December 2000 semi-annual reports to inform the unitholders that hedging was desirable, but the Funds could not afford to do so. This allegation of non-disclosure, viewed in the context of the allegations contained in the complaints, supports a reasonable inference that this information is material. According to the complaints, the defendants marketed the Funds as being actively managed by experienced, professional managers. Viewed in this context, a unitholder would likely find it important to know that the Managers could not manage the Funds in what they believed to be the Funds' best interests, because they were facing liquidity problems and could not afford to purchase collars.

The second alleged non-disclosure is that the defendants failed to inform the unitholders of the Funds' "liquidity issues," "steps that the management could take to improve liquidity," and " alternatives to raise additional liquidity." As alleged in the complaints, the real cause of the Funds' losses was the lack of liquidity. The lack of liquidity allegedly prevented the Managers from properly hedging the Funds as they (allegedly) thought was best for the Funds. Viewed in that context, a reasonable investor would likely find it important to know such information.

The third alleged non-disclosure is that the defendants failed to inform the unitholders that, in June of 2001, AmSouth Bank withdrew from the credit syndicates for the Funds, thereby leaving Bank of America as the only lender for the Funds. Under the facts alleged, the court cannot reasonably infer that this information is material. The complaints allege that the unitholders understood from the very beginning that the Funds would have to borrow money. This is because the contributed securities were illiquid and the Funds needed cash

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                        Page 4

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

to purchase collars. Given that fact, it is unlikely that a reasonable investor would find it important to know that the Funds were borrowing from one lender as opposed to multiple lenders. In fact, such information would more likely only confuse an investor by giving him more information than is necessary to understand the Funds. Therefore, the plaintiffs cannot bring any claims based on this factual allegation.

**\*3** The fourth alleged non-disclosure is that the defendants failed to inform the unitholders of the Funds' violations of the credit arrangements with their lenders, including the eventual defaults, on June 5, 2002 (for the Fund I loan), and June 28 and September 30, 2002 (for the Fund II loan). This allegation supports a reasonable inference of materiality. As opposed to the information about a bank withdrawing from the credit syndicate, the fact that the Funds were in default on their loans directly speaks to the financial condition of the Funds. A reasonable investor would want to know this information.

Finally, the plaintiffs allege that the claim in the December 31, 2000 report that the Managers remained "comfortable with the broad diversification achieved by the Fund[s'] portfolio of public securities and private investments" was materially false and misleading. This allegation does *not* support a reasonable inference that this information is material. It is simply a statement of the Managers' opinion. Furthermore, there is no allegation in the complaints that this statement of opinion was not honestly held, i.e. false. Therefore, the plaintiffs cannot bring any claims based on this factual allegation.

The Non-Disclosure Allegations [FN6] relate to failures to disclose allegedly material information. There is not, of course, any general duty to disclose information. To bring a non-disclosure claim, a party must allege either a fiduciary duty or a contractual duty to disclose. The plaintiffs have attempted to allege both. Therefore, the court will address the Non-Disclosure Allegations in the context of the plaintiffs' claims for breach of fiduciary duty and breach of contract.

FN6. Collectively, the court refers to the three remaining factual allegations of non-disclosure as the "Non-Disclosure Allegations."

III.

The allegations set out in the two complaints are nearly identical and the complaints are both set out in eleven counts: breach of fiduciary duty (Count 1); aiding and abetting a breach of fiduciary duty (Count 2); common law fraud (Count 3); aiding and abetting common law fraud (Count 4); breach of contract against AB Management (with respect to Fund I) and breach of contract against DCIP (with respect to Fund II) (Count 5); breach of the covenant of good faith and fair dealing against AB Management (with respect to Fund I) and breach of the covenant of good faith and fair dealing against DCIP (with respect to Fund II) (Count 6); gross negligence (Count 7); unjust enrichment against all defendants (Count 8); conspiracy liability (Count 9); an accounting (Count 10); and agency liability against Deutsche Bank and DBSI (Count 11). The court first addresses each of the substantive claims (Counts 1, 3, 5-8, & 10). The court then considers the vicarious liability claims (Counts 2, 4, 9, & 11).

A. *Breach Of Fiduciary Duty (Count 1)*

1. *Failure To Provide Financial Statements*

The complaints allege that the Managers failed to provide the unitholders with the 2001 audited financial statements until 2003, and failed to provide any investor reports or audited financial statements for 2002. The plaintiffs argue that this amounted to a breach of the Managers' fiduciary duties.

**\*4** There is not, of course, a general fiduciary duty to provide financial statements. Instead, under the Partnership Agreements, the Managers had a contractual duty to provide the unitholders with such reports.[FN7] The plaintiffs have not articulated why the violation of this contractual right amounted to a breach of fiduciary duty.[FN8] Thus, this factual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.