Not Reported in A.2d    Page 15

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

provide competent and active management are clearly derivative. First, as stated above, in order to show a direct injury under *Tooley,* a unitholder " must demonstrate that the duty breached was owed to the [unitholder] and that he or she can prevail without showing an injury to the [partnership]." [FN56] The gravamen of these claims is that the Managers devoted inadequate time and effort to the management of the Funds, thereby causing their large losses. Essentially, this a claim for mismanagement, a paradigmatic derivative claim. [FN57] The Funds suffered any injury that resulted from the Managers' alleged inattention. Any injury that the unitholders suffered is derivative of the injury to the Funds.

FN56. *Tooley,* 845 A.2d at 1039.

FN57. *See, e.g., Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 353 (Del.1988) ("A claim of mismanagement ... represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature.").

Second, the Funds, not the unitholders, would receive any recovery. Again, under the second prong of *Tooley,* in order to maintain a direct claim, stockholders must show that they will benefit from the remedy.[FN58] If the court finds that the Managers violated their fiduciary duties by failing to devote adequate time and effort to managing the Funds, any recovery would go to the party harmed, namely the Funds. Thus, these claims are derivative claims.

FN58. *Tooley,* 845 A.2d at 1033.

If a party brings derivative claims without first making demand, and demand is not excused, those claims must be dismissed.[FN59] In this case, the plaintiffs have not alleged that they made demand on the Fund, nor have they alleged why demand should be excused. Accordingly, the derivative claim must be dismissed. However, in the interest of justice, the court dismisses these claims with leave to replead.[FN60]

FN59. *Haber v. Bell,* 465 A.2d 353, 357 (Del. Ch.1983).

FN60. In a letter to the court, the plaintiffs stated that AB Management sent letters to all the unitholders of the Funds (the " Redemption Letters"), stating that the Managers would allow the unitholders to redeem their units and that the Managers are pursuing the dissolution of the Partnerships. The plaintiffs argue that the Redemption Letters bolster their contention that their claims are direct, not derivative. However, the complaints do not contain the information in the Redemption Letters and the Redemption Letters are not referenced in the complaints. Therefore, these documents are not properly before the court on a Rule 12(b)(6) motion.

VI.

The DCIP Defendants argue that, with respect to the Fund I Complaint, this court lacks personal jurisdictions over them. With respect to the Fund II Complaint, they argue that this court lacks personal jurisdiction over Crants and Devlin.[FN61]

FN61. DCIP is the General Partner of Fund II. As such, there is no dispute that the court has personal jurisdiction over DCIP viz. Fund II. *See RJ Assocs. v. Health Payors' Org. Ltd. P'ship.,* 1999 Del. Ch. LEXIS 161, at *12 (Del. Ch. July 16, 1999) (quoting 6 *Del. C.* § 17-109(a) and holding that, as a matter of law, by accepting the position of general partner, a corporation consents to be subjected to a Delaware court's jurisdiction if the limited partnership has chosen to incorporate under Delaware law).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 16

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

In support of their Rule 12(b)(2) motion, the DCIP Defendants adduced affidavits of both Devlin and Crants. The plaintiffs have not adduced any affidavits rebutting the Devlin and Crants affidavits, nor have they asked to take discovery. Instead, they have decided to rely on the well-pleaded allegations in their complaint. Moreover, since they have not been rebutted, the court must take as true the facts contained in the Devlin and Crants affidavits. However, where the well-pleaded allegations in the complaints are not rebutted by affidavit, the court will, for the purposes of this Rule 12(b)(2) motion, assume the truthfulness of those allegations.[FN62]

FN62. *See Hart Holding Co. v. Drexel Burnham Lambert, Inc.,* 593 A.2d 535, 539 (Del. Ch.1991) (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981)) (stating that a trial court is vested with broad discretion in shaping the procedure by which a motion under Rule 12(b)(2) is resolved).

*14 According to the Devlin and Crants affidavits, DCIP is a Tennessee limited liability company, with its principal place of business in Nashville, Tennessee. Both Crants and Devlin are residents of Tennessee and perform the vast majority of their duties from their office in Nashville. Neither Crants nor Devlin recall ever traveling to Delaware. None of the DCIP Defendants solicit any business in Delaware or engage in any regular conduct with Delaware.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendant.[FN63] In determining whether it has personal jurisdiction over a nonresident defendant, the court will generally engage in a two-step analysis. First, was service of process on the nonresident authorized by statute? Second, does the exercise of jurisdiction, in the context presented, comport with due process?[FN64]

FN63. *See Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242, 1244 (Del.Super.1987); *see also Finkbiner v. Mullins,* 532 A.2d 609, 617 (Del.Super.1987) (stating that, on a Rule 12(b)(2) motion, "the burden is on the plaintiff to make a specific showing that this Court has jurisdiction under a long-arm statute.") (citing *Greenly v. Davis,* 486 A.2d 669 (Del.1984)).

FN64. *LaNuova D & B, S.P.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986).

A. *The Long-Arm Statute*

The plaintiffs argue that the court has personal jurisdiction over the DCIP Defendants under 10 *Del. C.* § 3104, the Delaware long-arm statute. Section 3104(c) provides, in relevant part: "As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident ... who ... (1) Transacts any business or performs any character of work or service in the State ... [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State...." Section 3104 has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause.[FN65] Furthermore, when *in personam* jurisdiction is challenged on a motion to dismiss, the record is construed most strongly against the moving party.[FN66]

FN65. *Id.*

FN66. *RJ Assocs.,* 1999 Del. Ch. LEXIS 161, at *13.

The complaints lay out detailed allegations of the connections between the DCIP Defendants and the Funds. The Funds were established as Delaware limited partnerships and are governed by Delaware law. DCIP is the Sub-Advisor of Fund I and the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 17

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

General Partner and Sub-Advisor of Fund II. Crants and Devlin are the managing members and owners of DCIP. DCIP acts principally through Crants and Devlin. The PPMs touted the DCIP Defendants' experience and qualifications in order to sell units in the Funds.

The PPMs also state that DCIP is responsible for the day-to-day management of the Funds. DCIP, in the persons of Crants and Devlin, attended every meeting of the Management Committee (none of which took place in Delaware). Also, DCIP, which acted through Crants and Devlin, was primarily responsible for choosing the securities included in the Funds.

In *RJ Associates,* Justice (then-Vice Chancellor) Jacobs held that this court could exercise personal jurisdiction over a limited partner in a Delaware limited partnership under Section 3104(c)(1). Justice Jacobs held that the following three contacts, taken together, were sufficient to constitute "transacting business" under the Delaware long-arm statute: (i) the limited partner participated in the formation of the limited partnership, (ii) the limited partnership indirectly participated in the limited partnership's management by 'controlling' the general partner, and (iii) the limited partner caused the Partnership Agreement to be amended to alter the method of distributions to the partners.[FN67]

FN67. *RJ Assocs.,* 1999 Del. Ch. LEXIS 161, at *18.

*15 The operative facts of this case, as alleged in the complaints, are similar to those in *RJ Associates*. First, DCIP participated in the formation of the Funds. In fact, DCIP was primarily responsible for selecting the initial securities accepted by the Funds.[FN68] Second, DCIP not only participated in the management of the Funds, DCIP was primarily responsible for the management of the Funds. The PPMs state that "the Sub-Advisor will provide day-to-day management and administration of the Fund and investment advisory services, including, among other matters, the screening of contributed securities, advice regarding the selection of the illiquid Assets and hedging and borrowing strategies."[FN69] Finally, DCIP received millions of dollars in fees to manage the two Delaware entities.

FN68. *See* Fund I Compl. ¶ 71; Fund II Compl. ¶¶ 82, 241.

FN69. Fund I PPM at 3-4, Fund II PPM at 3.

With respect to Crants and Devlin, the complaints allege that they are the owners and managing partners of DCIP. The complaints further allege that DCIP only acts through Crants and Devlin. In essence, the complaints allege that it was Crants and Devlin who selected the securities for the Funds, and managed the Funds on a day-to-day basis.

The court finds that these contacts are sufficient to constitute "transacting business" under the long-arm statute.

B. *Due Process*

The focus of a minimum contacts inquiry is whether a nonresident defendant engaged in sufficient minimum contacts with the State of Delaware to require it to defend itself in the courts of the state consistent with the traditional notions of fair play and justice.[FN70] In order to establish jurisdiction over a nonresident defendant, the nonresident defendant's contacts with the forum must rise to such a level that it should reasonably anticipate being required to defend itself in Delaware's courts.[FN71] The minimum contacts which are necessary to establish jurisdiction must relate to some act by which the defendant has deliberately created obligations between itself and the forum.[FN72] Consequently, the defendant's activities are shielded by the benefits and protection of the forum's laws and it is not unreasonable to require it to submit to the forum's jurisdiction.[FN73]

FN70. *AeroGlobal,* 871 A.2d at 440 (citing *Int'l Shoe Co. v. Washington,* 326

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 18
Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

U.S. 310 (1945)).

FN71. *Id.*

FN72. *Sternberg v. O'Neil,* 550 A.2d 1105, 1120 (Del.1988).

FN73. *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S.1985) (requiring "purposeful availment" of the benefits of the state's laws to satisfy the minimum contacts test).

In addition to the contacts outlined above that the complaints allege between DCIP Defendants and the Funds, the plaintiffs also allege that the DCIP Defendants enjoyed the benefits of Delaware law. They claim that the DCIP Defendants have received millions of dollars in fees for managing the Delaware partnerships and are entitled to claim limited liability under the terms of the Partnership Agreements, which established the Funds and limit the DCIP Defendants' liability to cases of gross negligence.[FN74]

FN74. Partnership Agreements § 3.5.

In *RJ Associates,* Justice Jacobs found that the following contacts were sufficient to satisfy due process: (i) the limited partner took an active role in establishing the Delaware Partnership; (ii) the limited partner owned a 50% interest in the partnership's general partner, and appointed four of the general partner's seven board members; (iii) the limited partner received 49.5% of the partnership's cash flow distributions; (iv) the limited partner allegedly controlled the partnership; (v) the limited partner allegedly caused the partnership agreement to be amended under Delaware law to change the agreed-upon cash flow distribution payments to the limited partners; and (vi) the limited partner agreed to a Delaware choice of law provision in the partnership agreement.[FN75]

FN75. *RJ Assocs.,* 1999 Del. Ch. LEXIS 161, at *19-*20.

*16 While not exactly the same, the contacts that DCIP has with Delaware are substantially similar to those in *RJ Associates*. DCIP took part in the formation of the Funds, two Delaware entities. DCIP managed the Funds on a day-to-day basis and received millions of dollars in fees for doing so. In addition, the Partnership Agreements which established the Funds limited the DCIP Defendants' liability to cases of gross negligence.[FN76] They have, thereby, benefited by expressly limiting their liability under Delaware law. Given all of these contacts, DCIP should have reasonably expected to be haled before the courts in Delaware.

FN76. Partnership Agreements § 3.5.

Crants and Devlin also should have reasonably expected to be haled before the courts of this state. As stated above, the complaints allege that DCIP could only act through Crants and Devlin. All the actions attributed to DCIP were really performed by them. Moreover, in the case of Fund II, Crants and Devlin are alleged to be the managing partners of the general partner of a Delaware limited partnership. In the case of Fund I, Crants and Devlin are alleged to have managed a Delaware limited partnership, despite the fact that DCIP is not that entity's general partner.

In *In re USACafes,* former Chancellor Allen found that the directors of a corporation that was the general partner of a Delaware limited partnership were subject to the jurisdiction of this state's courts, due to their positions with the general partner.[FN77] Chancellor Allen focused on the important state interest that Delaware has in regulating entities created under its laws, and how that interest could only be served by exercising jurisdiction over those who managed the Delaware entity.

FN77. 600 A.2d 43, 52 (Del. Ch.1991).

The relationship between the General Partner and the limited partners was created by the law of Delaware. The state empowered defendants to act, and this state is obliged to govern the exercise of that power insofar as the issues of corporate power

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                            Page 19

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

and fiduciary obligation are concerned. These factors bear importantly on the fairness of exercising supervisory jurisdiction at this point in the relationship of the various parties. The wrongs here alleged are not tort or contract claims unconnected with the internal affairs or corporate governance issues that Delaware law is especially concerned with.[FN78]

> FN78. *Id.*

Likewise, the wrongs alleged in this case go essentially to the management of a Delaware limited partnership. The DCIP Defendants voluntarily undertook to mange the Funds and received millions of dollars in compensation for doing so. Now, limited partners in the Delaware entity seek to hold them accountable for alleged wrongs they committed. It is both necessary and proper for the courts of this state to ensure that the managers of a Delaware entity are held responsible for their actions in managing the Delaware entity. When a person manages a Delaware entity, and receives substantial benefit from doing so, he should reasonably expect to be held responsible for his wrongful acts relating to the Delaware entity in Delaware.[FN79]

> FN79. *See Assist Stock Mgmt. L.L.C. v. Rosheim,* 753 A.2d 974, 975 (Del. Ch.2000) ("When nonresidents agree to serve as directors or managers of Delaware entities, it is only reasonable that they anticipate that ... they will be subject to personal jurisdiction in Delaware courts.").

*17 For the above reasons, the court concludes that it has personal jurisdiction over the DCIP Defendants in both cases. Therefore, the DCIP Defendants' motion to dismiss pursuant to Rule 12(b)(2) must be denied.

### VII.

For the above reasons, the defendants' motion to dismiss is GRANTED in part and DENIED in part. The defendants are directed to submit a form of order, on notice, within 10 days.

Del.Ch.,2005.
Albert v. Alex. Brown Management Services, Inc.
Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267

Briefs and Other Related Documents (Back to top)

• 2005 WL 850324 (Trial Motion, Memorandum and Affidavit) DC Investment Partners, LLC's, D. Robert Crants, III's and Michael W. Devlin's Reply Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint (Mar. 18, 2005)
• 2005 WL 850325 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion to Dismiss of Defendants Alex. Brown Management Services, Inc., Deutsche Bank Securities, Inc., and Deutsche Bank, AG (Mar. 18, 2005)
• 2005 WL 850387 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Answering Brief in Opposition to Defendants' Motions to Dismiss (Mar. 8, 2005)
• 2005 WL 850386 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Answering Brief in Opposition to Defendants' Motions to Dismiss (Mar. 7, 2005)
• 2005 WL 418240 (Trial Motion, Memorandum and Affidavit) Opening Brief of Defendants Alex. Brown Management Services, Inc., Deutsche Bank Securities, Inc. and Deutsche Bank A.G. in Support of Their Motion to Dismiss (Jan. 25, 2005)
• 2005 WL 418241 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of DC Investment Partners, LLC, Doctor Robert Crants, III and Michael W. Devlin's Motion to Dismiss Plaintiffs' Complaint (Jan. 25, 2005)
• 2005 WL 418242 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of DC Investment Partners, LLC, D. Robert Crants, III and Michael W. Devlin's Motion to Dismiss Plaintiffs' Complaint (Jan. 25, 2005)
• 2005 WL 418243 (Trial Motion, Memorandum and Affidavit) Opening Brief of Defendants Alex. Brown Management Services, Inc., Deutsche Bank Securities Inc. and Deutsche Bank A.G. in Support of Their Motion to Dismiss (Jan. 25, 2005)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                            Page 20

Not Reported in A.2d, 2005 WL 2130607 (Del.Ch.), 31 Del. J. Corp. L. 267
**(Cite as: Not Reported in A.2d)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.