IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREEDON CONTROLS, INC., )<br>)<br>Plaintiff )<br>)    C.A. No. 05-CV-300-JJF<br>v. )<br>)<br>BANC ONE BUILDING )<br>CORPORATION, an Illinois corporation, )<br>and FOREST ELECTRIC )<br>CORPORATION, a New York Corporation, )<br>)<br>Defendant ) | |

**REPLY BRIEF OF DEFENDANT FOREST ELECTRIC CORP.
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

=============

 

MARON & MARVEL, P.A.

Paul A. Bradley (DE Bar #2156)
1201 North Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19801
(302) 425-5177
Counsel for Defendant
Date: August 21, 2006     Forest Electric Corp.

# TABLE OF CONTENTS

**Title**                                                                **Page**

TABLE OF AUTHORITIES ................................................................................ ii

    I.    ARGUMENT ........................................................................................1

        A.    INTRODUCTION ....................................................................1

        B.    THE OCTOBER 2, 2003 LETTER AND ..............................1
              SUBCONTRACT AGREEMENT IS ENFORCEABLE

        C.    IF THE SINGLE PROJECT CONSTRUCTION ...................5
              SERVICES AGREEMENT APPLIES, CCI'S
              PROPOSED MODIFICATIONS HAVE NO LEGAL EFFECT

        D.    THE NO DAMAGES FOR DELAY CLAUSE IS .....................7
              ENFORCEABLE AGAINST CCI

    II.    CONCLUSION ...................................................................................12

# TABLE OF AUTHORITIES

**Case Law**                                                                                                    **Page**

*Brittingham v. Board of Adjustment of the City of Rehobeth Beach,* ...........................6, 7
    2005 WL 170690 (Del. Super.)

*Echols v. Pelullo,* ............................................................................................................4
    377 F.3D 272, 277 (3rd Cir. 2004)

*F.D. Rich Co. v. Wilmington Housing Authority,* ........................................................8, 9
    392 F.2d 841 (3d Cir. 1968)

*Hedden v. Lupinsky,* ..........................................................................................................5
    176 A2d 406 (Pa. Supr. 1962).

*Hindes v. Wilmington Poetry Society,* ............................................................................3, 4
    138 A2d 501 (Del.Ch. 1958)

*Hornsberger Management Company v. Haws & Tingle General Contractors,* ..................6
    768 A2d 983 (Del. Super. 2000),

*Industrial America, Incorporated v. Fulton Industries,*
    285 A2d 412, 415 (Del. Supr. 1971) ...........................................................................1

*Leeds v. First Allied Connecticut Corporation,* .................................................................3
    521 A.2d 1095 (Del. Ch. 1986)

*Middle States Drywall, Inc. v. DMS Properties First, Inc.* .............................................3, 7
    1996 WL 453418 (Del. Super. Ct. 1996)

*Miller v. Wilmington Housing Authority,* ......................................................................8, 9
    165 F.Supp. 275, 281 (D. Del. 1958)

*Morris v. Ballard,* ..............................................................................................................4
    16 F.2d 175 (DC. App. 1926)

*Peter Kiewit Sons' Co. v. Iowa Southern Utilities Co.* ....................................................10
    355 F. Supp. 376, (U. S. S. D. Iowa 1973)

*Psaty & Fuhrman v. Housing Authority of City of Providence,* .....................................8, 9
    68 A.2d 32 (R. I. Supr. 1949)

**Case Law**                                                                                                                  **Page**

*Wells Brothers Co. v. United States,* ...................................................................................8
    254 U.S. 83 (1920)

*Wilson Contracting, Inc. v. Justice,* ....................................................................................9
    Del. Super. Ct. No. 508 CIV.A. 1974, 1981 WL 377680*1 (Del Super. 1981)

All unreported decisions can be found in Plaintiff Creedon Controls Inc.'s Compendium of Unreported Decisions, filed on August 8, 2006.

I.  **ARGUMENT**

   A.  **INTRODUCTION**

Forest Electric Corporation ("Forest Electric") submits this reply brief to address a number of issues raised by plaintiff Creedon Controls ("CCI") in its Answering Brief in Opposition to Forest Electric's Motion for Summary Judgment. Forest Electric has outlined the undisputed facts that relate to the issue of the governing contract and its agency relationship with Banc One Building Corporation ("Banc One") in both the Statement of Facts in Forest Electric's Brief in Support of it Motion for Summary Judgment and its Brief in Response to Banc One's Motion for Summary Judgment. Forest Electric, therefore, will not submit another summary of facts but will highlight the factual record, where necessary, in addressing the legal arguments of CCI.

Forest Electric, however, notes that CCI's recitation of events regarding the progress and management of the electrical work, which it contracted to supply, is self-serving on its face and amounts to nothing more than a recitation of the allegations of its complaint. For the reasons outlined below, CCI's heavy citation to its own expert's reports and one-sided view of the factual record cannot defeat Forest's Electric's motion for summary judgment.

   B.  **THE OCTOBER 2, 2003 LETTER AND SUBCONTRACT AGREEMENT IS ENFORCEABLE**

Forest Electric, in its opening brief, invoked the axiomatic "plain meaning" rule and the well established principle that a party's assent is determined by outward and objective manifestations of assent. *Industrial America, Incorporated v. Fulton Industries,* 285 A2d 412, 415 (Del. Supr. 1971)  CCI, as it must, conceded the applicability of these principles. (CCI's Brief, pp. 21-22).  However, CCI ignores the language of Forest

1

Electric's offer letter of October 2, 2003 and CCI's acceptance in contending that the parties' agreement lacked legal effect.

While offering CCI the general power and lighting work, based on its bid of $3,152,000, Forest Electric's letter provided, in pertinent part:

> Subcontractor agrees to be bound to the terms and conditions of the Subcontract Agreement as attached hereto as Exhibit 1.

The letter enclosed the Subcontract to which it referred and Ms. Creedon acknowledged that fact. (A-000005-000006; 003540-00355)

CCI signed the letter of intent and returned it with the following statement:

> **"This Letter of intent is accepted and will be considered executed** after the required subsequent review modification, negotiations, and implementation of the advice from Creedon Controls. Inc.'s legal council [sic], allowing 14 days for response to address terms, conditions, scope of work and any/all other items requiring additional Consideration".   (emphasis added) (A-000005-000006)

CCI's arguments and Ms. Creedon's unexpressed personal beliefs notwithstanding, a reasonable person reading the terms of the letter and the terms of the acceptance is compelled to conclude that CCI accepted all of the terms of the enclosed letter and the subcontract. CCI's only qualification is the fourteen day review period, which refers not to a prime or a final contract but to "[t}his letter of intent" and the enclosed subcontract agreement. Moreover, if one considers the objective manifestations of CCI's intent a number of weeks later, when it executed a similar letter of intent, which memorialized a price change, returned it with no reservation of rights, and continued with its work on the project, the only reasonable conclusion is that CCI intended to be fully bound by the agreement. (A-000075-000084; A-000171- 000172).

2

CCI executed a similar letter of intent enclosing the same subcontract agreement for another part of the project it bid on in February 2004.

In an attempt to escape the plain terms of the October agreement, CCI argues that the terms of the agreement were indefinite and thus unenforceable. (Plaintiff's Response Brief, p. 22-23). However, the subject of the contract, the price, and the time and place for performance and remedies for breach were all defined by the agreement as well as the scope of work. Forest Electric's offer letter specifically refers to acceptance of the bid submitted by CCI for this project. The bid was based on CCI's "Response to an Invitation to Bid-Best and Final Price, September 29, 2003, with a proposed delivery date as per submitted schedule." A-000056. CCI clearly understood the scope of work and the work it was to perform. Indeed, it began and continued to work on the project.

This case differs from the cases cited by CCI. For example, *Hindes v. Wilmington Poetry Society*, 138 A2d 501 (Del.Ch. 1958) concerned an oral publication contract which lacked a price term. *Leeds v. First Allied Connecticut Corporation*, 521 A.2d 1095 (Del. Ch. 1986) involved a proposed sale of a multi-million dollar parcel of real estate where the parties failed to address financing, which had earlier been defined as an important aspect of any deal, and the prospective buyer had not even seen the land. While *Middle States Drywall, Inc. v. DMS Properties First, Inc.* 1996 WL 453418 (Del. Super. Ct. 1996) concerned a construction project, the contractor, rather than submitting a bid for the project, was called in several times to submit several proposals for different types of work and the proposal for the work at issue was never accepted.

In contrast, CCI and Forest Electric,[1] as agent for Banc One, agreed to a price of

---

[1] Forest Electric has mentioned throughout the Project and this litigation that it was acting as Banc One's agent. Forest Electric submits that the October 2003 agreement is binding and that Banc One is the

3

over Three Million dollars and the scope and time for performance were defined by the Invitation to Bid and CCI's duly submitted Bid. (A-000324-000352). As all of the essential terms were defined, CCI is bound to the October 2003 agreement. *Echols v. Pelullo*, 377 F.3d 272, 277 (3rd Cir. 2004) (Under the modern approach of Restatement (Second) of Contracts §33(2) "the terms of a contract are reasonably certain if they provide a basis for determining the existence of breach and for giving an appropriate remedy"); *Hindes v. Wilmington Poetry Society*, 138 A2d 501, 502 (Del.Ch. 1958) ("..a court will not upset an agreement where the indefinite provision is not an essential term")

Assuming arguendo that any material and essential terms were indefinite in October of 2003, the parties' performance from the fall of 2003 cured any deficiencies. *Morris v. Ballard*, 16 F.2d 175 (DC. App. 1926) (specific performance ordered even if contract was indefinite or uncertain because partly performed). CCI proceeded to work under the October 2003 letter and subcontract agreement, presented the agreement to its financiers for the project, and was paid millions of dollars pursuant to it. (A-000035; 000048; 000053-000054). It is incredible that CCI now claims that it is not bound by that understanding.

CCI admits that it proceeded to work on the basis of the October 2, 2003 letter and believed it was bound by the letter of intent. (Plaintiff's Response Brief, p. 23). However, it asks the Court to ignore the part of the letter that states CCI agreed to be bound to the terms of the subcontract agreement, including the subcontract agreement identified as Exhibit 1, since it would preclude their claim. CCI agreed to its terms on

---

principal. Forest Electric, notes that CCI has a direct contract claim against it, and thus in the alternative, if it is obligated to CCI, the terms of the October 2003 agreement define any obligations.

three separate occasions and should not be allowed to ignore parts of it that would adversely impart its claim.

CCI argues that there was no meeting of the minds as to material terms, including, scope of work, payment and remedies for breach. CCI's participated in the bid process which included the scope of work, drawings and general conditions on which CCI based its bid. (A-000324-000352) The letter refers to the bid package and the price and the subcontract agreement provides remedies for delay, and interference or hindrance of work is limited to an increase of time. There is no basis to ignore the very terms CCI agreed to.

### C.  IF THE SINGLE PROJECT CONSTRUCTION SERVICES AGREEMENT APPLIES, CCI'S PROPOSED MODIFICATIONS HAVE NO LEGAL EFFECT

As noted previously, after receipt of an executed contract from Banc One as Trade Manger For Electrical Work, Forest Electric, as agent of Banc One, tendered a "Single Project Construction Services Agreement" for the Banc One Project to all electrical trade contractors as well as Creedon Controls. (A-000085-000144). If one accepts CCI's strained construction of its 14 day review period contained in its acceptance of the job, CCI should be deemed to have accepted the terms of the Single Project Construction Services Agreement, as CCI failed to reject the proposed contract within fourteen days per the terms of its own written reservation of rights. Plaintiff never responded to this argument.

CCI now argues that the Single Project Construction Agreement is only enforceable as modified by its proposals on or about June 14, 2004. Such an argument turns the basic law of offer and acceptance on its head. A response to an offer that adds

5

{99999.00936 / W0066750}

terms or requests substantial changes constitutes a rejection and therefore, the proposed terms have no legal effect. *Hedden v. Lupinsky,* 176 A2d 406 (Pa. Supr. 1962).

In an apparent attempt to skirt this clear rule of law, CCI argues that its modifications should be deemed accepted because they were never explicitly rejected. However, this argument lacks factual support. Philip Angerame testified that after receipt of CCI's proposed changes, he advised CCI that no changes would be accepted. (A-000178-000180; 000183). The President of CCI testified that she was informed by Forest Electric that CCI should just sign the contract. (A- 000048) There is simply no factual basis for the argument that Forest Electric was silent about CCI's requested changes.

Plaintiff's argument is even more incredible when considering that Ms. Creedon's June 14, 2004 letter stated that CCI "would be prepared to execute the contract upon your acceptance of addendum 1 for inclusion. CCI contemplated the contract being changed to reflect its modifications which never occurred since Forest Electric did not agree to the changes. Last, Forest Electric re-sent the Single Project Service Agreement on June 14, 2004 to CCI for signature. (A-000353) How can CCI claim there was silence much less that silence equals acceptance under these circumstances?

Moreover, CCI misstates the law regarding the limited circumstances under which a failure to formally reject an offer can be deemed an acceptance. Restatement (Second) of Contracts § 69 (1981) The rule is limited to those circumstances where silence can only be construed as acquiescence and the equities of the case compel such a result. Basic fairness dictated a finding of acceptance in *Hornsberger Management Company v. Haws & Tingle General Contractors,* 768 A2d 983 ( Del. Super. 2000), where a placement firm offered its services and the defendant hired the executive located by the

firm but never formally accepted the firm's services proposal yet refused to pay. See also *Brittingham v. Board of Adjustment of the City of Rehobeth Beach*, 2005 WL 170690 (Del. Super.) (rule applied against zoning board which induced petitioners to drop appeal based on proposed settlement which Board lead them to believe it approved). Not only are these cases factually distinguishable, none involved parties which had an ongoing business relationship or involved the issue of acceptance of a counteroffer, which as noted above is governed by contrary rules.

Furthermore, in a case cited by CCI, on another point, and which involves a situation where a written proposal was at issue, the Court held that when the acceptance contemplated is a signed proposal, silence cannot be deemed an acceptance. *Middle States Drywall, Inc. v. DMS Properties-First, Inc.*, 1996 WL 453418 (Del. Super. 1996) the court noted, in pertinent part:

> "Under certain circumstances, silence may be construed as acceptance. (citation omitted) However, in this case, the offer that was manifested in the second proposal invited acceptance through the offeree's signature at the bottom of the proposal. It is unreasonable to expect that silence could qualify as acceptance of the terms of the offer where this obvious signature line remained blank".

In summary, there is neither a factual nor legal basis to find that CCI's proposed modifications to the Single Project Construction Services Agreement were accepted and thus made part of the agreement. Indeed, the Single Project Service Agreement was accepted 14 days absent any changes or modifications submitted by plaintiff.

**D.   THE NO DAMAGES FOR DELAY CLAUSE IS ENFORCEABLE AGAINST CCI**

The no damage for delay clause in the October 2003 agreement,[2] is enforceable as there is no credible evidence that Forest Electric acted in bad faith amounting to a tortious intent to injure CCI or that Forest Electric actively interfered in the work of CCI on the project. In its brief, CCI contends that Forest Electric cannot enforce the no delay for damages clause as it was acting as an agent of Banc One. Forest Electric has emphasized, and not disputed, its agency status as evidenced by is briefs in support of its motion for summary judgment and in opposition to that of Banc One on the agency issue. However, it must address such issues, in the alternative, as CCI has asserted breach of contract claims against it and Banc One is now disputing its agency status. Such arguments do not vitiate the strength of its position on these issues.

No damages for delay clauses are common in construction contracts and serve as a mechanism to allocate the risk of delay which is endemic in large construction projects. *Wells Brothers Co. v. United States,* 254 U.S. 83 (1920); *Psaty & Fuhrman v. Housing Authority of City of Providence,* 68 A.2d 32 ( R. I. Supr. 1949) Like other clauses in commercial contracts, no damages for delay clauses are enforceable absent extraordinary circumstances. . See *F.D. Rich Co. v. Wilmington Housing Authority,* 392 F.2d 841 (3d Cir. 1968); *Miller v. Wilmington Housing Authority,* 165 F.Supp. 275, 281 (D. Del. 1958); *Psaty & Fuhrman v. Housing Authority of City of Providence,* 68 A.2d 32, 36 (R. I. Supr. 1949).

In dismissing a contractor's argument that the owner was not protected by a no damages for delay clause because it unreasonably caused delay at the project, the Court

---

[2] If held applicable, Section 7.02 of the General Conditions of the Single Project Construction Services Agreement also includes a form of no damages for delay clause.

8

in *Psaty & Fuhrman v. Housing Authority of City of Providence*, 68 A.2d 32, 35 (R. I. Supr. 1949, stated the following:

> "The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all instances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause was intended to avoid. In the absence of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted. (citation omitted) "Men who take million-dollar contracts for government buildings are neither unsophisticated nor careless.'
>
> ****
> The parties to a contract are free to agree upon any terms that are not illegal."

Accordingly the court in *Psaty & Fuhrman v. Housing Authority of City of Providence*, 68 A.2d 32, 35 (R.I. Supr. 1949) ruled that the Authority was protected by the no damages clause, as it could not be "deprived of the benefit" of that clause.

CCI acknowledges this legal principle yet cites cases for the proposition that an owner is responsible if it negligently delays a project or fails to coordinate its contactors. However, none of the cases cited by CCI on that general proposition involved a no damages for delay clause so they do not control the issue presented in this case. As noted above, mere alleged negligence will not defeat a no damages for delay clause. *See F.D. Rich Co. v. Wilmington Housing Authority*, 392 F.2d 841 (3d Cir. 1968); *Miller v. Wilmington Housing Authority*, 165 F.Supp. 275, 281 (D. Del. 1958); *Psaty & Fuhrman v. Housing Authority of City of Providence*, 68 A.2d 32, 36 (R. I. Supr. 1949). Also, CCI never alleged any negligence or bad faith against Forest Electric.

CCI also heavily relies on the case of *Wilson Contracting, Inc. v. Justice*, Del. Super. Ct. No. 508 CIV.A. 1974, 1981 WL 377680*1 (Del Super. 1981) in arguing that

9

the no damages clause should not apply. However, *Wilson* is distinguishable as the clause involved in that case merely referred to "no extra compensation" and did not mention damages. *Wilson* at p .9  In contrast, in this case, the October 2003 Agreement stated, in pertinent part, that

> " ... under no circumstances shall SUBCONTRACTOR be entitled to any increase in the Contract Price **or to damages** as a consequence or result of such delay, hindrance, obstruction, interference, and/or acceleration, and SUBCONTRACTOR's sole remedy shall be any equitable extension of time for the performance of its Work."

The clause prohibits CCI from seeking damages merely as a basis that Forest Electric or others negligently impeded its work.

CCI lacks any credible evidence of bad faith against Forest Electric and certainly cannot contend that Forest Electric actively or intentionally interfered with the performance of its contractual duties on the project. CCI admitted that change orders were approved on the project so this is not a situation where necessary changes to accommodate the actual progress of the project were arbitrarily denied by Forest Electric or Banc One's other agents. Moreover, the acts of alleged bad faith and/or vindictive acts to which CCI refers in its brief were limited and certainly did not pervade the entire course of dealings on the project.

Indeed when, Ms. Creedon, who appeared as the 30(b) (6) witness of CCI, testified about this issue she could not recall many details and noted that such acts occurred between April 22, 2004 and May 28, 2004 and could not state who committed them. (A-000363-000367). One could hardly argue that even if the alleged acts occurred that such acts would arise to the level of bad faith found sufficient to defeat a no damages clause given the length and breadth of the Banc One project. Even if thirty thousand

dollars of materials were thrown away, that was a relative slight given the size of CCI's original contract exceeding Three Million Dollars. As the court noted in *Peter Kiewit Sons' Co. v. Iowa Southern Utilities Co.*, 355 F. Supp. 376, (U. S. S. D. Iowa 1973), a case cited by CCI, the courts look for reprehensible conduct under the circumstances of the transaction. Furthermore, there has been no showing of any casual link between the alleged acts of bad faith and any alleged delay damages suffered by CCI.

CCI alleges that Forest Electric and Tishman acted in bad faith as interfering with its work. However, it cites nothing in the record to support its position that Forest Electric interfered with its work or acted in bad faith, even assuming its contorted reading of the law is accepted. For instance, CCI alleges that laborers disposed of CCI's equipment, as-built drawings and placed one of its lifts in a dumpster. (Plaintiff's Brief, p. 30).

However, it is disputed that Forest Electric did not perform these acts. For instance, CCI's reported to its own bank that Tishman Construction laborers went through the site and threw away materials and as-built drawings. (A-000354-000362) CCI cites <u>no</u> <u>evidence</u> to support these allegations. Indeed, it cannot because it knows Forest Electric did not perform any of these acts.

In short, CCI's broad brush claims of bad faith and active interference fail to create a genuine issue of fact and thus Forest Electric is entitled to a ruling as a matter of law that the no damages for delay clause is enforceable.

## II.  CONCLUSION

For each and every one of the foregoing reasons and as those outlined in its prior filings, Forest Electric is entitled to summary judgment as requested.

MARON & MARVEL, P.A.

/s/ *Paul A. Bradley*
Paul A. Bradley (DE ID No. 2156)
1201 North Market Street, Suite 900
P.O. Box 288
Wilmington, DE 19801
(302) 425-5177
Attorney for Defendant
Forest Electric Corp.

Dated: August 21, 2006