# EXHIBIT "2"

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

C
East Coast Plumbing & HVAC, Inc. v. Edge of the Woods, LPDel.Super.,2004.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
EAST COAST PLUMBING & HVAC, INC. Plaintiff,
v.
EDGE OF THE WOODS, LP, Hydrim Company, LLC, and Unlimited Construction Company, Inc. Defendants.
No. Civ.A. 99L-11-046CLS.

Submitted April 22, 2004.
Decided July 30, 2004.

Thomas C. Marconi, Losco & Marconi, P.A., Wilmington, Delaware, for Plaintiff.
Donald L. Logan, Tighe Cottrell & Logan, P.A., Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*
SCOTT, J.

### I. INTRODUCTION

*1 The issue before the court in this matter is whether Defendants are obligated to make final payment to plaintiff East Coast Plumbing & HVAC, Inc. ("East Coast"). A bench trial was held December 1-3, 2003. At the request of the court, the parties submitted proposed findings of fact and conclusions of law. This is the court's ruling. For the reasons stated below, the court finds for East Coast.

### II. PARTIES' CONTENTIONS

East Coast maintains it is owed $19,850.00 on a plumbing contract and $7,808.00 on an HVAC contract it had with Defendant Unlimited Construction Company, Inc. ("Unlimited"). East Coast claims it fully complied with the requirements of both contracts and Unlimited breached both contracts by failing to fully pay East Coast. East Coast also seeks **recovery** from Edge of the Woods, LP ("EOTW") and Hydrim Company, LLC ("Hydrim") on theories of *quantum meruit* and *quantum valebant*, and imposition of a **mechanic's** lien in the amount of $27,658.00 on the **lands** and structures of the 44 units at Water's Edge Condominiums ("the Project") where the equipment was installed. East Coast also seeks recovery of pre- and post-judgment interest, costs, and attorney's fees.

Defendants counter that East Coast only has a claim against Unlimited, not EOTW or Hydrim, as the payment in question is with respect to contracts between East Coast and Unlimited. Defendants further argue a mechanic's lien is improper as East Coast has not sought liens against the individual condominiums, even though East Coast knew the Project was condominiums. As a defense to payment, Defendants claim East Coast installed improper equipment that did not comply with owner EOTW's specifications. Defendants argue East Coast was obligated to install equipment "identical" to that in the existing 220 condominiums at the site. Defendants point to language in East Coast's subcontracts with Unlimited that they claim supports this contention.[FN1] Defendants note as well that East Coast's contract with Unlimited, in the pre-printed standard language part of the contract, obligates East Coast to perform all work "... to the complete satisfaction of the Contractor, the Architect and Owner." [FN2] Defendants claim the water heaters installed under the plumbing contract are an inadequate size. Defendants also claim the air conditioning ("A/C") units installed in the two-bedroom condominiums of the Project are undersized. Defendants state they have received many complaints from residents of the 44 condominiums regarding the inadequacies of the water heaters and A/C units. Defendants further argue that the equipment installed by East Coast under the HVAC contract differed from what was specified on its bid and submittal. Unlimited states it fulfilled its contractual obligation to East Coast and, therefore, East Coast is the breaching party. Hydrim also asserts a counterclaim against East Coast for $52,120.00-the amount it claims it would cost to replace the undersized A/C units and water heaters. Defendants also dispute the payment of attorneys' fees, claiming they had a good faith belief in the vitality of their defenses.

FN1. Defendants point to ¶ 26 of the subcontract which states in part "...

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 2
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

CONTRACTOR'S approval thereof shall not relieve SUBCONTRACTOR from responsibility or liability for any mistakes, error, or deviation, or of SUBCONTRACTOR'S obligation to perform its work in strict accordance with the CONTRACT DOCUMENTS." (emphasis in original) Defendants argue the CONTRACT DOCUMENTS include Unlimited's contract with Hydrim that they allege called for materials to be the same as those in the existing condominiums.

FN2. Paragraph 5 of both the plumbing and HVAC contracts.

### III. FINDINGS OF FACT

*2 EOTW is the owner of the land at the site of the Project. Hydrim is the owner of the expansion rights that resulted in the construction of the 44 condominiums of the Project, the construction of which is the subject of the contracts at issue here. These 44 condominiums are in addition to 220 condominiums previously constructed by EOTW between 1989 and 1995 in the same area.[FN3] Unlimited was the general contractor with Hydrim for the construction of the Project. After construction of the 44 condominiums, they were initially owned by EOTW and rented as apartments. EOTW later began offering the condominiums for sale to individual owners.

FN3. These 220 condominiums will be referred to as "the existing condominiums" in this ruling.

The condominium available for inspection by subcontractors prior to their submitting bids for the Project was a two-bedroom model. This model had a 40-gallon water heater. This model had a two-ton A/C unit installed. Information concerning possible problems with the HVAC systems in the existing two-bedroom models was communicated by persons associated with EOTW and/or Hydrim to East Coast prior to East Coast's submitting a bid for the HVAC contract.

East Coast entered into two subcontracts with Unlimited regarding the Project. In late 1998, East Coast entered into one contract with Unlimited to provide for installation of hot water heaters in all 44 condominiums ("the plumbing contract"). In early 1999, East Coast entered into a second contract with Unlimited to provide for installation of the A/C units in all 44 condominiums ("the HVAC contract").

The plumbing bid East Coast submitted to and that was accepted by Unlimited specified in Appendix A that 40-gallon water heaters would be installed in all condominiums of the Project. There were no other attachments to the plumbing subcontract. Prior to the actual installation of any water heaters, East Coast presented a submittal to Unlimited indicating the specific model and size of water heaters to be installed. No change orders [FN4] regarding the size of the water heaters to be installed were provided to East Coast by Unlimited. Other items to be installed pursuant to the plumbing contract were the subject of change orders provided to East Coast. East Coast installed 40-gallon water heaters in all condominiums of the Project. Unlimited did not receive full payment from Hydrim for the plumbing contract. Unlimited paid East Coast all but $19,850.00 of the total due on the plumbing contract. This amount includes $7,850.00 unpaid for Building 2700 of the Project, $8,000.00 unpaid for Building 2800 of the Project, and $4,000.00 unpaid for Building 2900 of the Project.

FN4. Change orders are communications from the owner and/or contractor that request changes in specifications of items proposed for installation in the submittals.

The bid for the HVAC contract between East Coast and Unlimited provided for installation of A/C units "as per existing units." There were no other attachments to the HVAC subcontract. Based on communicated concerns regarding the functioning of the A/C units in the existing two-bedroom condominiums, East Coast consulted with Phil Atkins ("Atkins") of distributor Ferguson Enterprises. Atkins indicated that a 1.5-ton unit was the smallest-size unit manufactured. Atkins calculated the 1.5-ton units would provide adequate cooling for both the one- and two-bedroom condominiums, while a 2.5-ton unit was appropriate for the three-bedroom condominiums. Prior to the actual installation of any A/C units, East Coast presented a submittal to Unlimited specifying the makes and models of the A/C units to be installed. This submittal called for installation of "large" 1.5-ton A/C units in the two-bedroom condominiums.[FN5] East Coast did not receive any change orders from Unlimited regarding the size of the A/C units to be installed in the two-bedroom condominiums. East Coast installed A/C units in all condominiums per the submittal.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 3
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Unlimited did not receive full payment from Hydrim for the HVAC contract. Unlimited paid East Coast all but $7,808.00 of the total due on the HVAC contract. This amount includes $2,608.00 unpaid for Building 2800 of the Project and $5,200.00 unpaid for Building 2900 of the Project.

> FN5. One and one half-ton A/C units were installed in the one-bedroom condominiums and 2.5-ton A/C units were installed in the three-bedroom condominiums. Installation of the A/C units in those condominiums is not at issue.

*3 Unlimited is an ongoing company that has not filed for bankruptcy. There is no indication Unlimited is unable to pay its bills.

All of the water heaters and A/C units installed met the specifications of county building codes.

### IV. CONCLUSIONS OF LAW

At the conclusion of trial, the court indicated the parties should address the issue of what weight the court should give to so-called expert testimony that was not given to a reasonable degree of engineering [FN6] probability. Neither of the parties addressed this issue in their post-trial submissions to the court. The court concludes, therefore, that to the extent the testimony offers opinion and not fact, the testimony will be disregarded as it does not meet the requirements of Delaware Rule of Evidence 702.[FN7]

> FN6. Based on the testimony proposed, the court concludes the appropriate expert field is mechanical engineering.

> FN7. While the court does not want to elevate form over function in requiring expert testimony to be given "to a reasonable degree of [speciality] probability," the testimony presented at trial clearly failed to meet the standards the Delaware Supreme Court regarding admissibility of expert testimony. *See MG Bancorporation, Inc. v. LeBeau,* 737 A.2d 513, 522 (Del.1999) (adopting the view of the United States Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 who held "the trial judge must determine whether the [proffered] testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline' ").

#### A. The plumbing contract.

The court concludes the plumbing contract is unambiguous on its face. The court will not rewrite an unambiguous contract to create an ambiguity or alter the explicit terms of that contract.[FN8] The court finds there is no indication the contract documents between Unlimited and Hydrim [FN9] were incorporated into the contract between East Coast and Unlimited. The court holds merely mentioning the contract documents between Unlimited and Hydim/EOTW does not incorporate them by reference into the plumbing contract between East Coast and Unlimited. Even if the contract documents had been incorporated by reference, the court holds the specific terms of the subcontract prevail over any general terms of the contract between Unlimited and Hydrim. Additionally, the court finds the documentation provided to East Coast concerning the existing condominiums to be lacking in detail regarding the specification of the mechanical equipment to be installed in the condominiums of the Project. The court notes that while EOTW and Hydrim at trial repeatedly stated how important it was to them that the condominiums of the Project be "identical" to those already built, nowhere was this requirement made an explicit part of the plumbing contract between East Coast and Unlimited.

> FN8. *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.1997) (holding extrinsic evidence could not be used to vary the terms of a contract).

> FN9. *See* n. 1, *supra.*

The court holds that the requirement that East Coast perform work "to the complete satisfaction" of Unlimited and EOTW was fulfilled when East Coast installed the water heaters as specified in the plumbing contract. East Coast did exactly what it said it would do. East Coast cannot be liable for damages when it does exactly what it said it would do but EOTW (who was not even a party to the contract) later claims East Coast should have known that it should have done something else. To the extent Hydrim and/or EOTW has a complaint that the water heaters installed did not conform to the specifications of the general contract, the court holds that dispute is between Unlimited and Hydrim and/or EOTW. The dispute is not between East Coast and Hydrim and/or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EOTW.

The court finds Defendants' assertion of having received "numerous" complaints regarding the functioning of the water heaters in the two- and three-bedroom condominiums was not supported by credible testimony at trial.

*4 By its unambiguous terms, the plumbing contract between East Coast and Unlimited called for 40-gallon water heaters to be installed in all of the condominiums of the Project. The court noted in its Findings of Fact that East Coast installed 40-gallon water heaters in all of the condominiums. The court concludes East Coast fulfilled its terms of the plumbing contract. The court, therefore, holds that Unlimited breached its plumbing contract with East Coast when it refused to make the final payment of $19,850.00. On the plumbing contract, the court finds for East Coast in the amount of $19,850.00. The court holds this amount was due September 26, 1999, which is 30 days after the completion of the plumbing work.

B. The HVAC contract.

The court finds the HVAC contract is ambiguous on its face by the inclusion of the term "as per existing units." The court concludes, however, that this ambiguity was clarified when East Coast sent the submittal to Unlimited, prior to installation of any equipment, specifying the sizes of the A/C units that would be installed. The fact that the specifications in this submittal were different from what initially had been submitted to Unlimited is held not relevant to a determination of the terms of the HVAC contract.

As noted in the Findings of Fact, this submittal specified installation of 1.5-ton A/C units in the one-bedroom condominiums, "large" 1.5-ton A/C units in the two-bedroom condominiums, and 2.5-ton A/C units in the three-bedroom condominiums of the Project. As with the plumbing contract, the court holds that there is no indication the contract documents between Unlimited and Hydrim [FN10] were incorporated into the HVAC contract between East Coast and Unlimited. The court holds merely mentioning the contract documents between Unlimited and Hydim/EOTW does not incorporate them by reference into the HVAC contract between East Coast and Unlimited. As with the plumbing contract, even if the documents had been incorporated by reference, the court holds the specific terms of the subcontract prevail over any general terms of the contract between Unlimited and Hydrim. The court finds the documentation provided to East Coast concerning the existing condominiums to be lacking in detail regarding the specification of the mechanical equipment to be installed in the condominiums of the Project. The court again notes that while EOTW and Hydrim at trial repeatedly stated how important it was to them that the condominiums of the Project be "identical" to those already built, nowhere was this requirement made an explicit part of the HVAC contract between East Coast and Unlimited. To the extent Hydrim and/or EOTW has a complaint that the A/C units installed did not conform to the specifications of the general contract, the court holds that dispute is between Unlimited and Hydrim and/or EOTW. The dispute is not between East Coast and Hydrim and/or EOTW.

FN10. See n. 1, supra.

The court did not consider the trial testimony of Robert Cannon regarding the issue of sizing the A/C units in reaching its conclusions. The court concludes Mr. Cannon was not properly qualified to testify as a mechanical engineer, [FN11] nor did he testify to the requisite reasonable degree of engineering probability.[FN12] The court finds Defendants' assertion of having received "numerous" complaints regarding the functioning of the A/C units in the two-bedroom condominiums was not supported by testimony at trial.

FN11. See n. 6, supra. Mr. Cannon is a professional electrical engineer.

FN12. See n. 7, supra.

*5 The court noted in its Findings of Fact that East Coast installed A/C units as specified in the submittal in all of the condominiums of the Project. For the same reason noted for the plumbing contract, the court holds that the requirement that East Coast perform work "to the complete satisfaction" of Unlimited and EOTW was fulfilled when East Coast installed the A/C units as specified in the submittal. The court concludes East Coast fulfilled its terms of the HVAC contract. The court, therefore, holds that Unlimited breached its HVAC contract with East Coast when it refused to make the final payment of $7,808.00. On the HVAC contract, the court finds FOR East Coast in the amount of $7,808.00. The court holds this amount was due September 25, 1999, 30 days after the completion of the HVAC work.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d								Page 5
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

### C. Prejudgment interest.

Under Delaware law, a party is entitled to prejudgment interest as a matter of right.[FN13] A party must, however, affirmatively request this award.[FN14] Such interest is calculated from the date payment is due.[FN15] The determination of the date payment was due is a question of law.[FN16] When the interest rate is not specified, 6 *Del. C.* § 2301(a) specifies that "the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due."[FN17] The court takes judicial notice that the Federal Reserve Discount Rate in effect on September 25 and 26, 1999 was 4.75%.[FN18] The court concludes the prejudgment rate to be applied is 9.75%. The pre-judgment interest due on the plumbing and HVAC contracts as of July 30, 2004, therefore, is $13,058.78, with a per diem pre-judgment interest charge of $7.39 per day.

FN13. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del.1992) (internal citations omitted).

FN14. *Chrysler Corp. (Del.) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1037 (Del.2003) (internal citations omitted).

FN15. *Citadel Holding Corp.*, 603 A.2d at 826.

FN16. *Id.*

FN17. 6 *Del. C.* § 2301(a).

FN18. See http://www.federalreserve.gov.releases/h15/data/d/dwb/txt

### D. *Quantum meruit* and *quantum valebant* claims.

The court holds the total amount above-$40,716.78-is owed to East Coast by Unlimited. In the event Unlimited is unable to pay this full amount, the court holds Hydrim and EOTW liable for any balance remaining on theories of *quantum meruit* and *quantum valebant.*

The contracts at issue are between East Coast and Unlimited. Damages for breach of those contracts are owed to East Coast by the breaching party, Unlimited. As noted in the findings of fact, Unlimited is a viable, ongoing company and there is no indication it cannot pay its bills. Unlimited, however, states that the reason it did not pay East Coast is because it (Unlimited) was not paid by Hydrim.

The law in Delaware is clear that in the absence of a contract between a subcontractor and an owner, a subcontractor who supplies labor and materials on the order and credit of a general contractor cannot recover against the owner based upon *quantum meruit.*[FN19] There is, however, an exception to this general rule that allows a subcontractor to recover from an owner when the subcontractor cannot recover payment from the contractor with whom he contracted directly and the owner has not paid the contractor.[FN20] The court finds the case at bar falls squarely within the exception to the general rule. Unlimited states it did not pay East Coast because it was not paid by Hydrim. Therefore, to the extent East Coast cannot recover from Unlimited for the above damages, it may recover from Hydrim and EOTW. Therefore, the court finds Unlimited, Hydrim, and EOTW jointly and severally liable.

FN19. *Cohen v. Delmar Drive-In Theater*, 84 A.2d 597, 598 (Del.Super.1951).

FN20. *Builders Supply of Delmarva, Inc. v. Manbeck*, 1998 WL 442845 at *3 (Del.Super.).

### E. Mechanic's lien claim.

*6 The court finds a mechanic's lien against EOTW as owner is proper. In its original complaint, East Coast made claims against the individual buildings, designating the amounts claimed due East Coast on each of the structures. At the time of construction, the condominiums were located on a single parcel of land and all were owned by EOTW. 25 *Del. C.* § 2713 allows filing a mechanic's lien against multiple structures "owned by the same person."[FN21] The court finds the cases cited by EOTW distinguishable as the units in those cases were found to be separate units on separate parcels of land and a single claim was made against the owner.[FN22] In the present case, the claims were made separately against the individual buildings under each contract. The court concludes a mechanic's lien is proper under 25 *Del. C.* § 2713.

FN21. 25 *Del. C.* § 2713.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 6

FN22. *DiMondi v. S & S Builders, Inc.*, 124 A.2d 725, 728 (Del.1956) (separate homes on separate lots); *Ramsey v. DiSabatino*, 347 A.2d 659, 661 (Del.Super.1975) (condominiums having separate foundations on separate lots).

| | |
|---|---|
| Filing fee | $125.00 |
| Service fees | $107.00 |
| Title search | $115.00 |
| Postage for Notices | $946.00 |
| Trial transcripts | $1,415.50 |

The court concludes these are all reasonable costs of trial. The court, therefore, awards $2,708.50 to East Coast. The court orders this amount to be paid equally by all Defendants. Each Defendant, therefore, must pay $902.83 to East Coast.

The court declines to award attorney's fees to East Coast. The court finds the Defendants had a reasonable, albeit ultimately rejected, belief they were entitled to withhold payment to East Coast based upon the fact the equipment installed in the condominiums of the Project was not "identical" to that in the existing condominiums.

F. Hydrim's counterclaim.

Hydrim asserts a counterclaim for $52,120.00 against East Coast in Defendants' Response to East Coast's post-trial submission. Hydrim asserts this is the estimated cost to replace the undersized A/C units and water heaters. This is the first time such a counterclaim has been asserted in this action. Hydrim apparently believes this issue was addressed by the evidence given at trial, even though not raised in the pleadings.[FN23] This claim is rejected by the court. The court finds that while the issue of replacing the allegedly undersized equipment was discussed at trial, it was only to note that the equipment had *not* been replaced. The court further finds there has been no discovery regarding this issue, nor did Hydrim provide any support for how the amount was calculated. The court finds for East Coast on Hydrim's counterclaim.

FN23. Super. Ct. Civ. R. 15(b).

V. CONCLUSION

E. Costs and attorney's fees.

As the prevailing party, East Coast is entitled to recover its trial costs under Superior Court Civil Rule 54(d) ("Rule 54"). East Coast has submitted costs of $2,708.50 for recovery under Rule 54, itemized as follows:

THEREFORE, the court holds for Plaintiff East Coast in the amount of $43,425.27 to be paid as noted above.

IT IS SO ORDERED.

Del.Super.,2004.
East Coast Plumbing & HVAC, Inc. v. Edge of the Woods, LP
Not Reported in A.2d, 2004 WL 2828286 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.