# EXHIBIT G

Not Reported in A.2d, 2001 WL 985106 (Del.Super.)

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.


Superior Court of Delaware.
J.O.B. CONSTRUCTION COMPANY, Plaintiff-Claimant,
v.
JENNINGS & CHURELLA SERVICES, INC., Schering-Plough Animal Health Corporation, and
Mallinckrodt Veterinary, Inc., Defendants.
No. CIV.A. 00L-05-021.
Submitted: May 15, 2001.
Decision: Aug. 9, 2001.

Richard E. Berl, Jr., Esquire, Georgetown, for Plaintiff.
Donald L. Logan, Esquire, Wilmington, for Defendant Schering-Plough Animal Health Corporation.

MEMORANDUM OPINION


STOKES, J.

INTRODUCTION

*1 This summary judgment motion on a pending mechanics' lien action raises two questions for decision, viz: (1) Was the complaint timely filed under the provisions of 25 Del. C. § 2711; and (2) may a quantum meruit claim be asserted against the owners of the property by a subcontractor? For the following reasons, summary judgment is granted only on the mechanics' lien claim.


PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff, J.O.B. Construction Co. ("J.O.B. Construction" or "J.O.B."), contracted with Jennings and Churella Services, Inc. ("Jennings") to perform work at an animal research facility. The property is located in Millsboro, Sussex County, Delaware. The contract with change orders and extras amounted to $845,978.93.

In the fall of 1999, Jennings was terminated by the owners, Defendants Schering-Plough Animal Health Corp. and Mallinckrodt Veterinary, Inc. ("Schering-Plough", "Mallinckrodt"). Payments due Jennings under its prime contract with the owners were withheld to defray other subcontractor claims. Consequently, Jennings failed to pay J.O.B. for all of its work. The amount claimed due is $69,531 .23 plus interest and costs. This sum represents 10 percent retainage withheld from progress payments and money for additional work done at the site. J.O.B. received $776,477.70 in payments under its subcontract with Jennings.

On May 19, 2000, J.O.B. filed its mechanics' lien complaint against Jennings, Schering-Plough and Mallinckrodt. It seeks an in rem judgment against the property improved by the facility. Furthermore, in personam judgments are sought on the contract with Jennings and against the owners on an unjust enrichment theory. Jennings has not appeared in the action.

In this action, Defendant Schering-Plough initially moved for summary judgment on December 15, 2000. The Court requested memoranda that were filed on May 3, 2001. Regarding the mechanics' lien count, the question concerned whether a new statute effective January 16, 2000 applied to the case. Under law in effect when the claim arose on October 25, 1999, the complaint would have to have been filed within 90 days. The new law provided, in part, for a 120-day period from when final

payment is made by an owner to a general contractor, like Jennings. If this provision applies, then the claim may not be barred. The quasi-contract count is challenged given the absence of a contract between the owners and J.O.B.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only when no material issues of fact exist, and the moving party is entitled to judgment as a matter of law.[FN1] When demonstrated, the burden then shifts to the non-moving party to establish the existence of material issues of fact with a bona fide legal dispute.[FN2] The non-moving party must provide contrary evidence on the essential elements of the claim or defense.[FN3] If the non-moving party cannot satisfy this requirement, then summary judgment must be granted as pleadings alone will not defeat the motion.[FN4] Summary judgment is inappropriate where material issues of fact exist or if the Court determines the factual background must be further developed to permit an informed application of the law.[FN5]

> FN1. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680 (1979).

> FN2. *Id.* at 681.

> FN3. Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

> FN4. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56, 59 (1991), *cert. den.,* 112 S.Ct. 1946 (1992); *Celotex Corp. v. Catrett, supra.*

> FN5. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962).

## TIME FOR FILING A MECHANICS' LIEN COMPLAINT

**\*2** No citation is required to prove that the mechanics' lien law protects suppliers of labor and material for construction and property improvements. Its purpose is salutary. Strict compliance with the statute is required as powerful relief is afforded that was unavailable at common law.[FN6] Property may be sold at sheriff's sale to pay for work and materials supplied by a subcontractor with whom the owner may not have dealt.[FN7] Moreover, a resulting judgment lien relates back in time to when work first began.[FN8] Not only may titleholders forfeit ownership but other interested parties can be prejudiced as well.[FN9]

> FN6. *Builders' Choice, Inc., v. Venzon,* Del.Supr., 672 A.2d 1, 2 (1995).

> FN7. 25 *Del. C.* § 2719

> FN8. 25 *Del. C.* § 2718

> FN9. Certain first mortgage holders were given protection in this regard under 25 *Del. C.* §§ 2712(b)(11); 2718(a).

With this background, the Courts carefully review complaints and dismiss claims that ignore the requirements of the statute.[FN10] Rules permitting amendments in civil actions cannot be used to revive defective complaints. [FN11] The complaint must also be filed within prescribed times.[FN12] This reflects the statutory basis for the creation of the claim and a concern that property interests not be unduly exposed to claims. Perhaps more so than other areas of the law, time is of the essence in a

mechanics' lien case. [FN13]

> FN10. *Hendrix v. Kelley,* Del.Super., 143 A. 460, 461 (1928).

> FN11. *E.J. Hollingsworth Co. v. Continental-Diamond Fiber Co.,* Del.Super., 175 A. 266, 268 (1934).

> FN12. 25 *Del. C.* § 2711

> FN13. *Hendrix,* 143 A. at 461.

At oral argument, J.O.B. admitted that the mechanics' lien complaint was late and barred under the law existing on October 25, 1999. The May 19, 2000 filing exceeded the 90 day deadline from when work or labor was last done.[FN14] No meaningful explanation was offered to explain the delay. J.O.B. is an experienced subcontractor, and the mechanics' lien law is not unknown in the trade.

> FN14. Fact questions sometimes occurred over the nature of the last work done to extend the filing time. *See Breeding v. Melson,* Del.Supr., 143 A. 23 (1927). J.O.B. alleges October 25, 1999 was the last date while the owners contend October 11, 1999 was the end point. This difference is immaterial for purposes of this decision.

Notwithstanding, J.O.B. contends it should have the benefit of a law change effective January 16, 2000.[FN15] At that time, the mechanics' lien law was significantly changed. General contractors were allowed 180 days to file and subcontractors were given 120 days. The date(s) from which the time to file were expanded. Unlike the former law, a general contractor now has 9 different times to measure filing time running from the date of completion to the date when final payment is made. A subcontractor, like J.O.B., is given 30 more days to file. Also, the filing time can now run from when final payment was made to the general contractor by the owner.[FN16] Since final payment has yet to be made, the May filing would be timely from this perspective.

> FN15. The original version of 25 *Del. C.* § 2711 states:

> (a) A contractor who (1) has made his contract directly with the owner or reputed owner of any structure and (2) has furnished both labor and material in and for such structure shall file no statement of claim until after the expiration of 90 days from the completion of such structure contracted for by him; but such contractor, in order to avail himself of the benefits of this subchapter, shall file his statement of claim within 30 days after the expiration of the 90 -day period.

> (b) All other persons embraced within this chapter and entitled to avail themselves of the liens herein provided for shall file a statement of their respective claims within 90 days from the completion of the labor performed or from the last delivery of materials furnished by them respectively.

> 72 Del. Laws, c. 203 amended this statute effective January 16, 2000. The new section provides in pertinent part:

> (b) All other persons embraced within this chapter and entitled to avail themselves of the liens herein provided shall file a statement of their respective claims within 120 days from the date from the completion of the labor performed or from the last delivery of materials furnished by them respectively. For purposes of this subsection, and without limitation, a statement of claim on behalf of such person shall be deemed timely if it is filed within 120 days of either of the following:

> (1) The date final payment, including all retainage, is due to such person; or

(2) The date final payment is made to the contractor:

a. Who has contracted directly with the owner or reputed owner of any structure for the erection, alteration or repair of same; and

b. With whom such person has a contract, express or implied, for the furnishing of labor or materials, or both, in connection with such erection, alteration or repair.

FN16. A subcontractor can now file within 120 days from when final payment, plus retainage, is due under the subcontract. J.O.B. does not rely upon this provision as that period of time elapsed.

On the other hand, at oral argument, the owner contended as follows: "··· Final payment could mean anything. It says 'When the final payment is paid to the contractor.' Our final payment was paid to the contractor in September and no other payments will ever be made." Thus, the owner contends the 120 day period expired in January 2000 even assuming the new law applied.

What is "final payment?" On this point, the phrase must be given its ordinary and plain meaning and read in context.[FN17] It is the last payment in series, process or progress under the contract.[FN18] The synopsis to the new law makes this clear. More time was provided to builders and tradesmen to accommodate present economic needs. With the last date of work or supply as the yardstick, many claims were filed to preserve mechanics' lien rights well before payments were advanced by lenders.[FN19] A different time frame was desired to harmonize construction and loan practices.

FN17. 1 *Del. C.* § 303.

FN18. Webster's Collegiate Dictionary 436 (10th ed.1998) defines the adjective "final" in this way. As to "final payment" meaning the final payment contemplated under the contract, see, *Sundance Mechanical & Utility Corp., v. Atlas,* N.M.Supr., 880 P.2d 861 (1994); *Adamo Equip, Rental Co. v. Mack Dev. Co., Inc.,* Mich. Ct.App., 333 N.W.2d 40, 41 (1982); *Department of Empl. v. Diamond Int'l Corp.,* Idaho Supr., 529 P.2d 782, 783 (1974); *Paving Corp. v. Armco Steel Corp.,* Ark.Supr., 411 So.2d 888 (1967); *Renuart Lumber Yards, Inc. v. Stearn,* Fla.Supr., 95 So.2d 517, 518 (1957).

FN19. The synopsis to S.B. 130 states: "This short filing window frequently creates problems for general or prime contractors, and for owners, because the contractors may be compelled to file a lien to preserve their statutory lien rights, before subcontractor liens have been resolved or final payment arrangements have been completed ." S.B. 130, 140th Gen. Assembly, 1st Ses. (De.1999), codified as amended at 72 *Del. Laws,* c. 203, § 9 (1999).

*3 Despite the foregoing, the critical issue is whether the January 16, 2000 law change reaches back to October 25, 1999 to save the claim. If the law is prospective, reaching only claims on or after January 16, 2000 then J.O.B. is barred. Should prospective or retrospective effect be given?

Certainly, the plain language of the amendment directed prospective application. Consider this language: "This act shall become effective 180 days following its enactment into law." The Governor signed the act on July 20, 1999. It was effective 180 days later, well past October 25, 1999.[FN20]

FN20. 72 *Del. Laws,* c. 203, § 9 (1999).

The General Assembly is presumed to know settled precepts of law. Generally, legislation is given prospective effect absent a clearly expressed intent to the contrary.[FN21] This rule is not dispositive, however, because procedural changes may be applied to past transactions unlike substantive ones.

FN22

> FN21. *General Motors Corp. v. Wolhar,* Del.Supr., 686 A.2d 170, 172 (1996); *Hubbard v. Hibbard Brown & Co.,* Del.Supr., 633 A.2d 345, 354 (1993).

> FN22. *Hubbard,* 633 A.2d at 354.

Thus, are the changes in the filing times with different measuring dates "substantive?" The distinction between substance and procedure has been discussed by our Supreme Court. For example, the single act personal jurisdiction statute, 10 *Del. C.* § 3104, was determined to be procedural and was applied to a past transaction.[FN23] Yet, a provision about seat belt use in tort litigation was substantive with future application only.[FN24]

> FN23. *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980).

> FN24. *General Motors Corp.,* 686 A.2d at 172. As to the new safety belt law's provision restricting evidence about the failure to use a protection system, the Supreme Court observed: such evidence is inadmissible on issues of contributory negligence, comparative negligence, assumption of the risk, or mitigation of damages. *Id.* at 177, fn. 10. It had limited admissibility, however, on the question of proximate cause in a defective design claim

Although no litmus or bright line tests appear, the United States Supreme Court has this to say on the subject;

··· the presumption against retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic···· In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions···· While statutory retroactivity has long been disfavored, deciding when a statute operates "retroactively" is not always a simple or mechanical task···· Rather, the Court must ask whether the new provision attaches new legal consequences to events completed before its enactment···· Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent···· The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact···· The largest category of cases with which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance····" [FN25]

> FN25. *Landgraf v. USI Film Products,* 511 U.S. 244, 265-71 (1994). *Landgraf* found that punitive and compensatory damages permitted by the Civil Rights Act of 1991 were substantive and were not applicable to pending suits under Title VII of the Civil Rights Act of 1964 that initially offered equitable relief (e.g., reinstatement, back pay).

Upon consideration, the law changes are substantive. On October 25, 1999 a claimant could not file a claim beyond 90 days from the end of work. Not only is the time now extended to 120 days but the benchmark dates are expanded to the date final payment is due the subcontractor from the general contractor or to the date final payment is made to the general contractor by the owner. Beforehand, a title owner and those having a financial interest in the property were exposed for a short time. The consequence of a successfully litigated lien is drastic-an ensuing public sale forecloses third party rights and results in the forfeiture of title. This implicates due process of law concerns where real estate interests are compromised.

**\*4** Given the forceful impact of mechanics' liens that is enhanced by the changed legislation, the changes carry the weight of substance not procedure. To paraphrase the United States Supreme

Court, vested rights of owners not to have their property encumbered by subcontractors after 90 days from when work or materials were last supplied have been impaired.[FN26] The unique measurement dates would also place new disabilities on past transactions. Property owners frequently have little if anything to do with subcontractors. The mechanics' lien law was always strictly construed, expectations were settled, and liabilities were understood. The General Assembly intended a prospective change. This result reflected a sound policy judgment supported by long standing practice and considerations of fairness and certainty concerning legal rights, obligations, and disabilities.

> FN26. *Id.* at 1499.

## THE QUANTUM MERUIT/UNJUST ENRICHMENT CLAIM

J.O.B. seeks recovery on the basis of unjust enrichment.

As the Restatement of Restitution describes: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." [FN27]

> FN27. Restatement of Restitution § 1 (1988).

This principle is qualified, however, by the following rule:

A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other *merely because of the failure of performance by the third person* (emphasis added).[FN28]

> FN28. *Id.* § 110; *Chrysler Corp. v. Airtemp Corp.,* Del. Super ., 426 A.2d 845, 855 (1980).

In this context, Jennings would be the third person and its mere failure of performance to J.O.B. would not permit recovery against the owners. In Delaware, this principle has been recognized where an owner has made full payment to a general contractor.[FN29] When that occurs, a subcontractor who is not paid by the general contractor cannot complain about the owner's benefit. The benefit was purchased, and, therefore, its receipt is just.

> FN29. *Cohen v. Delmar Drive-In Theater, Inc.,* Del.Super., 84 A.2d 597, 98 (1951). *See also Guldberg v. Greenfield,* Iowa Supr., 146 N.W.2d 298, 305 (1966) (payment by owner to general precluded subcontractor's recovery on unjust enrichment theory).

With this point in mind, the Superior Court has permitted recovery in restitution for a subcontractor where an owner has not paid the prime contractor.[FN30] The elements require an inability to collect on the subcontract together with an owner's failure to pay the general contractor. These factors exceed mere failure of performance and place a case within the first Restatement principle permitting recovery.

> FN30. *Builders Supply of Delmarva, Inc. v. Manbeck,* Del.Super., C.A. No. 96C-11-022, Graves, J. (June 23, 1998) Mem. Op. at 3; *Galvanga v. Marty Miller Constr., Inc.,* Del.Super., C.A. No. 96L-01-015, Graves, J. (Sept. 19, 1997)Mem. Op. at 4.

As the Arizona Supreme Court explained in a similar situation:

In determining whether it would be unjust to allow the retention of benefits without compensation, a court need not find that the defendant intended to compensate the plaintiff for the services rendered or that the plaintiff intended that the defendant be the party to make compensation. This is because

the duty to compensate for unjust enrichment is an obligation implied by law without reference to the intention of the parties. 1 S. Williston, Contracts § 3A at 13 (3d ed.1957). What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not "conferred officiously" ··· We explained that the subcontractor's contract with the general contractor has importance in considering [the] claim for unjust enrichment because it both evidences [plaintiff's] expectation of compensation and the circumstances which make it unjust to allow [defendant] to retain the benefits.[FN31]

> FN31. *Flooring Systems, Inc. v. Radisson Group, Inc.,* Ariz. Supr ., 772 P.2d 578, 581 (1989).

**\*5** J.O.B. has shown that collection from Jennings is unlikely on its subcontract. The sworn allegations of the complaint support this conclusion. An Auction Notice and a letter from a secured party corroborate the claim. Jennings appears to be out of business.

Furthermore, at oral argument, the owners represented that: "In late summer and early fall of 1999 Schering-Plough became aware that Jennings was not paying subcontractors. In addition, mechanics' lien started to be filed against the project··· The last payment that was made to Jennings was in September of 1999. Thereafter, several mechanics' liens were filed. We completed the work, we have taken care of all the subs, with the exception of these two remaining····"[FN32] J.O.B.'s evidence shows that it did not intend to provide its work gratuitously or officiously; its subcontract with Jennings evidences its intent to be paid. Although J.O.B. completed its work, it has not been fully paid. The owners knew that J.O.B. had not been paid and have chosen to withhold payment, although paying other subcontractors. Under these circumstances, a fact finder may well conclude that the retention of the full benefit of J.O.B.'s work is unjust.

> FN32. The words of attorney's can bind clients. *Jackson v. Rotach,* Del.Super., C.A. No. 99C-01-001, Stokes, J. (June 8, 2000) Mem. Op. at 6.

## CONCLUSION

Considering the foregoing, the mechanics' lien count is time barred, and, therefore, it is dismissed. Summary judgment on the unjust enrichment count is denied as material issues of fact remain to be decided.

IT IS SO ORDERED.

Del.Super.,2001.
J.O.B. Const. Co. v. Jennings & Churella Services, Inc.
Not Reported in A.2d, 2001 WL 985106 (Del.Super.)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.